·ORIGINAL ● ●

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Plaintiff
Leslie Wilton

**F I L E D**
DISTRICT COURT OF GUAM
MAR 1 8 2003
MARY L. M. MORAN
CLERK OF COURT



### IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| LESLIE WILTON,<br><br>        Plaintiff,<br><br>   vs.<br><br>BLACK CONSTRUCTION<br>CORPORATION and WINZLER &<br>KELLY CONSULTING ENGINEERS,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL CASE NO. **03-00009**<br><br><br>**COMPLAINT** |

## I.  JURISDICTION AND VENUE

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure. This Court has jurisdiction pursuant to 28 U.S.C. §1333(1).

There is also complete diversity of citizenship between the Plaintiff and the Defendants herein.

Therefore this Court also has jurisdiction pursuant to 28 U.S.C. §1332(a), in that the matter in

controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

3150729.1.055639-00001

2.     Venue is proper in this judicial district in that the property damage complained of was suffered here, and the Defendants each breached one or more contracts here, as will be seen *infra*.

## II.     PARTIES

3.     Plaintiff Leslie Wilton is an insurance Underwriter at Lloyds, London. He resides in England, and has his principal place of business in London. Plaintiff appears herein on his own behalf, and on behalf of all other Lloyd's Underwriters who subscribed, each of his own and not for the other, to a certain policy of insurance, providing first-party property insurance to the Port Authority of Guam.

4.     Defendant Black Construction Corporation (hereinafter "Black") is a corporation conduction business in Guam with an office and employees in Guam.

5.     Defendant Winzler & Kelly is a corporation which Plaintiff is informed and believes is organized and exists under the laws of the State of California, with its principal place of business at San Francisco, California. Defendant Winzler & Kelly also maintains an office, and has employees and business in Guam.

## III.     FACTUAL BACKGROUND

6.     Plaintiff insures the property of the Port Authority of Guam, a municipal corporation which owns and operates piers, wharves, marinas, dolphins and other structures located in the ports of Guam, which service and accommodate maritime trade and commerce. In August of 1993, the island of Guam suffered a severe earthquake, estimated to be a magnitude of 7.5. The earthquake did severe damage to a number of piers, docks, dolphins and other facilities and property owned and operated by the Port Authority of Guam. Shortly thereafter, the Port Authority retained

Case 1:03-cv-00009   Document 1-1   Filed 03/18/03   Page 2 of 31

Defendant Winzler & Kelly to advise it concerning repairing the damage which the earthquake had caused. This work included studying and assessing the damage, preparing initial drawings for repairing it, performing structural and other engineering calculations, and preparing plans and specifications to put the work out to public bid.

7.      Black submitted a bid to repair the earthquake damage, which bid was accepted by the Port Authority. Black was retained to perform the repairs, pursuant to a written contract with the Port Authority, a copy of which is attached hereto as **Exhibit "A."** During the course of the project, Black suggested that a number of changes be made to the proposed work. The repair work was performed under the general supervision of Winzler & Kelly.

8.      The work was completed in 1997. Upon completion, both Defendants Winzler & Kelly and Black represented and warranted to the Port Authority that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam.

9.      On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful than the earthquake of 1993, this earthquake, too, did damage to the property and facilities owned by the Port Authority. Specifically, serious damage was done to F pier, and the dolphins thereof, which had previously been repaired by Black, pursuant to the plans and specifications prepared by, and under the supervision of, Defendant Winzler & Kelly.

10.      As a result of the damage caused by the second earthquake, the Port Authority submitted a claim to Plaintiff. Plaintiff to date has paid part of the claim of the Port Authority, in an amount exceeding $3 million. Additional claims have been presented by the Port

3150729.1.055639-00001                                    3.

Authority, and it is anticipated that Plaintiff will make additional payments to the Port Authority in the future. To the extent Plaintiff has made such payments, Plaintiff is subrogated to all of the rights and causes of action previously held by the Port Authority.

11. After receiving the claims for damage caused by the 2001 earthquake, Plaintiff caused an investigation of the losses to be made. This investigation disclosed that the repair of the 1993 earthquake damage had been done improperly by and under the supervision of Defendants, and that work which the Defendants had agreed should and would be done, in fact was never done. The repairs done in 1996-7 were inadequate, improperly done and insufficiently strong to withstand future earthquakes and typhoons. The inadequacy of the design, plans, specifications and repair work performed by Defendants directly caused and led to further damage to the property of the Port Authority during the year 2001 earthquake, and caused and directly led to damage to and losses by Plaintiff, as is set forth more fully hereinafter.

## IV. FIRST CAUSE OF ACTION: NEGLIGENT PROPERTY DAMAGE (Against Black)

12. Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 11, inclusive, of this Complaint.

13. Black negligently performed repairs to the property of the Port Authority which was damaged in the 1993 earthquake, thereby causing further and more serious damage to said property, and therefore losses and damage to plaintiff. In addition, Black negligently recommended that changes and alterations be made to the proposed repair project, which led to further losses and damage to Plaintiff.

Case 1:03-cv-00009   Document 1-1   Filed 03/18/03   Page 4 of 31

## V.    SECOND CAUSE OF ACTION: NEGLIGENT PROPERTY DAMAGE
(Against Winzler & Kelly)

14.    Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 13, inclusive, of this Complaint.

