BERMAN O'CONNOR MANN & SHKLOV
503 Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 499-4366

Attorneys for Defendant:
*WINZLER & KELLY CONSULTING ENGINEERS*

FILED
DISTRICT COURT OF GUAM
NOV - 2 2004
MARY L. M. MORAN
CLERK OF COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORP., WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP.,<br><br>Defendants. | CIVIL CASE NO. CIV 03-00009<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON NINTH CAUSE OF ACTION (BREACH OF WARRANTY AGAINST WINZLER & KELLY)** |

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON NINTH CAUSE OF ACTION (BREACH OF WARRANTY AGAINST WINZLER & KELLY)

### Introduction.

This case arises out of damages incurred at Pier F-1 in the Port of Guam: After an earthquake in October 2001, it was discovered that, among other things, a number of supporting piles had pulled loose from the bottom of F-1 and its adjoining dolphins.[1] Five years previously, in 1996, Winzler & Kelly, as a consultant to Black Construction Corp., had prepared plans for the repair of those piles, and is sued herein on the theory that its plans were defective. Three claims are asserted against it by Plaintiff Gargrave Syndicate: 1) Negligent Property Damage; 2) Breach of Contract; and 3) Breach of Warranty of Workmanlike Performance. See First Amended Complaint (Second, Fifth

---

[1] "Dolphins" are small satellite docks connected to a main pier by walkways.

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt (Breach).wpd

ORIGINAL

and Ninth Causes of Action).

The Syndicate's claim, in its Fifth Cause of Action, for Breach of Warranty of Workmanlike Performance against Winzler & Kelly states in full as follows:

> *Upon information and belief, the contract between Black and Winzler is a maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Accordingly, there is implied in said contract a warranty of workmanlike performance owed to the Port Authority* as an assignee and/or third-party beneficiary of said contract. Winzler breached said warranty of workmanlike performance by providing plans and specifications for the project, which were careless, inadequate, insufficient, and erroneous. In addition, Winzler breached the warranty of workmanlike performance owed to the Port Authority as an assignee and/or third-party beneficiary of such contract by failing to report deficiencies in the plans and specifications to the Port Authority. These breaches of the warranty of workmanlike performance by Winzler have directly caused damage and losses to Plaintiff.

First Amended Complaint (filed December 23, 2003) at paragraph 37 (emphasis added).

We may assume, for purposes of this motion, that Winzler & Kelly's contract with Black to design an alternative method of pile repair for the Pier F-1 dolphins is in fact, as characterized by the Syndicate, a maritime contract. Contrary to the Syndicate's assumption, however, an implied warranty of workmanlike performance does not inhere in every such contract. On the contrary, the maritime warranty of workmanlike performance is an exceptionally narrow warranty, and arises only in extremely limited circumstances. It is, in fact, available only in a situation where the plaintiff owes a no-fault duty to another (usually the duty of seaworthiness), for which it seeks indemnity from the defendant. Since this case presents no such situation, judgment should be granted on the pleadings in favor of Winzler & Kelly and against the Syndicate on the Syndicate's claim for Breach of Warranty of Workmanlike Performance.

S.J. Gargrave Syndicate at Lloyd's v. Black Construction Corp., et al.   Civil Case No. CIV03-00009
MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS ON SECOND CAUSE OF ACTION (NEGLIGENCE AGAINST
WINZLER & KELLY)

Page 3

### Standard For Judgment on the Pleadings

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Flowers v. First Hawaiian Bank, 295 F.3d 966, 969 (9th Cir. 2003) (quoting Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998)).

### Origin Of The Maritime Warranty of Workmanlike Performance.

The maritime warranty of workmanlike performance was first recognized by the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232 (1956), and indeed continues to be known as the "Ryan warranty." The facts of Ryan illustrate the nature and function of the warranty. In Ryan, a shipowner sued a stevedoring company for indemnity after the shipowner had been held liable on an unseaworthiness claim brought against it by a longshoreman, an employee of the stevedore, who was injured on the ship by materials that had been stored there in an unsafe manner by the stevedore. The Supreme Court upheld the shipowner's claim against the stevedore for indemnity, holding that such a claim arises out of a implied warranty of workmanlike performance inherent in the stevedore's contract with the shipowner for the loading of the materials. The warranty, wrote the Court:

> is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product.

