**BERMAN O'CONNOR MANN & SHKLOV**
**503 Bank of Guam Building**
**111 Chalan Santo Papa**
**Hagåtña, Guam 96910**
**Phone: (671) 477-2778**
**Fax: (671) 499-4366**

Attorneys for Defendant:
*WINZLER & KELLY CONSULTING ENGINEERS*

FILED
DISTRICT COURT OF GUAM

NOV - 2 2004

MARY L. M. MORAN
CLERK OF COURT

65

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE<br>AT LLOYD'S,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORP.,<br>WINZLER & KELLY, and<br>ENGINEERING MANAGEMENT &<br>PLANNING SERVICES CORP.,<br><br>Defendants. | CIVIL CASE NO.: CIV 03-00009<br><br>**MEMORANDUM IN SUPPORT<br>OF MOTION FOR JUDGMENT<br>ON THE PLEADINGS ON<br>SECOND CAUSE OF ACTION<br>(NEGLIGENCE AGAINST<br>WINZLER & KELLY)** |

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
ON SECOND CAUSE OF ACTION (NEGLIGENCE AGAINST WINZLER & KELLY)**

### Introduction

This case arises out of damages incurred at Pier F-1 in the Port of Guam: After an earthquake

in October 2001, it was discovered that, among other things, a number of supporting piles had pulled

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

ORIGINAL

4

5  loose from the bottom of F-1 and its adjoining dolphins.[1]  Five years previously, in 1996, Winzler

6  & Kelly, as a consultant to Black Construction Corp., had prepared plans for the repair of those piles,

7  and is sued herein on the theory that its plans were defective.  Three claims are asserted against it

8  by Plaintiff Gargrave Syndicate: 1) Negligent Property Damage; 2) Breach of Contract; and 3)

9
   Breach of Warranty of Workmanlike Performance.  See First Amended Complaint (Second, Fifth
10
11  and Ninth Causes of Action).

12       The Syndicate's claim, in its Second Cause of Action, for Negligent Property Damage against

13  Winzler & Kelly states in full as follows:

14
             Winzler, as a professional engineering firm, owed a non-delegable
15           duty of skill and competence to the Port Authority and breached that
             duty by *incompetently and negligently preparing plans and*
16           *specifications* for the Project.  In addition, Winzler *negligently*
             *recommended that changes be made* to the proposed plans at the
17           Project, which changes were negligent and improper, and led to the
             Project, which changes were negligent and improper, and led to the
18           property of the Port Authority being substantially weaker and unable
             to withstand future earthquakes and typhoons, and to further and
19           more severe property damage. The negligence of Winzler directly led
20           to losses and damage to Plaintiff.

21  First Amended Complaint (filed December 23, 2003) at paragraph 21 (emphasis added).

22       The preceding factual allegations make clear that the "plans," "specifications," and "changes"

23  referred to in the Negligent Property Damage claim are the pile repair plans that Winzler & Kelly
24
   prepared in 1996 at the behest of Black Construction, the contractor on the pier repair project:
25

26

27       [1]     "Dolphins"are small satellite docks connected to a main pier by walkways.

28  E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

> Black then engaged the services of Winzler to provide revised design and engineering specifications for the repair work. Based on that revised design, engineering specifications, and engineering drawings, Black resubmitted a bid to repair the earthquake damage, which bid was accepted by the Port Authority.

First Amended Complaint at paragraph 8. They further make clear that the relationship between Black and Winzler & Kelly with respect to the repair plans was contractual:

> The Port Authority is an assignee and/or third party beneficiary of the contract between Black and Winzler for the provision of services in connection with the Project.

First Amended Complaint at paragraph 13.

Judgment should be granted on the pleadings in favor of Winzler & Kelly and against the Syndicate on the Syndicate's claim for Negligent Property Damage, since the Economic Loss Doctrine precludes the Syndicate from recovering in negligence for damage to property incurred as the result of an alleged breach of contract. The Syndicate's negligence claim against Winkler & Kelly is an attempt to seek, under tort theory, damages for what is in substance a breach of contract. Under the Economic Loss Doctrine, such a claim fails as a matter of law.

### Standard For Judgment on the Pleadings

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Flowers v. First Hawaiian Bank, 295 F.3d 966, 969 (9th Cir. 2003) (quoting Nelson v. City of Irvine, 143 F.3d 1196,

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

1200 (9ᵗʰ Cir. 1998)).

