LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

3ZP2276
Attorney *for* Defendant Engineering, Management
& Planning Services Corporation

FILED
DISTRICT COURT OF GUAM
NOV 12 2004
MARY L. M. MORAN
CLERK OF COURT

(81)

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS, <br><br> Plaintiff, <br><br> v. <br><br> BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT, & PLANNING SERVICES CORPORATION, <br><br> Defendants. | CIVIL CASE NO. CIV03-00009 <br><br> **MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS** <br><br> [ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.] |

**INTRODUCTION**

Plaintiff's Third and Sixth Causes of Action against Engineering, Management, & Planning Services Corporation ("EMPSCO") are grounded on the allegation that EMPSCO's professional services rendered to Port Authority of Guam ("PAG") were performed negligently, resulting in the damages to the Foxtrot F-1 Pier following the earthquake of October 13, 2001. These allegations were apparently made on a mistaken understanding of the facts. Plaintiff possesses insufficient evidence showing that EMPSCO violated its professional standard of care to PAG, therefore Plaintiff's Third and Sixth Causes of Action should be dismissed pursuant to Rule 56 Fed. R. Civ. P.

ORIGINAL

Additionally, Plaintiff's Eighth Causes of Action against EMPSCO (Breach of [implied] Warranty of Workmanlike Performance) should be dismissed pursuant to Rule 12(c) Fed. R. Civ. P. for failing to adequately state a claim against a professional engineer.

**MATERIAL FACTS**

1. The Foxtrot F-1 docking facility at Apra Harbor was operational at the time of the 8.1 magnitude earthquake in August of 1993 and the resulting damage from this event was significant. Preparation of contract documents for repair of the damage sustained by the facility pier was awarded to EMPSCO Engineering Consultants by PAG in late 1994. PAG approved contract documents prepared by EMPSCO for bid and local contractors were required to submit their proposals on January 26, 1996. The lowest bidder was Black Construction Company, however, Black's bid for the work as described in the plans and specifications exceeded PAG's budget. In order to proceed with the project, Black submitted an alternate design that would reduce their bid, a design by Winzler & Kelly Consulting Engineers. This alternate design for repair was identified on Drawing Sheet VE-1, attached as *Exhibit 3 to the Declaration of Reynaldo Arce, P.E.* filed contemporaneously herewith. The alternate design was prepared by Bruce Swanney of Winzler & Kelly, who is a registered structural engineer in Guam, and his professional engineering seal appears on that drawing dated April 4, 1996.

The above summary of facts is conceded by Plaintiff's designated expert, Elliott H. Boone, P.E. in his report (p.2) dated

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

**Page 2 of 14**

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 2 of 14

May 12, 2004, attached as Exhibit 1 to the Declaration of Thomas M. Tarpley, Jr., filed contemporaneously herewith.

2. EMPSCO's contract with PAG is attached as Exhibit 1 to the Arce Declaration. There are several points of importance in the terms of this contract.

    a. EMPSCO's work consisted of several objectives. The first was to design a repair to the structural earthquake damages to the berthing and mooring piers at the wharf. EMPSCO's design was to replace deteriorated sections of the steel piles and to re-fortify the piers with an encapsulation of the piers with reinforcing concrete. The second objective was to replace the existing fendering system to accommodate the berthing of 150,000 deadweight ton vessels, and to design a full replacement for dolphin H. Dolphin H and these fendering systems are not the subject of this lawsuit. The third objective was to design a cathodic protection system for the wharf, but this work was eventually deleted by PAG, and is not the subject of this lawsuit either.

    b. EMPSCO's original proposal to the Port was valued at $424,600, which included a detailed structural analysis for the project. However PAG decided that a structural analysis was unnecessary, and EMPSCO's proposed scope of work was reduced to a value of $160,000. *Arce Declaration, ¶ 3.*

