LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

3ZP2274
Attorney *for* Defendant Engineering, Management
& Planning Services Corporation

**FILED**
DISTRICT COURT OF GUAM

NOV 12 2004

MARY L. M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS, | CIVIL CASE NO. CIV03-00009 |
| Plaintiff, | |
| v. | |
| BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT, & PLANNING SERVICES CORPORATION, | **DECLARATION OF REYNALDO ARCE, P.E.** |
| Defendants. | |

I, Reynaldo Arce, hereby declare under penalty of perjury under the laws of Guam that the following statements are true and correct:

1. I am the Senior Engineer of Engineering Management & Planning Services Corporation ("EMPSCO") who oversees the projects and activities of the company, including EMPSCO's involvement for the repairs and improvements to the Foxtrot F-1 Pier Project, the subject of the above-encaptioned lawsuit.

2. I am both a licensed Civil Engineer and Structural Engineer on Guam.

ORIGINAL

1     3.    Following the earthquake of August 8, 1993, the Port
2   Authority of Guam ("PAG") contracted with EMPSCO on December 28,
3   1995 to provide plans, specifications, bid documents, and estimates
4   for the repairs and upgrade to the Foxtrot Pier.  Attached to this
5   declaration as *Exhibit 1* is a true and correct copy of the
6   agreement between PAG and EMPSCO, including the attached "Scope of
7   Work" which was part of the contract documents.  The total contract
8   sum for this work was $160,000.  EMPSCO had originally proposed to
9   do work valued at $424,600, to include a detailed structural and
10  seismic analysis, however it was PAG's decision to delete the
11  performance of seismic analysis from our scope of work.    The
12  structural engineering portion of work in our proposal was reduced
13  from 240 hours down to 40 hours in the negotiated contract.  Thus
14  the recommendation by EMPSCO to perform seismic analysis was
15  deleted by PAG from EMPSCO's scope of work.

16    4.    Article 17 of EMPSCO's contract with PAG involves
17  construction management services, which was included in the written
18  contract by the mutual mistake of both parties to the contract.
19  EMPSCO neither performed nor was paid to render construction
20  management services.  Instead, PAG's construction manager on the
21  project was N.C. Macario & Associates, under a separate contract.

22    5.    Aside from the mistake of including Article 17 in the
23  contract, no changes to the contract were ever made by the parties.

24    6.    EMPSCO timely completed its design work by March 8, 1996.
25  EMPSCO's design for the repair of the pier pilings was generally to
26  replace deteriorated sections of the steel piles with reinforced
27  concrete sections and provide concrete encapsulation.  The design
28  went out to bid, and Defendant Black Construction Company was the

S.J. Gargrave Syndicate At Lloyds v. Black Construction
Corporation, et. al., CIV03-00009                                    **Page 2 of   5**
DECLARATION OF REYNALDO ARCE, P.E.
Case 1:03-cv-00009   Document 88      Filed 11/12/2004   Page 2 of 39

1   lowest bidder at approximately $2.1 million.  PAG considered this
2   to be too expensive.  Black thereupon suggested alternative methods
3   of repair that could be done to meet the Port's budget limitations.
4   A copy of Black's proposals "A" and "B" are attached to this
5   declaration as *Exhibit 2*.

6       7.    PAG requested EMPSCO to review Black's alternative repair
7   proposals to see whether proposal "B" would meet the same
8   construction repair standards as EMPSCO's design.  Black's Proposal
9   "B" was to delete the concrete encapsulation and replace the upper
10  sections of each pile with steel pile sections.  This proposal was
11  an entirely different design than EMPSCO's method of repair,
12  however the methodology of this type of repair is a recognized
13  construction standard alternative.  Assuming that this alternative
14  method by Black Construction is professionally designed and
15  properly constructed in accordance with strict trade standards, it
16  would meet the same construction repair standards as EMPSCO's
17  method.    However Black is not a registered engineering firm
18  authorized to perform professional design work for this repair
19  method for the Foxtrot F-1 Pier, and it was not within EMPSCO's
20  contracted scope of work to perform this redesign.    It was
21  therefore necessary for Black to hire its own independent
22  professional engineer if Black and PAG wished to pursue this repair
23  method rather than EMPSCO's.    EMPSCO did not intend to pursue re-
24  design in view of the conflict of interest.    EMPSCO is not
25  obligated under the terms of the original contract to review the
26  Winzler & Kelly design for technical accuracy and performance.
27  Black therefore hired Winzler & Kelly to do this redesign.  A true

28

S.J. Gargrave Syndicate At Lloyds v. Black Construction
Corporation, et. al., CIV03-00009                          **Page 3 of 5**
DECLARATION OF REYNALDO ARCE, P.E.
Case 1:03-cv-00009    Document 88    Filed 11/12/2004    Page 3 of 39

1  copy of Winzler & Kelly's design, stamped by Bruce Swanney, P.E. is
2  attached to this declaration as *Exhibit 3*.

