| | |
|---|---|
| 1 | BERMAN O'CONNOR MANN & SHKLOV |
| | MICHAEL J. BERMAN |
| 2 | DANIEL J. BERMAN |
| | ROBERT J. O'CONNOR |
| 3 | Suite 503, Bank of Guam Building |
| | 111 Chalan Santo Papa |
| 4 | Hagåtña, Guam 96910 |
| | Telephone: (671) 477-2778 |
| 5 | Facsimile: (671) 477-4366 |

**FILED**
DISTRICT COURT OF GUAM

NOV 22 2004

MARY L. M. MORAN
CLERK OF COURT

(96)

6  Attorney for Defendants
*Winzler & Kelly Consulting Engineers*

7

8

9               **IN THE DISTRICT COURT OF GUAM**
                      **TERRITORY OF GUAM**

10

11

| | | |
|---|---|---|
| 12 | **S.J. GARGRAVE SYNDICATE AT LLOYD'S,** ) | **Civ. No. CIV 03-0009** |
| 13 | **Plaintiff,** ) | |
| 14 | **vs.** ) | **ERRATA RE:** |
| 15 | **BLACK CONSTRUCTION CORP.,** ) | **DECLARATION OF BRUCE SWANNEY IN SUPPORT OF** |
| 16 | **WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERS** ) | **MOTION FOR SUMMARY JUDGMENT ON FIFTH CAUSE** |
| 17 | **MANAGEMENT & PLANNING SERVICES CORP.,** ) | **OF ACTION (BREACH OF CONTRACT AGAINST** |
| 18 | **Defendants.** ) | **WINZLER & KELLY CONSULTING ENGINEERS)** |

19

20     Attached hereto are copies of the Exhibits to the Declaration of Bruce Swanney filed November

21  15, 2004, which may have been omitted from some of the filed copies.

22

23     Dated: 11/22/04          **BERMAN O'CONNOR MANN & SHKLOV**
                              Attorneys for Plaintiff *WINZLER & KELLY*
24                             *CONSULTING ENGINEERS*

25

                        BY: *Seth Forman*
26                          *for* **DANIEL J. BERMAN**

27

28

E:\Kauipo\plds\sf\winzler&kelly errata.wpd\BRM.dv



EXISTING PILE CAP
REINF. NOT SHOWN

EXISTING CONC. & REINF.
IN PILE NOT SHOWN

ELEV +9.5' MLLW
(ELEV +8.0' MLLW
AT AREAS OF DOLPHINS C & D)

3
—

NEW 22" DIA × 3/8"
PILE SECTION.
EPOXY COAT PER SPECS

NOTE:
VERTICAL PILE SHOWN
BATTER PILE SIMILAR

▽ MLLW

4'-0"

4
—

EXISTING 22"⌀×3/8"
PIPE PILE

ELEVATION—TYPICAL PILE
SCALE: ¼"=1'-0"

**EXHIBIT "A"**

②



— ¾"ø ADHESIVE
ANCHOR BOLTS.
8 TOTAL. SEE NOTE 2

— NEW PILE SECTION
PER ELEVATION

— 1" PL. FLANGE

—⅜—

① <u>SECTION</u>
SCALE: 1"=1'-0"

③



GAP 2"

½" PL. SPLICE

½" PL. SPLICE

UNDERWATER WELD — TYP
¼

② SECTION
SCALE: 1"=1'-0"



## NOTES

1. THIS DRAWING IS TO BE READ IN CONJUNCTION WITH DRAWINGS & SPECIFICATIONS FOR PROECT — REPAIR & UPGRADING TO FOXTROT "F-1" PIER — PREPARED BY EMPSCO ENGINEERING CONSULTANTS, DATED 01/10/96, AND IS SUBJECT TO ALL CONDITIONS SHOWN AND STATED THEREIN

2. ADHESIVE ANCHORS TO BE STAINLESS STEEL RED HEAD "REDI-CHEM" BY PHILLIPS DRILL CO. CATALOG NO. CE3495 OR APPROVED EQUAL. INSTALL PER MANUFACTURERS RECOMMENDED PROCEDURES







¾"ø ADHESIVE
ANCHOR BOLT.
SEE NOTE 2

6¾" MIN.
EMBED

NEW PILE SECTION
PER ELEVATION

22" DIA.



