ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>        Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>        Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION FOR JUDGMENT ON THE PLEADINGS ON SECOND CAUSE OF ACTION (NEGLIGENCE); DECLARATION OF SERVICE** |

Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff") submits the following memorandum of points and authorities in opposition to Defendant WINZLER & KELLY CONSULTING ENGINEERS ("Winzler")'s Motion for Judgment on the

Pleadings on Second Cause of Action (Negligence) (the "Motion").

## I. INTRODUCTION

Plaintiff is the subrogated insurer of The Port Authority of Guam (hereinafter "The Port"), a municipal corporation, which owns and operates piers, wharves, marinas, dolphins and other structures located in the port of Guam, which service and accommodate maritime trade and commerce. Plaintiff insured The Port's property and is subrogated to its rights to recover damages caused by defendant Black, defendant Winzler and defendant EMPSCO (hereinafter collectively referred as "Defendants"). Plaintiff paid The Port the sum of $1,947,443 on account of damage to the Shell F 1 dolphins in Guam, caused by the Defendants' improper repair work and defective design.

Plaintiff is also the express assignee of The Port's other, unreimbursed claims and demands against any persons or business entities responsible for the losses suffered by The Port arising from the October 13, 2001 earthquake. See, Loss and Subrogation Form attached to the Declaration of Elyze McDonaldExhibit A. As a result of The Port's assignment, Plaintiff is also entitled to recover, against Defendants, all uninsured damages suffered by The Port, not only the damages suffered by Plaintiff.

## II. BACKGROUND FACTS

In August of 1993, the island of Guam suffered a severe earthquake, estimated to be a magnitude of 8.1. The earthquake did significant damage to a number of the piers, docks, dolphins and other facilities and property owned and operated by The Port. Shortly thereafter, defendant Black Construction entered into a contract with Winzler for design service and to advise it concerning repairing the damage which the earthquake had caused. This work included studying and assessing the damage, preparing initial drawings for repairing it, performing structural and other engineering calculations, and preparing plans and specifications to put the

2.

work out to public bid. Black Construction entered into this contract with Winzler, not The Port.[1]

Black Construction submitted a bid to repair the earthquake damage, which bid was accepted by The Port. Black Construction was retained to perform the repairs, pursuant to a written contract with The Port. During the course of the project, to reduce its costs, Black Construction suggested that a number of changes be made to the proposed work. The repair work was performed on the basis of a design prepared by Winzler, which was developed pursuant to a written contract between Black and Winzler (hereinafter "Black-Winzler Contract"). Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the "back of a napkin" drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-seventh as strong as it needed to be. See report of structural engineer Elliott Boone, attached as Exhibit 1 to the Declaration of Thomas M. Tarpley, Jr., filed herein by Defendant EMPSCO (the "Boone Report"), p. 8. The repair work was performed under Winzler's general supervision.

The work was completed in 1997 and upon completion, both defendants represented and warranted to The Port that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam. Black's work involved securing each pile to the underside of the concrete cap above it using eight undersized bolts. Epoxy adhesive was supposed to have been squirted vertically into the eight holes to hold the bolts, but after the second earthquake it was discovered that many

---

[1] In its initial Complaint, Plaintiff alleged that Winzler entered into a contract with The Port. However, after discovery commenced, Plaintiff learned that Winzler only entered into a contract with Black Construction regarding the subject repair work, not The Port. Thereafter, Plaintiff filed its First Amended Complaint alleging, *inter alia*, that The Port was the third party intended beneficiary of the Black-Winzler Contract and that Winzler breached that contract.

bolts had no epoxy on them, and they simply fell out of their holes. Many other bolts had epoxy on only 1-2 inches of their shafts.

