ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



FILED
DISTRICT COURT OF GUAM
NOV 22 2004
MARY L. M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION FOR SUMMARY JUDGMENT ON FIFTH CAUSE OF ACTION (BREACH OF CONTRACT AGAINST WINZLER); DECLARATION OF SERVICE** |

Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff") submits the following memorandum of points and authorities in opposition to WINZLER & KELLY CONSULTING ENGINEERS (hereinafter "Winzler")'s Motion for Summary Judgment

on Fifth Cause of Action (Breach of Contract Against Winzler & Kelly Consulting Engineers) (hereinafter the "Motion").

I. **THRESHOLD ISSUES – THIS MOTION MUST BE DENIED OR CONTINUED BECAUSE DEFENDANT WINZLER DID NOT COMPLY WITH LOCAL RULE 7.1 IN FILING IT, AND BECAUSE PLAINTIFF NEEDS FURTHER DISCOVERY TO PROPERLY OPPOSE IT**

   A. **Defendant Winzler Failed To Comply With Local Rule 7.1 In Filing This Motion, To Plaintiff's Prejudice**

Winzler scheduled this motion for hearing on December 3, 2004, with full knowledge that Plaintiff had not agreed to the hearing date, and with full knowledge that Plaintiff would not agree to any particular hearing date unless and until necessary discovery had been taken. On or about October 18, 2004, counsel for Black Construction Corporation (hereinafter "Black") emailed all counsel, proposing that all parties agree to December 3, 2004 as the hearing date for dispositive motions. Counsel for Plaintiff Stephen Smith replied to the email, stating that he was "generally in agreement," but that he wanted to take two depositions first, and also stating that he would need to obtain the approval of co-counsel. [Declaration of Forrest Booth in Support of Plaintiff's Objection to Hearing Date for Dispositive Motions, filed November 18, 2004, p. 2 and Exh. "A" thereto.] Thereafter, the parties attempted to work out a schedule for taking the two depositions, but were unable to do so for various reasons.

In spite of there being no agreement to do so – and with full knowledge that Plaintiff needed to conduct further discovery – all three defendants nevertheless set various dispositive motions for hearing and oral argument, including the instant motion, for December 3, 2004.

Defendants' failure to obtain Plaintiff's agreement to the hearing date is in flagrant violation of Local Rule 7.1(e)(2), which provides that:

> It shall be the responsibility of the [party requesting the hearing

2.

date] to contact the attorney for each party . . . and propose a date
for oral argument. Once the parties have agreed on a date for oral
argument, the moving party shall clear the date with the clerk.

Once the parties agree to the hearing date, and the clerk has approved, the moving party is required to file an Agreement of Hearing Date with the Court, stating that all parties have agreed to the date. If the moving party cannot obtain agreement, the same document must be filed stating that the moving party was unable to obtain agreement. Local Rule 7.1(e)(2). Winzler failed to obtain Plaintiff's agreement to the hearing date, and has failed to file an Agreement of Hearing Date, in violation of the Local Rules and to Plaintiff's prejudice.

Plaintiff requests that the Court should deny the Motion, or in the alternative take the Motion off calendar and order the parties to meet and confer concerning a mutually agreeable hearing date. The parties can then complete necessary discovery, and the moving parties can then re-file their motions in compliance with the Federal and Local Rules. Alternatively, Plaintiff requests that the Court continue this motion sufficiently to allow Plaintiff to complete discovery. The Court's August 18, 2004, Scheduling Order provides that the cutoff for filing dispositive motions in this case is December 23, 2004. Consequently, Winzler will suffer no prejudice if its motion is not heard on December 3, 2004.

**B.      Plaintiff Should Be Permitted To Conduct Discovery Essential To Oppose The Motion**

Winzler brought the instant motion with full knowledge that Plaintiff needed to do at least two more depositions of specific, identified, individuals before it could agree to set a hearing date for the motion. Plaintiff was actively meeting and conferring with the defendants on the timing of these depositions when Winzler and the other defendants filed the present motions. Moreover, four depositions were taken recently for which the court reporter has not yet

3.

provided the transcripts to Plaintiff.[1] Significant discovery has not been completed.

Under Federal Rule of Civil Procedure 56(f), the Court may "refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" where a party opposing a motion for summary judgment cannot, for reasons stated, present facts essential to justify the opposition.

