ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds





IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>　　　　　　　Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION FOR SUMMARY JUDGMENT ON FIFTH CAUSE OF ACTION (BREACH OF CONTRACT AGAINST WINZLER); DECLARATION OF SERVICE** |

　　　　Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff")

submits the following memorandum of points and authorities in opposition to WINZLER &

KELLY CONSULTING ENGINEERS (hereinafter "Winzler")'s Motion for Summary Judgment

Summary Judgment (the "Motion").

## I. THRESHOLD ISSUES – THIS MOTION SHOULD BE DENIED OR CONTINUED BECAUSE BLACK DID NOT COMPLY WITH LOCAL RULE 7.1 IN FILING IT, AND BECAUSE PLAINTIFF NEEDS FURTHER DISCOVERY TO PROPERLY OPPOSE IT

### A. Black Failed to Comply With Local Rule 7.1 In Filing This Motion, To Plaintiff's Prejudice

Black scheduled this motion for hearing on December 3, 2004, with full knowledge that Plaintiff had not agreed to the hearing date, and with full knowledge that Plaintiff would not agree to any particular hearing date unless and until necessary discovery had been taken. On or about October 18, 2004, counsel for Black emailed all counsel, proposing that all parties agree to December 3, 2004, as the hearing date for dispositive motions. Counsel for Plaintiff replied to the email, stating that he was "generally in agreement," but that he wanted to take two depositions **first**, and also stating that he would need to obtain the approval of co-counsel. [Declaration of Forrest Booth in Support of Plaintiff's Objection to Hearing Date for Dispositive Motions, filed November 18, 2004, p. 2 and Exh. "A" thereto.] Thereafter, the parties attempted to work out a schedule for taking the two depositions, but were unable to do so.

In spite of there being no agreement to do so – and with full knowledge that Plaintiff needed to conduct further discovery – the Defendants nevertheless set various dispositive motions for hearing and oral argument, including the instant motion, for December 3, 2004.

Defendants' failure to obtain Plaintiff's agreement to the hearing date is in violation of Local Rule 7.1(e)(2), which provides that:

> "It shall be the responsibility of the [party requesting the hearing date] to contact the attorney for each party . . . and propose a date for oral argument. ***Once the parties have agreed on a date for oral argument***, the moving party shall clear the date with the clerk.*"

2.

Once the parties agree to the hearing date, and the clerk has approved, the moving party is required to file an Agreement of Hearing Date with the Court, stating that all parties have agreed to the date. Or if the moving party cannot obtain agreement, the same document must be filed stating that the moving party was unable to obtain agreement. Local Rule 7.1(e)(2). *Black has failed to obtain Plaintiff's agreement to the hearing date, but has nevertheless filed with the Court an Agreement of Hearing Date representing that Plaintiff has agreed to the hearing date, to Plaintiff's prejudice.*

Plaintiff requests that the Court deny the Motion, or in the alternative, take the Motion off calendar and order the parties to meet and confer concerning a mutually agreeable hearing date. The parties can complete necessary discovery, and the moving parties can then re-file their motions in compliance with the Federal and Local Rules. Alternatively, Plaintiff requests that the Court continue this motion sufficiently to allow Plaintiff to complete discovery. The Court's August 18, 2004, Scheduling Order provides that the cutoff for **filing** dispositive motions in this case is December 23, 2004. Black will suffer no prejudice if its motion is not heard on December 3, 2004.

## B. Plaintiff Should Be Permitted To Conduct Discovery Essential To Oppose The Motion

Black brought the instant motion with full knowledge that Plaintiff needed to do at least two more depositions of specific, identified, individuals before it could agree to set a hearing date for the motion. Plaintiff was actively meeting and conferring with the Defendants on the timing of these depositions when Black and the other Defendants filed the present motions. Moreover, four depositions were taken recently for which the court reporter has not yet provided the transcripts to the Plaintiff – *two of them of parties to this case*.[1] Significant

---

[1]     These are (1) the deposition of the person most knowledgeable at Defendant Winzler & Kelly, taken on

3.

necessary discovery has not yet been completed.

Under Federal Rule of Civil Procedure 56(f), the Court may "refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" where a party opposing a motion for summary judgment cannot, for reasons stated, present facts essential to justify the opposition.

Two of the depositions Plaintiff needs to take are of Perfecto Jose, the senior vice president of Defendant Black, and of its site superintendent Rod Bismonte. As employees of Black, Plaintiff expects these individuals to provide key testimony about Black's involvement in the project concerning design and construction issues, as well as testimony concerning the activities and roles of the other Defendants. While Plaintiff believes that Black's Motion must fail even in the absence of this testimony, these facts are essential for Plaintiff to present a proper opposition to the Motion and those of the other Defendants. [Declaration of Elyze McDonald ("McDonald Decl."), at pp. 2-3.]

Plaintiff needs to take depositions of specific – key – individuals who are employees of the moving party, and to review transcripts of four other depositions before confronting a motion that may dispose of some of its meritorious claims. Plaintiff urges the Court to deny Black's Motion or continue it to allow Plaintiff to gather crucial facts.

