ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>              Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>              Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION FOR JUDGMENT ON THE PLEADINGS ON NINTH CAUSE OF ACTION; EMPSCO'S MOTION FOR JUDGMENT ON THE PLEADINGS (RE WWLP); AND BLACK'S MOTION FOR PARTIAL SUMMARY JUDGMENT (RE WWLP); DECLARATION OF SERVICE** |

Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff")

offers the following memorandum of points and authorities in opposition to Defendant

1.

WINZLER & KELLY CONSTRUCTION (hereinafter "Winzler")'s Motion for Judgment on the Pleadings on Ninth Cause of Action (Warranty of Workmanlike Performance ("WWLP")); Defendant ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION (hereinafter "EMPSCO")'s Motion for Judgment on the Pleadings (re WWLP); and Defendant BLACK CONSTRUCTION CORPORATION (hereinafter "Black")'s Motion for Partial Summary Judgment (re WWLP).

## I. INTRODUCTION

Plaintiff is the subrogated insurer of The Port Authority of Guam (hereinafter "The Port"), a municipal corporation, which owns and operates piers, wharves, marinas, dolphins and other structures located in the port of Guam, which service and accommodate maritime trade and commerce. Plaintiff insured The Port's property and is subrogated to its rights to recover damages caused by defendant Black, defendant Winzler & Kelly Construction Engineers (hereinafter "Winzler") and defendant EMPSCO (hereinafter collectively referred as "Defendants"). Plaintiff paid The Port the sum of $1,947,443 on account of damage to the Shell F 1 dolphins in Guam, caused by the Defendants' improper repair work and defective design.

Plaintiff is also the express assignee of The Port's other, unreimbursed claims and demands against any persons or business entities responsible for the losses suffered by The Port arising from the October 13, 2001 earthquake. See, Loss and Subrogation Form attached to the Declaration of Elyze McDonald Exhibit A. As a result of The Port's assignment, Plaintiff is also entitled to recover, against Defendants, all uninsured damages suffered by The Port, not only the damages suffered by Plaintiff.

## II. PLAINTIFF INCORPORATES HEREIN ITS OBJECTIONS TO THE HEARING OF THESE MOTIONS ON DECEMBER 3, 2004, A DATE TO WHICH PLAINTIFF DID NOT AGREE (AS IS REQUIRED BY THE LOCAL RULES)

Plaintiff has been prejudiced in its ability to oppose the motions for partial summary

2.

judgment and judgment on the pleadings filed by the Defendants. At least four depositions have been taken in this case for which Plaintiff's counsel has not yet received the transcripts. Furthermore, Plaintiff agreed to have these motions heard on December 3, 2004, only on the understanding that two key witnesses would be deposed **before** the hearing; those depositions have not yet been taken. Finally, Plaintiff's Guam counsel are currently involved in a lengthy trial on Yap, have not been available to assist in preparing oppositions to Defendants' motions, and likely will not be available to argue them. Given the premature nature of these motions and the discovery which has not yet been completed, Plaintiff requests the Court, pursuant to F.R.C.P. 56(f) to deny the motions for partial summary judgment and for judgment on the pleadings, or in the alternative, to postpone the hearing on the motions for a period of two months to allow the necessary discovery to be completed.

## III. BACKGROUND FACTS

In August of 1993, the island of Guam suffered a severe earthquake, estimated to be a magnitude of 8.1. The earthquake did significant damage to a number of the piers, docks, dolphins and other facilities and property owned and operated by The Port. Shortly thereafter, defendant Black Construction entered into a contract with Winzler for design service and to advise it concerning repairing the damage which the earthquake had caused. This work included studying and assessing the damage, preparing initial drawings for repairing it, performing structural and other engineering calculations, and preparing plans and specifications to put the work out to public bid. Black Construction entered into this contract with Winzler, not The Port.[1]

Black Construction submitted a bid to repair the earthquake damage, which bid was

---

[1] In its initial Complaint, Plaintiff alleged that Winzler entered into a contract with The Port. However, after discovery commenced, Plaintiff learned that Winzler only entered into a contract with Black Construction regarding the subject repair work, not The Port. Thereafter, Plaintiff filed its First Amended Complaint alleging, *inter alia*, that The Port was the third party intended beneficiary of the Black-Winzler Contract and that Winzler breached that contract.

