# ORIGINAL ●  ●

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



IN THE DISTRICT COURT OF GUAM

| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>                 Plaintiff,<br><br>        vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>                 Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EMPSCO'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR JUDGMENT ON THE PLEADINGS; DECLARATION OF SERVICE** |

Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff") offers

the following memorandum of points and authorities in opposition to Defendant

ENGINEERING, MANAGEMENT & PLANNING SERVICES CORPORATION (hereinafter

4835-4640-0000.1.055639-00001

"EMPSCO") 's Motions for Summary Judgment and Judgment on the Pleadings.

## I. THRESHOLD ISSUES – THIS MOTION SHOULD BE DENIED OR CONTINUED BECAUSE EMPSCO DID NOT COMPLY WITH LOCAL RULE 7.1 IN FILING IT, AND BECAUSE PLAINTIFF NEEDS FURTHER DISCOVERY TO PROPERLY OPPOSE IT

A.      EMPSCO Failed To Comply With Local Rule 7.1 In Filing This Motion, To Plaintiff's Prejudice

EMPSCO scheduled this motion for hearing on December 3, 2004, with full knowledge that Plaintiff had not agreed to the hearing date, and with full knowledge that Plaintiff would not agree to any particular hearing date unless and until necessary discovery had been taken. On or about October 18, 2004, counsel for Black Construction Corporation ("Black") emailed all counsel, proposing that all parties agree to December 3, 2004, as the hearing date for dispositive motions. Counsel for Plaintiff replied to the email, stating that he was "generally in agreement," but that he wanted to take two depositions **first**, and also stating that he would need to obtain the approval of co-counsel. [Declaration of Forrest Booth in Support of Plaintiff's Objection to Hearing Date for Dispositive Motions, filed November 18, 2004, p. 2 and Exh. "A" thereto.] Thereafter, the parties attempted to work out a schedule for taking the two depositions, but were unable to do so.

In spite of there being no agreement to do so -- and with full knowledge that Plaintiff needed to conduct further discovery -- the Defendants nevertheless set various dispositive motions for hearing and oral argument, including the instant motion, for December 3, 2004.

Defendants' failure to obtain Plaintiff's agreement to the hearing date is in flagrant violation of Local Rule 7.1(e)(2), which provides that:

> "It shall be the responsibility of the [party requesting the hearing date] to contact the attorney for each party . . . and propose a date for oral argument. ***Once the parties have agreed on a date for oral***

*argument*, the moving party shall clear the date with the clerk."

Once the parties agree to the hearing date, and the clerk has approved, the moving party is required to *file an Agreement of Hearing Date with the Court, stating that all parties have agreed to the date*. Or if the moving party cannot obtain agreement, the same document must be filed stating that the moving party was unable to obtain agreement. Local Rule 7.1(e)(2). EMPSCO has failed to obtain Plaintiff's agreement to the hearing date, and has failed to file an Agreement of Hearing Date, in violation of the Local Rules and to Plaintiff's prejudice.[1]

Plaintiff requests that the Court take the instant motion off calendar and order the parties to meet and confer concerning a mutually agreeable hearing date. The parties can then complete necessary discovery, and the moving parties can then re-file their motions in compliance with the Federal and Local Rules. Alternatively, Plaintiff requests that the Court continue this motion sufficiently to allow Plaintiff to complete discovery. The Court's August 18, 2004, Scheduling Order provides that the cutoff for **filing** dispositive motions in this case is December 23, 2004. EMPSCO will suffer no prejudice if its motion is not heard on December 3, 2004.

**B.      Plaintiff Should Be Permitted To Conduct Discovery Essential To Oppose The Motion**

EMPSCO brought the instant motion with full knowledge that Plaintiff needed to do at least two more depositions of specific, identified, individuals before it could agree to set a hearing date for the motion. Plaintiff was actively meeting and conferring with the Defendants on the timing of these depositions when EMPSCO and the other Defendants filed the present motions. Moreover, four depositions were taken recently for which the court reporter has not yet provided the transcripts to the Plaintiff – *two of them of parties to this case*.[2] Significant

---

[1] Defendant Black Construction Corporation's motions, set for hearing the same day, were filed with an Agreement of Hearing Date stating that Plaintiff had *agreed* to a December 3, 2004, hearing date. That representation is false.
[2] These are (1) the deposition of the person most knowledgeable at Defendant Winzler & Kelly, taken on September 21, 2004; (2) the person most knowledgeable at Defendant Black, taken on September 22, 2004; (3) the person most

discovery has not been completed.

