BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 499-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers

FILED
DISTRICT COURT OF GUAM
NOV 26 2004
MARY L. M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP.,<br><br>Defendants. | Civ. No. CIV 03-0009<br><br>DEFENDANT WIZNLER & KELLY CONSULTING ENGINEERS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON NINTH CAUSE OF ACTION (BREACH OF WARRANTY AGAINST (WINZLER & KELLY); CERTIFICATE OF SERVICE<br><br>Date: December 3, 2004<br>Time: 9:00 a.m.<br>Judge: Hon. A. Wallace Tashima<br>Senior Circuit Judge |

**Introduction.**

The plaintiff Syndicate has sued Winzler & Kelly for a supposed breach of warranty of workmanlike performance in performing the terms of an alleged "maritime contract" with Black Construction to design repairs to the concrete piles and dolphins of Pier F-1 in the Port of Guam.[1] See First Amended Complaint at paragraph 37 (Ninth Cause of Action).

Winzler & Kelly has moved for judgment on the pleadings on this claim, on the ground that the maritime warranty of workmanlike performance, recognized by the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124 (1956), is rooted in the requirement of seaworthiness of a ship, which is not implicated in this case, and does not, even at its broadest, apply in situations, such as this case, where the plaintiff is not seeking indemnity for its strict liability to a third party.

---

[1] The Syndicate is subrogee of the Port Authority of Guam, which was the original third-party beneficiary of the design contract between Winzler & Kelly and Black.

The Syndicate attempts to oppose this motion by raising a variety of issues which are variously irrelevant, distortions of existing law, or flatly and facially wrong, and are therefore unavailing, as set out in greater detail herein.

**The "Background Facts" Are Inapt, Objectionable and Inaccurate.**

The Syndicate begins its Opposition with a lengthy section of so-called "Background Facts." See Opposition at pages 2-4. In a motion for judgment on the pleadings, however, the facts are to be taken as pleaded in the complaint, not as elaborated, glossed, augmented, and supplemented in a brief – particularly when this is done without any evidentiary support. Winzler & Kelly has already filed with the court its Objections To Factual Assertions Made in Plaintiff's Opposition Briefs Which Are Unsupported By Any Evidence. It adds here the objection that for purposes of this motion for judgment on the pleadings, *no* factual assertions extraneous to the pleadings should be considered. See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990).

It follows as a corollary to this, moreover, that the Syndicate, despite its claims on pages 2-3 of its Opposition, cannot possibly be prejudiced in its ability to oppose this motion by the fact that it has not yet completed discovery. Even if the Syndicate's claims of prejudice would have merit in the context of a motion of summary judgment,[2] where evidence extraneous to the pleadings obtained through discovery may properly be introduced and considered, they have none in the context of this motion for judgment on the pleadings, where the pleadings themselves (which are already complete) are the sole focus. There is no "Rule 56(f)"-type escape hatch for a motion for judgment on the pleadings, nor can there be, given the nature of the motion.

**Black's Contract With the Port Authority Does Not Bind Winzler & Kelly.**

Turning to the merits of the motion, the Syndicate first argues that Winzler & Kelly is bound by a

---

[2] In this case, they do not, for the reasons set forth in Winzler & Kelly's Reply in Support of Motion For Summary Judgment on the Fifth Cause of Action (Breach of Contract).

- 2 -

provision in Black's contract with the Port Authority to the effect that Black would "bind every subcontractor by the terms of this Contract," including a warranty of workmanlike performance. Opposition at pages 5-6. Even assuming *arguendo* that this is an accurate reading of the contract between the Port Authority and Black, however, Winzler & Kelly was not a party to that contract, and cannot be held to the terms thereof. Winzler & Kelly is bound only by its own agreement with Black, which was simply "to provide revised design and engineering specifications for the repair work." See First Amended Complaint at paragraph 8. Winzler & Kelly made no express contractual warranty of workmanlike performance. If Black was indeed contractually bound, under its agreement with the Port Authority, to require such a warranty from Winzler & Kelly, but not did so, that may be an issue between the Port Authority and Black, but it does not of itself create liability in Winzler & Kelly to the Port Authority. The *non sequitur* of the argument, "[b]ecause Black agreed ... Winzler ... was obligated," Opposition at 10, is obvious on its face.

**The Syndicates Blurs the Two Meanings of the "Warranty of Workmanlike Performance."**

The bulk of the Syndicate's remaining argument is directed to the proposition that there was an *implied* warranty of workmanlike performance. In order to perceive the error of the Syndicate's argument, it is necessary first to recognize that there are two entirely different creatures in the law that go by the name "warranty of workmanlike performance." One of these is a warranty specifically maritime in character, which was recognized by the Supreme Court in Ryan. The other is much more general warranty that inheres in all types of service contracts, from "an ordinary construction contract, to a contract to install plumbing, to a contract to tan goat skins." Fairmont Shipping Corp. v. Chevron International Oil Co., Inc., 511 F.2d 1252, 1259 (2nd Cir. 1975) (citations omitted).

The Syndicate acknowledges in its Opposition, albeit obscurely, that these are, in fact, two different things. See Opposition at page 7 (reference to "two aspects to the warranty"). The same distinction is acknowledged more clearly and explicitly in the two authorities on which the Syndicate's Opposition primarily relies, namely Schoenbaum's treatise on Admiralty and Maritime Law, and the decision of the Second Circuit in Fairmont Shipping. See Schoenbaum at Sec. 5-8 (distinguishing between the warranty

"as a contract doctrine," which is "very much alive," id. at page 2, and as "an indemnity theory" (the Ryan warranty), which is "a withered doctrine of extremely limited application," id. at page 3);[3] Fairmont Shipping, 511 F.2d at 1259 ("With this background in mind, we can see that the instant case is not really a *Ryan* case at all.").

Despite acknowledging this distinction between the "two aspects" of the warranty, however, the Syndicate, continually throughout its Opposition, weaves back and forth between the two of them, beginning an argument with reference to one, and concluding the same argument with reference to the other, leaving the reader baffled by the end of it as to just which "aspect" the Syndicate alleges that Winzler & Kelly breached – the contract warranty, or the "withered" Ryan warranty. The effect is like that of a thaumatrope.[4]

To clarify the matter, it is instructive to refer to the complaint. The Syndicate states:

> Upon information and belief, the contract between Black and Winzler is a maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Accordingly, there is implied in said contract a warranty of workmanlike performance owed to the Port Authority as an assignee and/or third-party beneficiary of said contract.

