KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
AGANA, GUAM 96910
TELEPHONE 477-7857

By **THOMAS C. STERLING**

Attorneys for   *Defendant Black Construction Corporation*

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION and WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br><br><br>**REPLY MEMORANDUM OF DEFENDANT BLACK CONSTRUCTION CORPORATION IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO DISMISS** |

## PRELIMINARY STATEMENT

The Plaintiff, S.J. Gargrave Syndicate at Lloyds (hereinafter "Gargrave") has filed a number of different documents opposing Black Construction Corporation's (hereinafter "Black") motions. These include its Objection to Hearing Date, the Declaration of Forrest Booth, an Opposition to Black's Motion for Partial Summary Judgment, and an Opposition

pertaining to motions filed by all 3 Defendants.[1] For convenience, Black will respond to all of the arguments advanced in this one filing.

## I. OBJECTION TO STATEMENTS OF FACTS

Gargrave has made numerous factual assertions in all of its documents and the vast majority of these "facts" are not supported by any citations to the facts of record. Moreover, many of them are simply wrong. As such, Black respectfully objects to the consideration of any of the "factual" statements asserted by Gargrave which are not supported by citations to the facts of record.[2]

## II. GARGRAVE IS NOT ENTITLED TO A RULE 56(f) CONTINUANCE

Gargrave filed this action on March 18, 2003 and the initial Scheduling Order entered by the Court on June 12, 2003 provided in the first paragraph of the Discovery Plan that lay witness depositions could "begin at once and be taken as needed". The pending motions were filed 16½ months after the deposition commencement date as provided for in the original Discovery Plan. Moreover, Gargrave has not indicated specifically what it believes that either Mr. Jose or Mr.

---

[1] None of the copies of any of the Opposition papers in Black's possession have been filed with the Court. Rather, Black was served unfiled copies by facsimile on Saturday, November 20, 2004 Guam time, which indicates that the documents were not served or filed by the November 19, 2004 due date under the Local Rules. Service of filed copies in accordance with F.R.C.P. Rule 5 has not yet been accomplished.

[2] Black will specifically address the most material misstatements hereinafter.

- 2 -

Bismonte will say at deposition which would assist it in opposing Black's motions which seek to dismiss a tort claim based upon the Economic Loss Doctrine, to dismiss the maritime implied warranty of workmanlike performance claim on strictly legal grounds and to limit any monetary recovery by Gargrave in accordance with basic legal principles applicable to subrogation claims.[3]

To the extent that Gargrave argues it needs to explore the relationship between Winzler & Kelly and Black at the job site itself, the Sterling Affidavit indicates that the Black Project Manager, Lito Gutierrez, has been deposed twice as a designated Rule 30(b)(6) witness in connection with separate depositions noticed by Gargrave and co-defendant EMPSCO. The Affidavit also indicates that the identity of Black's entire epoxy crew who installed the bolts at issue in this litigation was disclosed to Gargrave months ago in response to discovery requests and that Gargrave has taken no action to depose any of these people. If Gargrave really needs to know what occurred at the project site in terms of supervision, it should and could have noticed the deposition of these individuals and taken them months ago.

---

[3] Despite the fact that this case has been pending for a year and a half and substantial discovery has been performed, Gargrave contends in its papers that Mr. Jose is a management employee of Black and that Mr. Bismonte was the "site superintendent". As indicated in the Sterling Affidavit served and filed herewith, these factual allegations are incorrect.

- 3 -

Nowhere in Gargrave's papers does Gargrave explain why it has been unable to depose Mr. Jose or Mr. Bismonte over the last 16 months. In this regard, the record amply discloses that Gargrave has at various times been represented by Mr. Ledger of Carlsmith's Guam office, Mr. Smith of Carlsmith's Honolulu office, Ms. McDonald of Carlsmith's Guam office, and Mr. Booth of Cozen O'Connor in San Francisco. Obviously, there is no shortage of legal talent available to take a few depositions had Gargrave really believed that these depositions were critical to the presentation of its case.

