BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
503 Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 499-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S, | Civ. No. CIV 03-0009 |
| Plaintiff, | DEFENDANT WINZLER & KELLY CONSULTING ENGINEERS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON SECOND CAUSE OF ACTION (NEGLIGENCE AGAINST WINZLER & KELLY); CERTIFICATE OF SERVICE |
| vs. | |
| BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP., | |
| Defendants. | Date: December 3, 2004<br>Time: 9:00 a.m.<br>Judge: Hon. A. Wallace Tashima<br>Senior Circuit Judge |

### Introduction.

The plaintiff Syndicate has sued Winzler & Kelly for its supposed negligence in performing the terms of a contract with Black Construction to design repairs to the concrete piles and dolphins of Pier F-1 in the Port of Guam.[1] The damage alleged "was done to F pier and the dolphins thereof" – i.e., to the subject matter of the contract itself. See First Amended Complaint at paragraph 15. No damage was alleged to have been done to any property other than the pier and dolphins as a result of Winzler & Kelly's supposed negligence, nor was any person alleged to have been injured by reason thereof.

Accordingly, Winzler & Kelly moved for judgment on the pleadings on the negligence claim, on the ground that the Economic Loss Doctrine precludes recovery in tort for breaches of contract, in

---

[1] The Syndicate is subrogee of the Port Authority of Guam, which was the original third-party beneficiary of the design contract between Winzler & Kelly and Black.

- 1 -

situations where no damage is sustained by any persons or other property beside the item contracted for. The Syndicate attempts to oppose this motion by arguing that the Economic Loss Doctrine applies only between parties in contractual privity, not in a situation such as this case presents, where the plaintiff did not contract directly with the defendant, but is rather the third-party beneficiary of a contract between the defendant and a third party. Its arguments are unavailing.

### The "Background Facts" Are Inapt, Objectionable and Inaccurate.

The Syndicate begins its Opposition with a lengthy section of so-called "Background Facts." See Opposition at pages 2-4. In a motion for judgment on the pleadings, however, the facts are to be taken as pleaded in the complaint, not as elaborated, glossed, augmented, and supplemented in a brief – particularly when this is done without any evidentiary support. Winzler & Kelly has already filed with the court its Objections To Factual Assertions Made in Plaintiff's Opposition Briefs Which Are Unsupported By Any Evidence. It adds here the objection that for purposes of this motion for judgment on the pleadings, *no* factual assertions extraneous to the pleadings should be considered. See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990).

### The Syndicate Ignores Winzler & Kelly's Cases

Winzler & Kelly anticipated that the Syndicate might attempt to distinguish this case on the ground that a third-party beneficiary is involved, and therefore took care to address the issue in its opening brief, citing authority for the proposition that the Economic Loss Doctrine "also applies where the would-be plaintiff in tort is a third-party beneficiary to the contract rather than one of the immediate contracting parties." Winzler & Kelly's Opening Memorandum in Support of this Motion, at page 6-7 (citing Shipping Corp. of India, Ltd. v. American Bureau of Shipping, 744 F.Supp. 447, 449 (S.D.N.Y. 1990); The Ocean Ritz of Daytona Condominium v. GGV Associates, Ltd., 710 So.2d 702, 702 (Fla. App. 1998); Sensenbrenner v. Rust, Orling & Neal, Architects, Inc., 374 S.E.2d 55 (Va. 1988)). The Syndicate, however, does not so much as address any of these cases. (Indeed, it would appear from the Syndicate's inaccurate claims that "Winzler failed to inform this Court that there is a lack of privity between the Port and Winzler" (Opposition at page 8), and that "in all of the cases it [Winzler] cites which discuss the

- 2 -

Economic Loss Doctrine, the parties were in contractual privity" (id.), that the Syndicate somehow neglected even to read that page of Winzler & Kelly's opening brief.)

