CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



FILED
DISTRICT COURT OF GUAM

FEB 11 2005

MARY L.M. MORAN
CLERK OF COURT

134

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>　　　　　Defendants. | CIVIL CASE NO. CV03-00009<br><br>**SUGGESTION OF MOOTNESS AND REQUEST TO DISMISS OR HOLD PENDING MOTIONS IN ABEYANCE; EXHIBIT "A"; DECLARATION OF SERVICE** |

/ / /

/ / /

/ / /

## I.    INTRODUCTION.

Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff")

hereby suggests to the Court, based upon new case law, that certain motions filed herein by the

Defendants are now either moot or not ripe for decision by this Court.  Specifically, the motions

are Defendant Black Construction Corporation's Motions for Partial Summary Judgment or,

Alternatively, to Dismiss, filed herein on October 28, 2004, and Defendant Winzler & Kelly

Consulting Engineers' Motion For Judgment On The Pleadings On Second Cause Of Action

(Negligence), filed herein on November 2, 2004.  For the reasons explained below, these motions

should either be dismissed as moot or held in abeyance pending further instructions or Orders

from the Court in regard to additional briefing.

## II.    INTERVENING LAW; AMENDED COMPLAINT.

On December 23, 2004, the California Supreme Court decided Robinson

Helicopter Co. v. Dana Corp., 34 Cal.4th 979 (2004).  A copy is attached, as Exhibit "A", for the

convenience of the Court.  The decision in Robinson bears directly on and undermines the

foundation for Defendants' pending motions.  Specifically, Robinson sweeps away Defendants'

arguments to limit damages and dismiss certain claims based on the so-called "economic loss

rule".

In Robinson the Court held that the economic loss rule does not bar tort recovery

in a breach of contract case.  Id., at 985.  In particular, the Court held that the economic loss rule

does not bar claims for damages caused by fraud and intentional misrepresentation, including

punitive damages, because such torts are independent of breaches of contract.  Id., at 991.

Though Robinson is not authority this Court must follow, in the absence of

controlling Guam case law, California cases are deemed persuasive authority in the Guam courts.

See, Roberto v. Aguon, 519 F.2d 754 (9th Cir. 1975).

Based on <u>Robinson</u>, Plaintiff will shortly file a motion for leave to amend the Complaint herein. The amended complaint will state claims for fraud, misrepresentation and punitive damages.

## III.   CONCLUSION

<u>Robinson</u> is intervening law bearing directly on key issues now before the Court by way of Defendants' motions. At best, <u>Robinson</u> undermines the motions entirely. At the least, <u>Robinson</u> is reason enough to hold the motions in abeyance pending further briefing on whether or not the economic loss rule applies in this case. Accordingly, Plaintiff hereby requests that the Court deny, dismiss or hold Defendants' motions in abeyance.

DATED: Hagåtña, Guam, February 11, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

Service: Get by LEXSEE®
Citation: 34 cal. 4th 979

*34 Cal. 4th 979, \*; 102 P.3d 268, \*\*;*
*22 Cal. Rptr. 3d 352, \*\*\*; 2004 Cal. LEXIS 12219*

ROBINSON HELICOPTER COMPANY, INC., Plaintiff and Respondent, v. DANA CORPORATION, Defendant and Appellant.

S114054

SUPREME COURT OF CALIFORNIA

34 Cal. 4th 979; 102 P.3d 268; 22 Cal. Rptr. 3d 352; 2004 Cal. LEXIS 12219; 2004 Cal Daily Op. Service 11271

December 23, 2004, Filed

**SUBSEQUENT HISTORY:** Time for Granting or Denying Rehearing Extended Robinson Helicopter Co v. Dana Corp., 2005 Cal. LEXIS 805 (Cal., Jan. 11, 2005)

**PRIOR HISTORY:** Superior Court of Los Angeles County, No. YC036795, Jean E Matusinka, Judge. Court of Appeal, Second Dist, Div. Five, No. B150963.

Robinson Helicopter Co. v. Dana Corp., 105 Cal. App. 4th 749, 129 Cal. Rptr. 2d 682, 2003 Cal. App. LEXIS 101 (Cal. App. 2d Dist., 2003)

**DISPOSITION:** Reversed and remanded for further proceedings.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff helicopter manufacturer filed an action against defendant manufacturer, alleging breach of contract, breach of warranty, and negligent and intentional misrepresentation. A jury found in favor of plaintiff, awarding it compensatory and punitive damages. The Court of Appeal of California, Second Appellate District, Division Five, reversed the judgment in part, holding that the economic loss rule barred tort recovery. Plaintiff appealed.

**OVERVIEW:** Plaintiff's helicopters used sprag clutches manufactured by defendant. Plaintiff's misrepresentation and fraud claims were based on defendant's provision of false certificates of conformance. The jury found that defendant had made false misrepresentations of fact and had knowingly misrepresented or concealed material facts with the intent to defraud. On review, the court of appeal applied the economic loss rule and held that because plaintiff suffered only economic losses, it could not recover in tort. On further appeal, the court reversed, holding that the economic loss rule did not bar plaintiff's fraud and intentional misrepresentation claims because they were independent of defendant's breach of contract. The court stated that but for defendant's affirmative misrepresentations by supplying the false certificates of conformance, plaintiff would not have accepted delivery and used the nonconforming clutches over the course of several years, nor would it have incurred the cost of investigating the cause of the faulty clutches. Accordingly, defendant's tortious conduct was separate from the breach itself, which involved defendant's provision of the nonconforming clutches.

**EXHIBIT A**

**OUTCOME:** Because the court of appeal erred by applying the economic loss rule to plaintiff, the court reversed and remanded for proceedings consistent with its opinion and for consideration of other issues raised below but not addressed by the court of appeal.

