

FILED

DISTRICT COURT OF GUAM

MAR 2 4 2005

MARY L.M. MORAN
CLERK OF COURT

136

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

S.J. GARGRAVE SYNDICATE AT LLOYDS,

      Plaintiff,

      v.

BLACK CONSTRUCTION CORPORATION,
WINZLER & KELLY, and ENGINEERING
MANAGEMENT & PLANNING SERVICES
CORPORATION,

      Defendants.

NO. CV 03-00009

**MEMORANDUM ORDER
RE JURISDICTION**

On December 3, 2004, this Court issued an Order to Show
Cause ("OSC") why this case should not be remanded to the
Territorial Superior Court for lack of subject matter
jurisdiction.[1]  All parties have now responded to the OSC.  After
considering those responses, the Court concludes that this case
does not fall under admiralty jurisdiction pursuant to 28 U.S.C.
§ 1333, but that diversity jurisdiction exists pursuant to 28

---

[1]    Prior to issuing the OSC, no Defendant had challenged
the diversity jurisdiction of this Court.  Rather, the matter was
raised *sua sponte* by the Court during the December 3, 2004,
hearing.

ORIGINAL

U.S.C. § 1332.

**DISCUSSION**

## A.  Diversity Jurisdiction

Federal courts have diversity jurisdiction where (1) there is complete diversity between the parties, and (2) the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  For diversity purposes, a corporation is a citizen of the state by which it has been incorporated and the state where it has its principal place of business.  <u>See</u> 28 U.S.C. § 1332(c); <u>United Computer Sys., Inc. v. AT&T Corp.</u>, 298 F.3d 756, 763 (9th Cir. 2002).  The party seeking to establish diversity jurisdiction bears the burden of proof on each element.  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994).

In this case, the pertinent issue is whether there is complete diversity of citizenship between the parties.[2] Plaintiff S.J. Gargrave Syndicate at Lloyds ("Plaintiff") is a syndicate of Lloyds of London.  In 2001, when Plaintiff paid the claim which is the subject of this action, the syndicate was composed solely of a single United Kingdom corporation, QBE Corporate Limited, which has its only place of business (and, by necessary implication, principal place of business) in London, England.  Decl. of Graeme Sprowson ("Sprowson Decl.") ¶¶ 3, 5, 7. The syndicate is now comprised of three United Kingdom corporations, all of which are incorporated and have their sole

---

[2]     Given that Plaintiff's claims for damages exceed $6 million, the parties do not contest and the Court finds that the amount in controversy requirement is met.

place of business in the United Kingdom: QBE Corporate Limited;
Limit (No. 2) Limited; and Limit (No. 3) Limited. Sprowson Decl.
¶¶ 6, 7. Likewise, the lead underwriter for the syndicate, and
the originally-named plaintiff, Leslie Wilton, is a citizen and
domiciliary of the United Kingdom. Decl. of Leslie Wilton
("Wilton Decl.") ¶ 1.

Defendants contend that when a Lloyd's of London syndicate,
comprised of members called "Names,"[3] is being analyzed for
purposes of diversity jurisdiction, the citizenship of each
"Name" is relevant to that determination. This circuit has not
addressed the precise issue of how a Lloyd's of London syndicate
comprised of "Names" should be classified for purposes of
determining diversity jurisdiction. See Certain Underwriters of
Lloyd's London v. Raytheon Co., 2001 WL 1836268, at *1-3 (N.D.
Cal. Dec. 4, 2001) (holding that for diversity jurisdiction to
exist there must be complete diversity between the defendant(s)
and every "Name"). Other circuits are split on this issue.[4] Id.

---

[3]     Under such a structure, each "Name" is severally liable
for a share of the risk.

[4]     Both the Second and Seventh Circuits, as well as
several district courts, hold that the citizenship of every
"Name" must be considered for diversity purposes. E.R. Squibb &
Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925 (2d Cir.
1998); Ind. Gas Co., Inc. v. Home Ins. Co., 141 F.3d 314 (7th
Cir. 1998); see also Certain Underwriters of Lloyd's London, 2001
WL 1836268, at *1-2. In contrast, the Sixth Circuit only
examines the names of the lead underwriters. Certain Interested
Underwriters at Lloyd's, London v. Layne, 26 F.3d 39 (6th Cir.
1994). The Fifth Circuit reached a similar result in Corfield v.
Dallas Glen Hills LP, 355 F.3d 853, 864-65 (5th Cir. 2003), cert.
denied, 124 S.Ct. 2421 (2004), holding that the citizenship of

3

It no longer is necessary, however, to resolve this issue here, given Plaintiff's clarification that "[t]here were no individuals (commonly called "Names") who were members of the syndicate for any year from 2001 onward." Sprowson Decl. ¶ 4.[5] The relevant citizenship is therefore either that of (1) Leslie Wilton, the lead underwriter for the syndicate, or (2) the three corporations comprising the syndicate. Given Plaintiff's undisputed showing that all of these entities are citizens of the United Kingdom, for purposes of diversity analysis, either suffices to support diversity jurisdiction.

