

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

**FILED**
DISTRICT COURT OF GUAM

APR 2 2 2005

MARY L.M. MORAN
CLERK OF COURT



## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br><br>**DECLARATION OF DAVID LEDGER IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER; DECLARATION OF SERVICE** |

I, David Ledger, declare:

1.    I am an attorney duly licensed to practice law before all courts in Guam. I

am a member of the law firm of Carlsmith Ball LLP, counsel of record for Plaintiff S.J.

GARGRAVE SYNDICATE AT LLOYDS.

2. I have personal knowledge of the facts stated in this Declaration and am competent to testify to such facts.

3. Plaintiff requests a modification of the Scheduling Order and Discovery Plan herein to permit filing of its Motion for Leave to File Second Amended Complaint. I attach a true and correct copy of Plaintiff's proposed motion hereto as **Exhibit "A"**.

4. I attach a true and correct copy of the Scheduling Order and Discovery Plan, as originally entered by the Court on June 11, 2003, hereto as **Exhibit "B"**.

5. I attach a true and correct copy of the Stipulation and Order to Amend Scheduling Order and Discovery Plan, as approved and ordered by the Court on March 15, 2004, hereto as **Exhibit "C"**.

6. I attach a true and correct copy of the Stipulation and Order to Amend Scheduling Order and Discovery Plan, as approved and ordered by the Court on August 18, 2004, hereto as **Exhibit "D"**.

7. On or about December 3, 2004, the Court took the March 1, 2005, trial date off calendar.

8. On December 23, 2004, the California Supreme Court published its decision in *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 22 Cal. Rptr. 3d 352 (2004). The decision came to my attention early in 2005.

9. In *Robinson Helicopter*, the Court held that the so-called economic loss rule does not bar recovery of tort damages in a case where a plaintiff is entitled to assert and recover on claims for fraud and negligent misrepresentation. In particular, where a defendant contracting with the plaintiff made misrepresentations about the type and quality of the services the defendant was providing during the course of the contractual relationship.

10.     After *Robinson Helicopter* was published, I and co-counsel for Plaintiff determined that the decision was applicable to the present case. We determined that Plaintiff should file a Second Amended Complaint to assert claims against the Defendants herein, as authorized by *Robinson Helicopter*, for intentional misrepresentation, negligent misrepresentation, and fraud by concealment or nondisclosure. Plaintiff did not plead these claims in the First Amended Complaint because, before *Robinson Helicopter*, the available authority indicated that claims based on misrepresentation might be precluded.

11.     The Second Amended Complaint will plead that Defendants intentionally misrepresented to Plaintiff's insured, the Port Authority of Guam (the "Port"), that their repairs to the earthquake damage to the Shell F-1 Pier, operated by the Port, were designed and executed in compliance with generally accepted engineering practices. These facts have been fully fleshed out in discovery, and Plaintiff will plead them with the requisite specificity to support a claim for intentional misrepresentation.

12.     An agreement was sought with opposing counsel on modification of the Scheduling Order to allow Plaintiff's motion to file the Second Amended Complaint. However, Counsel for Defendants declined to agree to any such modification, or to the filing of an amended complaint.

Sworn this 22nd day of April, 2005 under penalty of perjury under the laws of Guam.

DAVID LEDGER

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on April 22, 2005, I will cause to be served, via hand delivery, a true and correct copy of **DECLARATION OF DAVID LEDGER IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER; DECLARATION OF SERVICE** upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and

> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this 22nd day of April, 2005 at Hagåtña, Guam.

DAVID LEDGER

SANFRAN1\32602\1 123206.000

# EXHIBIT

# "A"

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFF S.J. GARGRAVE SYNDICATE FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; DECLARATION OF SERVICE** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff S.G. Gargrave Syndicate at Lloyd's (hereinafter

"Plaintiff") will move the above-entitled court, in the 4th Floor courtroom of the above-entitled



EXHIBIT A

Court, located at the United States Courthouse, 520 West Soledad Avenue, Hagåtña, Guam, and does hereby move this Court for leave to file its Second Amended Complaint. Leave should be granted, pursuant to Federal Rule of Civil Procedure 15(a), for the following reasons:

1.  Justice requires that Plaintiff be allowed to assert all of the claims which are available to it, including those recently revealed by Plaintiff's discovery herein, and authorized by the California Supreme Court's December 23, 2004, decision in *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 22 Cal. Rptr. 3d 352 (2004); and

2.  The trial date is June 13, 2005. No party will suffer prejudice if Plaintiff files the Second Amended Complaint.

This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities submitted herewith, the Declaration of David Ledger and exhibits thereto, the [Proposed] Order, the records, papers and pleadings already on file in this action, and upon such other and further evidence and oral argument as may be presented to the Court during the briefing and hearing of this Motion.

DATED: Hagåtña, Guam, April _____, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on April _____, 2005, I caused to be served, via hand delivery, a true and correct copy of **NOTICE OF MOTION AND MOTION OF PLAINTIFF S.J. GARGRAVE SYNDICATE FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; DECLARATION OF SERVICE** upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and

> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this _____ day of April, 2005 at Hagåtña, Guam.

_____

DAVID LEDGER

SANFRAN1\32607\1 123206.000

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br><br>**PLAINTIFF S.J. GARGRAVE SYNDICATE AT LLOYDS SECOND AMENDED COMPLAINT; DECLARATION OF SERVICE** |

I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Second Amended Complaint (hereinafter the

"Complaint") pursuant to 28 U.S.C. §1332(a), in that there is complete diversity of citizenship

III.    FACTUAL BACKGROUND

7.      Plaintiff insures the property of the Port Authority of Guam, a municipal corporation which owns and operates piers, wharves, marinas, dolphins and other structures located in the ports of Guam, which ports service and accommodate international maritime trade and commerce. In August of 1993, the island of Guam suffered a severe earthquake, estimated to be a magnitude of 8.1. The earthquake did serious damage to a number of piers, docks, dolphins, and other facilities and property owned and operated by the Port Authority of Guam. These structures were neither designed nor built by the Defendants herein; they predate the events which are the subject of this litigation.

