CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds




FILED
DISTRICT COURT OF GUAM
APR 22 2005
MARY L.M. MORAN
CLERK OF COURT

146

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S RULE 52(B) MOTION TO AMEND ORDER (ORAL ARGUMENT NOT REQUESTED); MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF SERVICE**<br><br>[F.R.C.P. 52(b)] |

/ / /

/ / /

/ / /

Plaintiff hereby moves this Court, pursuant to Fed. R. Civ. P. 52(b), to amend this Court's Order filed herein on April 8, 2005.[1] Plaintiff will not waste the time of the Court rearguing its position, but wishes to point out that the Court's Order appears to misconstrue or overlook certain **undisputed** evidence which was before the Court in connection with the Defendants' motions. Furthermore, the Court overlooked recent California legal precedent, which directly impacts the "economic loss rule" issues herein.

## I. LEGAL STANDARD FOR A RULE 52(B) MOTION

Pursuant to Rule 52(b), a party may petition the trial court to amend the findings of fact or legal conclusions contained in a judgment or order. The purpose of Rule 52(b) is to permit the correction by the trial court of any manifest errors of fact or law. Where, as here, the only evidence in the record clearly shows that manifest errors of fact and law **do** exist, and that portions of the order herein rest upon incorrect factual assumptions, a Rule 52(b) motion should be granted. National Metal Finishing Co. Inc. v. Barclays American, et al., 899 F.2d 119, 122-123 (1st Cir. 1990).

## II. THE COURT MISAPPLIED THE ECONOMIC LOSS DOCTRINE

### A. Factual Misunderstanding: The Property Damaged Was "Other Property", And Not Defendants' Own Product

The Court was apparently persuaded to grant Defendants' motion for partial summary judgment regarding the first, second and third causes of action (negligent property damage) because Plaintiff's First Amended Complaint, in the Background section, ¶ 15, refers to serious damage to "F pier, and the dolphins thereof". The Court apparently misunderstands one crucial and undisputed fact: **Black did not construct either the pier or the dolphins; Black**

---

[1] Plaintiff's Rule 52(b) motion to amend the Order is due to be filed, pursuant to Rule 6(a), not later than April 22, 2005, since Saturdays, Sundays and legal holidays are not counted in the 10-day period provided by Rule 52(b).

merely reattached certain piles to the dolphins, after the first earthquake.[2] Likewise, it is undisputed that neither Winzler & Kelly nor EMPSCO designed **either** the pier or the dolphins, which were built in 1970. All work by Defendants was done to **pre-existing** structures. See Boone report, attached as Exhibit 1 to the Tarpley Declaration, filed herein November 11, 2004 (hereinafter the "Boone report"), p. 2; Order, pp. 2-3. In the case the Court primarily relied on, East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986), the Defendants supplied, and Plaintiff purchased, a large and very expensive "product", an oil tanker with gas turbine engines. 476 U.S. at 859-60. The Supreme Court denied Plaintiff a tort claim, because the failure of the product itself to function properly was essentially a warranty action, which the Court felt should be handled by contract and not tort law. *Id.*, at 868.

In the instant case, Plaintiff is not suing for damage to the "products" provided by Defendants: the 8-inch bolts and flange collars. Rather, Plaintiff is suing for physical damage to the 1970-built pile caps and equipment on the pier facility. This damage occurred when the existing concrete and rebar connections between the piles and caps were deliberately cut by Black, which then reconnected the piles using small, inadequate bolts. See, Boone report, pp. 2, 7-9. This new connection technique allowed movement and bouncing of the pile caps during the second earthquake, which damaged the caps and other parts of the F-1 Pier complex, including pipe lines, water lines, electric lines, fire mains, catwalks, manifolds and other equipment. Defendant Black did not build, and the Defendant engineers did not design, the F-1 Pier, the pile caps, the piles, or any of the related equipment enumerated above. See Basic Bid Schedule, part of the Black contract, attached as Exhibit A to the First Amended Complaint. As such, none of those items are the "product itself"; they are "other property", and Plaintiff can recover in tort for

---

[2] See Black's contract with the Port Authority of Guam, p. 1, attached as Exhibit A to the First Amended Complaint, wherein Black agreed to do "repairs and upgrading" of the already existing F-1 Pier.

4812-3187-0720.1.055639-00001    2.
Case 1:03-cv-00009    Document 159    Filed 04/22/2005    Page 3 of 12

damage to all of them. East River Steamship, *supra*, 476 U.S. at 863 n. 1; Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 877 (1997). Plaintiff's recovery for damage to the F-1 Pier cannot be limited, even if the economic loss doctrine applies[3], because the Pier, dolphins, caps and other property were not "products" supplied by any of the Defendants; they were the insured Port's "other property". 520 U.S. at 877.

