BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 499-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP.,<br><br>Defendants. | Civ. No. CIV 03-0009<br><br>WIZNLER & KELLY'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER |

## PRELIMINARY STATEMENT:
### THE COURT HAS ALREADY ADDRESSED AND REJECTED THIS ISSUE

The court has asked the parties to address whether the court has already addressed this issue when it was raised by Plaintiff in its pleading of February 11, 2005. See Order of April 27, 2005. It has, and it has rejected Plaintiff's argument.

In its February 11, 2005, "Suggestion of Mootness and Request to Dismiss or Hold in Abeyance," the Plaintiff Syndicate argued, just as it does again now in two new and separate motions,[1] that California Supreme Court's decision in Robinson Helicopter

---

[1] The instant Motion to Modify Scheduling Order, and also the pending Rule 52(b) Motion To Amend Order (also filed April 22).

1

Co. v. Dana Corp., 34 Cal.4th 979 (2004), turns this whole case upside down, and stated that it would "shortly file a motion for leave to amend the Complaint herein," so as to add claims for "fraud, misrepresentation and punitive damages." See Suggestion of Mootness at 2.

The court was unimpressed. In its order of April 8, 2005, the court, per Judge Jones, stated: "The Court DENIES the plaintiff's Suggestion of Mootness and Request to Dismiss or Hold in Abeyance." April 8 Order at page 22, paragraph 9. Although the court's order does not go into any more detail on the subject, this much alone is sufficient to show that the court had reviewed and considered the arguments in the "Suggestion of Mootness," and the potential impact on this case of Robinson Helicopter, prior to ruling on the last round of motions, and had found the Syndicate's position wanting.

For that reason alone, Plaintiff's instant Motion to Modify Scheduling Order should be denied. Were this not enough, however, it should also be denied on its own merits, for the following reasons.

### ARGUMENT ON THE MERITS: PLAINTIFF IS REALLY MAKING TWO MOTIONS, AND BOTH OF THEM SHOULD BE DENIED

Plaintiff styles its motion a "Motion to Modify Scheduling Order." It is that and more. It is also a motion for leave to amend the complaint so as to add numerous new causes of action, as well as to resurrect several as to which the court has already granted judgment on the pleadings in favor of the Defendants.

This case, as presently constituted, consists of three causes of action – one claim for breach of contract against each of the three defendants. It is set to go to trial in that posture on June 13, 2005, only six weeks from now. The proposed Second Amended

2

Complaint would expand that to *fourteen* causes of action. In addition to the three existing contract claims, six claims for negligence and maritime warranty, which the court has already dismissed in the last round of motions, are inexplicably to be brought back. In addition to this, five new claims are added on theories Plaintiff has never previously raised in this case -- negligent misrepresentation against all three defendants, and intentional misrepresentation against Black and Winzler & Kelly (but not EMPSCO).

It is much too late for the Syndicate to be seeking to add entirely new theories to its case. Discovery has long since concluded and trial is only a few short weeks away. Indeed, even without considering the substantial extra discovery that the Syndicate's new theories will necessitate, the timetable is simply not feasible. Even if the court were to grant the Syndicate's motion the day briefing closes (May 3), and an amended complaint were to be filed the same day, Defendants would have twenty days to respond to it – i.e., to May 23. If any defendant then filed a motion to dismiss rather than an answer (which is highly likely), then, even assuming no party sought oral argument, the opposition to the motion would be due two weeks later – June 6 – and any reply a week later – June 13, the trial date. See District of Guam Local Rule 7.1 (briefing schedule for motions).

Plaintiff's motions were brought with undue delay, and would result in great prejudice to all Defendants. They should be denied in their entirety.

