LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

3ZP7002
Attorney *for* Defendant Engineering, Management
& Planning Services Corporation



IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>v.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT, & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CIV03-00009<br><br>**EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO LIMIT EXPERT TESTIMONY** |

## INTRODUCTION

Plaintiff's opposition is nothing more than a misstatement of the record, an attempt to mislead this Court as to the substance of the initial report of Plaintiff's expert, and a mis-characterization of Plaintiff's latest disclosures as a "supplemental report" rather than an entirely new and untimely "Rebuttal Report". The Federal courts and Rules are in accord that the "automatic sanction" for untimely disclosure is preclusion of this new testimony, unless Plaintiff can demonstrate "substantial justification" for its failure to have disclosed this information in a timely manner. Plaintiff has failed to do so, thus EMPSCO is entitled to the automatic sanction of preclusion of this testimony.

## DISCUSSION

In this case Plaintiff alleges that the Port employed Defendant EMPSCO as its engineering consultant to provide engineering consulting services for the repair of the F-1 Foxtrot pier following the earthquake of 1993. *See First Amended Complaint at ¶ 8*. EMPSCO drafted the original design for the repair project. *Id*. However, the cost of repairs pursuant to EMPSCO's design exceeded the Port's financial means. *First Amended Complaint at ¶ 8*. So the contractor, Black Construction, submitted its own repair design through Winzler & Kelly, stamped and signed by its Professional Engineer, Bruce Swanney. Plaintiff alleges that EMPSCO breached its contract with the Port "by failing to exercise requisite care, skill, and competence to review and supervise...the engineering plans and drawings prepared by Winzler", and "by inadequately and incompetently supervising work performed by Black...by approving improper and negligent changes to the project...". *First Amended Complaint, ¶¶ 30, 31*.

Pursuant to the Scheduling Order dated March 15, 2004, Plaintiff submitted its report of Elliott H. Boone on May 12, 2004. The parties' discovery plan was later amended on August 14, 2004 to allow EMPSCO to file its initial expert disclosure on or before October 15, 2004. Plaintiff was required to file any "rebuttal expert reports...not later than November 18, 2004." *See STIPULATION AND ORDER TO AMEND SCHEDULING ORDER AND DISCOVERY PLAN*, signed by Magistrate Manibusan on August 18, 2004. In compliance therewith, EMPSCO timely presented its expert report of Albert Tsutsui, attached to this brief as EMPSCO's Exhibit C. Plaintiff

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO

Page 2 of 10

Case 1:03-cv-00009 Document 173 Filed 05/02/2005 Page 2 of 17

filed no rebuttal report by November 18, 2004, as ordered by this Court.

### 1. Plaintiff's initial expert report contained no evidence of EMPSCO's alleged negligence.

Plaintiff argues in its opposition that EMPSCO was aware of Plaintiff's "theories against EMPSCO" when it was served with the FAC (*Opp. p.3 n.1*). True, EMPSCO was aware of Plaintiff's "theories", but EMPSCO was entitled to disclosure of the <u>facts</u> Plaintiff intends to introduce at trial, not just its theories.

EMPSCO believes that Plaintiff is attempting to mislead this Court by claiming its expert's initial report "disclosed over a year ago, that EMPSCO's services to the Port fell below the standard of care required" (*Opp. p.3*). This is patently false, if not sanctionable. If Plaintiff's expert had rendered his opinions before last week that EMPSCO was negligent, this motion would not have been brought. As pointed out in EMPSCO's moving papers, Mr. Boone's expert report of May 12, 2004 (Exhibit A of Tarpley Declaration/Exhibit G to Booth Declaration) casts absolutely no aspersions against EMPSCO, only at Black and W&K, the eventual designer of the repair work (VE-1) which is the subject of this lawsuit. The one sentence which Plaintiff quotes out of context is from page 9 of the Boone report:"...it is the Engineer's responsibility to see that critical elements of **his design** (emphasis added) are correctly completed in accordance with **his intentions** (emphasis added)". There is no mention of EMPSCO or of any "Engineer of Record". The Court can read from the context of the paragraph in which this sentence appears that Mr. Boone is

