ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

FILED
DISTRICT COURT OF GUAM
MAY - 3 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>               Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>               Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER; DECLARATION OF FORREST BOOTH; EXHIBIT A; DECLARATION OF SERVICE** |

### I. INTRODUCTION

This Court's Order of April 8, 2005, all but invited Plaintiff's motion herein to amend the scheduling order to allow Plaintiff to amend its Complaint. That ruling in no way

precluded this Motion, as Defendants assert.

On February 11, 2005, Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff") filed its Suggestion of Mootness and Request to Dismiss or Hold in Abeyance in connection with the Defendants' pending motions for partial summary judgment and judgment on the pleadings. The Court (the Honorable Robert Clive Jones) denied the request. However, the Court took pains to state that "The Court makes this determination based on the state of the pleadings **at this time**." (Emphasis added.) Court's Order filed April 8, 2005, p. 11 n. 5. Of course, a Court can only rule based on the pleadings which are before it. The Court was careful to point out that "The Plaintiff states therein that it plans to amend its Complaint. However, an Amended Complaint is not presently before this Court." It is clear that the Court believed that Plaintiff should properly present the issue of the recent change in the law via a motion to amend, as Plaintiff has now done.

Just as the denial of a motion for summary judgment has no adjudicative effect on the litigation, Preaseau v. Prudential Ins. Co., 591 F.2d 74, 79 (9th Cir. 1979) (such rulings are interlocutory and not final), the denial of Plaintiff's request that the Defendants' motions for summary judgment and judgment on the pleadings should be held in abeyance is in no way a formal and final ruling that Plaintiff should not now be allowed to amend its Complaint herein to conform to new case law, and to the facts which discovery has proved in this action. Defendants' argument is an attempt to bootstrap portions of this Court's Order of April 8, 2005 into something it is not; it amounts to a statement by them that Judge Jones denied a motion to amend the Complaint which had not even been filed at that time. He clearly did not, and could not, do that.

2.

## II. PLAINTIFF'S REQUEST TO AMEND ITS COMPLAINT IS TIMELY, GIVEN THE RECENT CHANGE IN THE LAW

As counsel for Black admits in his declaration, less than one month after the California Supreme Court's decision in Robinson Helicopter Co. v. Dana Corp., 34 Cal.4th 979 (Dec. 23, 2004), counsel for Plaintiff wrote to all defense counsel and requested their stipulation to the filing of a Second Amended Complaint. *See* Exhibit A to the Declaration of Thomas C. Sterling in Opposition to Motion to Modify Scheduling Order (hereinafter the "Sterling Declaration"), filed herein. That letter is dated January 26, 2005. What defense counsel neglect to advise the Court is that it was not until April of 2005, that defense counsel deigned to advise Plaintiff that they would not stipulate to its filing, although they had been provided with a copy of the draft Second Amended Complaint by Guam counsel for Plaintiff. *See* Sterling Declaration, ¶ 5.

Defense counsel also neglects to advise the Court that, at the time Plaintiff's request to amend the complaint was made, via Exhibit A to the Sterling Declaration, **no trial date had been set**. The trial date was set herein by Judge Jones on April 6, 2005, by which time the Defendants had been sitting on Plaintiff's request for a stipulation to allow amendment for two months. Plaintiff had by then drafted its Motion to Modify Scheduling Order and Motion for Leave to File Second Amended Complaint, which were filed herein shortly thereafter. Plaintiff also advised Judge Jones in its briefs that it planned to make a motion to amend the Complaint. Despite Black's statement that Mr. Booth, counsel for Plaintiff, "... never even mentioned to the Judge that he intended to seek to amend his pleadings ...", Black's Opposition Brief, p. 3, Judge Jones knew of and specifically mentioned Plaintiff's plans to amend in footnote 5 on page 11 of his Order.

Counsel for Winzler & Kelly objects to both the expedited scheduling for the briefing of this motion, and to the motion's being heard by a Magistrate Judge. Winzler & Kelly's Opposition to Plaintiff's Motion to Modify Scheduling Order (hereinafter "Winzler & Kelly's Opposition Brief"), p. 4. Plaintiff wishes to point out that the briefing schedule was not dictated by Plaintiff. Plaintiff merely filed its motion, with no specific hearing date requested, as is the current practice in this Court in the absence of a full-time sitting judge.

