· ORIGINAL ●

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA  94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



**FILED**
DISTRICT COURT OF GUAM
MAY 1 6 2005
MARY L.M. MORAN
CLERK OF COURT

171

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>          Plaintiff,<br><br>     vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>          Defendants. | CIVIL CASE NO. CV03-00009<br><br><br>**PLAINTIFF'S TRIAL BRIEF; DECLARATION OF SERVICE** |

## I.     INTRODUCTION

This case arises out of serious damage to property of the Port Authority of Guam

(hereinafter "Port Authority"), located in Apra Harbor, Guam.  Specifically, the F-1 Pier, owned

by the Port Authority and leased to Shell Oil Guam, was originally damaged in a severe earthquake, measuring 8.2 on the Richter scale, which occurred on August 8, 1993.

In order to have the damage repaired, the Port Authority entered into a contract on December 28, 1995 with defendant Engineering, Management & Planning Services Corporation (hereinafter "EMPSCO"). In the contract, EMPSCO promised to provide a full and complete design to the Port Authority, and to provide all services in a "workmanlike and diligent manner". EMPSCO also

> ... warrant[ed] that it is an experienced construction manager ... and warrant[ed] that it shall see that the contractor shall carry out and perform the work in a proper manner; and if done improperly by the contractor then [EMPSCO] hereunder shall be liable, like other professionals, for damages and the Port's attorneys' fees as a result of [EMPSCO]'s improper or negligent acts in performing its duties, and the terms and conditions under this contract.

In addition, ¶ 12 provides specifically for the recovery of **attorneys' fees** in any suit brought to enforce the contract.

EMPSCO provided a bid package including drawings and specifications for the repairs. The work was put out to bid, and defendant Black Construction Corporation (hereinafter "Black") was named the winning bidder. On April 8, 1996, the Port Authority entered into a contract with Black whereby Black agreed to perform all the work specified by EMPSCO in a "workmanlike manner". This contract also provided that, in the event of legal action, the prevailing party would recover its **attorneys' fees** and court costs.

After signing the contract with Black, the Port Authority sought a way to reduce the overall cost of the earthquake damage repairs. Unbeknownst to the Port Authority, Black consulted defendant Winzler & Kelly (hereinafter "Winzler"), and asked that it determine if there was a cheaper way to accomplish the repairs. Winzler produced a drawing of an alternative repair system, known as drawing VE-1, which was stamped and signed by Winzler's registered

professional engineer, Bruce Swanney. The design was submitted to EMPSCO for approval, which was granted. The repairs were then performed, pursuant to the new Black/Winzler design.

On October 13, 2001, another earthquake hit the island of Guam. It had considerably less energy than the 1993 earthquake, and measured about 6.5 on the Richter scale. However, it obliterated the repairs which Black had performed.

Plaintiff is the property insurer for the Port Authority of Guam. After negotiations between Plaintiff's adjuster and the public adjuster appointed by the Port Authority, Plaintiff agreed to and did pay to the Port Authority the sum of $7.5 million, for damage to its property caused by 2001 earthquake. A large portion of that payment was attributable to damage to the F-1 Pier and dolphins, which had been repaired by Black, pursuant to the designs of the two defendant engineers. Plaintiff stands in the shoes of its insured the Port Authority, and brings this action to recover the amounts it paid. Furthermore, Plaintiff seeks its attorneys' fees, pursuant to the provisions of the Port Authority's contracts with EMPSCO and Black, plus interest from the date payment was made to the Port Authority. Plaintiff also seeks to recover for damage to other property, such as the pile caps, water and electric lines, which Black had not worked on but which were damaged as a result of the second earthquake, following the failure of the repairs made by Black.

