

BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Facsimile: (671) 499-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>v.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO.: CIV03-00009<br><br>DEFENDANT WINZLER & KELLY CONSULTING ENGINEERS' POINTS AND AUTHORITIES IN OPPOSITION TO ENGINEERING, MANAGEMENT & PLANNING SERVICES CORPORATION'S RENEWED MOTION TO LIMIT TESTIMONY OF PLAINTIFF'S EXPERT AT TRIAL<br><br>[No Oral Argument Requested] |

I.

INTRODUCTION

Engineering, Management & Planning Services Corporation ("EMPSCO") has culpability in this case. It drafted the original design. It approved at least two modifications to that design[1] both of which are now being pointed to as the cause of Plaintiff's injuries. It was the engineer of record for this repair project.

---

[1] One modification was the VE-1 substitution. The other was a substantial change to VE-1 by substituting the anchoring system required by Winzler & Kelly for a different, inferior anchoring system without Winzler & Kelly's consent.

More than that, EMPSCO's design called for fenders to protect the dolphins which were inadequate and its design was for 90,000 DWT vessels (as noted on page 4 of the Boone Report) when it knew 150,000 DWT vessels off-loaded oil at the F-1 pier.

EMPSCO is not surprised by any of this, their derelictions are part of the complaint, they are pointed out in the report of Winzler & Kelly's expert Webb Hayes (see attached), and they are touched on in Mr. Boone's original report.

## II.
## WEBB HAYES REPORT

Just by way of example here are some excerpts from the Webb Hayes report, submitted to the parties back in July, 2004 and November, 2004:

...

Drawing VE-1 notes relied upon Black Construction and EMPSCO to review the proposed detail in accordance with the drawings and specifications developed by EMPSCO and to install the REDI-CHEM anchor in accordance to their recommended procedure. To the best of our knowledge, neither Black Construction Company nor EMPSCO reviewed the proposed detail in accordance to the EMPSCO contract documents or installed the detail in accordance to Redi-Chem's recommended procedure. It is the understood the words "or approved equal" means the engineer who specified the use of a detail or product, in this case Bruce Swanney, is the individual who should have reviewed the substitution and approved it if it was an acceptable substitution.

Winzler & Kelly notified Black Construction and the PAG that the proposed detail should be read in accordance with the design documents. Although EMPSCO's review and approval of the detail requested structural calculations, we understand that Winzler & Kelly was never advised of the approval conditions. EMPSCO should have advised the Port Authority whether the Black Construction proposed anchor system was appropriate for the design conditions and strong enough. (Pages 5 – 6)

...

The drawing title *"Proposed Pile Report Detail"* is evidence to the effect that the alternative was in the preliminary stage of development. It was reasonable for Winzler & Kelly to rely on EMPSCO, the engineer-of-record, to determine the design criteria for the project and further, it was reasonable to rely on EMPSCO's approval of the VE-1 drawings as confirmation that the work met these criteria.

EMPSCO was the most knowledgeable about the intent of the design and the critical nature of certain details, namely the pile to cap connection. Black Construction should have complied with the ER's request for the six conditions of the submittal. Nevertheless, EMPSCO had a duty to inform the client and Macario & Associates, the party responsible for project oversight, that approval of the alternative pile repair system was subject to conditions. Macario & Associates should have discovered that the repair was not in accordance with the drawings and rejected the installation. (Page 5)

…

The EMPSCO design did not consider seismic loading on the dolphins. Their design report, which sets forth the criteria to be used, acknowledges that Transen Associates Limited considered seismic forces, but makes no reference to the magnitude of these forces or any seismic criteria to be used. There is no evidence in the EMPSCO calculations that any structural analysis or seismic evaluation was performed. Failure to undertake a structural analysis of the wharf shows less than a reasonable standard of care was used or the EMPSCO design. It is apparent that the work to be done was to be of an expedient nature to permit tanker operations immediately and was to be a temporary repair. (Page 6)

### III.

### BOONE'S REPORT WAS SPECIFIC ENOUGH TO PUT EMPSCO ON NOTICE

At page 3 of Boone's May 12, 2004 report he wrote:

>   Review of the information provided to Cash & Associates indicated that Black Construction Company had submitted and the Port Authority (***through the Projects representatives***) and approved, with conditions, a substitution of the epoxy system used in anchoring the bolts to the concrete deck. (Emphasis ours.)

…

(The report goes on to criticize this substitution.)

EMPSCO is identified in Boone's report as one of the Port's representatives, and Boone's report criticizes these representatives for having designed, approved and installed a design which Boone concluded was inadequate. The report mentions EMPSCO by name. The implications of the report were fairly obvious and Mr. Boone's supplemental report only gave details to the general and clearly understandable criticisms of EMPSCO as engineer-of-record that were contained in Mr. Boone's original report.

-3-
Case 1:03-cv-00009    Document 192    Filed 06/02/2005    Page 3 of 5

It is the opinion and position of Winzler & Kelly that Mr. Boone's Supplemental Report seems to clarify Plaintiff's position against EMPSCO and there is nothing "surprising" in its contents given the allegations in the complaint, Boone's original report and the Webb Hayes report critical of EMPSCO.

EMPSCO bears substantial culpability as the engineer-of-record in this case and having now deposed Mr. Boone is at no particular disadvantage in defending itself from the allegations of the First Amended Complaint.

## IV.

## NO AMBUSH

Winzler & Kelly does not believe EMPSCO is a victim of any "ambush tactics" here by the Plaintiff.

EMPSCO knew what the allegations were against it. EMPSCO has had the Webb Hayes report since last July (The November version of that report did not alter previous opinions concerning EMPSCO) and it therefore knew from that report what it had to be prepared to defend against (albeit from a co-Defendant). Under *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 49 F.Supp.2nd 456 (CD. Md 1999), Boone's testimony ought not now be restricted. Mr. Boone's testimony on EMPSCO's culpability as the engineer-of-record is important to all the parties, not just the Plaintiff, for apportioning blame if any is found. EMPSCO will suffer no prejudice as it has been obvious since July, 2004 that it had to defend itself from these opinions whether the attack were to come from Plaintiff or one of it co-defendants. There is no prejudice to EMPSCO, though there would be prejudice to co-defendants Winzler & Kelly and perhaps Black Construction Company if Plaintiff were handcuffed from presenting its case against EMPSCO so that the jury could fairly apportion damages. Finally, EMPSCO has not asked for a continuance to mitigate any possible disadvantage this delayed disclosure might have had on them, indeed none is needed now that EMPSCO has deposed Mr. Boone.

## CONCLUSION

EMPSCO will suffer no serous disadvantage as a result of Mr. Boone supplementing his report in April, 2005. The opinions in that supplemental report were implicit in his original report and mirror the opinions Winzler & Kelly's expert Webb Hayes in his July, 2004 report. EMPSCO has known since July, 2004 in detail, what expert opinions it would have to face at trial. Now having deposed, in depth, Mr. Boone (and incidentally Mr. Hayes), EMPSCO suffers no prejudice by Mr. Boone being allowed to testify in conformance with his supplemental report given to EMPSCO more than two weeks before his deposition. Indeed EMPSCO's co-defendants would be prejudiced if Mr. Boone could not fully testify so that the jury could see how to fairly apportion blame.

Dated this 31st day of May, 2005.

Respectfully submitted,

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Defendant
Winzler & Kelly Consulting Engineers

By: /s/ Daniel Berman
DANIEL J. BERMAN

2003-08-050528-PL-Opp Brief E's Renewed Mtn.doc