·ORIGINAL ●

● 
FILED
DISTRICT COURT OF GUAM
JUN -9 2005
MARY L.M. MORAN
CLERK OF COURT



CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO EMPSCO'S RENEWED MOTION TO LIMIT TESTIMONY OF PLAINTIFF'S EXPERT AT TRIAL; DECLARATION OF SERVICE** |

COMES NOW Plaintiff S.J. GARGRAVES SYNDICATE AT LLOYDS (hereinafter "Plaintiff") and files its brief in opposition to Defendant ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION (hereinafter "EMPSCO")'s Renewed Motion to

Limit Testimony of Plaintiff's Expert at Trial (hereinafter "the Motion") as follows:[1]

## I. INTRODUCTION

Having failed three times before, Defendant EMPSCO now makes a fourth tactical attempt to avoid liability for its deficient work. EMPSCO herein seeks to deny Plaintiff's expert, Elliott H. Boone, S.E., the opportunity to express opinions based on information, such as deposition testimony, which did not exist when he filed his initial F.R.C.P. 26(a)(2)(B) report. EMPSCO's motion should be denied.

Defendant EMPSCO, the moving party, was the Engineer of Record[2] for the repair and upgrading of the F-1 Pier belonging to Plaintiff's insured, the Port Authority of Guam. EMPSCO was paid over $160,000 for its services,[3] which *inter alia* entailed 204 hours of engineers' time in preparing design calculations, project specifications, and complete drawings.[4] As a part of its work on this project, EMPSCO produced a lengthy Engineering Documentation Report. *See* Exhibit H to the Booth Declaration, p. 1. EMPSCO prepared lengthy Design Calculations for the work. *Id.*, p. 2. EMPSCO also produced detailed Specifications for the work to be done. *Id.*, p. 3. Finally, EMPSCO produced a comprehensive set of blueprint drawings for the repair and upgrading of the Pier. *Id.*, p. 4.

On November 12, 2004, EMPSCO filed two motions, for summary judgment and judgment on the pleadings in this case. EMPSCO claimed in its motions that it had provided competent professional services to the Port, and, that in any case, its services had terminated by

---

[1] Plaintiff will not repeat facts and arguments regarding the unfair adverse effect on other Defendants if EMPSCO's Motion were to be granted. These were put forward by Defendant Winzler & Kelly Consulting Engineers in its Opposition to Engineering, Management & Planning Services' Corporation's Renewed Motion to Limit Testimony of Plaintiff's Expert at Trial, filed herein on June 2, 2005 (hereinafter "Winzler & Kelly's Opposition"). Plaintiff incorporates herein and adopts said Opposition to EMPSCO's Motion.

[2] *See* Exhibit E to the Declaration of Forrest Booth in Opposition to EMPSCO's Renewed Motion to Limit Testimony of Plaintiff's Expert at Trial (hereinafter the "Booth Declaration"), a letter from the Port Authority of Guam appointing EMPSCO as the Engineer of Record for the project, dated October 16, 1995.

[3] *See* Exhibit K to the Booth Declaration, p. 5.

[4] *Id.*, p. 3.

March 8, 1996. This Court (the Hon. Robert Clive Jones) had no trouble dispensing with those arguments. In denying EMPSCO's motions, the Court found that EMPSCO was obligated by contract to provide professional engineering services and to supervise the construction work performed by Defendant Black Construction Corporation (hereinafter "Black"). *See* Court's Order filed April 8, 2005, pp. 16-17. The Court found that, despite EMPSCO's erroneous argument that its involvement with the project ended on March 9, 1996, EMPSCO in fact was intimately involved with designs for aspects of the repairs, up until December 31, 1996, and that EMPSCO performed a "site inspection" of the F-1 Pier as late as December 30, 1996. *Id.*, at 17.

