LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526
```
                    LAW OFFICES
               TARPLEY & MORONI, LLP
       A Law Firm including a Professional Corporation
                 Bank of Hawaii Building
            134 West Soledad Avenue, Ste 402
                   Hagåtña, Guam 96910
                Telephone: (671) 472-1539
                    Fax: (671) 472-4526
```

3ZP7076
Attorney *for* Defendant Engineering, Management
& Planning Services Corporation



## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS, | CIVIL CASE NO. CV03-00009 |
| Plaintiff, | |
| v. | |
| BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT, & PLANNING SERVICES CORPORATION, | **REPLY OF EMPSCO TO PLAINTIFF'S OPPOSITION TO RENEWED MOTION TO LIMIT TESTIMONY OF PLAINTIFF'S EXPERT AT TRIAL** |
| Defendants. | |

Plaintiff repeatedly flaunts discovery rules and scheduling orders and then uses misrepresentations to obfuscate these defaults. The question presented here is whether the Court will continue to allow Plaintiff to get away with this without sanction? The Magistrate, in denying "at this time" EMPSCO's original Motion, was clearly warning Plaintiff's *pro hac vice* counsel that the motion to limit Boone's testimony at trial would be revisited by the Court and monetary sanctions could be imposed if Mr. Booth's representations had not been accurate. They were not, and neither are many of the representations in Plaintiff's opposition to this renewed motion.

<div style="text-align:center">**THE TRUE FACTS**</div>

1.  Plaintiff added EMPSCO as a Defendant in this case as an afterthought by a First Amended Complaint served on December 29,

2003, after significant discovery had been undertaken. It has become quite evident that a primary motivation for suing EMPSCO was the anticipated additional deep-pocket of insurance that hopefully was available for settlement purposes.[1]

2. Plaintiff's opposition makes repeated claims that EMPSCO was the "Engineer of Record" on the project, who prepared the design calculations and "complete drawings" for "the work" for which it was paid $160,000. However Plaintiff neglects to mention that all "the work" EMPSCO performed was completed and paid for <u>before the contractor was hired</u>, and was for a repair design that was never used. Black's bid was too high for the Port's budget, so the Port agreed instead to use a design by a different structural engineer, Bruce Swanney of Winzler & Kelly. EMPSCO's design was then scrapped. So "the work" EMPSCO did and for which it was paid was not "the work" which is the subject of this lawsuit. *First Amended Complaint, ¶ 8.*

3. EMPSCO's contract was very clear in limiting any warranty for design and review duties to design work performed by EMPSCO, not any other designer (such as W&K). There is no agreement in its contract that EMPSCO assumed any duties as an "Engineer of Record", a term which is never mentioned. In fact, Plaintiff's own expert, Elliott Boone, maintains on page 2 of his "Supplemental" report that the "Engineer of Record" for the repair at issue was not EMPSCO, but Bruce Swanney, the structural engineer who stamped and signed the design drawings (VE-1). So it is disingenuous for Plaintiff's counsel to repeatedly mischaracterize EMPSCO as the

---

[1] Unlike the other Defendants, EMPSCO in fact has no insurance coverage and is paying for its defense from its own limited funds.

"Engineer of Record", when even his own expert disagrees with him.

    4. Although all three of these causes of action against EMPSCO in the FAC alleged specific instances of "negligence", Plaintiff's initial expert's report failed to render any expert opinion that EMPSCO's services were negligent or otherwise fell below any standard of care expected of a reasonably prudent engineer. This was a significant omission of Boone's report, for Plaintiff's counsel should have known that in order to sustain a claim of professional negligence against an engineer the testimony of a competent expert is required to establish both the appropriate standard of care and to establish the professional's variance from that standard. Allied Prop. v. John A. Blume & Associates, Engineers, 102 Cal.Rptr. 259 (Cal.App. 1974); See generally, Annotation, Necessity of Expert Testimony to Show Malpractice of Architect, 3 ALR 4th 1023 (1981).[2]

    5. EMPSCO delivered its expert report to Plaintiff on October 15, 2004 *(See Exhibit 1 to the Second Declaration of Thomas M. Tarpley, Jr. filed contemporaneously herewith)*. Based on Mr. Tsutsui's 30+ years experience, and under the circumstances of this case, the standard of care did not require EMPSCO to perform a technical engineering review of W&K's design once it was stamped and signed by another structural engineer. EMPSCO's review was only a "compliance submittal review", not one to review or check structural calculations, but only to approve the general concept of

