LAW OFFICES
# TARPLEY & MORONI, LLP
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526



**FILED**

DISTRICT COURT OF GUAM

JUN 1 6 2005 ᏀᏢ

**MARY L.M. MORAN**
**CLERK OF COURT**

(189)

3ZP7079
Attorney *for* Defendant Engineering, Management
& Planning Services Corporation

IN THE DISTRICT COURT OF GUAM

S.J. GARGRAVE SYNDICATE ) CIVIL CASE NO. CV03-00009
AT LLOYDS, )
)
Plaintiff, )
)
v. )
)
BLACK CONSTRUCTION )
CORPORATION, WINZLER & KELLY ) **SECOND DECLARATION OF**
CONSULTING ENGINEERS and ) **THOMAS M. TARPLEY, JR.**
ENGINEERING, MANAGEMENT, ) **IN SUPPORT OF EMPSCO'S**
& PLANNING SERVICES ) **RENEWED MOTION TO LIMIT**
CORPORATION, ) **EXPERT TESTIMONY**
)
Defendants. )
————————————————————————)

In further support of EMPSCO's Renewed Motion to Limit
Plaintiff's Expert Testimony, the undersigned declares:

1. Attached to this Declaration as Exhibit 1 is a true and
correct copy of the Report of Albert H. Tsutsui, AIA, EMPSCO's
designated expert witness. This Report was served on Plaintiff on
October 15, 2004.

2. Attached to this Declaration as Exhibit 2 is a true and
correct excerpt of the Deposition of Plaintiff's expert, Elliott
Boone, pages 59 through 61.

# ORIGINAL

1      3.   Attached to this Declaration as Exhibit 3 is a true and
2  accurate copy of excerpts of the Deposition of Plaintiff's expert,
3  Elliott Boone, pages 75 to 76.

4      4.   Attached to this Declaration as Exhibit 4 is a true and
5  correct copy of EMPSCO's contract with the Port Authority of Guam,
6  which is the subject matter of this lawsuit.

7      5.   Attached to this Declaration as Exhibit 5 is a true and
8  correct copy of the excerpts of the Deposition of Simeon S. Delos
9  Santos, the Engineer at the Port Authority of Guam who issued the
10  RFP and negotiated EMPSCO's contract with the Port.

11     I hereby declare under penalty of perjury under the laws of
12  Guam and the United States of America that the foregoing statements
13  are true and correct.

14     Dated this ___16th___ day of June, 2005.

15                    TARPLEY & MORONI, LLP

17                    By:
18                       THOMAS M. TARPLEY, JR.,
                             Attorney for EMPSCO

S.J. Gargrave Syndicate At Lloyds v. Black Construction
Corporation, et. al. CV03-00009
SECOND DECLARATION OF THOMAS M. TARPLEY, JR. IN SUPPORT    **Page 2 of 2**
OF EMPSCO'S RENEWED MOTION TO LIMIT EXPERT TESTIMONY

Case 1:03-cv-00009    Document 206    Filed 06/16/2005    Page 2 of 36

# ALBERT H. TSUTSUI, A.I.A., INC.  ▪ ARCHITECT

JULALE CENTER, SUITE 213
P.O. BOX 2993
HAGATNA, GUAM 96910
TELEPHONE: 472-8566
477-8539
FAX: 477-9227

**Date:**                August 29, 2004

**To:**                  **Mr. Thomas M. Tarpley, Jr., Esq.**

**Subject Project:**     **Repairs and Upgrading of "F-1" Shell Pier**
                         **Apra Harbor, Guam , M.I.**

**RE:**                  **District Civil Action No. CIV03-00009**
                         **S.J. GARGRAVE SYNDICATE AT LLOYDS, PLAINTIFF**
                         **v**
                         **BLACK CONSTRUCTION CORPORATION, WINZLER**
                         **& KELLY, AND ENGINEERING MANAGEMENT &**
                         **PLANNING SERVICES CORPORATION,  DEFENDANTS**

Dear Mr. Tarpley, Jr.:

In regard to the referenced matter for the above subject project, the purpose of this report is to evaluate the following as pertaining to EMPSCO Engineering responsibilities:

I.   PERTINENT ALLEGATIONS:

   A.   III.   FACTUAL BACKGROUND:

      1.   Item No. III.9: "EMPSCO reviewed the Winzler revised engineering plan for repairs and provided a general and conditional approval of the same."

      2.   Item No. III.12: "At all relevant times, Defendants Winzler and EMPSCO owed a non-delegable duty of professional competence and skill to the Port Authority."

      3.   Item No. III.14: " The Project was completed in 1997. Upon completion, Defendants Black and EMPSCO represented and warranted to the Port Authority that the work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam."