15.    Defendant Winzler & Kelly negligently prepared the plans and specifications for the repair of the 1993 earthquake damage. In addition, Defendant Winzler & Kelly negligently supervised the repair work, including but not limited to failing to note and observe that repairs were being improperly performed to Pier F. In addition, Defendant Winzler & Kelly negligently recommended that changes be made to the proposed plans for the repairs, which changes were negligent and improper, and led to the property of the Port Authority being substantially weaker and unable to withstand further earthquakes and typhoons, and to further and more severe property damage. The negligence of Defendant Winzler & Kelly directly led to losses and damage to Plaintiff.

## VI.    THIRD CAUSE OF ACTION: BREACH OF CONTRACT
(Against Black)

16.    Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 15, inclusive, of this Complaint.

17.    Black breached its contract with the Port Authority, Exhibit A hereto, by failing to perform all the work. Black agreed to perform, performing the work which it did do improperly, carelessly and negligently, and performing work not called for under the contract which damaged and weakened the property of the Port Authority. These breaches of contract directly caused losses and damage to Plaintiff.

Case 1:03-cv-00009    Document 1-1    Filed 03/18/03    Page 5 of 31

## VII.    FOURTH CAUSE OF ACTION: BREACH OF CONTRACT (Against Winzler & Kelly)

18.    Plaintiff incorporates herein by this reference, as though fully set herein, paragraphs 1 through 17, inclusive, of this Complaint.

19.    Defendant Winzler & Kelly breached its contract with the Port Authority by failing to design and specify repairs of the 1993 earthquake damage which would be sufficiently strong to withstand future earthquakes and typhoons. Defendant Winzler & Kelly further breached its contract with the Port Authority by inadequately and incompetently supervising the repairs of the 1993 earthquake damage, by recommending and making improper and negligent changes to the planned repair project, and by failing to note and observe errors and omissions by contractors performing repairs to the property of the Port Authority. These breaches of contract by Winzler & Kelly directly caused damage and losses to Plaintiff.

## VII.    FIFTH CAUSE OF ACTION: BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE (Against Black)

20.    Plaintiff incorporates herein by this reference, as fully set forth herein, paragraphs 1 through 19, inclusive, of this Complaint.

21.    The contract between Black and the Port Authority of Guam, Exhibit A hereto, is a maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Accordingly, there is implied in said contract a warranty of workmanlike performance, owed to the Port Authority. Black breached said warranty of workmanlike performance, in that it performed repairs of the 1993 earthquake damage carelessly, negligently and incompletely, and did not perform certain repairs at all. Said breaches of the warranty of workmanlike performance have directly caused damage and losses to Plaintiff.

Case 1:03-cv-00009   Document 1-1   Filed 03/18/03   Page 6 of 31

## IX. SIXTH CAUSE OF ACTION: BREACH OF BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE (Against Winzler & Kelly)

22.     Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 21, inclusive, of this Complaint.

23.     The contract between Winzler & Kelly and the Port Authority of Guam is a maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Accordingly, there is implied in said contract a warranty of workmanlike performance, owed to the Port Authority. Winzler & Kelly breached said warranty of workmanlike performance, by providing plans and specifications for the repair of the 1993 earthquake damage which were careless, inadequate, insufficient and erroneous. In addition, Winzler & Kelly breached the warranty of workmanlike performance owed to the Port Authority by failing to adequately supervise the repairs of the 1993 earthquake damage, and failing to note and observe that the repairs were being performed erroneously and incompletely, and in some cases were not being performed at all. These breaches of the warranty of workmanlike performance by Winzler & Kelly have directly caused damage and losses to Plaintiff.

### PRAYER

WHEREFORE, Plaintiff prays for relief and judgment against the Defendants, and each of them, as follows:

1.     For general damages according to proof, in excess of $3 million;

2.     For special damages according to proof;

3.     For costs of suit incurred herein;

4. For attorneys' fees herein as provided for in Exhibit A hereto, and to which Plaintiff may otherwise be entitled; and

5. For such other and further relief as this Court deems just and proper.

Dated this 18th day of March 2003.

CARLSMITH BALL LLP

_____
DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
LESLIE WILTON

Case 1:03-cv-00009   Document 1-1   Filed 03/18/03   Page 8 of 31

# CONSTRUCTION CONTRACT

THIS AGREEMENT AND CONTRACT, made and entered into this 8th day of _April_____, 1996, by and between the Port Authority of Guam, a public corporation and autonomous instrumentality of the Government of Guam hereinafter referred to as "Port Authority", whose address is 1026 Cabras Highway, Suite 201, Piti, Guam 96925, and **BLACK CONSTRUCTION CORPORATION**, hereinafter referred to as the "Contractor", whose address is P.O. Box 24667, GMF, Guam 96921.

## WITNESSETH

WHEREAS, the Port Authority intends to construct REPAIRS AND UPGRADING OF FOXTROT PIER "F-1", PAG Project No. PAG 96 -001O   hereinafter called the "project", in accordance with the General Scope of Work prepared by the Port Authority.

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, the Port Authority issued Invitation to Bid No. PAG 96-0010 in order to solicit bids from building contractors desiring to perform the project construction;

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, after the bids in response to Invitation to Bid No. 96-0010 were opened, Contractor was determined to be the lowest responsible and responsive bidder and awarded the contract to perform the construction of the project to the Contractor.