Ryan, 350 U.S. at 237.

### Reasons For Implying the Warranty.

The court's holding in <u>Ryan</u> was a response to two unique circumstances. The first, which dictated the very existence of the warranty, was the fact that, due to legal peculiarities in the admiralty realm, failure to recognize such a warranty would result in unjustly burdening the shipowner with the consequences of what was really the stevedore's wrongdoing. A direct lawsuit by the injured longshoreman against his employer, the stevedore, was impossible, being precluded by the Longshoremen's and Harbor Workers' Compensation Act. However, the shipowner was strictly liable to the longshoreman injured by defective conditions on his ship, under the maritime claim of unseaworthiness. Unless some avenue of relief for the shipowner against the stevedore could be recognized, therefore, the shipowner, however innocent he may be of the defective condition causing the injury, would always be left holding the bag. The recognition of an implied warranty of workmanlike performance in the stevedore's contract with the shipowner was a way to relieve the shipowner from the injustice of this situation, and hold the actual wrongdoer ultimately responsible, by creating a circuitous path of liability: longshoreman → shipowner; shipowner → stevedore. See generally <u>Knight v. Alaska Trawl Fisheries, Inc.</u>, 154 F.3d. 1042, 1044 (9th Cir. 1998).

The second unique circumstance, which dictated the scope of the warranty, arose from the paramount maritime necessity of maintaining a ship in seaworthy condition. The law of admiralty has always recognized the unavoidable fact that to launch a ship at sea is, even under the best of conditions, to gamble with the prodigious powers of nature and fate that rule the deep, with human lives at stake to the outcome. Given the nature of the danger and the stakes, it has always been thought vitally important that the gamble be made on the best odds that could reasonably be obtained. It is this paramount concern for seaworthiness that gives rise to a cause of action against

S.J. Gargrave Syndicate at Lloyd's v. Black Construction Corp., et al.      Civil Case No. CIV03-00009
MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS ON SECOND CAUSE OF ACTION (NEGLIGENCE AGAINST
WINZLER & KELLY)      Page 5

the shipowner for unseaworthy conditions on his ship, even in the absence of any negligence on his part in creating them. See, e.g., Flunker v. United States, 528 F.2d 239, 242 (9th Cir. 1975) (doctrine of seaworthiness arises from recognition of "the dangerous character of [seamen's] work and their quasi-captive status during a voyage"). This extremely strict, no-fault form of liability is justified by the equally strict necessity of a seaworthy ship, and the fact that the shipowner is best positioned to ensure that the ship is in such condition. The same concerns have been found to justify imposing the same strict form of liability on anyone else, usually but not necessarily a stevedore, who is contractually responsible for creating the conditions that prevail on the ship. See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 323-24, 84 S.Ct. 748 (1964). This is the Ryan maritime warranty of workmanlike performance.

**The Maritime Warranty Of Workmanlike Performance Is Limited To Its Purpose.**

The Ninth Circuit has, on several occasions, taken due note of the peculiar legal and historical circumstances out of which this warranty arose, and has limited its application accordingly. For example, in Knight v. Alaska Trawl Fisheries, Inc., 154 F.3d. 1042 (9th Cir. 1998), the court surveyed the history of the warranty, and emphasized that it was "tied to the seaworthiness doctrine." Id. at 1045. It acknowledged that the warranty remained viable in the context of that doctrine, but cautioned:

> [T]he more the case deviates from the original Ryan scenario, the less justification there is to apply the warranty. . . . We, like other circuits, have declined to extend Ryan into varied and more far-reaching fact scenarios than it contemplated.