### Basic Concept of the Economic Loss Doctrine.

The Economic Loss Doctrine provides that one who sustains solely economic loss as a result of the breach of a contract, is free to sue for breach of the contract, but may not sue for the same economic loss under negligence or other tort theories. In this context, "economic loss" is a term of art, and means the loss of the value of the thing contracted for, as opposed to damage to other property or injury to persons. For example, in Ellis v. Robert C. Morris, Inc., 513 A.2d 951 (N.H. 1986), the court wrote:

> When a defective product accidentally causes harm to persons or property, the resulting harm is treated as personal injury or property damage. But when damage occurs to the inferior product itself, through deterioration or non-accidental causes, the harm is characterized as economic loss. In general, persons must refrain from causing personal injury and property damage to third parties, but no corresponding tort duty exists with respect to economic loss.

Id. at 954.

Thus, for example, if a generator malfunctions and explodes, destroying itself but doing no damage to any persons or other property, the buyer of the generator may sue the seller for breach of contract or breach of warranty, but not for negligence, even if we assume arguendo that the seller knew or should have known that the generator was defective, and thus acted negligently in selling it. The liability of the seller for the loss of the generator is limited to that which he voluntarily

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

assumed under the terms of the contract of sale. If, on the other hand, the exploding generator

demolishes the buyer's garage, and/or injures the buyer himself, or his family or guests, then there

is damage beyond mere "economic loss" – i.e., beyond the loss of the benefit of the contract to buy

the generator. In that case, but only that case, a negligence or other tort claim would be cognizable.

This is not such a case, because the only damage alleged "was done to F pier and the dolphins

thereof." First Amended Complaint at paragraph 15.


### Legal Recognition of the Economic Loss Doctrine.

The Economic Loss Doctrine was first articulated in <u>Seely v. White Motor Company</u>, 403

P.2d 145 (Cal. 1965) (in bank, opinion of Traynor, C.J.), in holding that the buyer of a truck which

"bounced violently" when driven, and could not be repaired, could sue the manufacturer for breach

of contract or breach of warranty, but not in tort. Since then, the Doctrine has been adopted by the

majority of states. See, e.g., <u>Continental Insurance v. Page Engineering Co.</u>, 783 P.2d 641, 647-49

(Wyo. 1989) ("Wyoming does not permit recovery in strict liability or negligence for damage caused

to the product itself"); <u>Waggoner v. Town & Country Mobile Homes, Inc.</u>, 808 P.2d 649, 653 (Okla.

1990) ("in Oklahoma no action lies in manufacturers' products liability for injury only to the product

itself resulting in purely economic loss"); <u>Lee v. TAC International Constructors, Inc.</u>, CNMI

Superior Ct. Civ. No. 96-349 (Order of July 2, 1997), slip op. at 10 (copy attached hereto as an

exhibit) ("This court follows the majority rule that denies recovery in negligence between contracting

parties when a plaintiff's only damages are the loss in value of the bargained-for consideration").

The Economic Loss Doctrine was incorporated into federal admiralty law in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858,106 S.Ct. 2295 (1986). In East River, the charterers of tanker ships sued the ships' manufacturers for strict liability and negligence when turbine parts built and installed by the manufacturers disintegrated. The Supreme Court unanimously endorsed the Economic Loss Doctrine, writing:

> that a manufacturer in a commercial relationship has no duty under either a negligence or strict products theory to prevent a product from injuring itself.

Id. Instead of tort, a plaintiff who failed to receive the benefit of his bargain should seek his remedy in contract:

> Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk.

Id. at 2303 (citations omitted).

The Supreme Court's reasoning in East River has persuaded numerous states to adopt the rule that had not already done so, as in the Continental, Waggoner, and Lee cases cited above. See also, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pratt & Whitney Canada, Inc., 815 P.2d 601, 603-04 (Nev. 1991) (calling East River "a well-reasoned admiralty case" in which "a unanimous United

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

States Supreme Court expressed what is essentially the basis for our ruling in the instant case"). East River has even persuaded some courts which had earlier rejected the Economic Loss Doctrine, or accepted only limited versions of it, to change their positions. For example, the Third Circuit in Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110 (3rd Cir. 1987), held that Pennsylvania courts would apply the Economic Loss Doctrine across the board to defeat all negligence claims based on economic loss. The Court found East River so persuasive that it rejected its own previously held view, expressed only six years before in Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165 (3rd Cir. 1981), that Pennsylvania courts would *not* apply the doctrine in certain circumstances. Similarly, the Ohio Supreme Court in Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 537 N.E.2d 624 (Ohio 1989), cited East River as "strongly support[ing]" its adoption of the Economic Loss Doctrine, and criticized its own earlier cases in which it had rejected the doctrine.