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

**Page 3 of 14**

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 3 of 14

c. Article 17 of EMPSCO's contract contemplated EMPSCO performing construction management services to supervise Black's construction; however this too was deleted from EMPSCO's scope of work. The inclusion of this clause in the contract was the mutual mistake of the parties. *Arce Declaration ¶4.* The construction manager who actually supervised Black's construction was N.C. Macario under a separate contract with PAG. *Id. See also the testimony of Simeon Delos Santos, PAG's Engineering Supervisor, p.6-7, attached to the Tarpley Declaration as Exhibit 2, describing the inclusion of Article 17 in the EMPSCO contract as an "oversight".*

d. Article 2 of the contract called upon EMPSCO to perform and complete its services on or before March 8, 1996; time being "of the essence concerning all provisions of this Agreement" (Article 16.c).

e. Article 18 provides that ownership of all the work, drawings, specifications and designs by EMPSCO belongs to PAG, who could "use them in any way whatsoever and make modifications thereto." This clause goes on to say "[i]f the Port has another Consultant to modify or change the plans, etc., then Consultants' name on such plans, designs,

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

**Page 4 of 14**

Case 1:03-cv-00009    Document 87    Filed 11/12/2004    Page 4 of 14

specifications and work shall be deleted on the plans, designs, specifications, etc."

      f.    EMPSCO's professional responsibility was warranted only for the professional and technical accuracy of its own work, not that of other design consultants. *See Article 11 of the contract's attached Scope of Work.*

    3.    The alternate repair design of Winzler & Kelly involved removing approximately fifteen feet of the upper portion of each of the existing steel pipe piles under the deck of the mooring and breasting dolphins. A 22-inch diameter replacement was then spliced to the remaining pile section, which is connected to the underside of the dolphin deck with a 1-inch thick flange plate, welded to the new section of pipe pile. The flange was, in turn, connected to the underside of the dolphin using 8-3/4 inch diameter grade 304 stainless steel bolts, imbedded epoxy. *Boone Report, p.2.* This is an entirely different design than EMPSCO's method of repair, deleting the concrete encapsulation altogether. Nevertheless the methodology of this type of repair is a recognized alternative method of repairing damaged piers. *Arce Declaration ¶ 7.* If this method is designed and constructed professionally, it would meet the same construction repair standards as EMPSCO's method. *Id.*

    4.    EMPSCO was not hired to perform a technical engineering review of Winzler & Kelly's alternative repair design, nor was EMPSCO asked or paid to run any structural or seismic calculations on the Winzler & Kelly design. *Arce Declaration, P.E. ¶ 8.* A

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

Page 5 of 14

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 5 of 14

technical review of an alternative design is outside the scope of EMPSCO's contract with PAG.

5. On October 13, 2001, a second earthquake again damaged the facility. A post-earthquake survey of the mooring and breasting dolphins revealed that the epoxy securing the stainless steel bolts embedded in the underside of the dolphin had failed. It was noted that in a high percentage of the total number of bolts, the epoxy had failed to harden or in some cases was absent. This bolt failure is the subject of this lawsuit. *Boone Report, p.3.*

6. Plaintiff insured PAG for typhoon damage and in this lawsuit has brought its claims-in-subrogation against the named Defendants, alleging that the damages to the pier following the second earthquake resulted from either a poor repair design, or poor construction by Black, or both. *Plaintiff's First Amended Complaint.*

**ARGUMENT**

**1. EMPSCO is entitled to a summary judgment of dismissal of the "negligent supervision" claims in Plaintiff's Third and Sixth Causes of Action.**

Both Plaintiff's Third and Sixth Causes of Action against EMPSCO alleges that EMPSCO negligently supervised the work performed by Black. Specifically, allegation 23 of Third Cause of Action - Negligent Property Damage (against EMPSCO) alleges: "EMPSCO also negligently supervised the work performed by Black in connection with the project. The negligence of EMPSCO directly led to losses and damage to Plaintiff."