3      8.    EMPSCO was not hired to perform a "technical review" of
4  Winzler & Kelly's alternative repair design.  We were not asked nor
5  paid to run any structural or seismic calculations on the Winzler
6  & Kelly design.   The responsibility for that design rests instead
7  with the professional engineer who stamps and signs the drawing.
8  EMPSCO only approved the general concept of this method of repair,
9  (*Exhibit 4* attached).    This is called a "Compliance Submittal
10 Review", which is entirely different than a Technical Review.
11 EMPSCO advised the Port that Winzler & Kelly should furnish
12 necessary  documentation  for  record  purposes.    Professional
13 responsibility for Black Construction's design rested with Mr.
14 Bruce Swanney, who put his seal and signature on the drawing.
15 Under Guam's PEALS law, the seal and signature of a professional
16 engineer signifies that "the work being stamped was under the
17 registrant's complete direction and responsible control".  A copy
18 of this law (§32116) is attached to this declaration as *Exhibit 5*,
19 which I obtained from the office of the Professional Engineers,
20 Architects and Land Surveyors of the Government of Guam (PEALS).
21 It is part of the standards of engineering on Guam that the seal of
22 a professional engineer must be placed on each drawing which is in
23 its final form and involves a practice of engineering, and that an
24 engineer is professionally responsible for the engineering design
25 contained in the drawing.  A copy of EMPSCO's comments to PAG are
26 attached hereto as *Exhibit 6.    Id.*

27      9.    Similarly, Black was unable to purchase "Redi-Chem
28 Anchors" manufactured by Phillips Drill Company, as specified by

S.J. Gargrave Syndicate At Lloyds v. Black Construction
Corporation, et. al., CIV03-00009                      **Page 4 of 5**
DECLARATION OF REYNALDO ARCE, P.E.
Case 1:03-cv-00009    Document 88    Filed 11/12/2004    Page 4 of 39

1  Winzler & Kelly, and wished to substitute "Anchor-It Epoxy Systems"

2  as an replacement equal. PAG asked EMPSCO to review this

3  submittal, which again was outside of the scope of EMPSCO's

4  contract but which we reviewed for compliance as an accommodation

5  to PAG. EMPSCO recommended approval subject to certain

6  requirements, among them that the contractor submit the

7  "manufacturer's certificate of compliance" and test data of an

8  independent laboratory test, as is standard for PAG's record-

9  keeping purposes. EMPSCO was not requested nor obligated nor paid

10 to perform technical review of this substitution.

11     Executed this _____*10 th*_____ of November, 2004.

REYNALDO ARCE

S.J. Gargrave Syndicate At Lloyds v. Black Construction
Corporation, et. al., CIV03-00009                    **Page 5 of 5**
DECLARATION OF REYNALDO ARCE, P.E.
Case 1:03-cv-00009    Document 88    Filed 11/12/2004    Page 5 of 39

1

(REPRODUCED AT GOVERNMENT OF GUAM EXPE

# AGREEMENT
## BETWEEN
## PORT AUTHORITY OF GUAM
## AND
## EMPSCO - ENGINEERING CONSULTANTS

THIS AGREEMENT is made this *18th* day of *December* 1995, by and between **PORT AUTHORITY OF GUAM**, a public corporation, whose address is 1026 Cabras Highway, Suite 201, Piti, Guam 96925 ("Port") and **EMPSCO-ENGINEERING CONSULTANTS** duly licensed and authorized to do business in Guam, whose address is Suite 245 Julale Shopping Center, Agana, Guam 96910 ("Consultant").

## RECITALS

WHEREAS, the Port desires to engage the professional services of a Consultant to provide bid documents, plans specifications and estimates for the repairs and upgrade to the F-1 Fuel Pier (Shell Pier); and

WHEREAS, the Port, after engaging in a competitive selection procurement process in accordance with GSA Procurement Regulation Section 3-207 is prepared to award this contract to Consultant as the best qualified offeror;

## AGREEMENT

NOW, THEREFORE, for and in consideration for the above recitals, the covenants and agreements hereinafter set forth, and

(REPRODUCED AT GOVERNMENT OF GUAM EXPEN

for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Scope of Services</u>:

a. Consultant agrees to fully and completely perform the scope of services set forth in Exhibit A attached hereto, which is incorporated herein by this reference, all to the Port's satisfaction.

b. Consultant shall perform work which is incidental to the scope of services, but necessary for a full and complete design, although not specifically referred to therein without additional compensation.

c. Consultant shall furnish, at its expense, proper and adequate equipment, machinery labor, tools and supplies necessary to perform the scope of work in a safe, workmanlike and diligent manner, and shall provide and have available at all times for use by its employees engaged in the performance of such work all safety appliances needed for the maximum protection of its employees against injuries.

d. Port may, at any time, by written order, make changes to the scope of services. If such changes cause an increase or decrease in the compensation due herein, or in the time required for the performance of the services, then equitable adjustment shall be negotiated between the parties and reflected by written amendment to this Agreement.

2. <u>Time</u>:

Consultant shall perform and complete the services on or before March 8,

1996. Any additional services, if required by Port, shall be performed by Consultant within additional time period(s) to be determined by mutual agreement.

    3.    <u>Compensation</u>:

        a.    Port agrees to compensate Consultant for the services described in paragraph 1 (a) the total amount of ONE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($160,000.00). Compensation shall be paid by the Port pursuant to the progress payment schedule described in subparagraph (b) within thirty (30) days of invoice and upon the Port's determination that Consultant has fully and satisfactorily performed the services required for each said progress payment.

        b.    The breakdown of the contract price which will be used for determining progress payments shall be as follows:

        (i)    Upon the satisfactory completion of thirty-five percent (35%) of the scope of services, Port shall pay Consultant $50,400.00.