DETAIL
SCALE:   1"=1'~0"





NEW PILE SECTION
PER ELEVATION

2" GAP

▽ MLLW — 4'—0"

1/2" PL
SPLICE

UNDERWATER
WELD

EXIST. 22" DIA.
PILE

DETAIL
SCALE: 1"=1'-0"

| | | DSGN | BWS | CKD | |
|---|---|---|---|---|---|
| | | DRWN | | SCALE | AS SHOWN |
| | | approved | | | date |
| | | approved | | | date |

| NO. | DATE | REVISIONS | BY | APPR. |
|---|---|---|---|---|

REPAIRS TO DOLPHINS A, B, C & D

PROPOSED PILE REPAIR DETAILS

APRA HARBOR    GUAM
FOXTROT (F-1) PIER

JOB NO. 96424204
DATE 01/04/95
VE-1
1

WINZLER & KELLY
CONSULTING ENGINEERS
275 #04, #028 #283 AGANA, GUAM 96910 MF# 472-2?72?-3

FOR : BLACK CONSTRUCTION CORPORATION
P.O. BOX 24667
GMF, GUAM 96921

OWE

date

date

# IN THE DISTRICT COURT OF GUAM

S.J. GARGRAVE SYNDICATE AT )
LLOYDS, )
       Plaintiff, )
)
         v. ) Civil Case No. CV03-00009
)
BLACK CONSTRUCTION CORPORATION, )
WINZLER & KELLY, and ENGINEERING )
MANAGEMENT & PLANNING SERVICES )
CORPORATION, )
)
       Defendants. )
)

### VIDEOTAPED DEPOSITION OF BRUCE SWANNEY

Tempe, Arizona
March 25, 2004
9:45 a.m.

Prepared for:
ROBERT J. O'CONNOR, ESQ.
(Certified Copy)

Reported by:
AMY MERRIFIELD, RPR
AZ CCR #50097
IL CSR #84-4027

**BROWN
& TOLEU ltd.**
Court Reporters
4500 S. Lakeshore Dr., Suite 280
Tempe, Arizona 85282

Telephone (602) 254-5479 or (480) 491-8500
FAX (602) 254-5013 or (480) 491-8506

**EXHIBIT "B"**

Did you have any discussion with Black about a substitution of a different product for the Redhead product that you specified in note 2?

A.     No, I didn't.

Q.     Did you know that Black had substituted a different product for the product set forth in note 2?

A.     Well, I know now.

Q.     You know now, right.

Did you know prior to leaving Guam?

A.     No.

MR. BOOTH:  Okay.

MR. O'CONNOR:  Should we take a break now?

MR. BOOTH:  Let me just finish a couple more things, and then I will, yeah.

Q.     BY MR. BOOTH:  Were you familiar with this specific Redhead product when you specified it in note No. 2?

A.     How do you mean "familiar" with it?

Q.     Had you called it out for use on prior jobs?

A.     Yes.

Q.     Okay.  Had you seen it used?

A.     I had seen it -- I'd seen similar products, actually, installed.  I'm not sure if I've seen this particular one installed.

Q.      Okay.  Did you personally specify it in
note No. 2, or was that done by somebody else?

A.      No, that was me.

Q.      Okay.  Why did you select that particular
product?

A.      It was the most appropriate for the
application.  It takes a lot of the construction
variables out of the installation.  It's a lot -- it
requires a lot less skill to install it, and there's
more -- it's more -- you're increasing your chances of
having the connection constructed correctly.

Q.      Okay.  And I understand this is a glass
cylinder that has previously measured amounts of
hardener and epoxy in it --

A.      Yes.

Q.      -- and then it's broken NC2, as we say, as
it's in the hole, and what do you do, spin the bolt in
order to mix it?

A.      The bolt's attached to impact drill, and
it goes in and breaks the glass and mixes the epoxy
and --

Q.      Okay.

A.      -- it's there.

Q.      By putting the words "or approved equal"
in note No. 2, were you allowing the contractor some

leeway in case he couldn't buy this particular product

on Guam?

A.    Yes.

Q.    Okay.  But I take it you never actually

had any discussions as to what type of product from

some other manufacturer would be an approved equal?

A.    I'm sorry, I lost you there.

Q.    Did Black ever come -- or EMPSCO or anyone

ever come to you and say:  Would XYZ product be the

equivalent of what you specified.

A.    No, no one did.

MR. BOOTH:  Let's take our break now.

THE VIDEOGRAPHER:  We're going off the

record.  The time is approximately 12:47 p.m.

(A recess was taken from 12:47 p.m.

to 1:51 p.m.)

(Exhibit No. 22 was marked for purposes of

identification.)

THE VIDEOGRAPHER:  Back on the record to

continue the videotaped deposition of Bruce Swanney.

The time is approximately 1:51 p.m.

Q.    BY MR. BOOTH:  Mr. Swanney, I may have

misunderstood, but did you say in answer to a question

this morning that Winzler & Kelly originally designed

the pier F-1?

Q.     Okay.  Would you look at the third page,
the as-built record of materials.  The last entry in
the list is epoxy anchor bolts.