On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful than the earthquake of 1993, this earthquake, too, did serious damage to the dolphins owned by The Port, which had previously been repaired by defendant Black Construction pursuant to the plans and specifications prepared by, and under the supervision of, defendant Winzler. The work done in 1996 7 was essentially wiped out. Of the 216 bolts Black installed in Dolphin A, only 2 remained undisturbed after the second earthquake. See the Boone Report, p. 3.

As a result of the damage caused by the second earthquake, The Port submitted a claim to Plaintiff. To date, Plaintiff has paid the claim of The Port, in an amount totaling almost $2 million, and has incurred fees, costs and interest charges of another $1 million. To the extent Plaintiff has made such payments, Plaintiff is subrogated to all of the rights and causes of action previously held by The Port. In this lawsuit, Plaintiff alleges that the repair of the 1993 earthquake damage was done improperly by and under the supervision of defendants Black, Winzler and EMPSCO, and that work which the Defendants had agreed should and would be done, in fact was never done. The repairs done in 1996-7 were inadequate and improperly done by Defendants, and caused and directly led to Plaintiff's damages and losses. Additionally, by virtue of the Loss and Subrogation Form executed by The Port, Plaintiff is entitled to prosecute all of The Port's uninsured claims against Defendants, in the amount of an additional $3 million for property damage, diminution in value of the property, lost rental, business interruption and other losses.

4.

### III. MEMORANDUM OF POINTS AND AUTHORITIES

#### A. The Legal Authority Cited By Winzler In Support Of Its Argument That The Economic Loss Doctrine Bars Plaintiff's Negligence Claims Is Wholly Inapplicable To The Case At Bar

In support of its Motion, and its claim that the Economic Loss Doctrine bars Plaintiff's recovery in negligence, Winzler relies upon East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). In that case, a wholly-owned subsidiary of Seatrain Lines, Inc. "engaged" Seatrain Shipbuilding Corp. to manufacture four oil-transporting supertankers. Seatrain Shipbuilding in turn contracted with defendant Delaval to design, manufacture, and supervise the installation of turbines. The plaintiff in East River was a charterer of one of the supertankers and did not have a contract with defendant Delaval. Plaintiff charterer sued the turbine manufacturer in tort and sought to recover the costs of certain turbine repairs.[2]

The United States Supreme Court in East River held in 1986 that the Economic Loss Doctrine limited plaintiff East River's recovery against defendant to causes of action in contract, not tort. In applying the Economic Loss Doctrine to bar plaintiff's recovery in tort, the Supreme Court held, in part, as follows:

> Obviously, damage to a product itself has certain attributes of a products liability claim. But the injury suffered – the failure of the product to function properly – is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain. *Id.* at 868.

The Supreme Court in East River did not adequately address the issue that plaintiff charterers did not have a contract with defendant Delaval.[3] Instead, the Supreme

---

[2] Initially, both Seatrain Lines, Inc. and Seatrain Shipbuilding Corp. were plaintiffs in the East River case alleging breach of contract, breach of warranty and negligence causes of action against defendant Delaval. However, Delaval successfully raised the statute of limitations as a defense to the claims of Seatrain Lines, Inc. and Seatrain Shipbuilding Corp.

[3] Indeed, 11 years after East River, the Supreme Court acknowledged that the East River decision did not

5.

Court's opinion presupposed contractual privity between the plaintiff charterers and defendant Delaval. Furthermore, the Court in East River pointed out that

> ... the charterers took the ships in "as is" condition, after inspection, and assumed full responsibility for them, including responsibility for maintenance and repairs and for obtaining certain forms of insurance. *Id.* at 875.

East River does not assist Winzler for the simple reason that The Port has no contract with Winzler. Contractual privity between the litigants provides the foundation of the Supreme Court's ruling in East River that a "party can seek to recoup the benefit of its bargain" in contract. Because there is no contractual privity between The Port and Winzler, East River does not apply to the case at bar; Plaintiff cannot be relegated to its contract remedy when it does not have one.