The two depositions Plaintiff needs to take are of Perfecto Jose, the senior vice president of Defendant Black, and of its site superintendent Rod Bismonte. Plaintiff expects these individuals to provide key testimony about Winzler's involvement in the project, as they needed to work closely with Winzler and its employees throughout the project on design and construction issues. While Plaintiff believes that Winzler's motion must fail even in the absence of this testimony, these facts are essential for Plaintiff to present a proper opposition to Winzler's motion and those of the other Defendants. [Declaration of Elyze McDonald ("McDonald Decl."), at pp. 2-3.]

Plaintiff needs to take depositions of specific – key – individuals and to review transcripts of four other depositions before confronting a motion that may dispose of some of its meritorious claims. Plaintiff urges the Court to deny Winzler's motion or continue it to allow it to gather crucial facts.

## II. INTRODUCTION

Plaintiff is the subrogated insurer of The Port Authority of Guam (hereinafter "The Port"), a municipal corporation, which owns and operates piers, wharves, marinas, dolphins and other structures located in the port of Guam, which service and accommodate maritime trade

---

[1] These are (1) the deposition of the person most knowledgeable at defendant Winzler, taken on September 21, 2004; (2) the person most knowledgeable at Defendant Black, taken on September 22, 2004; (3) the person most knowledgeable at Guam Department of Public Works, taken on September 20, 2004; and (4) Jurgen Unterberg, of Oceaneer Enterprises, Inc., taken on September 23, 2004.

and commerce. Plaintiff insured The Port's property and is subrogated to its rights to recover damages caused by defendant Black, defendant Winzler and defendant EMPSCO (hereinafter collectively referred as "Defendants"). Plaintiff paid The Port the sum of $1,947,443 on account of damage to the Shell F-1 dolphins in Guam, caused by the Defendants' improper repair work and defective design.

Plaintiff is also the express assignee of The Port's other, unreimbursed claims and demands against any persons or business entities responsible for the losses suffered by The Port arising from the October 13, 2001 earthquake. See, Loss and Subrogation Form attached to the Declaration of Elyze McDonald Exhibit A. As a result of The Port's assignment, Plaintiff is also entitled to recover, against Defendants, all uninsured damages suffered by The Port, not only the damages suffered by Plaintiff.

## III.  BACKGROUND FACTS

In August of 1993, the island of Guam suffered a severe earthquake, estimated to be a magnitude of 8.1. The earthquake did significant damage to a number of the piers, docks, dolphins and other facilities and property owned and operated by The Port. Shortly thereafter, defendant Black Construction entered into a contract with Winzler for design service and to advise it concerning repairing the damage which the earthquake had caused. This work included studying and assessing the damage, preparing initial drawings for repairing it, performing structural and other engineering calculations, and preparing plans and specifications to put the work out to public bid. Black Construction entered into this contract with Winzler, not The Port.[2]

---

[2]  In its initial Complaint, Plaintiff alleged that Winzler entered into a contract with The Port. However, after discovery commenced, Plaintiff learned that Winzler only entered into a contract with Black Construction regarding the subject repair work, not The Port. Thereafter, Plaintiff filed its First Amended Complaint alleging, *inter alia*, that The Port was the third party intended beneficiary of the Black-Winzler Contract and that Winzler breached that

5.

Black Construction submitted a bid to repair the earthquake damage, which bid was accepted by The Port. Black Construction was retained to perform the repairs, pursuant to a written contract with The Port. During the course of the project, to reduce its costs, Black Construction suggested that a number of changes be made to the proposed work. The repair work was performed on the basis of a design prepared by Winzler, which was developed pursuant to a written contract between Black and Winzler (hereinafter "Black-Winzler Contract"). Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the "back of a napkin" drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-seventh as strong as it needed to be. See report of structural engineer Elliott Boone, attached as Exhibit 1 to the Declaration of Thomas M. Tarpley, Jr., filed herein by Defendant EMPSCO (the "Boone Report"), p. 8. The repair work was performed under Winzler's general supervision.

The work was completed in 1997 and upon completion, both defendants represented and warranted to The Port that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam. Black's work involved securing each pile to the underside of the concrete cap above it using eight undersized bolts. Epoxy adhesive was supposed to have been squirted vertically into the eight holes to hold the bolts, but after the second earthquake it was discovered that many bolts had no epoxy on them, and they simply fell out of their holes. Many other bolts had epoxy on only 1-2 inches of their shafts.