## II.    INTRODUCTION

Plaintiff is the subrogated insurer of The Port Authority of Guam (hereinafter "The Port"), a municipal corporation, which owns and operates piers, wharves, marinas, dolphins and other structures located in the port of Guam, which service and accommodate maritime trade and commerce. Plaintiff insured The Port's property and is subrogated to its rights to recover

September 21, 2004; (2) the person most knowledgeable at Defendant Black, taken on September 22, 2004; (3) the person most knowledgeable at Guam Department of Public Works, taken on September 20, 2004; and (4) Jurgen Unterberg, of Oceaneer Enterprises, Inc., taken on September 23, 2004.

4.

damages caused by defendant Black, defendant Winzler & Kelly Construction Engineers (hereinafter "Winzler") and defendant Engineering Management & Planning Services Corporation (hereinafter "EMPSCO") (hereinafter collectively referred as "Defendants"). Plaintiff paid The Port the sum of $1,947,443 on account of damage to the Shell F 1 dolphins in Guam, caused by the Defendants' improper repair work and defective design.

Plaintiff is also the express assignee of The Port's other, unreimbursed claims and demands against any persons or business entities responsible for the losses suffered by The Port arising from the October 13, 2001 earthquake. See, Loss and Subrogation Form attached to the Declaration of Elyze McDonald Exhibit A. As a result of The Port's assignment, Plaintiff is also entitled to recover, against Defendants, all uninsured damages suffered by The Port, not only the damages suffered by Plaintiff.

## III. BACKGROUND FACTS

In August of 1993, the island of Guam suffered a severe earthquake, estimated to be a magnitude of 8.1. The earthquake did significant damage to a number of the piers, docks, dolphins and other facilities and property owned and operated by The Port. Shortly thereafter, The Port contracted with EMPSCO to provide The Port with inspection services, construction consultation, soils investigation, plans, specifications, bid documents and estimates for the repair work at the F-1 pier and dolphins. See contract Scope of Work, attached as Exhibit 1 to Declaration of Reynaldo Arce, filed herewith by EMPSCO.

The Port awarded the repair contract to Black on April 8, 1996. Defendant Black later entered into a contract with Winzler for design service and to advise it concerning repairing the damage which the earthquake had caused. This work included studying and assessing the damage, preparing initial drawings for repairing it, performing structural and other engineering calculations, and preparing plans and specifications to put the work out to public bid. Black

5.

Construction entered into this contract with Winzler, not The Port.[2]

Black Construction submitted a bid to repair the earthquake damage, which bid was accepted by The Port. Black Construction was retained to perform the repairs, pursuant to a written contract with The Port. During the course of the project, to reduce its costs, Black Construction suggested that a number of changes be made to the proposed work. The repair work was performed on the basis of a design prepared by Winzler , which was developed pursuant to a written contract between Black and Winzler (hereinafter "Black-Winzler Contract"). Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the "back of a napkin" drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-seventh as strong as it needed to be. See report of structural engineer Elliott Boone, attached as Exhibit 1 to the Declaration of Thomas M. Tarpley, Jr., filed herein by Defendant EMPSCO (the "Boone Report"), p. 8. The repair work was performed under Winzler's general supervision.

The work was completed in 1997 and upon completion, both defendants represented and warranted to The Port that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam. Black's work involved securing each pile to the underside of the concrete cap above it using eight undersized bolts. Epoxy adhesive was supposed to have been squirted vertically into the eight holes to hold the bolts, but after the second earthquake it was discovered that many bolts had no epoxy on them, and they simply fell out of their holes. Many other bolts had epoxy

---

2       In its initial Complaint, Plaintiff alleged that Winzler entered into a contract with The Port. However, after discovery commenced, Plaintiff learned that Winzler only entered into a contract with Black Construction regarding the subject repair work, not The Port. Thereafter, Plaintiff filed its First Amended Complaint alleging, *inter alia,* that The Port was the third party intended beneficiary of the Black-Winzler Contract and that Winzler breached that contract.

on only 1-2 inches of their shafts.

On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful than the earthquake of 1993, this earthquake, too, did serious damage to the dolphins owned by The Port, which had previously been repaired by defendant Black Construction pursuant to the plans and specifications prepared by, and under the supervision of, defendant Winzler. The work done in 1996-7 was essentially wiped out. Of the 216 bolts Black installed in Dolphin A, only 2 remained undisturbed after the second earthquake. See the Boone Report, p. 3.

As a result of the damage caused by the second earthquake, The Port submitted a claim to Plaintiff. To date, Plaintiff has paid the claim of The Port, in an amount totaling almost $2 million, and has incurred fees, costs and interest charges of another $1 million. To the extent Plaintiff has made such payments, Plaintiff is subrogated to all of the rights and causes of action previously held by The Port. In this lawsuit, Plaintiff alleges that the repair of the 1993 earthquake damage was done improperly by and under the supervision of defendants Black, Winzler and EMPSCO, and that work which the Defendants had agreed should and would be done, in fact was never done. The repairs done in 1996-7 were inadequate and improperly done by Defendants, and caused and directly led to Plaintiff's damages and losses. Additionally, by virtue of the Loss and Subrogation Form executed by The Port, Plaintiff is entitled to prosecute all of The Port's uninsured claims against Defendants, in the amount of an additional $3 million for property damage, diminution in value of the property, lost rental, business interruption and other losses.