3.

accepted by The Port. Black Construction was retained to perform the repairs, pursuant to a written contract with The Port. During the course of the project, to reduce its costs, Black Construction suggested that a number of changes be made to the proposed work. The repair work was performed on the basis of a design prepared by Winzler, which was developed pursuant to a written contract between Black and Winzler (hereinafter "Black-Winzler Contract"). Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the "back of a napkin" drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-seventh as strong as it needed to be. See report of structural engineer Elliott Boone, attached as Exhibit 1 to the Declaration of Thomas M. Tarpley, Jr., filed herein by Defendant EMPSCO (the "Boone Report"), p. 8. The repair work was performed under Winzler's general supervision.

The work was completed in 1997 and upon completion, both defendants represented and warranted to The Port that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam. Black's work involved securing each pile to the underside of the concrete cap above it using eight undersized bolts. Epoxy adhesive was supposed to have been squirted vertically into the eight holes to hold the bolts, but after the second earthquake it was discovered that many bolts had no epoxy on them, and they simply fell out of their holes. Many other bolts had epoxy on only 1-2 inches of their shafts.

On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful than the earthquake of 1993, this earthquake, too, did serious damage to the dolphins owned by The Port, which had previously been repaired by

4.

Case 1:03-cv-00009   Document 109   Filed 11/22/2004   Page 4 of 11

accepted by The Port. Black Construction was retained to perform the repairs, pursuant to a written contract with The Port. During the course of the project, to reduce its costs, Black Construction suggested that a number of changes be made to the proposed work. The repair work was performed on the basis of a design prepared by Winzler, which was developed pursuant to a written contract between Black and Winzler (hereinafter "Black-Winzler Contract"). Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the "back of a napkin" drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-seventh as strong as it needed to be. See report of structural engineer Elliott Boone, attached as Exhibit 1 to the Declaration of Thomas M. Tarpley, Jr., filed herein by Defendant EMPSCO (the "Boone Report"), p. 8. The repair work was performed under Winzler's general supervision.

The work was completed in 1997 and upon completion, both defendants represented and warranted to The Port that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam. Black's work involved securing each pile to the underside of the concrete cap above it using eight undersized bolts. Epoxy adhesive was supposed to have been squirted vertically into the eight holes to hold the bolts, but after the second earthquake it was discovered that many bolts had no epoxy on them, and they simply fell out of their holes. Many other bolts had epoxy on only 1-2 inches of their shafts.

On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful than the earthquake of 1993, this earthquake, too, did serious damage to the dolphins owned by The Port, which had previously been repaired by

defendant Black Construction pursuant to the plans and specifications prepared by, and under the supervision of, defendant Winzler. The work done in 1996 7 was essentially wiped out. Of the 216 bolts Black installed in Dolphin A, only 2 remained undisturbed after the second earthquake. See the Boone Report, p. 3.

As a result of the damage caused by the second earthquake, The Port submitted a claim to Plaintiff. To date, Plaintiff has paid the claim of The Port, in an amount totaling almost $2 million, and has incurred fees, costs and interest charges of another $1 million. To the extent Plaintiff has made such payments, Plaintiff is subrogated to all of the rights and causes of action previously held by The Port. In this lawsuit, Plaintiff alleges that the repair of the 1993 earthquake damage was done improperly by and under the supervision of defendants Black, Winzler and EMPSCO, and that work which the Defendants had agreed should and would be done, in fact was never done. The repairs done in 1996-7 were inadequate and improperly done by Defendants, and caused and directly led to Plaintiff's damages and losses. Additionally, by virtue of the Loss and Subrogation Form executed by The Port, Plaintiff is entitled to prosecute all of The Port's uninsured claims against Defendants, in the amount of an additional $3 million for property damage, diminution in value of the property, lost rental, business interruption and other losses.

## IV. THE WARRANTY OF WORKMANLIKE PERFORMANCE APPLIES BY CONTRACT

The Construction Contract between Black and The Port, which is attached as Exhibit A to Plaintiff's First Amended Complaint herein, specifically provides that Black agrees to furnish all the "... labor, materials, equipment, tools and services necessary to perform and complete in a **workmanlike manner** all work required for the construction of the Project ..." *Id.*, p. 1 (emphasis added). Furthermore, Black agreed "... to bind every subcontractor by the terms of this Contract and the contract documents." *Id.* Since Black specifically bound itself to perform in

5.

a workmanlike manner, it cannot now argue that a warranty of workmanlike performance is not owed to The Port, and derivatively, to Plaintiff. Likewise, since Winzler as a subcontractor of Black is bound by the same terms, Winzler, too, cannot argue that the warranty of workmanlike performance was not owed by it to The Port. Winzler's motion for judgment on the pleadings (Ninth Cause of Action) and Black's motion for partial summary judgment regarding the applicability of the WWLP must be denied for this reason alone.