Under Federal Rule of Civil Procedure 56(f), the Court may "refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" where a party opposing a motion for summary judgment cannot, for reasons stated, present facts essential to justify the opposition.

The two depositions Plaintiff needs to take are of Perfecto Jose, the senior vice president of Defendant Black, and of its site superintendent Rod Bismonte. Plaintiff expects these individuals to provide key testimony about EMPSCO's involvement in the project, as they needed to work closely with EMPSCO and its employees throughout the project on design and construction issues. While Plaintiff believes that EMPSCO's motion must fail even in the absence of this testimony, these facts are essential for Plaintiff to present a proper opposition to EMPSCO's motion and those of the other Defendants. [Declaration of Elyze McDonald ("McDonald Decl."), at pp. 2-3].

Plaintiff needs to take depositions of specific – key – individuals and to review transcripts of four other depositions before confronting a motion that may dispose of some of its meritorious claims. Plaintiff urges the Court to deny EMPSCO's motion or continue it to allow it to gather crucial facts.

## II.    INTRODUCTION

Plaintiff is the subrogated insurer of The Port Authority of Guam (hereinafter "The Port"), a municipal corporation, which owns and operates piers, wharves, marinas, dolphins and other structures located in the port of Guam, which service and accommodate maritime trade and commerce. Plaintiff insured The Port's property and is subrogated to its rights to recover

---

knowledgeable at Guam Department of Public Works, taken on September 20, 2004; and (4) Jurgen Unterberg, of Oceaneer Enterprises, Inc., taken on September 23, 2004.

damages caused by defendant Black, defendant Winzler & Kelly Construction Engineers (hereinafter "Winzler") and defendant Engineering Management & Planning Services Corporation (hereinafter "EMPSCO") (hereinafter collectively referred as "Defendants"). Plaintiff paid The Port the sum of $1,947,443 on account of damage to the Shell F 1 dolphins in Guam, caused by the Defendants' improper repair work and defective design.

Plaintiff is also the express assignee of The Port's other, unreimbursed claims and demands against any persons or business entities responsible for the losses suffered by The Port arising from the October 13, 2001 earthquake. See, Loss and Subrogation Form attached to the Declaration of Elyze McDonald as Exhibit A. As a result of The Port's assignment, Plaintiff is also entitled to recover, against Defendants, all uninsured damages suffered by The Port, not only the damages suffered by Plaintiff.

## III.  BACKGROUND FACTS

In August of 1993, the island of Guam suffered a severe earthquake, estimated to be a magnitude of 8.1. The earthquake did significant damage to a number of the piers, docks, dolphins and other facilities and property owned and operated by The Port. Shortly thereafter, The Port contracted with EMPSCO to provide The Port with inspection services, construction consultation, soils investigation, plans, specifications, bid documents and estimates for the repair work at the F-1 pier and dolphins. See contract Scope of Work, attached as Exhibit 1 to Declaration of Reynaldo Arce, filed herewith by EMPSCO.

The Port awarded the repair contract to Black on April 8, 1996. Defendant Black later entered into a contract with Winzler for design service and to advise it concerning repairing the damage which the earthquake had caused. This work included studying and assessing the damage, preparing initial drawings for repairing it, performing structural and other engineering

calculations, and preparing plans and specifications to put the work out to public bid. Black Construction entered into this contract with Winzler, not The Port.[3]

Black Construction submitted a bid to repair the earthquake damage, which bid was accepted by The Port. Black Construction was retained to perform the repairs, pursuant to a written contract with The Port. During the course of the project, to reduce its costs, Black Construction suggested that a number of changes be made to the proposed work. The repair work was performed on the basis of a design prepared by Winzler , which was developed pursuant to a written contract between Black and Winzler (hereinafter "Black-Winzler Contract"). Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the "back of a napkin" drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-seventh as strong as it needed to be. See report of structural engineer Elliott Boone, attached as Exhibit 1 to the Declaration of Thomas M. Tarpley, Jr., filed herein by Defendant EMPSCO (the "Boone Report"), p. 8. The repair work was performed under Winzler's general supervision.