First Amended Complaint at paragraph 37. It is evident from this allegation that the Syndicate seeks to hold Winzler & Kelly liable for breach of the Ryan maritime warranty.[5] The opening assertion that the contract is a "maritime contract," followed by the assertion that the warranty sued upon arises specifically because of the maritime nature of the contract ("accordingly"), admits of no other conclusion. Moreover,

---

[3] All page citations in this brief to Schoenbaum's treatise are to the pages of Section 5-8, which is attached hereto for the court's easy reference. The printed volume, the page numbers of which the Syndicate cites, was not available to Winzler & Kelly's counsel.

[4] Thaumatrope: "a device consisting of a card with different designs on either side, which wh the card is twirled, appear to blend into one." Webster's New World Dictionary (1962). Cf. United States v. Beuckelaere, 91 F.3d 781, 788 (6th Cir. 1996) (Suhrheinrich, J., dissenting) ("To fill the void [the majority] relies on a thaumatrope of alternating references to the three *Lopez* categories to create the illusion that all three are satisfied.").

[5] Winzler & Kelly does not wish to be understood here as conceding that its contract with Black is in fact a maritime contract.

- 4 -

if the Syndicate were merely asserting the warranty of workmanlike performance that inheres in every contract, no separate cause of action for breach of warranty would be necessary or appropriate, as any alleged breach of such a warranty is subsumed within the Syndicate's claim for breach of contract, already separately asserted. See First Amended Complaint at paragraph 27 ("Winzler breached its contract with Black by failing to exercise adequate skill and competence to design and specify the Project that would be sufficiently strong to withstand future earthquakes and typhoons.").[6]

### Fairmont Shipping Supports Winzler & Kelly's Arguments On the Ryan Warranty.

Taken as the Ryan claim that the Syndicate plainly intended it to be, the Ninth Cause of Action is doomed for all the reasons set out in Winzler & Kelly's Opening Memorandum in Support of this Motion. No court has been clearer about the necessary tie between the Ryan warranty and the underlying duty of seaworthiness than has the Second Circuit in Fairmont Shipping, the very case cited to the court by the Syndicate with the recommendation that it is "more closely on point" than any of Winzler & Kelly's cases. See Opposition at page 8. Here is what the Fairmont Shipping court has to say on the subject:

> This court has more than once recognized that it is the shipowner's strict liability for unseaworthiness that rests at the heart of Ryan indemnity.

511 F.2d at 1257. Later, the same point is made even more strongly and clearly:

> Northwest argues that the existence of the warranty does not depend on a corresponding existence of a duty of seaworthiness. We think that it does. The circumstance which gives rise to the implied warranty is the duty of seaworthiness owed by the party seeking indemnification.

511 F.2d at 1257.

The Syndicate's desire to make Fairmont Shipping say something other than this leads it to veer beyond zealous advocacy into what certainly looks like outright deception. According to the Syndicate, the Court in Farimont Shipping "held that the crucial elements of a Ryan claim are as follows: An owner,

---

[6] If and to the extent that the Syndicate is merely asserting a breach of warranty as a type of breach of contract, such a claim is of course subject to summary judgment on the grounds set forth in Winzler & Kelly's motion for summary judgment as to the Fifth Cause of Action for breach of contra – absence of causation.

- 5 -

relying on the expertise of a contractor, enters into a contract whereby the contractor agrees to perform services without supervision or control by the owner." Opposition at page 9. That is *not* what the Court held. Here is its actual language:

> Therefore, we find the crucial elements of Ryan to be as follows: a *shipowner*, relying on the expertise of another party (the contractor), enters into a contract whereby the contractor agrees to perform services without supervision or control by the *shipowner*; the improper, unsafe or incompetent execution of such services would foreseeably render the vessel unseaworthy or bring into play a pre-existing unseaworthy condition; and the shipowner would thereby be exposed to liability regardless of fault.

511 F.2d at 1258 (emphasis added) (footnotes omitted). The Syndicate's "paraphrase" of Fairmont Shipping's actual holding therefore recites only one of the three "crucial elements;" and even in that element, changes "shipowner" to "owner" each time the term occurs.[7] The result is a view of Fairmont Shipping which is not only distorted, but diametrically opposed to the actual holding of that case. The view of Ryan set forth in the Syndicate's brief under the ostensible authority of Farimont Shipping is not that of Fairmont Shipping at all, but rather that of the "other decisions" that Farimont Shipping expressly *rejected*, on the ground that they "omit *the most important aspect*: the fact that the absolute duty of *seaworthiness* requires shipowners, regardless of their fault, to pay for accidents caused by stevedores." 511 F.2d at 1258 (emphasis added).

### The Syndicate Argues Against Itself

The residual points raised by the Syndicate only serve to do further damage to its own position. The Syndicate argues, for instance, that:

> The judicial landscape with regard to the warranty of workmanlike performance was dramatically changed by Congress when it passed the 1972 Amendments to the Longshore and Harbor Workers' Compensation Act.

Opposition at page 7. So it has, but not in any way that helps the Syndicate on this motion. The 1972 LHWCA amendments eliminated the no-fault liability of shipowners to longshoremen, the existence of

---

[7] The Syndicate's quotation from the California case Fahey v. Gledhill, 33 Cal.3d 884, 890 (1983), is incomplete and misleading in the same way. That opinion actually reads: "Under admiralty law contractors *who undertake to work on boats* warrant by implication that they will perform services in a workmanlike manner ..." (words omitted by the Syndicate in italics). See Opposition at page 8.

- 6 -

which had formed the original justification for the Ryan warranty. See Schoenbaum at pages 2-3. Since this case has never involved either shipowners or longshoremen, the import of these amendments, and of the LHWCA generally, is nil.[8] Indeed, the only significance of the amendments is their contribution to the "withering" of the Ryan rule on which the Syndicate attempts to rely. After these amendments, Schoenbaum writes, "there is little left of the Ryan rule." Id. at page 3.

The Syndicate also attempts to distinguish this as a property damage case, as opposed to personal injury. Opposition at 7. So it is, but that fact is not helpful to them either. Here is what Schoenbaum has to say about property damage claims:

> The *Ryan* indemnity issue also arises in property damage cases usually involving cargo or the ship. In this situation the doctrine of strict liability for unseaworthiness does not apply so that the courts consistently conclude that implied *Ryan* indemnity does not apply.

Page 5 (footnote 59 and accompanying text). That is precisely what Winzler & Kelly is arguing – that the Ryan warranty derives from, and depends on, strict liability for unseaworthiness, and where that doctrine does not apply, Ryan indemnity likewise does not apply.