The trial court is well within its discretion in refusing to grant a Rule 56(f) continuance when the party seeking the continuance can offer no explanation as to why it did not depose the allegedly critical witness on a prior occasion. See, Hauser v. Farrell, 14 F.3d 1338, 1340-1341 (9th Cir. 1994). It is well recognized in this Circuit that a party seeking a Rule 56(f) continuance does not carry its burden of proof by simply alleging that it needs to take a deposition because it might discover some facts to oppose a motion. As noted in Continental Maritime v. Pacific Coast Middle Trades, 817 F.2d 1391, 1395 (9th Cir. 1987):

> Ordinarily, summary judgment should not be granted when there are relevant facts remaining to be discovered, but the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact. (citation omitted). The mere hope that further

evidence may develop prior to trial is an insufficient basis for a continuance under Fed. R. Civ. P. 56(f).

Black respectfully submits that Gargrave has made a totally insufficient showing to justify a Rule 56(f) continuance and, as such, that the pending motions should be decided on the merits now.

### III. GARGRAVE HAS SUBROGATION RIGHTS ONLY

In its initial motion papers, Black cited substantial authority for the proposition that an insurer which settles a claim and becomes subrogated to its insured's rights is not entitled to recover anything more than it actually paid. Gargrave, in its opposition papers, has not disputed this legal position. Rather, Gargrave argues that a document entitled "LOSS AND SUBROGATION FORM" is actually an assignment authorizing Gargrave to pursue claims which it did not settle and which it did not pay for. This assertion is based solely upon the inclusion in the Loss and Subrogation Form of the word "assigns". This contention is supported only by a handful of factual assertions, all of which are unsupported by the record and most of which are simply wrong.

Initially, it must be noted that the simple use of the word "assign" in a subrogation agreement, without more, is hardly indicative of an intent on the part of the insured to convey to the insurer claims above and beyond those paid for by the

insurer. See generally, 16 Couch on Insurance 3d §222:54. As stated therein:

> The distinction between rights arising by virtue of an assignment and by way of subrogation is frequently obscured by defining one in terms of the other, in a manner which makes it difficult to tell whether the usage was an intentional recognition that the two theories are considered equivalent or an unintentional usage in a context where the usage was unimportant.

Or, as stated at 16 Couch on Insurance 2d §61:108:

> When the right of the insurer to subrogation is formalized by the execution of an express assignment of the claim against the tortfeasor, the status of the insurer is nevertheless that of a subrogee rather than an assignee.

Under such circumstances, the benefit to the insurer in obtaining an express assignment is that it need not prove the existence of facts justifying subrogation. Garrity v. Rural Mut. Ins. Co., 253 N.W.2d 512 (Wis. 1977)

Gargrave argues that the Loss and Subrogation Form was intended by the Port Authority of Guam (hereinafter "Port") to be an assignment of claims beyond the dolphin repair costs actually paid for[4] because it was "given as consideration for settlement of a claim" (Opp. to Black's Motion at p.8.) thereby entitling Gargrave to recover for "all uninsured damages suffered by the Port" (Opp. at p.5.) including lost rental, business interruption and other losses. (Opp. at p.7.).

---

4   Gargrave has presented no facts to show that the terms of the Subrogation Form were negotiated with the Port although the facts pertaining to negotiations, had they occurred, would clearly be in Gargrave's possession.

Gargrave's contention that it received an assignment in consideration for the payment of a claim is factually unsupportable. The Lloyds policy at issue in this case is attached as Exhibit "C" to the Sterling Affidavit Re Discovery Excerpts filed herein on October 28, 2004. That policy indicates in Condition 10 (Bates stamp no. 0783) that Gargrave is entitled under the policy to "be subrogated, to the extent of such payment". Thus, the policy provides Gargrave with routine subrogation rights _only_ and the assertion in Gargrave's papers that the policy somehow obligated the Port to assign any and all claims it might have to Gargrave in consideration for payment is factually unsupportable.

Similarly, Gargrave's unsupported factual assertion that the Port's "uninsured losses" had to be assigned to Gargrave is also incorrect. What Gargrave apparently fails to recognize is that the Port's policy actually covered _business interruption losses_. That coverage is included at the section of the policy entitled "SECTION III - GROSS EARNINGS BUSINESS INTERRUPTION EXTENSION" which is included as Bates no. 0787. Thus, Gargrave argues that the Port, pursuant to the Loss and Subrogation Form, assigned to it claims for millions of dollars of covered losses for which Gargrave paid _nothing whatsoever_ to the Port. This position simply defies logic.