### Saratoga Fishing Does Not Hold What the Syndicate Claims

Instead of attempting to refute, distinguish, or otherwise deal with Winzler & Kelly's cited authority, the Syndicate instead relies entirely on the U.S. Supreme Court's decision in Saratoga Fishing Company v. J.M. Martinac & Co., 520 U.S. 875 (1997). The reliance is misplaced. Saratoga Fishing does not hold that the Economic Loss Doctrine is inapplicable in a third-party beneficiary situation. It does not hold that privity is required. It holds only that items added to the original product are not part of the "product itself" as that term is used in the context of the Economic Loss Doctrine:

> Our holding merely maintains liability, for *equipment added* after the initial sale, despite the presence of a resale by the Initial User.

520 U.S. at 884 (emphasis in original). Thus, for example, if the Port Authority had erected a crane on the dolphins after they were built, or a satellite dish, or a snack bar, these things would not be part of the product itself, and Winzler & Kelly could be sued in negligence for damage resulting to them.[2] The question of what *property* is within the scope of the Doctrine, however, is altogether separate and distinct from the question of what *parties* may invoke the Doctrine.

The Syndicate's contention that, where there is lack of privity, "**admiralty's tort rules permit recovery**," Opposition at page 7 (emphasis added by the Syndicate), is highly misleading. The actual quote from Saratoga Fishing is as follows:

> We conclude that it is "other property." Hence (assuming other tort law requirements are satisfied) admiralty's tort rules permit recovery.

520 U.S. at 877.[3] The Court's holding, in other words, was that "admiralty's tort rules permit recovery"

---

[2] Faced with this motion, the Syndicate now asserts for the first time that it is claiming for damage to such "other property," but by the terms of its own complaint, it is not. See discussion *infra* at page 6-7.

[3] The Syndicate's brief mistakenly locates the quote on page 887.

- 3 -

in that case because the property for which recovery was sought was "other property," rather than the "product itself" – *not* because of the lack of contractual privity between the parties. The parties to Saratoga Fishing did not even dispute that the ship as originally manufactured and sold, as opposed to the equipment that was later added to it, constituted "the product itself" within the meaning of the Economic Loss Doctrine, notwithstanding the lack of privity. 520 U.S. at 877.

**The Concerns of the Saratoga Fishing Court Do Not Exist In This Case.**

The Saratoga Fishing Court did state that the rationale for the Economic Loss Doctrine set out in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986) -- that "the parties can contract for appropriate sharing of the risks of harm" -- is "not as satisfactory" in the case of a subsequent user, because "the Subsequent User does not contract directly with the manufacturer." Saratoga Fishing, 520 U.S. at 882. This is the passage that the Syndicate now seeks to construe as imposing an absolute requirement of privity for the application of the Economic Loss Doctrine.

However, if Saratoga Fishing had really held the Economic Loss Doctrine does not apply in a every non-privity situation, it would have needed to overrule East River itself, since, as the Syndicate aptly points out on page 5 of its Opposition, the parties in East River itself – the landmark case in which the United States Supreme Court unanimously endorsed the Economic Loss Doctrine, sparking the near-universal acceptance of the Doctrine in state courts across the United States today – were not in contractual privity. The defendant Transamerica Delaval was, like Winzler & Kelly here, a subcontractor on a construction project -- specifically, the construction of a ship. The plaintiff East River Steamship Corp. was not even, like the Port Authority, the owner of the completed project, but only the charterer of the ship from the owner. The parties were thus even further from contractual privity in East River than in this case – yet those are the facts on which the Supreme Court chose to adopt and apply the Economic Loss Doctrine, and plainly, Saratoga Fishing did not overrule East River.