**CORE TERMS:** economic loss, clutch, misrepresentation, certificate, breach of contract, sprag, manufacturer, tortious, tort liability, helicopter, hardness, personal injury, duty, conformance, consumer, punitive damages, manufactured, independent tort, tort recovery, replacement, contractual, warranty, deceit, intentional misrepresentation, contract law, tort law, specifications, dis, property damage, conc

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Torts > Damages > Damages Generally 🔧

Torts > Products Liability > Negligence 🔧

*HN1* The economic loss rule in some circumstances bars a tort action in the absence of personal injury or physical damage to other property. More Like This Headnote

Torts > Damages > Damages Generally 🔧

Torts > Products Liability > Negligence 🔧

*HN2* Economic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits--without any claim of personal injury or damages to other property. Simply stated, the economic loss rule provides: Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts. The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise. Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other. More Like This Headnote

Torts > Damages > Damages Generally 🔧

Torts > Products Liability > Negligence 🔧

*HN3* The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. The nature of this responsibility means that a manufacturer can appropriately be held liable for physical injuries (including both personal injury and damage to property other than the product itself), regardless of the terms of any warranty. But the manufacturer cannot be held liable for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. More Like This Headnote

Torts > Damages > Damages Generally 🔧

Torts > Products Liability > Negligence 🔧

Torts > Products Liability > Strict Liability 🔧

*HN4* Recovery under the doctrine of strict liability is limited solely to physical harm to

person or property. Damages available under strict products liability do not include economic loss, which includes damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits--without any claim of personal injury or damages to other property. In summary, the economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to "other property," that is, property other than the product itself. The law of contractual warranty governs damage to the product itself. The economic loss rule has also been applied to negligence actions. More Like This Headnote

Contracts Law > Breach > Causes of Action 📖

Torts > Negligence > Duty > Duty Generally 📖

**HN5**⚡A party's contractual obligation may create a legal duty and a breach of that duty may support a tort action. Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. More Like This Headnote

Contracts Law > Breach > Causes of Action 📖

Insurance Law > Claims & Contracts > Good Faith & Fair Dealing 📖

Torts > Business & Employment Torts > Deceit & Fraud 📖

Torts > Business & Employment Torts > Wrongful Termination 📖

Torts > Negligence > Duty > Duty Generally 📖

**HN6**⚡Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; or where the contract was fraudulently induced. In each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm. When one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort. More Like This Headnote

Contracts Law > Breach > Causes of Action 📖

Torts > Business & Employment Torts > Deceit & Fraud 📖

Torts > Intentional Torts > Conversion 📖

Torts > Negligence > Duty > Duty Generally 📖

**HN7**⚡Generally, outside the insurance context, a tortious breach of contract may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages. Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated. If every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies. More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud 📖

**HN8**⚡The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. More Like This Headnote

Torts > Products Liability > Negligence 📖

*HN9* ✚ The economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry; not to reward malefactors who affirmatively misrepresent and put people at risk. <u>More Like This Headnote</u>

<u>Contracts Law</u> > <u>Breach</u> > <u>Causes of Action</u> 🕮

<u>Torts</u> > <u>Business & Employment Torts</u> > <u>Deceit & Fraud</u> 🕮

*HN10* ✚ Courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies. Similarly, courts should be careful to apply tort remedies only when the conduct in question is so clear in its deviation from socially useful business practices that the effect of enforcing such tort duties will be to aid rather than discourage commerce. In pursuing a valid fraud action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future. Because of the extra measure of blameworthiness inhering in fraud, and because in fraud cases the court is not concerned about the need for predictability about the cost of contractual relationships, fraud plaintiffs may recover "out-of-pocket" damages in addition to benefit-of-the bargain damages. In addition, California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices. Simply put, a contract is not a license allowing one party to cheat or defraud the other. <u>More Like This Headnote</u>

<u>Torts</u> > <u>Business & Employment Torts</u> > <u>Deceit & Fraud</u> 🕮

*HN11* ✚ A breach of contract remedy assumes that the parties to a contract can negotiate the risk of loss occasioned by a breach. When two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law. However, a party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract. No rational party would enter into a contract anticipating that they are or will be lied to. While parties, perhaps because of their technical expertise and sophistication, can be presumed to understand and allocate the risks relating to negligent product design or manufacture, those same parties cannot, and should not, be expected to anticipate fraud and dishonesty in every transaction. <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Pleading & Practice</u> > <u>Pleadings</u> > <u>Heightened Pleading Requirements</u> 🕮

<u>Torts</u> > <u>Business & Employment Torts</u> > <u>Deceit & Fraud</u> 🕮

*HN12* ✚ In California, fraud must be pled specifically; general and conclusory allegations do not suffice. Thus, the policy of liberal construction of the pleadings will not ordinarily be invoked to sustain a pleading defective in any material respect. This particularity requirement necessitates pleading facts which show how, when, where, to whom, and by what means the representations were tendered. <u>More Like This Headnote</u>

◆ Show Headnotes / Syllabus

**COUNSEL:** Orrick, Herrington & Sutcliffe, Edwin V. Woodsome, Jr., D. Barclay Edmundson; Howrey Simon Arnold & White, David G. Meyer, Michael L. Resch; Bowman and Brooke,

Case 1:03-cv-00009    Document 144    Filed 02/11/2005    Page 7 of 22

Lawrence R. Ramsey; Cardelli, Hebert & Lanfear and Thomas G. Cardelli for Defendant and Appellant.

Quinn Emanuel Urquhart Oliver & Hedges, Fred G. Bennett, Robert J. Becher and Sarah J. Cole for Northrop Grumman Corporation and The California Manufacturers & Technology Association as Amici Curiae on behalf of Defendant and Appellant.

Greines, Martin, Stein & Richland and Robert A. Olson for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Appellant.
 **[\*984]**
Deborah J. La Fetra and Timothy Sandefur for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Appellant.

Tim A. Goetz; Waller Lansden Dortch & Davis, Raymond E. Hane III; and Edward J. Horowitz for Plaintiff and Respondent.

Kaye Scholer, George T. Caplan, Steven Rosenthal and Julian Brew for EADS Astrium, S.A.S. and EADA Astrium, Ltd., as Amici Curiae on behalf of Plaintiff and Respondent.

Parker, Milliken, Clark, O'Hara & Samuellan and Brenton F. Goodrich for California State Association of Counties and Los Angeles County Metropolitan Transportation Authority as Amici Curiae on behalf of Plaintiff and Respondent.

James C. Sturdevant for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.

Lieff, Cabraser, Heimann & Bernstein, Elizabeth J. Cabraser, Jonathan D. Selbin and Lisa J. Leebove as Amici Curiae on behalf of Plaintiff and Respondent.

Milberg Weiss Bershad Hynes & Lerach, Eric A. Isaacson, Pamela M. Parker, Kevin K. Green; Hagens Berman and Kevin P. Roddy for National Association of Shareholder and Consumer Attorneys as Amicus Curiae on behalf of Plaintiff and Respondent.

**JUDGES:** Brown, J., with George, C. J., Kennard, Baxter, Chin, and Moreno, JJ., concurring. Dissenting opinion by Werdegar, J.