Defendants likewise do not dispute Plaintiff's assertion that all Defendants are citizens of either a state or territory of the United States. Black Construction Corporation is incorporated in Guam, with its principal place of business in Guam. Winzler & Kelly is a California corporation.[6] Engineering, Management & Planning Services Corporation is incorporated in Guam, with its principal place of business in

---

the lead underwriter, rather than that of the individual "Names," was the relevant citizenship for purposes of diversity.

[5] Plaintiff asserts that, within the last decade, Lloyd's has begun moving away from the system of financial backing via individual "Names" and toward corporate capital backing.

[6] Although Plaintiff does not expressly state where Winzler & Kelly's principal place of business is, according to the California Secretary of State, it is in Eureka, California. See Decl. of Forrest Booth ("Booth Decl.") ¶ 3, Exh. A. Defendants do not challenge diversity jurisdiction on this ground.

Guam. Given that each Plaintiff is diverse from each Defendant, complete diversity exists; jurisdiction is therefore proper under 28 U.S.C. § 1332. <u>See</u> <u>Morris v. Princess Cruises</u>, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996))(complete diversity is satisfied when the every plaintiff is diverse from every defendant).

## B.  Admiralty Jurisdiction

Pursuant to 28 U.S.C. § 1333, federal courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." "A contract is within admiralty jurisdiction if its subject matter is maritime." <u>La Reunion Francaise SA v. Barnes</u>, 247 F.3d 1022, 1024 (9th Cir. 2001) (citing <u>Royal Ins. Co. v. Pier 39 Ltd. P'ship</u>, 738 F.2d 1035, 1036 (9th Cir. 1984)). To determine whether the subject matter of a contract is maritime, the court looks at case law and compares the contract at issue with other contracts that have been held to be inside or outside the jurisdiction. <u>Id.</u> at 1024 ("There is no clear test for whether the subject matter of a contract is maritime . . . [i]nstead we look to precedent and reason by analogy."). If there is no connection to a specific vessel, contracts relating to wharves and docks generally are not within admiralty jurisdiction. <u>See</u> <u>Royal Ins. Co</u>, 738 F.2d at 1037-38 ("A contract to lease a wharf, for example, is not within the jurisdiction if the lease is not tied to services to a specific vessel; . . . and a contract to build or sell a wharf probably is not within it either.") (internal citations omitted).

"In a few instances courts have held contracts relating to construction or maintenance of docks or wharves to be within the jurisdiction even though the contracts did not provide services

5

to a specific vessel." Id. at 1038 (internal citations omitted). However, "in each of these cases, a breach of the contract to construct or maintain the dock helped cause a tort clearly within the branch of admiralty jurisdiction." Id. To create a maritime tort, "the incident must have occurred on navigable waters and have a maritime flavor." Christensen v. Georgia-Pacific Corp., 279 F.3d 807, 814 (9th Cir. 2002) (citing Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). "An incident has maritime flavor if it has a potentially disruptive impact on maritime commerce and a substantial relationship to traditional maritime activity." Id.

The instant case arises out of the alleged breach by Defendants of a contract properly to design and repair certain components of a marine oil pier, called "dolphins," operated by the Port Authority of Guam in Guam's commercial seaport. Defendants also allegedly acted negligently in the design and repair of the dolphins. The contracts at issue, however, were not tied to services to a specific vessel. Moreover, it does not appear that the alleged breaches of contract to design and repair the structures helped cause a tort clearly within the tort branch of admiralty jurisdiction, as the design and repair of these immobile structures did not have a "substantial relationship to traditional maritime activity." See Christensen, 279 F.3d at 814. Because the contracts here are not maritime in nature, and because the tort branch of admiralty jurisdiction does not apply, this Court lacks admiralty jurisdiction under 28 U.S.C. § 1333(1).

## CONCLUSION

Based upon the foregoing, the Court concludes that, although

subject matter jurisdiction is lacking under this Court's admiralty jurisdiction, diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332. Accordingly, the OSC is discharged.

**IT IS SO ORDERED.**

Dated: **MAR 2 1 2005** .

A. WALLACE TASHIMA
United States Circuit Judge
Sitting by Designation.

7