8.      The Port Authority of Guam employed EMPSCO as its engineering consultant to provide engineering consulting services in connection with the repairs of the aforesaid earthquake damage.    Upon information and belief, EMPSCO provided a design and specifications for the repair work. Based on that design, Black submitted a proposal to perform the specified repairs. However, the cost of the EMPSCO-designed repairs exceeded the Port Authority of Guam's budget. Black then engaged the services of Winzler to revise drawings, design and engineering specifications for part of the repair work. Using Winzler's revised design, engineering specifications, and engineering drawings, Black resubmitted a design-build bid to repair the earthquake damage, which design-build bid was accepted by the Port Authority of Guam. Black's revised proposal to repair the pier included scope of work, design and engineering drawings and specifications. The repair work, including that which was done pursuant to Black's revised work, design and engineering specifications (utilizing Winzler's design) for the repair work, is hereinafter called the "Project." Black was retained to perform the Project repair work, pursuant to a written contract with the Port Authority of Guam, a copy of which is attached hereto as **Exhibit "A"**. Black did not build the F-1 pier, its caps and dolphins,

but only repaired damage to the existing structures.

9.      EMPSCO reviewed and approved the Black/Winzler revised engineering plan for repairs and provided various approvals of the same.

10.     At all relevant times, Defendants Winzler and EMPSCO were professional engineers registered and licensed under the laws of the Territory of Guam.

11.     At all relevant times, Defendants Winzler and EMPSCO held themselves out to the public as skilled and competent engineers, experienced in the planning, supervision and design of facilities and repair work similar to that which was performed on the Port Authority of Guam pier.

12.     At all relevant times, Defendants Winzler and EMPSCO owed a non-delegable duty of professional competence and skill to the Port Authority of Guam.

13.     The Port Authority of Guam is an assignee and/or third-party beneficiary of the contract between Black and Winzler for the provision of services in connection with the Project.

14.     The Project was completed in 1997. Upon completion, Defendants Black and EMPSCO expressly and impliedly represented and warranted to the Port Authority of Guam that the completed work was adequate, had been properly performed in the manner called for by the drawings, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam.

15.     On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful than the earthquake of 1993, this earthquake, too, did damage to the property and facilities owned by the Port Authority of Guam. Serious damage was done to F-1 pier, and the dolphins thereof, which had previously been repaired by Black, pursuant to the plans and specifications prepared by, and under the supervision of, Black, Winzler, and EMPSCO. Serious damage was also done to other property not repaired or altered

by Black, including pipelines, electrical lines, water lines, fire mains, catwalks, manifolds and other equipment.

16.     As a result of the damage caused by the second earthquake, the Port Authority of Guam submitted a claim to Plaintiff. Plaintiff paid the claim of the Port Authority of Guam, and incurred related costs, in an amount exceeding $3 million. To the extent Plaintiff has made such payments, Plaintiff is subrogated to all of the rights and causes of action previously held by the Port Authority of Guam, and stands in the shoes of the Port Authority of Guam. In addition, the Port Authority of Guam, by written assignment dated 04/10/03, assigned to Plaintiff certain additional claims against the Defendants for its deductible, property damage to the F-1 Pier, damage to other property not repaired or altered by Black, and revenue loss, worth several million dollars, which Plaintiff is now pursuing herein.

17.     After receiving the claims for damage caused by the 2001 earthquake, Plaintiff caused an investigation of the losses to be made. This investigation disclosed that the repairs of the 1993 earthquake damage had been designed and done improperly by and under the supervision of Defendants. The repairs done in 1996-1997 were inadequate, were improperly performed, and were insufficiently strong to withstand future earthquakes and typhoons. The inadequacy and incompetence of the design, plans, specifications, and repair work performed and/or approved by Defendants directly caused and led to further damage to the property of the Port Authority of Guam during the year 2001 earthquake, and caused and directly led to damage to and losses to Plaintiff, as is set forth more fully hereinafter.

IV.     FIRST CAUSE OF ACTION:  NEGLIGENT PROPERTY DAMAGE
        (Against Black)

18.     Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 17, inclusive, of this Complaint.

19.     Black negligently performed its work on the Project, thereby causing further and more serious damage to the Port Authority of Guam's property and, therefore, losses and damage to Plaintiff.  In addition, Black negligently proposed and recommended that changes and alterations (including without limitation, design and engineering changes) be made to the plan for the proposed repairs at the Project, and approved same, which led to further losses and damage to Plaintiff.

V.    SECOND CAUSE OF ACTION:  NEGLIGENT PROPERTY DAMAGE
      (Against Winzler)

20.     Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 19, inclusive, of this Complaint.

21.     Winzler, as a professional engineering firm, owed a non-delegable duty of skill and competence to Plaintiff's subrogor the Port Authority of Guam.  Winzler breached that duty by incompetently and negligently preparing plans and specifications for the Project.  In addition, Winzler negligently recommended that changes be made to the proposed plans for the Project, which changes were negligent and improper, and led to the property of the Port Authority of Guam being substantially weakened and unable to withstand further earthquakes and typhoons, and led to further and more severe property damage.  The negligence of Winzler directly led to losses and damage to Plaintiff.

VI.   THIRD CAUSE OF ACTION:  NEGLIGENT PROPERTY DAMAGE
      (Against EMPSCO)

22.     Plaintiff hereby incorporates herein by this reference, as though fully set forth herein in paragraphs 1 through 21, inclusive, of this Complaint.

23.     EMPSCO, as a professional engineering firm and construction manager, owed a non-delegable duty of skill and competence to the Port Authority of Guam.  EMPSCO breached that duty by negligently preparing, reviewing and approving the plans and specifications for and

changes to the Project. EMPSCO also negligently supervised the work performed by Black in connection with the Project. The negligence of EMPSCO directly led to losses and damage to Plaintiff.

VII.    FOURTH CAUSE OF ACTION: BREACH OF CONTRACT (Against Black)

24.    Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 23, inclusive, of this Complaint.

25.    Black breached its contract with the Port Authority of Guam, Exhibit "A" hereto, by failing to perform the Project which Black agreed to perform, by performing the work which it did improperly, carelessly and negligently, and by performing work not called for under the contract which damaged and weakened the property of the Port Authority of Guam. These breaches of contract directly caused losses and damage to Plaintiff.