> B. **Legal Issue: Admiralty Law Does Not Apply, And Under California Law, The Economic Loss Rule Does Not Limit Plaintiff's Damages Recovery**

The court herein dismissed Plaintiff's first, second and third causes of action, citing primarily to the Supreme Court's admiralty holding in East River Steamship, *supra*.

This is not an admiralty case, however. As Judge Tashima dispositively decided herein on March 21, 2005, "this case does not fall under admiralty jurisdiction ..." Accordingly, state law and not federal law governs this action. See, *e.g.*, Abbud v. City of N.Y., 1997 U.S. Dist. LEXIS 15915 (S.D.N.Y. 1997) ("The application of admiralty law is coterminous with the reach of admiralty jurisdiction ... If a case is not within the court's admiralty jurisdiction, admiralty law does not apply and state law applies."); Ellis v River Port Enterprises, 957 F.Supp. 105, 106 (E.D. Ky. 1997); and In Re Horizon Cruises Litigation, 101 F.Supp.2d 204, 207 (S.D.N.Y. 2000). Without its basis in admiralty law, the Court's ruling on the first, second and third causes of action collapses.

### III. IF APPLICABLE AT ALL, THE ECONOMIC LOSS RULE OF CALIFORNIA PRESUMPTIVELY GOVERNS THIS ACTION, SINCE THERE IS NO GUAM CASE ON POINT.

> A. **California State law, not federal law, applies to this case.**

As a general principle, the courts of Guam look to California cases for guidance when no Guam precedent exists, particularly where, as here, negligence causes of action are at

---

[3] Which Plaintiff denies; see *infra*.

issue. Camacho v. DuSung Corp., 121 F.3d 1315, 1317 (9th Cir. 1997) (where the Ninth Circuit declared that in the absence of Guam precedent "… this court and the Guam courts consider California negligence cases to be persuasive authority.") See also, Guam v. Agualo, 948 F.2d 1116, 1118 (9th Cir. 1991) ("Where Guam law is unclear, California cases are especially persuasive.") The law of California is regularly and properly applied to and followed in disputes arising in Guam, or out of Guamian transactions. Taber v. Maine, 67 F.3d 1029, 1034 (2d Cir. 1995).

      B.    **California law narrowly construes the economic loss rule.**

In 2002, the California Supreme Court issued an opinion which "sharply narrows the economic loss rule …" Jiminez v. Superior Court, 29 Cal.4th 473, 488 (2002) (J. Brown, concurring and dissenting). Following California decisional law, and not East River, the Jiminez court affirmatively declared that the economic loss rule does not bar recovery in tort for damage which a defective product causes to other portions of a larger product (*Id.*, at 483). The Court held that a homeowner had a tort remedy, and was not limited to contract damages, when a defectively manufactured window caused damage to other parts of a pre-existing home in which it was installed. More recently, in Robinson Helicopter Co., *supra*, the California Supreme Court emphatically refused to uphold a "broad interpretation" of the economic loss rule which bars tort recovery in any case where only economic loss occurs. (*Id.*, at 991, n. 7).

Applying state law, as this Court must, Plaintiff's claims are not barred by the economic loss doctrine.

      C.    **Because Defendants' Services Damaged A Pre-Existing Structure, Which Was Not Constructed, Designed Or Otherwise Produced By Defendants, The Wrongs They Committed Against Plaintiff Are Not Subject To The Limitations Of The Economic Loss Rule**

As the California Supreme Court explained in Robinson Helicopter Co. v. Dana

Corp., 34 Cal.4th 979 (Dec. 23, 2004), "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Id.*, at 988. However, the economic loss rule <u>does</u> allow a plaintiff to recover tort damages for a defective good or service[4] which causes damage to "other property" – that is, property other than the product itself. *Id.*, at 989. The issue, therefore, is first to determine what is the product itself, and what is "other property" which is not subject to the economic loss rule. Jiminez, *supra*, at 483. In California, the concept of recoverable property damage has been "expanded to include damage to one part of a product, caused by another defective part." Jiminez, *supra*, at 483-4.