## 1. THE RULE 16 MOTION TO MODIFY SCHEDULING ORDER SHOULD BE DENIED, AS THE SYNDICATE HAS NOT BEEN DILIGENT IN BRINGING IT

a.   *Procedural Deficiencies of the Motion.*

There are, to begin with, some procedural deficiencies in the motion. Rule 16(b)(6) of the Federal Rules of Civil Procedure provides in pertinent part that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the

3

district judge, or, when authorized by local rule, by a magistrate judge." District of Guam Local Rules do not, at least not explicitly, authorize a magistrate judge to modify a scheduling order. See LR 16.5 ("A deadline established by a Scheduling Order will be extended only upon a good cause finding by the Court."). Some question therefore exists as to whether this motion is even properly before the court.

The local rules also provide that "[a] motion to extend the deadline in a Scheduling Order must demonstrate a specific need for the requested extension, and should be accompanied by a detailed proposed amendment to the previously entered Scheduling Order." LR 16.5. Plaintiff does not provide any detailed proposed amendment, probably because any detailed new scheduling order would reveal the expansion of discovery which would necessarily follow from an amended complaint, and which could not possibly be worked into the existing schedule, which provides for a trial date of June 13.

*b. The Syndicate Demonstrates No Good Cause and No Diligence.*

Procedural matters aside, the heart of any motion to modify a scheduling order must be "a showing of good cause." See Fed.R.Civ.P. 16(b)(6). The meaning of "good cause" in this context is discussed in Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992) – a case that the Syndicate cites, but which does not support the Syndicate's position on the motion. Johnson holds as follows:

> A court's evaluation of good cause is not coextensive with an inquiry into the propriety of an amendment under Rule 15. Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although

4

the existence and degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

975 F.2d at 609 (citations and internal quotation marks omitted).

Likewise, the court in Coleman v. Quaker Oats Co., 232 F.3d 1271 (9th Cir. 2000), held that the liberal amendment policy of Rule 15 no longer obtains once the case management scheduling order has been entered, and that even under that standard, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Id. at 1294-95 (quoting Acri v. Int'l Ass'n of Machinists and Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986)). Finding plaintiffs not to have been diligent in asserting their new theories, the Coleman court denied their motion to modify the scheduling order so as to amend. See also, e.g., Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (upholding district court's denial of motion to modify scheduling order, where the moving party "did not demonstrate diligence in complying with the dates set by the district court").

Diligence is thus the key, and the Plaintiff Syndicate in this case has *not* been diligent. It could have added claims for negligent or intentional representation months or, indeed, years ago, but did not.[2] The Syndicate's claim that the decision in Robinson Helicopter descended from the sky amid choirs of angels last December, rearranging the law and the rights and obligations of the parties in new and entirely unforeseen ways, and creating causes of action where none previously existed, like some kind of last-minute judicial *deus ex machina*, is absurd. Robinson Helicopter, to begin with, affects only

---

[2] The original complaint was filed in this matter March 2003, more than two years ago.

5

Case 1:03-cv-00009   Document 172   Filed 05/02/2005   Page 5 of 11

California law,[3] and at any rate does no more than state what has already long since been the law across the nation – that the economic loss doctrine does not bar a claim for fraud. "Virtually every jurisdiction that has considered this issue had determined that the Economic Loss Doctrine does not bar fraud and misrepresentation." Steven C. Tourek *et al.*, Bucking the "Trend:" The Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action For Fraud and Misrepresentation, 84 Iowa Law Review 875, 892 (1999).[4] If the Syndicate was truly unaware until Robinson Helicopter that such was the state of the law, it demonstrates a remarkable lack of diligence.[5]

Moreover, it is patently obvious that the Robinson Helicopter gambit is merely a smokescreen, that the question of what is or is not barred by the economic loss doctrine played no part whatsoever in the Syndicate's drafting of its original complaint, and that the Syndicate is merely thrashing about clutching at straws after losing its negligence and admiralty claims. As shown above, there was no reason for the Syndicate ever to think that the economic loss doctrine barred a claim for fraud, but it still declined to assert one. By contrast, there was every reason in the world for it to think that the doctrine could bar its *negligence* claims, but it went ahead and asserted such claims anyway. And now the

---

[3] While California courts' construction of California statutes adopted by Guam may be persuasive, Guam gives no special weight to California decisions of common law.