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO LIMIT EXPERT TESTIMONY

Page 3 of 10

Case 1:03-cv-00009 Document 173 Filed 05/02/2005 Page 3 of 17

referring to the Engineer who stamped and signed VE-1 (Bruce Swanney of W&K). Indeed, Mr. Boone now belatedly admits that the "Engineer of Record" for the repair work was W&K, not EMPSCO. *See latest Boone report dated April 21, 2005, p.2 (last paragraph) attached as Exhibit B to the Booth Declaration filed in opposition to this motion.* It is therefore disingenuous for Plaintiff to now claim that Mr. Boone's initial report designated EMPSCO as the negligent engineer.

2. **Boone's report of April 21, 2005 is not a "supplemental report" but an entirely new report that can only be classified as a belated "Rebuttal Report".**

Next, Plaintiff argues that the brand new opinions of Mr. Boone dated April 21, 2005 are "supplemental disclosures" which are allowed to be withheld until thirty days before trial (referring to Rule 26(e) FRCP). Plaintiff cites Rule 37(c)(1), which would allow late disclosure if Plaintiff's failure was with "substantial justification" and/or the "failure is harmless" (*Opp. p.4 n3*). However, Plaintiff does not even <u>attempt</u> to show how Plaintiff was "substantially justified" in waiting to come forward with the expert opinion that EMPSCO was negligent until six weeks before trial. There is absolutely no reason offered by Plaintiff as to why it could not, until now, have had its expert support the claims brought against EMPSCO over a year ago.

As its excuse, Plaintiff pleads that "Here, Plaintiff received the information on which the supplemental disclosure is based in part, after discovery cut-off, Booth Declaration ¶ 9, and Mr. Boone required some time to digest the new information and to form his opinions." *Opp. p.6 ¶ 1.* But Plaintiff completely fails

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO LIMIT EXPERT TESTIMONY

**Page 4 of 10**

Case 1:03-cv-00009 Document 173  Filed 05/02/2005  Page 4 of 17

to explain what "new information" allowed it to suddenly dawn on Mr. Boone that EMPSCO was negligent after all! Plaintiff does not tell us. In any event, Plaintiff should have known that a supporting expert opinion is crucial to establishing a claim of an engineer's professional negligence, because the conduct of an architect or engineer's professionalism is generally beyond common knowledge and experience of the general population. It is therefore the general rule that the testimony of a competent expert is required to establish both the appropriate standard of care and to establish the professional's variance from that standard. <u>Allied Prop. v. John A. Bloom & Associates, Engineers</u>, 102 Cal.Rptr. 259 (Cal.App. 1974); <u>Swett v. Gribaldo</u>, 115 Cal.Rprt. 99, 102 (Cal.App. 1974); <u>H. Elton Thompson & Associates v. Williams</u>, 298 S.E.2d 539 (Ga.App. 1982); <u>Overland Constructors, Inc. v. Millard School District</u>, 369 N.W.2d 69 (Neb. 1985). See generally, Annotation: <u>Necessity of Expert Testimony to Show Malpractice of Architect</u>, 3 ALR 4th 1012 (1981).

Mr. Boone's initial report makes no mention of any negligence attributable to EMPSCO, much less any evidence that EMPSCO's "compliance submittal review" of VE-1 or of the proposed substitution of "Anchor-It-Epoxy System", instead of a technical engineering review, violated any engineering standard of conduct. Indeed, Mr. Boone in his report cites as appropriate EMPSCO's four conditions attached to its approval of the Anchor-It-Epoxy System. (Exhibit A Tarpley Declaration, bottom of p.3). Mr. Boone indicates that Black never complied with these four requirements, nor did Black utilize a "special inspection" when it anchored its

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO
LIMIT EXPERT TESTIMONY

**Page 5 of 10**

Case 1:03-cv-00009   Document 173   Filed 05/02/2005   Page 5 of 17

bolts, which subsequently became loose. *Id., p.4.* Mr. Boone instead focuses on the alleged negligence of Black:

> Black Construction Co. as a matter of proper construction practice, should have been aware of the critical importance of the pile flange to concrete connection. The performance of individual dolphins in berthing and mooring operations, not to mention seismic events, relied on the capacity of that connection. <u>During the bolt installation process, the loss of epoxy would have been evident to those installing the materials on a daily basis</u>. The critical nature this (sic) element should have made it obvious to Black Construction that minimum testing to establish full epoxy cure should have been undertaken as part of their ordinary quality control described in Section 1400 of the project specifications. <u>This could have been accomplished with an ordinary deep socket and automotive torque wrench</u>. (emphasis added).