Plaintiff did not change the law regarding the economic loss doctrine as it applies in this case; this Court did, and the California Supreme Court did. First, this Court (the Honorable A. Wallace Tashima) ruled on March 24, 2005, that this Court does not have admiralty jurisdiction over this litigation. Up until that time, by relying on maritime law, **all parties** had been treating this case as an admiralty case. The Defendants' argument that the economic loss doctrine should preclude Plaintiff from bringing any claims for economic loss was based on a U.S. Supreme Court admiralty decision, East River Steamship Corp. v. Transamerica Delaval Inc., 476 U.S. 858 (1986). Faced with the East River argument in an admiralty case, Plaintiff did not believe before March 24th that it could bring state law claims for economic loss.

The Defendants cannot seriously argue that Robinson Helicopter did not constitute a major change in the law of remedies available for breach of contract.[1] In overturning established California law on the point, the California Supreme Court relied largely upon public policy, and California's legitimate interest in preserving a business climate free of fraud and deceptive practices. 34 Cal.4th at 992.[2]

---

[1] While counsel for Winzler & Kelly points in the attachment to its brief to a minority view of the law of economic loss which is shared by certain of the smaller states (Louisiana, Georgia, Alabama and Ohio), it is clear that, until Robinson Helicopter, the majority view was to the contrary. Indeed, the California Supreme Court in Robinson Helicopter had to change course and distinguish its own prior decisions in Aas v. Superior Court, 24 Cal.4th 627 (2000) and Jimenez v. Superior Court, 29 Cal.4th 473 (2002), which relegated a dissatisfied purchaser solely to his cause of action for breach of contract.

[2] Winzler & Kelly makes a curious argument that "Guam gives no special weight to California decisions of

The Defendants make an interesting but procedurally absurd argument in attempting to avoid Plaintiff's motion to amend. The decisions from the minor states cited in the exhibit to Winzler & Kelly's Opposition Brief state that economic loss may be recoverable in a contract action under the laws of some states; however, Plaintiff could not have brought such an action previously because this was then an admiralty case, and Defendants argued that East River precludes such claims in a lawsuit where jurisdiction is in admiralty. This Court having ruled on March 24, 2005, that admiralty is not the basis of this Court's jurisdiction, Defendants now assert that Plaintiff should not now be allowed to move, only one month after the ruling on jurisdiction, to amend its Complaint to assert the previously-barred state law claims which Defendants admit are valid!

Defendants simply cannot have it both ways. Either Plaintiff previously had economic loss claims, and the Defendants' motions for partial summary judgment to strike them based on admiralty law were brought in bad faith (and in violation of F.R.C.P. 11), or Plaintiff does have such valid claims for the first time now, and with the removal of the impediment of East River, Plaintiff can properly assert them.

### III. THE WRITTEN ASSIGNMENT FROM THE PORT AUTHORITY TO PLAINTIFF ALLOWS THE ASSERTION OF THESE CLAIMS

On April 27, 2005, the Port Authority of Guam (hereinafter the "Port Authority") executed the "Supplemental Assignment to Insurers", which is attached as Exhibit A to the Declaration of Forrest Booth, filed herewith. In his Order of April 8, 2005, Judge Jones

---

common law." Winzler & Kelly's Opposition Brief, p. 6, n. 3. Winzler & Kelly apparently has not read the authorities previously cited to the Court by Plaintiff. And, as a general principle, the courts of Guam look to California cases for guidance when no Guamian precedent exists -- particularly where, as here, negligence causes of action are at issue. Camacho v. DuSung Corp., 121 F.3$^d$ 1315, 1317 (9th Cir. 1997), where the Ninth Circuit declared that in the absence of Guam precedent "... this court and the Guam courts consider California negligence cases to be persuasive authority."; Guam v Agualo, 948 F.2$^d$ 1116, 1118 (9th Cir. 1991) ("Where Guam law is unclear, California law is especially persuasive"). The law of California is regularly and properly applied to and followed in disputes arising in Guam, or out of Guamian transactions. See also, Tabor v Maine, 67 F.3$^d$ 1029, 1034 (2$^d$ Cir. 1995).