## II.    LIABILITY

### A.    Elements of a Breach of Contract Action.

To succeed on this breach of contract action, Plaintiff must demonstrate: (1) existence of the contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendants, and (4) damages. *First Commercial Mortgage Co. v. Reece*, 108 Cal. Rptr. 2d 23 (Cal. App. 2001). In this case, it is undisputed that the Port Authority fulfills the first two elements with respect to Black and EMPSCO, as it held contracts with both parties and

performed on its part by paying Black and EMPSCO under their respective agreements with the Port Authority. Furthermore, the Port Authority is a third-party beneficiary of the contract between Winzler and Black, and the Port is therefore entitled to enforce the contract between them. *See* 18 Guam Code Ann. § 85204 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."). The remaining elements, breach and damages, are discussed in further detail in this section.

Furthermore, "[o]rdinarily, a breach is the result of an intentional act, but negligent performance may also constitute a breach, giving rise to alternative contract and tort actions." 1 Witkin, Summary of California Law (9th ed. 1987) § 791. In this respect, all defendants are liable to Plaintiff in both tort and contract.

## B. Black Is Liable To Plaintiff In Both Tort And Contract

Although EMPSCO is the engineer of record on the project, Black hired (and paid) Winzler to do an alternative design. Black submitted that alternative design to EMPSCO, and recommended its approval. The design was defective, and inadequately strong, and Black is responsible and liable to Plaintiff for it. Black is responsible because it converted the project into a design-build project where it originated, and was responsible for, the design. In addition, Black drilled holes overhead into the underside of the pre-existing concrete pile caps, to secure the new pile sections to the caps with bolts. Black attempted to secure the bolts with epoxy, but allowed most of the epoxy to run out of most of the holes before it hardened. Black never tested the bolts to see that they were properly affixed, after the epoxy should have hardened, and did not arrange a special inspection by a representative of the epoxy manufacturer, as is standard in such difficult installations. Black failed to provide an escape hole at the top of each bolt hole, to allow air to escape and ensure that epoxy completely filled the hole.

## C. Winzler & Kelly Is Liable To Plaintiff In Both Tort And Contract

After it became clear that the original EMPSCO proposal was too expensive, Black asked Winzler to develop a cheaper alternative. Winzler's registered professional engineer, Bruce Swanney, decided that it would be appropriate to weld a collar around the top of each new pile section, and secure it to the underside of the concrete dolphin caps with eight small bolts. Winzler has admitted in interrogatory answers, and Swanney admitted at his deposition, that he performed no calculations or structural analysis of any kind in determining the size and number of bolts to use. He merely took the soils engineer's report concerning the amount of force it would take to pull one pile out of the seabed, divided it in two, and then divided that force by the eight bolts. The number he got "looked right", so Winzler prepared an engineering drawing utilizing this inadequate design. Mr. Swanney put his registered engineer's stamp on the drawing, and signed it, indicating that it met all design criteria and building codes, and was approved for construction. No further efforts were made by Winzler to determine whether or not their design was strong enough for its intended service.

Winzler is also liable in that they performed various construction management services on the project. Mr. Swanney visited the worksite on a number of occasions, but expressed no concern that epoxy was flowing back out of the holes and down over the pile flanges, which was visible to all. Although Winzler issued stop-work orders to Black on a number of occasions, including in March of 1997, the problems with the bolts and epoxy apparently did not concern Winzler enough to express any concerns to EMPSCO, the engineer of record; to Black, the construction company; or the Port Authority. Winzler designed several "spacers" and assisted Black with other design elements as part of the process of securing the new pile sections to the pile caps, due to problems encountered because the earthquake had moved one of the pile caps 16" from its original location, and another 9". Thus the new piles did

not line up with the locations where the old piles had been. Mr. Swanney saw what was going on many times, but never once protested.

**D.    EMPSCO Is Liable To Plaintiff In Both Tort And Contract**

EMPSCO was the engineer of record on the project. It prepared all of the original designs, and contracted to supervise the work of the construction company selected (which was Black). Pursuant to the specifications, which are made part of the contract between EMPSCO and the Port Authority, EMPSCO was obligated to receive submittals from the contractor regarding selection of materials to be used in the project, and approval of changes to the plans and specifications, and to specified materials.