As the dates for the depositions of retained experts approached, counsel for EMPSCO made the statement that in his opinion, Plaintiff's expert held no opinions that EMPSCO had breached its contract or the duty of care. Counsel for Plaintiff wrote to counsel for EMPSCO on April 19, 2005, correcting his misunderstanding in that regard. *See* Exhibit F to the Booth Declaration. EMPSCO then filed, on April 25, 2005, its Emergency Motion for Protective Order and Motion *in limine* Restricting Expert's Testimony at Trial, along with an *Ex Parte* Application for an Order Shortening Time for Filing Briefs Re Emergency Motion for a Protective Order and Motion *in limine*. On May 9, 2005, this Court denied the Motion for a Protective Order, and recommended that the Motion *in limine* to restrict Mr. Boone's trial testimony be denied also. Contrary to the assertion by EMPSCO that the Court issued it an "invitation",[5] the Court merely stated that, if it had good grounds, EMPSCO could renew its motion **at trial**. Order and Report & Recommendation filed May 9, 2005, p. 4, l. 15. Therefore EMPSCO's motion herein, five months **before** the presumptive trial date, is premature.

## II. LEGAL STANDARD

Excluding the testimony of a plaintiff's expert is an extreme step which should rarely be

---

[5] EMPSCO's Brief, p. 1.

used. Sullivan v. Glock, Inc., 175 F.R.D. 497, 504 (D. Md. 1997); Reed v. Binder, 165 F.R.D. 424, 431 (D.N.J. 1996); "Precluding testimony from the expert under this rule *is a drastic remedy* and should only be applied in cases where the party's conduct represents *flagrant bad faith and callous disregard of the federal rules*." McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 587 (W.D.N.Y. 1995) (emphasis added). The normal remedy for an improper disclosure is to allow a deposition (or an additional deposition) of the expert. Galentine v. Holland Am. Line, 333 F.Supp.2d 991, 994-95 (W.D. Wash. 2004); Absolute Envtl. Serv. v. McKinley, No. A03-0199CV, 2005 WL 820415, at *1 (D. Alaska Apr. 4, 2005). Even that remedy is unnecessary here, since counsel for EMPSCO attended and participated in the two-day deposition of Mr. Boone, which occurred well after the date of his supplemental report. When trial occurs many months from now, EMPSCO will be well able to cross-examine Mr. Boone on his opinions and the facts on which they are based. As will be seen, *infra*, nothing EMPSCO has pointed to justifies the drastic remedy which EMPSCO seeks.

## III. EMPSCO'S MOTION MUST BE DENIED

EMPSCO's Motion, and the supporting declaration of counsel, are so full of misstatements and half-truths that it is difficult for Plaintiff to respond to them. However, the Motion fundamentally rests on four premises:

1. EMPSCO alleges that Mr. Boone, at the time of his deposition, only pointed to three pages of documents and one deposition as significant "newly discovered evidence". Motion, p. 5, ll. 9-14. EMPSCO is wrong about this.

2. EMPSCO alleges that the initial report of Plaintiff's expert, dated May 12, 2004, attributes no negligence to EMPSCO. Motion, p. 2, ll. 20-22. EMPSCO is wrong about this.

3. EMPSCO alleges that Plaintiff represented to the Court that Mr. Boone's supplemental report was based only upon evidence discovered after the close of formal discovery

on November 5, 2004. Motion, p. 3, l. 22 to p. 4, l. 1. EMPSCO is wrong about this.

4. EMPSCO alleges that any report Plaintiff filed after its initial report would have to be a "rebuttal expert report" and therefore had to be filed no later than November 18, 2004. Motion, p. 6, ll. 3-10. EMPSCO is wrong about this as well.[6]