---

[2]
    Plaintiff argues that Boone's initial report also made reference of EMPSCO's negligence, but this is not the case. The one sentence which Plaintiff quotes out of context is from page 9 of the Boone report: "...it is the Engineer's responsibility to see that critical elements of **his design** (emphasis added) are correctly completed in accordance with **his intentions** (emphasis added). There is no mention of EMPSCO or of any "Engineer of Record". It is clear from the context of this paragraph in which this sentence appears that Mr. Boone is referring to the Engineer who stamped and signed VE-1 (Bruce Swanney of W&K).

the repair, the professional responsibility for which belonged to Bruce Swanney, the designing engineer for W&K. Plaintiff's own expert acknowledges this.[3]

---

[3]

Q: Are you aware of a distinction between a compliance submittal review of a drawing, and a technical review?

A: I believe I am.

Q: Could you just tell me what the difference is?

A: Compliance submittal is for, generally, concurrence with a set of perimeters or conditions. Technical review where one does calculations and forms an opinion as to the adequacy of the design.

Q: Okay. And when you – when one does a compliance submittal review, they, they are not forming an opinion of the adequacy of the design, is that right?

A: They're –

Q: I – using your words.

A: No. That's okay. I'm thinking about this. They are – when you do a compliance review, there is an obligation on the reviewer to make sure, or to insure, that in general terms it is fit for purpose.

Q: Now, in general terms. You mean, just in concept.

A: In concept.

Q: Okay.

A: In concept. I mean – lets just use the words "in concept." I think we all know what that means.

Q: Okay. The term "compliance," what is it supposed to comply with?

A: Its going to fit, and it looks like its going to work. Looks like without a technical review.

Q: When is an engineer – in which area would an engineer would be performing a compliance submittal review as opposed to a technical review?

A: When a portion of the project is designed by the contractor, under the contractor's scope of work and responsibility.

Q: And then what engineer would be performing this compliance review?

A: It would be the owner's engineer.

Q: Okay.

A: But, can I extend that? The technical review should be done by the person preparing the document.

Q: The designer?

A: The designer.

Q: And I believe in your report you've identified that person as being Bruce Swanney, correct?

A: I believe so. Yeah, I believe so. Yes, it is. I think we all agreed to that.

*Deposition of Elliott Boone, p.59:18-61:13 (attached as Exhibit 2 to the Second Tarpley Declaration.*

6. EMPSCO's compliance submittal review of VE-1 was only an accommodation to the Port. There was no requirement in EMPSCO's contract to perform these services. This too is conceded by Elliott Boone, who admits seeing EMPSCO's contract for the first time at his deposition:[4/]

7. After EMPSCO provided Plaintiff with the report of Albert Tsutsui, Plaintiff had until "not later than November 18, 2004" to file any rebuttal report. Plaintiff failed to provide a rebuttal report. Accordingly, EMPSCO's filed its Motion for Summary Judgment to Dismiss Plaintiff's Third, Sixth and Eighth Causes of Action, in part because all are based on allegations of professional negligence (even the breach of contract claim), which

---

[4/]

Q: So when you start referring to the contract and what EMPSCO was required to do under that contract, in your mind you are referring to a generic contract, not the specific contract bid with the Port?

A: That is a correct characterization.

Q: Alright. And If I show you EMPSCO's contract, and you can show me specifically where –

A: Do you want to give me a minute or two?

Q: Sure.

A: I should be able to find out if its in here.

Q: While you are doing that –

A: Can I –

Q: Are you looking at that contract to answer this question for the first time?

A: Yeah.

Q: Okay. So there is no particular clause that you were referring to in your April 21 report?

A: No. It would be a generic engineering services agreement. And the first thing I note on this is that it refers, in – on page 2, paragraph 1, "Consultant here agrees to fully complete and perform the scope of services set forth in Exhibit A attached hereto." And I find no Exhibit A.

Q: That's the scope of services.

A: That's the scope of services. And therein, <u>I find no requirement to review anything provided during the construction projects</u>.