      4.   Item No. III.15: "On or about October 13, 2001, the island of Guam suffered another earthquake.  Although it was substantially less powerful that the earthquake of 1993, this earthquake, too, did damage to the property and facilities owned by the Port Authority. Specifically, serious damage was done to F pier, and the dolphins thereof, which had previously been repaired by Black, pursuant to the plans and specifications prepared by, and under the supervision of, Winzler and/or EMPSCO."

5. Item No. III.17: "After receiving the claims for damage caused by the 2001 earthquake, Plaintiff caused an investigation of the losses to be made. This investigation disclosed that the repair of the 1993 earthquake damage had been designed and done improperly by and under the supervision of Defendants. The repairs, or the Project, done in 1996-1997 were inadequate, improperly done, and insufficiently strong to withstand future earthquakes and typhoons. The inadequacy and incompetence of the design, plans, specifications, and repair work performed by or approved by Defendants directly caused and led to further damage to the property of the Port Authority during the year 2001 earthquake, and caused and directly led to damage to and losses by Plaintiff, as is set forth more fully hereinafter."

B. VI. THIRD CAUSE OF ACTION: NEGLIGENT PROPERTY DAMAGE (Against EMPSCO)

1. Item No. VI. 23: "EMPSCO, as a professional engineering firm, owed a non-delegable duty of skill and competence to the Port Authority and breached that duty by negligently preparing, reviewing and approving the plans and specifications for the Project. EMPSCO also negligently supervised the work performed by Black in connection with the Project. The negligence of EMPSCO directly led to losses and damage by Plaintiff."

C. IX. SIXTH CAUSE OF ACTION: BREACH OF CONTRACT (Against EMPSCO)

1. Item No. IX. 30: "EMPSCO breached its contract with the Port Authority of Guam by failing to exercise requisite care, skill, and competence to review and supervise the work of others, including but not limited to the engineering plans and drawings prepared by Winzler."

2. Item No. IX. 31: "EMPSCO breached its contract with the Port Authority of Guam by inadequately and incompetently supervising work performed by Black and others in connection with the Project, by approving improper and negligent changes to the Project, and by failing to note and observe the errors and omissions by contractors performing the Project. These breaches of contract by EMPSCO directly caused damage and losses to Plaintiff."

D. XI. EIGHT CAUSE OF ACTION: BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE (Against EMPSCO)

1. Item No. XI. 35: "Upon information and belief, the contract between the Port Authority of Guam and EMPSCO is a maritime contract, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

Accordingly, there is implied in said contract a warranty of workmanlike performance, owed to the Port Authority. EMPSCO breached said warranty of workmanlike performance by reviewing and/or approving plans and specifications for the Project which were careless, inadequate, insufficient, and erroneous. In addition, EMPSCO breached the warranty of workmanlike performance owed to the Port Authority by failing to report these deficiencies to the Port Authority, failing to adequately supervise the Project, and failing to note and observe the repairs were being performed erroneously and incompletely, and in some cases, not being performed at all. These breaches of the warranty of workmanlike performance by EMPSCO have directly caused damage and losses to Plaintiff."

II. Revised Contract Agreement Between Port Authority of Guam and EMPSCO-Engineering Consultants dated 18th day of December 1995, Scope of Work "Exhibit A"; Negotiated fee breakdown; and clarification letter dated March 12, 2004, deleting construction management services from the Scope of Work "Exhibit A".

III. Black Construction's As-Built Drawings, including Winzler & Kelly's VE-1 for Black Construction.

SUMMARY OF REBUTTAL:

The following opinions and conclusions are based upon Mr. Tsutsui's 30+ years of performing design services for both the private and public sectors, his familiarity with A/E protocol and professional standards on Guam and the significance and responsible use of engineering stamps and signatures on design drawings by design professionals.

I. PERTINENT ALLEGATIONS

A. EMPSCO fulfilled its scope of work and responsibility of the revised Contract Agreement with PAG. Due to the construction cost bids submitted by the general contractors exceeded the Port Authority of Guam's construction budget, the Port Authority exercised their right as per the Contract Agreement Article 18. <u>Ownership of Work and Designs:</u> "All work, drawings, specifications and designs by the Consultant shall belong to the Port and Port shall have the right to use them in any way whatsoever and make modifications thereto. If the Port has another consultant to modify or change the plans, etc., then Consultant's name on such plans, designs, specifications and work shall be deleted on the plans, designs, specifications, etc."

1) Thus, the Port Authority of Guam accepted the resubmitted bid by Black Construction based on the revised engineering design, specifications, calculations and VE-1 construction drawings done by Winzler & Kelly for

Black Construction. With the professional seal of Winzler & Kelly's structural engineer, Bruce W. Swanney, Certificate No. 910, on the VE-1 drawing, the redesign is the responsibility of Winzler & Kelly as per Title 22 GCA Section 32116(d) and "PEALS" Rules and Regulations, Policies and Procedures, Rule 12.c(1).