NOW THEREFORE, the Port Authority and Contractor for the considerations hereinafter set forth, agree as follows:

I.    THE CONTRACTOR AGREES to furnish all the necessary labor, materials, equipment, tools and services necessary to perform and complete in a workmanlike manner all work required for the construction of the Project in strict compliance with the Contract Documents herein mentioned, which are hereby made part of the Contract.

(a)    Contract Time.  The Contractor agrees to commence work under this contract upon written notice to proceed, and to complete the project ready for use and operational within 240 calendar days of the commencement of the Contract as defined in the General Provisions of the Contract.

(b)    Sub-Contractors.  The Contractor agrees to bind every subcontractor by the terms of this Contract and the contract documents. Any and all contracts between the Contractor and its subcontractors shall not be construed as creating any contractual relation between any subcontractor and the Port Authority.

II.    THE PORT AUTHORITY AGREES to pay, and the Contractor agrees to accept in full payment for the performance of this Contract, the Contract amount of:

a.  The Basic Bid Amount of Two Million One Hundred Forty Seven Thousand and Eight Hundred Dollars ($2,147,800.00)

b.  Contractor shall be paid any and all sums including any added and/or deducted amounts resulting from any and all extra work and/or omitted work in connection therewith, in accordance with Section B-9 of the General Conditions of the Contract Documents described in Section III(i) and incorporated herein by reference.

III.  CONTRACT DOCUMENTS.  It is hereby mutually agreed that the following list of instruments, plans, specifications and documents which are attached hereto, bound herewith and incorporated herein by reference shall constitute the Contract Documents, all of which are made a part hereof, and collectively evidence and constitute the Contract between the parties, hereto, and they are as fully a part of this Contract, as if they were set our verbatim and in full herein, and are designated as follows:

a.  Invitation to Bid
b.  Instruction to Bidders
c.  Proposal
d.  Form of Non-collusion Affidavit
e.  Bid Bond
f   Certification of Bidders Regarding Equal Employment Authority
g.  Performance and Payment Bond
h.  Special Provisions
i.  General Provisions
j.  Labor Standards Provisions
k.  Technical Specifications
l.  Plans
m.  Addendum(s)
n.  Notice of Award
o.  Notice to Proceed

IV.  LIQUIDATED DAMAGES.  Contractor agrees that if Contractor fails, neglects, or refuses to complete the work by the completion date as set forth above, then Contractor shall pay, or shall be assessed the sum of One Thousand No/100 Dollars ($1,000.00) per day for each calendar day of delay after the time stipulated for completing the work.  The amount Contractor shall pay or be assessed for each calendar day in which the work is not completed after the specified completion date is not a penalty, but a reasonable estimated liquidated damages suffered by the Port Authority.

V.  COVENANT AGAINST CONTINGENT FEES.  The Contractor warrants that it has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee.  Breach of this warranty shall give the Port Authority the right to terminate the contract, or at its discretion, to deduct from the contract price or consideration the amount of such commissions, percentage,

- 2 -

brokerage or contingent fee. This warranty shall not apply to commissions payable by Contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by Contractor for the purpose of securing business.

VI.   **OTHER CONTRACTS**. The Port Authority may award other contracts for additional work, and the contractor shall fully cooperate with such other contractors and carefully fit his own work to that provided under other contracts as may be directed by the General Manager. The Contractor shall not commit or permit any act which will interfere with the performance of work by any other contractor.

VII.   **DISPUTES**. Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the Contracting Officer subject to written appeal by the Contractor within 30 days to the Governor of Guam or his duly authorized representative, whose decision shall be the final and conclusive upon the parties thereto. In the meantime, the Contractor shall diligently proceed with the work as directed.

VIII.   **CONTRACT BINDING**. It is agreed that this Contract and all of the Covenants hereof shall insure to the benefit of and be binding upon the Port Authority and the Contractor respectively and its partners, successors, assigns and legal representatives. Neither the Port Authority nor the Contractor shall have the right to assign, transfer or sublet its interest or obligations hereunder without written consent of the other party.

IX.   **LIENS**. It is hereby mutually agreed by and between the parties hereto that neither the Contractor or any other persons or companies working on the project or supplying materials thereto, including but not limited to mechanics, contractors, subcontractors, material persons or other persons can or will contract for or in any other manner have or acquire any lien, claim or interest upon the building or works covered by this contract, or the land upon which the same is situated.

X.   **REPRESENTATIONS**. The Contractor hereby makes the following representations and certifications:

(a)   That Contractor has not knowingly influenced and promises that Contractor will not knowingly influence a government employee to breach any of the ethical standards set forth in Chapter 11 of the Guam Procurement Regulations.

(b)   That Contractor has not violated, is not violating and promises that Contractor will not violate the prohibition against gratuities and kickbacks set forth in Section 11-206 of the Guam Procurement Regulations.

XI. **NON GRATUITY**. - The Contractor agrees that Contractor shall execute and file a

- 3 -

Non-Gratuity Affidavit as required by Section 11-206 of the Guam Procurement
Regulations before final payment under this Contract is made by the Port Authority.

XII.   ALTERATIONS.   The following changes were made in this contract before it was
signed by the parties hereto:              None.

XIII.   ATTORNEY'S FEES:   If any legal action, suit or other proceeding is brought for the
enforcement of this Agreement, or because of any alleged dispute, breach or default in
connection with any of the provisions of this Agreement, the successful or prevailing party
shall be entitled to recover reasonable attorney's fees and court costs incurred in the
action, suit or proceeding, in addition to any other remedy or relief to which it may be
entitled.