Id. at 1046 (citations and internal quotation marks omitted). Accordingly, it held that the warranty will not be implied in favor of a party other than one who owes a no-fault duty to another (such as

one based on seaworthiness), for which it seeks indemnity. Similarly, the court in <u>Flunker v. United States</u>, 528 F.2d 239, 243 (9th Cir. 1975), cautioned against "unmoor[ing] the theory from the unseaworthiness doctrine from which it sprung;" and in <u>California Home Brands, Inc. v. Ferreira</u>, 871 F.2d 830, 836 (9th Cir. 1989), it refused to imply a warranty of workmanlike performance in a situation where the plaintiff seeking to invoke the warranty had not been held liable based on an absolute no-fault duty. The court found that "the rationale for implying a warranty or workmanlike performance [did] not apply" in that situation. <u>Id</u>.

Closest on point to this case is <u>Davis v. Chas. Kurz & Co., Inc.</u>, 483 F.2d 184 (9th Cir. 1973), a case arising out of injuries sustained by a worker on a ship repair project – a "dead ship" as to which no warranty of seaworthiness attached. The general contractor on the repair project (Northwest) sought to hold one of its subcontractors (Pacific) liable for indemnity on the basis of the warranty of workmanlike performance. The court held:

> We see no reason to imply the existence of such a warranty running from Pacific to Northwest. . . . Northwest argues that the existence of the warranty does not depend on a corresponding existence of a duty of seaworthiness owed by the party seeking indemnification. We think that it does. The circumstance which gives rise to the implied warranty is the duty of seaworthiness owed by the party seeking indemnification. That circumstance is not present here.

<u>Id</u>. at 187 (citations omitted). The applicability of the warranty is thus closely tie to the reasons that first gave rise to its recognition, and it will not be applied where those reasons do not exist.

### The Maritime Warranty of Workmanlike Performance In This Case.

None of those reasons exist in this case. To begin with, the warranty gives rise to a right of *indemnity*, meaning that the party asserting the warranty must have already been held liable to a third person, or at least stand in danger of such liability in a pending matter. The Port Authority, however,

S.J. Gargrave Syndicate at Lloyd's v. Black Construction Corp., et al.  Civil Case No. CIV03-00009
MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS ON SECOND CAUSE OF ACTION (NEGLIGENCE AGAINST
WINZLER & KELLY)

Page 7

in whose shoes the Syndicate stands as subrogee, has not been held liable to anyone for the conditions on Pier F-1 that were allegedly created by Winzler & Kelly. Nor is anyone asserting any claim against the Port Authority for any injury or damage resulting from those conditions. Thus, the concern that an innocent party not be left out of pocket, and without a remedy against the actual wrongdoer, does not arise.

Second, even if someone were asserting a claim against the Port Authority for damages resulting from Winzler & Kelly's work, that claim would, in all likelihood, be for some species of negligence. It certainly would not, and could not, be a strict no-fault liability claim for unseaworthiness, because the Port Authority is not a shipowner, and its Pier is not a ship. There is no claim available against a port operator that is comparable to a seaworthiness claim against a shipowner. It does not state a cause of action, in other words, to claim that a pier is somehow not "landworthy," or "portworthy." The dangers inherent in the operation of port are qualitatively different from those involved in the operation of a ship, and have been never thought to require the same strict standards of liability. Because a port operator cannot held to the same strict standard of liability as a shipowner, there is therefore no need for a corresponding right in the port operator to seek indemnity, in the form of a claim for breach of warranty of workmanlike performance, from parties who owe it a contractual duty.

In sum, the warranty of workmanlike performance derives from the fundamental admiralty requirement of seaworthiness. To apply it outside that context – where, as here, the workmanlike or non-workmanlike nature of the performance of the contract would not impact on the seaworthiness of any ship, but only, as it were, the "landworthiness" of the pier – is to apply it irrelevantly to its own rationale, and thus inappropriately.

## Conclusion.

Because the Port Authority has not been, and cannot be, held liable for unseaworthiness, or on any other comparable no-fault basis, to any person for damages allegedly resulting from Winzler's and Kelly's design work on F-1 Pier and its dolphins, the maritime warranty of workmanlike performance is inapplicable, and judgment must be granted in Winzler & Kelly's favor as to the Ninth Cause of Action.

Respectfully submitted this __1__ day of November, 2004.

> BERMAN O'CONNOR MANN & SHKLOV
> Attorneys for Defendant:
> *Winzler & Kelly Consulting Engineers*
>
> By: _____
> DANIEL J. BERMAN