## The Economic Loss Doctrine In This Case.

The Syndicate invokes both admiralty and diversity jurisdiction in this case:

> This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has jurisdiction pursuant to 28 U.S.C. § 1333(1). There is also complete diversity of citizenship between the Plaintiff and the Defendants herein. Therefore, this Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

First Amended Complaint at paragraph 1. However, the Economic Loss Doctrine should apply whether we regard this as an admiralty or a diversity matter. In admiralty, East River plainly controls, and the Doctrine applies. In diversity, the question is only slightly less obvious. A federal court in a diversity matter applies the substantive law of the forum, meaning in this case the law of Guam. See generally Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938). It does not appear that the Supreme Court of Guam has yet addressed the applicability of the Economic Loss Doctrine, but there is every reason to believe that it would adopt the rule, as have the majority of states, as well as the neighboring CNMI, particularly since East River. Winzler & Kelly urges the Court to follow this well-reasoned trend, and hold that the doctrine applies in Guam as well.

Lest there be any question arising from some of the factual peculiarities of this case, it should be noted that the Economic Loss Doctrine applies where the contract is for the provision of services, including professional design services, as well as where it is for the sale of goods. For example, in Employers Insurance of Wausau v. Suwannee River Spa Lines, Inc., 866 F.2d 752 (5th Cir. 1989), the court concluded that:

> East River's broad concern for preserving the integrity of contract law in commercial settings applies equally to a case such as this where the professional services [design of a ship] are an integral part of the manufacture of a product and where the only injury alleged is to the product itself.

Id. at 763. Accord Shipping Corp. of India, Ltd. v. American Bureau of Shipping, 744 F.Supp. 447, 449 (S.D.N.Y. 1990); 2314 Lincoln Park West Condominium Ass'n v. Man, Gin, Ebel & Frazier,

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

1

2

3
S.J. Gargrave Syndicate at Lloyd's v. Black Construction Corp., et al.          Civil Case No. CIV03-00009
MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS ON SECOND CAUSE OF ACTION (NEGLIGENCE AGAINST
WINZLER & KELLY)                                                                                       Page 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ltd., 555 N.E.2d 346, 351 (Ill. 1990) (architect); The Ocean Ritz of Daytona Condominium v. GGV

Associates, Ltd., 710 So.2d 702 (Fla. App. 1998) (all holding that the Economic Loss Doctrine

extends to situations involving contracts for professional services). It also applies where the would-

be plaintiff in tort is a third-party beneficiary to the contract rather than one of the immediate

contracting parties. Indeed, in both Shipping Corp. of India and Ocean Ritz, as in this case, the two

circumstances co-existed. In both cases, the plaintiff was the third-party beneficiary of a contract

for professional services, and in both cases the Economic Loss Doctrine was applied to preclude any

tort remedy. The court in Ocean Ritz posed the question as:

> whether the economic loss rule bars a negligence action in the context
> of a third-party beneficiary of a professional services consultant's
> contract when the plaintiff is seeking to recover only economic loss

Id. at 702, and answered it in the affirmative. See also Shipping Corp. of India, supra, 744 F.Supp.

at 449 (noting that the plaintiff "admits to being an intended third-party beneficiary," "has brought

contractual claims," and "was in a position to negotiate with ... the manufacturer over the risk of

loss"). Likewise, the court in Sensenbrenner v. Rust, Orling & Neal, Architects, Inc., 374 S.E.2d 55

(Va. 1988), a case involving a home swimming pool that cracked and leaked, held that the Economic

Loss Doctrine precluded the homeowner's negligence claim against the architect who had designed

the pool pursuant to a subcontract with the general contractor.

      The Economic Loss Doctrine therefore likewise precludes a negligence claim on the facts

of this case, even taking all allegations in the complaint as true. The Syndicate, like the Post

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

Authority in whose shoes it stands, is limited to a contract claim for recovery of the benefit of its

bargain.

## Conclusion

Since the damage in this case "was done to F pier and the dolphins thereof," First Amended

Complaint at paragraph 15, and not to any other persons or property, and since the work was done

pursuant to a contract, the Economic Loss Doctrine precludes recovery for it on a theory of

negligence. Accordingly, judgment must be granted in Winzler & Kelly's favor as to the Second

Cause of Action.