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

Page 6 of 14

Case 1:03-cv-00009  Document 87  Filed 11/12/2004  Page 6 of 14

Plaintiff's Sixth Cause of Action - Breach of Contract (against EMPSCO) alleges in allegation 31: "EMPSCO breached its contract with the Port Authority of Guam by inadequately and incompetently supervising work performed by Black...and by failing to note and observe the errors and omissions by contractors performing the project."

These allegations are obviously based on the mistaken belief that EMPSCO was the construction manager or otherwise had supervisory responsibility over the contractor's work. However it has been revealed that EMPSCO's responsibilities under its contract with PAG essentially ended on March 8, 1996, before Black began its construction. It is also uncontested that it was N.C. Macario & Associates who was supervising the work of Black as the construction manager for PAG, not EMPSCO. The inclusion of a construction management clause in EMPSCO's contract was a mutual mistake, acknowledged by EMPSCO and PAG. *See supra Material Fact 2(c).*

Since EMPSCO did not have any duty to supervise Black's work, nor did it undertake to do so, EMPSCO cannot be guilty of negligent supervision as alleged. Accordingly, these portions of Plaintiff's allegations should be dismissed.

2. **The remaining allegations of Plaintiff's Third and Sixth Causes of Action against EMPSCO should also be dismissed pursuant to Rule 56 Fed. R. Civ. P.**

The remaining allegations of Plaintiff's Third and Sixth Causes of Action against EMPSCO are also grounded on a negligence theory. Plaintiff's Third Cause of Action at allegation 23 alleges: "EMPSCO, as a professional engineering firm, owed a non-

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

**Page 7 of 14**

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 7 of 14

delegable duty of skill and competence to the Port Authority and breached that duty by negligently preparing, reviewing and approving the plans and specifications for the project".

Plaintiff's Sixth Cause of Action, allegation 31, alleges: "EMPSCO breached its contract with the Port Authority of Guam...by approving improper and negligent changes to the project".

First, it is uncontested that EMPSCO was not the designer of the repair method used for the repair of the pier pilings, which is the subject matter of this lawsuit. Bruce Swanney, P.E. of Winzler & Kelly was the designer. EMPSCO was neither asked, paid, or obligated to perform a technical engineering review of VE-1. Nor was EMPSCO asked, paid, or obligated to perform a technical engineering review of Black's submittal to substitute "Anchor-It Epoxy Systems" for "Redi-Chem Anchors". Thus there could be no breach of contract by EMPSCO for not performing such technical reviews. All EMPSCO provided was a submittal compliance review as an accommodation to PAG for its record keeping purposes. The question therefore becomes whether EMPSCO was negligent in doing so.

The conduct of an architect or engineer's professionalism is generally beyond common knowledge and experience of the general population. Thus, the concept of the "standard of care" is applied to measure and define the reasonableness or acceptability of a design professional's conduct in any given situation. The standard of care applied to architects and engineers acting in their professional capacity is similar to that applied to accountants, doctors and attorneys who render professional services for a fee.

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

**Page 8 of 14**

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 8 of 14

Coombs v. Beede, 36 A.104 (Me. 1896); Buaye v. Everham, 163 N.W. 1002 (Mich. 1917); Peerless Ins. v. Serny, 199 F.Supp. 951 (Minn. 1961). The standard requires that degree of judgment and skill which is ordinarily possessed and exercised by a similarly situated design professional of good standing, practicing in the same locality. See City of Eveleth v. Ruble, 225 N.W.2d 521 (Minn. 1974), containing extensive footnotes regarding the standard of care and duties pertaining to architects and engineers throughout the country.

It is also the general rule that the testimony of a competent expert is required to establish both the appropriate standard of care and to establish that professional's variance from that standard. Allied Prop. v. John A. Blume & Associates, Engineers, 102 Cal.Rptr. 259 (Cal.App. 1974); Swett v. Gribaldo, 115 Cal.Rptr. 99, 102 (Cal.App. 1974); H. Elton Thompson & Associates v. Williams, 298 S.E.2d 539 (Ga.App. 1982); Overland Constructors, Inc. v. Millard School District, 369 N.W.2d 69 (Neb. 1985). See generally Annotation, Necessity of Expert Testimony to Show Malpractice of Architect, 3 ALR 4th 1023 (1981).