        (ii)    Upon the satisfactory completion of sixty-five percent (65%) of the scope of services, Port shall pay Consultant $46,800.00.

        c.    Upon the satisfactory completion of the ninety-five percent (95%) of the scope of services Port shall pay Consultant $46,800.00.

        d.    Upon the satisfactory completion of the entire scope of services, Port shall pay Consultant the contract balance of $16,000.00.

        e.    Port may in it sole judgment withhold such amounts from the sums due or to become payable under this Agreement, as may be necessary to:

        (i)    Protect the Port from any liability resulting from the work

- 3 -

(REPRODUCED AT GOVERNMENT OF GUAM EXPEN

performed under this Agreement:

(ii)     Repair, restore or compensate for any real or personal property which has been damaged as a result of the fault or negligence of Consultant or its employees while performing the work under this Agreement.

f.     The Port's review, approval and payment of fees for services by Consultant shall not constitute a waiver of any rights or cause of action arising out of Consultant's failure to fully and completely perform its duties under this Agreement and Consultant shall be and remain liable to the Port for all damages, costs and attorney's fees which the Port may suffer or incur as a result of Consultant's negligent performance of any of the services required herein.

4.     Indemnification:

The Consultant hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Consultant or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the scope of work by Consultant, its agents and employees. Should any claims for such damage or injury (including death resulting therefrom) be made or asserted, the Consultant agrees to indemnify and save harmless Port, its Board of Directors, its officers, agents, servants and employees from and against any and all such claims and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that Port, its officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and the Consultant agrees to and

- 4 -

(REPRODUCED AT GOVERNMENT OF GUAM EXPEN

does hereby assume, on behalf of Port, its officers, agents, servants or employees upon or by reason of such claims which defense, shall be tendered by counsel, selected by consultant with approval of the Port, and to pay on behalf of Port, its officers, agents, servants and employees, upon demand the amount of any judgment that may be entered against Port, its officers, agents, servants or employees in any such action.

     5.    <u>Insurance</u>:

Consultant shall, at its sole expense and for the benefit of Consultant and Port, provide and keep in full force and effect during the term of this Agreement, insurance against liability for bodily injury with limits of not less than $300,000.00 per person, $1,000,000.00 per occurrence, and property loss liability insurance with a limit of not less than $100,000 per loss, all in respect to bodily injury or property loss arising out of the duties and obligations of Consultant under the terms of the Agreement. In addition, Consultant shall also provide and keep in full force and effect during the term of this Agreement, workmen's compensation insurance with limits of not less than $100,000 per employee. Consultant shall furnish to the Port certificates of insurance evidencing the existence of such insurance. No policy of insurance may be cancelled without providing the Port thirty (30) days advance written notice. If the aforesaid policies are cancelled, Consultant shall immediately notify the Port of such cancellation. All insurance required under this Paragraph shall be written with responsible companies with originals of the policies and renewals available for the Port's review during reasonable hours.

     6.    <u>Termination</u>:

          a.    In case of unreasonable slow progress, carelessness, inattention, or

- 5 -

incompetency in the performance of any particular job or work herein contracted for, or in the event of a breach by Consultant of any of the provisions of this Agreement, or in the event Consultant shall conduct such work in a manner as, in the sole opinion of Port, shall endanger Port's equipment, property, or surrounding property, Port shall have the right to terminate this Agreement immediately and all its obligations hereunder, paying Consultant for work performed to time of termination less such sums as may be made withheld by Port pursuant to Paragraph 3(e) of this Agreement.

      b.    Port shall have the right to terminate this Agreement at any time whatsoever and for any reason, including but not limited to, the Port's decision to abandon the project. In the event the project is terminated or this contract is terminated and the Consultant is not in default of this Agreement, then Consultant shall be paid for its services based on the amount of work performed up to the date of termination.

      7.    <u>Independent Consultant Relationship</u>:

It is expressly understood between the parties to this Agreement that Consultant, its agents, or assigns are not employees or agents of the Port for any purpose whatsoever. Consultant is solely an independent contractor under the relationship created by this Agreement. Consultant does not have, nor does it hold itself out as having, any right, power, or authority to create any contract or obligation, either express or implied, on behalf of, in the name of, or binding upon the Port, or to pledge the Port's credit, or to extend credit in the Port's name. In addition, nothing contained in this Agreement shall be deemed or construed by the parties hereto, or by any third party, to create the relationship of principal and agent, or a partnership or a joint venture,

- 6 -

*(REPRODUCED AT GOVERNMENT OF GUAM EXPEN*

or of any association between the Port and Consultant.

8.    Compliance with Laws and Regulations:

In the performance of work provided for herein, Consultant agrees that the work shall be conducted in full compliance with any and all applicable laws, rules and regulations adopted or promulgated by any governmental agency or regulatory body, both territorial and federal.  Consultant assumes full responsibility for the payment of all contributions, payroll taxes or assignments, territorial or federal, as to all employees engaged in the performance of work hereunder, and further agrees to meet all requirements that may be specified under regulations of administrative officials or bodies charged with enforcement of any territorial or federal laws on this subject.  Consultant further agrees to furnish Port, upon request, a certificate or other evidence of compliance with territorial or federal laws covering contributions, taxes, business licenses, work permits, workmen's compensation and assessments on payrolls.  Consultant assumes and agrees to pay any and all gross receipts, compensation, use, transaction, sales or other taxes or assessments of whatever nature or kind levied or assessed as a consequence of the work to be performed or on the compensation to be paid under this Agreement.

9.    Notice:

Any notice to be given hereunder shall be deemed sufficiently given if in writing and delivered either in person or enclosed in an envelope properly stamped and addressed to the concerned party at the address above written.