My question is:  Are you familiar with the
product Anchor It Epoxy System HR200 that is specified
on the last few lines of that exhibit?

A.     I'm aware that it exists.  I had heard of
it before, but that's about the limit.

Q.     Okay.  Have you seen that product used on
jobs that you've --

A.     No.

Q.     -- worked on?

A.     No.

Q.     All right.  Do you have any opinion as to
whether that product is the equivalent of the product
specified in note 2 on Exhibit 17, the Redhead product?

MR. O'CONNOR:  Reddy Cam.

Q.     BY MR. BOOTH:  Reddy Cam Redhead?

A.     It's is a different system.

Q.     Okay.  What is the system that is
described in the Anchor It Epoxy System described on
the exhibit?

A.     All this is saying here is Anchor It Epoxy
System.  I'm not sure what the second line is, the
HR200 Solid Bond.  That might be one of the materials.

have to fly in or get sent in from the mainland US?

A.      I consider that was a possibility, yes.

Q.      Okay.  I believe you said that you weren't
aware that a substitution was made for the Reddy Cam
product until sometime long after you left Guam, right?

A.      Yes.

Q.      Okay.  Did you consider that by putting
the note 2 on the drawing, Exhibit 17, that you were
giving the contractor the obligation to determine that
if he used a product other than Reddy Cam, that it had
to be equal in terms of its shear and pull-out
strength?

A.      No.  My intent was that if any -- any
equals were to be considered for substitution, that
they were to be submitted to me for approval before
they -- before they were used.

Q.      Okay.  What factors would you have looked
at to determine if they were the equal, if they had
been submitted to you as a suggested alternative?

A.      The strength, I would -- whether or not
the product was -- was certified by the ICBO evaluation
service, whether they had and ICBO number, and the
method of installation, whether it would be appropriate
for this application.

Q.      Do you know whether the product that's

described in Exhibit 22 is a product that -- where the epoxy has to be pre-mixed on site and then injected by a machine up into the hole?

A.     I believe that's -- I believe that's correct.

Q.     And the contractor has to do the mixing in that case, right?

A.     Yes.

Q.     Okay. Looking at the design in Exhibit 17, did you make any provision to transmit shear forces through the bolts up into the cap?

A.     Shear forces?

Q.     Yes.

A.     I -- they -- they -- the shear forces were not the governing force that determined the configuration of the connection.

Q.     So that was not a major concern in the design?

A.     Correct.

Q.     All right. In doing the design, did you make any provision to transmit bending moment through the bolts up into the cap?

A.     No.

Q.     Okay. Was bending moment a concern when you designed the ultimate repair which is Exhibit 17?

1    filed?

2         A.    No.   No.

3         Q.    Did you know whether or not Black was

4    using the Reddy Cam anchor system before this lawsuit

5    was filed?

6         A.    Did I know whether or not they were using?

7         Q.    Yes.

8         A.    No, I didn't.

9         Q.    Did you know whether or not Black was

10   using eight bolts as opposed to six bolts or ten bolts,

11   or any other number before this lawsuit was filed?

12        A.    No, I didn't.

13        Q.    You told Mr. Booth you did see not advise

14   Black that VE-1 was not to be used for construction.

15   Do you remember that testimony?

16        A.    Yes.

17        Q.    What was the -- in your mind, what was the

18   import of putting the word "proposed" on VE-1?

19        A.    Proposed means that it's subject to review

20   and approval, in this case, by the engineer of record.

21        Q.    So did you assume that -- I'm sorry.

22        A.    I -- the whole relationship with Black

23   Construction was that the -- we were preparing a

24   document for submission to the engineer of record.    I

25   didn't feel like I had to tell them specifically that

1   it wasn't for construction.

2       Q.      So you assumed before they used it for

3   construction they would get EMPSCO's approval?

4       A.      Yes.

5       Q.      And, in fact, they did get EMPSCO's

6   approval, didn't they?

7       A.      Yes.

8       Q.      Was VE-1 meant to supersede any of

9   EMPSCO's plans or designs?

10          MR. BOOTH:  Objection; asked and answered.

11          Go ahead.

12          THE WITNESS:  Not without EMPSCO's

13  approval.

14      Q.      BY MR. O'CONNOR:  Okay.  You have a phrase

15  in the upper right-hand corner here which says:  This

16  drawing is to be -- oh, No. 2, adhesive anchors to be

17  stainless steel Redhead Reddy Cam by Phillips Drill

18  Company, Catalog No. CE3495, or approved equal.

19  Install per manufacturer's recommended procedures.

20          What did you mean by the phrase "or

21  approved equal"?

22      A.      That the contractor was at liberty to

23  submit an alternative anchoring system to me for

24  approval.

25      Q.      So you didn't mean you were giving leeway