Eleven years after its ruling in East River, the United States Supreme Court in Saratoga Fishing Company v. J.M. Martinac & Company and Marco Seattle Inc., 520 U.S. 875 (1997) (which arose from the Ninth Circuit Court of Appeals), addressed the issue of a plaintiff seeking to recover against a defendant with whom it is not in privity of contract.[4] Specifically, the Supreme Court in Saratoga Fishing asked the following question:

> ... why should a series of resales ... immunize a manufacturer to an even greater extent from the liability for foreseeable physical damage that would otherwise fall upon it? Id. at 881.
>
> The East River answer to this question – because the parties can contract for appropriate sharing of the risks of harm – is not as satisfactory in the context of resale after an initial use. That is because, as other courts have suggested, the Subsequent User does not contract directly with the manufacturer ... Id. at 882. (Emphasis added).

While the Supreme Court in Saratoga Fishing did not overrule its decision in East

---

adequately address the lack of privity issue. Saratoga Fishing Company v. J.M. Martinac & Company and Marco Seattle Inc., 520 U.S. 875 (1997).

[4] Winzler makes absolutely no reference to the Saratoga Fishing case even though that case arose from the Ninth Circuit, arose out of facts more analogous to this case than those of East River, and is controlling authority.

6.

River, it specifically acknowledged that there are factual situations which arise where a plaintiff must sue a defendant in tort because it is not in contractual privity with the defendant. In those cases, if other tort requirements are satisfied " . . . **admiralty's tort rules permit recovery**." *Id.* at 887. (Emphasis added).

Here there is no contract between The Port and Winzler, only between Black and Winzler. Plaintiff did not have an arms length deal with Winzler. Consequently, the Economic Loss Doctrine as stated in East River (and as supported by Saratoga Fishing) does not preclude Plaintiff's recovery from Winzler in tort (negligence). Plaintiff's First Amended Complaint states, in pertinent part, as follows:

> Winzler breached its contract with Black by failing to exercise adequate skill and competence to design and specify the Project that would be sufficiently strong to withstand future earthquakes and typhoons. **Winzler further breached its contract with Black** by recommending and making improper and negligent changes at the Project, and by failing to note and observe errors and omissions by contractors performing the Project. (Emphasis added).

*See,* Plaintiff's First Amended Complaint, paragraph. 27, pgs. 6-7.

In support of its motion for judgment on the pleadings, Winzler also cites Lee v. TAC International, CNMI, Superior Ct. Civ. No. 96-349 (Order of July 2, 1997), an unpublished slip opinion, that is not citable authority. Assuming arguendo that the case of Lee v. TAC International is citable authority, it too does not apply to the facts of the case at bar.

The Conclusion section of the slip opinion (page 10) even states, in part, "[t]his court follows the majority rule that denies recovery in negligence between contracting parties . . . ." (emphasis added). The Port and Winzler are not "contracting parties". Consequently, the Economic Loss Doctrine which Winzler argues provides a shield from its own negligence in this case, does not apply.

The plaintiffs (KCCI) in Lee v. TAC International were in privity of contract with

7.

defendant TAC. Nevertheless, KCCI sued TAC on negligence and contract theories in the context of construction contracts and building defects. The CNMI Superior Court ruled that East River applied and since the parties were in privity of contract with each other, KCCI could not assert negligence and contract causes action to recover the same damages. Winzler failed to inform this Court that there is a lack of privity between The Port and Winzler.

Winzler's motion for judgment on the pleadings also fails to inform the Court that in all of the cases it cites which discuss the Economic Loss Doctrine, the parties were in contractual privity. Those cases holding that a plaintiff in privity of contract with a defendant may only recover on a breach of contract theory, not negligence, do not apply to the case at bar. Winzler's motion for judgment on the pleadings has no merit.