On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful than the earthquake of 1993, this earthquake, too, did

---

contract.

serious damage to the dolphins owned by The Port, which had previously been repaired by defendant Black Construction pursuant to the plans and specifications prepared by, and under the supervision of, defendant Winzler. The work done in 1996-7 was essentially wiped out. Of the 216 bolts Black installed in Dolphin A, only 2 remained undisturbed after the second earthquake. See the Boone Report, p. 3.

As a result of the damage caused by the second earthquake, The Port submitted a claim to Plaintiff. To date, Plaintiff has paid the claim of The Port, in an amount totaling almost $2 million, and has incurred fees, costs and interest charges of another $1 million. To the extent Plaintiff has made such payments, Plaintiff is subrogated to all of the rights and causes of action previously held by The Port. In this lawsuit, Plaintiff alleges that the repair of the 1993 earthquake damage was done improperly by and under the supervision of defendants Black, Winzler and EMPSCO, and that work which the Defendants had agreed should and would be done, in fact was never done. The repairs done in 1996-7 were inadequate and improperly done by Defendants, and caused and directly led to Plaintiff's damages and losses. Additionally, by virtue of the Loss and Subrogation Form executed by The Port, Plaintiff is entitled to prosecute all of The Port's uninsured claims against Defendants, in the amount of an additional $3 million for property damage, diminution in value of the property, lost rental, business interruption and other losses.

## IV.  WINZLER'S EVIDENCE OFFERED IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIFTH CAUSE OF ACTION (BREACH OF CONTRACT) HAS BEEN STRICKEN BY THIS COURT IN ITS ORDER DATED NOVEMBER 10, 2004

The entirety of the Declaration of Robert O'Connor, docketed as entry number seventy-five (75) and the Declaration of Bruce Swanney, docketed as entry number seventy-six (76), in support of Winzler's Motion are incompetent because they have been stricken from the

7.

Court's record as evidence. *See,* District Court of Guam's Order dated November 10, 2004 attached as Exhibit A to Plaintiff's Evidentiary Objections filed herewith. Consequently, Winzler's Motion for Summary Judgment on Plaintiff's cause of action number five (breach of contract) is based on inadmissible evidence and should be denied.

V.   **LEGAL ARGUMENT**

    A.   **Genuine Issues Of Material Fact Preclude Entry Of Summary Judgment On Plaintiff's Fifth Cause Of Action Against Winzler**

"On summary judgment the inferences to be drawn from the underlying facts obtained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion." Board of Educ. v. Earls, 536 U.S. 822, 849 (2002) (brackets original). The burden of establishing that there are no genuine issues of material fact lies with Winzler. See Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986). Further, where, as here, the moving party bears the burden of proof at trial, the moving party must "show not only the absence of a disputed issue of fact but also that [the party] is entitled to judgment as a matter of law." Calderone v. United States, 799 F.2d 254, 258-59 (6th Cir. 1986).

As noted above, Plaintiff still needs to conduct discovery to properly oppose Winzler's Motion. However, Winzler's attempt to minimize its role in the repair of the pier is not supported by the evidence already at hand, and certainly does not rise to a level entitling Winzler to judgment as a matter of law.

    B.   **Genuine Issues Of Material Fact Exist Concerning Winzler's Negligence And The Use of Winzler's Design At The Project**

The structural engineer who worked for Winzler during the time period at issue directly contradicts Winzler's assertion that its design was not used on the dolphin repair project. Former Winzler structural engineer Bruce Swanney testified that he was a structural engineer for Winzler in Guam from 1989 to 1999. Mr. Swanney is the former Winzler design engineer who

8.

prepared stamped and signed the drawings at issue, without performing a single calculation to determine the forces which the structures would encounter. In fact, the "back of a napkin" drawing which Winzler's Mr. Swanney prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-seventh as strong as it needed to be. *See* report of structural engineer Elliott Boone attached as Exhibit 1 to the Declaration of Thomas M. Tarpley, filed herein by EMPSCO, pp. 7-8. The repair work using Winzler's design also was performed under Winzler's general supervision.

In his deposition, Mr. Swanney admitted that he <u>never</u> performed any formal calculations in connection with preparing his design. Mr. Swanney made that admission as follows:

> Q. All right. Do you know if any calculations were done by anybody at Winzler & Kelly before the drawing which is Exhibit 17 was produced?
>
> A. ... There were no formal calculations done.