7.

## IV. ARGUMENT

### A. The Port Expressly Assigned All Of Its Rights Arising From The 2001 Earthquake To Plaintiff – Plaintiff Is Not Limited To Recovering The Monies It Paid To The Port

Almost four pages of Black's brief are devoted to the argument that an insurer's

right of subrogation allows it to recover only the amounts the insurer has paid its insured.

Plaintiff does not dispute this general rule.

In this case, however, Plaintiff's rights extend beyond the right of subrogation.

What Black fails to mention is that, as part of The Port's negotiated settlement with Plaintiff, The

Port expressly assigned all of its rights and claims arising from the October 13, 2001, earthquake

to Plaintiff:

> "THE ASSURED AGREES TO FULL SETTLEMENT FROM LLOYD'S OF LONDON AND LONDON COMPANIES, ROPNER INSURANCE SERVICES LTD. AND AM INSURANCE in the amount of . . . ($7,500,000) U.S. Dollars net of the deductible in full satisfaction compromise and discharge of all claims for loss and expense sustained to property insured under policy No: Port Authority of Guam by reason of Earthquake which occurred on October 13, 2001 and in consideration of which *the undersigned [The Port] hereby assigns and transfers to the said Company each and all claims and demands against any person, persons, corporation or property arising from or connected with such loss or damage* and the said Company is subrogated in the place of and to the claims and demands of the undersigned against said person, persons, corporation or property in the premises to the extent of the amount above named"

McDonald Decl., p. 3, and Exh. A thereto (Loss and Subrogation Form).]

Black identifies no authority which would invalidate an express assignment of a

party's rights against third parties, given as consideration for settlement of a claim, and indeed

there is none.

8.

**B.** **Black's Argument That The Economic Loss Rule Bars Plaintiff's Negligence Fails Because There Was Other Damage Than Simply To The "Product"**

Black's motion argues that the Economic Loss Doctrine bars Plaintiff's claims for damages against Black because there was no damage beyond "economic loss", *i.e.* only damage to "the product itself." Black misleadingly cites a portion of Plaintiff's First Amended Complaint for the proposition that the only damage done was to "the piling to pile cap connections constructed by Black." *See*, Black's Motion, p. 12, ll. 8-16. In fact, facilities and property owned by The Port, on which Black, EMPSCO and Winzler had **not** worked, were substantially damaged by the failure of the 1996 repairs and the resulting movement of the improperly-secured pile caps. These include pipelines, electrical lines, water lines, fire mains, catwalks, manifolds and other equipment. See Adjuster Peter MacLeod's Report Number 5, attached as part of Exhibit A to McDonald Decl. There was damage to a great deal more than just the F-1 dolphins. Since there was damage to property the Defendants never worked on, the economic loss doctrine does not apply in this case.

**C.** **Black's Motion For Judgment On The Pleadings As To Plaintiff's Seventh Cause Of Action Simply Does Not Lie**

The issues concerning Plaintiff's individual causes of action against each Defendant for breach of the warranty of workmanlike performance are very similar. Thus, to reduce paperwork, Plaintiff respectfully refers the Court to its separately filed Opposition To Winzler & Kelly's Motion For Judgment On The Pleadings On Ninth Cause Of Action, etc., filed concurrently herewith. For the reasons stated therein, Black's motion under Federal Rule of Civil Procedure 12(c) must fail.

**V.** **CONCLUSION**

Pursuant to Federal Rule of Civil Procedure 56(f) and Local Rule 7.1, Plaintiff urges the

Court to deny this motion, or to continue hearing on it until a date mutually agreeable to the Court and counsel, but after Plaintiff has had reasonable time to take depositions and review deposition transcripts necessary for Plaintiff to present a proper opposition to this motion.

While Plaintiff is concerned that it does not have sufficient facts to properly oppose this motion, it is clear that there are significant disputes herein regarding material facts. The Court should deny Black's motion for partial summary judgment for the reasons stated above. Further, the Court should deny Black's motion for partial summary judgment on Plaintiff's first cause of action against Black, because Plaintiff's claims are not barred by the economic loss rule.

For the reasons set forth above and in Plaintiff's separately filed opposing papers, Plaintiff further requests that the Court deny Black's motion to dismiss Plaintiff's seventh cause of action on the pleadings.

DATED: San Francisco, California, November 19, 2004.

COZEN O'CONNOR

for FORREST BOOTH
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

10.

## DECLARATION OF SERVICE

I, Forrest Booth, hereby declare under penalty of perjury of the laws of the United States, that on November 19, 2004, I will cause to be served, via Facsimile, a true and correct copy of **PLAINTIFF'S OPPOSITION TO BLACK CONSTRUCTION CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT** upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and

> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this 19th day of November, 2004 at San Francisco, California.

_for_ FORREST BOOTH

SANFRAN1\31782\1 123206.000

11.