## V. CASE LAW SUPPORTS APPLYING THE WARRANTY OF WORKMANLIKE PERFORMANCE ("WWLP") IN THIS CASE

The Port, whose rights Plaintiff is asserting herein by way of a written assignment, is the owner of the F-1 pier facility, which is leased by The Port to Shell. Since Winzler prepared the design for Black, as its subcontractor, specifying how a part of the repairs to the dolphins were to be constructed, The Port (and therefore Plaintiff) is the intended third-party beneficiary of Winzler's contract with Black, and Winzler's design efforts. See, e.g., Alling v. Universal Mfg. Corp., 5 Cal.App.4th 1412, 1440 (1992).

The leading authority on maritime law, Professor Thomas J. Schoenbaum, whose treatise Admiralty and Maritime Law is regularly quoted by the U.S. Supreme Court (as recently as four weeks ago)[2], states unequivocally that:

> As a contract doctrine, the WWLP is very much alive. Between parties to a maritime service contract there is generally an implied WWLP unless it is excluded by agreement.

1 Thomas J. Schoenbaum, Admiralty and Maritime Law 222 (4th ed. 2004) (footnote omitted).

While cases involving personal injuries present special situations, as will be seen *infra*,

> The courts have applied the doctrine to a wide variety of marine contracts to perform services ... such as repairs, offshore service contracts, contracts to provide tug assistance, launch service contracts, and stevedoring contracts.

---

[2] Norfolk Southern Railway Co. v. Kirby, ___ U.S. ___, 2004 U.S. LEXIS 7510 (2004).

*Id.* (footnotes omitted). See Fairmont Shipping Corp. v. Chevron International Oil Co., Inc., 511 F.2d 1252 (2d Cir. 1975).

It is important to note, as Professor Schoenbaum points out, that there are two aspects to the warranty of workmanlike performance: first,

> ... it is a contract warranty applicable between parties with contractual privity or on a third party beneficiary theory. *Id.*

Second, the warranty of workmanlike performance is also an implied indemnity theory. *Id.*

### A. Winzler Cites Only Personal Injury Cases

The subject case involves serious and permanent damage to real property, and to fixtures on real property. It involves the breach of a maritime contract to design/build repairs to dolphins, entered into by Black, and a third party beneficiary's claims against a designer (Winzler) whose design was only one-seventh as strong as it needed to be to resist earthquake forces. In its motion for judgment on the pleadings, Winzler cites exclusively cases dealing with claims for indemnity arising out of personal injury litigation: Knight,[3] Flunker,[4] Italia,[5] California Home Brands,[6] and Davis.[7] Unfortunately for Winzler, the judicial landscape with regard to the warranty of workmanlike performance in personal injury litigation was dramatically changed by Congress when it passed the 1972 Amendments to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 *et seq.* See Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 261-62 (1979). The personal injury-based cases cited by Winzler are not helpful; several pre-date the 1972 Amendments to the LHWCA. California Home Brands holds that a shipowner, when sued by an injured crewmember, cannot seek indemnity from another crewmember for that injury, under a theory of breach of the warranty of workmanlike performance. And Flunker,

---

[3] Knight v. Alaska Trawl Fisheries, Inc., 154 F.3d 1042 (9th Cir. 1998).
[4] Flunker v. United States, 528 F.2d 239 (9th Circ. 1975).
[5] Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315 (1964).
[6] California Home Brands, Inc. v. Ferreira, 871 F.2d 830 (9th Cir. 1988).
[7] Davis v. Chas. Kurz & Co., Inc., 483 F.2d 184 (9th Cir. 1973).

7.

another such personal injury case, in fact recognizes the continued vitality of the Ryan doctrine in personal injury cases. 528 F.2d 239, 242-3.

### B. The Warranty of Workmanlike Performance Applies in Contract Cases

More instructive than personal injury cases are cases involving maritime contracts, such as the instant case. The Supreme Court of California in Fahey v. Gledhill, 33 Cal.3d 884 (1983), held that

> Under admiralty law contractors ... warrant by implication that they will perform services in a workmanlike manner, with reasonable safety to persons and property. While negligence also may give rise to liability, the implied warranty of workmanlike performance may give rise to liability even where the contractor is not negligent.

*Id.*, at 890.

The Port paid a substantial amount of money to EMPSCO for design and supervision services and to Black for construction work to repair the damaged dolphins. The supervision was inadequate, the design was defective, and the repair work was shoddy. A smaller second earthquake destroyed all of the repairs of the earlier earthquake damage. Black breached the warranty of workmanlike performance by performing the repairs in a haphazard and negligent manner. Winzler breached the warranty of workmanlike performance by providing a design that had only one-seventh of the structural strength which was required to resist earthquake forces. EMPSCO breached the warranty of workmanlike performance by failing to note and advise The Port of the deficiencies in Winzler's design and Black's execution of that design, and by including Winzler's defective design in the final as-built drawings for the project.