The work was completed in 1997 and upon completion, both defendants represented and warranted to The Port that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam. Black's work involved securing each pile to the underside of the concrete cap above it using eight undersized bolts. Epoxy adhesive was supposed to have been squirted vertically into the eight holes to hold the bolts, but after the second earthquake it was discovered that many

---

[3] In its initial Complaint, Plaintiff alleged that Winzler entered into a Contract with the Port. However, after discovery commenced, Plaintiff learned that Winzler only entered into a contract with Black Construction regarding the subject repair work, not The Port. Thereafter, Plaintiff filed its First Amended Complaint alleging, *inter alia,* that The Port was the third party intended beneficiary of the Black-Winzler Contract and that Winzler breached that contract.

bolts had no epoxy on them, and they simply fell out of their holes. Many other bolts had epoxy on only 1-2 inches of their shafts.

On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful than the earthquake of 1993, this earthquake, too, did serious damage to the dolphins owned by The Port, which had previously been repaired by defendant Black Construction pursuant to the plans and specifications prepared by, and under the supervision of, defendant Winzler. The work done in 1996 7 was essentially wiped out. Of the 216 bolts Black installed in Dolphin A, only 2 remained undisturbed after the second earthquake. See the Boone Report, p. 3.

As a result of the damage caused by the second earthquake, The Port submitted a claim to Plaintiff. To date, Plaintiff has paid the claim of The Port, in an amount totaling almost $2 million, and has incurred fees, costs and interest charges of another $1 million. To the extent Plaintiff has made such payments, Plaintiff is subrogated to all of the rights and causes of action previously held by The Port. In this lawsuit, Plaintiff alleges that the repair of the 1993 earthquake damage was done improperly by and under the supervision of defendants Black, Winzler and EMPSCO, and that work which the Defendants had agreed should and would be done, in fact was never done. The repairs done in 1996-7 were inadequate and improperly done by Defendants, and caused and directly led to Plaintiff's damages and losses. Additionally, by virtue of the Loss and Subrogation Form executed by The Port, Plaintiff is entitled to prosecute all of The Port's uninsured claims against Defendants, in the amount of an additional $3 million for property damage, diminution in value of the property, lost rental, business interruption and other losses.

## IV.   ARGUMENT

### A.   Genuine Issues Of Material Fact Preclude Entry Of Summary Judgment On Plaintiff's Third And Sixth Causes of Action

"On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion." Board of Educ. v. Earls, 536 U.S. 822, 849, 122 S.Ct. 2559 (2002) (brackets in original). The burden of establishing that there are no genuine issues of material fact lies with EMPSCO. See Celotex Corp v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). Further, where, as here, the moving party bears the burden of proof at trial, the moving party must "show not only the absence of a disputed issue of fact but also that [the party] is entitled to judgment as a matter of law." Calderone v. United States, 799 F.2d 254, 258-59 (6th Cir. 1986).

As noted above, Plaintiff still needs to conduct discovery to properly oppose EMPSCO's motion for summary judgment on the Third and Sixth causes of action. However, EMPSCO's attempt to minimize its role in the design and supervision of the repair of the pier is not supported by the evidence already on hand, and certainly does not rise to a level entitling EMPSCO to judgment as a matter of law.

### 1.   Numerous Genuine Issues Of Material Fact Exist Concerning EMPSCO's Duty To Supervise Its Subcontractor Black

First, EMPSCO's motion admits that Article 17 of its contract with The Port "contemplated EMPSCO performing construction management services to supervise Black's *construction*." (emphasis added). Moreover, the contract states that:

> "Consultant [EMPSCO] warrants that it is an experienced
> construction manager, properly and duly licensed under the
> Government of Guam. It hereby certifies and warrants that *it shall
> see that the contractor shall carry out and perform the work in a*

Case 1:03-cv-00009   Document 111   Filed 11/22/2004   Page 8 of 15

*proper manner; and if done improperly by the contractor, the Consultant shall hereunder be liable, like other professionals, for damages and the Port's attorney's fees as a result of Consultant's improper or negligent acts in performing its duties,* and the terms and conditions under this contract . . .."

[Declaration of Reynaldo Arce, submitted in support of EMPSCO's motion, p. 3 and Exhibit "A" thereto at p.10 (emphasis added).]

But, despite this admission and the plain language of the contract, EMPSCO then goes on to claim that these responsibilities were somehow "deleted from EMPSCO's scope of work." EMPSCO does not and cannot point to any agreement of the parties relieving EMPSCO of these responsibilities.