**Fanciful Speculation Does Not Justify Extending a "Withered" Doctrine**

Finally, the Syndicate raises a number of imaginative scenarios – none of which ever occurred – and cites them as "public policy" reasons for extending the Ryan warranty to cover this case. Even if we accept *arguendo*, however, that any of these scenarios, if it occurred, would actually leave the Port Authority strictly liable regardless of fault, the inescapable fact remains that there were no discharges of oil from unloading pipelines; no broken pile punctured a tank on a vessel; no dolphin caps fell into the ocean; and no employees of either Shell or the Port were injured or killed as a result of anything alleged in this case against Winzler & Kelly. Ryan indemnity was created as a method to recover liability that one has actually

---

[8] It is therefore equally immaterial whether "several" of Winzler & Kelly's cited cases, as the Syndicate claims, "pre-date the 1972 amendments to the LHWCA." Opposition at page 7. It cannot but reflect badly on the overall coherence of the Syndicate's arguments, however, that it is clear from the very dates of the cases cited (1964, 1973, 1975, 1988, 1998) that only one of them pre-dates the 1972 amendments.

- 7 -

Case 1:03-cv-00009   Document 123   Filed 11/26/2004   Page 7 of 19

incurred, or at least which is being sought against one – not for speculative liability for non-existent injuries.

## Conclusion.

In the Ninth Cause of Action, the Syndicate attempts to hold Winzler & Kelly, an architectural and engineering firm, liable for breach of the Ryan maritime warranty of workmanlike performance, based on a supposedly defective design that Winzler & Kelly produced for repairs to a pier. But a pier is not a ship, the Port is not a shipowner, and the Port has not been held, and is in no danger of being held, strictly liable to anyone for anything. Because the rationale which underlies and justifies the application of the maritime warranty of workmanlike performance -- counterbalancing the harsh effects of a shipowner's no-fault liability for unseaworthiness -- has no conceivable application to a pier repair design contract, judgment on the pleadings should be granted in Winzler & Kelly's favor as to the Ninth Cause of Action.

Respectfully submitted this 26th day of November, 2004.

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Defendant
Winzler & Kelly Consulting Engineers


By: *Seth Forman*
Seth Forman for
Daniel J. Berman/Robert J. O'Connor

1 Admiralty & Mar. Law § 5-8 (4th ed.)

(TREATISE)

Admiralty and Maritime Law
Thomas J. Schoenbaum FNa

Chapter 5. Admiralty And The General Maritime Law

§ 5-8. Marine Service Contracts And The Warranty Of Workmanlike Performance

The warranty of workmanlike performance (or service) is a lowly common law concept that was plucked from obscurity by the United States Supreme Court in 1956 and given star billing. FN1 The story is a compelling one.

At common law the warranty of workmanlike performance (WWLP) is a mere label that was coined no doubt by an inventive judge or litigant to mean that the obligor in a service contract has a duty to perform his or her task with reasonable care, skill, and diligence. FN2 Thus the WWLP is a legal "construct" that was originally rooted in the concept of *negligence.*

The WWLP would have toiled, perhaps forever, in the lowly vineyard of the common law, were it not for the fact that the United States Supreme Court in the 1940s and '50s had painted itself into a corner with respect to the allocation of liability and damages between the leading admiralty threesome, longshore workers, ship owners, and stevedores. In Seas Shipping Company v. Sieracki, FN3 decided in 1946, the Supreme Court was bamboozled into showing extraordinary favoritism to longshore workers, holding that not only were they entitled to compensation benefits, they could recover from vessel owners under the doctrine of unseaworthiness, FN4 a species of liability without fault.

Of course, the vessel owner did not take this lying down, and soon the Supreme Court was presented with the question of whether the vessel owner who was liable for unseaworthiness would recover in contribution from a negligent stevedore. In Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp. FN5 the court held that the stevedore/employer was immune from contribution even when the unseaworthiness was caused in large measure by the stevedore.

The situation cried out for relief and a heroic rescue effort was mounted that succeeded brilliantly. In Ryan Stevedoring Company v. Pan-Atlantic Steamship Corp., FN6 which involved a plaintiff longshoreman who was injured by the unseaworthiness of the vessel, the court held that the vessel owner, who was liable for damages, could recover on an *indemnity* theory from the stevedore employer. This was quite a trick; the court was willing to approve *indemnity* only four years after denying *contribution.* FN7 Furthermore, the *Halcyon* decision was left standing, but distinguished. *Halcyon*, the court explained, was rooted in tort law, and contribution was barred by the section 5 of the LHWCA which provided that compensation benefits were the exclusive remedy against the employer for personal

Case 1:03-cv-00009    Document 123    Filed 11/26/2004    Page 9 of 19

injury or death. The court circumvented this exclusivity provision, however, by using the warranty of workmanlike performance. Since the WWLP was based in contract, not tort, the court could say that the shipowner had a cause of action against the stevedore employer for breach of an implied warranty in the stevedoring contract. This breach was independent and not "on account of" the plaintiff's injury. Thus the implied WWLP came into the law of admiralty. It is worth examining the early cases to examine just what the WWLP entailed. *Ryan* itself was a case where the breach of warranty was negligently creating an unseaworthy condition during cargo handling operations.FN8 In Weyerhaeuser Steamship Corp. v. Nacirema Operating Co.,FN9 the court held that the warranty extended to the negligent use of equipment incidental to cargo operations. The stevedore could be held liable for failure to take corrective action. FN10 In Crumady v. The Joachim Hendrik Fisser, FN11 the court held the stevedore liable for an act which brought a latent defect in the ship's equipment into play. FN12 Furthermore, the stevedore in *The Joachim Hendrik Fisser* was held liable without contractual privity between it and the vessel owner (the ship was under charter, and the charterer engaged the stevedore). FN13 The court's explanation for this was to cite third-party beneficiary contract doctrine, FN14 as well as the analogy between a WWLP in a service contract and a warranty of the soundness of a manufactured product. FN15

The high-water mark in the career of the WWLP, however, came in the court's decision in Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co. FN16 The court clearly held that the WWLP gives rise to liability without fault. Negligence, the court found, is not a necessary factor for liability when the injury results from unsound equipment furnished by the stevedore. This holding was supported by the rationale that "liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." FN17

The indemnification use of the WWLP by the Supreme Court had very harsh and strange results. A round robin was created that unnecessarily drove up transaction costs and created a windfall for longshoremen (and their attorneys). It was also an exercise in futility; for the tort claim against the shipowner was defended by its insurer who, upon being found liable sought indemnity from the stevedore. The stevedore's liability was, in turn, borne by its insurer, with the result being higher insurance costs, which were passed on to the vessel anyway in the form of higher costs for stevedoring services. Thus Congress in 1972 enacted amendments to the LHWCA FN18 which (1) abolished the vessel's liability for unseaworthiness (substituting a negligence remedy for longshore workers) and (2) provided that the stevedore employer "shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." FN19 Thus the implied *Ryan* indemnity of the employer to the vessel was eradicated.