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
236 ARCHBISHOP
F.C. FLORES ST
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

Gargrave has presented no evidence in connection with this motion sufficient to transform the Loss and Subrogation Form into an assignment allowing Gargrave to pursue claims otherwise owned by the Port which Gargrave never paid for.

It is also highly notable that neither Gargrave's original Complaint nor Gargrave's First Amended Complaint alleged that any of its claims were being pursued on the basis of an assignment. Rather, the original Complaint (¶10) and First Amended Complaint (¶16) both alleged, and the issues have been joined upon, the allegation that Gargrave is suing in subrogation. Gargraves' new theory that it is proceeding based on an assignment has never been pled and should not be at issue.

Black's motion to dismiss all claims except for dolphin repair costs not to exceed the $1,947,443 actually paid by Gargrave to the Port for that item should properly be granted.

### IV. THE ECONOMIC LOSS DOCTRINE BARS GARGRAVE'S TORT CLAIM

In its initial motion papers, Black cited a large number of cases from many jurisdictions standing for the proposition that an owner that retains a contractor pursuant to a written construction contract cannot pursue negligence claims for purely economic loss resulting from construction defects. Gargrave has not disputed that such correctly states the applicable law. Rather, Gargrave argues that the alleged failure of the piling to the dolphin connections during the earthquake resulted in

- 8 -

Case 1:03-cv-00009   Document 124   Filed 11/26/2004   Page 8 of 11

damage to other Port Authority property which Black did not work on including "pipelines, electrical lines, water lines, fire mains, catwalks, manifolds and other equipment." (Plaintiff's Opposition to Black Construction Corporation's Motion at page 9).

The alleged factual basis for this other damage assertion is Peter MacLeod's Report No. 5 which was purportedly included as part of Exhibit "A" to the Booth Declaration. No such report is included in Exhibit "A". What apparently is being referred to is more likely a section of the Young Adjustment Company earthquake claim prepared for the Port which was also attached as Exhibit "D" to the Sterling Affidavit filed herein on October 28, 2004.

While that document does reflect <u>earthquake damage</u> to property other than the F1 dolphins, it does not support the apparent allegation that the failure of the piling to pile cap connections during the earthquake damaged any of this other property. If it is Gargrave's contention that a pile cap from one of the dolphins came loose during the earthquake, flew through the air and landed on the F1 pier damaging waterlines, pipelines and electrical lines, it needs to have some competent evidence to establish that this occurred. No such facts have been presented because no such facts exist.

The only damage to the Port as a result of the purported failure[5] of the piling to dolphin connections was to the dolphin structures themselves. The economic loss doctrine bars the assertion of a tort claim.

## V. THE MARITIME WARRANTY OF WORKMANLIKE PERFORMANCE IS NOT APPLICABLE

Black does not dispute that its contract with the Port included an express warranty of workmanlike performance and that a failure to perform the work in a workmanlike fashion would be a breach of the contract. Rather, Black disputes that its contract included an "implied" (First Amended Complaint, ¶33) <u>maritime</u> warranty of workmanlike performance since the maritime warranty has different ramifications than the standard construction contract warranty. Black hereby incorporates and relies upon the argument and authorities presented in Winzler and Kelly's Reply Brief pertaining to the inapplicability of the <u>maritime</u> warranty.

## VI. CONCLUSION

For all of the foregoing reasons, Black respectfully submits that Gargrave's claims for loss of future pier rental, diminution of pier value and sue and labor should be dismissed with prejudice. Gargrave's First and Fifth Causes of Action for negligence and breach of the warranty of workmanlike performance

---

5 Black's structural expert has opined that the damage to the dolphins for which Lloyd's paid was berthing damage, not earthquake damage.

1  should also be dismissed pursuant to a partial summary judgment
2  since they fail factually and legally.
3      **RESPECTFULLY SUBMITTED** this 26th day of November, 2004.

**KLEMM, BLAIR, STERLING & JOHNSON**
A PROFESSIONAL CORPORATION

BY: _[signature]_
**THOMAS C. STERLING**
*Attorneys for Defendant Black Construction Corporation*

E62\27946-29
G:\WORD97\OFFICE\WORDDOC\PLD\TCS\200-REPLY MEMO IN SUPP OF
MTN TO DISMISS RE GARGRAVE V BLACK ET AL.DOC

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857