Nor are the reasons which prompted the Saratoga Fishing Court to describe the East River rationale as "not as satisfactory" in the case of a subsequent user present in the quite distinguishable case of a third-party beneficiary. To begin with, and notwithstanding the Syndicate's assertion to the contrary,

- 4 -

a third-party beneficiary is not "a plaintiff [who] must sue a defendant in tort because it is not in contractual privity with the defendant." Opposition at page 7. On the contrary, a breach of contract claim is available to a third party beneficiary just as it is to a contracting party, and indeed the Syndicate has raised such a claim in this case.[4]

Also, the Port Authority -- like the charterer in EastRiver but unlike the subsequent user in Saratoga Fishing -- was in a position to influence the terms of the third-party beneficiary contract, and the extent to which it could claim liability in the event of breach. In its contract with the prime contractor Black, for example, it could negotiate the terms on which Black could employ the services of subcontractors such as Winzler & Kelly. The Port could reserve for itself, or for its designated engineer, the authority to review and approve any such subcontractor's design or work. A powerful, potentially "hands-on" third-party beneficiary of this type is not analogous to the remote buyer of Saratoga Fishing.

Finally, the Court in Saratoga Fishing was concerned with the fact that a mere sale could reduce the scope of liability from what it had been previously. That concern does not arise here either. Application of the Economic Loss Doctrine to third party beneficiaries would not "immunize" Winzler & Kelly "to an even greater extent from the liability for foreseeable physical damage that would otherwise fall on it." Cf. Saratoga Fishing, 520 U.S. at 881. That much is evident if we disregard, for the moment, the third party beneficiary aspect of the case, and hypothesize instead that Winzler & Kelly were being sued directly by Black, with whom it was in privity of contract. The Economic Loss Doctrine would insulate Winzler & Kelly from liability in tort to Black for the loss of the value of the pier and dolphins. Winzler & Kelly is likewise insulated from the same liability where the plaintiff is the third-party beneficiary, the Port

---

[4] Winzler & Kelly, by separate motion, seeks judgment in its favor on that claim as well, but on the merits of it (specifically lack of causation), not on the ground that such a claim is unavailable to the Syndicate as a matter of law.
   Indeed, causation being a prerequisite to liability for negligence as well as for breach of contract, the Syndicate's negligence claim against Winzler & Kelly would fail for the same reasons set forth in their Motion for Summary Judgment on the Fifth Cause of Action (breach of contract), even if such claim were not barred as a matter of law by the Economic Loss Doctrine.

- 5 -

Authority, or its subrogee, the Syndicate. It is insulated to an equal extent – not to a greater extent.

### The Syndicate's Attacks On Winzler & Kelly's Cases Are Off the Mark

The Syndicate takes issue with Winzler & Kelly's citations to <u>Lee v. TAC International Constructors, Inc.</u>, CNMI Superior Ct. Civ. No. 96-349 (Order of July 2, 1997), and <u>Employers Insurance of Wausau v. Suwannee River Spa Lines, Inc.</u>, 866 F.2d 752 (5th Cir. 1989). See Opposition at page 7-9. The Syndicate is correct that the parties in <u>Lee v. TAC</u> were in contractual privity, but the case is not cited for that point. It is cited to illustrate the widespread acceptance of the Economic Loss Doctrine generally, including in the only US-affiliated jurisdiction immediately neighboring Guam, the Commonwealth of the Northern Mariana Islands. As for <u>Wausau</u>, even the Syndicate recognizes that it is cited "for the proposition that <u>East River</u> applies also where professional services are an integral part of the manufacture of a product" – a proposition that the Syndicate does not dispute. Opposition at page 8-9. Why criticize it, then, for not also addressing some other point for which it was not cited in the first place? As for <u>Wausau</u> not being a maritime case, Winzler & Kelly have already pointed out "the Economic Loss Doctrine should apply whether we regard this as an admiralty or a diversity matter." Opening Memorandum in Support of this Motion, at page 6.[5]

### Only Damage to the Pier and Dolphins is Alleged

The Syndicate accuses Winzler & Kelly of giving only a partial quotation from the complaint. See Opposition at page 9. Let us leave aside for the moment the fact that the Syndicate are a fine bunch to be talking about "partial quotation," given their own evident relish for the practice.[6] The fact is that Winzler & Kelly's quotation from the complaint is accurate. The Syndicate, after mentioning "property and facilities owned by the Port Authority," does not then go on to define this as, "the piers, dolphins, pipelines, electrical

---

[5] The Syndicate assumes a little too readily that a contract to design a dock must necessarily be a maritime contract, despite acknowledging that a contract to build a ship is not one.