**OPINIONBY:** BROWN

**OPINION: [\*\*\*355]  [\*\*270]  BROWN, J.--**$^{CA(1)}$**(1)** In this case, we decide whether $^{HN1}$the economic loss rule, which in some circumstances bars a tort action in the absence of personal injury or physical damage to other property, applies to claims for intentional misrepresentation or fraud in the performance of a contract. $^{CA(2)}$**(2)** Because plaintiff Robinson Helicopter Company, Inc.'s (Robinson) fraud and intentional misrepresentation claim, with respect to Dana Corporation's (Dana) provision of false certificates of conformance, is an independent action based in tort, we conclude that the economic loss rule does not bar tort recovery. **[\*985]**

### Facts

The underlying facts are undisputed and largely immaterial to this question of law. We therefore adopt our statement of facts from that of the Court of Appeal. n1

- - - - - - - Footnotes - - - - - - - - -

n1 Brackets together, in this manner [] without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than publisher's added parallel citations), are unless otherwise indicated, used to denote our insertions or additions.

### End Footnotes-

Robinson is a manufacturer of helicopters. Its R22 model is a two-seat helicopter used as a primary trainer for pilots. The R44 model is a heavier model used for a wide variety of purposes. Both of these models use sprag clutches manufactured from Dana's Formsprag division. The sprag clutch on a helicopter functions like the "free wheeling" clutch mechanism on a bicycle where the rider transmits power to the rear wheel by operating the pedals, but when the rider stops pedaling, the wheel continues to rotate. A sprag clutch is primarily a safety mechanism. If a helicopter loses power during flight, the sprag clutch allows the rotor blades to continue turning and permits the pilot to maintain control and land safely by the "autorotating" of the rotor blades. [n2] [P] [] At all relevant times, Dana's Formsprag division was the only manufacturer of the sprag clutches that Robinson required for its R22 and R44 helicopters.

### Footnotes -

n2 Robinson emphasizes that this is particularly important for the R22 model. Since it is used as a trainer, it engages in autorotation on a regular basis. A properly functioning sprag clutch is vital to the performance of this critical safety function.

### - End Footnotes-

All aircraft manufacturers in the United States, including Robinson, must obtain a "type certificate" from the Federal Aviation Administration (FAA). The type certificate freezes the design as of the date the certificate is issued. Every aircraft made pursuant to the certificate must be produced exactly in accordance with that certificate. Any proposed changes must first be submitted to and approved by the FAA. The components of the sprag clutch must be ground to precise tolerances, measured in thousandths of an inch, to avoid distortions that lead to cracking and failure. Pursuant to the type certificate issued to Robinson by the FAA for the R22 and R44 models, the parts of the sprag clutches, including the sprag ears, were required to be ground at a particular level of hardness to assure their metallurgical integrity. The *required* level of hardness of the R22 and the R44 clutches, pursuant to the **[\*\*271]** type certificates, was described as "50/55 Rockwell" (50/55).

Between 1984 and July 1996, Robinson purchased 3,707 sprag clutches from Dana. Each was ground to the required 50/55 level of hardness. There were only three incidents of cracking or failure of these sprag ears, a rate of **[\*986]** 0.03 percent. In July 1996, Dana changed its grinding process to a higher, "61/63 Rockwell" (61/63) level of hardness. Dana did not notify Robinson **[\*\*\*356]** or the FAA of this change.[n3] After such change was made in the grinding process, Dana nonetheless continued to provide written certificates to Robinson with each delivery of clutches that the clutches had been manufactured in conformance with Robinson's written specifications (which specifications prohibited unapproved changes in Dana's manufacturing process).[]

### - Footnotes

n3 It would appear that Robinson makes no claim in this case that Dana had any fraudulent

intent in changing its grinding standard. []

End Footnotes-

In October 1997, again without notifying either Robinson or the FAA, Dana changed its grinding process back to the 50/55 level of hardness that was required by its contract with Robinson. Beginning in early 1998, the sprag clutch ears that had been ground at the 61/63 level of hardness and sold to Robinson experienced a failure rate of 9.86 percent.[] This compared with a failure rate for clutches manufactured before July 1996 of 0.03 percent and 00.0 percent for clutches manufactured after October 1997.

Between August 24, 1998, and November 30, 1998, Robinson sent several letters to Dana reporting that 11 clutch assemblies with cracked sprags had been returned to Robinson from its operator customers. Each of these assemblies was ultimately traced to serial numbers of Dana sprag clutches that had been sold to Robinson during the period that Dana was grinding the clutches to the higher 61/63 level of hardness. On November 30, 1998, during a conference call between Robinson and Dana officials, Dana disclosed, for the first time, that it had used the 61/63 hardness level in its manufacturing process during the period July 1996 to October 1997.

Although it was a disputed issue, the record reflects that substantial evidence was presented at trial demonstrating that the higher failure rate of Dana's sprag clutches manufactured during the July 1996 to October 1997 period was due to the higher hardness level to which they had been ground. Fortunately, these clutch failures did not result in any helicopter accident and there were no incidents of injury or property damage that were caused by any clutch defect or failure, nor did any of the defective clutches cause any damage to other parts of the helicopters in which they had been installed.

Nonetheless, Robinson was ultimately required by the FAA and its British equivalent, the Air Accidents Investigation Branch of the United Kingdom's Department of Transport [], to recall and replace all of the faulty clutch assemblies (i.e., those manufactured with Dana's sprag clutches ground to the higher hardness level of 61/63 rather than the 50/55 level required by the Robinson specifications). This led to a total claimed expense to Robinson of **[*987]** $ 1,555,924, which represented the cost of (1) replacement parts, and (2) substantial employee time spent investigating the cause of the malfunctioning parts and the identification and replacement of parts on helicopters that had already been sold to customers.

There were approximately 990 sprag clutches that were ultimately identified as having been manufactured at the higher nonconforming level of hardness. It was important to Robinson that the defective clutches be identified as soon as possible so that it could effect full replacements before any accident might occur. Although Dana had disclosed on November 30, 1998, that it had previously changed the hardness level, it did not provide Robinson with the necessary serial and lot number information until February 12, **[\*\*\*357]** 1999, despite repeated demands therefor.[n4]

- Footnotes -

n4 Robinson placed great emphasis on this delay, contending that Dana had had the necessary information all along, but had withheld it. For example, the record reflects that there were two copies of a letter sent by Dana to Robinson, dated December 3, 1998, listing the hardness of the lots of sprag clutches sold to Robinson. The copy sent to Robinson did *not* show the serial numbers. The copy later discovered in Dana's possession did reflect the serial numbers. Robinson draws the rather speculative inference that Dana knew those

numbers on December 3, 1998, and must have "whited" them out. Dana's officer, however, testified that when he *ultimately* determined the serial numbers he simply added them to *his* copy of the December 3 letter, rather than preparing a new letter. Whatever the truth on this issue, the jury apparently accepted Robinson's argument that Dana had intentionally withheld this information.