VIII.    FIFTH CAUSE OF ACTION: BREACH OF CONTRACT (Against Winzler)

26.    Plaintiff incorporates herein by this reference, as though fully set herein, paragraphs 1 through 25, inclusive, of this Complaint.

27.    Winzler breached its contract with Black by failing to exercise adequate skill and competence to design and specify the Project so that the F-1 Pier would be sufficiently strong to withstand future earthquakes and typhoons. Winzler further breached its contract with Black by recommending and making improper and negligent changes at the Project, and by failing to note, observe and report errors and omissions by contractors performing work on the Project.

28.    The Port Authority of Guam is an assignee and/or a third-party beneficiary of the contract between Black and Winzler. These breaches of contract by Winzler directly caused damage and losses to Plaintiff.

IX.    SIXTH CAUSE OF ACTION: BREACH OF CONTRACT (Against EMPSCO)

29.    Plaintiff incorporates herein by this reference, as though fully set herein,

paragraphs 1 through 28, inclusive of this Complaint.

30. EMPSCO breached its contract with the Port Authority of Guam, a copy of which is attached hereto as **Exhibit B**, by failing to exercise the requisite care, skill, and competence to prepare designs, plans and drawings, and to approve, review and supervise the work of others, including but not limited to the engineering plans and drawings prepared by Winzler, and requested changes to the Project.

31. EMPSCO breached its contract with the Port Authority of Guam by preparing negligent and inappropriate designs, drawings and specifications, by inadequately and incompetently approving and/or supervising work performed by Black and others in connection with the Project, by approving improper and negligent changes to the Project, and by failing to note and observe the errors and omissions by contractors performing the Project. These breaches of contract by EMPSCO directly caused damage and losses to Plaintiff.

X. SEVENTH CAUSE OF ACTION: BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE (Against Black)

32. Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 31, inclusive, of this Complaint.

33. The contract between Black and the Port Authority of Guam, Exhibit "A" hereto, is a maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Accordingly, there is implied in said contract a warranty of workmanlike performance owed to the Port Authority of Guam. Said written contract also specifically provides that Black will perform all work required of it in a workmanlike manner. Black breached said warranties of workmanlike performance in that it performed the Project carelessly, negligently, and incompletely, and did not perform certain repairs at all. Said breaches of the warranties of workmanlike performance have directly caused damage and losses to Plaintiff.

XI.  EIGHTH CAUSE OF ACTION:  BREACH OF WARRANTY OF WORKMANLIKE
     PERFORMANCE (Against EMPSCO)

     34.  Plaintiff incorporates herein by this reference, as though fully set forth herein,
paragraphs 1 through 33, inclusive, of this Complaint.

     35.  The contract between the Port Authority of Guam and EMPSCO, Exhibit "B"
hereto, is a maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil
Procedure.  Accordingly, there is implied in said contract a warranty of workmanlike
performance, owed to the Port Authority of Guam.  The written contract between EMPSCO and
the Port Authority of Guam also specifically provides that all of EMPSCO's work will be
performed in a workmanlike and diligent manner.  EMPSCO breached said warranties of
workmanlike performance by preparing negligent and inappropriate designs, drawings and
specifications, and by reviewing and/or approving plans and specifications for the Project which
were careless, inadequate, insufficient, and erroneous.  In addition, EMPSCO breached the
warranties of workmanlike performance owed to the Port Authority of Guam by failing to report
these deficiencies to the Port Authority of Guam, failing to adequately supervise the Project, and
failing to note, observe and report that repairs were being performed carelessly, erroneously and
incompletely, and in some cases, not being performed at all.  These breaches of the warranties of
workmanlike performance by EMPSCO have directly caused damage and losses to Plaintiff.

XII.  NINTH CAUSE OF ACTION:  BREACH OF WARRANTY OF WORKMANLIKE
      PERFORMANCE (Against Winzler)

     36.  Plaintiff incorporates herein by this reference, as though fully set forth herein,
paragraphs 1 through 35, inclusive, of this Complaint.

     37.  Upon information and belief, the contract between Black and Winzler is a
maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.
Accordingly, there is implied in said contract a warranty of workmanlike performance owed to

the Port Authority of Guam as an assignee and/or third-party beneficiary of said contract. Winzler breached said warranty of workmanlike performance by providing plans and specifications for the Project, which were careless, inadequate, insufficient, and erroneous. In addition, Winzler breached the warranty of workmanlike performance owed to the Port Authority of Guam as an assignee and/or third-party beneficiary of said contract by failing to report deficiencies in the drawings, plans and specifications to the Port Authority of Guam, and to report work being done incompetently, incompletely and/or improperly by contractors. These breaches of the warranty of workmanlike performance by Winzler have directly caused damage and losses to Plaintiff.

## XIII. TENTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION (Against Black)

38.     Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 37, inclusive, of this Complaint.

39.     Black negligently misrepresented to the Port Authority of Guam that its revised design for the repair of the F-1 dolphins, prepared for it by Winzler, was adequate, sufficiently strong, and that it met applicable building codes, engineering design requirements and good engineering practice. Black negligently misrepresented to the Port Authority of Guam that the type, size, design and content of the materials called for by Black's design, prepared for it by Winzler, were adequate, sufficiently strong and met all applicable building codes, engineering standards and good engineering practice. Black further negligently represented to the Port Authority of Guam, after the Project had been completed, that the work had been done properly, in accordance with the plans and specifications, the scope of work, applicable building codes, applicable engineering standards and good engineering practice. It negligently misrepresented, inter alia, that the bolts were properly and fully epoxied into the holes on the undersides of the

dolphin caps, in accordance with Black's design, prepared for it by Winzler. Black negligently misrepresented that its substitution of the Anchor-It epoxy product for the Redi-Chem product was appropriate, reasonable, and met the plans and specifications of the project, applicable engineering standards and good engineering practice. Black negligently misrepresented that the Anchor-It product was appropriate for use on the F-1 dolphin project, when in fact the Anchor-It product was not approved for overhead use. Black further negligently misrepresented that the epoxy installation of the bolts was proper, appropriate and complete, when in fact there had been neither torque testing of the bolts nor a special inspection of the epoxy installation. Black's issuance of as built drawings, after the repair work was complete, constituted a negligent misrepresentation that the work had been completed properly, and in accordance with the plans and specifications, applicable building codes, applicable engineering standards and good engineering practice. Black also negligently misrepresented to the Port that its design for the F-1 dolphin repair, prepared for it by Winzler, was the result of and was supported by proper and complete engineering calculations which demonstrated that the pile-to-cap connections were adequate and sufficiently strong.