It is necessary to look to see what the parties contracted for. Here, the Port Authority of Guam contracted for repairs to an already existing pier and dolphin system. See, Black contract, *supra*, n. 2. Consequently, the services rendered by Defendants could not have included providing that pre-existing pier and dolphin system; it was not their "own product". Generally, the goods provided, or services rendered, must be conveyed to the Plaintiff more or less contemporaneously with some other product or unit in order to be subject to the economic loss rule. See, *e.g.*, the Supreme Court's opinion in Saratoga Fishing, *supra*, where the Court held that equipment added to a product substantially <u>after</u> that product has been manufactured or produced by someone else, is not part of the product that itself caused the physical harm, and is "other property" not subject to the economic loss rule. *Id.*, at 884-885. This is the rule in California, as in other states. See, *e.g.*, Jiminez, *supra*, where the Court explained that the economic loss rule did not apply to damage caused by negligently-installed windows to a pre-existing home because the already extant structure was other property, and not the window

---

[4] As this Court assumed in its Order, the economic loss rule, and the cases which define and limit its scope, apply to service contracts, as well as contracts for the sale or manufacture of goods. See, *e.g.*, Gunkel v. Renovations Inc., 822 N.E.2d 150 (Ind. S.Ct. 2005).

manufacturer's own product. See also, Gunkel v. Renovations Inc., 822 N.E.2d 150, 155-156 (Ind. S.Ct. 2005) ("property acquired separately from the defective good or service is 'other property', whether or not it is intended to be incorporated into the same physical object."). The Gunkel court specifically held that "... the economic loss rule does not bar recovery in tort for damage that a separately acquired defective product or service causes to other portions of a larger product and to which the former has been incorporated," citing to Jiminez as authoritative California precedent. Accordingly, since the services rendered by Defendants were made to an already existing "product" (the pier and dolphin system), as a matter of law the pre-existing product cannot be Defendants' "own product". Therefore any losses sustained by Plaintiff to the pier and dolphin system may be sued for in tort, and are not subject to the economic loss rule at all.

### D. Under California Law, Plaintiff May Sue For Defendants' Fraud And Misrepresentation

Between the date when briefing by the parties concerning the Defendants' motions was complete (November 26, 2004) and the most recent (April 6, 2005) hearing on Defendants' motions, a significant new case involving the economic loss doctrine was decided by the Supreme Court of California. Robinson Helicopter Co. v. Dana Corp., 34 Cal.4th 979 (Dec. 23, 2004). In that case, the California Supreme Court held that "... the economic loss rule does not bar tort recovery", even in the absence of personal injury or physical damage to other property. 34 Cal.4th at 985. The Supreme Court in Robinson Helicopter overturned the decision of the court below, and held that the economic loss rule does not bar fraud and intentional misrepresentation claims in a breach of contract action. *Id.*, at 988.[5] Plaintiff brought this new

---

[5] Plaintiff's motion to amend the scheduling order to grant Plaintiff leave to amend its Complaint to add causes of action for fraud and intentional misrepresentation, based on Robinson Helicopter, is currently pending before this Court.

case authority to the Court's attention on February 11, 2005[6], but the Court's Order does not mention either this new authority from California's highest court, or Plaintiff's Request to Dismiss.

The basis of the Court's jurisdiction herein is diversity. Therefore, since no federal statute applies, state law controls this claim. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). There being no controlling Guam authority, Plaintiff submits that the recent change in the law, enunciated by the California Supreme Court in December of last year, is persuasive authority that Plaintiff is entitled to bring tort claims for fraud and intentional misrepresentation.

### E. The Economic Loss Rule Is Applied More Narrowly To Service Contracts

In No.Am. Chem. Co. v. Superior Court, 59 Cal.4th 764 (1997), the court explained that service contracts are treated differently than contracts for the sale of goods with regard to the economic loss rule, and for services, the rule is narrowly applied. Where, as here, a contractor's negligent performance of a contractual service results in foreseeable economic loss, the economic loss rule may not apply at all. *Id.*, at 777.

## IV. Plaintiff is an Assignee Holding Uninsured Claims

The Order grants Defendants partial summary judgment because it does not recognize the document signed by the insured Port Authority of Guam as a written assignment to the insurers. In doing so, the Court ignores the words "assigns and transfers" in the document, and faults Plaintiff for not citing case law in support of its position.

Subrogation occurs by operation of law, and for subrogation rights to pass when an insurer pays a claim, no written document is required. Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal.3d 622, 633 (1975). Once an insurer pays a claim, the rights to recover against third

---

[6] Plaintiff's Suggestion of Mootness and Request to Dismiss or Hold Pending Motions in Abeyance, filed herein on February 11, 2005.

parties flow to the insurer automatically, without the need for a written assignment such as the one herein. Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101 (2$^d$ Cir. 1992). But according to the Court's Order, the words "assigns and transfers" in the document, which is contained in Exhibit A to the MacDonald Declaration, are meaningless and have no legal effect. Plaintiff respectfully submits that this is error.