[4] Footnote 85 to this article, in which the statement is substantiated with copious citations to decisions from multiple jurisdictions, all of which precede the filing of the original complaint in this matter, is attached hereto.

[5] Indeed, it demonstrates that the Syndicate did not even read Winzler & Kelly's motion for judgment on the pleading on the Syndicates negligence claim, based on the economic loss doctrine, since Winzler & Kelly attached to that motion a copy of Lee v. TAC International Constructors, Inc., NMI Super. Ct. Civ. No. 96-349 (June 2, 1997), in which the CNMI Superior Court – seven years before Robinson Helicopter – reached the same conclusion, and specifically refused to apply the economic loss doctrine against a claim for fraud. Slip op. at 7-8.

6

Syndicate invokes Robinson Helicopter as its justification for adding negligent and well as intentional misrepresentation claims, despite the fact that Robinson Helicopter says nothing about negligent misrepresentation at all![6] The Syndicate's Robinson Helicopter arguments strain credulity to the breaking point, and should be rejected out of hand by the court.

## 2. THE IMPLICIT RULE 15 MOTION TO AMEND COMPLAINT SHOULD BE DENIED, BASED ON UNDUE DELAY AND PREJUDICE TO PARTIES

Even if the Syndicate had established good cause for amending the scheduling order under Rule 16 -- which it manifestly has not -- it must still show that amendment would be proper under Rule 15. See Johnson, supra, 975 F.2d at 608 (citing Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987)). It cannot do this either. While leave to amend should be granted freely "when justice so requires," it "is not to be granted automatically," Zivkovic, supra, 302 F.3d at 1087, and a "district court may deny a motion for leave to amend if permitting an amendment would, among other things, cause an undue delay in the litigation or prejudice the opposing party." Id. Both circumstances exist in this case.

Undue delay and prejudice exist when the proposed amendment would raise new theories late in the case. In Zivkovic, for example:

> Zivkovic's proposed amended complaint would have added causes of action for promissory estoppel and constructive fraud. The additional causes of action would have required further discovery, which was to close five days after the motion to amend was filed. The requirement of additional discovery would have prejudiced Edison and delayed the

---

[6] The CNMI court in Lee held that a claim for negligent misrepresentation, like a claim for negligence but unlike a claim for intentional misrepresentation, *is* barred by the economic loss doctrine. Slip op. at 9-10.

7

proceedings. The district court, therefore, did not abuse its discretion when denying Zivkovic's motion to amend.

302 F.3d at 1087. Similarly in DeBry v. Tranasamerica Corp., 601 F.2d 480 (10th Cir. 1979), the court affirmed the district court's denial of a motion to file a third amended complaint, noting that "the case had been on file for eighteen months," and "[t]he trial setting was three months off," but "[t]he tendered complaint brought in new concepts and theories which created a hazard that postponement of trial would be necessary." Id. at 492. The court of appeals agreed with the trial court that:

> The interests of fairness and justice to both parties are best served at this stage of the case by avoiding the additional discovery and trial preparation which the different causes of action would require. The additional causes of action which the plaintiffs seek to include by this amendment do not represent new areas of the law that could not have been developed further and incorporated into this cause of action at an earlier date.

Id. See also, e.g., Parker v. Joe Lujan Enterprises, Inc., 848 F.2d 118, 121 (9th Cir. 1988) (upholding denial of leave to amend where defendant would "be forced to reprepare its case for trial on an entirely new factual theory of liability [and] would be compelled to conduct more off-shore discovery").

In this case, the same situation that caused the court in DeBry to deny the motion to amend exists in even more egregious form. This case has been on file since March 18, 2003 – twenty-five months. Trial is set for June 13 – less than two months off. And again, the tendered complaint brings in new concepts and theories, creating the hazard of postponement of the trial, as well as extensive new discovery. If leave to amend is granted, in other words, we will be brought, after more than two years of litigation, right back to square one. This must not be allowed, and the motion must therefore be denied.