Mr. Boone goes on to opine that "the design on Drawing Sheet VE-1 is incapable of meeting the requirements of the intended use of the Fox "F-1" facility, namely berthing and mooring of 90,000 DWT tankers." *Id., p.8.* However no opinion is rendered that EMPSCO was negligent or responsible for this alleged design deficiency. Instead, Boone states:

> "Reasonable analysis by **Winzler & Kelly** would have revealed deficiencies in <u>their</u> design. Even a simple static analysis would have shown that the bolts connecting the pile flange to the dolphins were insufficient in diameter and/or number. Disregarding the deficiencies in the design, the critical nature of this connection should have required **Winzler & Kelly** to request **Black Construction Co.** to assure that special inspection was taken during the installation of the epoxy, regardless of what product was used...**Black Construction Co.** had a quality control requirement established in the

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO LIMIT EXPERT TESTIMONY

Page 6 of 10

Case 1:03-cv-00009   Document 173   Filed 05/02/2005   Page 6 of 17

specifications for this project, but absent that, it was their substitute product, Anchor-It Epoxy, that requires special inspection. It would then follow that **Black Construction Co.** should have provided special inspection or insisted that the Port Authority provide it. Even if special inspection was not provided **Black Construction Co.** was aware of the critical nature of this connection and <u>even a simple automotive torque wrench test would have identified uncured epoxy</u>." *Id., p.9* (emphasis added).

Whether the "compliance submittal reviews" performed by EMPSCO fell below the standard of reasonable engineering practices is a question beyond the common knowledges of laypersons, requiring Plaintiff to produce expert testimony to substantiate its claim against EMPSCO. Plaintiff did not attempt to do so until it filed its so-called "supplemental report" on April 21, 2005.

### 3. The "automatic sanction" of Plaintiff's belated disclosure is preclusion of this evidence at trial.

Even though Mr. Boone's initial report did not provide any expert opinion evidence to support Plaintiff's claims against EMPSCO, Plaintiff had another opportunity to do so: by filing a rebuttal report by November 18, 2004, as allowed by Magistrate Manibusan's Order of August 18, 2004. *See STIPULATION AND ORDER TO AMEND SCHEDULING ORDER AND DISCOVERY PLAN, filed August 19, 2004.* Plaintiff could have, but did not, rebut the opinions of Albert Tsutsui that EMPSCO had not been negligent but had fully complied with the standard of care of engineers on Guam *(Exhibit C hereto)*.

Plaintiff may "not circumvent the requirement that rebuttal report be filed by arguing that the report is merely a <u>Rule 26(e)(1) Supplemental</u>". 6 MOORE'S FED. PRAC. ¶ 26.23[3] (3rd

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO
EXPERT TESTIMONY

**Page 7 of 10**

Case 1:03-cv-00009 Document 173 Filed 05/02/2005 Page 7 of 17

Ed. 2002). If the report is intended to contradict or rebut a report prepared by the opposing party's expert, as is the case here, it must be filed within the time allowed FRCP 26(a)(2)(C)(i.e., "within 30 days after the disclosure made by the other party" or as otherwise ordered by the Court, which in our case was by November 18, 2004).

The interplay between FRCP Rules 26 and 37 shows the intent to make preclusion of an untimely report the "automatic sanction" for untimely disclosure, unless the delay was "substantially justified". See Advisory Committee Notes to the 1993 Amendments to the Federal Rules of Civil Procedure, *Reprinted at 146 FRD 401, 691 (1993)* which provide, in pertinent part:

> The revision [to Rule 37] provides a self executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under Subdivision (a)(2)(A).
>
> Paragraph [37(c)](1) prevents a party from using as evidence any witness or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). This *automatic sanction* provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion...Limiting the automatic sanction to violations "without substantial justification," coupled with an exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures. In the latter situation, however, exclusion

S.J. Gargrave Syndicate At Lloyds v. Black Construction
Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO
LIMIT EXPERT TESTIMONY

**Page 8 of 10**

Case 1:03-cv-00009    Document 173    Filed 05/02/2005    Page 8 of 17

would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party.