apparently believed that the original assignment from the Port Authority to Plaintiff, dated April 10, 2003, was ambiguous and did not operate as a full assignment to Plaintiff of all uninsured claims (including for economic loss) that the Port Authority may have had against third parties. The Port Authority therefore clarified its intention with regard to the initial document (signed January 16, 2003 and corrected on April 10, 2003), by signing the Supplemental Assignment. It specifically assigns to Plaintiff economic loss claims such as those for business interruption, lost rent, shortening of the service life of the F-1 Pier, and the weakening of its structure. *Id.* These claims have always been part of Plaintiff's action; they were set forth in the initial Complaint, filed herein on March 18, 2003, and they were the first, second and third causes of action of the First Amended Complaint, filed herein on December 23, 2003. Accordingly, Judge Jones' ruling regarding the ambiguous first assignment is now moot, because of the new and unambiguous Supplemental Assignment. Plaintiff will make this recent Supplemental Assignment an attachment to its Second Amended Complaint when it is filed.

### IV. DEFENDANTS HAVE POINTED TO NO REAL PREJUDICE IF PLAINTIFF'S COMPLAINT IS AMENDED

Granting Plaintiff's motion will result in no surprise to the Defendants, and they will suffer no prejudice, since they have known of these claims from the beginning of this lawsuit. The quantum of Plaintiff's subrogation claims remains unchanged; while Judge Jones noted that Plaintiff's claims in subrogation are subject to a cap of $7.5 million, he specifically refused to set any lower limit on Plaintiff's recovery. April 8, 2005 Order, p. 9.

Plaintiff does not disagree with the case cited by Winzler & Kelly, Coleman v. Quaker Oats Co., 232 F.3$^d$ 1271 (9th Cir. 2000), since that case stated that late amendments are not viewed favorably when the facts and theories asserted have been known since the inception of the case. Here, under East River, *supra*, Plaintiff arguably did not have the right to bring state

law claims for economic loss until March 2005, when the Court held this is not an admiralty action. Furthermore, under the persuasive law of California, Plaintiff could not have asserted economic loss claims based upon fraud and intentional misrepresentation until Robinson Helicopter was decided on December 23, 2004. Therefore Coleman actually supports Plaintiff's, not Winzler & Kelly's, position. Plaintiff's economic loss claims represent new areas of the law that could not have been developed and incorporated into this cause of action at an earlier date. De Bry v. Transamerica Corp., 601 F.2d 480, 492 (10th Cir. 1979) (a case also relied upon by Winzler & Kelly).

Black argues that granting Plaintiff the right to amend its Complaint will "require re-deposing witnesses, some of whom have already been deposed [sic] ..." Defendant Black Construction Corporation's Opposition to Plaintiff's Motion to Modify the Scheduling Order (hereinafter "Black's Opposition Brief"), p. 4. Although counsel for Defendant lists some of the witnesses who have already been deposed in this case (Sterling Declaration, p. 4, ¶ 9), what counsel never explains is **why** they will have to be re-deposed. Black used undersized bolts to repair the dolphins, let the epoxy run out of the holes into which they were inserted, and submitted as-built drawings and other documents stating it had done the job properly and in accordance with specifications. Whether one characterizes Plaintiff's claims resulting from those facts as alleging breach of Black's contract to perform its work "in a workmanlike manner" (Black Contract, Exhibit A to the First Amended Complaint), negligent misrepresentation, intentional misrepresentation or fraud, the same facts underlie Plaintiff's theories, for the most part. These facts have been known since Plaintiff made its initial disclosures herein on June 26, 2003. Likewise, the engineers Winzler & Kelly and EMPSCO, by signing, stamping and approving drawings and contract submittals, represented to Plaintiff's subrogee the Port

7.