When Black proposed to change the method of securing the piles to the pile caps, pursuant to Winzler's drawing VE-1, EMPSCO tentatively approved the change, but requested that supporting calculations be provided. No calculations were done by Winzler, and none were provided which supported the new design. Nevertheless, EMPSCO then unconditionally approved the change (using the Black/Winzler design). However, EMPSCO did not require torque testing of the bolts to ensure that the epoxy had hardened properly, did not require an air vent hole be drilled to allow air to escape and the epoxy to completely fill the holes, and did not notice that the epoxy product Black had selected is specifically **not** recommended by its manufacturer for **overhead** use. EMPSCO also did not require a special inspection of the epoxy work by a representative of the epoxy manufacturer, as is standard in the industry for such epoxy installations.

Winzler specified in drawing VE-1 that a glass capsule epoxy product called Red Head "Redi-Chem" Concrete Anchoring Systems be used. At the time Mr. Swanney of Winzler specified this product for use, it had not been manufactured for 10 years, and had not appeared in any supplier's catalogs for 8 years. Therefore what Winzler designed and proposed was, in fact,

impossible.

Under the Guam Code, the engineer of record is responsible for all aspects of his design, and for ensuring that it is fit for its intended purpose. However, EMPSCO never performed any seismic analysis of the Black/Winzler design, required by the Uniform Building Code, and never suggested that any should be performed. Likewise, EMPSCO never performed any analysis of possible damage arising from ship strikes against the pier or dolphins, and never suggested that any should be performed. This fell below the required standard of care for a professional engineer.

## E.    **Plaintiff Is An Innocent Third Party**

Plaintiff's insured is the Port Authority of Guam. The property which was damaged due to the negligence and breaches of contract by Black, Winzler and EMPSCO belongs to the people of Guam. If the parties whose sloppy work, breaches of contract and negligence damaged the Port Authority's property are not made to pay for it, the people of Guam will have to do so, through higher Port costs, charges and taxes which will be necessary to pay the substantially increased insurance premiums which the Port will be charged, as a result of this substantial loss.

## F.    **Damages**

Under Guam law, damages for breach of contract are measured by the amount that will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. 20 Guam Code Ann. § 2201. Defendants are liable to Plaintiff for all damages, including interest, *see* 20 Guam Code Ann. § 2110, caused to the Port by Defendants' breach and negligent conduct.

## G.    **Plaintiff is Entitled to Its Attorneys Fees**

Attorneys fees are permissible in this case under the contract between the Port and

Black and under the contract between the Port and EMPSCO. The Construction Contract between the Port and Black specifically allowed reasonable attorney's fees and court costs incurred by the prevailing party in any legal action, suit or proceeding for any breach of the Agreement. *See* Construction Contract, § XIII. Because all subcontractors are bound to the Construction Contract, W & K is similarly bound to the attorneys fees provision. *See* Construction Contract, § I(b). The Agreement between the Port and EMPSCO also specifically allowed reasonable attorney's fees and court costs incurred by the prevailing party in any legal action, suit or proceeding for any breach of the Agreement. *See* Agreement between Port and EMPSCO, § 12. Based on the above contractual provisions, all Defendants are liable for the attorneys fees and costs incurred by Plaintiff in bringing this action.

## III.    CONCLUSION

Plaintiff has paid a total of $7.5 million to the Port Authority to settle its insurance claim. In order to avoid having this loss fall on the innocent taxpayers of Guam, Plaintiff is entitled to recover the majority of that sum from the parties who caused the damage: Black, Winzler and EMPSCO. Since the defendants are jointly and severally liable, Plaintiff will have its choice, once the jury renders its verdict, of which party to collect from.

DATED: Hagåtña, Guam, May 16, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

# DECLARATION OF SERVICE

I, J.Patrick Mason, hereby declare under penalty of perjury of the laws of the United States, that on May 16, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S TRIAL BRIEF** upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and

> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this 16th day of May, 2005 at Hagåtña, Guam.

_J.PATRICK MASON_

SANFRAN1\33599\1 123206.000