### A. Mr. Boone Received Considerable New Information After He Submitted His Initial Report, Not Three Pages

In the full year between the date of Mr. Boone's first and second reports (May 12, 2004 to April 21, 2005), Mr. Boone was provided with a significant amount of additional material in this case, since discovery was ongoing and investigators working for Plaintiff were finding out additional facts regarding the claim.[7] Mr. Boone received 10 shipments of documents from counsel for Plaintiff between the dates of his first and second reports. *See* Declaration of Elliott H. Boone, filed herewith (hereinafter the "Boone Declaration"), ¶ 4. He received copies of two very important depositions, that of N.C. Macario, whose deposition was taken on September 20, 2004, and Reynaldo Arce, Senior Engineer of EMPSCO, taken September 22, 2004. *See* the Boone Declaration, ¶¶ 3, 4. Mr. Arce was the first employee of EMPSCO to be deposed in this case. Obviously, the deposition of a senior EMPSCO representative is significant to the formation of opinions regarding what EMPSCO did or did not do correctly on the project.

EMPSCO is simply wrong when it states (Motion, p. 5, ll. 14-15) that Mr. Macario's deposition transcript was "hardly 'newly discovered evidence'"; what else could it be? Mr. Boone submitted his initial report on May 12, 2004, and the Macario deposition was not

---

[6] EMPSCO is at least honest enough to not argue that it was in any way surprised that Mr. Boone's supplemental report: (1) supported the claims contained in Plaintiff's First Amended Complaint, filed herein on December 23, 2003, and (2) demonstrated EMPSCO's shortcomings in greater detail than his original report (Winzler & Kelly's expert Mr. Hayes did the same in his report, cited in Winzler & Kelly's Opposition, fn. 1, *supra*). EMPSCO did not seek a continuance of trial on the basis of surprise, although *de facto* it recently received a five-month postponement of trial (from June 13 to November of 2005) from the Hon. Ricardo Martinez while its motion was pending, on account of the Court's own schedule.

[7] *See* the Booth Declaration, ¶ 3.

4817-3250-2016.1.055639-00001                      5.

Case 1:03-cv-00009   Document 199   Filed 06/09/2005   Page 5 of 16

taken until September 20, 2004! *See* Exhibit A to the Booth Declaration, p. 5. Mr. Boone specifically stated that the Macario deposition was important "new evidence" that he reviewed before submitting his supplemental report. *See* Exhibit J to the Booth Declaration, p. 196, ll. 16-19.

Mr. Macario was the construction superintendent, one of Plaintiff's insured's (the Port's) representatives at the jobsite. Mr. Boone had been interested in reviewing Macario's files and records for some time. *See* the Boone Declaration, ¶ 10; *see also* the Booth Declaration, ¶ 5. But Macario has no records concerning this Pier F-1 project, since they were all swept away in a typhoon. *See* Macario deposition, p. 54, ll. 6-8, attached as Exhibit B to the Booth Declaration. (Macario even lost its computers in the typhoon. *Id.*, l. 14.)

Indeed, it was after Mr. Boone received Macario's deposition on December 9, 2004 that he was able to focus on errors and omissions by EMPSCO. *See* the Boone Declaration, ¶ 3. *See also*, Exhibit J to the Booth Declaration, p. 191, l. 24 to p. 192, l. 3 and p. 196, ll. 16-18. It was only by reading Macario's deposition that Mr. Boone learned that Macario had no responsibility for performing design work or structural calculations. *See* Exhibit B to the Booth Declaration, p. 18, ll. 3-5 and p. 44, ll. 7-12. All calculations were passed to and reviewed by EMPSCO only. *Id.*, p. 47, ll. 14-16 and p. 47, l. 24 to p. 25, l. 3.

Structural engineering is a complex science, and in a project where multiple entities were involved, the exact role played by each must be evaluated by the engineer before he can provide an opinion as an expert witness; the documentary record is interrelated. *See* the Boone Declaration, ¶ 9. During the year-long period between his two reports, in addition to receiving voluminous documents, Mr. Boone had four lengthy in-person meetings with counsel for Plaintiff, and at least 17 telephone conferences, at which he received additional information. *See*

the Booth Declaration. ¶ 3. In addition, numerous emails were exchanged wherein additional information was provided. *Id.* Despite the protestations of counsel for EMPSCO, Mr. Boone was provided a sizeable amount of other relevant information in this case: 17, 4-inch 3-ring binders, a significant portion of it **after** the date of his initial report. *See* the Boone Declaration, ¶ 5.