*Boone Deposition, pp.75:20-76:21 (emphasis added) (Exhibit 3 to Second Tarpley Declaration). See also EMPSCO's Scope of Services attached to its contract (Exhibit 4 to Second Tarpley Declaration).*

were unsupported by any expert opinion contradicting the opinions of Mr. Tsutsui and Reynaldo Arce, EMPSCO's structural engineer. The motion was argued before Judge Wallace Tashima, but ruled upon by Judge Clive Jones, who dismissed the Third and Eighth Causes of Action against EMPSCO for various reasons, but failed to address EMPSCO's argument that Plaintiff's lack of expert opinion mandated the dismissal as a matter of law of Plaintiff's Sixth Cause of Action as well [Docket No. 142]. EMPSCO believes this was an oversight by Judge Jones. Plaintiff's counsel acknowledges as much in his "Request For Reference To Trial Judge", page 3, [Docket No. 180] where Plaintiff admits that precluding "Plaintiff's sole expert...from offering his professional opinions concerning the negligence of EMPSCO" would have a "dispositive" effect on Plaintiff's entire case against EMPSCO. Precisely! Why didn't Plaintiff think of this before, when the scheduling orders of this Court required it? Plaintiff, to this day, still offers no "substantial justification" for withholding evidence from its expert, and waiting until April 21, 2005 to come forth with its crucial evidence against EMPSCO.

8. The fact is, the remaining claim against EMPSCO should have been dismissed as a matter of law on April 8, 2005, by Judge Jones, but who failed to address EMPSCO's entitlement to such a dismissal. It was never ruled upon.[5/] When Plaintiff realized it had "got lucky" it quickly produced the untimely "supplemental" report. EMPSCO objected by immediately filing its Emergency Motion for a Protective Order. Plaintiff therefore had to concoct the

---

[5/] The authority of a prior decision is limited to the points actually decided. U.S. v. Egelak, 173 F.Supp.206 (D. Alaska, Terr. 1959).

"newly discovered evidence" excuse, a misrepresentation made to the Magistrate. It is no wonder that Plaintiff now seeks to have this issue removed from the Magistrate to an (as yet) undesignated trial judge. Having this misrepresentation called upon, Plaintiff now attempts to backpedal by arguing that the evidence was "newly discovered" since the <u>initial report</u>, not since the discovery cutoff date, as Plaintiff's counsel originally promised.

9. Contrary to what Plaintiff is now arguing, Plaintiff promised Magistrate Manibusan that Boone's latest report was not a "rebuttal report" required by the scheduling order and Rule 26(a)(2)(C), but rather a "Supplemental" report based on evidence newly discovered since the <u>discovery cutoff</u> (not just since the initial report) and Magistrate Manibusan understood what Plaintiff was claiming:

> The Plaintiff asserts Mr. Boone's supplemental disclosure was based in part on new facts it <u>received after the close of formal discovery on November 5, 2004</u>. (*Order and Report & Recommendation, p.3:13 [Docket No. 168]*)

The Magistrate was clear in his warning to Mr. Booth:

> The Court acknowledges EMPSCO's concern that the Plaintiff failed to explain what "new information" Mr. Boone <u>relied</u> upon. The Court would have preferred a declaration from Mr. Boone instead of one by Plaintiff's counsel, but will nevertheless accept the representations made by Attorney Booth. In light of the liberal discovery policies of the Federal Rules of Civil Procedure, the Court is not inclined to limit the scope of Mr. Boone's deposition at this time, <u>especially if the supplemental report was based upon newly discovered evidence</u>. Accordingly, EMPSCO's Motion for a Protective Order is denied. <u>At Mr. Boone's deposition, EMPSCO is free to inquire into what "new information" led Mr. Boone to supplement his May 12, 2004 report. If EMPSCO believes that the supplementation was not based on newly discovered or acquired information, then it is free to renew its motion to exclude this testimony from the trial at that time.</u> Additionally, EMPSCO may seek the

<u>imposition of sanctions against the Plaintiff to recover the costs incurred in attending the deposition and having to file a renewed motion</u>.

*Id.*, p.4 (underlining added).

10. As shown in EMPSCO's renewed motion papers, the "newly discovered evidence" was simply the documents EMPSCO produced to Plaintiff in its initial document production back in March of 2004. Plaintiff attempts to get around this by claiming its expert, Boone, did not get this information until recently (there was no explanation why, since Plaintiff had this information for a year). Plaintiff cannot escape its expert discovery obligations by holding on to evidence it wants its expert to use. That is pure obfuscation. Rule 26 "supplementation" refers to knowledge held by a "party", not the expert himself:

> A ***party*** who has made disclosure under Subdivision (a)...is under a duty to supplement or correct the disclosure or response to include information thereafter acquired...