2) EMPSCO's Scope of Work for construction management and fees of the Contract Agreement with PAG were deleted with the clarification letter dated March 12, 2004, from PAG, signed by Simeon Delos Santos, Port Engineering Supervisor. Construction Management services were contracted by PAG with N.C. Macario & Associates.

Therefore, EMPSCO did not commit negligence in their engineering services and provided prudent services within standard of care in engineering services in Guam. EMPSCO was not required to do a technical review of the VE-1 technical design changes but provided a compliance review to have a professional licensed engineer stamp the VE-1 technical design changes and structural calculations.

EMPSCO had no responsibility for the revised design, specifications, calculations, plans and whatever drawings that Black Construction used for obtaining the building permit should not have EMPSCO's name and seal on them. Also, EMPSCO has no responsibilities of supervision of the work; providing progress reports to PAG; and other services of the contracted construction manager, N.C. Macario & Associates.

If you require any clarification(s), please contact our office at telephone numbers 472-8566 and 477-8539 or fax number 477-9227.

Very truly yours,

Albert H. Tsutsui, A.I.A

1                    IN THE DISTRICT COURT OF GUAM

2

3    S.J. GARGRAVE SYNDICATE
     AT LLOYDS,
4
                    Plaintiff,
5

     vs.                              No.  CV03-00009
6
     BLACK CONSTRUCTION CORPORATION,
7    WINZLER & KELLY, and ENGINEERING
     MANAGEMENT & PLANNING SERVICES
8    CORPORATION,

9                    Defendants.
     _____/
10            Deposition of
        ELLIOTT H. BOONE, S.E.
11            Volume II
        Friday, May 13, 2005

12

13

14

15

16

17

18   REPORTED BY:  JOAN MARTIN, CSR #6036

19

20

21

22
                    NOGARA REPORTING SERVICE
23            130 Battery Street, Suite 580
            San Francisco, California 94111
24                  (415) 398-1889

25

                                                        1

1    A.  Not aware of the report.

2    Q.  Okay.  My question is, were you aware that your

3  client was required -- they had a deadline to file a

4  rebuttal to this?

5    A.  I wasn't aware of that.

6    Q.  Okay.  If you take a look at the last page, the

7  middle paragraph, beginning with "Therefore EMPSCO did

8  not commit negligence in their engineering services and

9  provided prudent services within standard of care in

10  engineering services in Guam.  EMPSCO was not required

11  to do a technical review of the VE-1 technical design

12  changes, but provided a compliance review to have a

13  professional licensed engineer stamp the VE-1 technical

14  design changes and structural calculations."

15       Do you understand what Mr. Tsutsui is stating

16  there?

17    A.  Yes.

18    Q.  Are you aware of a distinction between a

19  compliance submittal review of a drawing, and a

20  technical review?

21    A.  I believe I am.

22    Q.  Could you just tell us what the difference is?

23    A.  Compliance submittal is for, generally,

24  concurrence with a set of parameters or conditions.

25  Technical review is one where one does calculations and

59

Case 1:03-cv-00009    Document 206    Filed 06/16/2005    Page 10 of 36

1    forms an opinion as to the adequacy of the design.

2        Q.  Okay.  And when you -- when one does a

3    compliance submittal review, they, they are not forming

4    an opinion of the adequacy of the design, is that right?

5        A.  They're --

6        Q.  I -- using your words.

7        A.  No.  That's okay.  I'm thinking about this.

8            There are -- when you do a compliance review,

9    there is an obligation on the reviewer to make sure, or

10   to insure, that in general terms it is fit for purpose.

11       Q.  Now, in general terms.  You mean, just in

12   concept.

13       A.  In concept.

14       Q.  Okay.

15       A.  In concept.  I mean -- let's just use the words

16   "in concept."  I think we all know what that means.

17       Q.  Okay.  The term "compliance," what is it

18   supposed to comply with?

19       A.  It's going to fit, and it looks like it's going

20   to work.  Looks like without a technical review.

21       Q.  When is an engineer -- in which area would an

22   engineer be performing a compliance submittal review as

23   opposed to a technical review?

24       A.  When a portion of the project is designed by

25   the contractor, under the contractor's scope of work and

Case 1:03-cv-00009    Document 206    Filed 06/16/2005    Page 11 of 36

1    responsibility.

2        Q.  And then what engineer would be performing this

3    compliance review?

4        A.  It would be the owner's engineer.

5        Q.  Okay.

6        A.  But, can I extend that?  The technical review

7    should be done by the person preparing the document.

8        Q.  The designer?

9        A.  The designer.

10       Q.  And I believe in your report you've identified

11   that person as being Bruce Swanney, correct?

12       A.  I believe so.  Yeah, I believe so.  Yes, it is.

13   I think we all agree to that.

14       Q.  And you're not a licensed engineer in Guam?

15       A.  No, I'm not.

16       Q.  And you have never performed engineering on

17   Guam?

18       A.  That's correct.

19       Q.  When an engineer who's not licensed in one

20   jurisdiction, when they want to go and they want to do

21   a, a little bit of engineering work in that

22   jurisdiction, and they're not licensed, how does that

23   normally work?  Does he have to get a special type of

24   license, or does he have to get a local engineer to

25   vouch for him or something?  I mean, how does that work?