XIV.   INDEMNIFICATION.   The Contractor hereby assumes entire responsibility and
liability for any and all damage or injury of any kind or nature whatsoever (including death
resulting therefrom) to all persons, whether employees of the contractor or otherwise, and
to all property damage caused by, resulting from, arising out of or occurring in connection
with employees or agents.   Should any claims for such damage or injury (including death
resulting therefrom) be made or asserted, the Contractor agrees to indemnify and save
harmless the Government, the Port Authority Board of Directors, and all Port Authority
officers, agents, servants and employees from and against any and all such claims and
further from and against any and all loss, cost, expense, liability, damage or injury,
including legal fees and disbursements, that the Port Authority, its officers, agents,
servants or employees may directly or indirectly sustain, suffer or incur as a result thereof
and the Contractor agrees to and does hereby assume, on behalf, of the Port Authority,
its officers, agents, servants or employees upon or by reason of such claims which
defense, shall be tendered by counsel, selected by Contractor with approval of the Port
Authority, and to pay on behalf of the Port Authority, its officers, agents, servants and
employees, upon demand the amount of any judgment that may be entered against the
Port Authority, its officers, agents, servants or employees in any such action.

XV.   INSURANCE.   Contractor shall, at its sole expense and for the benefit of Contractor
and the Port Authority, provide and keep in full force and effect during the term of this
Contract, insurance against liability for bodily injury with limits of not less than Three
Hundred Thousand Dollars ($300,000.00) per person, One Million Dollars ($1,000,000.00)
per occurrence, and property loss liability insurance with a limit of not less than Three
Thousand Dollars ($300,000.00) per loss, all in respect to bodily injury or property loss
arising out of the duties and obligations of Contractor under the terms of this Contract.
In addition, Contractor shall also provide and keep in full force and effect during the term
of this Contract, workman's compensation insurance with limits of not less than One
Hundred Thousand Dollars ($100,000.00) per employee.   Contractor shall furnish to the
Port Authority certificates of insurance evidencing the existence of such insurance.   No
policy of insurance may be cancelled without providing the Port Authority thirty (30) days
advance written notice.   All insurance required under this Paragraph shall be written with

- 4 -

responsible companies with originals of the policies and renewals available for the Port
Authority's review during reasonable hours.

XVI.    GOVERNING LAW.  It is agreed that this Contract shall be governed by, construed,
and enforced in accordance with the laws of the territory of Guam.

XVII.   TIME OF THE ESSENCE.  It is specifically declared and agreed that time is of the
essence of this Contract.

XVIII.  MODIFICATION OF AGREEMENT.  Any modification of this agreement or additional
obligation assumed by either party in connection with this agreement shall be binding only
if evidenced in writing signed by each party or an authorized representative of each party.

XIX.    NOTICES.  Any notice provided for or concerning this agreement shall be in writing
and be deemed sufficiently given when sent by certified or registered mail if sent to the
respective address of each party as set forth at the beginning of this agreement.

XX.     PARAGRAPH HEADINGS.  The titles to the paragraphs of this agreement are solely
for the convenience of the parties and shall not be used to explain, modify, simplify, or
aid in the interpretation of the provisions of this agreement.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and
year first written.

                                            BLACK CONSTRUCTION CORPORATION

Date:    April 8, 1996                      By:

                                            Name: Perfecto O. Jose', Jr.

                                            Title:  Senior Vice President

– 5 –

APPROVED:

CERTIFIED FUNDS AVAILABLE:

_____

PAUL J. SOUDER, Chairman

FRANKLIN E. BADAR, CONTROLLER
Certifying Officer

Dated: _____

Dated:        8/14/96


APPROVED AS TO FORM:

CARBULLIDO, PIPES & BORDALLO
Legal Counsel, Port Authority of Guam

F. PHILIP CARBULLIDO, ESQ.

Dated:        8/12/96


SW.tamn\PAG\Black.Sup

– 4 –

responsible companies with originals of the policies and renewals available for the Port Authority's review during reasonable hours.

XVI.  GOVERNING LAW.  It is agreed that this Contract shall be governed by, construed, and enforced in accordance with the laws of the territory of Guam.

XVII.  TIME OF THE ESSENCE.  It is specifically declared and agreed that time is of the essence of this Contract.

XVIII.  MODIFICATION OF AGREEMENT.  Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party.

XIX.  NOTICES.  Any notice provided for or concerning this agreement shall be in writing and be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this agreement.

XX.  PARAGRAPH HEADINGS.  The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first written.

BLACK CONSTRUCTION CORPORATION

Date: April 8, 1996

By: _____

Name: Perfecto O. Jose', Jr.

Title: Senior Vice President

– 5 –

## I.    CHANGE IN SCOPE OF WORK

The Port Authority and Contractor hereby agree to omit certain concrete jacketing and pile encapsulation work as provided for in the Basic Bid Schedule and in lieu of such work Contractor is to use a Total Upper Section Replacement Method, in accordance with the attached Drawing prepared by "Winzler and Kelly".

## II.    CONTRACT PRICE ADJUSTMENT

As a result of the omitted work, the total amount of compensation the Port Authority agrees to pay to Contractor and Contractor agrees to accept as payment in full for the performance of the Contract shall be reduced from Two Million Forty Seven Thousand And Eight Hundred Dollars ($2,147,800.00) to One Million Four Hundred Seven Thousand And Six Hundred Eighty Two Dollars ($1,407,682.00).