Respectfully submitted this __1__ day of November, 2004.

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Defendant:
*Winzler & Kelly Consulting Engineers*

By: _____
DANIEL J. BERMAN

E:\Dan\WinzlerKelly\Memo re Mtn Jdgmt 2nd COA.wpd

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ANDY J. LEE, and<br>KWUN LEE CO., INC.<br><br>    Plaintiffs,<br><br>v.<br><br>TAC INTERNATIONAL CONSTRUCTORS,<br>INC., ANTONIO T. LIM, J.G. SABLAN<br>ROCK QUARRY, CMS CONSTRUCTION<br>AND MATERIALS SUPPLY, CENTURY<br>INSURANCE COMPANY, INC., and<br>MANUAL S. CHARGUALAF<br>    Defendants. | Civil Action No. 96-349<br><br>**ORDER ON MOTION TO DISMISS<br>4TH, 5TH AND 6TH CAUSES<br>OF ACTION IN PLAINTIFFS'<br>SECOND AMENDED COMPLAINT** |

    Defendant TAC International Contractors, joined by defendant Antonio T. Lim, moves to dismiss the fourth, fifth and sixth causes of action contained in the plaintiffs' Second Amended Complaint, filed with the court in this action on January 29, 1997. Moving defendants contend that the facts as alleged in the complaint state a basis for the recovery in contract for economic damages only, and that plaintiffs' fourth cause of action for negligence, fifth cause of action for intentional misrepresentation and sixth cause of action for negligent misrepresentation must be dismissed pursuant to Rule 12(b)(6) of the Commonwealth Rules of Civil Procedure. Plaintiffs oppose the motion, asserting the existence of concurrent duties owed by the defendants toward the plaintiff in both contract and tort. The court heard the matter on May 21, 1997 and after consideration of the arguments of counsel, the supplemental briefs filed by the parties, and the relevant authorities, hereby issues its decision. For reasons that follow, the court finds that the plaintiffs have failed to state a



7

1   claim for relief founded in negligence and therefore grants the motion to dismiss the fourth and sixth

2   causes of action set forth in the Second Amended Complaint. The pleading does, however, set forth

3   facts which, if proven true, would entitle the plaintiffs to a legal recovery for fraud. The defendants'

4   motion to dismiss plaintiffs' fifth cause of action is therefore denied.

## I. FACTS

6       Plaintiffs Andy J. Lee and Kwun Lee Co., Inc., (hereafter "KCCI") filed their Second

7   Amended Complaint on January 29, 1997 alleging eleven causes of action, ten of which name the

8   moving defendant TAC International Constructors, Inc., (hereafter "TAC") and seven of which name

9   defendant CMS Construction and Material Supply, Inc. (hereafter "CMS"). TAC filed its answer

10  to the Second Amended Complaint along with a counterclaim on February 5, 1997. CMS joined

11  TAC's motion to dismiss on April 11, 1997, but has yet to file its answer to the amended pleading.

12      According to the Second Amended Complaint[1], in July of 1994, TAC contracted with KCCI

13  to construct a three-story commercial and residential building in Garapan, Saipan (the "Building")

14  for a contract price of $380,000. The plans for the Building were reviewed and approved by the

15  Department of Building and Safety. The Building was to be constructed primarily of concrete and,

16  as set forth in the plans, the required minimum strength of the concrete was to be 3000 pounds per

17  square inch (psi) for all concrete floors, beams, columns and the roof.

18      Construction proceeded until its eventual completion in November of 1995, whereupon KCCI

19  occupied and rented portions of the Building. Change orders during construction led to a final

20  construction cost of $453,200. During construction, TAC subcontracted with J.G. Sablan Rock

21  Quarry and/or CMS to provide concrete and concrete related services for the construction of portions

22  of the Building. Samples of concrete were delivered to Geotesting, Inc., an independent testing

23  laboratory, for compression testing and analysis.

24

25

---

26  [1] In ruling upon either a motion to dismiss for failure to state a claim for relief or upon a motion for
    judgment on the pleadings, the court accepts all well-pleaded facts as true, while disregarding legal
27  contentions, conjectures, or conclusions of fact or law. *Govendo v. MPLC*, 2 N.M.I. 482, 490 (1992).