In our case Plaintiff's expert makes no mention of any negligence attributable to EMPSCO, much less any evidence that EMPSCO's compliance submittal review of VE-1 or the proposed substitution of "Anchor-It Epoxy Systems", instead of a technical engineering review, violated any engineering standard of conduct. Indeed, Elliott Boone in his report cites as appropriate EMPSCO's four conditions attached to its approval of the Anchor-It Epoxy Systems. *Boone Report, bottom of page 3.* Mr. Boone indicates that

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

Page 9 of 14

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 9 of 14

Black never complied with these four requirements, nor did Black utilize a "special inspection" when it anchored its bolts, which subsequently became loose. *Id., p.4.* Mr. Boone instead focuses on the alleged negligence of Black:

> Black Construction Co. as a matter of proper construction practice, should have been aware of the critical importance of the pile flange to concrete connection. The performance of individual dolphins in berthing and mooring operations, not to mention seismic events, relied on the capacity of that connection. <u>During the bolt installation process, the loss of epoxy would have been evident to those installing the materials on a daily basis</u>. The critical nature this (sic) element should have made it obvious to Black Construction that minimum testing to establish full epoxy cure should have been undertaken as part of their ordinary quality control described in Section 1400 of the project specifications. <u>This could have been accomplished with an ordinary deep socket and automotive torque wrench</u>. (emphasis added).

Mr. Boone goes on to opine that "the design on Drawing Sheet VE-1 is incapable of meeting the requirements of the intended use of the Fox "F-1" facility, namely berthing and mooring of 90,000 DWT tankers." *Id., p.8.* However no opinion is rendered that EMPSCO was negligent or responsible for this alleged design deficiency. Instead, Boone states:

> "Reasonable analysis by **Winzler & Kelly** would have revealed deficiencies in <u>their</u> design. Even a simple static analysis would have shown that the bolts connecting the pile flange to the dolphins were insufficient in diameter and/or number. Disregarding the deficiencies in the design, the critical nature of this connection should have required **Winzler & Kelly** to request **Black Construction Co**. to assure that special

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

Page 10 of 14

Case 1:03-cv-00009    Document 87    Filed 11/12/2004    Page 10 of 14

inspection was taken during the installation of the epoxy, regardless of what product was used...**Black Construction Co.** had a quality control requirement established in the specifications for this project, but absent that, it was their substitute product, Anchor-It Epoxy, that requires special inspection. It would then follow that **Black Construction Co.** should have provided special inspection or insisted that the Port Authority provide it. Even if special inspection was not provided **Black Construction Co.** was aware of the critical nature of this connection and <u>even a simple automotive torque wrench test would have identified uncured epoxy</u>." *Id., p.9* (emphasis added).

Whether the compliance submittal reviews performed by EMPSCO fell below the standard of reasonable engineering practices is a question beyond the common knowledge of lay persons, requiring Plaintiff to produce expert testimony to substantiate its claim against EMPSCO. Having failed to do so in discovery within the time required means that Plaintiff's claims against EMPSCO based on negligence should be dismissed for failure of proof pursuant to Rule 56 Fed. R. Civ. P.

On the other hand, EMPSCO has submitted substantial evidence that its compliance submittal review was not negligent. See Declaration of Albert Tsutsui, P.E., EMPSCO's expert, filed contemporaneously herewith. *See also Arce Declaration, ¶¶ 7, 8, and 9.* Additionally, PAG recognized that it was <u>Winzler & Kelly</u> who was professionally responsible for VE-1 as the engineer-of-record of that design, not EMPSCO:

> Q: When you received the drawing, VE-1, was Winzler & Kelly stamp on it?