10.    Amendment and Waiver:

- 7 -

(REPRODUCED AT GOVERNMENT OF GUAM EXPENSE

a.    Neither the agreement nor any provision hereof may be changed, waived, altered, amended, or discharged orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, alteration, amendment or discharge is sought.

b.    Failure by either party to object to any failure of performance by the other party of any provision of the Agreement shall not constitute a waiver of, or estoppel against, the right of such party to require such performance by the other. Nor shall any failure to object constitute a waiver or estoppel with respect to succeeding failure of performance.

11.    Severability:

If any part of this Agreement is held by a court of competent jurisdiction, an official opinion or statement of any Federal or Territorial official or regulatory agency or law, to be invalid, void or unenforceable, the remainder of this Agreement shall remain in full force and effect, and shall in no way be affected. If any provision is held to be invalid, void, or unenforceable as referred to herein, the parties shall modify said portion and negotiate in good faith a modification of the provision insofar as possible under any law, regulation, or opinion.

12.    Attorney's Fees:

If any legal action, suit or other proceedings is brought for the enforcement of this Agreement or because of any alleged dispute, breach or default in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and court cost incurred in the action, suit or

- 8 -

proceeding, in addition to any other remedy or relief to which it may be entitled.

13.   Access to Records:

Consultant shall maintain all books, documents, papers, accounting records and other evidence concerning the expenses and costs incurred in its performance and shall make such material available to Port for inspection and copying upon request during the contract term and for a period of three (3) years thereafter.

14.   Agreements Outside of Contract:

This contract contains the complete agreement concerning the relationship and arrangements between the parties and shall, as of the effective date hereof, supersede all other agreements between the parties.  The parties stipulate that neither of them has made any presentation with respect to the subject matter of this Agreement or any representations including the execution and delivery hereof except such representations as are specifically set forth herein and each of the parties hereto acknowledges that it has relied on its own judgment in entering into this Agreement.  The parties hereto further acknowledge that any payment or representations that may have heretofore been made by either of them to the other are of no effect and that neither of them has relied thereon in connection with his or its dealings with the others.

15.   Best Efforts of Consultant:

Consultant agrees that Consultant will at all times faithfully, industriously, and to the very best of Consultant's ability, experience, and talents perform all of the duties that may be required from Consultant pursuant to the express and implicit terms hereof, to the sole satisfaction of the Port.

- 9 -

(REPRODUCED AT GOVERNMENT OF GUAM EXPEN

16.   Miscellaneous:

a.     Any attempt to assign or subcontract any work required by this Agreement by Consultant without Port's prior written consent shall constitute a default of this Agreement and any such attempted assignment shall be null and void.

b.     The descriptive headings of the several sections and subsections in this Agreement are inserted for convenience only and shall not be deemed to affect the meaning or construction of any provision hereof.

c.     Time is of the essence concerning all provisions of this Agreement.

d.     All briefs, memoranda, reports, summaries and other documents used by or furnished to Consultant during the course of this Agreement shall remain the Port's property including all publication rights and copyright interest and may be used by the Port without Consultant's consent.

e.     This Agreement is made under, and shall be governed and construed in accordance with, the laws, statutes and regulations of the Territory of Guam.

17.   Professional Liability.   Consultant warrants that it is an experienced construction manager, properly and duly licensed under the Government of Guam.  It hereby certifies and warrants that it shall see that the contractor shall carry out and perform the work in a proper manner; and if done improperly by the contractor, then Consultant hereunder shall be liable, like other professionals, for damages and the Port's attorney's fees as a result of Consultant's improper or negligent acts in performing its duties, and the terms and conditions under this contract.  Consultant's liability hereunder shall continue even after the completion of the project and shall run for a period of five

- 10 -

(REPRODUCED AT GOVERNMENT OF GUAM EXPEN

(5) years after any defect or any problems are discovered by the Port.

18.    Ownership of Work and Designs:

All work, drawings, specifications and designs by the Consultant shall belong to the Port and Port shall have the right to use them in any way whatsoever and make modifications thereto. If the Port has another consultant to modify or change the plans, etc., then Consultant's name on such plans, designs, specifications and work shall be deleted on the plans, designs, specifications, etc.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

**EMPSCO ENGINEERING CONSULTANTS**

By: _____
    PETRONILO Q. VILLALUZ, P.E.
    Managing Engineer

Date: __12/28/95__

CERTIFIED FUNDS AVAILABLE:

_____
**FRANKLIN E. BADAR,**
Certifying Officer

Date: __12/29/95__

FPC:amn\F#1696.__\fpc\pag\EMPSCO.K

**PORT AUTHORITY OF GUAM**

By: _____
    **EULOGIO C. BERMUDES**
    General Manager

Date: __12-29-95__

APPROVED AS TO FORM:

CARBULLIDO, PIPES & BORDALLO

By: _____
    **F. PHILIP CARBULLIDO, ESQ.**
    Legal Counsel
    Port Authority of Guam

Date: __12/28/95__

- 11 -

(REPRODUCED AT GOVERNMENT OF GUAM EXPENSE)

# SCOPE OF WORK

## FOR

## REPAIRS AND IMPROVEMENTS TO EXISTING F-1
## FUEL PIER (SHELL PIER)

1. ## INTENT AND DESCRIPTION

The Port Authority of Guam is intending to correct deficiencies, repair damages and construct improvements to existing Fuel Pier "F-1" (Shell Pier). The purpose of this contract is to obtain professional services for the design of such repairs and improvements. The project includes the inspection, identification of necessary repairs to existing dolphin, main wharf, walkway and improvements to existing Fuel Pier "F-1". The project also includes all the required soil investigation, shop drawing and catalog submittal review, and construction consultation.