In its moving papers, Winzler states, in part, the following:

> Judgment should be granted on the pleadings in favor of Winzler & Kelly and against the Syndicate on the Syndicate's claim for Negligent Property Damage, since the Economic Loss Doctrine **precludes the Syndicate from recovering in negligence for damage to property incurred as the result of an alleged breach of contract.** (Emphasis added).

Winzler's Motion for Judgment on the Pleadings, page 3.

In the cases cited by Winzler, the litigants were contracting parties. The Port and Winzler were not. Winzler cannot fashion any argument to rebut this fact and its motion for judgment on the pleadings must fail.

Winzler also relies upon Employers Insurance of Wausau v. Suwannee River Spa Lines, Inc., 866 F.2d 752 (5th Cir. 1989), a Fifth Circuit Court of Appeals case decided approximately eight years before Saratoga Fishing. Again, the Saratoga Fishing case is the controlling authority. In its motion, Winzler cites the language of Employers Insurance of Wausau for the proposition that East River applies also where professional services are an

8.

integral part of the manufacture of a product. Winzler's <u>Motion for Judgment on the Pleadings</u>, page. 8, lines 22-24.

The <u>Employers Insurance of Wausau</u> case is readily distinguishable from the facts of the case at bar, primarily because the parties had a contractual relationship with each other. Furthermore, unlike this case and <u>Saratoga Fishing</u>, <u>Employers Insurance of Wausau</u> is not an admiralty case, since the subject of the dispute, a contract to build a ship, is not within an admiralty court's jurisdiction. <u>Thames Towboat Co. v. The Francis McDonald</u>, 254 U.S. 242, 243 (1920). Winzler cannot use the Economic Loss Doctrine to shield itself from liability to Plaintiff in this maritime case.

### B. Plaintiff's First Amended Complaint Alleges Other And Further Damage Suffered As A Result of Winzler's Negligence

Winzler's motion for judgment on the pleadings argues that the Economic Loss Doctrine bars Plaintiff's claims for damages against that defendant because there was no damage beyond "economic loss", *i.e.* only damage to "the product itself". Winzler misleadingly cites Plaintiff's First Amended Complaint that "the only damage alleged 'was done to F pier and the dolphins thereof'". *See*, Winzler's Motion for Judgment on The Pleadings, pg. 5, lines 9-10. Winzler uses only a **partial quotation** from Plaintiff's First Amended Complaint to support its argument. Plaintiff's First Amended Complaint, paragraph 15, actually states the following:

> Although it was substantially less powerful than the earthquake of 1993, this earthquake too, did damage to the property **and facilities owned by the Port Authority.** Specifically, serious damage was done to F pier, and the dolphins thereof, which had previously been repaired by Black, pursuant to the plans and specifications prepared by, and under the supervision of, Winzler and/or EMPSCO.

On its face, Plaintiff alleges damages in its negligence cause of action beyond

9.

mere "economic loss". Facilities (Complaint, ¶ 15) and property owned by The Port, on which Black, EMPSCO and Winzler had **not** worked, were damaged by the failure of the 1996 repairs and the resulting movement of the improperly-secured pile caps. These include pipelines, electrical lines, water lines, fire mains, catwalks, manifolds and other equipment. There was damage to a great deal more than just the F-1 dolphins.

## IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny Winzler's motion for judgment on the pleadings as to Plaintiff's second cause of action (negligence against Winzler) in its entirety.

DATED: San Francisco, California, November 19, 2004.

COZEN O'CONNOR

_____
FORREST BOOTH
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, Forrest Booth, hereby declare under penalty of perjury of the laws of the United States, that on November 19, 2004, I will cause to be served, via Facsimile, a true and correct copy of **PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION FOR JUDGMENT ON THE PLEADINGS ON SECOND CAUSE OF ACTION (NEGLIGENCE)** upon Defendants Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Klemm Blair Sterling & Johnson, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and

>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 19th day of November, 2004 at San Francisco, California.

_____
for FORREST BOOTH

SANFRAN1\31773\1 123206.000