*See* <u>Deposition of Bruce Swanney</u> attached to the Declaration of Elyze McDonald Exhibit C, p. 105.

Mr. Swanney also testified that Winzler's design of the critical dolphin pile-to-cap connections of the pier (which failed during the 2001 earthquake) were accepted and implemented by Black without question. Mr. Swanney testified, in part, as follows:

> Q. Okay. But with regard to the design, you're the one that came up – sorry. Winzler & Kelly is the one that came up with the eight bolts per pile, right?
>
> A. We – yeah, we figured eight bolts is adequate, yes.
>
> Q. Okay. So you were the designer of that connection between the pile and

9.

>           the cap, right?
>
> A.    Yes.
>
> Q.    Okay. And nobody ever came back and questioned that design?
>
> A.    No.

See <u>Deposition of Bruce Swanney</u> attached to the Declaration of Elyze McDonald Exhibit C, p. 163.

This is exactly the design work which Plaintiff alleges Winzler performed incompetently. Yet despite Mr. Swanney's admissions clearly implicating Winzler's work as negligent, Winzler contends that it is not liable to Plaintiff. The Port as the property owner was an intended third party beneficiary of the contract between Black and Winzler to repair The Port's pier. As a result of Winzler's negligent design, which, according to Mr. Swanney, was used in the project without question, The Port suffered large damages when none should have resulted, given the modest magnitude of the 2001 earthquake.

Mr. Swanney unequivocally admitted in his deposition that Winzler designed the connection between the piles and the caps and made the determination that only eight modest bolts per pile was adequate. This design was not questioned by Black. Yet Winzler insists on affirmatively representing to this Court that (1) Winzler's design was not used (*See*, Winzler's Motion, pg. 3); and (2) therefore Winzler cannot be held liable in this lawsuit. Bruce Swanney's testimony is directly to the contrary. Winzler's claim is clearly erroneous, and at the very least there are genuine issues of material fact sufficient to warrant denial of its Motion.

In asserting its Breach of Contract claim against Winzler, Plaintiff's First Amended Complaint states in part as follows:

> Winzler breached its contract with Black by failing to exercise
> adequate skill and competence to design and specify the Project

that would be sufficiently strong to withstand future earthquakes and typhoons. Winzler further breached its contract with Black by recommending and making improper and negligent changes at the Project, and by failing to note and observe errors and omissions by contractors performing the Project.

<u>Plaintiff's First Amended Complaint</u>, pp. 6-7, paragraph 27.

Mr. Swanney's deposition testimony fully supports Plaintiff's negligence argument against Winzler, and flatly contradicts Winzler's assertion that its design was not used. Winzler's motion for summary judgment on Plaintiff's fifth cause of action (breach of contract) lacks merit, is contradicted by deposition testimony of Winzler's own structural engineer, and must be denied.

## VI. CONCLUSION

Pursuant to Federal Rule of Civil Procedure 56(f) and Local Rule 7.1, Plaintiff urges the Court to deny this Motion, or to continue hearing on it until a date mutually agreeable to the Court and counsel, but after Plaintiff has had reasonable time to take depositions and review deposition transcripts necessary for Plaintiff to present a proper opposition to this motion.

While Plaintiff is concerned that it does not yet have sufficient facts to properly oppose this motion, for the reasons stated above, Plaintiff respectfully suggests that even at this time, numerous genuine issues of material fact appear which preclude summary judgment on the Fifth cause of action against Winzler. The Motion should be denied.

DATED: San Francisco, California, November 19, 2004.

COZEN O'CONNOR

_[signature]_
FORREST BOOTH
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

11.

## DECLARATION OF SERVICE

I, Forrest Booth, hereby declare under penalty of perjury of the laws of the United States, that on November 19, 2004, I will cause to be served, via Facsimile, a true and correct copy of **PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION FOR SUMMARY JUDGMENT ON FIFTH CAUSE OF ACTION (BREACH OF CONTRACT AGAINST WINZLER)** upon Defendants Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Klemm Blair Sterling & Johnson, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and

>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 19th day of November, 2004 at San Francisco, California.

_____
FORREST BOOTH

SANFRAN1\31807\1 123206.000

12.