The Second Circuit's decision in Fairmont Shipping, *supra*, is a case more closely on point than the personal injury cases cited by Winzler. Fairmont Shipping involved a contract by Chevron to supply bunker fuel to plaintiff's tanker in The Netherlands. The sale price included the cost of necessary tug assistance to dock tankers. Errors or omissions by tugs caused damage to a

8.

tanker. The owners of the tanker sued Chevron for breach of the warranty of workmanlike performance implied in the contract to provide tug services. The court found that the warranty of workmanlike performance applied, that it had been breached, and awarded judgment to the shipowner; the Second Circuit affirmed. The Court of Appeals noted that the warranty of workmanlike performance (the Ryan doctrine) had been expanded beyond its origins in injured longshoremen cases. The Court held that the crucial elements of a Ryan claim are as follows: An owner, relying on the expertise of a contractor, enters into a contract whereby the contractor agrees to perform services without supervision or control by the owner. 511 F.2d at 1258.

The Court of Appeals noted that the Ryan doctrine has been applied in cases involving various maritime contracts, including painting, cleaning, shipyard services, towage service, and repairs to a ship's engines. *Id.* The Court held that maritime law in this respect should be no different than general contract law:

> ... Ryan, by necessary implication, confirmed the applicability to maritime service contracts of the hornbook rule of contract law that one who contracts to provide services impliedly agrees to perform in a diligent and workmanlike manner.

511 F.2d at 1259. The Court found there was no reason why a warranty of workmanlike performance should not be implied in maritime service contracts (such as those of Black, Winzler and EMPSCO herein). *Id.*

## VI. PUBLIC POLICY SUPPORTS APPLYING THE WWLP IN THIS CASE

Defendants urge the Court not to apply the WWLP in this matter because in Ryan, the doctrine was devised to give shipowners relief in cases where they were held strictly liable through no fault of their own, *i.e.* because of the malfeasance of others such as their contractors. Defendants conveniently overlook the fact that the Shell F-1 dolphins constitute an oil terminal, an onshore facility within the meaning of 33 U.S.C. § 1321(10). As such, The Port would be strictly

9.

liable for any discharges of oil from the unloading pipelines which run over the dolphins, or in the event a broken pile punctured a tank on a vessel tied up at the pier. 33 U.S.C. §§ 1321(b)(3), (f)(1) and (f)(2). United States v. Dixie Carriers, Inc., 627 F.2d 736, 739 (5th Cir. 1980). Here, had one of the dolphin caps fallen into the ocean as a result of the second earthquake, which very nearly happened, due to the faulty design and workmanship of the Defendants, The Port would also have been liable for injury to or death of Shell employees, for whom the dolphins are their workplace. The Port would also have been strictly liable (for workers' compensation) to any of its own employees who might have been similarly killed or injured. Thus the same public policy factors which originally favored making the WWLP available to shipowners in Ryan also favor making it available to The Port and Plaintiff herein.

## VII. CONCLUSION

Black specifically contracted to perform its services to The Port in a workmanlike manner. Because Black agreed to bind its subcontractors (including Winzler) to the terms of its contract, Winzler also was obligated to perform its services in a workmanlike manner. Both clearly breached their obligations in that regard. Since maritime law implies a warranty of workmanlike performance in maritime service contracts, Winzler's and EMPSCO's motions for judgment on the pleadings regarding Plaintiff's ninth cause of action and Black's motion for partial summary judgment regarding the WWLP must be denied.

DATED: San Francisco, California, November 19, 2004.

COZEN O'CONNOR

*[signature]*
FORREST BOOTH
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

10.

## DECLARATION OF SERVICE

I, Forrest Booth, hereby declare under penalty of perjury of the laws of the United States, that on November 19, 2004, I will cause to be served, via Facsimile, a true and correct copy of **PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION FOR JUDGMENT ON THE PLEADINGS ON NINTH CAUSE OF ACTION; EMPSCO'S MOTION FOR JUDGMENT ON THE PLEADINGS (RE WWLP); AND BLACK'S MOTION FOR PARTIAL SUMMARY JUDGMENT (RE WWLP)** upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and

> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this 19th day of November, 2004 at San Francisco, California.

*for* _____
FORREST BOOTH

SANFRAN1\31794\1 123206.000