Instead, EMPSCO claims there must have been a "mutual mistake" concerning its duties under the contract. To be clear, EMPSCO is asking the Court (for the first time) to reform the contract to delete unambiguous language making it expressly responsible for those it has hired. Courts look askance at this extreme remedy: "Where one seeks to reform a written instrument, he must establish by *clear and convincing* evidence that the objectionable language found in the instrument was the result of mutual mistake by the parties." Perry v. Bedford, 238 Cal. App. 2d 6, 11, 48 Cal. Rptr. 461 (1966) (emphasis added); see Phillips Oil Co. v. OKC Corp., 812 F.2d 265, 275 (5th Cir. 1987) (holding that "mutual error and mistake" must be established by "*clear and convincing proof*") (emphasis original).

Other than the bald assertion of Mr. Arce, its employee, EMPSCO's sole evidence that EMPSCO was not liable for Black's actions is a statement by an employee of The Port that it was not The Port's intent to use EMPSCO as its construction manager. [Declaration of Thomas M. Tarpley, Jr., at p. 2, and Exh. 2 thereto at p. 7 (presumably discussing the contract, but failing to attach it).] But the Port's employee says nothing about EMPSCO's agreement to provide inspection services, soils investigation, plans, specs, bid documents and estimates, or its

assumption of liability (or otherwise) for those it has hired. *Id.* It is undisputed that EMPSCO selected Black as the contractor for the job, and – whether EMPSCO was the construction manager on the job or was employed in some other capacity – the language of the contract clearly provides that EMPSCO will be liable for the contractor it hired. In any event, EMPSCO has not provided clear and convincing evidence to the contrary and, as important, it has provided *no* evidence that it had no duty to supervise Black (which under *Calderone, supra,* it must do to prevail on summary judgment), and no evidence at all regarding the other duties it agreed by contract to assume. In fact, EMPSCO did supervise Black, as the documents show.

EMPSCO's motion goes on to state that it could not have been responsible for any work by Black because it "has been revealed" that EMPSCO's responsibilities under its contract with The Port ended on March 9, 1996, before Black began construction. While Plaintiff expects the full facts to come out of future depositions and the transcripts of testimony it has yet to receive, two pieces of evidence refute EMPSCO's assertion that its responsibilities to The Port had ceased. In May of 1996, EMPSCO wrote a memorandum to Manuelito Golez regarding "REPAIRS AND UPGRADING TO FOXTROT 'F-1' PIER," reviewing "Submittal No. 12 – Proposed Pile Repair Details; W&K Drawing Sheet VE-1," and making various recommendations. [McDonald Decl., p.3, and Exh. "A", last page]. Then, as late as **December 31, 1996**, EMPSCO sent a memorandum to The Port concerning the "F-1" Pier, making recommendations, and attaching its "sketches showing the proposed modifications to the existing fender support at Dolphin 'G.'" [McDonald Decl., p.3, and Exh. "B"]. EMPSCO was on the job, reviewing, designing and supervising, ten months after it has represented to the Court that its involvement had ended.

After proper discovery, Plaintiff looks forward to proving at trial EMPSCO's liability in its own right, and for the acts and omissions of its agents.

**2.       Numerous Genuine Issues Of Material Fact Exist Concerning EMPSCO's Duties And Activities Under The Contract**

EMPSCO claims that the only work it needed to do was to provide "submittal compliance review" on the project. Therefore, because it did not design the repair method actually used to repair the pier, it cannot be responsible for The Port's damages. This is contrary to the evidence and the law.

First, there remain numerous issues of genuine material fact concerning EMPSCO's duties on the project. The "Scope of Work" addendum to the contract between The Port and EMPSCO provides that EMPSCO is to provide "professional services **for the design of [the] repairs and improvements**" to the F-1 Pier, including "shop drawings." [Tarpley Decl., p. 2 and Exh. 1 thereto at p.1 of the "Scope of Work" addendum (emphasis added).] Moreover, EMPSCO agreed to "perform work which is incidental to the scope of services, **but necessary for a full and complete design**, although not specifically referred to therein, without additional compensation." [Tarpley Decl., p. 2 and Exh. 1 thereto at p.2 of the "Agreement" (emphasis added).] Furthermore, as the declaration of Reynaldo Arce clearly shows, at p. 2, ¶ 3, EMPSCO was paid for a full 40 hours of "structural engineering work" in connection with the repairs. This is exactly the work which Plaintiff alleges that EMPSCO performed incompetently.