The 1972 amendments, however, abolished only the vessel indemnity aspect of Ryan, and the WWLP lives on FN20 as one of the most ambiguous and controversial concepts in all of admiralty law. Perhaps because of its spurious origin and the confusing nature of the 1972 amendments, judicial attitudes toward the WWLP are ambivalent. FN21 It is clear, however, that the WWLP in admiralty is alive if not totally well in both property damage and personal injury cases. In order to fully understand the WWLP, however, one must realize that it has two very different aspects FN22 in maritime law. First, it is a contract warranty applicable between parties with contractual privity or on a third party beneficiary theory. FN23 Second, the WWLP is an implied indemnity theory. We shall discuss each in turn.

Contract Cases

As a contract doctrine, the WWLP is very much alive. Between parties to a maritime service contract there is generally an implied WWLP FN24 unless it is excluded by agreement. FN25 The courts have applied the doctrine to a wide variety of marine contracts to perform services without supervision or control by the shipowner, FN26 such as repairs, FN27 offshore service contracts, FN28 contracts to provide tug assistance, FN29 launch service contracts, FN30 and stevedoring contracts. FN31 The doctrine is not fully applicable to towing contracts, however, at least insofar as it conflicts with the admiralty rule imposing liability only for negligent conduct. FN32 Moreover, in order for the warranty to

Case 1:03-cv-00009    Document 123    Filed 11/26/2004    Page 10 of 19

arise, the "putative warrantor must be performing some type of service for the party asserting the warranty claim." FN33 Thus the WWLP does not run to a third party unless it qualifies as a third party beneficiary. FN34
As a result of breach of the WWLP the guilty party is liable for all foreseeable and proximately caused losses incurred by the innocent party, FN35 including the value of lost cargo, FN36 loss of use of a vessel, FN37 and property damage. FN38

Ryan Indemnity--Replaced by Contribution?

As an indemnity theory, the *Ryan* WWLP is a withered doctrine of extremely limited application. The 1972 Amendments FN39 to the LHWCA legislatively overruled *Sieracki;* therefore since the vessel is no longer liable for unseaworthiness, but only for negligence as far as longshore workers are concerned, the vessel can no longer recover *Ryan* indemnity from the stevedore.
Is there any force left to *Ryan* indemnity? FN40
Although the cases are not consistent on this issue, the best view is that *Ryan* indemnity should be denied except in a very limited class of cases. The justice of this view is apparent when one considers the basis and context of *Ryan* indemnity. In *Ryan* the shipowner was held entitled to indemnity because the stevedore (through its employees) created the *unseaworthy* condition which gave rise to the shipowner's liability without fault. In this context the rule has appeal. But the 1972 amendments to the LHWCA erased the shipowner's liability without fault (for unseaworthiness); FN41 thus there is little left of the *Ryan* rule.
This analysis was clearly adopted by the Second Circuit in Fairmont Shipping Corp. v. Chevron Int'l Oil Co., FN42 where the court stated the "crucial elements" of a *Ryan* indemnity claim:
Therefore we find the crucial elements of *Ryan* to be as follows: a shipowner, relying on the expertise of another party (the contractor), enters into a contract whereby the contractor agrees to perform services without supervision or control by the shipowner; the improper, unsafe or incompetent execution of such services would foreseeably render the vessel unseaworthy or bring into play a preexisting unseaworthy condition; and the shipowner would thereby be exposed to liability regardless of fault. Where these elements are present, there will be implied in the contract an agreement by the contractor to indemnify the shipowner for any liability it might incur as a result of an unseaworthy condition caused or brought into play by the improper, unsafe or incompetent performance of the contractor. FN43

Personal Injury Cases

*Ryan* indemnity applies, first of all, to the context in which it arose, the limited class of remaining *Sieracki* seamen--privately employed longshoremen and harbor workers injured outside the territorial coverage of the LHWCA. In such cases a vessel liable for unseaworthiness can assert *Ryan* indemnity. FN44
How far the WWLP extends beyond this is a difficult question. In cases involving personal injuries to *seamen* who are injured by the unseaworthiness of the vessel, may the shipowner who is held liable obtain *Ryan* indemnity from a stevedore, wharfinger, or other marine contractor whose conduct caused the unseaworthy condition? This question has been answered differently in different circuits. The majority view is that indemnity should be granted if the "critical elements" of *Ryan* are present: the shipowner is liable without fault and the harm is caused by one with whom he has a contractual relationship. FN45 Nevertheless, indemnity will be properly denied if the case "lacks the crucial ingredient of the Ryan cases, the shipowner's liability, regardless of fault, for the breach of workmanlike performance of the contractor." FN46 Moreover, the courts will look very carefully at the contract to see if there was the requisite contractual relationship FN47 if the contractor in fact had the operational control necessary for implied indemnity. FN48 Indemnity will also be denied if concurrent negligence on the part of the shipowner prevents the stevedore or other marine contractor from doing his lawful job. FN49 If indemnity is denied for any of these reasons, the court will allow contribution, and the damages

will be apportioned on the basis of comparative fault. FN50

The correct analysis is exemplified by the case of Smith & Kelly Co. v. S.S. Concordia TADJ, FN51 which involved a seaman who was injured through "a series of negligent acts, omissions and derelictions of duty" committed by both the shipowner employer and the stevedore. The court reviewed the "rise and fall of the *Ryan* indemnity doctrine." FN52

> At this point we must distinguish between Ryan's twin holdings. "The *Ryan* doctrine * * * includes two facets: an implied undertaking by a stevedore to render workmanlike performance and the stevedore's duty to indemnify the owner for liability arising out of its breach of duty." Agrico Chemical Co. v. M/V Ben W. Martin, 664 F.2d 85, 93, 1985 AMC 563 (5th Cir.1981) (non-binding). The first of these principles retains its vitality. What Congress abandoned in the 1972 Amendments was the notion that any breach of the stevedore's warranty of workmanlike service requires him to indemnify the vessel for all liability that breach might cause, regardless of the fault of the vessel. The Supreme Court's declaration in *Scindia* [Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981)] distinguishes between the existence of the warranty and the duty to indemnify, and reaffirms only the warranty principle of *Ryan*. Like the Court in Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096, 1100, 1984 AMC 1927 (5th Cir.Unit A 1981), we view the 1972 Amendments as casting doubt on the continued vitality of the *Ryan* indemnity principle.