[6] See discussion of their misleading partial quote from <u>Saratoga Fishing</u>, above, as well as their if anything, even more misleading partial quotes in their Opposition to Winzler & Kelly's motion for judgment on their warranty claim.

- 6 -

lines, water lines, fire mains, catwalks, manifolds and other equipment." See First Amended Complaint at paragraph 15. It does not even say, "for example the piers and dolphins," or "including but limited to the pier and dolphins." It says, "*Specifically*, serious damage was done to F pier and the dolphins thereof." In other words, the Syndicate, in its own complaint, defines the damaged "property and facilities" as the pier and dolphins – no more and no less. If the Syndicate were seeking to hold Winzler & Kelly liable for damage to other property – "a great deal more than just the F-1 dolphins" (Opposition at 10) – they should have said so in their complaint. They did not, and cannot be heard to say it now. Judgment on the pleadings is for the pleadings as they stand.[7] Finally, even if the Syndicate had alleged damage to "other property," the Economic Loss Doctrine would limit tort liability to the damage to that property only. See Saratoga Fishing.

### Conclusion

Because the Economic Loss Doctrine, as demonstrated by the landmark East River case itself, and not contradicted by anything in Saratoga Fishing, does not require privity of contract, and is fully available as a defense to the negligence claim of a third-party beneficiary to a contract for damages allegedly resulting from a breach of that contract, judgment on the pleadings should be granted in Winzler & Kelly's favor as to the Second Cause of Action in this matter.

Respectfully submitted this 26th day of November, 2004.

>BERMAN O'CONNOR MANN & SHKLOV
>Attorneys for Defendant
>Winzler & Kelly Consulting Engineers
>
>By: /s/ Seth Forman
>Seth Forman for
>Daniel J. Berman/Robert J. O'Connor

---

[7] Although this motion should be decided on the pleadings, without reference to any extrinsic facts, it does bear mention that the Syndicate presents no evidence: a) that any of the "facilities" it mentions (such as pipelines) actually ran out to the dolphins; b) that any of them that may have run out to the dolphins were actually damaged; or c) that any damage any of them may have sustained was caused by the repairs to the dolphins, as opposed to directly by the force of the earthquake.

- 7 -

# CERTIFICATE OF SERVICE

I, _SETH FORMAN_, hereby declare under penalty of perjury of the laws of the Unites States, that on the _26_ day of November, 2004, I caused to be served, via _HAND DELIVERY_ transmission, a true and correct copy of **DEFENDANT WINZLER & KELLY CONSULTING ENGINEERS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON SECOND CAUSE OF ACTION (NEGLIGENCE AGAINST WINZLER & KELLY)** upon Plaintiff and Defendants Counsel of record as follows:

> David Ledger, Esq.
> Carlsmith Ball LLP
> 134 West Soledad Avenue
> Bank of Hawaii Building, Suite 401
> P.O. Box BF
> Hagåtña, Guam 96932-5027
> Telefax: (671) 477-4375
>
> Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds
>
> Thomas C. Sterling, Esq.
> Klemm, Blair, Sterling & Johnson
> Suite 1008, Pacific News Building
> 238 Archbishop F.C. Flores Street
> Hagåtña, Guam 96910
> Telefax: (671) 472-4290
>
> Attorneys for Defendant Black Construction Company
>
> Thomas M. Tarpley, Esq.
> Law Office of Thomas M. Tarpley, Jr.
> 2nd Floor, American Life Building
> 137 Murray Boulevard
> Hagåtña, Guam 96910
> Telefax: (671) 472-4526
>
> Attorneys for Defendant
>     Engineering, Management & Planning Services Corporation

Dated this _26_ day of November, 2004.

_____Seth Forman_____

2003-08-041122-PL-M re economic loss doctrine-REP BR.wpd