End Footnotes- - - - - - - - - - - - - - [**272]

When this information was finally provided and Robinson was able to identify the clutch assemblies that had to be replaced, it submitted the necessary orders to Dana,[n5] together with a request that the issue as to which party would bear the cost of such replacement parts be left for later determination. Dana, however, disputed any liability, and, in fact, claimed that Robinson's problems were due to its own inadequate designs that placed too much stress on the clutch assemblies. Dana refused to ship any new clutches except on a COD or other assured payment basis.

Footnotes - - - - -

n5 As already noted, Dana was Robinson's *sole* supplier of the sprag clutches needed for the manufacture of its helicopters.

- End Footnotes-

Having no alternative, Robinson went forward, incurred the costs described above, purchased the new clutches, and effected the necessary replacements. It then filed this action alleging causes of action for breach of contract, breach of warranty and negligent and intentional misrepresentations. After a nine-day trial, the jury returned a verdict in favor of Robinson for $ 1,533,924 in compensatory damages and $ 6 million in punitive damages. The jury found that Dana had not only breached its contract with Robinson and the warranties made thereunder, but also had made false misrepresentations of fact and had knowingly misrepresented or concealed material facts with the intent to **[*988]** defraud. The award of punitive damages was based on this latter finding. [n6]

- Footnotes - - - - - - - - -

n6 This ends our quotation from the Court of Appeal.

- - End Footnotes- - - - -

Dana appealed. The Court of Appeal affirmed the judgment on the contract and warranty causes of actions. However, applying the economic loss rule, the Court of Appeal held that because Robinson suffered only economic losses, it could not recover in tort. Accordingly, the Court of Appeal reversed the judgment in part, based on the misrepresentation claims. As a result, the Court of Appeal held the punitive damages award could not be maintained.

Robinson seeks review of the Court of Appeal's application of the economic loss rule to its fraud and intentional misrepresentation claims.

## Discussion

Robinson contends the Court of Appeal erred in its decision because the economic loss rule

does not bar its fraud and intentional misrepresentation claims. We conclude that, with respect to Dana's provision of false certificates of conformance, Robinson is correct.

*CA(3)*⁂**(3)** We begin with a brief background on the economic loss rule. *HN2*⁂Economic loss consists of " ' " 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits--without any claim of personal injury or damages to other **[\*\*\*358]** property. ...' " ' [Citation.]" (*Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 482 [127 Cal. Rptr. 2d 614, 58 P.3d 450].) Simply stated, the economic loss rule provides: " ' "[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." ' This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." (*Neibarger v. Universal Cooperatives, Inc.* (1992) 439 Mich. 512 [486 N.W.2d 612, 615], fns. omitted.) The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise. (*Redarowicz v. Ohlendorf* (1982) 92 Ill. 2d 171 [65 Ill. Dec. 411, 441 **[\*\*273]** N.E.2d 324, 327,].) Quite simply, the economic loss rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." (*Rich Products Corp. v. Kemutec, Inc.* (E.D.Wis. 1999) 66 F. Supp. 2d 937, 969.)

*CA(4)*⁂**(4)** In *Jimenez v. Superior Court, supra,* 29 Cal.4th 473, we set forth the rationale for the economic loss rule: "*HN3*⁂ 'The distinction that the law has drawn **[\*989]** between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products.' [Citation.] We concluded that the nature of this responsibility meant that a manufacturer could appropriately be held liable for physical injuries (including both personal injury and damage to property other than the product itself), regardless of the terms of any warranty. [Citation.] But the manufacturer could not be held liable for 'the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands.' [Citation.]" (*Id.* at p. 482.)

*CA(5)*⁂**(5)** In *Jimenez,* we applied the economic loss rule in the strict liability context. We explained the principles surrounding the economic loss rule in that context: "*HN4*⁂[R]ecovery under the doctrine of strict liability is limited solely to 'physical harm to person or property.' [Citation.] Damages available under strict products liability do not include economic loss, which includes ' " 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits--without any claim of personal injury or damages to other property. ...' " ' [Citation.] [P] ... [P] In summary, the economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property *other than the product itself.* The law of contractual warranty governs damage to the product itself." (*Jimenez v. Superior Court, supra,* 29 Cal.4th at pp. 482-483.) We have also applied the economic loss rule to negligence actions. (See *Aas v. Superior Court* (2000) 24 Cal.4th 627, 640 [101 Cal. Rptr. 2d 718, 12 P.3d 1125]; *Seely v. White Motor Co.* (1965) 63 Cal.2d 9 [45 Cal. Rptr. 17, 403 P.2d 145].)

*CA(6)*⁂**(6)** In support of its argument that the economic loss rule does not apply to its case, Robinson argues that its claims for fraud and deceit were based on an independent **[\*\*\*359]** duty that Dana breached. In *Erlich v. Menezes* (1999) 21 Cal.4th 543, 551 [87 Cal. Rptr. 2d 886, 981 P.2d 978], we held that *HN5*⁂a party's contractual obligation may

create a legal duty and that a breach of that duty may support a tort action. We stated, "[C] onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. [Citation.]" (*Ibid.*)

*CA(7)*⊀**(7)** We went on to describe several instances where tort damages were permitted in contract cases. "*HN6*⊀Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury [citation]; for breach of the covenant of good faith and fair dealing in insurance contracts [citation]; for wrongful discharge in violation of fundamental public policy **[*990]** [citation]; or where the contract was fraudulently induced. [Citation.]" (*Erlich v. Menezes, supra,* 21 Cal.4th at pp. 551-552.) "[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm. [Citation.]" (*Id. at p. 552;* see also *Harris v. Atlantic Richfield Co.* (1993) 14 Cal,App.4th 70, 78 [17 Cal. Rptr. 2d 649]* ["when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort"].)

*CA(8)*⊀**(8)** With respect to situations outside of those set forth above, we stated: "*HN7* ⊀Generally, outside the insurance context, 'a tortious breach of contract ... may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; **[**274]** or, (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.' [Citation.] Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated. [Citation.] If every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies." (*Erlich v. Menezes, supra,* 21 Cal.4th at pp. 553-554.)

Robinson's misrepresentation and fraud claims were based on: (1) Dana's provision of false certificates of conformance; (2) Dana's failure to provide the serial numbers of affected clutches until five months after the clutches failed; and (3) Robinson's claim that a Dana employee redacted reference to the hardness of the clutches on a list of products requested by Robinson. At trial, the jury found that Dana had (1) made false representations of material fact; (2) knowingly misrepresented or concealed material facts with intent to defraud; (3) and by clear and convincing evidence was guilty of oppression, fraud, or malice in its intentional misrepresentations and concealments.