40. All of the above were negligent misrepresentations, and none of them were true. The Port Authority of Guam accepted and relied upon each and every such negligent misrepresentation by Black, allowed the work to proceed and accepted the work upon completion, based upon the negligent misrepresentations of Black. The Port Authority of Guam paid Black large sums of money, which would not have been paid had the Port Authority of Guam known the truth.

41. The negligent misrepresentations by Black, as aforesaid, damaged the Port Authority of Guam and directly led to significant property damage to Port property during the earthquake which occurred in October of 2001. Therefore Plaintiff directly suffered losses and

damage.

XIV. ELEVENTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION
(Against EMPSCO)

42. Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 41, inclusive, of this Complaint.

43. EMPSCO negligently misrepresented to the Port Authority of Guam that the revised design for the repair of the F-1 dolphins, prepared by Winzler, was adequate, sufficiently strong, and that it met applicable building codes, engineering design requirements and good engineering practice. EMPSCO negligently misrepresented to the Port Authority of Guam that the type, size, design and content of the materials called for by Black's design, prepared by Winzler, were adequate, sufficiently strong and met all applicable building codes, engineering standards and good engineering practice. EMPSCO further negligently represented to the Port Authority of Guam, after the Project had been completed, that the work had been done properly, in accordance with the plans and specifications, the scope of work, applicable building codes, applicable engineering standards and good engineering practice. It negligently misrepresented, inter alia, that the bolts were properly and fully epoxied into the holes on the undersides of the dolphin caps, in accordance with Black's design, prepared by Winzler. EMPSCO negligently misrepresented that its approval of the substitution of the Anchor-It epoxy product for the Redi-Chem product was appropriate, reasonable, and met the plans and specifications of the project, applicable engineering standards and good engineering practice. EMPSCO negligently misrepresented that the Anchor-It product was appropriate for use on the F-1 dolphin project, when in fact the Anchor-It product was not approved for overhead use. EMPSCO further negligently misrepresented that the epoxy installation of the bolts was proper, appropriate and complete, when in fact there had been neither torque testing of the bolts nor a special inspection

of the epoxy installation. EMPSCO's approval of as built drawings, after the repair work was complete, constituted a negligent misrepresentation that the work had been completed properly, and in accordance with the plans and specifications, applicable building codes, applicable engineering standards and good engineering practice. EMPSCO negligently approved the changes to the project design, prepared by Winzler, despite the fact that a necessary condition to the approval of the design (the provision of engineering calculations) had not been satisfied. EMPSCO further negligently misrepresented that the substitution of the Anchor-It product for the Redi-Chem product was appropriate, when in fact the required manufacturer's certificate of compliance for the Anchor-It product had not been provided. EMPSCO also negligently misrepresented to the Port that the design for the F-1 dolphin repair, prepared by Winzler, was the result of and was supported by proper and complete engineering calculations which demonstrated that the pile-to-cap connections were adequate and sufficiently strong.

44. All of the above were negligent misrepresentations, and none of them were true. The Port Authority of Guam accepted and relied upon each and every such negligent misrepresentation by EMPSCO, allowed the work to proceed and accepted the work upon completion, based upon the negligent misrepresentations of EMPSCO. The Port Authority of Guam paid EMPSCO large sums of money, which would not have been paid had the Port Authority of Guam known the truth.

45. The negligent misrepresentations by EMPSCO, as aforesaid, damaged the Port Authority of Guam and directly led to significant property damage to Port property during the earthquake which occurred in October of 2001. Therefore Plaintiff directly suffered losses and damage.

## XV. TWELFTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION
(Against Winzler)

46.   Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 45, inclusive, of this Complaint.

47.   Winzler negligently misrepresented to the Port Authority of Guam that its revised design for the repair of the F-1 dolphins was adequate, sufficiently strong, and that it met applicable building codes, engineering design requirements and good engineering practice. Winzler negligently misrepresented to the Port Authority of Guam that the type, size, design and content of the materials called for by its design were adequate, sufficiently strong and met all applicable building codes, engineering standards and good engineering practice. Winzler further negligently misrepresented to the Port Authority of Guam, after the Project had been completed, that the work had been done properly, in accordance with the plans and specifications, the scope of work, applicable building codes, applicable engineering standards and good engineering practice. It negligently misrepresented, inter alia, that the bolts were properly and fully epoxied into the holes on the undersides of the dolphin caps, in accordance with its design. Winzler negligently misrepresented that Black's substitution of the Anchor-It epoxy product for the Redi-Chem product was appropriate, reasonable, and met the plans and specifications of the project, applicable engineering standards and good engineering practice.   Winzler negligently misrepresented that the Anchor-It product was appropriate for use on the F-1 dolphin project, when in fact the Anchor-It product was not approved for overhead use.   Winzler further negligently misrepresented that the unsupervised epoxy installation of bolts was proper, appropriate and complete, with neither torque testing of the bolts nor special inspection of the epoxy installation. Winzler's approval of as built drawings, after the repair work was complete, constituted a negligent misrepresentation that the work had been completed properly, and in

accordance with the plans and specifications, applicable building codes, applicable engineering standards and good engineering practice. Winzler negligently approved the changes to the project design despite the fact that a necessary condition to the approval of the design (the provision of engineering calculations) had not been satisfied. Winzler further negligently misrepresented that the substitution of the Anchor-It product for the Redi-Chem product was appropriate, when in fact the required manufacturer's certificate of compliance for the Anchor-It product had not been provided. Winzler further negligently misrepresented that the repairs to the dolphins could be completed using the Redi-Chem epoxy product, when in fact the product had not been manufactured for seven years, had not been advertised in a catalog for ten years, and was not available on the market. Winzler also negligently misrepresented to the Port, by issuing stamped and signed drawings, that its design for the F-1 dolphin repair was the result of and was supported by proper and complete engineering calculations which demonstrated that the pile-to-cap connections were adequate and sufficiently strong.