The policy was subject to a $500,000 deductible. Insurance Policy, Exhibit C to the Sterling Declaration, filed herein on October 28, 2004; Order, p. 4. The Port was uninsured for this amount. This is one of the items intended to be assigned to the Plaintiff, since after investigation, Mr. Peter MacLeod determined that the repairs had been defectively designed and carried out, and that a subrogation claim should be pursued. MacLeod deposition, p. 44, Exhibit H to the Sterling Declaration, filed herein on October 28, 2004; Order, p. 3. "Transfer" means to convey title to any kind of property. California Civil Code § 1039. No particular formality is required; all that is needed is "... a manifestation to another person by the owner of the right indicating his intention to transfer, without further action or manifestation of intention, the right to such other person, or to a third person." Cockerell v. Title Ins. & Trust Co., 42 Cal.2d 284, 291 (1954). Claims and choses in action are assignable when they arise out of an obligation or out of the violation of a right of property. California Civil Code §§ 954, 1458.

There are important reasons why an insurer needs a written assignment in a case such as this.

> The insured may have additional claims against the same or other parties, either tort claims or contractual claims that arose from other losses, which do not pass by subrogation. An express assignment of rights from the insured can transfer these other causes of action, to the extent they are legally assignable, whether or not the injuries or damages were compensated by the performing insurer. Shifrin v. McGuire & Hester Constr. Co. (1966) 239 CA2d 420, 48 CR 799 (assignment transferred

insured's right of recovery for losses on both insured and
uninsured property).

2 M. Colleen Clancy, California Liability Insurance Practice, 863-4 (13th ed. 2003). Here, the written assignment was executed at the time the settlement of the insurance claim was reached, in order to transfer to Plaintiff the Port's uninsured claims against the Defendants.

Black's Law Dictionary defines "assign" as "... to make over or set over to another". (4th ed. 1968). Again, if the intention of the Port Authority of Guam and Underwriters had been that Plaintiff would have rights only to the extent of the actual payments made, no written assignment would have been required, since subrogation rights pass automatically. Gibbs, *supra*. The agreement between the Port Authority of Guam and Underwriters was a compromise reached after extensive, and sometimes acrimonious, negotiations between the public adjuster representing the Port and Peter MacLeod representing Underwriters. The parties thereto having negotiated and signed a written agreement, the Court should not now read out of it, and render meaningless, the words "assigns" and "transfers", which were put in the agreement for a reason. Contracts, including insurance agreements, should be given their plain, ordinary meaning whenever possible. Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal.4th 645, 666-667 (1995). Here, more than just subrogation rights[7] were assigned and transferred by the subject Form.

## V. Conclusion

Plaintiff respectfully requests that the Court amend its Order of April 8, 2005 to deny Defendants' motion for partial summary judgment on the first, second and third causes of action (negligent property damage), and to allow Plaintiff to pursue its claims for economic losses, as authorized by Robinson Helicopter, *supra*, and Jiminez, *supra*. Plaintiff further

---

[7] These include the $500,000 policy deductible, as well as claims for shortened life expectancy of the F-1 Pier, Port staff salaries and overtime, and other uninsured (and uninsurable) claims and expenses.

requests that the Court amend its Order to deny Defendants' motion for partial summary judgment on the limitation of damages, and recognize that the Loss and Subrogation Form signed by the Port Authority of Guam is a valid transfer and assignment to Plaintiff of uninsured rights.

DATED: Hagåtña, Guam, April 22, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on April 22, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S MOTION TO AMEND ORDER [F.R.C.P. 52(B)]** upon Defendants Counsel of record as follows:

    Robert J. O'Connor, Esq.
    Daniel J. Berman, Esq.
    Berman O'Connor Mann & Shklov
    Suite 503, Bank of Guam Building
    111 Chalan Santo Papa
    Hagåtña, Guam 96910

    Thomas C. Sterling, Esq.
    Klemm Blair Sterling & Johnson, P.C.
    Suite 1008, Pacific News Building
    238 Archbishop Flores Street
    Hagåtña, Guam 96910

and    Thomas M. Tarpley, Esq.
    Law Offices of Tarpley & Moroni, LLP
    Suite 402, Bank of Hawaii Building
    134 West Soledad Avenue
    Hagåtña, Guam 96910

Executed April 22, 2005 at Hagåtña, Guam.

_____
DAVID LEDGER