8

## CONCLUSION

Because the Syndicate has shown no diligence, and thus no good cause for modifying the scheduling order, its Rule 16 motion to modify should be denied. Because amendment of the complaint at this late stage is sought with undue delay, and would redound to the unjust prejudice of all parties, the Syndicate's implicit Rule 15 motion to amend the complaint should also be denied.

Respectfully submitted this second day of May, 2005.

> BERMAN O'CONNOR MANN & SHKLOV
> Attorneys for Winzler & Kelly
>
> By: _____
> Michael J. Berman

[FN85]. See, e.g., Squish LaFish, Inc. v. Thomco Specialty Prods., Inc., 149 F.3d 1288, 1291 (11th Cir. 1998) (applying Georgia law, the court found that the manufacturer's reliance on the misrepresentations brought the claim within the negligent misrepresentation exception to the economic loss rule); Trans States Airline v. Pratt & Whitney Canada, Inc., 86 F.3d 725, 731 (7th Cir. 1996) (applying Illinois law, the court noted an exception to the general rule precluding recovery of economic losses in tort exists "where the plaintiff's damages are the proximate result of a defendant's intentional, false representation"); Ballard Shipping Co. v. Beach Shellfish, 32 F.3d 623, 625 & n.1 (1st Cir. 1994) (applying federal admiralty law, the court stated that the "classic exceptions" to the Economic Loss Doctrine include ""claims for economic losses that are intentionally caused"); City of Richmond v. Madison Management Group, Inc., 918 F.2d 438, 446-47 (4th Cir. 1990) (applying Virginia law, the court stated that defendants were "not entitled to the protection of the economic loss rule" in a case involving a fraud claim); McCarthy, Lebit, Crystall & Halman Co. v. First Union Management Co., 622 N.E.2d 1093, 1105 (Ohio Ct. App. 1993) (stating that """courts hold the economic loss rule does not apply ... where one intentionally makes false representations ...."); Jones v. Trucks of Duluth, Inc., No. C3-91-1476, 1992 WL 83311, at *1-2 (Minn. Ct. App. Apr. 28, 1992) (holding that the Economic Loss Doctrine does not bar misrepresentation and fraud claims); Ohio Sav. Bank v. H.L. Vokes Co., 560 N.E.2d 1328, 1331 (Ohio Ct. App. 1989) (holding that "a cause of action for fraud is maintainable in addition to a U.C.C. cause of action"); Johnson v. Land O'Lakes, Inc., 18 F. Supp. 2d 985, 1001-02 (N.D. Iowa 1998) (applying Iowa law, the court held that the U.C.C. as adopted in Iowa does not displace the plaintiff's tort claims); In re Ford Motor Co. Vehicle Paint Litig., No. MDL 1063, 1997 WL 539665, at *7 (E.D. La. Aug. 27, 1997) (applying New York law, "[t]he Court ... notes that New York courts commonly permit fraud claims seeking recovery for economic injuries to proceed"); In re Ford Motor Co. Vehicle Paint Litig., No. MDL 1063, 1996 WL 426548, at *24 (E.D. La. July 30, 1996) (applying Alabama law, "the court will not dismiss [plaintiff's] fraud claim on the basis of the economic loss doctrine"); id. at *11 (applying North Carolina law, "[t]he Court finds that plaintiff's North Carolina fraud claim is not barred by the economic loss doctrine"); id. at *15 (applying Louisiana law, the court states that "Louisiana allows recovery in tort for purely economic losses for negligent misrepresentation" (citing Barrie v. VP Exterminators, 625 So. 2d 1007, 1014 (La. 1993))); id. at *17 (applying Mississippi law, "[t]he Court does not find this [fraud] claim barred by the economic loss doctrine"); Arthur D. Little, Inc. v. Dooyang, 928 F. Supp. 1189, 1205 (D. Mass. 1996) (applying Massachusetts law, the court stated that "the economic loss rule does not apply to harm caused by intentional misrepresentations"); Saint Denis v. Department Hous. & Urban Dev., 900 F. Supp. 1194, 1201 (D. Alaska 1995) (applying Alaska law, the court stated that "[w]hen products do not meet the purchaser's expectations, the purchaser's redress must be found in an action on the contract or for deceit"); Commercial Union Ins. v. Roxborough Joint Venture, 944 F. Supp. 827, 831 & n.3 (D. Colo. 1995) (applying Colorado law, the court noted that the "economic loss rule is not absolute," and indicated that "liability in tort and in contract can coexist ... where the conduct is intentional, rather than negligent conduct"); In re Ford Motor Co. Bronco II Prod. Liab. Litig., No. Civ. A. MDL-991, 1995 WL 714441, at *7 (E.D. La. Dec. 4, 1995) (applying Indiana law and holding that "plaintiffs' Indiana law claims for fraud and misrepresentation are not barred by the economic loss doctrine"); id. at *5 (applying West Virginia law and stating that "[p]laintiffs' state law fraud and misrepresentation claims are not barred by the Economic Loss Doctrine ...."); id. at *6 (applying Texas law and noting that """fraud and misrepresentation cases are commonly recognized exceptions to the rule of nonrecovery of purely economic loss in tort cases"); Auger v. The Stouffer Corp., No. 93-2529, 1993 WL 364622, at *5 (E.D. Pa. Aug. 31, 1993) (applying Pennsylvania law and recognizing an exception to the Economic Loss Doctrine "where one intentionally makes a false representation"); Vermont Plastics, Inc. v. Brine, Inc., 824 F. Supp. 444, 451 (D. Vt. 1993) (applying Vermont law, the court stated that "the Vermont Supreme Court allowed a plaintiff to recover for purely economic damages under a negligent misrepresentation theory"); Gottstien v. National Ass'n for the Self Employed, 53 F. Supp. 2d 1212, 1223 (D. Kan. 1999) (applying Kansas law and observing that the economic loss "doctrine does not bar fraud claims"); Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., No. 87-1248-C, 1991 WL 177961, at *4 (D. Kan. Aug. 9, 1991) (applying Kansas law, the court stated that "a [p]laintiff may bring a claim of fraud based on the same representations that were otherwise disclaimed as express warranties"); Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269, 1274 (N.D. Pa. 1990) (applying Pennsylvania law to recognize an exception to the Economic Loss Doctrine for intentional misrepresentation); Northern States Power Co. v. International Tel. & Tel. Corp., 550 F. Supp. 108, 112 (D. Minn. 1982) (applying Minnesota law and stating that