See also <u>Jiladi v. Strauch</u>, 2001 WL 388052 (S.D.N.Y. 2001), and 8 Wright & Miller, <u>Federal Practice & Procedure</u>, §2031.1 at 441 (2nd Ed. 1994).

Here there is no justification for Plaintiff waiting until last week to have it "suddenly dawn" on Mr. Boone that he believes EMPSCO was negligent. Plaintiff cannot hide untimely disclosures under the nomenclature of a "supplemental report". It is a rebuttal report, plain and simple, and it was required to be disclosed last November. Preclusion of this report at a deposition or at trial is the appropriate remedy under the Federal Rules.

### 4. Plaintiff has no standing to object to the protective order on behalf of Black or W&K.

Lastly, Plaintiff objects to a protective order because "[s]uch an order would deprive the other Defendants, Black and Winzler & Kelly, of their rights to properly defend themselves...[and who] will no doubt wish to question Mr. Boone about issues which might tend to show that EMPSCO, and not either of them, is liable for Plaintiff's damages." *Opp. p.8*. Plaintiff is obviously attempting to present evidence from its expert indirectly regarding matters it cannot present directly, and it is a specious attempt for several reasons. First, it is the burden of Plaintiff, not Winzler & Kelly or Black, to prove EMPSCO was negligent. Secondly, if Boone is not allowed to offer any opinion regarding EMPSCO's negligence, any such questions by the co-Defendants would be beyond the scope of direct examination. Such

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO
**Page 9 of 10**

Case 1:03-cv-00009 Document 173   Filed 05/02/2005   Page 9 of 17

evidence therefore could not be used at trial. More importantly, Plaintiff lacks standing to make these objections on behalf of Winzler & Kelly and Black. The co-Defendants have not filed any such objections with this Court in response to this motion. Plaintiff should therefore not be allowed to "back door" this evidence when the front door is closed.

Respectfully submitted this __2nd__ day of May, 2005.

TARPLEY & MORONI, LLP

By: _____
THOMAS M. TARPLEY, JR.,
Attorney for Defendant
ENGINEERING, MANAGEMENT, &
PLANNING SERVICES CORPORATION

S.J. Gargrave Syndicate At Lloyds v. Black Construction Corporation, et. al., CIV03-00009
EMPSCO'S REPLY BRIEF RE PROTECTIVE ORDER TO LIMIT DEPOSITION OF MON

**Page 10 of 10**

Case 1:03-cv-00009  Document 173   Filed 05/02/2005   Page 10 of 17

LAW OFFICES
# TARPLEY & MORONI, LLP
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

3ZP7003
Attorney *for* Defendant Engineering, Management
& Planning Services Corporation

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>    Plaintiff,<br><br>v.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT, & PLANNING SERVICES CORPORATION,<br><br>    Defendants. | CIVIL CASE NO. CIV03-00009<br><br>**SECOND DECLARATION OF THOMAS M. TARPLEY, JR.** |

I, Thomas M. Tarpley, Jr, declare:

1. I am the attorney of record for EMPSCO.

2. Attached to this declaration is a true and correct copy of EMPSCO's Expert Report of Albert Tsutsui, provided to Plaintiff on October 15, 2004 (sans resume).

3. I received no rebuttal to this report from Plaintiff until I received Mr. Boone's Report dated April 21, 2005, attached as Exhibit B to the Declaration of Forrest Booth filed in opposition to this pending motion.

I hereby declare under penalty of perjury under the laws of the United States of America in Guam that the foregoing statements are true and correct.