Authority that their design was within contract specifications and met good engineering practice. This was a breach of EMPSCO's contract with the Port Authority to perform in a "workmanlike and diligent manner" (Contract, p. 2, ¶ 1.c.), and these statements and documents were also negligent and intentional misrepresentations and fraud. Various government approvals including building permits were secured, induced by and based upon the erroneous documents prepared by Winzler & Kelly and EMPSCO. All of these facts are well-known to the Defendants. Defendants never want to go to trial in any case, but the Defendants pleas herein that "more discovery will be required" rings particularly hollow.

## V. CONCLUSION

Defendants have been dragging their feet and refusing for months to stipulate to the filing of Plaintiff's amended complaint. They argued long and hard that Plaintiff could not bring economic loss claims because of a prohibition against same in admiralty law, and now that admiralty law has dropped out of the case, they claim Plaintiff's request under state law is too late. Plaintiff made a request for a stipulation, as Plaintiff was required to do, at a time when there was no trial date set in this matter. No objection was made at that time that the request was too late, but now that a trial date has been set, all of the sudden the request is untimely. Defendants' tactics should not be condoned.

For the reasons set forth herein, Plaintiff's Motion to Amend the Scheduling Order to Allow Plaintiff to Move to File Its Second Amended Complaint should be granted.

DATED: Hagåtña, Guam, May 3, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

8.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**DECLARATION OF FORREST BOOTH IN SUPPORT REPLY TO OPPOSITION TO MOTION TO MODIFY SCHEDULING ORDER; DECLARATION OF SERVICE** |

I, Forrest Booth, declare:

1.  I am an attorney duly licensed to practice law before all courts in the State of California, and am admitted *pro hac vice* herein. I am a member of the law firm of Cozen

O'Connor, counsel of record for Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS.

2. Attached hereto and marked as Exhibit A is a true and correct copy of the Supplemental Assignment to Insurers, which was executed by a duly-authorized representative of the Port Authority of Guam on April 27, 2005. I received a copy of this document over the weekend of April 30, 2005, and I have provided a copy to opposing counsel.

Sworn this 2nd day of May, 2005 under penalty of perjury under the laws of the State of California and of the United States at San Francisco, California.

FORREST BOOTH

## SUPPLEMENTAL ASSIGNMENT TO INSURERS

Date: 04/10/03

Re: Port Authority of Guam, F-1 Pier Earthquake Damage

For valuable consideration received, including but not limited to payment of $7.5 million in connection with damage caused by the earthquake which occurred in Guam on October 13, 2001, the insured Port Authority of Guam, by its duly authorized representative whose signature appears below, hereby assigns, transfers and conveys without limitation to the S.J. Gargraves Syndicate at Lloyds (hereinafter the "Assignee"), for and on behalf of itself and the other insurers of the property of the Port Authority of Guam under cover note no. 99HV0067F, all claims against third parties, wherever located, arising out of or connected in any way to the damage to property belonging to the Port Authority of Guam known as the F-1 pier and related structures and equipment (hereinafter the "F-1 Pier"). This Assignment to Insurers ("Assignment") encompasses and includes, without limitation, the right to recover the Port Authority of Guam's deductible under the policy of insurance issued by S.J. Gargrave Syndicate at Lloyds and others, evidenced by cover note no. 99HV0067F, in the amount of $500,000. Also included herein are claims by the Port Authority of Guam for damage to catwalks, manifolds, fire mains, water lines, electric lines, cargo pipe lines, vessel mooring equipment and other property and equipment located on or connected to the F-1 pier and dolphins, and for lost rent, business interruption, shortening of the service life of the F-1 Pier and weakening of the structure of the F-1 Pier.

This Assignment supplements, clarifies and amplifies that certain Loss and Subrogation Form (the "Form") executed herein by the Port Authority of Guam on January 16, 2003 and corrected on April 10, 2003, which Form is referenced herein but is neither withdrawn nor

**EXHIBIT A**

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on May 3, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER; DECLARATION OF FORREST BOOTH; EXHIBIT A** upon Defendants Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Klemm Blair Sterling & Johnson, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and
>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 3rd day of May, 2005 at Hagåtña, Guam.

_____
DAVID LEDGER

SANFRAN1\33477\1 123206.000