The Court in its Order and Report & Recommendation of May 9, 2005 ("Order"), points out that Mr. Boone's supplemental disclosure was based **in part** on new facts he received after the close of discovery (Order, p. 3, l. 14); the Court was obviously aware that **other** information also played a part in the opinions he disclosed in his second report. Mr. Boone's two-day deposition,[8] coming as it did after both of his reports were filed and served, gave counsel an opportunity to fully investigate these facts. This cures any possible prejudice to EMPSCO (although Plaintiff denies there was any). *See* <u>Seton Co. v. Lear Corp.</u>, 2005 U.S. Dist. LEXIS 8963 at 10 (E.D.Mi. 2005) (even if an expert's second report is deemed to be a rebuttal, making the expert available thereafter for a deposition removes any prejudice, when second report is based on information not available when first report was drafted). As will be seen in Section III.E., *infra*, however, counsel did not fully avail themselves of this opportunity for discovery.

Contrary to EMPSCO's assertion that there were only three pages of documents that Mr. Boone relied on in concluding that EMPSCO failed to meet the required standard of professional service, in fact Mr. Boone referred to his 17 binders full of materials and stated "[T]here is lots of stuff. ... I've been working on the case for – this case for probably, what, a year and a half now? That's a lot of documents." *See* Exhibit J to the Booth Declaration, p. 196,

---

[8] *See* Exhibit J to the Booth Declaration.

ll. 13, 23-25.

> Q: And you're saying that's different documentation than the three things you're referring to in the first paragraph?
>
> A: That's right.[9]

To downplay the importance of these documents, defense counsel referred to them as "transmittals". In fact, they are formal Contract Submittals, which the contractor was required to make under its contract with the Port, in order to get approval when it planned to change something contained in the contract. A submittal is sent to the Engineer of Record (EMPSCO) for formal approval. The documents attached as Exhibit A to the Boone Declaration relate to Contract Submittal No. 12 (pile design), and the documents attached as Exhibit B to the Boone Declaration constitute Contract Submittal No. 18a (epoxy substitution). Boone Declaration, ¶¶ 7, 8. It is the **approval**, contained in those documents, of these submittals by EMPSCO, without doing calculations or an adequate investigation of their fitness, that falls below the required standard of care. *Id.*; *see also* Exhibit I to the Booth Declaration, Mr. Boone's supplemental report.

> With regard to submittals, Mr. Boone testified:
>
> Q: And that's the transmittals from EMPSCO regarding Submittals 12 and 18a?
>
> A: It's not only from EMPSCO, I believe there are some from Black Construction. I believe there are some from – there's one from Macario. If you would like, I can pull them out.[10]

The reason Mr. Boone pointed to the documents constituting Submittals 12 and 18a as being significant, with regard to the formation of his opinions that EMPSCO failed to meet the required standard of care, is this: in each case, EMPSCO approved, as Engineer of Record,

---

[9] *See* Exhibit J to the Booth Declaration, p. 197, ll. 12-15.
[10] *See* Exhibit J to the Booth Declaration, p. 194, ll. 20-25.

significant changes to the original plans. EMPSCO's initial approval of Submittal No. 12 was conditioned on structural calculations being performed and provided to EMPSCO for review. *See* Exhibit C to the Booth Declaration, p. 3, ¶ 5. Black provided some kind of calculation data from Winzler & Kelly (probably pertaining to some prior design), *Id.*, p. 4, the identity of which is unknown, since all copies have apparently been intentionally destroyed. However, it is clear that no calculations were prepared **for this project** by Winzler & Kelly for EMPSCO to review, and EMPSCO did not follow up to see why they were not forthcoming. This Mr. Boone learned after drafting his initial report. Boone Declaration, ¶ 7.