11. Plaintiff now again misrepresents the source of the "newly discovered evidence" upon which its expert relies. Elliott Boone may have looked at "lots of stuff" but he was quite clear in identifying only <u>three "transmittals"</u> (Boone's word) he relied upon ("Exhibit F").[6/] These three documents were produced to Plaintiff

---

[6/]

Q: So the additional information you referring to in the opening paragraph of your April 21 report is two or three documents?

A: That's right.

Q: And that's the transmittals from EMPSCO regarding Submittals 12 and 18a?

A: Its not only from EMPSCO, I believe there are some from Black Construction. I believe there are some from - there is one from Macario. If you would like, <u>I can pull them out</u>.

Q: Please.

A: It will take five. [continued on page 9].

Page 8 of 10
Case 1:03-cv-00009   Document 205   Filed 06/16/2005   Page 8 of 10

long before the discovery cutoff, long before the rebuttal cutoff, and were even produced prior to Boone's initial report.

12. Contrary to the words Plaintiff tries to place in the Magistrate's mouth, the Magistrate did not order that EMPSCO's renewed motion could be brought only "at trial", but that EMPSCO could renew its motion to "exclude this testimony at trial" if and when EMPSCO "believes that the supplementation was not based on newly discovered or acquired information." This is the only reading of the order which makes sense. The limitation of an expert's testimony is a substantive matter that should be addressed significantly ahead of trial for adequate preparation. Indeed, as Plaintiff admits, the outcome of such a motion may be dispositive of the entire claim against EMPSCO.

---

**MR. TARPLEY:**
Take a minute.
(Brief recess).

**MR. TARPLEY:**
Exhibit F, please.

(Exhibit F marked for identification.)
**MR. TARPLEY:**
Are we back on the record?
Over the break the witness has produced a three-page document which I marked as F. For point of cross-reference, the first page has a previous defendant's deposition exhibit number, No. 11, on it. And the second page has defendant's deposition Exhibit 9. I don't know what depositions these refer to.
For the record, can we –

Mr. Booth:
Macario, probably.

   [Boone Deposition, 70:15-71:13 (Attached to the previously filed Declaration of Thomas M. Tarpley, Jr. in support of its renewed motion)].

Q:   Alright. So what documents were you referencing in response to Mr. Booth's request that you focus in on EMPSCO's performance?

A:   There were lots of other documents, <u>but when I focused in on documents that I felt were pertinent, okay, these were the ones that I felt were pertinent</u>.

Q:   <u>You're referring to Exhibit F here</u>?

A:   <u>Yeah</u>.

Q:   <u>These three</u>?

A:   <u>Yeah</u>.

   [*Id.*, 73:25-74:9].

13. Plaintiff's opposition also contains numerous inaccuracies on its theories of EMPSCO's liability. The only cause of action pending against EMPSCO is Plaintiff's Breach of Contract claim, its other claims having been dismissed by Judge Jones. Yet Plaintiff argues in its opposition brief that EMPSCO is "liable because it approved the new design and the substitute epoxy when no calculations had been done by anyone to demonstrate that the design could withstand the anticipated earthquake forces." Opp., p.12. EMPSCO never contractually undertook to perform these duties, thus there was no breach of contract with regard to the compliance submittal "approval" of the W&K design. *See note 4 on p.5 herein and EMPSCO's contract attached as Exhibit 4 to the Second Tarpley Declaration.* The FAC does not allege that EMPSCO breached any particular clause in its contract. This is understandable because nowhere in EMPSCO's contract was it required to perform the duties which Plaintiff claims EMPSCO failed to perform. The only contract clause that comes close is Article 17, dealing with construction management services which was taken out of EMPSCO's duties when the Port decided instead to hire N.C. Macario as its Construction Manager. The inclusion of Clause 17 was simply an oversight. *See deposition of Simeon S. Delos Santos, the engineer who put out the RFP and negotiated EMPSCO's contract for the Port (Exhibit 5 to the Second Tarpley Declaration).*

Respectfully submitted this \_\_\_16th\_\_\_ day of June, 2005.

TARPLEY & MORONI, LLP

By: _____
THOMAS M. TARPLEY, JR.,
Attorney for EMPSCO