1    to state, "As part of that contract, EMPSCO was also

2    required to review and comment on the contractor's

3    proposed methods of repair, and on the products and

4    materials to be used in the repairs and upgrade to

5    Foxtrot F-1 Pier."

6           The contract that you're referring to is the

7    EMPSCO contract with the port?

8           A.   Yes.

9           Q.   And I believe your earlier testimony was that

10   you really hadn't -- can't even remember reviewing that,

11   and it didn't form any basis for your opinion.

12          A.   Well, I believe EMPSCO had a contract with the

13   port authority at Guam, because they produced the

14   drawings.

15          Q.   Okay.  But --

16          A.   And then it is an assumption under that

17   contract that they would have, then, had responsibility

18   to provide construction administration, which would

19   include (gestures).

20          Q.   Okay.  So when you start referring to the

21   contract and what EMPSCO was required to do under that

22   contract, in your mind you're referring to a generic

23   contract, not the specific contract bid with the Port?

24          A.   That's a correct characterization.

25          Q.   All right.  And if I show you EMPSCO's

75

1    contract, and you can you show me specifically where --

2         A.   Do you want to give me a minute or two?

3         Q.   Sure.

4         A.   I should be able to find out if it's in here.

5         Q.   While you're doing that --

6         A.   Can I --

7         Q.   Are you looking at that contract to answer this

8    question for the first time?

9         A.   Yeah.

10        Q.   Okay.  So there's no particular clause that you

11   were referring to in your April 21st report?

12        A.   No.  It would be a generic engineering services

13   agreement.  And the first thing I note on this is that

14   it refers, in -- on Page 2, Paragraph 1, "Consultant

15   here agrees to fully complete and perform the scope of

16   services set forth in Exhibit A attached hereto."  And I

17   find no Exhibit A.

18        Q.   That's the scope of services.

19        A.   That's the scope of services.  And therein, I

20   find no requirement to review anything provided during

21   the construction projects.

22        Q.   All right.

23        A.   Now, can I --

24        Q.   That was my question.  Okay.  So going back to

25   your April 21st report, the last paragraph, you start

76

Case 1:03-cv-00009    Document 206    Filed 06/16/2005    Page 15 of 36

# AGREEMENT
# BETWEEN
# PORT AUTHORITY OF GUAM
# AND
# EMPSCO - ENGINEERING CONSULTANTS

THIS AGREEMENT is made this *28th* day of *DECEMBER* 1995, by and between **PORT AUTHORITY OF GUAM**, a public corporation, whose address is 1026 Cabras Highway, Suite 201, Piti, Guam 96925 ("Port") and **EMPSCO-ENGINEERING CONSULTANTS** duly licensed and authorized to do business in Guam, whose address is Suite 245 Julale Shopping Center, Agana, Guam 96910 ("Consultant").

## RECITALS

WHEREAS, the Port desires to engage the professional services of a Consultant to provide bid documents, plans specifications and estimates for the repairs and upgrade to the F-1 Fuel Pier (Shell Pier); and

WHEREAS, the Port, after engaging in a competitive selection procurement process in accordance with GSA Procurement Regulation Section 3-207 is prepared to award this contract to Consultant as the best qualified offeror;

## AGREEMENT

NOW, THEREFORE, for and in consideration for the above recitals, the covenants and agreements hereinafter set forth, and

for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

    1.   <u>Scope of Services</u>:

        a.    Consultant agrees to fully and completely perform the scope of services set forth in Exhibit A attached hereto, which is incorporated herein by this reference, all to the Port's satisfaction.

        b.    Consultant shall perform work which is incidental to the scope of services, but necessary for a full and complete design, although not specifically referred to therein without additional compensation.

        c.    Consultant shall furnish, at its expense, proper and adequate equipment, machinery labor, tools and supplies necessary to perform the scope of work in a safe, workmanlike and diligent manner, and shall provide and have available at all times for use by its employees engaged in the performance of such work all safety appliances needed for the maximum protection of its employees against injuries.

        d.    Port may, at any time, by written order, make changes to the scope of services. If such changes cause an increase or decrease in the compensation due herein, or in the time required for the performance of the services, then equitable adjustment shall be negotiated between the parties and reflected by written amendment to this Agreement.

    2.   <u>Time</u>:

    Consultant shall perform and complete the services on or before March 8,

- 2 -

1996. Any additional services, if required by Port, shall be performed by Consultant within additional time period(s) to be determined by mutual agreement.