## III.    OTHER CONDITIONS

The Port Authority and Contractor further agree that:

A.    All repair and upgrade work shall conform to the requirements of Shell Guam, Inc. as specified in the Contract documents.

B.    All repair and upgrade work shall be performed on all existing piles as indicated in the Contract documents.

C.    A unit cost per pile for repair and upgrade should be established and agreed upon between the Port Authority and Contractor. The total number of piles in need of repairs may be adjusted and subject to an appropriate reduction in the total contract amount.

D.    The Port Authority shall designate an on-site construction manager to determine and approve which piles require repair or replacement, and that final determination to be concluded within seven (7) days of contract.

E.    All applicable submittal requirements as stipulated in the Contract Documents shall be complied with and shall remain in full force and effect.

## IV.    OTHER TERMS OF CONTRACT REMAIN IN EFFECT

All other terms and conditions of the Construction Contract and contract documents remain in effect.

- 2 -

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first written.

BLACK CONSTRUCTION CORPORATION

Date:    April 8, 1996

By: _____

Name: __Perfecto O. Jose', Jr.__

Title: __Senior Vice President__

I, __Mark J. Mamczarz_____, certify that I am the assistant secretary of the corporation named as the Contractor herein; that __Perfecto O. Jose', Jr.__ who signed this contract on behalf of the Contractor, that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

(Corporate Seal)

PORT AUTHORITY OF GUAM

By: __CAPTAIN EULOGIO C. BERMUDES__
General Manager

Dated: _____

– 3 –

# SUPPLEMENTAL AGREEMENT TO
# CONSTRUCTION CONTRACT

THIS SUPPLEMENTAL AGREEMENT AND CONTRACT, made and entered into this _____ day of _____, 1996, by and between the Port Authority of Guam a public corporation and autonomous instrumentality of the Government of Guam, hereinafter referred to as "Port Authority", whose address is 1026 Cabras Highway, Suite 201, Piti, Guam 96925, and **BLACK CONSTRUCTION CORPORATION**, hereinafter referred to as the "Contractor", whose address is P.O. Box 24667, GMF, Guam 96921.

## WITNESSETH

WHEREAS, the Port Authority intends to construct REPAIRS AND UPGRADING OF FOXTROT PIER "F-1", PAG Project No. _____ hereinafter called the "project", in accordance with the General Scope of Work prepared by the Port Authority of Guam.

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, the Port Authority issued Invitation to Bid No. PAG 96-0010 in order to solicit bids from building contractors desiring to perform the project construction;

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, after the bids in response to Invitation to Bid No. 96-0010 were opened, Contractor was determined to be the lowest responsible and responsive bidder and awarded the contract to perform the construction of the project to the Contractor.

WHEREAS, the Port Authority and Contractor entered into a Construction Contract which sets forth the rights, duties and responsibilities of each party with respect to the construction of the project.

WHEREAS, subsequent to the award of the contract for the construction of the project it was determined that certain items within the scope of work listed in the Basic Bid Schedule should be omitted and an alternative design method implemented.

WHEREAS, the items to be omitted from the Basic Bid Schedule change the total cost of the project by more than twenty five percent (25%) so that the parties are required to enter into a Supplemental Agreement.

NOW THEREFORE, the Port Authority and Contractor for the considerations hereinafter set forth, agree as follows:

I, ____Mark J. Ruazarz_____, certify that I am the assistant secretary of the corporation named as the Contractor herein; that __Perfecto B. Jose', Jr._____ who signed this contract on behalf of the Contractor, that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

(Corporate Seal)

PORT AUTHORITY OF GUAM

By:  CAPTAIN EULOGIO C. BERMUDES
     General Manager

Dated: _____

APPROVED:

_____
PAUL J. SOUDER, Chairman

Dated: _____

CERTIFIED FUNDS AVAILABLE:

FRANKLIN E. BADAR, CONTROLLER
Certifying Officer

Dated:  _____8/14/96_____

APPROVED AS TO FORM:

CARBULLIDO, PIPES & BORDALLO
Legal Counsel, Port Authority of Guam

_____
F. PHILIP CARBULLIDO, ESQ.

Dated:  _____8|12|96_____

- 6 -

Case 1:03-cv-00009   Document 1-1   Filed 03/18/03   Page 19 of 31

## SECTION 09877

## COATING OF STEEL WATERFRONT STRUCTURES

### PART 1   GENERAL

#### 1.1   REFERENCES

The publications listed below form a part of this specification to the extent referenced.  The publications are referred to in the text by the basic designation only.

AMERICAN SOCIETY FOR TESTING AND MATERIALS (ASTM)

ASTM D 1186                     1993 Nondestructive Measurement of Dry Film Thickness of Nonmagnetic Coatings Applied to a Ferrous Base

ASTM E 376                      1989 Measuring Coating Thickness by Magnetic-Field or Eddy-Current (Electromagnetic) Test Methods

FEDERAL SPECIFICATIONS (FS)

FS QPL-24441                    Paint, Epoxy-Polyamide

MILITARY SPECIFICATIONS (MIL)

MIL-P-24441                     (Rev. B) (Supp. 1) Paint, Epoxy-Polyamide

STEEL STRUCTURES PAINTING COUNCIL (SSPC)

SSPC SP 1                       1982 Solvent Cleaning

SSPC SP 10                      1991 Near-White Blast Cleaning

#### 1.2   SUBMITTALS

Submit the following in accordance with Section 01300, "Submittals."