28                                      2

1         Concrete was poured for the first two floors on November 26 and December 10 of 1994. TAC

2 represented to Geotesting that it had preserved samples of the concrete from these pours and submitted

3 the samples for testing. Three samples from the "ground floor slab" were found by Geotesting to test

4 at between 2830 psi and 3010 psi, while six samples from the "second floor beam, slab, stair, ground

5 floor column" all tested between 3290 psi and 4280 psi.

6         Concrete was poured for the final major structures on July 29, 1995. Again, TAC submitted

7 samples to Geotesting for compression testing. On August 26, 1995, the laboratory reported that all

8 of the samples had failed to meet the minimum standard, testing only between 2330 and 2830 psi.

9 TAC did not disclose these results to the plaintiff. More concrete was poured in 1995, this time

10 supplied exclusively by CMS, but no testing of the later poured concrete was commissioned by TAC.

11         In early November, KCCI occupied the Building and immediately began experiencing

12 problems with the structure. Specifically, KCCI discovered that the concrete roof leaked significant

13 amounts of water, that the concrete throughout the building appeared flaky, cracked, uneven and

14 susceptible to mold and mildew. TAC did not respond to requests from KCCI to remediate the

15 problems until KCCI stopped payment on their check for the final contract payment of $100,000.

16         Upon completing the Building, TAC was required to submit compression tests of the concrete

17 used in the Building to the Office of Building Safety in order to obtain final occupancy permits.

18 Again, samples allegedly preserved by J.G. Sablan from the July 1995 pour of the concrete "roof

19 slab" were submitted to Geotesting for analysis. Remarkably, the new tests showed the concrete

20 samples to be substantially stronger than previous samples, testing well above the minimum standard

21 at between 4100 and 4280 psi. Only the favorable results were submitted to the Office of Building

22 and Safety for their review.

23         Unsatisfied with TAC's efforts at remediating the problems with the structure, KCCI asked

24 them to cease their efforts on January 29, 1996. KCCI thereupon requested the Office of Building

25 Safety to inspect the Building and hired Geotesting to test core samples of concrete drawn from the

26 Building. Geotesting tested six core samples in March and 20 more that were drawn in May of 1996.

27

28

3

1   All but one of the samples were substantially below the minimum standard, testing only between 1662
2   and 2568 psi.  Only one sample from a second floor beam tested above standard at 3145 psi.

3          TAC retained the engineering firm of Winzler & Kelly to inspect the Building.  In May of
4   1996, Winzler & Kelly issued a letter stating its opinion that "the building represents a significant
5   seismic hazard and should not be occupied in its present condition."  The letter was forwarded to the
6   parties and to the Department of Public Works.

7          On June 24, 1996, the Commonwealth Department of Public Works issued a letter which
8   stated that because of defective building materials, the Building must be vacated and demolished.

9                                      **II. ISSUE**

10         Whether plaintiff has stated a sufficient basis for recovery against defendants TAC and/or
11  CMS for negligence, negligent misrepresentation and/or intentional misrepresentation.

12                                   **III. ANALYSIS**

13         A motion to dismiss pursuant to Rule 12(b)(6) of the Commonwealth Rules of Civil Procedure
14  must be made before pleading if a further pleading is permitted.  Plaintiffs' Second Amended
15  Complaint was filed with the court on January 29, 1997 and summons was served on the moving
16  defendants the next day.  TAC filed its answer to the Second Amended Complaint on February 5,
17  1997.  In the interest of justice, defendants motion shall be deemed to be a motion for partial
18  judgment on the pleadings under Rule 12(c) of the Commonwealth Rules of Civil Procedure.

19

20  **A. Negligence**

21         In the Fourth Cause of Action of their Second Amended Complaint, plaintiffs reallege the facts
22  stated above and allege that the defendants owed them a duty "to perform their contractual obligations
23  with reasonable care and in accord with the CNMI Building Code."  Plaintiffs further allege a duty
24  on the part of the defendants to disclose material facts to the plaintiffs in connection with the
25  construction of the Building.  Plaintiffs allege that the duty was breached by the "use of substandard
26  and/or defective materials to construct the Building and the Building was constructed in a careless,

27

28                                          4

1 negligent, defective and unworkmanship like manner." As a proximate result of the foregoing,

2 plaintiffs claim that they "have been damaged in an amount to be proven at trial."