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

**Page 11 of 14**

Case 1:03-cv-00009    Document 87    Filed 11/12/2004    Page 11 of 14

| | | |
|---|---|---|
| 1 | A: | The engineer's, yes, it was there. |
| 2 | Q: | Was it also signed? |
| 3 | A: | Yes, I think it was signed. |
| 4 | | * * * |
| 5 | Q: | Do you know whether or not an |
| 6 | | engineer's stamp has any |
| 7 | | significance or not? |
| 8 | A: | Yes, it has significance. |
| 9 | Q: | What significance, if any, is that? |
| 10 | Mr. O'Connor: | Objection; no foundation. |
| 11 | Mr. Smith: | Go ahead and answer. |
| 12 | A: | If the engineer stamp is there, he's |
| 13 | | liable for his design. |

*Testimony of Simeon Delos Santos, PAG Supervisory Engineer, pp.117-118 (attached to the Tarpley Declaration as Exhibit 3).*

PAG did not consider that EMPSCO was the responsible engineer of record with regard to the VE-1 design:

| | | |
|---|---|---|
| 19 | Q: | When EMPSCO approved VE-1, was it |
| 20 | | acting as the engineer-of-record? |
| 21 | A: | Should I answer it? |
| 22 | Mr. Sterling: | Yes. |
| 23 | A: | I don't think so, no. |

*Id., Exhibit 4 (pp.152-153).*

Because Plaintiff has presented no evidence to establish that EMPSCO breached its standard of care or its contract in conducting a compliance submittal review rather than a technical

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

**Page 12 of 14**

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 12 of 14

engineering review of the VE-1 design and construction, Plaintiff's Third and Sixth Causes of Action should be dismissed in their entirety.

### 3. Plaintiff's Eighth Cause of Action against EMPSCO should be dismissed pursuant to Rule 12(c) Fed. R. Civ. P. for failing to state a claim against a professional engineer.

EMPSCO hereby joins in Defendant Winzler & Kelly's Motion for Judgment on the Pleadings and incorporates herewith and adopts the arguments filed by Winzler & Kelly on November 2, 2004 in support of said motion to dismiss Plaintiff's breach of warranty claim, as said arguments are applicable as well to Plaintiff's breach of warranty claim against EMPSCO.

Additionally, the majority of jurisdictions have found generally that doctrines of implied warranty do not apply to professional services. See, e.g., Gagne v. Bertran, 275 P.2d 15 (Cal. 1954) (soils engineer); Hoven v. Kelbe, 256 N.W.2d 379 (Wis. 1977) (doctor); City of Mounds View v. Walijarvi, 263 N.W.2d 420 (Minn. 1978) (architect). The reasons given are based upon the fact that architects and engineers deal with inexact sciences that must depend upon their judgment. Thus, architects and engineers are not required to be infallible, but only to use reasonable care and competence in their design work. Allied Prop. v. John A. Blume & Associates, 102 Cal.Rptr. 259 (1972). Although there are no Guam cases addressing this point, it is assumed that Guam would follow the precedents of California and the majority rule.

Accordingly, Plaintiff has failed to state a cognizable claim for implied warranty against EMPSCO, and its Eighth Cause of

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

Page 13 of 14

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 13 of 14

Action should therefore be dismissed pursuant to Rule 12(c) Fed. R. Civ. P.

Respectfully submitted this __12th__ day of November, 2004.

TARPLEY & MORONI, LLP

By: _____
THOMAS M. TARPLEY, JR.,
Attorney for Defendant EMPSCO

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
MEMORANDUM IN SUPPORT OF EMPSCO'S MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
[ORAL ARGUMENT SET BY AGREEMENT FOR DECEMBER 3, 2004 AT 9 A.M.]

**Page 14 of 14**

Case 1:03-cv-00009   Document 87   Filed 11/12/2004   Page 14 of 14