2. ## LOCATION

The project is located at Pier "F-1" (Shell Pier) Apra Harbor, Cabras Islands Guam, M.I.

3. ## DESIGN PARAMETERS

1. Report on damaged structures F-1 Facility Guam for Shell Guam, Inc. prepared by Candac Limited dated August 1993.

2. Structural Assessment of the Foxtrot (F-1) Pier, Apra Harbor prepared by N.C. Macario & Associates, Inc.

3. Ultra Sonic gauging report, main pier support pillars pier (F-1) Guam, prepared by Guam Oceaneers/N.C. Macario & Associates, Inc.

4. Subsurface Soil Investigation Foxtrot I Pier Facility Improvement/Repair Cabras Island and prepared by Geo-Engineering & Testing, Inc. dated July 13, 1993.

5. Uniform Building code (UBC) - 1994 Edition.

6. American Concrete Institute (ACI) Code - 1989 Edition.

Exhibit A

(REPRODUCED AT GOVERNMENT OF GUAM EXPENS

4.    **CONSTRUCTION COST LIMITATION**

The project shall be designed to permit construction of the repair and improvement of the facility within a construction contract price to be provided by the Government. If the consultant during the preliminary cost analysis finds that the repairs and improvements cannot be built within the allotted amount, the matter should be brought to the attention of the General Manager immediately.

Consultant shall prepare a construction cost estimate for the proposed repairs and improvements.

5.    **SOILS REPORT**

The Consultant shall review and interpret all subsurface exploration, geotechnical and soils report furnished by Port Authority of Guam for the project.

The soils investigation shall include the following information:

a.    General soil composition

b.    General subsurface conditions

c.    Compactibility of soil

6.    **ENVIRONMENTAL PROTECTION PLAN**

The Consultant shall review the Environmental Impact Assessment Report and U.S. Army Corps of Engineers permit application furnished by Port Authority of Guam. The Consultant shall advise Port Authority of Guam on any problems that may be encountered during the permitting process.

(REPRODUCED AT GOVERNMENT OF GUAM EXPENSE)

SCOPE OF WORK
REPAIRS AND IMPROVEMENTS TO EXISTING
F-1 (FUEL PIER (SHELL PIER)
Page Three (3)


7.    **DESIGN ITEM AND CONSIDERATION**

The general description of work shall include but not limited to the following:

1.    Repairs to existing support piles of Dolphins A, B, C, D and G. — DONE

2.    Repairs to walkways support piles P1, P2, and P3.

3.    Removal of existing piles and pile cap of Dolphins H. — DONE

4.    Removal and replacement of damaged air buffer fenders C and D.

5.    Repair cracks at precast concrete deck units, girders and main beam at main wharf area including supporting piles. DONE

6.    Repair spalls and deteriorated concrete surfaces at main wharf area.

7.    Repair cracks/spalls at access ramp.

8.    Repair cracks and spalls at pile caps. — DONE

9.    Removal and replacement of existing fendering system. DONE

10.   Installation of new cathodic protection system.

11.   Repair Bollard connections to main wharf.

12.   Removal and Replacement of damaged dolphin "H". DONE


8.    **SUBMITTALS**

Submittals shall be made in accordance with the following schedule:

| Submittal | Due Date | Drawings | Specifications | Cost Estimates |
|-----------|----------|----------|----------------|----------------|
| 35% Design Documents | 45 Calendar days after NTP | 5 Copies | 5 Copies | 5 Copies |
| Final Design Documents | 45 Calendar days after receipt of 35% review comments | 5 Copies | 5 Copies | 5 Copies |

(REPRODUCED AT GOVERNMENT OF GUAM EXPENSE)

9.    <u>GOVERNMENT REVIEW</u>

The Port Authority of Guam will work closely with the Consultant to expedite design reviews. Reviews will normally be "On Board".

10.   <u>RELATIONS WITH OTHER GOVERNMENT AGENCIES</u>

All directions within the scope of this contract will be issued by the General Manager, Port Authority of Guam, and the Consultant shall not accept such direction from others. Information provided by other agencies which seemingly conflicts with information provided by the General Manager will be discussed immediately. This policy is not intended to prevent the Consultant from obtaining necessary design information from other agencies.

11.   <u>RESPONSIBILITY OF THE CONSULTANT</u>

The Consultant shall be responsible for the professional and technical accuracy and the coordination of all designs, drawings, specifications and other work of materials furnished by him under this contract. The Consultant without additional cost to the Government, shall correct or revise all errors or deficiencies in his work.

12.   <u>GOVERNMENT RESPONSIBILITIES</u>

The Port Authority of Guam shall be responsible for the following:

a.    Port Authority of Guam will furnish the Consultant with the as-built drawings of the existing facilities affected by this scope of work which are available at PAG file.

(REPRODUCED AT GOVERNMENT OF GUAM EXPENSE)

SCOPE OF WORK
REPAIRS AND IMPROVEMENTS TO EXISTING
F-1 (FUEL PIER (SHELL PIER)
Page Five (5)

b.   The Port Authority of Guam shall provide, if requested, assistance necessary for the Consultant and its agents access to the project site.

c.   Environmental Impact Assessment Report, U.S. Army Corps of Engineers Nationwide Permit, Territorial Seashore Permit Clearance as required during the processing of Government of Guam Building Permit.