EMPSCO specifically demanded that structural calculations be performed to show that Winzler's proposed change to EMPSCO'S repair plan was adequate. See the last page of Exhibit A to the McDonald Declaration, filed herewith. Yet EMPSCO never followed up to see that those calculations were done, or did them itself, and they never were performed. These failures were negligence by EMPSCO. In light of these documents and EMPSCO's express contractual

undertakings, its assertion that its duties were limited to "submittal compliance review" appears to be wrong, and certainly gives rise to genuine issues of material fact sufficient to warrant denial of its motion.

Last, EMPSCO's motion confuses the parties' burdens at the summary judgment stage. **EMPSCO**, as the moving party, has the initial burden of providing the Court with evidence showing that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (holding that a moving party must present "evidence that shows that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law," and only then does the opposing party have "the subsequent burden of presenting specific, significant probative evidence tending to support its claim that material, triable issues of fact remain"). It is not enough for EMPSCO to assert that Plaintiff's expert "focuses on the alleged negligence" of others – EMPSCO must present its own evidence that **it** was not negligent. In fact, while EMPSCO agrees that Plaintiff's expert's report shows that Winzler's and Black's proposed design was inadequate and defective, EMPSCO is tarred with the same brush: EMPSCO approved said design in writing on May 22, 1996. See last page of Exhibit A to the McDonald Declaration, approving Winzler Drawing VE-1. For this EMPSCO is liable to Plaintiff.

The only evidence EMPSCO has provided that its work comported with reasonable **engineering** practices is that of an **architect**, who is not an engineer, and definitely not a structural engineer.[4] [Declaration of Albert H. Tsutsui, A.I.A., filed with moving papers.] The evidence of an architect on engineering matters cannot comport with the requirements of Daubert because it is *per se* unreliable, and does not provide any evidence of EMPSCO's reasonable engineering practices (let alone evidence supporting a judgment for EMPSCO as a matter of

---

[4] While EMPSCO's motion states that Mr. Tsutsui is qualified as a "P.E." or Professional Engineer, Mr. Tsutsui's Declaration makes it clear that eh is an architect and **not**, in fact, an engineer.

law). Fed. Rule Evid 702 (to provide opinion on matters of "scientific, technical or other specialized knowledge," a witness must be "qualified as an expert by knowledge, skill, experience, training, or education"); Kumho Tire Co., Ltd. v. Carmicheal, 526 U.S. 137, 147, 119 S.Ct. 1167 (1999) ("In Daubert, this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony ... is not only relevant, but reliable").

**B.    EMPSCO's Motion For Judgment On The Pleadings As To Plaintiff's Eighth Cause Of Action Simply Does Not Lie**

The issues concerning Plaintiff's individual causes of action against each Defendant for breach of the warranty of workmanlike performance are very similar. Thus, to reduce paperwork, Plaintiff respectfully refers the Court to its separately filed Opposition To Winzler & Kelly's Motion For Judgment On The Pleadings On Ninth Cause Of Action, etc., filed concurrently herewith. For the reasons stated therein, EMPSCO's motion under Federal Rule of Civil Procedure 12(c) fails.

**V.    CONCLUSION**

Pursuant to Federal Rule of Civil Procedure 56(f) and Local Rule 7.1, Plaintiff urges the Court to deny this motion, or continue hearing on it until a date mutually agreeable to the Court and counsel, but after Plaintiff has had reasonable time to take depositions and review deposition transcripts necessary to enable Plaintiff to present a proper opposition to this motion.

While Plaintiff is concerned that it does not yet have sufficient facts to properly oppose this motion, for the reasons stated above, Plaintiff respectfully suggests that even at this time numerous genuine issues of material fact appear which preclude summary judgment on Plaintiff's Third and Sixth causes of action against EMPSCO, so that motion should be denied.

For the reasons set forth above, Plaintiff further requests that the Court deny EMPSCO's motion to dismiss the Eighth cause of action.

DATED: Hagåtña, Guam, November 22, 2004.

COZEN O'CONNOR

*(signature)*

for FORREST BOOTH
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, Forrest Booth, hereby declare under penalty of perjury of the laws of the United States, that on November 19, 2004, I will cause to be served, via Facsimile, a true and correct copy of **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EMPSCO'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR JUDGMENT ON THE PLEADINGS** upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and

> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this 19th day of November, 2004 at San Francisco, California.

_for_ FORREST BOOTH

SANFRAN1\31781\1 123206.000

15.