With this background the court discussed the application of *Ryan* indemnity to seaman's injuries.

> We must first determine whether precedent requires us to apply the *Ryan* indemnity principle in this case. Our facts differ substantially from *Ryan* in that here the unseaworthy condition of the ship resulted in injury to a seaman at sea rather than to a longshoreman during cargo operations. No case in the Eleventh or Fifth Circuit has required a stevedore to indemnify a shipowner for the shipowner's liability to one of its own employees. We find no Supreme Court precedent requiring such application.
>
> Nor does it appear to us that the policy mooring of the *Ryan* doctrine demands its application in this case. In *Ryan* the rationale for requiring stevedores to indemnify shipowners fully for injuries to longshoremen rested on the conclusion that, as a general matter, the stevedore is better positioned to avoid such injuries during cargo operations. But this generalization does not apply to protection of seamen. The vessel's nondelegable duty of seaworthiness is premised on a contrary generalization: that shipowners are best able to protect seamen from injuries aboard ship. "We have consistently refrained from extending the *Ryan* -type indemnity 'beyond those controversies involving the special rules governing the obligations and liability of shipowners which necessitated its formulation and justify its application.' " Thibodeaux v. Texas Eastern Transmission Corp., 548 F.2d 581, 585 (5th Cir.1977), quoting In re Dearborn Marine Service, Inc., 499 F.2d 263, 287, 1975 AMC 1850 (5th Cir.1974) (quotation omitted). We do not believe that the original justification for *Ryan* indemnity applies to controversies involving seamen injured at sea; we therefore decline to extend *Ryan* indemnity principles to such disputes. FN53

Thus, although the *Concordia TADJ* case perhaps can be reconciled with seamen's indemnity cases in other circuits FN54 on the facts, because in *Concordia TADJ* there was concurrent negligence, the court's dicta appears to obviate completely the possibility of *Ryan* indemnity in seaman personal injury cases, while other circuits clearly permit it. The Fifth Circuit also seems to share the *Concordia TADJ* court's view that *Ryan* indemnity is never available in seamen's personal injury cases. FN55 Thus the Courts of Appeals disagree on this issue: the Fifth and Eleventh Circuits apply comparative fault contribution, FN56 while in the Second, Third, Sixth, and Ninth Circuits it is still possible to recover *Ryan* indemnity in personal injury cases. FN57 The difference between the circuits is in reality quite narrow, however, because even the courts permitting indemnity will do so only where the shipowner is completely innocent of any fault. FN58

Property Damage Cases

Case 1:03-cv-00009    Document 123    Filed 11/26/2004    Page 12 of 19

The *Ryan* indemnity issue also arises in property damage cases usually involving cargo or the ship. In this situation the doctrine of strict liability for unseaworthiness does not apply so that the courts consistently conclude that implied *Ryan* indemnity does not apply. FN59 Since property damage cases involve questions of liability for negligence, not unseaworthiness, damages should be divided in proportion to fault. FN60

As the court stated in Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.: FN61

[W]e question the vitality of *Ryan* principles in disputes between a vessel and her stevedore over cargo damage. Except in the context of independent contractors on drilling barges, our Circuit has been reluctant to expand the applicability of the *Ryan* doctrine * * *. There is little logical appeal in this proposed extension of a doctrine withered. Disputes between vessels and stevedores over damaged cargo are best accommodated by a straightforward application of the usual maritime comparative fault system. FN62

Attorneys' Fees

As a general rule, attorneys' fees are recoverable where they are incurred in defending against the claim of a third party injured by a breach of the WWLP, but not where they are incurred in prosecuting an action for breach of the WWLP. FN63

FNa Professor of International Studies, International Christian University, Tokyo, Visiting Professor of Law, George Washington University, Dean and Virginia Rusk Professor of Law Emeritus, University of Georgia.

FN1 Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The Supreme Court affirmed the existence of the warranty in Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1, 1981 AMC 601 (1981).

FN2 See e.g., the common law cases cited by the court in Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc., 866 F.2d 752, 763, n. 17, 1990 AMC 447 (5th Cir.1989).

FN3 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), rehearing denied 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646 (1946).

FN4 See § 6-27.

FN5 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952).

FN6 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

FN7 Unlike contribution, of course, indemnity shifts the entire loss to the indemnitor.

FN8 350 U.S. at 131, 76 S.Ct. at 236. This was not inconsistent with a finding of negligence.

FN9 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

FN10 355 U.S. at 568, 78 S.Ct. at 438.

FN11 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), on remand 176 F.Supp. 595 (D.N.J.1959), affirmed 272 F.2d 396 (3d Cir.1959).

FN12 358 U.S. at 428, 79 S.Ct. at 448.

FN13 Id.

FN14 This appears wrong since there was no benefit to the vessel owner, either in the form of donative intent or discharge of a legal obligation.

FN15 Id. at 429, 79 S.Ct. at 448. See also Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

FN16 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732, 1964 AMC 1075 (1964), on remand 336 F.2d 124 (9th Cir.1964).

FN17 Id. at 323, 84 S.Ct. at 753.

FN18 33 U.S.C. § 905(b).

FN19 Id.

FN20 See Agrico Chemical Co. v. M/V Ben W. Martin, 664 F.2d 85, 93, 1985 AMC 563 (5th Cir.1981), rehearing denied 669 F.2d 733 (5th Cir.1982); Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096, 1100, 1984 AMC 1927 (5th Cir.1981); Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 170, 101 S.Ct. 1614, 1623, 68 L.Ed.2d 1, 1981 AMC 601 (1981). See also Fairmont Shipping Corp. v. Chevron Int'l Oil Co., Inc., 511 F.2d 1252, 1259, 1975 AMC 261 (2d Cir.1975).
See generally Francis J. Gorman, Ryan Indemnity in Maritime Property. Damage Cases & What of Proportionate Fault?, 8 Balt.L.Rev. 42 (1978).

FN21 Compare e.g., Campbell Industries, Inc. v. Offshore Logistics Int'l, Inc., 816 F.2d 1401, 1989 AMC 100 (9th Cir.1987) and Bosnor, S.A. v. Tug L.A. Barrios, 796 F.2d 776, 1987 AMC 2956 (5th Cir.1986).

FN22 See Fairmont Shipping Corp. v. Chevron Int'l Oil Co., Inc., 511 F.2d 1252, 1258, 1975 AMC 261, 270 (2d Cir.1975).