*CA(9)*⊀**(9)** For purposes of our decision, we focus solely on the fraud and misrepresentation claim based on Dana's provision of the false certificates of conformance. *HN8*⊀The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [49 Cal. Rptr. 2d 377, 909 P.2d 981].) Dana's issuance of the false certificates of conformance were unquestionably **[*991]** *affirmative* misrepresentations that Robinson justifiably **[***360]** relied on to its detriment. But for Dana's affirmative misrepresentations by supplying the false certificates of conformance, Robinson would not have accepted delivery and used the nonconforming clutches over the course of several years, nor would it have incurred the cost of investigating the cause of the faulty clutches. Accordingly, Dana's tortious conduct was separate from the breach itself, which involved Dana's provision of the nonconforming clutches. In addition, Dana's provision of faulty clutches exposed Robinson to liability for personal damages if a helicopter crashed and to disciplinary action by the FAA. Thus, Dana's fraud is a tort independent of the breach. (*Erlich v. Menezes, supra,* 21 Cal.4th at pp. 553-554.)

We hold the economic loss rule does not bar Robinson's fraud and intentional misrepresentation claims because they were independent of Dana's breach of contract. (See *Erlich v. Menezes, supra,* 21 Cal.4th at pp. 552-554.) n7 [**275] Because Dana's affirmative intentional misrepresentations of fact (i.e., the issuance of the false certificates of conformance) are dispositive fraudulent conduct related to the performance of the contract, we need not address the issue of whether Dana's intentional concealment constitutes an independent tort.

- - - Footnotes

n7 The dissent relies on *Aas v. Superior Court, supra,* 24 Cal.4th 627 and the concurring and dissenting opinion of Justice Brown in *Jimenez v. Superior Court, supra,* 29 Cal.4th 473, 490, for the contrary proposition that the economic loss rule should be broadly construed to bar tort recovery in every case where only economic damages occur. While the bright-line rule the dissent advocates has the advantage of being clear and easily applied, it is worth noting that the rule's development in the context of product liability claims and its extension to claims for negligent breach of contract were not mere fortuities. Dealing with affirmative acts of fraud and misrepresentation raises different policy concerns than those raised by negligence or strict liability claims.

*Aas* was a negligence action brought by homeowners against the developer, contractor, and subcontractors who constructed their dwellings. The homeowners sought damages for construction defects that had not caused any property damage. (*Aas v. Superior Court, supra,* 24 Cal.4th at p. 632.) We concluded the defects must cause property damage prior to being actionable in negligence. (*Id.* at p. 650.) The language in *Jimenez* cited by the dissent deals with the propriety of applying the economic loss rule as a bar in strict liability actions " '[w]hen no safety concerns are implicated because the damage is limited to the product itself.' " (Dis. opn., *post,* at p. 999, quoting *Jimenez v. Superior Court, supra,* 29 Cal.4th 473, 490 (conc. & dis. opn. of Brown, J.).) In both circumstances, " 'recourse ... in contract law to enforce the benefit of the bargain' " is sufficient. (*Ibid.*) In contrast, Robinson's claims are based on Dana's intentional and affirmative misrepresentations that risked physical harm to persons. Robinson's helicopters are flown by and carry people. A properly functioning sprag clutch is vital to the safe performance of the aircraft and compliance with the certificate requirement is part of an integrated regulatory scheme intended to ensure their safe operation. *HN9*⚓The economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry; not to reward malefactors who affirmatively misrepresent and put people at risk.

- - End Footnotes-

*CA(10)*⚓(10) California's public policy also strongly favors this holding. *"HN10*⚓[C]ourts will generally enforce the breach of a contractual promise through [*992] contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." (*Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 107 [44 Cal. Rptr. 2d 420, 900 P.2d 669] (conc. & dis. opn. of Mosk, J.).) Similarly, " '[c]ourts should be careful to apply tort remedies only when the conduct in question is so clear in its deviation from [***361] socially useful business practices that the effect of enforcing such tort duties will be ... to aid rather than discourage commerce.' " (*Erlich v. Menezes, supra,* 21 Cal.4th at p. 554.) "In pursuing a valid fraud action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future. [Citation.] Because of the extra measure of blameworthiness inhering in fraud, and because in fraud cases we are not concerned about the need for 'predictability about the cost of contractual relationships' [citation], fraud plaintiffs may recover 'out-of-pocket' damages in addition to benefit-of-the bargain damages." (*Lazar v. Superior Court, supra,* 12 Cal.4th at p.

646.) In addition, "California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1064 [80 Cal. Rptr. 2d 828, 968 P.2d 539].) Needless to say, Dana's fraudulent conduct cannot be considered a " 'socially useful business practice[].' " (*Erlich*, at p. 554.) As one court stated, "Simply put, a contract is not a license allowing one party to cheat or defraud the other." (*Grynberg v. Citation Oil & Gas Corp.* (S.D. 1997) 1997 SD 121 [573 N.W.2d 493, 501].) Allowing Robinson's claim for Dana's affirmative misrepresentation discourages such practices in the future while encouraging a "business climate free of fraud and deceptive practices." (*Diamond Multimedia Systems, Inc.*, at p. 1064.)

Dana urges this court to apply the economic loss rule to Robinson's fraud and intentional misrepresentation claims in light of the public policy of promoting predictability in contracts in commercial transactions. Dana contends Robinson's fraud and misrepresentation claims are not independent of the contract but are simply part of the alleged breach of contract. We disagree.

CA(11)✦(11) HN11✦A breach of contract remedy assumes that the parties to a contract can negotiate the risk of loss occasioned by a breach. " '[W]hen two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he [*993] expected to receive; this is the function of contract law.' " (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 517 [28 Cal. Rptr. 2d 475, 869 P.2d 454].) However, "[a] party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that [**276] contract." (Tourek et al., *Bucking the "Trend": The Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and Misrepresentation* (1999) 84 Iowa L.R. 875, 894.) No rational party would enter into a contract anticipating that they are or will be lied to. "While parties, perhaps because of their technical expertise and sophistication, can be presumed to understand and allocate the risks relating to negligent product design or manufacture, those same parties cannot, and should not, be expected to anticipate fraud and dishonesty in every transaction." (*Id.* at p. 909.) Dana's argument therefore [***362] proposes to increase the certainty in contractual relationships by encouraging fraudulent conduct at the expense of an innocent party. No public policy supports such an outcome. n8

- - - - - Footnotes

n8 In footnote 1, the dissent argues our conclusion that Dana's provision of false certificates of conformance is an independent tort will result in anomalous consequences. (Dis. opn., *post*, at p. 999.) We disagree. A decision to breach a contract and then acknowledge it has different consequences than a decision to defraud, and we fail to see how Dana's actions could be deemed "commercially desirable."