48. All of the above were negligent misrepresentations, and none of them were true. The Port Authority of Guam accepted and relied upon each and every such negligent misrepresentation by Winzler, allowed the work to proceed and accepted the work upon completion, based upon the negligent misrepresentations of Winzler. The Port Authority of Guam paid its contractors, and through them, Winzler, large sums of money, which would not have been paid had the Port Authority of Guam known the truth.

49. The negligent misrepresentations by Winzler, as aforesaid, damaged the Port Authority of Guam and directly led to significant property damage to Port property during the earthquake which occurred in October of 2001. Therefore Plaintiff directly suffered losses and damage.

## XVI. THIRTEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION (Against Black)

50. Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 49, inclusive, of this Complaint.

51. Black intentionally misrepresented to the Port Authority of Guam that its revised design for the repair of the F-1 dolphins (prepared for Black by Winzler and hereinafter referred to as "Black's design"), was adequate, sufficiently strong, and that it met applicable building codes, engineering design requirements and good engineering practice. Black intentionally misrepresented to the Port Authority of Guam that the type, size, design and content of the materials called for by Black's design were adequate, sufficiently strong and met all applicable building codes, engineering standards and good engineering practice. Black further intentionally misrepresented to the Port Authority of Guam, after the Project had been completed, that the work had been done properly, in accordance with the plans and specifications, the scope of work, applicable building codes, applicable engineering standards and good engineering practice by inter alia preparing and submitting As-Built Drawings containing wrong and deceitful information. It intentionally misrepresented, inter alia, that the bolts were properly and fully epoxied into the holes on the undersides of the dolphin caps, in accordance with Black's design. Black also intentionally misrepresented to the Port that its design for the F-1 dolphin repair was the result of and was supported by proper and complete engineering calculations which demonstrated that the pile-to-cap connections were adequate and sufficiently strong. Black intentionally concealed and misrepresented the fact that no calculations had been performed to support Black's design. It further concealed and misrepresented its substitution of the Anchor-It product for the Redi-Chem product specified by Winzler, and further intentionally concealed and misrepresented the fact that the Anchor-It product was not an appropriate substitute for the Redi-

Chem product. Black further intentionally concealed and misrepresented that most of the epoxy ran out of many of the holes in the underside of the dolphin caps, and that therefore the bolts were not firmly affixed and the dolphins were seriously weakened. Black further intentionally concealed and misrepresented the need for torque testing of the bolts, after they had been installed, and concealed and misrepresented the fact that it had not torque tested the bolts. Black also intentionally concealed and misrepresented the requirement for a special inspection of the epoxy installation, and further intentionally concealed and misrepresented the fact that no such special inspection had been conducted. Black further intentionally concealed and misrepresented the need for a vent at the top of each hole drilled into the underside of the dolphin caps, intentionally concealed and misrepresented the fact that it did not plan to drill such a vent hole, and afterwards concealed and misrepresented its failure to provide such a vent for each hole. Black intentionally concealed and misrepresented the fact that the Anchor-It product is not approved for overhead use, and intentionally concealed and misrepresented the nature and quality of its unsatisfactory work by issuing as built drawings showing that the work had been completed in a proper manner meeting all applicable building codes, engineering standards and good engineering practice. Black further intentionally concealed and misrepresented the fact that Black's design weakened the structure of the dolphins and shortened their useful life. Black further intentionally concealed and misrepresented the fact that Black's design was approximately one-seventh as strong as it needed to be, in an earthquake-prone and typhoon-prone location such as Guam, when used for docking large, ocean-going tankers.

52.     All of the above were intentional misrepresentations or concealments, and none of the misrepresentations were true. The Port Authority of Guam relied upon each and every such intentional misrepresentation by Black, allowed the work to proceed and accepted the work upon completion, based upon the intentional misrepresentations of Black, and being ignorant of the

problems which Black had concealed. The Port Authority of Guam paid Black large sums of money, which would not have been paid had the Port Authority of Guam known the truth.

53. The intentional misrepresentations and concealments by Black, as aforesaid, damaged the Port Authority of Guam and directly led to significant property damage to Port property during the earthquake which occurred in October of 2001. Therefore Plaintiff directly suffered losses and damage.

54. Because said actions by Black were intentional, fraudulent and taken with knowledge that harm likely would result therefrom, or reckless disregard of the likelihood thereof, Plaintiff is entitled to punitive damages against Black.

## XVII. FOURTEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION (Against Winzler)

55. Plaintiff incorporates herein by this reference, as though fully set forth herein, paragraphs 1 through 54, inclusive, of this Complaint.

56. Winzler intentionally misrepresented to the Port Authority of Guam and its agents that its revised design for the repair of the F-1 dolphins was adequate, sufficiently strong, and that it met applicable building codes, engineering design requirements and good engineering practice. Winzler intentionally misrepresented to the Port Authority of Guam and its agents that the type, size, design and content of the materials called for by Black's and Winzler's design were adequate, sufficiently strong and met all applicable building codes, engineering standards and good engineering practice. Winzler further intentionally misrepresented to the Port Authority of Guam, and its agents, after the Project had been completed, that the work had been done properly, in accordance with the plans and specifications, the scope of work, applicable building codes, applicable engineering standards and good engineering practice. It intentionally concealed and misrepresented, inter alia, that the bolts were properly and fully epoxied into the

holes on the undersides of the dolphin caps, in accordance with Winzler's design. Winzler also intentionally concealed and misrepresented to the Port Authority of Guam, and its agents, that its design for the F-1 dolphin repair was the result of and was supported by proper and complete engineering calculations which demonstrated that the pile-to-cap connections were adequate and sufficiently strong. Winzler intentionally concealed and misrepresented the fact that no calculations had been performed to support its design. It further intentionally misrepresented and concealed the substitution of the Anchor-It product for the Redi-Chem product it had specified, and further intentionally concealed and misrepresented the fact that the Anchor-It product was not an appropriate substitute for the Redi-Chem product. Winzler further intentionally concealed and misrepresented that most of the epoxy ran out of many of the holes in the underside of the dolphin caps, and that therefore the bolts were not firmly affixed and the dolphins were seriously weakened. Winzler further intentionally concealed and misrepresented the need for torque testing of the bolts, after they had been installed, and intentionally concealed and misrepresented the fact that no one had torque tested the bolts. Winzler also intentionally concealed and misrepresented the requirement for a special inspection of the epoxy installation, and further intentionally concealed and misrepresented the fact that no such special inspection had been conducted. Winzler further intentionally concealed and misrepresented the need for a vent at the top of each hole drilled into the underside of the dolphin caps, intentionally concealed and misrepresented the fact that Black did not plan to drill such a vent hole, and afterwards intentionally concealed and misrepresented Black's and Winzler's failure to provide such a vent for each hole. Winzler intentionally misrepresented and concealed the fact that the Anchor-It product is not approved for overhead use, and intentionally concealed and misrepresented the nature and quality of Black's unsatisfactory work by allowing the issuance of as built drawings showing that the work had been completed in a proper manner meeting all applicable building