"misrepresentation is a distinct tort" and there is no reason to interpret the Economic Loss Doctrine "to bar all tort recovery" including fraud and misrepresentation); Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41 (Tex. 1998) (stating that """tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract"); Alloway v. General Marine Indus., 695 A.2d 264, 274 (N.J. 1997) (stating that "in addition to the right to recover under the U.C.C., victims of fraud or unconscionable conduct possess substantial rights to recover for common-law fraud or for violations of various state and federal statutes"); Bronster v. United States Steel Corp., 919 P.2d 294, 307 (Haw. 1996) (stating that "the economic loss rule does not bar actions based on negligent misrepresentation or fraud"); American Towers Owners Ass'n v. CCI Mechanical, Inc., 930 P.2d 1182, 1189 n.11 (Utah 1996) (stating that "a plaintiff may ... recover purely economic losses in cases involving intentional torts, e.g. fraud...."); Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443, 452 (Ill. 1982) (stating that "this court has held that economic loss is recoverable where one intentionally makes false representations"); Council of Unit Owners v. Carl M. Freeman Assoc., Civ. A. Nos. 86C-AU-49 to 86C-AU-52, 1990 WL 177632, at *5 (Del. Super. Ct. Oct. 16, 1990) (stating that "fraud is a recognized exception to the limitations of the Economic Loss Doctrine"); see also Goble, supra note 83, at 244 (discussing Idaho case law).