TARPLEY & MORONI, LLP

By: _____ 5-2-05
THOMAS M. TARPLEY, JR.,

Law Offices
# TARPLEY & MORONI, LLP
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Suite 402
Hagåtña, Guam 96910

Telephone: (671) 472-1539
Facsimile: (671) 472-4526

E-Mail: tarpley@guam.net
E-Mail: moroni@guam.net

October 15, 2004

**VIA HAND DELIVERY**

David P. Ledger, Esq.
CARLSMITH BALL
Suite 401, Bank of Hawaii Bldg.
134 West Soledad Avenue
Hagatna, Guam 96910

Re: **EMPSCO's Expert Report**

Dear David:

Enclosed please find EMPSCO's expert report and the resume of Albert Tsutsui, AIA.

Very truly yours,

Thomas M. Tarpley, Jr.

encls:

cc: Thomas C. Sterling, Esq.
    Robert J. O'Connor
    EMPSCO

3ZP2186

# ALBERT H. TSUTSUI, A.I.A., INC.  ■ ARCHITECT

JULALE CENTER, SUITE 213
P.O. BOX 2993
HAGATNA, GUAM 96910
TELEPHONE: 472-8566
477-8539
FAX: 477-9227

**Date:** August 29, 2004

**To:** Mr. Thomas M. Tarpley, Jr., Esq.

**Subject Project:** Repairs and Upgrading of "F-1" Shell Pier
Apra Harbor, Guam, M.I.

**RE:** District Civil Action No. CIV03-00009
S.J. GARGRAVE SYNDICATE AT LLOYDS, PLAINTIFF
v
BLACK CONSTRUCTION CORPORATION, WINZLER
& KELLY, AND ENGINEERING MANAGEMENT &
PLANNING SERVICES CORPORATION, DEFENDANTS

Dear Mr. Tarpley, Jr.:

In regard to the referenced matter for the above subject project, the purpose of this report is to evaluate the following as pertaining to EMPSCO Engineering responsibilities:

I. PERTINENT ALLEGATIONS:

   A. III. FACTUAL BACKGROUND:

   1. Item No. III.9: "EMPSCO reviewed the Winzler revised engineering plan for repairs and provided a general and conditional approval of the same."

   2. Item No. III.12: "At all relevant times, Defendants Winzler and EMPSCO owed a non-delegable duty of professional competence and skill to the Port Authority."

   3. Item No. III.14: " The Project was completed in 1997. Upon completion, Defendants Black and EMPSCO represented and warranted to the Port Authority that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam."

   4. Item No. III.15: "On or about October 13, 2001, the island of Guam suffered another earthquake. Although it was substantially less powerful that the earthquake of 1993, this earthquake, too, did damage to the property and facilities owned by the Port Authority. Specifically, serious damage was done to F pier, and the dolphins thereof, which had previously been repaired by Black, pursuant to the plans and specifications prepared by, and under the supervision of, Winzler and/or EMPSCO."

5. Item No. III.17: "After receiving the claims for damage caused by the 2001 earthquake, Plaintiff caused an investigation of the losses to be made. This investigation disclosed that the repair of the 1993 earthquake damage had been designed and done improperly by and under the supervision of Defendants. The repairs, or the Project, done in 1996-1997 were inadequate, improperly done, and insufficiently strong to withstand future earthquakes and typhoons. The inadequacy and incompetence of the design, plans, specifications, and repair work performed by or approved by Defendants directly caused and led to further damage to the property of the Port Authority during the year 2001 earthquake, and caused and directly led to damage to and losses by Plaintiff, as is set forth more fully hereinafter."

B. VI. **THIRD CAUSE OF ACTION: NEGLIGENT PROPERTY DAMAGE (Against EMPSCO)**

1. Item No. VI. 23: "EMPSCO, as a professional engineering firm, owed a non-delegable duty of skill and competence to the Port Authority and breached that duty by negligently preparing, reviewing and approving the plans and specifications for the Project. EMPSCO also negligently supervised the work performed by Black in connection with the Project. The negligence of EMPSCO directly led to losses and damage by Plaintiff."

C. IX. **SIXTH CAUSE OF ACTION: BREACH OF CONTRACT (Against EMPSCO)**

1. Item No. IX. 30: "EMPSCO breached its contract with the Port Authority of Guam by failing to exercise requisite care, skill, and competence to review and supervise the work of others, including but not limited to the engineering plans and drawings prepared by Winzler."