> Q: ... This wasn't new information, correct?
>
> A: This particular document was new.
>
> Q: What's that?
>
> A: This document right here, where it refers to structural calculations from Winzler & Kelly.

Exhibit J to the Boone Declaration, p. 203, l. 21 to p. 204, l. 1. The approval of the design change, without supporting calculations, is one of the principal bases of Mr. Boone's opinion that EMPSCO failed to meet the required standard of care. Boone Declaration, ¶ 7. At the time he prepared his first report, he did not know that EMPSCO had never seen any structural calculations for the revisions to the project. Exhibit J to the Boone Declaration, p. 208, ll. 20-22.

Counsel for EMPSCO showed Mr. Boone three documents, one of which was from Macario, one from Black and one from EMPSCO. In fact, available in the conference room during the deposition[11] were other submittals and transmittals, from EMPSCO and others, specifically approving changes to the pile design for the overall pier repair (Contract Submittal

---

[11] *See* the Booth Declaration, ¶¶ 6 and 7.

12),[12] and approving the substitution of a different epoxy product for the one specified to be used in the repair (Contract Submittal 18a).[13] Counsel for EMPSCO never showed all of those documents (and hundreds of others) to Mr. Boone, or asked if he considered them in forming his opinion. He had considered them, and found them significant. Boone Declaration, ¶¶ 7, 8, 9. It is, of course, the approval by EMPSCO of the defective pile connection design (Contract Submittal 12), and the approval by EMPSCO of the substitution of a less-strong epoxy product (Contract Submittal 18a), which in part constitutes engineering service by EMPSCO which is below the required standard of care. *See* the Boone Declaration, ¶¶ 7, 8, 11; *see also* the Booth Declaration, ¶¶ 6, 7, and Exhibit I thereto. Only a review of all of those documents, and several depositions, made the whole picture clear to Mr. Boone. Boone Declaration, ¶¶ 2, 3, 6, 7, 8, 11.

### B. Mr. Boone's Initial Report States That EMPSCO Failed To Meet The Required Standard Of Care

Plaintiff's initial report, contrary to EMPSCO's assertion, did point out in May of 2004 that EMPSCO had been negligent. Mr. Boone's first report states that "[I]t is the Engineer's responsibility to see that critical elements of his design are correctly completed in accordance with his intentions." Initial Report, p. 9, attached as Exhibit G to the Booth Declaration. The Port hired EMPSCO, and EMPSCO was its Engineer, *i.e.*, Engineer of Record. *See* Exhibit E to the Booth Declaration. Defendant Black hired Defendant Winzler & Kelly as its engineer, to do some revisions to EMPSCO's design, but the Port had no contractual relationship with Winzler & Kelly. Winzler & Kelly's design was deficient, and EMPSCO approved it without ever seeing any calculations to support the design. Boone Declaration, ¶ 7. This falls well below the standard of care required of a professional engineering firm. *Id.* For this EMPSCO will be held liable, as Plaintiff advised in its First Amended Complaint in December of 2003 and

---

[12] *See* Exhibit A to the Boone Declaration.
[13] *See* Exhibit B to the Boone Declaration.

Mr. Boone supported in May of 2004.

### C. This Court Should Focus On What Evidence Mr. Boone Received After The Date Of His Initial Report, Not After The Close Of Formal Discovery

It is axiomatic that an expert can only consider evidence which is in existence at the time he performs his inquiry. *See* Seton, *supra*, at 8, 10. EMPSCO attempts to focus the Court's attention on November 5, 2004, the date formal discovery closed in this case. In fact, the only relevant date is May 12, 2004, the date Mr. Boone submitted his initial report. Any information he received after May 12, 2004 is, by definition, "newly-received information" (relative to his initial report). *Id.* In paragraph 4 of his Declaration, Mr. Boone sets forth the large volume of material he received **after** the date of his initial report.