    3.    <u>Compensation</u>:

        a.    Port agrees to compensate Consultant for the services described in paragraph 1 (a) the total amount of ONE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($160,000.00). Compensation shall be paid by the Port pursuant to the progress payment schedule described in subparagraph (b) within thirty (30) days of invoice and upon the Port's determination that Consultant has fully and satisfactorily performed the services required for each said progress payment.

        b.    The breakdown of the contract price which will be used for determining progress payments shall be as follows:

        (i)    Upon the satisfactory completion of thirty-five percent (35%) of the scope of services, Port shall pay Consultant $50,400.00.

        (ii)    Upon the satisfactory completion of sixty-five percent (65%) of the scope of services, Port shall pay Consultant $46,800.00.

        c.    Upon the satisfactory completion of the ninety-five percent (95%) of the scope of services Port shall pay Consultant $46,800.00.

        d.    Upon the satisfactory completion of the entire scope of services, Port shall pay Consultant the contract balance of $16,000.00.

        e.    Port may in it sole judgment withhold such amounts from the sums due or to become payable under this Agreement, as may be necessary to:

        (i)    Protect the Port from any liability resulting from the work

- 3 -

*(REPRODUCED AT GOVERNMENT OF GUAM EX.*

performed under this Agreement:

(ii)    Repair, restore or compensate for any real or personal property which has been damaged as a result of the fault or negligence of Consultant or its employees while performing the work under this Agreement.

f.    The Port's review, approval and payment of fees for services by Consultant shall not constitute a waiver of any rights or cause of action arising out of Consultant's failure to fully and completely perform its duties under this Agreement and Consultant shall be and remain liable to the Port for all damages, costs and attorney's fees which the Port may suffer or incur as a result of Consultant's negligent performance of any of the services required herein.

4.    <u>Indemnification:</u>

The Consultant hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Consultant or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the scope of work by Consultant, its agents and employees. Should any claims for such damage or injury (including death resulting therefrom) be made or asserted, the Consultant agrees to indemnify and save harmless Port, its Board of Directors, its officers, agents, servants and employees from and against any and all such claims and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that Port, its officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and the Consultant agrees to and

- 4 -

does hereby assume, on behalf of Port, its officers, agents, servants or employees upon or by reason of such claims which defense, shall be tendered by counsel, selected by consultant with approval of the Port, and to pay on behalf of Port, its officers, agents, servants and employees, upon demand the amount of any judgment that may be entered against Port, its officers, agents, servants or employees in any such action.

    5.    <u>Insurance</u>:

Consultant shall, at its sole expense and for the benefit of Consultant and Port, provide and keep in full force and effect during the term of this Agreement, insurance against liability for bodily injury with limits of not less than $300,000.00 per person, $1,000,000.00 per occurrence, and property loss liability insurance with a limit of not less than $100,000 per loss, all in respect to bodily injury or property loss arising out of the duties and obligations of Consultant under the terms of the Agreement. In addition, Consultant shall also provide and keep in full force and effect during the term of this Agreement, workmen's compensation insurance with limits of not less than $100,000 per employee. Consultant shall furnish to the Port certificates of insurance evidencing the existence of such insurance. No policy of insurance may be cancelled without providing the Port thirty (30) days advance written notice. If the aforesaid policies are cancelled, Consultant shall immediately notify the Port of such cancellation. All insurance required under this Paragraph shall be written with responsible companies with originals of the policies and renewals available for the Port's review during reasonable hours.

    6.    <u>Termination</u>:

        a.    In case of unreasonable slow progress, carelessness, inattention, or

- 5 -

incompetency in the performance of any particular job or work herein contracted for, or in the event of a breach by Consultant of any of the provisions of this Agreement, or in the event Consultant shall conduct such work in a manner as, in the sole opinion of Port, shall endanger Port's equipment, property, or surrounding property, Port shall have the right to terminate this Agreement immediately and all its obligations hereunder, paying Consultant for work performed to time of termination less such sums as may be made withheld by Port pursuant to Paragraph 3(e) of this Agreement.

       b.    Port shall have the right to terminate this Agreement at any time whatsoever and for any reason, including but not limited to, the Port's decision to abandon the project. In the event the project is terminated or this contract is terminated and the Consultant is not in default of this Agreement, then Consultant shall be paid for its services based on the amount of work performed up to the date of termination.

       7.    <u>Independent Consultant Relationship</u>:

       It is expressly understood between the parties to this Agreement that Consultant, its agents, or assigns are not employees or agents of the Port for any purpose whatsoever. Consultant is solely an independent contractor under the relationship created by this Agreement. Consultant does not have, nor does it hold itself out as having, any right, power, or authority to create any contract or obligation, either express or implied, on behalf of, in the name of, or binding upon the Port, or to pledge the Port's credit, or to extend credit in the Port's name. In addition, nothing contained in this Agreement shall be deemed or construed by the parties hereto, or by any third party, to create the relationship of principal and agent, or a partnership or a joint venture,

- 6 -

or of any association between the Port and Consultant.