#### 1.2.1   SD-13, Certificates

   a.   Epoxy-polyamide

#### 1.2.1.1   Epoxy-Polyamide Certificates

The listing on FS QPL-24441 is satisfactory evidence.

#### 1.3   ENVIRONMENTAL CONDITIONS

Start work only when ambient and curing temperatures are within limits of coating manufacturer's recommendations and at least 3 degrees C (5 degrees F) above dew point temperature.

#### 1.4   SAFETY AND HEALTH PRECAUTIONS

Materials listed in this section contain coal tar pitch volatiles, which are toxic. Follow safety procedures as recommended by manufacturer. Work in a well ventilated area.  Provide, and require workers to use, impervious clothing, gloves, face shields (200 mm (8-inch) minimum), and other appropriate protective clothing necessary to prevent eye and skin contact with coating materials.  Keep coatings away from heat, sparks and flame.

## PART 2   PRODUCTS

### 2.1   COATING SYSTEMS

#### 2.1.1   Coating

Provide catalyst component for coating specific for resin component.  Use thinners which are compatible with the coating.

##### 2.1.1.1   Epoxy-Polyamide

MIL-P-24441

## PART 3   EXECUTION

### 3.1   CLEANING AND PREPARATION OF SURFACES

#### 3.1.1   Solvent Cleaning

SSPC SP 1.  Remove visible oil, grease, and drawing and cutting compounds by solvent cleaning.

#### 3.1.2   Blast Cleaning

SSPC SP 10.  After solvent cleaning, complete surface preparation by near-white blast cleaning.  Remove residual dust from blasted surface by blowing with dry, oil-free air, vacuuming, or sweeping.  Provide surface profile of at least 0.0375 mm (1 1/2 mil) thickness.

### 3.2   PROPORTIONING AND MIXING OF COATING SYSTEM

#### 3.2.1   Proportioning of Epoxy-Polyamide System

Epoxy-polyamide coatings consist of a two-component system that includes a pigmented polyamide resin, Component A and an epoxy resin, Component B. Mix both components in a ratio of 1 to 1 by volume.  Do not thin coatings when doing so will result in total volatile organic compounds exceeding limits enacted by local air pollution control district.  When thinning is allowed and is necessary, such as during cold temperature application or to improve application characteristics, add up to 0.5 liter (1 pint) of ethylene glycol monoethyl (EGM) ether for each 4 liters (gallon) of the coating.

#### 3.2.3   Mixing of Epoxy-Polyamide System

Mix components of coating by power stirring until a smooth, uniform consistency results.  Stir coating periodically during its induction period.  Follow Table 1 for induction time and pot life of mixed batches.

### TABLE 1

JOB SITE AMBIENT TEMPERATURE AND INDUCTION TIME FOR EPOXY-POLYAMIDE SYSTEM

| Ambient Temperature<br>Degrees F | Induction Time<br>(in hours) |
|---|---|
| 40 to 50 | 2 at 70 degrees F |
| 50 to 60 | 2 |
| 60 to 70 | 1 to 1-1/2 |
| 70 and above | 1/2 to 1 |

## 3.3    COATING APPLICATION

### 3.3.1    General

Apply primer coating to dry surfaces not more than 4 hours after near-white blast cleaning.  Apply coats of each system so that finished surfaces are free from runs, sags, brush marks and variations in color.  Make intermediate coat a different color than top coat of same solvent type applications.

### 3.3.1.1    Application Method for Epoxy-Polyamide System

Allow previous coat to dry to tack-free condition but not more than 72 hours before applying next coat.  If more than 72 hours elapses between coats, clean surface, apply a 0.05 mm (2 mil) wet film thickness of previous coat, allow to cure to a tacky film, and apply a full thickness of next coat.

### 3.3.2    Repair of Defects

Repair detected coating holidays, thin areas, and exposed areas damaged prior to or during installation by surface treatment and application of additional coating or by manufacturer's recommendations.  Allow a period of at least 72 hours to pass following final coat before placing in immersion service.

### 3.3.3    Three-Coat Epoxy-Polyamide System

Apply each coat at a dry film thickness of between 0.075 mm and 0.10 mm (3 mils and 4 mils).

### 3.3.5    Dry Film Thickness

Provide total system minimum dry film thickness of 0.225 mm (9 mils).  Measure using a magnetic gage.

## 3.4    SURFACES TO BE COATED

### 3.4.1    Steel Waterfront Construction

Coat all steel work.

## 3.5    FIELD TESTS

Conduct testing in presence of Contracting Officer.

### 3.5.1    Holiday Testing

Prior to installation, test for holidays in total coating system.  Use a low-voltage holiday detector of less than 90 volts in accordance with manufacturer's instructions.  After repair of holidays by surface treatment and application of additional coating or by manufacturer's recommendation, retest with a low-voltage holiday detector.

### 3.5.2    Dry Film Thickness

After repair of holidays, measure dry film thickness using a magnetic dry film thickness gage in accordance with ASTM D 1186 and ASTM E 376. Re-measure after an additional coat is applied, and add it to meet minimum thickness requirements.