3       It is clear from the facts stated in the complaint taken as a whole that the plaintiffs are not

4 alleging injury to their persons or damage to property other than to the Building itself. Defendants

5 contend on this basis that the plaintiffs' sole remedy lies in contract and that any tort recovery for

6 negligence is precluded by the doctrine of "economic loss." Economic loss has been defined as

7 "damages for inadequate value, costs of repair and replacement of the defective product, or

8 consequent loss of profits." Note, *Economic Loss in Products Liability Jurisprudence*, 66

9 Colum.L.Rev. 917, 918 (1966). Developed as a limitation on liability in the context of products

10 liability law, the doctrine holds that when the product deteriorates, damages or destroys itself without

11 causing personal injury or damage to other property, the purchaser's damages are to be found in the

12 law of contract, particularly the law of warranty, and that public policy will not support a recovery

13 in tort for the purchaser's loss of the bargained-for product. *Seely v. White Motor Company* 403 P.2d

14 145, 149-150. Although originating in products liability law, the principle has been applied in various

15 commercial contexts, including actions upon construction contracts to recover for building defects.

16 See, e.g., *Ellis v. Robert C. Morris, Inc.* 513 A.2d 951 (N.H. 1986); *Antoniou v. Kenick, 474 A.2d*

17 *566 (N.H. 1984); Redarowicz v. Ohlendorf*, 441 N.E.2d 324 (Ill. 1982). The majority of U.S.

18 jurisdictions adhere to the rule prohibiting recovery of purely economic damages in negligence and

19 the United States Supreme Court unanimously adopted both the rule and its rationale in the admiralty

20 case of *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 106 S.Ct. 2295, 2302 (1986).

21       In *East River S.S. Corp.*, the Supreme Court identified two minority positions that it deemed

22 unsatisfactory. One approach finds no inherent difference between economic loss and personal injury

23 or property damage, because all are proximately caused by the defendant's conduct and because safety

24 and insurance rationales apply to all types of harm. *Id.* at 106 S.Ct. 2301; *Santor v. Karagheusian,*

25 *Inc.*, 207 A.2d 305, 312-313 (N.J. 1965). The Court declined to adopt this approach, stating that

26 it "fails to account for the need to keep products liability and contract law in separate spheres and to

27 maintain a realistic limitation on damages." (106 S.Ct. at 2302). The alternative minority position

28

5

1   rests upon characterizing the "type of risk" represented by the economic loss, compensating in tort
2   for defects that could easily have injured persons or property, but fortuitously did not. *Russell v.*
3   *Ford Motor Co.,* 575 P.2d 1383, 1387 (Or. 1978). The Court rejected this approach as "too
4   indeterminate to enable manufacturers easily to structure their business behavior." (106 S.Ct. at
5   2301). Concluding that economic loss was essentially the failure of the purchaser to receive the
6   benefit of its bargain, the Court found the purchaser fully protected by the damages available under
7   warranty law and upheld the summary judgment against the purchaser on its negligence and products-
8   liability claims.

9       KCCI distinguishes the present case from *East River* on the basis that this action arises out of
10  a commercial construction contract, rather than from a consumer sales transaction. KCCI argues
11  without elaboration that the economic loss doctrine as developed in products liability law is
12  inapplicable to such agreements. KCCI further lists a string of published opinions wherein plaintiffs
13  were allowed to pursue tort claims for losses caused by the negligent performance of contracts.
14  Plaintiffs cite *Metropolitan Gas Repair Service, Inc. V. Kulik,* 621 P.2d 313 (Colo. 1980) for its
15  statement that the existence of a contract does not "transform [the builder's] contractual obligation
16  into the measure of its tort liability arising out of its contractual performance." *Id.,* at 317.

17      In *Metropolitan Gas Repair Service,* however, a repairman's failure to detect and repair a
18  faulty valve on a boiler led to an explosion that destroyed the plaintiff's home. The trial court,
19  focusing upon the contract for repair, incorrectly limited the plaintiffs' damages to the replacement
20  cost of a new boiler pump. *Id.,* at 316. The appellate and supreme courts of Colorado correctly
21  reversed on the basis of the defendant's concurrent duty to perform its work in a non-negligent
22  manner. *Id.,* at 317. This court agrees that the performance of contractual obligations carries with
23  it the general duty to avoid reasonably foreseeable harm to others. The economic loss doctrine
24  correctly applied would not bar the plaintiffs' negligence claim in *Metropolitan Gas Repair Service,*
25  however, because the damages sought were for the destruction of property other than that
26  contemplated by the contract. This court's review of the cases cited by the plaintiff reveals that nearly
27  all may be distinguished as either not involving economic loss or as not involving a contract between
28