AGREED:                                  APPROVED:


PETRONILO Q. VILLALUZ, P.E.              CAPT. EULOGIO BERMUDES
Managing Engineer                        General Manager
EMPSCO Engineering Consultants           Port Authority of Guam


Date: _NOV. 28, 1995_                    Date: _11-30-95_

**2**




RECEIVED
3-15-96

March 15, 1995

General Manager
Port Authority of Guam
1026 Cabras Highway, Suite 201
Piti, Guam 96925
Fax: (671) 477-2189

Attention:     Mr. E.C. Bermudes

Subject:     **Repairs and Upgrading to Foxtrot "F-1" Pier, Apra Harbor, Guam, M.I.**

Dear Mr. Bermudes:

Reference is made to our 14 March 1996 meeting and our discussions. We are pleased to submit our proposal for:

- **Proposal "A"**

   Deletion of Basic Bid Item 10 - Encapsulation:
   At bid time Black received the enclosed subcontract quotation for concrete jacketing and encapsulation from Madcon Corporation. Madcon, we understand, is a preferred "Master Builder's, Inc.", encapsulation systems installer.

   ➤ From Madcon's quote we arrived at the deductive cost for encapsulation.

   | | |
   |---|---|
   | - Mobilization | $46,580 |
   | - Encapsulation | 555,066 |

   Other Cost Associated:

   | | |
   |---|---|
   | - Freight | 19,921 |
   | - Black Support Equipment | |
   |   (Same as Jacketing Work) | 0 |
   | - Home Office Overhead and | |
   |   Fixed Cost & Indirects | 0 |
   |   SubTotal: | 621,567 |
   | | |
   | Fee | 24,862 |
   | Bond | 6,464 |
   | GRT | 27,225 |
   | Deductive Cost | ($680,118) |

   ➤ Additive cost impact as a result of the encapsulation deletion.
     We also used Madcon's subcontract quote for Jacketing:

   | | |
   |---|---|
   | - Mobilization | 28,500 |
   | - Sum of Items 6 ~ 9 | 159,275 |
   |   Total: | $187,775 |



SENT BY: 3-15-96 ;11:25AM ; BLACK



*Repairs and Upgrading to Faxfree "F-1" Pier,*
*Apra Harbor, Guam, M.I.*
*Page - 2 -*

In our recent post bid discussion with Madcon they indicated they will **not** take on a jacketing subcontract. This is also implied in Madcon's General Notes, Item 4. Therefore, if encapsulation is deleted we end up with **no** subcontractor for jacketing, and as of this time we have not identified one. We also must anticipate higher subcon jacketing pricing and protect ourselves from this potential cost escalation. We will have to allow at least 30% of Madcon's subcon quote or roughly an additive of: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$    60,000**

Therefore, the Total Deductive Cost: (680,118 - 60,000)    =    $  620,118

Revised Basic Contract Cost: (2,147,800 - 620,118)    =    **$1,527,682**

### Proposal "B"

Black proposes to delete the concrete jacketing and encapsulation and use the Total Upper Section Replacement as briefly described by Pile Bucks' "Protection, Inspection and Maintenance of Marine Structures", pages 80 & 81 enclosed.

If acceptable we propose the following deducts:

- Encapsulation                                          $6    . . .
- Cost Savings Offered to PAG                     _    . . .
    Total Deductive Cost:                             . . .

Therefore, the Revised Basic Contract: (2,147,800 - 740     ) = . .    **$1,407,682**

If the NTP is given 1 April, we expect to receive the materials on site end of July                the props presented are equitable to both parties and we look forward to your acceptance of Proposal "B".

Very truly yours,

**Black Construction Corporation**

Perfecto O. Jose', Jr.
Senior Vice President
and General Manager

*Enclosures: (cover letter + 5 pages)*



**MADCON**
CORPORATION

MADCON CORPORATION
3275 Berway Lane
Ellicott City MD 21042
Phone: 410-461-1155
Toll Free: 800-626-3614
Fax: 410-461-2438

MADCON OFFSHORE
P.O. Box 905
Galena Park, Texas 77665
Phone: 405-577-2118
Toll Free: 800-626-3014
Fax: 410-461-2438

7 February 1996

## REVISED
QUOTATION VIA FAX    Total pages: 8

Our fax: 410 - 461 - 2438
Our phone: 410 - 661-1155

To:  Raddy Yabut
     Black Construction Corp.
     fax: 011-671-646-9086

Re:  Repairs to Foxtrot "F-1" Pier

We are pleased to provide the following quotation for the referenced project:

**BASE BID**

| | | | |
|---|---|---|---|
| 1. Item 1 | Mobilization (covers polymer encapsulation work only) | LS = | $46,580 |
| | For concrete jacketing add | LS = | $28,500 |
| | For anode installation add | LS = | $7,800 |
| 2. Item 6 | Concrete jacketing, type 1 repairs | $1,475 ea x 4 = | $5,900 |
| 3. Item 7 | Concrete jacketing, type 2 repairs | $1,620 ea x 3 = | $4,860 |
| 4. Item 8 | Concrete jacketing, type 3 repairs | $1,620 ea x 7 = | $11,340 |
| 5. Item 9 | Concrete jacketing, type 4 repairs | $1,475 ea x 93 = | $137,175 |

Notes:
a. The above quotes are for labor & dive equipment only to install the concrete jackets, including pile cleaning, installation of forms, supports, shear connectors, etc. We will also perform the underwater portion of placing the concrete, however, labor to operate cranes, barges, boats, concrete pumps, etc. which will be needed to perform concrete pumping are for your account. Depending on the forms you use, we may also need you to provide additional labor and/or lifting equipment to assist us in setting/removing the forms.

b. All materials (i.e. - concrete, steel, shear connectors, forms, etc.) are for your account.

c. All equipment such as barges, work floats, concrete pump, and cranes are also excluded from our quotes above.

d. The concrete for these jackets must be pumped into the forms from the bottom up through injection ports. We have estimates on re-usable fiberglass forms which would cost about $35,000, but we have not included this in our quotes.