FN23 See Hercules v. Stevens Shipping Co., 629 F.2d 418, 425, 1981 AMC 858, 864 (5th Cir.1980), on rehearing 698 F.2d 726, 1983 AMC 1786 (5th Cir.1983); Employers Ins. of Wausau, 866 F.2d at 763; Nathaniel Shipping, Inc. v. General Electric Co., 932 F.2d 366, 367, 1994 AMC 1812 (5th Cir.1991).

FN24 *Fairmont Shipping Co. v. Chevron Int'l Oil Co.*, 511 F.2d at 1254, 1975 AMC at 271. See also Todd Marine Enterprises v. Carter Machinery Co., 898 F.Supp. 341 (E.D.Va.1995); and Hudson River Cruises v. Bridgeport Drydock Corp., 892 F.Supp. 380 (D.Conn.1994). In Commercial Union Ins. Co. v. Bohemia River Assoc., Ltd., 855 F.Supp. 802, 1994 AMC 1410 (D.Md.1991) the court entered summary judgment for defendants on a bailment claim involving the destruction of a vessel by fire at a marina, but denied summary judgment on claims involving negligence and breach of the warranty of workmanlike performance.

FN25 In Federal Marine Terminals, Inc. v. Worcester Peat Co., 262 F.3d 22, 2001 AMC 2641 (1st Cir.2001), the court awarded damages to a stevedore in a contract dispute with a marine terminal. For a case in which the WWLP was excluded, see Elgie & Co. v. Steamship "S.A. Nederburg", 599 F.2d 1177, 1980 AMC 231 (2d Cir.1979) [Ocean carrier's agreement with stevedore clearly contracted away the WWLP]. Disclaimers of the warranty will be strictly construed. Id.

FN26 The company or person performing the service must control the work. The WWLP is not applicable to a marine classification survey and agreement. Sundance Cruises Corp. v. American Bureau of Shipping, 799 F.Supp. 363, 1992 AMC 2946 (S.D.N.Y.1992), affirmed 7 F.3d 1077, 1994 AMC 1 (2d Cir.1993).

FN27 Hudson River Cruises, Inc. v. Bridgeport Drydock Corp., 892 F.Supp. 380 (D.Conn.1994). See American Manufacturer's Mutual Ins. Co. v. Tracor Marine, Inc., 1991 AMC 2322 (S.D.Fla.1991); Aetna Casualty & Surety Co. v. Tracor Marine, Inc., 629 F.Supp. 526 (S.D.Fla.1986). See also Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 1982 AMC 1976 (5th Cir.1982), rehearing denied 680 F.2d 1389 (5th Cir.1982); Parfait v. Jahncke Serv., Inc., 484 F.2d 296, 1973 AMC 2447 (5th Cir.1973); Albina Engine & Mach. Works, Inc. v. American Mail Line, Ltd., 263 F.2d 311 (9th Cir.1959); Little Beaver Enterprises v. Humphreys Railways, Inc., 719 F.2d 75, 1984 AMC 496 (4th Cir.1983).

FN28 Whisenant v. Brewster-Bartle Offshore Co., 446 F.2d 394, 1971 AMC 1783 (5th Cir.1971); but see Law v. Sea Drilling Corp., 510 F.2d 242, 1977 AMC 2379 (5th Cir.1975), rehearing denied 523 F.2d 793 (5th Cir.1975).

FN29 Fairmont Shipping Corp. v. Chevron Int'l Oil Co., 511 F.2d 1252, 1975 AMC 261 (2d Cir.1975).

FN30 Flunker v. United States, 528 F.2d 239, 1978 AMC 2378 (9th Cir.1975); Garrett v. United States Lines, Inc., 574 F.2d 997, 1978 AMC 2372 (9th Cir.1978).

FN31 Federal Barge Lines, Inc. v. Granite City Steel, 608 F.Supp. 142 (E.D.Mo.1985); Dravo Mechling Corp. v. Standard Terminals, Inc., 557 F.Supp. 1162, 1986 AMC 818 (W.D.Pa.1983); Maurice Pincoffs Co. v. Dravo Mechling Corp., 697 F.Supp. 244 (E.D.La.1987); Salter Marine, Inc. v. Conti Carriers & Terminals, Inc., 677 F.2d 388, 1993 AMC 2399 (4th Cir.1982); Gator Marine Serv. Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096, 1984 AMC 1927 (5th Cir.1981). But see Purnell v. Norned Shipping B.V., 801 F.2d 152, 1987 AMC 197 (3d Cir.1986), rehearing denied 804 F.2d 248, 1987 AMC 204 (3d Cir.1986).
Although the implied duty of workmanlike performance arises by contract, it extends to all foreseeable parties, including employees of the shipowner. Chisholm v. UHP Projects, Inc., 205 F.3d 731, 2000 AMC 1050 (4th Cir.2000).

FN32 See Verrett v. McDonough Marine Service, 705 F.2d 1437, 1443 (5th Cir.1983), which adopts the criticism in Hercules, Inc. v. Stevens Shipping Co., 698 F.2d 726, 737, n. 25 1983 AMC 1786 (5th Cir.1983), (en banc) which criticizes the application of the warranty to a towing contract in Stevens v. East-West Towing Co., 649 F.2d 1104, 1108-09, 1982 AMC 2820 (5th Cir.1981), rehearing denied 656 F.2d 700 (5th Cir.1981). See § 12-5.
The WWLP also does not fully apply to marine surveyors. See Great American Insurance Co. v. Bureau Veritas, 338 F.Supp. 999, 1972 AMC 1455 (S.D.N.Y.1972), affirmed 478 F.2d 235, 1973 AMC 1755 (2d Cir.1973).

FN33 See Fontenot v. Mesa Petroleum Co., 791 F.2d 1207 (5th Cir.1986). See also Roderick v. Bugge, 584 F.Supp. 626 (D.Mass.1984). See also Thibodeaux v. Texas Eastern Transmission Corp., 548 F.2d 581, 584-85 (5th Cir.1977). (Refusing to infer any warranty running from pipeline company to pipeline construction contractor that would provide indemnification to contractor for liability to pipeline company's inspector for injuries received while aboard the contractor's barge.)