End Footnotes-

CA(12)✦(12) Nor do we believe that our decision will open the floodgates to future litigation. Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for

personal damages independent of the plaintiff's economic loss. In addition, [HN12][i]n California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] 'Thus " 'the policy of liberal construction of the pleadings ... will not ordinarily be invoked to sustain a pleading defective in any material respect.' " [Citation.] [P] This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Lazar v. Superior Court, supra,* 12 Cal.4th at p. 645.) We trust the trial courts of this state to enforce this pleading requirement.

## Conclusion

Had Dana simply been truthful and declined to provide a certificate for the nonconforming orders, Robinson could have refused to accept them, thereby avoiding the damages it later suffered when it had to mitigate and replace the defective clutches. Dana's action denied Robinson this opportunity. Because **[*994]** the Court of Appeal erred by applying the economic loss rule to Robinson, we reverse and remand for proceedings consistent with this opinion. n9

Footnotes -

n9 We only address the Court of Appeal's application of the economic loss rule to Dana's affirmative misrepresentation and do not decide any other issues. We remand for consideration of other issues raised below but not addressed by the Court of Appeal.

- End Footnotes-

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred

**DISSENTBY:** WERDEGAR

**DISSENT: WERDEGAR, J.,** Dissenting.--To reach an outcome that allows a party engaged in wrongdoing to be punished is undeniably appealing, but sometimes sound reasons exist for resisting the urge. This is such a case. In structuring its holding to allow the punishment of this defendant, the majority has embarked on a path previously wisely rejected. In the guise of permitting punitive damages for torts independent of a contract breach, the majority breathes new life into the heretofore moribund doctrine of bad faith denial of breach of contract. I respectfully dissent.

I

Dana Corporation (Dana) entered into a commercial contract with Robinson Helicopter Company, Inc. (Robinson) to supply helicopter parts. It warranted that the parts would be manufactured in conformance with particular specifications. It later changed its manufacturing process and began delivering parts that no longer conformed to the contract specifications, accompanied by contractually required certificates of compliance that represented the parts were still being manufactured **[***363]** according to those specifications. **[**277]** Robinson discovered the manufacturing change and was forced to replace the nonconforming parts. Was this a contract breach? Absolutely. The contract called for a particular performance, and the breaching party, Dana, failed to deliver that performance.

Was this conduct also a basis for tort damages? As the majority notes, Robinson makes no claim that Dana had any fraudulent intent when it changed its manufacturing process. (Maj. opn., *ante,* at p. 986, fn. 3.) Thus, Robinson's misrepresentation claim rests in its entirety on

a series of form certificates of compliance typically providing: "This is to certify that ... pieces of part number ... related to your purchase order ... have been processed, fabricated and received final inspection in accordance with the applicable blueprint specifications and the purchase order requirements, with pertinent date relative thereto, maintained and on file." By providing these certificates, Dana represented that its parts satisfied the contract. In effect, it refused to admit that it was breaching the contract while in fact it was doing so. If Dana misrepresented its compliance intentionally, with knowledge that **[\*995]** its parts did not satisfy the contract, then its conduct might be described variously as a bad faith breach of contract, a breach of contract by fraudulent means, or a bad faith denial of breach.

Until today, we have rejected the notion that such conduct could give rise to punitive damages. As a matter of both statute and common law, a breach of a commercial contract cannot be the basis for punitive damages. (Civ. Code, § 3294, subd. (a); _Applied Equipment Corp. v. Litton Saudi Arabia Ltd._ (1994) 7 Cal.4th 503, 516 [28 Cal. Rptr. 2d 475, 869 P.2d 454] (_Applied Equipment_); _Foley v. Interactive Data Corp._ (1988) 47 Cal.3d 654, 698 [254 Cal. Rptr. 211, 765 P.2d 373] (_Foley_).) The law eschews inquiry into a breaching party's motives; whether acting in good faith or bad faith, a party that breaches a commercial contract must pay only contract damages. (_Applied Equipment, at p. 516; Foley, at p. 699;_ see _Harris v. Atlantic Richfield Co._ (1993) 14 Cal.App.4th 70, 82 [17 Cal. Rptr. 2d 649] ["The imposition of tort remedies for 'bad' breaches of commercial contracts is a substantial deviation from the traditional approach which was blind to the motive for the breach"].) This rule applies even when the breach is accomplished in a fraudulent manner. (See _Hunter v. Up-Right, Inc._ (1993) 6 Cal.4th 1174 [26 Cal. Rptr. 2d 8, 864 P.2d 88] (_Hunter_) [wrongful termination accomplished through fraudulent misrepresentation is not independently tortious].)

For a limited time in the 1980's and 1990's, this court recognized the tort of bad faith denial of the _existence_ of a contract (see _Seaman's Direct Buying Service, Inc. v. Standard Oil Co._ (1984) 36 Cal.3d 752 [206 Cal. Rptr. 354, 686 P.2d 1158], overruled by _Freeman & Mills, Inc. v. Belcher Oil Co._ (1995) 11 Cal.4th 85 [44 Cal. Rptr. 2d 420, 900 P.2d 669] (_Freeman & Mills_)), but even then, we declined to extend tort liability to the bad faith denial of _liability_ under a contract. Indeed, one of the problems with _Seaman's_ was that it required courts to do the "impossible[,] to draw a principled distinction between a tortious denial of a contract's existence and a permissible denial of liability under the terms of the contract." (_Oki America, Inc. v. Microtech Int'l, Inc._ (1988) 872 F.2d 312, 315 (conc. opn. of Kozinski, J.); see _Freeman & Mills, at pp. 101-102_ [critiques of _Seaman's_ "emphasize the extreme difficulty courts experience in distinguishing between tortious denial of a contract's existence **[\*\*\*364]** and permissible denial of _liability_ under the terms of the contract"].) The rule precluding tort liability for the denial of a breach of contract has remained unchanged. "Our decisions in _Foley, Hunter,_ and _Applied Equipment_ each contain[] language that strongly suggests courts should limit tort recovery in contract breach situations to the insurance area, at least in the absence of violation of an independent duty arising from principles of tort law _other than denial of the existence of, or liability under, the breached contract._" (_Freeman & Mills, at p. 95,_ italics added.) **[\*996]**