codes, engineering standards and good engineering practice. Winzler further intentionally concealed and misrepresented the fact that its design weakened the structure of the dolphins and shortened their useful life. Winzler further intentionally concealed and misrepresented the fact that its design was approximately one-seventh as strong as it needed to be, in an earthquake-prone and typhoon-prone location such as Guam, when used for docking large, ocean-going tankers.

57.     All of the above were intentional misrepresentations or concealments, and none of the misrepresentations were true. The Port Authority of Guam relied upon each and every such intentional misrepresentation by Winzler, allowed the work to proceed and accepted the work upon completion, based upon the intentional misrepresentations of Winzler, and being ignorant of the problems which Winzler had concealed. The Port Authority of Guam paid its contractors, and through them, Winzler, large sums of money, which would not have been paid had the Port Authority of Guam known the truth.

58.     The intentional misrepresentations and concealments by Winzler, as aforesaid, damaged the Port Authority of Guam and directly led to significant property damage to Port Authority of Guam property during the earthquake which occurred in October of 2001. Therefore Plaintiff directly suffered losses and damage.

59.     Because said actions by Winzler were intentional, fraudulent and taken with knowledge that harm likely would result therefrom, or reckless disregard of the likelihood thereof, Plaintiff is entitled to punitive damages against Winzler.

PRAYER

WHEREFORE, Plaintiff prays for relief and judgment against the Defendants, jointly and severally, and each of them as follows:

1.     For general damages according to proof, in excess of $3 million;

2. For special damages according to proof, in excess of $3 million;

3. For punitive and exemplary damages, according to proof;

4. For costs of suit incurred herein;

5. For attorneys' fees herein as provided for in Exhibits "A" and "B" hereto, and to which Plaintiff may otherwise be entitled; and

6. For such other and further relief as this Court deems just and proper.

DATED: Hagåtña, Guam, April _____, 2005.

CARLSMITH BALL LLP

_____

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on April _____, 2005, I caused to be served, via hand delivery, a true and correct copy of PLAINTIFF S.J. GARGRAVE SYNDICATE AT LLOYDS SECOND AMENDED COMPLAINT; DECLARATION OF SERVICE upon Defendants Counsel of record as follows:

Robert J. O'Connor, Esq.
Daniel J. Berman, Esq.
Berman O'Connor Mann & Shklov
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910

Thomas C. Sterling, Esq.
Klemm Blair Sterling & Johnson, P.C.
Suite 1008, Pacific News Building
238 Archbishop Flores Street
Hagåtña, Guam 96910

and

Thomas M. Tarpley, Esq.
Law Offices of Tarpley & Moroni, LLP
Suite 402, Bank of Hawaii Building
134 West Soledad Avenue
Hagåtña, Guam 96910

Executed this _____ day of April, 2005 at Hagåtña, Guam.

_____
DAVID LEDGER

# EXHIBIT

# "B"

ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813



FILED
DISTRICT COURT OF GUAM

JUN 12 2003

MARY L. M. MORAN
CLERK OF COURT

15

Attorneys for Plaintiff
Leslie Wilton

IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| LESLIE WILTON, | ) | CIVIL CASE NO. 03-00009 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **SCHEDULING ORDER AND** |
| vs. | ) | **DISCOVERY PLAN** |
| | ) | |
| BLACK CONSTRUCTION | ) | |
| CORPORATION and WINZLER | ) | |
| & KELLY CONSULTING | ) | |
| ENGINEERS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SCHEDULING ORDER**

Pursuant to Federal Rules of Civil Procedure 16 and 26(f), and Local Rule of Practice

16.1, the parties hereby submit the following Scheduling Order.

    1.    <u>The nature of the case is as follows.</u>

    Plaintiff alleges six causes of action against Defendants including negligent

property damage, breach of contract, and breach of warranty of workmanlike performance. Plaintiff

seeks general and special damages according to proof, costs of suit and attorneys fees.

3152997.2.055639-00001

**EXHIBIT B**

2.     <u>The posture of the case is as follows.</u>

     (a)     The following motions are on file:  none.

     (b)     The following motions have been resolved:  none.

     (c)     The following discovery has been initiated:  none.

3.     All Motions to add Parties and Claims shall be filed on or before November

1, 2003.

4.     All Motions to Amend Pleadings shall be filed on or before November 1,

2003.

5.     <u>Status of Discovery</u>:  The Discovery Plan attached hereto is adopted and

incorporated as part of this Scheduling Order.

~~The Court has ordered the parties to appear before the District Court on June 12, 2003 at 3:00 p.m. for the Scheduling Conference.~~  The parties, however, agree to waive

appearance at the Scheduling Conference.

7.     The discovery cut-off date (defined as the last day to file responses to

discovery) is May 14, 2004.

8.     (a)     The anticipated discovery motions are:  unknown at this time.

     All discovery motions shall be filed on or before May 21, 2004, and heard on

or before June 11, 2004.

     (b)     The anticipated dispositive motions are:  unknown at this time.

All dispositive motions shall be filed on or before June 25, 2004, and heard on or before July 16, 2004.

9.    The prospects for settlement are: unknown at this time.

10.   The Preliminary Pretrial Conference shall be held on August 23, 2004 (not later than 21 days prior to trial date).

11.   The Parties' Pretrial Materials, Discovery Materials, Witness Lists, Exhibit Lists and Designation of Discovery Responses shall be filed on or before August 30, 2004 (not later than 14 days prior to trial).