2. Item No. IX. 31: "EMPSCO breached its contract with the Port Authority of Guam by inadequately and incompetently supervising work performed by Black and others in connection with the Project, by approving improper and negligent changes to the Project, and by failing to note and observe the errors and omissions by contractors performing the Project. These breaches of contract by EMPSCO directly caused damage and losses to Plaintiff."

D. XI. **EIGHT CAUSE OF ACTION: BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE (Against EMPSCO)**

1. Item No. XI. 35: "Upon information and belief, the contract between the Port Authority of Guam and EMPSCO is a maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

> Accordingly, there is implied in said contract a warranty of workmanlike performance, owed to the Port Authority. EMPSCO breached said warranty of workmanlike performance by reviewing and/or approving plans and specifications for the Project which were careless, inadequate, insufficient, and erroneous. In addition, EMPSCO breached the warranty of workmanlike performance owed to the Port Authority by failing to report these deficiencies to the Port Authority, failing to adequately supervise the Project, and failing to note and observe the repairs were being performed erroneously and incompletely, and in some cases, not being performed at all. These breaches of the warranty of workmanlike performance by EMPSCO have directly caused damage and losses to Plaintiff."

II. Revised Contract Agreement Between Port Authority of Guam and EMPSCO-Engineering Consultants dated 18th day of December 1995, Scope of Work "Exhibit A"; Negotiated fee breakdown; and clarification letter dated March 12, 2004, deleting construction management services from the Scope of Work "Exhibit A".

III. Black Construction's As-Built Drawings, including Winzler & Kelly's VE-1 for Black Construction.

SUMMARY OF REBUTTAL:

The following opinions and conclusions are based upon Mr. Tsutsui's 30+ years of performing design services for both the private and public sectors, his familiarity with A/E protocol and professional standards on Guam and the significance and responsible use of engineering stamps and signatures on design drawings by design professionals.

I. PERTINENT ALLEGATIONS

   A. EMPSCO fulfilled its scope of work and responsibility of the revised Contract Agreement with PAG. Due to the construction cost bids submitted by the general contractors exceeded the Port Authority of Guam's construction budget, the Port Authority exercised their right as per the Contract Agreement Article 18. <u>Ownership of Work and Designs:</u> "All work, drawings, specifications and designs by the Consultant shall belong to the Port and Port shall have the right to use them in any way whatsoever and make modifications thereto. If the Port has another consultant to modify or change the plans, etc., then Consultant's name on such plans, designs, specifications and work shall be deleted on the plans, designs, specifications, etc."

   1) Thus, the Port Authority of Guam accepted the resubmitted bid by Black Construction based on the revised engineering design, specifications, calculations and VE-1 construction drawings done by Winzler & Kelly for

       Black Construction. With the professional seal of Winzler & Kelly's structural engineer, Bruce W. Swanney, Certificate No. 910, on the VE-1 drawing, the redesign is the responsibility of Winzler & Kelly as per Title 22 GCA Section 32116(d) and "PEALS" Rules and Regulations, Policies and Procedures, Rule 12.c(1).

  2)  EMPSCO's Scope of Work for construction management and fees of the Contract Agreement with PAG were deleted with the clarification letter dated March 12, 2004, from PAG, signed by Simeon Delos Santos, Port Engineering Supervisor. Construction Management services were contracted by PAG with N.C. Macario & Associates.

Therefore, EMPSCO did not commit negligence in their engineering services and provided prudent services within standard of care in engineering services in Guam. EMPSCO was not required to do a technical review of the VE-1 technical design changes but provided a compliance review to have a professional licensed engineer stamp the VE-1 technical design changes and structural calculations.

EMPSCO had no responsibility for the revised design, specifications, calculations, plans and whatever drawings that Black Construction used for obtaining the building permit should not have EMPSCO's name and seal on them. Also, EMPSCO has no responsibilities of supervision of the work; providing progress reports to PAG; and other services of the contracted construction manager, N.C. Macario & Associates.

If you require any clarification(s), please contact our office at telephone numbers 472-8566 and 477-8539 or fax number 477-9227.

Very truly yours,

Albert H. Tsutsui, A.I.A