However, even utilizing the discovery cut-off date which EMPSCO argues for, EMPSCO is still wrong. "[S]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was **not available at the time of the initial disclosure**." Keener v. U.S., 181 F.R.D. 639, 640 (D.Mt. 1998) (emphasis added); Seton, *supra*, at 8. After the discovery cutoff date (November 5, 2004), Mr. Boone received: the depositions of Mr. de los Santos, Mr. Macario, and Mr. Arce; blueprints related to the project; the technical data regarding the Red Head Redi-Chem epoxy product which Winzler & Kelly had specified and EMPSCO approved; and a volume of correspondence between Black and Macario. Boone Declaration, ¶ 4. Mr. Boone stated clearly in his Declaration that the Macario deposition was one of the "new items" which he found significant to his analysis, Boone Declaration, ¶ 3; the Arce deposition was another, *Id.* He did not receive either until December 9, 2004. Boone Declaration, ¶ 4. This information helped clear up confusion which Mr. Boone had previously felt concerning the roles played by various parties. Boone Declaration, ¶ 9. This new information is a more than adequate basis and explanation for Plaintiff's supplemental

disclosure. *See* Tucker v. Ohtsu Tire & Rubber Co. Ltd., 49 F.Supp.2d 456, 461 (D.Md. 1999); Seton, *supra*, at 10.

The issue, of course, is that EMPSCO (1) failed to secure calculations demonstrating that the revised design was adequate, *see* the Boone Declaration, ¶ 7, and (2) approved a substitute epoxy that was only 59% as strong as the originally-specified one, *see* the Boone Declaration, ¶ 8, without checking the test data to see that the substitute product had the required tensile strength. Although counsel for EMPSCO characterizes certain documents as mere "transmittals", the fact of the matter is that the important ones are **approvals**. *See* Exhibits A and B to the Boone Declaration. EMPSCO will not be held liable because it **transmitted** drawings of the new design; it is liable because it **approved** the new design and the substitute epoxy when no calculations had been done by anyone to demonstrate that the design could withstand the anticipated earthquake forces. Boone Declaration, ¶¶ 6, 7, 8.

### D. Plaintiff's Expert's Supplement Report Was Not "Rebuttal" And Was Required

EMPSCO is forced to characterize Mr. Boone's second report as a rebuttal (Motion, p. 6). EMPSCO is wrong. Plaintiff in this case has the burden of proof against each of the Defendants, and under F.R.C.P. 26(e), has a **duty** to supplement its expert's disclosure:

> A party who has made a disclosure under subdivision (a) . . . *is under a duty to supplement or correct the disclosure . . . to include information thereafter acquired* if . . . (1) . . . the party learns that in some material respect the information disclosed is incomplete or incorrect . . . *With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends . . . to information contained in the report . . . .*

Fed. R. Civ. P. 26(e) (emphasis added).

> Subdivision (e) provides that a party is not under a continuing burden [to supplement discovery responses] except as expressly provided ... An exception is ... [provided] as to expert trial witnesses in order to carry out the provisions of Rule 26(b)(4). *See*

Diversified Products Corp. v. Sports Center Co., 42 F.R.D. 3 (D.Md. 1967).

Advisory Committee Notes to the 1970 Amendment to Rule 26, Subdivision (e) – Supplementation of Responses. Parties can supplement Rule 26(a)(2)(B) (expert) disclosures as late as the date they are required to make all Rule 26(a)(3) pretrial disclosures (here, 30 days before trial). Luma, *supra*, 226 F.R.D. at 544.

This Court so held in its Order of May 9, 2005. "The Court concurs with the Plaintiff that it has a continuing duty to supplement and/or correct its expert disclosures based on newly acquired information." Order, p. 3, ll. 21-22. That is the law of this case. No later Scheduling Order in this case ever revised the original date for F.R.C.P. 26(a)(3) disclosures set in the Court's June 11, 2003 Scheduling Order; accordingly, the default cut-off date for supplementation was 30 days before trial, or May 13, 2005. Mr. Boone's supplemental report was filed well before that, on April 21, 2005.