8. <u>Compliance with Laws and Regulations</u>:

In the performance of work provided for herein, Consultant agrees that the work shall be conducted in full compliance with any and all applicable laws, rules and regulations adopted or promulgated by any governmental agency or regulatory body, both territorial and federal. Consultant assumes full responsibility for the payment of all contributions, payroll taxes or assignments, territorial or federal, as to all employees engaged in the performance of work hereunder, and further agrees to meet all requirements that may be specified under regulations of administrative officials or bodies charged with enforcement of any territorial or federal laws on this subject. Consultant further agrees to furnish Port, upon request, a certificate or other evidence of compliance with territorial or federal laws covering contributions, taxes, business licenses, work permits, workmen's compensation and assessments on payrolls. Consultant assumes and agrees to pay any and all gross receipts, compensation, use, transaction, sales or other taxes or assessments of whatever nature or kind levied or assessed as a consequence of the work to be performed or on the compensation to be paid under this Agreement.

9. <u>Notice</u>:

Any notice to be given hereunder shall be deemed sufficiently given if in writing and delivered either in person or enclosed in an envelope properly stamped and addressed to the concerned party at the address above written.

10. <u>Amendment and Waiver</u>:

- 7 -

(REPRODUCED AT GOVERNMENT OF GUAM EXP

a.    Neither the agreement nor any provision hereof may be changed, waived, altered, amended, or discharged orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, alteration, amendment or discharge is sought.

b.    Failure by either party to object to any failure of performance by the other party of any provision of the Agreement shall not constitute a waiver of, or estoppel against, the right of such party to require such performance by the other.  Nor shall any failure to object constitute a waiver or estoppel with respect to succeeding failure of performance.

11.    Severability:

If any part of this Agreement is held by a court of competent jurisdiction, an official opinion or statement of any Federal or Territorial official or regulatory agency or law, to be invalid, void or unenforceable, the remainder of this Agreement shall remain in full force and effect, and shall in no way be affected.  If any provision is held to be invalid, void, or unenforceable as referred to herein, the parties shall modify said portion and negotiate in good faith a modification of the provision insofar as possible under any law, regulation, or opinion.

12.    Attorney's Fees:

If any legal action, suit or other proceedings is brought for the enforcement of this Agreement or because of any alleged dispute, breach or default in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and court cost incurred in the action, suit or

- 8 -

proceeding, in addition to any other remedy or relief to which it may be entitled.

13. <u>Access to Records</u>:

Consultant shall maintain all books, documents, papers, accounting records and other evidence concerning the expenses and costs incurred in its performance and shall make such material available to Port for inspection and copying upon request during the contract term and for a period of three (3) years thereafter.

14. <u>Agreements Outside of Contract</u>:

This contract contains the complete agreement concerning the relationship and arrangements between the parties and shall, as of the effective date hereof, supersede all other agreements between the parties. The parties stipulate that neither of them has made any presentation with respect to the subject matter of this Agreement or any representations including the execution and delivery hereof except such representations as are specifically set forth herein and each of the parties hereto acknowledges that it has relied on its own judgment in entering into this Agreement. The parties hereto further acknowledge that any payment or representations that may have heretofore been made by either of them to the other are of no effect and that neither of them has relied thereon in connection with his or its dealings with the others.

15. <u>Best Efforts of Consultant</u>:

Consultant agrees that Consultant will at all times faithfully, industriously, and to the very best of Consultant's ability, experience, and talents perform all of the duties that may be required from Consultant pursuant to the express and implicit terms hereof, to the sole satisfaction of the Port.

- 9 -

(REPRODUCED AT GOVERNMENT OF GUAM EX)

16. <u>Miscellaneous</u>:

a.      Any attempt to assign or subcontract any work required by this Agreement by Consultant without Port's prior written consent shall constitute a default of this Agreement and any such attempted assignment shall be null and void.

b.      The descriptive headings of the several sections and subsections in this Agreement are inserted for convenience only and shall not be deemed to affect the meaning or construction of any provision hereof.

c.      Time is of the essence concerning all provisions of this Agreement.

d.      All briefs, memoranda, reports, summaries and other documents used by or furnished to Consultant during the course of this Agreement shall remain the Port's property including all publication rights and copyright interest and may be used by the Port without Consultant's consent.

e.      This Agreement is made under, and shall be governed and construed in accordance with, the laws, statutes and regulations of the Territory of Guam.

17. <u>Professional Liability</u>.   Consultant warrants that it is an experienced construction manager, properly and duly licensed under the Government of Guam.  It hereby certifies and warrants that it shall see that the contractor shall carry out and perform the work in a proper manner; and if done improperly by the contractor, then Consultant hereunder shall be liable, like other professionals, for damages and the Port's attorney's fees as a result of Consultant's improper or negligent acts in performing its duties, and the terms and conditions under this contract.  Consultant's liability hereunder shall continue even after the completion of the project and shall run for a period of five

- 10 -

(5) years after any defect or any problems are discovered by the Port.