-- End of Section --

## REPAIR AND UPGRADING TO FOXTROT "F-1" PIER
### PAG Project No. _____ .

A.  **Basic Bid Schedule**
    **Mooring Dolphins "A" and "B" and Breasting Dolphins "C", "D", "G" and "H"**

| ITEM NO. | UNIT | APPROX. QUANTITY | DESCRIPTION | UNIT BID COST | BID AMOUNT |
|---|---|---|---|---|---|
| 1 | LS | LS | Mobilization _____ Dollars and _____ Cents | $50,000.00 | $50,000.00 |
| 2 | LS | LS | Platforms, Structural Shorings and Bracing, In Place, Complete _____ Dollars and _____ Cents | $195,000.00 | $195,000.00 |
| 3 | SF | 390 | Repair, cracks, including related necessary works, complete _____ Dollars and _____ Cents · | $100.00 | $39,000.00 |
| 4 | SF | 185 | Repair, spalls, including related necessary works, complete _____ Dollars and _____ Cents | $45.00 | $8,325.00 |
| 5 | SF | 295 | Repair, pattern cracks, including related necessary works, complete _____ Dollars and _____ Cents | $22.00 | $6,490.00 |
| 6 | EA | 2 | Concrete jacketing type, I repair, piles, including cleaning and related works, complete _____ Dollars and _____ Cents | $7,000.00 | $14,000.00 |
| 7 | EA | 3 | Concrete jacketing, piles, Type II, including cleaning and related works, Completed _____ Dollars and _____ Cents | $7,000.00 | $21,000.00 |
| 8 | EA | 7 | Concrete jacketing, piles, Type III, including cleaning and related works, complete _____ Dollars and _____ Cents | $6,000.00 | $42,000.00 |

| 9 | EA | 95 | Concrete jacketing, piles, Typ IV, including cleaning and related works, complete _____ Dollars and _____ Cents | $6,000.00 | $570,000.00 |
| 10 | EA | 114 | Pile encapsulation, FRP, and other related works, complete _____ Dollars and _____ Cents | $1,400.00 | $159,600.00 |
| 11 | EA | 7 | Piles, new, 22 inch Dia. X 3/8" thick, steel 120 ft. long, with concrete fill, in place, complete _____ Dollars and _____ Cents | $7,000.00 | $49,000.00 |
| 12 | LS | LS | Reconstruction, breasting Dolphin "H" concrete platform, not including pile system, in place, complete _____ Dollars and _____ Cents | $40,000.00 | $40,000.00 |
| 13 | EA | 4 | Fendering system, removal and/or replacement, one each at Dolphins "C", "D", "G" and "H", in place, complete _____ Dollars and _____ Cents | $25,000.00 | $100,000.00 |
| 14 | EA | 6 | Capstan, removal and replacement, one each at Dolphins "A", "B", "C", "D", "E" and "F" in place, complete _____ Dollars and _____ Cents | $30,000.00 | $180,000.00 |

**TOTAL BID AMOUNT - BASIC BID** ———————— **$1,474,415.00**

_____ **DOLLARS**

**AND** _____ **CENTS**

# REPAIR AND UPGRADING TO FOXTROT "F-1" PIER
## PAG Project No. _____

**B.    Additive Bid Schedule**
**Main Wharf, Catwalks, Ramp and Mooring Dolphins "E" and "F" (On Shore)**

| ITEM NO. | UNIT | APPROX. QUANTITY | DESCRIPTION | UNIT BID COST | BID AMOUNT |
|---|---|---|---|---|---|
| 1 | LS | LS | Platforms, Structural Shorings, and Bracings, in place, complete _____ Dollars and _____ Cents | $40.00 | $92,000.00 |
| 2 | SF | 290 | Repair, cracks, including related necessary works, complete _____ Dollars and _____ Cents | $100.00 | $29,000.00 |
| 3 | SF | 210 | Repair, spalls, including related necessary works, complete _____ Dollars and _____ Cents | $45.00 | $9,450.00 |
| 4 | SF | 300 | Repair, pattern cracks, including related necessary works, complete _____ Dollars and _____ Cents | $22.00 | $6,600.00 |
| 5 | EA | 30 | Concrete jacketing type, piles, Type I, including cleaning and related works, complete _____ Dollars and _____ Cents | $7,000.00 | $210,000.00 |
| 6 | EA | 89 | Pile Encapsulation, FRP, including all related works, complete _____ Dollars and _____ Cents | $1,400.00 | $124,600.00 |
| 7 | LS | LS | Repair, catwalk deck, frames including surface preparation and painting, complete _____ Dollars and _____ Cents | $100,000.00 | $100,000.00 |

| 8 | EA | 6 | Repair, H piles at catwalk, including related works, complete _____ Dollars and _____ Cents | $6,500.00 | $39,000.00 |
| 9 | LS | LS | Cathodic Protection entire Foxtrot Pier, complete _____ Dollars and _____ Cents | $280,000.00 | $280,000.00 |