6

1   plaintiff and defendant. The court is unconvinced that a principled distinction exists between

2   construction contracts and sales contracts that would allow recovery in tort for economic loss in the

3   one case but not in the other.[2]

4        Practical and policy concerns support the adoption of the economic loss doctrine as articulated

5   in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 106 S.Ct. 2295 (1986) as the law of

6   the CNMI. It is noteworthy that the opinion and decision in *East River,* although binding only in

7   admiralty, have been so persuasive that no civil jurisdiction has criticized its rationale and two former

8   minority jurisdictions have subsequently reversed their positions to adopt its per se rule against

9   economic loss recovery in tort.[3] The Supreme Court recognized that, in the realities of the

10   marketplace and the arms-length nature of commercial transactions, contract law and remedies are

11   best suited to govern the transaction and to protect both parties by securing their expectations: the

12   plaintiff suffering solely economic loss may obtain the benefit of the bargain while the defendant can

13   estimate a reasonably foreseeable limit on potential liability. (106 S.Ct. at 2303).

14        In the present case, KCCI claims that due to defective construction by TAC and others, they

15   have received a completed building that is essentially useless for its purpose and must be destroyed

16   and replaced. With no further injury to person or property alleged, however, the plaintiffs' Fourth

17   Cause of Action for negligence fails to state a claim for relief. The motion of defendant TAC for

18   judgment on the pleadings is granted and the fourth cause of action is otherwise dismissed.

19   **B. Fraud**

20        The moving defendants supply neither authority nor argument for the summary dismissal of

21   the plaintiffs' fifth cause of action for intentional misrepresentation (fraud) and sixth cause of action

22   for negligent misrepresentation. This omission is apparently based upon the unstated assumption that

23   the economic loss doctrine, prohibiting economic loss recovery in negligence, works as well to

24

---

25   [2]See Bond, *Applying the Economic Loss Rule to Contractor Actions Against Architects and*

26   *Engineers: Reasserting the Divide Between Contract and Tort*, 3-6.

27   [3]*Aloe Coal Company v. Clark Equipment Co.*, 816 F.2d 110 (3d. Cir. 1987); *Chemtrol Adhesives, Inc. V. American Manufacturers Mutual Ins. Co.*, 537 N.E.2d 624 (Ohio 1989).

28                       7

1 prevent the plaintiffs from recovering under any theory to be found under the law of torts. This does
2 not follow as a matter of logic or of law. The policy of protecting the expectations of parties to
3 consensual commercial transactions that underlies contract and warranty law and supports the
4 economic loss rule is itself fundamentally and necessarily inconsistent with the practice of deceit.
5 Fraud has been actionable from the earliest common law and its damages typically consist of
6 pecuniary loss.

7      The elements of a cause of action for fraud consist of a false representation of fact by the
8 defendant which is made with knowledge of its falsity (or its equivalent) and with the intention to
9 induce the plaintiff to act or refrain from acting in reliance thereon. The representation must be
10 justifiably relied upon by the plaintiff in taking action or refraining from action to the plaintiff's
11 damage. *Meader v. Francis Ford, Inc.*, 595 P.2d 480, 482 (Or. 1979). KCCI alleges all of these
12 elements in its Fifth Cause of Action, incorporating the specific facts recited above. The allegations
13 of discrepancies in the test results TAC communicated to Geotesting and of TAC's concealment of
14 unfavorable test results lead to a reasonable inference of intentional misrepresentation on the part of
15 TAC. In this situation, it would be reasonable for the builder/owner to rely upon the representations
16 of the general contractor as to the compression test results. In reliance thereon, KCCI allowed
17 construction to continue, including the pouring of the second floor and roof, without taking corrective
18 steps to minimize the eventual loss. Plaintiffs therefore allege facts sufficient to state a claim for
19 fraud against defendant TAC. The motion for judgment on the pleadings is denied.

20 **C. Negligent Misrepresentation**

21      Defendants have moved to dismiss the plaintiffs' Sixth Cause of Action for negligent
22 misrepresentation, also without argument or authority addressing this specific cause of action. Rule
23 7(b)(5) of the Commonwealth Rules of Civil Procedure requires a memorandum showing why the
24 motion should be granted in any case where the motion involves a question of the interpretation of
25 law. In the interest of economy and on the assumption that defendants intend that the authority cited
26 in favor of their attack on the plaintiff's Fourth Cause of Action should speak as well against the
27 plaintiff's Sixth Cause, the court will rule upon the motion.