**BASE BID, con't.**

6. Item 10    Polymer encapsulation, FRP    $4,869 ea x 114 = $555,066
Notes:

e. Our quote above for polymer encapsulation (bid item 10) is for labor, equipment (except as noted below), and materials to install the specified product which is Master Builders' A-P-E Process.

f. We would need the following support from your company: 1) barge (say 30' x 50' minimum), 2) 2 small work floats (say 6' x 12'), 3) one 325 cfm air compressor to run grout pump, 4) 300 lb. or 600 lb. sandblast u sit for sandblasting inside of FRP jackets, 5) crane and operator to load/unload our equipment onto barge for mob/demob.

Page two
Quotation - Foxtrot "F-1" Pier

g. We have more experience with the specified system than any other contractor. We have completed more than twenty projects using the A-P-E Process. If we do the installation, Master Builders and MADCON will provide the required five year warranty. We are transmitting a copy of our brochure for your use.

h. Our price for the polymer encapsulation work includes personnel which will act as the quality control specialist for this portion of the work as required in the specifications. The specifications require this person to be on site for the duration of the project.

ADDITIVE BID

1. Item 5        Concrete jacketing, type 4              $1,475 ea x 65 = $95,875
Notes  a,b,c, & d apply to this item.

2. Item 6        Pile encapsulation, FRP                 $4,026 ea x 84 = $338,184
Notes  e,f, g, & h apply to this item.

3. Item 9        Cathodic protection-install anodes      $449 ea x 198 = $88,902
Note:
Our quote for the anodes includes labor, diving equipment, underwater welding equipment, underwater welding electrodes, and the underwater epoxy for coating the welds. All other equipment and materials such as barge, boats, anodes and 400 amp welding machine are not included in our price. Testing by a corrosion engineer is not included in our price.

General Notes:
1. We see this job as requiring three separate crews. One crew will perform the concrete jacketing work and crew number two will perform the polymer encapsulation work behind the concrete crew after the concrete has properly cured. You can not install the polymer encapsulation until the concrete has properly cured. The third crew would install the anodes.
2. For the base bid, we estimate approx. 12 weeks for the concrete jacketing and approx. 11 weeks for the polymer encapsulations.
3. For the additive bid, we estimate approx. 7 weeks for the concrete jacketing and approx. 7 weeks for the polymer encapsulation. For the anode installation, we estimate a total of 13 weeks.
4. We will accept the polymer encapsulation portion of the project without the concrete jacketing work, however, the concrete jacketing work must be good quality as the integrity of the polymer encapsulations is highly dependent on the concrete jacketing.
5. Freight for the polymer encapsulation materials is included to a U.S. West coast port. Freight from west coast port to Guam is for your account. The attached schedule has weights and dimensions for use in estimating shipping cost. Freight for our equipment is also included to a west coast port in the U.S. Freight for our equipment (one 20 ft. sea container, approx. wt. = 15,000 lbs.) from west coast to Guam is also for your account.

We appreciate the opportunity to submit this quotation. Please contact me by phone at 410-461-1155 or by fax at 410-461-2438 if you have questions. Thank you.

Sincerely,

Bruce Trader
President, MADCON Corp.

# PROTECTION, INSPECTION & MAINTENANCE OF MARINE STRUCTURES

**A Pile Buck® Production**



© COPYRIGHT 1990, PILE BUCK® INC.

**Description of Repairs:** Cut out the corroded section of pile being sure that the bottom cut and top cut (if applicable) are square. Temporary supports may have to be provided to transfer the load from the pile being repaired to adjacent piles. Fabricate a welded assembly consisting of a 1-inch steel bearing plate, two 3/8-inch steel side plates, and four steel angles, and place over the bottom cut. Drill and bolt the bearing assembly to the remaining lower steel pile using 1-1/4-inch galvanized steel bolts. Add cathodic protection to new section.

**For Intermediate Replacement:** (figure 8-3), cut a section of new H-pile to fit the missing length of pile and weld a 1-inch steel bottom bearing plate to the new section. Place the intermediate section into position and bolt the bearing plates together. Weld the upper joint and four 5/8-inch steel splice plates to both old upper and new H-pile sections.

**For Total Upper Section Replacement:** (figure 8-3), cut a new section similar to that required for intermediate replacement, except cut to fit under the concrete cap using 1-inch steel bearing plate bolted to the cap. This arrangement is necessary when the steel has corroded extensively at the concrete-steel interface.

All new metal should be cleaned and coated before installation. Welded joints should be cleaned and coated after welding. All welded joints should be watertight.

**Application:** This method restores the structural strength lost in the deteriorated upper section. Corrosion can again occur once the coating fails. Economics will govern approach.

**Future Inspection Requirements:** Same as for the other steel pile sections.



## SR-4: REPAIRING STEEL PILE WITH CONCRETE ENCASEMENT

**Problem:** Slight to moderate deterioration (less than 35 percent) of the cross-sectional area has occurred; or protection against corrosion and abrasion is required.