FN34 See Hercules v. Stevens Shipping, supra. Thus a shipowner in a repair case will not be able to sue a subcontractor directly for breach of the WWLP. See Nathaniel Shipping, Inc. v. General Electric Co.,

920 F.2d 1256, 1994 AMC 1520 (5th Cir.1991) opinion on petition for rehearing 932 F.2d 366, 1994 AMC 1812 (5th Cir.1991). But see Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 1982 AMC 1976 (5th Cir.1982). In *Nathaniel Shipping* the court stated the following rules (920 F.2d at 1263-64):

> While it is true that a contractor is ordinarily not liable for the negligence of its competent subcontractors, that rule generally applies to damages for torts committed by subcontractors. * * * When the negligence complained of is simply failure to live up to the terms of its contract, such as incomplete or late performance, then what is really being alleged is that the contractor has breached its contract in failing to get the work done properly. This is a nondelegable duty placed upon the contractor by way of its contract, and it cannot escape the fact that the contract was breached, even if it relied upon a subcontractor to do the work. Likewise, the customer/shipowner should not be able to sue the subcontractor directly, because all that it is alleging is that its contract was breached, and it should not matter whether or not its contractor subcontracted the work.
>
> This scenario changes when there is property damage or personal injury caused by the subcontractor's negligence. The suit is no longer merely a cause of action in contract, but a tort action. The shipowner is no longer just complaining that its contract was breached, and that it did not get the benefit of its bargain, but that because or the subcontractor's negligence, there was damage to property or personal injury, giving rise to damages in tort. In this situation a subcontractor could not avoid liability because it was not in privity with the shipowner, because in tort a duty is owed to more than the party with whom one has contracted. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Under *Ryan* the shipowner can directly sue the negligent subcontractor for indemnity for any damages the shipowner must pay for injuries caused by the subcontractor's failure to perform in a workmanlike manner.

FN35 Federal Barge Lines, Inc. v. Granite City Steel, 608 F.Supp. 142 (E.D.Mo.1985).

FN36 Maurice Pincoffs Co. v. Dravo Mechling Corp., 697 F.Supp. 244 (E.D.La.1987); But see Vitol Trading S.A., Inc. v. SGS Control Serv., Inc., 874 F.2d 76, 1989 AMC 1309 (2d Cir.1989).

FN37 Liberty Belle Limited v. M.I.T. Marine Electric Corp., 1991 WL 201633, 1991 AMC 2330 (M.D.Fla.1991).

FN38 *Fairmont Shipping*, supra; *Aetna Casualty & Surety Co.*, 629 F.Supp. at 531.

FN39 33 U.S.C. § 905(b).

FN40 It should be emphasized, as the court stated in *Fairmont Shipping*, 511 F.2d at 1259, "the factors to be considered in determining whether a contract includes a warranty of workmanlike performance are entirely separate from the factors that go into the determination of whether that warranty encompasses an obligation to indemnify."

FN41 The 1972 amendments, 33 U.S.C. § 905(b), therefore, overrule *Ryan* "insofar as they made an employer circuitously liable for injuries to its employee, by allowing the employee to maintain an action for unseaworthiness against the vessel to maintain an action for indemnity against the employer" Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 113, 94 S.Ct. 2174, 2178, 40 L.Ed.2d 694, 1974 AMC 537, 542 (1974).

FN42 511 F.2d 1252, 1975 AMC 261 (2d Cir.1975).

FN43 Id. at 269. *Ryan* indemnity is available only where a shipowner is exposed to strict liability for unseaworthiness because of a breach of the warranty of workmanlike performance by a stevedore.

Case 1:03-cv-00009　　Document 123　　Filed 11/26/2004　　Page 16 of 19

Otherwise, principles of comparative fault apply. Marcinowski v. McCormack Boys Corp., 160 F.Supp.2d 708, 2001 AMC 2819 (S.D.N.Y.2001); In re TPT Transp., 191 F.Supp.2d 717, 2002 AMC 1452 (M.D.La.2001).

FN44 Aparicio v. Swan Lake, 643 F.2d 1109, 1981 AMC 1887 (5th Cir.1981); Purnell v. Norned Shipping, 801 F.2d 152, 1987 AMC 197 (3d Cir.1986), rehearing denied 804 F.2d 248, 1987 AMC 204 (3d Cir.1986); Parks v. United States, 784 F.2d 20, 1987 AMC 83 (1st Cir.1986); Cormier v. Oceanic Contractors, Inc., 696 F.2d 1112 (5th Cir.1983). But see Bridges v. Penrod Drilling Co., 740 F.2d 361, 1986 AMC 1777 (5th Cir.1984). ["One with seaman status does not become a *Sieracki* seaman by doing stevedoring work which might be styled traditional seaman's duties."] Burks v. American River Transp. Co., 679 F.2d 69, 1983 AMC 2208 (5th Cir.1982) [seaman on one vessel is not *Sieracki* seaman with respect to another vessel and there is no *Ryan* indemnity action]; Normile v. Maritime Co. of the Philippines, 643 F.2d 1380, 1981 AMC 2470 (9th Cir.1981) [FECA employee outside coverage of LHWCA cannot assert *Sieracki* status].

FN45 Cooper v. Loper, 923 F.2d 1045, 1991 AMC 1032 (3d Cir.1991); Campbell Industries v. Offshore Logistics Int'l, Inc., 816 F.2d 1401, 1989 AMC 100 (9th Cir.1987); Oglebay Norton Co. v. CSX Corp., 788 F.2d 361, 1987 AMC 71 (6th Cir.1986); Hurdich v. Eastmount Shipping Corp., 503 F.2d 397, 1974 AMC 1872 (2d Cir.1974); see also Rogers v. New Jersey Barging Corp., 567 F.Supp. 822, 1984 AMC 656 (S.D.N.Y.1983).

FN46 Navieros Oceanikos, S.A. v. S.T. Mobil Trader, 554 F.2d 43, 1977 AMC 739 (2d Cir.1977); Phillips Petroleum Co. v. Stokes Oil Co., 863 F.2d 1250, 1994 AMC 601 (6th Cir.1988).

FN47 See Fontenot v. Mesa Petroleum Co., 791 F.2d 1207 (5th Cir.1986).

FN48 Compare Hartnett v. Reiss Steamship Co., 421 F.2d 1011, 1970 AMC 309 (2d Cir.1970) and Maritime Overseas Corp. v. Northeast Petroleum Indus., Inc., 706 F.2d 349 (1st Cir.1983).

FN49 Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096, 1100, 1984 AMC 1927 (5th Cir.1981); Bass v. Phoenix Seadrill/78, Ltd., 749 F.2d 1154 (5th Cir.1985). Verdin v. C & B Boat Co., 860 F.2d 150 (5th Cir.1988).