These decisions reflect a circumspect approach to attaching tort liability to conduct **[\*\*278]** occurring in the course of contract performance. As we have frequently explained, the reason for this justifiable circumspection is the value commercial parties place on predictable potential costs and the chilling effect tort exposure in routine breach cases would have on commercial enterprise. (_Erlich v. Menezes,_ (1999) 21 Cal.4th 543, 553 [87 Cal. Rptr. 2d 886, 981 P.2d 978] (_Erlich_); _Freeman & Mills, supra,_ 11 Cal.4th at pp. 97, 102-103; _Applied Equipment, supra,_ 7 Cal.4th at p. 520; _Hunter, supra,_ 6 Cal.4th at pp. 1193-1194; _Foley, supra,_ 47 Cal.3d at pp. 683, 696-699; _White v. Western Title Ins. Co._ (1985) 40 Cal.3d 870, 900-901 [221 Cal. Rptr. 509, 710 P.2d 309 & fn. 2], (conc. & dis. opn. of Kaus, J.); see also _Harris v. Atlantic Richfield Co., supra,_ 14 Cal.App.4th at p. 77; _DuBarry Internat., Inc. v. Southwest Forest Industries, Inc._ (1991) 231 Cal. App. 3d 552, 569 [282

Cal. Rptr. 181].) As we have said in the context of rejecting tort liability for interference with one's own contract, if every breach creates a potentially triable tort claim, "the potential consequences of any breach of contract--efficient or inefficient, socially desirable or undesirable--become uncertain and unpredictable. Tort liability may or may not follow, depending on a myriad of imponderable factors. As a result, a business fearful of unfathomable tort exposure might lose the ability to respond flexibly to changing economic conditions or hesitate to enter into contracts at all in fast-moving aspects of commercial enterprise." (*Applied Equipment,* at p. 520.) Restricting parties to contract damages in the wide run of cases "promote[s] contract formation by limiting liability to the value of the promise." (*Harris v. Atlantic Richfield Co., at p. 77*.)

The challenged conduct in this case is a breach of contract accompanied by false contractually required representations that the party was *not* in breach. This, the majority holds, is enough to allow a jury to inquire into whether the breaching party *knew* it was breaching the contract at the time and, if so, whether such a knowing misrepresentation might appropriately give rise to punitive damages. Of course, rare is the commercial contract that does not involve ongoing statements by the parties relating to their performance. In all such cases, under the majority's rule, it is now possible to plead a fraud claim. This raises the specter that every alleged breach will yield satellite litigation over whether contemporaneous remarks by one side or the other amounted to intentional misrepresentations about the existence of a breach, thus subjecting the breaching party to the possibility of punitive damages for such conduct. The implications of such a result for commercial predictability and certainty are considerable.

I do not disagree with the majority's desire to sanction deceit in commercial relationships. Commercial parties should **[***365]** be entitled to rely on the representations their contractual partners make. Indeed, the stability of commercial relationships depends on such trust, and the legal rules governing **[*997]** those relationships should foster it. The problem is not with the principle but the practice. (Cf. *White v. Western Title Ins. Co., supra, 40 Cal.3d at p. 900, fn. 2* ["The problem is not so much the theory of the bad faith cases, as its application"].) Allowing a tort claim to be pleaded in every case where a breach is accompanied by representations about performance forces all parties, not just those engaged in malfeasance, to bargain in the shadow of potential tort liability. That cannot be a good thing.

## II

How, then, to sanction deceitful representations about one's performance without chilling commercial relationships? As it happens, a solution to this problem exists: the economic loss rule.

We first developed and applied the economic loss rule in the context of product liability claims. A manufacturer "can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of **[**279]** performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." (*Seely v. White Motor Co.* (1965) 63 Cal.2d 9, 18 [45 Cal. Rptr. 17, 403 P.2d 145]* (Seely); see also *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 482-483 [127 Cal. Rptr. 2d 614, 58 P.3d 450]; *Aas v. Superior Court* (2000) 24 Cal.4th 627, 639-640 [101 Cal. Rptr. 2d 718, 12 P.3d 1125].) The function of the economic loss rule is to prevent tort law from shifting back to sellers a specific risk that better rests with buyers-

-the risk that a product will not perform to a particular level beyond that warranted by the seller. If a buyer desires protection against this risk, she can and should negotiate for a higher warranty or seek it out from other sellers in the marketplace. (See *Seely, at pp. 18, 19*.)

We have extended the economic loss rule to claims for negligent breach of contract. (*Aas v. Superior Court, supra*, 24 Cal.4th at pp. 642-643.) In *Aas*, we explained that the rule preserves "the fundamental difference between, on the one hand, the consumer's contractual interest in having a product of the expected, bargained-for value and quality, and, on the other hand, the consumer's tort interest in not suffering property damage or personal injury due to negligence in the manufacturing process." (*Id. at p. 642*.) Thus, while **[*998]** we recognized "conduct amounting to a breach of conduct becomes tortious when it also violates a duty independent of the contract arising from principles of tort law" (*id. at p. 643*, citing *Erlich, supra*, 21 Cal.4th at p. 551), we held that recourse for violation of that duty is "limited by the rule in *Seely, supra*, 63 Cal.2d 9, 18, which bars recovery of economic damages **[***366]** representing the lost benefit of a bargain" (*Aas v. Superior Court*, at p. 643).

These principles should apply here. Robinson had a contractual interest in receiving clutches of a particular quality. It had a tort interest in not suffering liability for damages to persons or property as a result of any negligence, fraud, or defective product manufactured by Dana. Only the first interest was burdened here; Dana failed to deliver clutches of the warranted quality. Robinson's damages consisted exclusively of the costs associated with identifying and replacing the defective product, costs that fall squarely within the definition of economic loss. (See *Jimenez v. Superior Court, supra*, 29 Cal.4th at p. 482.) Because Robinson suffered only economic loss, its recovery should have been limited to contract damages under its breach of contract and breach of warranty claims.

This application of the economic loss rule solves the problem of how to sanction deceit without chilling commercial relationships. It allows tort liability in those instances where a misrepresentation may have led to *actual* property damage or personal injury and, in doing so, both sanctions and deters opprobrious conduct. But by excluding tort recovery in those cases, like this one, where the only damages are economic, it preserves the valuable distinction between tort and contract remedies and avoids the problems that would arise if every routine breach were susceptible to both tort and contract claims.

## III

Where does the majority go wrong? The problem lies in its application of a test--whether a tort is independent of the contract breach (maj. opn., *ante*, at pp. 989-991)--that supplies only a necessary, not a sufficient, condition for the imposition of tort liability.

The majority relies principally on *Erlich, supra*, 21 Cal.4th 543, a decision that barred emotional **[**280]** distress damages for negligent breach of contract. *Erlich* acknowledged that it was "difficult to categorize" those cases where breach of a contractual promise could also give rise to tort damages. (*Id. at p. 552*.) However, borrowing from a Justice Mosk concurring and dissenting opinion, it identified three categories of cases where the breach of a contractual promise could also give rise to tort damages. (*Id. at pp. 553-554*, citing *Freeman & Mills, supra*, 11 Cal.4th at p. 105 (conc. & dis. opn. of **[*999]** Mosk, J.).) It also reiterated the long-standing rule that "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." (*Erlich, at p. 551*.)