12.   The Proposed Pretrial Order shall be filed on or before September 7, 2004 (not later than 7 days prior to trial).

13.   The Final Pretrial Conference shall be held on September 7, 2004.

14.   The trial shall be held on September 13, 2004.

15.   Defendant Black Construction Corporation has submitted a demand letter for jury trial.

16.   It is anticipated that it will take three (3) weeks to try this case.

17.   The names of counsel on this case are:

For Plaintiff:  David Ledger, Esq. & Elyze McDonald, Esq.

For Defendant Black Construction Corporation:  Thomas Sterling, Esq.

For Defendant Winzler & Kelly Consulting Engineers:  Robert O'Connor, Esq. and Daniel Berman, Esq.

18. The parties wish to submit this case to a Settlement Conference.

19. The parties present the following suggestions for shortening trial: none at this time.

20. At this time, there are no issues affecting the status or management of the case.

## DISCOVERY PLAN

1. Depositions of lay witnesses may begin at once and be taken as needed. The parties may call expert witnesses to testify.

2. Unless additional discovery is ordered by the Court, the parties may serve two sets of interrogatories not to exceed 25 and one set of requests for admissions not to exceed 25. The parties may serve any number of requests for production of documents. Unless a shorter time is agreed to, all written discovery shall be served by a date as to afford the answering party the full response time permitted by the applicable rules prior to the Discovery Cutoff.

3. Disclosures and depositions.

   a. Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1) are due on June 26, 2003, two weeks after the June 13, 2003 Scheduling Conference, and shall be supplemented not later than two (2) weeks after such due date.

   b. Disclosure of expert testimony required under Federal Rule of Civil Procedure 26(a)(2) shall be made not later than April 14, 2004.

c.      Subsequent designation of rebuttal expert testimony under Federal Rule of Civil Procedure 26(a)(2) shall be made not later than April 28, 2004.

d.      Depositions of experts designated under Federal Rule of Civil Procedure 26(a)(2) and paragraph 3.b. above, shall be completed not later than the discovery cut-off date. Depositions of rebuttal experts, if any are designated under Federal Rule of Civil Procedure 26(a)(2) and paragraph 3.c. above, shall be completed not later than fourteen days after the discovery cutoff.

e.      Rule 26(a)(3) disclosures shall be made not later than 30 days before trial.

4.      Other than the 25 count limit on Interrogatories and Requests for Admissions, Plaintiff does not anticipate requiring any other changes or limitations on discovery as may be imposed under federal or Local Rules.

5.      The discovery cut-off (defined as the last day to file responses to written discovery) is May 14, 2004. Depositions may be taken until the cutoff date and as provided above in paragraphs 3 and 4.

SUBMITTED this 2nd day of June 2003.

CARLSMITH BALL LLP

*Elyze McDonald*
_____
DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
Leslie Wilton

Dated this **2nd** day of June 2003.

KLEMM BLAIR STERLING &
    JOHNSON, P.C.

THOMAS C. STERLING
Attorneys for Defendant
Black Construction Corporation

Dated this **2nd** day of June 2003.

BERMAN O'CONNOR MANN &
    SHKLOV

ROBERT J. O'CONNOR
DANIEL J. BERMAN
Attorneys for Defendant
Winzler & Kelly Consulting Engineers

## O R D E R

**SO ORDERED** this **11** day of June 2003.

THE HONORABLE JOHN S. UNPINGCO
Judge, District Court of Guam

**RECEIVED**

JUN - 2 2003

DISTRICT COURT OF GUAM
HAGATNA, GUAM

# EXHIBIT

# "C"

KLEMM, BLAIR, STERLING & JO~~RECEIVED~~
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BUILDI
238 ARCHBISHOP F.C. FLORES STREET
AGANA, GUAM 96910
TELEPHONE 477-7857

By THOMAS C. STERLING

*Stamped in Error.*

SUPERIOR COURT
OF GUAM
CLERKS OFFICE

Attorneys for *Defendant Black Construction Corporation*

FILED
DISTRICT COURT OF GUAM

MAR 15 2004

MARY L. M. MORAN
CLERK OF COURT

(35)

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS, ) | CIVIL CASE NO. CV03-00009 |
| ) | |
| Plaintiff, ) | |
| vs. ) | **STIPULATION AND ORDER TO AMEND SCHEDULING ORDER AND DISCOVERY PLAN** |
| ) | |
| BLACK CONSTRUCTION CORPORATION, ) WINZLER & KELLY, and ENGINEERING, ) MANAGEMENT & PLANNING SERVICES ) CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**WHEREAS**, the First Amended Complaint was filed herein on December 23, 2003 which added Engineering, Management and Planning Services Corporation (hereinafter "EMPSCO") as a defendant; and

**WHEREAS**, counsel for EMPSCO has requested a modification of the Scheduling Order and Discovery Plan so as to provide that party with adequate time to perform investigation, discovery and trial preparation; and

//

ORIGINAL

**WHEREAS**, the other parties to this litigation consider the requests by EMPSCO to be reasonable and appropriate under the circumstances.

**NOW, THEREFORE**, the parties hereto stipulate to revisions in the Scheduling Order and Discovery Plan entered herein on June 12, 2003, subject to this Court's approval, as follows:

### SCHEDULING ORDER

1. The discovery cut-off date (defined as the last day to file responses to discovery) as set forth in paragraph 7 is extended until August 16, 2004.

2. The deadline for the filing of discovery motions as set forth in paragraph 8 is extended until August 23, 2004.

3. The deadline for filing dispositive motions as set forth in paragraph 8 is extended until September 24, 2004 and any such motion shall be heard on or before October 22, 2004.

4. The Preliminary Pretrial Conference as provided for in paragraph 10 shall be held on February 8, 2005.

5. The Parties' Pretrial Materials, Discovery Materials, Witness Lists, Exhibit Lists, and Designation of Discovery Responses as provided for in paragraph 11 shall be filed on or before February 15, 2005.

6. The Proposed Pretrial Order as provided for in paragraph 12 shall be filed on or before February 15, 2005.

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

- 2 -

7.   The  Final  Pretrial  Conference  as  provided  for  in
paragraph 13 shall be held on February 17, 2005.

8.   The  trial  as  provided  for  in  paragraph  14  shall
commence at 9:30 a.m. on March 1, 2005.

### DISCOVERY PLAN

Paragraphs 3(b), (c) and (d) shall be revised as follows:

(b)  Disclosure  of  the  Plaintiffs'  experts  and  expert
testimony as required under Federal Rule of Civil Procedure Rule
26(a)(2) shall be made not later than May 14, 2004.