> "... second or supplemental reports should be permitted because no deadline was established in the agreed and ordered schedule in this case for submitting further expert reports and the time for doing so was therefore supplied by the Rules ..."

Luma Corp. v. Stryker Corp., 226 F.R.D. 536, 541 (S.D. W.Va. 2005) (noting that the parties could have agreed a date for supplementing experts' reports as part of a three- or four-stage schedule for experts' reports, but (as here) chose not to do so).

Clearly, Mr. Boone's initial report was incomplete, within the meaning of F.R.C.P. 26(e). It was not possible for it to be complete in May of 2004; discovery was still open; indeed, eight depositions were taken between the date of his first and second reports, *see* the Booth Declaration, ¶ 2, of which **seven** were provided to Mr. Boone. *Id.* He could not evaluate the roles played the various parties until he received a copy of the transcripts of the depositions of an EMPSCO representative (EMPSCO's Senior Engineer, Mr. Arce), and of N.C. Macario &

4817-3250-2016.1.055639-00001                    13.
Case 1:03-cv-00009   Document 199   Filed 06/09/2005   Page 13 of 16

Associates (the principal in N.C. Macario & Associates, Mr. Macario), both of which he received on December 9, 2004. Boone Declaration, ¶¶ 2, 4, 6, 11. This is well **after** the date of Mr. Boone's initial report (May 12, 2004), **after** discovery cut-off (November 5, 2004), and **after** the date for filing rebuttal expert reports (November 18, 2004). The Court herein never set a date for supplementing experts' reports. *See*, Luma, *supra*, 226 F.R.D. at 544. Therefore EMPSCO's assertion that Plaintiff is prohibited from asking Mr. Boone to supplement his report under Rule 26, based on the depositions of critical witnesses **who had not been deposed** at the time of his initial report, is absurd. Seton, *supra*, at 7-8.

### E. Counsel Could Have Learned More At Mr. Boone's Deposition, Had They Asked

None of the attorneys representing the Defendants ever asked Mr. Boone, directly and unequivocally, each and every basis for his opinions concerning EMPSCO's breaches of contract and failures to meet the required standard of professional care; they preferred to argue with him. Nevertheless, he clearly and unequivocally stated that the pile connection design, as drawn by Winzler & Kelly, submitted by Black and approved by EMPSCO, failed to meet the requirements of the applicable Uniform Building Code. *See* Exhibit J to the Booth Declaration, p. 41, l. 16 to p. 42, l. 9; p. 100, ll. 14-16; and p. 120, ll. 8-11. He also testified that the 1994 Uniform Building Code required a seismic analysis (calculations), which was never done by the Defendants. *See* Exhibit J to the Booth Declaration, p. 135, ll. 15-20 and p. 228, ll. 1-4. This fell below the required standard of care. *See* Exhibit J to the Booth Declaration, p. 120, ll. 8-11 and Exhibit G, pp. 5-9.

## IV. CONCLUSION

There is no basis for restricting the scope of Mr. Boone's testimony at trial, now that he has given a two-day deposition. EMPSCO has already tried three times unsuccessfully to avoid

4817-3250-2016.1.055639-00001                14.

Case 1:03-cv-00009   Document 199   Filed 06/09/2005   Page 14 of 16

its day in Court to answer for its breaches of contract and failures to meet the required standard of care to which licensed engineers are held. Mr. Boone's supplement report was timely, as Keener, Luma and Seton demonstrate, and as this Court previously ruled on May 9, 2005. His opinions are relevant, and indeed critical to an understanding of this case. This Motion, like EMPSCO's three prior ones, must be denied.

DATED: Hagåtña, Guam, June 9, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on June 9, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S OPPOSITION TO EMPSCO'S RENEWED MOTION TO LIMIT TESTIMONY OF PLAINTIFF'S EXPERT AT TRIAL** upon Defendants Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Klemm Blair Sterling & Johnson, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and

>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 9th day of June 2005 at Hagåtña, Guam.

_____
DAVID LEDGER

SANFRAN1\33749\1 123206.000