18. <u>Ownership of Work and Designs</u>:

All work, drawings, specifications and designs by the Consultant shall belong to the Port and Port shall have the right to use them in any way whatsoever and make modifications thereto. If the Port has another consultant to modify or change the plans, etc., then Consultant's name on such plans, designs, specifications and work shall be deleted on the plans, designs, specifications, etc.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

**EMPSCO ENGINEERING CONSULTANTS**

By: _____
  **PETRONILO Q. VILLALUZ, P.E.**
  Managing Engineer

Date: ___12/28/95_____

**PORT AUTHORITY OF GUAM**

By: _____
  **EULOGIO C. BERMUDES**
  General Manager

Date: ___12-29-95_____

**CERTIFIED FUNDS AVAILABLE:**

_____
**FRANKLIN E. BADAR,**
Certifying Officer

Date: ___12/29/95_____

**APPROVED AS TO FORM:**

**CARBULLIDO, PIPES & BORDALLO**

By: _____
  **F. PHILIP CARBULLIDO, ESQ.**
  Legal Counsel
  Port Authority of Guam

Date: ___12/28/95_____

FPC:amn\F#1696.__ \fpc\pag\EMPSCO.K

- 11 -

**SCOPE OF WORK**

**FOR**

**REPAIRS AND IMPROVEMENTS TO EXISTING F-1
FUEL PIER (SHELL PIER)**

1.  **INTENT AND DESCRIPTION**

    The Port Authority of Guam is intending to correct deficiencies, repair damages and construct improvements to existing Fuel Pier "F-1" (Shell Pier). The purpose of this contract is to obtain professional services for the design of such repairs and improvements. The project includes the inspection, identification of necessary repairs to existing dolphin, main wharf, walkway and improvements to existing Fuel Pier "F-1". The project also includes all the required soil investigation, shop drawing and catalog submittal review, and construction consultation.

2.  **LOCATION**

    The project is located at Pier "F-1" (Shell Pier) Apra Harbor, Cabras Islands Guam, M.I.

3.  **DESIGN PARAMETERS**

    1.  Report on damaged structures F-1 Facility Guam for Shell Guam, Inc. prepared by Candac Limited dated August 1993.

    2.  Structural Assessment of the Foxtrot (F-1) Pier, Apra Harbor prepared by N.C. Macario & Associates, Inc.

    3.  Ultra Sonic gauging report, main pier support pillars pier (F-1) Guam, prepared by Guam Oceaneers/N.C. Macario & Associates, Inc.

    4.  Subsurface Soil Investigation Foxtrot I Pier Facility Improvement/Repair Cabras Island and prepared by Geo-Engineering & Testing, Inc. dated July 13, 1993.

    5.  Uniform Building code (UBC) - 1994 Edition.

    6.  American Concrete Institute (ACI) Code - 1989 Edition.

Exhibit A

4.   **CONSTRUCTION COST LIMITATION**

The project shall be designed to permit construction of the repair and improvement of the facility within a construction contract price to be provided by the Government. If the consultant during the preliminary cost analysis finds that the repairs and improvements cannot be built within the allotted amount, the matter should be brought to the attention of the General Manager immediately.

Consultant shall prepare a construction cost estimate for the proposed repairs and improvements.

5.   **SOILS REPORT**

The Consultant shall review and interpret all subsurface exploration, geotechnical and soils report furnished by Port Authority of Guam for the project.

The soils investigation shall include the following information:

a.   General soil composition

b.   General subsurface conditions

c.   Compactibility of soil

6.   **ENVIRONMENTAL PROTECTION PLAN**

The Consultant shall review the Environmental Impact Assessment Report and U.S. Army Corps of Engineers permit application furnished by Port Authority of Guam. The Consultant shall advise Port Authority of Guam on any problems that may be encountered during the permitting process.

7.    **DESIGN ITEM AND CONSIDERATION**

The general description of work shall include but not limited to the following:

1.    Repairs to existing support piles of Dolphins A, B, C, D and G.

2.    Repairs to walkways support piles P1, P2, and P3.

3.    Removal of existing piles and pile cap of Dolphins H.

4.    Removal and replacement of damaged air buffer fenders C and D.

5.    Repair cracks at precast concrete deck units, girders and main beam at main wharf area including supporting piles.

6.    Repair spalls and deteriorated concrete surfaces at main wharf area.

7.    Repair cracks/spalls at access ramp.

8.    Repair cracks and spalls at pile caps.

9.    Removal and replacement of existing fendering system.

10.   Installation of new cathodic protection system.

11.   Repair Bollard connections to main wharf.

12.   Removal and Replacement of damaged dolphin "H".

8.    **SUBMITTALS**

Submittals shall be made in accordance with the following schedule:

| Submittal | Due Date | Drawings | Specifications | Cost Estimates |
|---|---|---|---|---|
| 35% Design Documents | 45 Calendar days after NTP | 5 Copies | 5 Copies | 5 Copies |
| Final Design Documents | 45 Calendar days after receipt of 35% review comments | 5 Copies | 5 Copies | 5 Copies |

9.    **GOVERNMENT REVIEW**

The Port Authority of Guam will work closely with the Consultant to expedite

design reviews.  Reviews will normally be "On Board".