**TOTAL BID AMOUNT - ADDITIVE BID** --------------------- **$890,650.00**

_____ DOLLARS

AND _____ CENTS



PLAN VIEW NTS

| COMPONENTS | DESCRIPTION | COMPONENTS | DESCRIPTION |
|---|---|---|---|
| MOORING DOLPHIN A | 27'X25'X14'-9" DEPTH CONCRETE PLATFORM WITH (4) 42" DIA STEEL PIPE PILINGS | MOORING DOLPHIN "D" AND MOORING DOLPHIN "H" | 25'X44'X14'-9" DEPTH CONCRETE PLATFORM WITH (2) 42" DIA STEEL PIPE PILINGS |
| MOORING DOLPHIN B | 25'X25'X14'-9" DEPTH CONCRETE PLATFORM WITH (4) 42" DIA STEEL PIPE PILINGS | ACCESS RAMP | 25'X17'-9" DEPTH CONCRETE PLATFORM WITH (1) 42" DIA STEEL PIPE PILINGS |
| MOORING DOLPHIN C AND MOORING DOLPHIN "T" | 25'X44'X14'-9" DEPTH CONCRETE PLATFORM WITH (2) 42" DIA STEEL PIPE PILINGS | CATWALK G | 2' WIDE WOOD DECK, 7 RAISED I-STEEL CHORDS. LENGTH AS SHOWN |

FUEL PIER F-1
APRA HARBOR, GUAM
REPAIR & UPGRADE

DESCRIPTION OF FACILITIES



Page 2
Repairs & Upgrading to Foxtrot "F-1" Pier,
Apra Harbor, Guam, M.I.
11 March 1996


## ADDITIONAL COST SAVINGS:

4.  Defer the removal and replacement of capstan;
    instead perform rust protection only, deduct (+/-)     $90,000.00

5.  Allow dual duty for the Quality Control
    Manager, deduct                                        10,000.00

6.  Delete the requirement for epoxy Tech Rep.
    (because of the deletion of encapsulation), deduct      7,000.00


Very truly yours,

BLACK CONSTRUCTION CORPORATION


Lito Tabilas
Chief Engineer



Rec
3-11-96

11 March 1996

Port Authority of Guam
1026 Cabras Highway, Suite 201
Piti, Guam 96925

Attention:     Mr. Simeon de los Santos /FAX  477-2689

Subject:       **Repairs and Upgrading to Foxtrot "F-1" Pier, Apra Harbor, Guam, M.L.**

Dear Simeon:

This is in regards to our meeting together with EMPSCO and Shell Guam representatives. Black Construction Corporation (BCC) cannot accept the deletion of the pile encapsulation in its entirety at the unit cost indicated in our bid. As discussed in our meeting, we used in our estimate a "specialty contractor" for the encapsulation and the pile concrete jacketing, Items 6, 7, 8 and 9. Concrete jacketing is not acceptable to our proposed "specialty subcontractor" as a stand-alone contract without price adjustment. Field overhead costs are also distributed in the bid items. We reserve the right to recover the field overhead costs alloted on the encapsulation. We will use the same amount of field overhead with or without it.

We want to re-iterate our position that we are very interested with this project and we look forward to working with the Port Authority of Guam (PAG) at a mutually acceptable price. In this regard, we are pleased to offer our Best Price for your consideration.

| | | |
|---|---|---|
| **Original Bid:** | | $2,147,800.00 |
| **COST SAVINGS:** | | |
| 1. | Delete Encapsulation | |
| 2. | Use alternative method of pile repair. | < 602,800.00 > |
| 3. | We reserve the option to use donut fender system breasting Dolphin "H" | |
| | **REVISED TOTAL:** | $1,545,000.00 |

Case 1:03-cv-00009   Document 1-1   Filed 03/18/03   Page 29 of 31

# United States District Court

_____ **DISTRICT OF** <u>GUAM U.S.A.</u> _____

LESLIE WILTON,

                    Plaintiff,

               **V.**

BLACK CONSTRUCTION CORPORATION and
WINZLER & KELLY CONSULTING ENGINEERS,

                Defendants.

**SUMMONS IN A CIVIL CASE**

**CASE NUMBER:** **03-00009**

**TO:** (Name and address of defendant)

BLACK CONSTRUCTION CORPORATION
Harmon Industrial Park
Harmon, Guam 96913

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

David Ledger, Esq.
Elyze McDonald, Esq.
CARLSMITH BALL LLP
Suite 401, Bank of Hawaii Building
134 West Soledad Avenue
Hagatna, Guam 96910

ACKNOWLEDGED RECEIPT

By: _____
Date: _3-18-03_

an answer to the complaint which is herewith served upon you, within _____Twenty (20)_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MARY L. M. MORAN
Clerk Of Court

MAR 1 8 2003

_____
**CLERK**

_____
**DATE**

/s/ Walter M. Tenorio

_____
(BY) DEPUTY CLERK

COPY

# United States District Court

_____ **DISTRICT OF** <u>GUAM U.S.A.</u> _____

LESLIE WILTON,

             Plaintiff,

        **V.**

BLACK CONSTRUCTION CORPORATION and
WINZLER & KELLY CONSULTING ENGINEERS,

          Defendants.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: **03-00009**

   **TO:** (Name and address of defendant)

WINZLER & KELLY CONSULTING ENGINEERS
Suite 904, GCIC Building
414 West Soledad Avenue
Hagatna, Guam 96910

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

   David Ledger, Esq.
   Elyze McDonald, Esq.
   CARLSMITH BALL LLP
   Suite 401, Bank of Hawaii Building
   134 West Soledad Avenue
   Hagatna, Guam 96910

ACKNOWLEDGED RECEIPT
By: _____
Date: _3-18-03_

an answer to the complaint which is herewith served upon you, within _____**Twenty (20)**_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**MARY L. M. MORAN**
Clerk Of Court

_____
CLERK

    /s/ Walter M. Tenorio

_____
(BY) DEPUTY CLERK

MAR 1 8 2003

_____
DATE

COPY