28

8

1    The Restatement (Second) of Torts § 552 (1977) defines negligent misrepresentation in the

2    following way: "One who, in the course of his business, profession or employment, or in any other

3    transaction in which he has a pecuniary interest, supplies false information for the guidance of others

4    in their business transactions, is subject to liability for pecuniary loss caused to them by their

5    justifiable reliance upon the information, if he fails to exercise reasonable care or competence in

6    obtaining or communicating the information." Although most examples of this action involve

7    professional malpractice or a fiduciary relationship between the parties, the Restatement definition is

8    broad enough to include almost any negligent misrepresentation communicated in the course of a

9    business transaction.

10    On the one hand, a plaintiff in privity with defendant may not recover purely economic

11    damages for the defendant's negligent performance of the contract. On the other hand, a plaintiff may

12    state a claim for intentional fraud resulting in the plaintiff's economic loss regardless of privity. May

13    a plaintiff who suffers only economic loss recover for negligent misrepresentation? The Supreme

14    Court of Washington considered this question in an action by a general contractor against an architect

15    for design defects:

16         Alternatively, [plaintiff] requests that this court apply the Restatement (Second)
17    of Torts §552 (1977) to permit a general contractor not in privity of contract to bring
      a tort cause of action against a design professional for negligent misrepresentations.
18    We acknowledge that §552 provides support for the recovery of economic damages in
      the construction industry for negligent misrepresentations. *See* §552, illustration 9.
19    The Restatement is equivocal in its support, however. *See* Restatement (Second) of
      Torts §766(c) (economic damages resulting from a party who negligently makes the
20    performance of a contract more expensive to perform are not recoverable absent
      physical harm); *but see* §766C cmt. e (§766C may not apply if §552 applies). We also
21    acknowledge that the tort of negligent misrepresentation is recognized in
      Washington.[cite] We hold that when parties have contracted to protect against
22    potential economic liability, as is the case in the construction industry, contract
      principles override the tort principles in §552 and, thus, purely economic damages are
23    not recoverable.[cite] *Berschauer/Phillips Const. Co. v. Seattle School District,* 881
      P.2d 986, 993 (Wash. 1994).

24    This court agrees with the reasoning of the Washington Supreme Court in *Berschauer/Phillips*

25    that contract principles should prevail when there is a conflict of jurisprudence in matters involving

26    construction disputes. "The preservation of the contract represents the most efficient and fair manner

27

28
                                                      9

1  in which to limit liability and govern economic expectations in the construction business."

2  *Berschauer/Phillips Const. Co. v. Seattle School District, supra,* at 993.

3          An erroneous report, negligently made, as to a material aspect of the status of the ongoing

4  performance of a contract is too much akin to negligent performance itself to allow for disparate

5  reaches of liability.  The laborer who negligently mixes concrete and the supervisor who negligently

6  prepares a report on the mixing of concrete should not subject their common employer to contract

7  liability in the one instance, and negligence liability in the other, depending upon the employees'

8  respective roles in the performance of the construction contract.  Intentional deceit is an entirely

9  different species of wrong and will support a separate claim for relief.  For the foregoing reasons,

10  however, TAC's motion for judgment on the pleadings is granted and the Sixth cause of Action is

11  otherwise dismissed.

12                                    **IV.  CONCLUSION**

13          This court follows the majority rule that denies recovery in negligence between contracting

14  parties when a plaintiff's only damages are the loss in value of the bargained-for consideration.  Such

15  a rule protects the expectations of the parties, reasonably limits liability and encourages commerce

16  and development.  The damages alleged by KCCI are purely economic and the remedies that may be

17  available under contract, including expectation and consequential damages, are adequate and fair

18  redress for the misperformance of a construction contract.  Judgment is hereby entered dismissing the

19  Fourth and Sixth Causes of Action set forth in the Second Amended Complaint.

20          Intentional misrepresentation, however, is a separate cause of action that may be pleaded

21  alternatively to contract.  Plaintiffs have set forth specific factual allegations sufficient to state a claim

22  for fraud.  Defendants' motion to dismiss/for judgment on the pleadings is DENIED.

23                                    JUL  0 2 1997

24          So ORDERED this _____ day of _____, 1997.

25

26

27                                    TIMOTHY H. BELLAS, Associate Judge

28                                            10