**Description of Repairs:** Clean the steel pile of all marine growth and loose rust using a high pressure waterblaster. Two methods may be used to provide the concrete encasement, flexible and rigid form. In addition, steel angles may be used with the rigid form, to regain some of the reinforcement in the steel pile where greater levels of deterioration have occurred (figure 8-4).

After the piles have been thoroughly cleaned, a 6- by 6-inch reinforcing mesh is placed around the pile, using spacers to maintain clearance between the pile, reinforcing, and fabric form. The fabric form should be placed around the pile.

**For the Flexible Form:** The zipper should be closed, and the form secured to the pile at the top and bottom with mechanical fasteners (Figure 8-4).

**For the Fiberboard Form:** The straps are installed and secured every 12 inches. A minimum of 1-1/2-inch spacing is to be maintained between the pile and reinforcing and between the reinforcing and form (figure 8-4).

The annular space between the pile and the form is then filled to overflowing with concrete grout using a tub or hose extending down to the lowest point of the form.

The form is left in place and the base is backfilled to above the concrete.



**3**

# ELEVATION—TYPICAL PILE

SCALE: ¼" = 1'-0"



EXISTING PILE CAP
REINF. NOT SHOWN

EXISTING CONC. & REINF.
IN PILE NOT SHOWN

ELEV +9.5' MLLW
(ELEV +8.0' MLLW
AT AREAS OF DOLPHINS C & D)

NEW 22" DIA × 3/8"
PILE SECTION,
EPOXY COAT PER SPECS

∇ MLLW

4'-0"

EXISTING 22"ø×3/8"
PIPE PILE

**NOTE:**
VERTICAL PILE SHOWN
BATTER PILE SIMILAR

# SECTION

SCALE: 1" = 1'-0"

1" PL. FLANGE

3/8"

¾"ø ADHESIVE
ANCHOR BOLTS,
8 TOTAL, SEE NOTE 2

NEW PILE SECTION
PER ELEVATION



½" PL. SPLICE

½" PL. SPLICE

GAP 2"

¼ UNDERWATER WELD – TYP

2

SECTION
SCALE: 1"=1'-0"



GAP 2"

½" PL. SPLICE

¼ △ UNDERWATER WELD - TYP

# NOTES

1. THIS DRAWING IS TO BE READ IN CONJUNCTION WITH DRAWINGS & SPECIFICATIONS FOR PROECT — REPAIR & UPGRADING TO FOXTROT "F-1" PIER — PREPARED BY EMPSCO ENGINEERING CONSULTANTS, DATED 01/10/96, AND IS SUBJECT TO ALL CONDITIONS SHOWN AND STATED THEREIN

2. ADHESIVE ANCHORS TO BE STAINLESS STEEL RED HEAD "REDI-CHEM." BY PHILLIPS DRILL CO. CATALOG NO. CE3495 OR APPROVED EQUAL. INSTALL PER MANUFACTURERS RECOMMENDED PROCEDURES



3

DETAIL
SCALE: 1"=1'-0"

22" DIA.

⅜"

¾"∅ ADHESIVE
ANCHOR BOLT,
SEE NOTE 2

NEW PILE SECTION
PER ELEVATION

3"

2"

6¾" MIN.
EMBED

1



3 DETAIL
SCALE: 1"=1'-0"

4 DETAIL
SCALE: 1"=1'-0"



| NO. | DATE | REVISIONS | BY | APPR |
|-----|------|-----------|-----|------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

BRUCE W SWANKE
CERTIFICATE
NO 910
STRUCTURAL ENGINEER

| DSGN | |
| DRWN | BWS |
| approved | |
| approved | |



NEW PILE SECTION
PER ELEVATION



1'-6"

2"GAP

NEW PILE SECTION
PER ELEVATION

MLLW - 4'-0"

1/2" PL.
SPLICE

1/4 UNDERWATER
WELD

EXIST. 22" DIA.
PILE



DETAIL
SCALE: 1"=1'-0"



4

DETAIL
SCALE: 1" = 1'-0"

¼ ▷ UNDERWATER
WELD

EXIST. 22" DIA.
PILE

| NO. | DATE | REVISIONS | BY | APPR. |
|-----|------|-----------|-----|-------|
| | | | | |
| | | | | |
| | | | | |

BRUCE W SWANNEY
CERTIFICATE
NO.
010
(STRUCTURAL) ENGINEER

| DSGN | BWS | CHKD | AS SHOWN |
|------|-----|------|----------|
| DRWN | | SCALE | |

| drwn | approved | date | date |
|------|----------|------|------|
| | approved | date | |

WINZLER & KELLY
CONSULTING ENGINEERS
STE 904, GCIC BLDG. AGANA, GUAM 96910 (671) 472.6792-3

FOR : BLACK CONSTRUCTION CORPORATION
P.O. BOX 24667
GMF, GUAM 96921



CHK'D

SCALE AS SHOWN

date

date

**WINZLER & KELLY**
CONSULTING ENGINEERS
STE 804, GCIC BLDG. AGANA, GUAM 96910 (671) 472.8792-3

FOR : BLACK CONSTRUCTION CORPORATION
P.O. BOX 24667
GMF, GUAM 96921

REPAIRS TO DOLPHINS A, B, C & D

PROPOSED PILE REPAIR DETAILS

APRA HARBOR        GUAM
FOXTROT (F-1) PIER

| JOB NO. | 9642420A |
|---|---|
| DATE | 04/04/96 |
| SHT | VE-1 |
| OF | 1 |