FN50 *Maritime Overseas Corp.*, 706 F.2d at 355. See Nathaniel Shipping, Inc. v. General Electric Co., Inc., 932 F.2d 366, 367, 1994 AMC 1812 (5th Cir.1991). The Ninth Circuit has held that a negligent shipowner is not entitled to receive *Ryan* indemnity from a negligent contractor when the shipowner is found liable under both negligence and unseaworthiness theories. Instead, comparative fault principles will apply. Knight v. Alaska Trawl Fisheries, Inc., 154 F.3d 1042, 1998 AMC 2710 (9th Cir.1998).

FN51 718 F.2d 1022, 1984 AMC 409 (11th Cir.1983).

FN52 Id. at 1027.

FN53 Id. at 1027-28.

FN54 See *Cooper* and *Campbell Industries,* supra n. 45.

FN55 In re Dearborn Marine Service, Inc., 499 F.2d 263, 1975 AMC 1850 (5th Cir.1974), rehearing denied 512 F.2d 1061, 1975 AMC 1886 (5th Cir.1975); Thibodeaux v. Texas Eastern Transmission Corp., 548 F.2d 581 (5th Cir.1977); Gator Marine Serv. Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096, 1100, 1984 AMC 1927 (5th Cir.1981). See especially Hardy v. Gulf Oil Corp., 949 F.2d 826

Case 1:03-cv-00009   Document 123   Filed 11/26/2004   Page 17 of 19

(5th Cir.1992).

FN56 *Concordia TADJ* and Hardy v. Gulf Oil Corp., 949 F.2d 826 (5th Cir.1992).

FN57 Cooper v. Loper, 923 F.2d 1045, 1991 AMC 1032 (3d Cir.1991); Oglebay Norton Co. v. CSX Corp., 788 F.2d 361, 1987 AMC 71 (6th Cir.1986); Campbell Indus., Inc. v. Offshore Logistics International, Inc., 816 F.2d 1401, 1989 AMC 100 (9th Cir.1987).

FN58 See Stranahan v. A/S Atlantica & Tinfos Papirfabrik, 521 F.2d 700, 703 (9th Cir.1975) (per curiam); Davis v. Chas. Kurz & Co., 483 F.2d 184, 187, 1974 AMC 1862 (9th Cir.1973); Flunker v. United States, 528 F.2d 239, 1978 AMC 2378 (9th Cir.1975). Compare Navieros Oceanikos v. S.T. Mobil Trader, 554 F.2d 43, 1977 AMC 739 (2d Cir.1977) [WWLP may be defeated by the shipowner's negligence]. Maritime Overseas Corp. v. Northeast Petroleum Indus., Inc., 706 F.2d 349 (1st Cir.1983) [negligence on the part of the shipowner precludes *Ryan* indemnity]; Phillips Petroleum Co. v. Stokes Oil Co., 639 F.Supp. 291 (W.D.Ky.1986), affirmed 863 F.2d 1250, 1994 AMC 601 (6th Cir.1988) [concurrent negligence precludes indemnity]; Verdin v. C & B Boat Co., 860 F.2d 150 (5th Cir.1988) [owner of a barge not entitled to *Ryan* indemnity because barge owner not free from fault].

FN59 Gator Marine Serv. Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096, 1984 AMC 1927 (5th Cir.1981); Agrico Chemical Co. v. M/V Ben W. Martin, 664 F.2d 85, 1985 AMC 563 (5th Cir.1981); Bosnor, S.A. v. Tug, L.A. Barrios, 796 F.2d 776, 1987 AMC 2956 (5th Cir.1986); Phillips Petroleum v. Stokes Oil Co., Inc., 863 F.2d 1250, 1994 AMC 601 (6th Cir.1988); Navieros Oceanikos v. S.T. Mobil Trader, 554 F.2d 43, 1977 AMC 739 (2d Cir.1977); Maurice Pincoffs Co. v. Dravo Mechling Corp., 697 F.Supp. 244 (E.D.La.1987).

FN60 See, e.g., Agrico Chemical Co. v. M/V Ben W. Martin, 664 F.2d 85, 93, 1985 AMC 563 (5th Cir.1981).

FN61 651 F.2d 1096, 1984 AMC 1927 (5th Cir.1981).

FN62 Id. at 1100. See also *Bass*, 749 F.2d at 1154; *Agrico Chemical*, 664 F.2d at 94; *Hercules, Inc.*, 765 F.2d at 1075. Bosnor, 796 F.2d at 776. *Navieros Oceanikos*, 554 F.2d at 43.

FN63 Dana Marine Serv., Inc. v. International Ship Repair and Marine Serv., Inc., 687 F.Supp. 565, 1988 AMC 2647 (S.D.Ala.1988) discusses the relevant jurisprudence. The warranty of workmanlike performance is applied to indemnify the shipowner for damage to cargo that occurred because of the stevedore's negligence. Continental Grain Co. v. Puerto Rico Maritime Shipping Authority, 755 F.Supp. 506 (D.P.R.1991), affirmed in part, reversed in part 972 F.2d 426, 1993 AMC 1578 (1st Cir.1992).

© 2004 West, a Thomson business

(2004)

ADMMARL § 5-8

END OF DOCUMENT

Copr. (C) 2004 West. No Claim to Orig. U.S. Govt. Works.

# CERTIFICATE OF SERVICE

I, SETH FORMAN, hereby declare under penalty of perjury of the laws of the Unites States, that on the 26 day of November, 2004, I caused to be served, via HAND DELIVERY ~~transmission,~~ a true and correct copy of **DEFENDANT WINZLER & KELLY CONSULTING ENGINEERS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON NINTH CAUSE OF ACTION (BREACH OF WARRANTY AGAINST WINZLER & KELLY)** upon Plaintiff and Defendants Counsel of record as follows:

> David Ledger, Esq.
> Carlsmith Ball LLP
> 134 West Soledad Avenue
> Bank of Hawaii Building, Suite 401
> P.O. Box BF
> Hagåtña, Guam 96932-5027
> Telefax: (671) 477-4375
>
> Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds
>
> Thomas C. Sterling, Esq.
> Klemm, Blair, Sterling & Johnson
> Suite 1008, Pacific News Building
> 238 Archbishop F.C. Flores Street
> Hagåtña, Guam 96910
> Telefax: (671) 472-4290
>
> Attorneys for Defendant Black Construction Company
>
> Thomas M. Tarpley, Esq.
> Law Office of Thomas M. Tarpley, Jr.
> 2nd Floor, American Life Building
> 137 Murray Boulevard
> Hagåtña, Guam 96910
> Telefax: (671) 472-4526
>
> Attorneys for Defendant
>     Engineering, Management & Planning Services Corporation

Dated this 26 day of November, 2004.

_Seth Forman_ (signature)

2003-08-041123-PL-M re warranty-REP BR 2.wpd