The majority holds that Dana committed an independent tort, fraud, and therefore may be liable in tort. (Maj. opn., *ante* , at p. 991.) But the commission of an independent tort, although a necessary condition for the imposition of tort liability, is not sufficient. Thus, that Robinson has shown an independent tort is only the beginning of the discussion, not the end.

n1 As we held in **[\*\*\*367]** *Aas*, even when an independent tort has been committed, the economic loss rule may still apply. (*Aas v. Superior Court, supra*, 24 Cal.4th at p. 643.) Likewise, the *Erlich*/Justice Mosk taxonomy of contract cases where tort liability may be found is descriptive, not prescriptive. It offers no specific rationale for the characteristics shared by past cases allowing tort recovery, nor does it purport to say that all cases that fall within one or another category will necessarily give rise to tort liability. It thus does not advance the analysis.

- Footnotes -

n1 Moreover, even this preliminary conclusion that Dana's provision of certificates of compliance constituted an independent tort has anomalous consequences. The certificates of compliance Dana provided were mandated by Robinson's purchase orders. Had Dana withheld the certificates, it would have committed a second breach of contract, subjecting itself to (at most) contract damages. According to the majority, Dana, by instead choosing to comply with its contractual obligation to provide the certificates and thus breach the contract in only one way, not two, committed an independent tort that could subject it to punitive damages. Such an interpretation of the independent tort requirement creates perverse incentives for parties to either (a) breach existing contractual obligations to provide performance assurances, or (b) henceforth refuse to agree to provide such assurances. Neither outcome is commercially desirable.

- End Footnotes-

The majority purports to limit its holding to cases in which a misrepresentation exposes a plaintiff to a risk of liability for personal damage. (Maj. opn., *ante*, at p. 993.) The problem with this asserted limiting principle is that, unlike the requirement that there actually *be* noneconomic damage, this requirement is no limit at all. It is safe to say that in a large percentage of denial of breach cases, a plaintiff will be able to plead and perhaps prove that it was exposed to at least the risk of liability for personal damage by virtue of the defendant's failure to immediately confess its sins. In *Aas*, we expressly rejected an approach that would have carved out an exception to the economic loss rule whenever a tort created a serious risk of personal injury or property damage. (*Aas v. Superior Court, supra*, 24 Cal.4th at pp. 649-651.) Nothing has changed in the intervening four years to persuade me that such an approach is any sounder today. Instead, we ought to continue to apply the economic loss rule in the absence of actual injury or property damage, adhering to the principle that "when no safety concerns are implicated **[\*1000]** because the damage is limited to the product itself, the [commercial party]'s recourse is in contract law to enforce the benefit of the bargain." (*Jimenez v. Superior Court, supra*, 29 Cal.4th at p. 490 (conc. & dis. opn. of Brown, J.).)

IV

One final aspect of the majority's decision merits comment. Robinson argued for tort liability based on two distinct theories: (1) Dana fraudulently misrepresented that its parts conformed to the contract specifications, and (2) it fraudulently concealed its breach. The jury was given a special verdict **[\*\*281]** form that included the following question as the sole basis for tort liability: "QUESTION NUMBER 4 [P] Did [Dana] knowingly misrepresent *or* conceal a material fact with an intent to defraud Robinson which caused damage to Robinson?" (Italics added.) The jury answered yes, 11 to 1.

Because the question is phrased in the disjunctive, we cannot determine whether the award of punitive damages rests on a finding that Dana fraudulently misrepresented facts or that it fraudulently concealed facts. If either theory is barred by the economic loss rule and thus

legally deficient, the jury verdict cannot stand. (*Lundy v. Ford Motor Co.* (2001) 87 Cal.App.4th 472, 480 [104 Cal. Rptr. 2d 545]; see *People v. Guiton* (1993) 4 Cal.4th 1116, 1125 [17 Cal. Rptr. 2d 365, 847 P.2d 45].) Thus, contrary to the majority's assertion, **[\*\*\*368]** Dana's alleged intentional misrepresentations are not "dispositive fraudulent conduct" (maj. opn., *ante*, at p. 991); for all we know, the jury rejected punitive damages on this basis and imposed them only because of Dana's alleged later concealments.

The majority disavows any views on application of the economic loss rule to fraudulent concealment, leaving the issue to the Court of Appeal on remand. (Maj. opn., *ante*, at p. 994, fn. 9.) On remand, the Court of Appeal will have a choice between applying the economic loss rule to bar recovery, thereby setting up a distinction between deceit by misrepresentation on the one hand and deceit by nondisclosure on the other, or holding that nondisclosures can also be tortious. The issue ultimately will have to be decided, in this or a future case.

Whenever the issue is settled, today's decision will leave no easy options. On the one hand, if fraudulent concealment is not tortious, the distinction between tortious misrepresentation and nontortious concealment may prove untenable and virtually impossible to administer. If a party makes statements that are true but incomplete and that may or may not have false implications, is this a tortious misrepresentation or a nontortious nondisclosure? Such line drawing will not be easy for parties seeking to order their affairs, judges obligated to instruct juries, or juries forced to split hairs by such a set of rules.

On the other hand, if the majority's decision is taken to its logical conclusion, then deceit by nondisclosure is a tort independent of any breach, just like deceit by misrepresentation. (See Civ. Code, § 1710, subds. (1), (3).) If so, every litigator can be expected to attach such a piggyback tort claim to each breach of contract claim, and every breach case can be expected to focus on when a party learned it was in breach and why it failed to disclose that fact to the other side. The threat of tort damages in every such instance can do no good for parties weighing the likely benefits and risks before entering any commercial contract.

V

Let us be clear: what Dana did was not admirable. A jury awarded Robinson $ 1.5 million in compensatory damages. Dana's conduct should be sanctioned, and it has been. But to allow tort recovery for bad faith denial of a breach that led only to economic damages is to prescribe a cure worse than the disease. Today's decision greatly enhances the ease with which every breach of contract claim can don tort clothes. I fear that in doing so, it opens a Pandora's box better left sealed. Because I would not do so, I respectfully dissent.

Service: **Get by LEXSEE®**
Citation: **34 cal. 4th 979**
View: Full
Date/Time: Tuesday, February 8, 2005 - 8:56 PM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United

States, that on February 11, 2005, I will cause to be served, via hand delivery, a true and correct

copy of SUGGESTION OF MOOTNESS AND REQUEST TO DISMISS OR HOLD PENDING

MOTIONS IN ABEYANCE upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and

> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this 11th of February, 2005 at Hagåtña, Guam.

DAVID LEDGER