(c)  Disclosure  of  the  Defendants'  experts  and  expert
testimony as required under Federal Rule of Civil Procedure Rule
26(a)(2) shall be made not later than July 16, 2004.

(c)(1)   Any  subsequent  designation  of  a  rebuttal  expert
and  rebuttal  testimony  under  Federal  Rule  of  Civil  Procedure
Rule 26(a)(2) shall be made not later than August 18, 2004.

(d)  Expert  depositions  shall  commence  subsequent  to  the
provision  of  rebuttal  expert  reports  and  all  such  depositions
shall be completed no later than September 30, 2004.

KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION

DATED: MARCH __11__, 2004

BY: _____
THOMAS C. STERLING
*Attorneys for Defendant Black Construction Corporation*

//

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

- 3 -

Case 1:03-cv-00009    Document 158    Filed 04/22/2005    Page 40 of 45

STIPULATION AND ORDER TO AMEND
SCHEDULING ORDER AND DISCOVERY PLAN
CIVIL CASE NO. CV03-00009

BERMAN O'CONNOR MANN & SHKLOV

DATED: MARCH **12**, 2004

BY: _____
DANIEL J. BERMAN
ROBERT J. O'CONNOR
*Attorneys for Defendant Winzler & Kelly Consulting*
*Engineers*

TARPLEY & MORONI, LLP

DATED: MARCH **11**, 2004

BY: _____
THOMAS M. TARPLEY, JR.
*Attorneys for Defendant Engineering, Management &*
*Planning Services Corporation*

CARLSMITH BALL

DATED: MARCH _11/14_, 2004

BY: _____
DAVID P. LEDGER
*Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds*

# ORDER

**APPROVED AND SO ORDERED** this ___MAR 1 5 2004___.

_____
HONORABLE JOHN S. UNPINGCO
CHIEF JUDGE, DISTRICT COURT OF GUAM

E62\27946-29
G:\WORD97\OFFICE\WORDDOC\PLD\TCS\170-S & O TO AMEND
SCHED ORDER & DISC PLAN RE WILTON V BCC.DOC

- 4 -

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÁTÑA, GUAM 96910
Telephone 477-7857

RECEIVED
MAR 1 2 2004
DISTRICT COURT OF GUAM
HAGATNA, GUAM

# EXHIBIT

# "D"

KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

By THOMAS C. STERLING

Attorneys for    *Defendant Black Construction Corporation*

FILED
DISTRICT COURT OF GUAM

AUG 19 2004

MARY L. M. MORAN
CLERK OF COURT

(46)

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS, )<br><br>Plaintiff, )<br><br>vs. )<br><br>BLACK CONSTRUCTION CORPORATION )<br>and WINZLER & KELLY CONSULTING )<br>ENGINEERS and ENGINEERING, )<br>MANAGEMENT & PLANNING SERVICES )<br>CORPORATION, )<br><br>Defendants. )<br>_____ ) | CIVIL CASE NO. CV03-00009<br><br><br><br><br><br>**STIPULATION AND ORDER TO<br>AMEND SCHEDULING ORDER<br>AND DISCOVERY PLAN** |

**WHEREAS,** the conflicting schedules of counsel involved in this action have made it impossible to complete discovery and expert disclosures within the schedule originally envisioned; and

**WHEREAS,** a modification of the schedule in connection with discovery, expert disclosures and motions will not impact the presently scheduled trial date.

**NOW, THEREFORE,** the parties hereto stipulate to the following revisions to the Scheduling Order and Discovery Plan previously entered in this case and the parties further stipulate that the

## ORIGINAL

EXHIBIT D

Federal Magistrate shall be authorized to review and approve this Stipulation.

### SCHEDULING ORDER

1.    The discovery cutoff date (defined as the last day to file responses to discovery) is hereby extended to November 5, 2004.

2.    All depositions of percipient witnesses shall be concluded by November 5, 2004.    All depositions of expert witnesses shall be completed by December 10, 2004.

3.    Any and all motions to be filed in this case shall be filed on or before December 23, 2004.

### DISCOVERY PLAN

1.    The initial expert disclosures in accordance with Rule 26(a)(2) of Engineering, Management & Planning Services Corporation shall be served on or before October 15, 2004.

2.    The rebuttal expert reports of all parties in accordance with Rule 26(a)(2) shall be served not later than November 18, 2004.

All other dates previously established by Order shall remain the same.

KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION

DATED: AUGUST ___13___, 2004        BY: _____
                                          **THOMAS C. STERLING**
                                          *Attorneys for Defendant Black Construction Corporation*

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

1

2

3

4

5

6    DATED: AUGUST __16__, 2004

7

8

9

10

11

12   DATED: AUGUST __16__, 2004

13

14

15

16

17

18   DATED: AUGUST __16__, 2004

19

20

21

22

23   APPROVED AND SO ORDERED this __August 18, 2004__ .

24

25

26

27   E62\27946-29
     G:\WORD97\OFFICE\WORDDOC\PLD\TCS\189-S & O TO AMEND
     SCHED ORDER & DISC PLAN RE GARGRAVE V BLACK ET AL.DOC

28

BERMAN O'CONNOR MANN & SHKLOV

BY: _____

**DANIEL J. BERMAN**
**ROBERT J. O'CONNOR**
*Attorneys for Defendant Winzler & Kelly Consulting*
*Engineers*


TARPLEY & MORONI, LLP

BY: _____

**THOMAS M. TARPLEY, JR.**
*Attorneys for Defendant Engineering, Management &*
*Planning Services Corporation*


CARLSMITH BALL

BY: _____

**DAVID P. LEDGER**
*Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds*


# ORDER

_____

**HONORABLE JOAQUIN V.E. MANIBUSAN, JR.**
MAGISTRATE, DISTRICT COURT OF GUAM

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

**RECEIVED**
AUG 17 2004
DISTRICT COURT OF GUAM
HAGATNA, GUAM

Case 1:03-cv-00009    Document 158    Filed 04/22/2005    Page 45 of 45