10.    **RELATIONS WITH OTHER GOVERNMENT AGENCIES**

All directions within the scope of this contract will be issued by the General

Manager, Port Authority of Guam, and the Consultant shall not accept such

direction from others.  Information provided by other agencies which seemingly

conflicts with information provided by the General Manager will be discussed

immediately.   This policy is not intended to prevent the Consultant from

obtaining necessary design information from other agencies.


11.    **RESPONSIBILITY OF THE CONSULTANT**

The Consultant shall be responsible for the professional and technical accuracy

and the coordination of all designs, drawings, specifications and other work of

materials furnished by him under this contract.   The Consultant without

additional cost to the Government, shall correct or revise all errors or

deficiencies in his work.


12.    **GOVERNMENT RESPONSIBILITIES**

The Port Authority of Guam shall be responsible for the following:

a.    Port Authority of Guam will furnish the Consultant with the as-built

drawings of the existing facilities affected by this scope of work which

are available at PAG file.

b.    The Port Authority of Guam shall provide, if requested, assistance necessary for the Consultant and its agents access to the project site.

c.    Environmental Impact Assessment Report, U.S. Army Corps of Engineers Nationwide Permit, Territorial Seashore Permit Clearance as required during the processing of Government of Guam Building Permit.

AGREED:                                      APPROVED:


PETRONILO Q. VILLALUZ, P.E.                  CAPT. EULOGIO BERMUDES
Managing Engineer                            General Manager
EMPSCO Engineering Consultants               Port Authority of Guam


Date: _Nov. 28, 1995_                        Date: _11-30-95_

# IN THE DISTRICT COURT OF GUAM

S.J. GARGRAVE SYNDICATE AT LLOYDS,

                    Plaintiff,

        vs.

BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,

                  Defendants.

CIVIL CASE NO. CV03-00009

**COPY**

## DEPOSITION OF SIMEON S. DELOS SANTOS

Taken on Behalf of the Defendant EMPSCO

BE IT REMEMBERED That, pursuant to the Federal Rules of Civil Procedure, the deposition of **SIMEON S. DELOS SANTOS** was taken before Cecille A. Flores, a Certified Shorthand Reporter, on Tuesday, the 21st day of September 2004, at 9:00 a.m. in the offices of Carlsmith Ball, 134 West Soledad Avenue, Bank of Hawaii Building, Suite 401, Hagatna, Guam.

1       A    Yes, I did.

2       Q    So what was your involvement with the contract

3  negotiations between the Port and EMPSCO?

4       A    We negotiated the contract.

5       Q    Were you personally involved in that?

6       A    Yes, I was.

7       Q    Was there anybody else?

8       A    At that time, it was also our Accounting Supervisor

9  was involved.

10      Q    Did you put together the RFP for this engineering

11 work?

12      A    Yes, I did.

13      Q    If I can direct your attention to the second

14 paragraph of your letter there on -- let me see the day.  You

15 state "Your contract agreement is a general template contract

16 used by the government of Guam for AE design as well as

17 construction management services."

18      A    Yes.

19      Q    What did you mean by general template contract?

20      A    It's a general contract that we get from Department

21 of Public Works and we use that and basically cut and paste

22 to fit the project, basically.

23      Q    Your paragraph there goes on to refer on Page 10

24 Number 17 that had to do with construction management

25 services.

1      A     Yes.

2      Q     Why was that cut and pasted into the EMPSCO

3   contract?

4      A     That was something that was over -- it was oversight

5   that they weren't the construction manager because when we

6   sent out an RFP for A&E design, it wasn't the intent to have

7   a construction manager.  It wasn't part of the RFP.  It

8   wasn't part of the scope of work.

9      Q     If you turn to the second page, this came with your

10  letter of March 12th; is that right?

11     A     Yeah.

12     Q     And this was a memorandum from Phil Carbullido who

13  at the time was the Port's attorney; is that correct?

14     A     Yes.

15     Q     This is dated December 28, 1995.  It says "Enclosed

16  is a revised Agreement between the Port Authority of Guam and

17  EMPSCO."

18     A     Uh-huh.

19     Q     What was the original proposed agreement?  Do you

20  recall?

21     A     I can't recall.

22     Q     Mr. Carbullido goes on to state that "the Agreement

23  received from your office was revised to correct certain

24  sections of the Agreement.  It appears that when your office

25  retyped the Agreement, some sections or paragraphs were left