BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 499-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers



**FILED**
DISTRICT COURT OF GUAM
SEP -7 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S, <br><br> Plaintiff, <br><br> vs. <br><br> BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP., <br><br> Defendants. | Civ. No. CIV 03-00009 T.A. <br><br> MEMORANDUM IN SUPPORT OF WINZLER & KELLY'S MOTION FOR SUMMARY JUDGMENT ON FIFTH CAUSE OF ACTION |

## I. INTRODUCTION

Only a single claim remains against defendant Winzler & Kelly in this matter -- a claim for breach of contract. See First Amended Complaint, filed in this matter December 23, 2003, at 6-7 (Fifth Cause of Action).[1] The contract alleged to have been breached was between Winzler & Kelly and its fellow defendant, Black Construction Corp., but the claim is not being asserted by Black. Instead, it is being asserted by the Plaintiff insurance Syndicate, on the ground that its subrogor, the Port Authority of Guam, was an intended third party beneficiary of the contract between Winzler & Kelly

and Black. This claim cannot stand. It is clear as a matter of law, based upon the undisputed facts, that the Port Authority was not and could not have been a third party beneficiary of contract between Winzler & Kelly and Black. Accordingly, summary judgment must be granted in Winzler & Kelly's favor as to the Fifth Cause of Action. See generally Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986) (setting forth standard for summary judgment).

## II. BACKGROUND

The third party beneficiary theory now espoused by Plaintiff does not reflect its original view of the situation. Instead, according to the original Complaint filed in this matter, there was a direct contractual relationship between the Port Authority and Winzler & Kelly. The Complaint alleged as follows:

> *[T]he Port Authority retained Winzler & Kelly* to advise it concerning repairing the damage which the earthquake had caused. . . .

See Complaint, filed in this matter March 18, 2003, at paragraph 6 (emphasis added). Based on this allegation, which proved to be altogether mistaken, Plaintiff asserted a direct breach of contract claim against Winzler & Kelly, as follows:

> Defendant Winzler & Kelly breached *its contract with the Port Authority* by failing to design and specify repairs of the 1993 earthquake damage which would be sufficiently strong to withstand future earthquakes and typhoons. Defendant Winzler & Kelly further breached *its contract with the Port Authority* by inadequately and incompetently supervising the repairs of the 1993 earthquake damage, by recommending and making improper and negligent changes to the planned repair project, and by failing to note and observe errors and omissions by contractors performing repairs to the property of the Port Authority. . . .

---

[1] Claims for negligence and breach of warranty have been dismissed by prior order of the Court.

Id. at paragraph 19 (emphasis added).

However, when Winzler & Kelly, in its first set of interrogatories, demanded Plaintiff's basis for alleging the existence of such a contractual relationship, Plaintiff backpedaled into a third party beneficiary theory:

> Plaintiff was previously advised that the Port Authority had retained Winzler & Kelly directly. Discovery conducted to date has indicated that *the Port Authority did not contract directly with Winzler & Kelly*. Instead, discovery has shown that Black Construction contracted with Winzler to provide design and related services for the project. . . . In any event Plaintiff *is advised and believes* that the Port Authority, and therefore Plaintiff, were *intended third party beneficiaries* of the contract services Winzler did provide to Black, including design and engineering calculations and preparation of drawing VE-1 and other documents prepared by Winzler. . . .

Plaintiff's Answer to Winzler & Kelly's Interrogatory No. 1 (November 10, 2003) (copy attached as Exhibit A to Declaration of Robert J. O'Connor, filed herewith). "However," Plaintiff cautioned in conclusion, "not all facts pertaining to this contention have yet been discovered, and thus, this Answer may be further supplemented under Federal Rules of Civil Procedure 26." Id.

Shortly afterward, an amended complaint was filed, restating the claim against Winzler & Kelly in third-party beneficiary terms. See First Amended Complaint, filed in this matter December 23, 2003, at paragraph 8 ("Black then engaged the services of Winzler to provide revised design and engineering specifications for the repair work."); id. at 13 ("The Port Authority is an assignee and/or third-party beneficiary of the contract between Black and Winzler for the provision of services in connection with the

Project."); id. at 27 ("Winzler breached its contract with Black by failing to exercise adequate skill and competence . . ."); id. at 28 ("The Port Authority is an assignee and/or third-party beneficiary of the contract between Black and Winzler. These breaches of contract by Winzler directly caused damage and losses to Plaintiff."). And in Plaintiff's latest supplement to its Interrogatory responses, it simply states, with neither any supporting facts nor any further claim that more facts are forthcoming, that "[t]he Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black." Plaintiff's Third Supplemental Response to Defendant Winzler & Kelly's First Set of Interrogatories (Response to Interrogatory No. 1) (May 20, 2005), attached as Exhibit B to Declaration of Robert J. O'Connor, filed herewith.[2]

It is evident from this history that the third-party beneficiary contract action against Winzler & Kelly never was any kind of carefully considered claim, supported by at least a facially plausible set of believed facts meeting the elements of a legally cognizable cause of action. It was, rather, an *ad hoc* midstream change of horses, thrown together on the fly when the original direct contract claim proved untenable, on the outside chance that something might turn up later that would justify it. It is not particularly surprising, therefore, that this claim cannot, on even cursory inspection, be reconciled with the facts.

---

[2] Plaintiff thus appears to have abandoned the "assignment" alternative to its third-party-beneficiary theory; and indeed Winzler & Kelly is aware of no evidence whatsoever that

4

## III. FACTS

The contract between Winzler & Kelly and Black is reflected in a series of three memoranda exchanged between the two companies in March and April 1996. The first and most detailed of these memoranda is a fax transmission dated March 6, 1996, from Bruce Swanney at Winzler & Kelly to Lito Tabilas at Black, a true and correct copy of which is attached as Exhibit A to the Declaration of Fred Smith, filed herewith. The memo states that it is in regard to an alternate design for Pier F-1 pile repair, and sets forth the scope of work to be performed by Winzler & Kelly as follows:

Design and detail an alternate repair system as follows:

> a. Cut the existing piles off at approximately 4'-0" below MLLW elevation.
>
> b. Attach in a new section of epoxy coated steel pipe extending from the top of the existing pile to approximately 4'-0" below MLLW to the underside of the concrete platform. The new section of pile will be welded to the existing pile with a steel sleeve and attached to the underside of the platform with epoxy anchor bolts or similar. The installation procedures for the new sections of pile will probably include drilling one or more holes through the thickness of the concrete platform.

The memo then sets out Winzler & Kelly's fees for this design work -- $2,875.

The second memo is Black's reply to the first. Dated March 21, 1996, just over two weeks later, it consists of a handwritten notation by Lito Tabilas on the face of the first memo, which was then faxed back to Swanney at Winzler & Kelly. Tabilas advises Swanney: "This is to authorize you to proceed with final design. Purchase order to follow in a few days." A true and correct copy of this memo is attached as Exhibit B to

---

Black ever assigned its contractual rights to the Port Authority.

the Declaration of Fred Smith, filed herewith. The third and last memo is the purchase order itself, which is dated April 15, 1996, and provides for Black's purchase from Winzler & Kelly, for the price of $2,875.00, of the following described services: "Design & Detail Alternate Pile Repair System for Foxtrot Pier F-1 per Quotation dated 06 March 1996." A true and correct copy of this memo is attached as Exhibit C to the Declaration of Fred Smith, filed herewith.

There is no dispute that these memos constitute the terms of the contract between Winzler & Kelly and Black -- the contract of which the Port Authority claims to have been an intended third-party beneficiary. If such third-party beneficiary status exists, therefore, that is where it is to be found. As explained herein, however, it cannot be found there at all.

## IV. ARGUMENT

### A. Standard For Establishing Third-Party Beneficiary Status.

"A person seeking to enforce a contract as a third-party beneficiary has the burden of demonstrating that he has enforceable rights thereunder." Flemington Nat. Bank & Trust Co. v. Domler Leasing Corp., 410 N.Y.S.2d 75, 78 (App. Div. 1978). See also, e.g., State ex rel. Stovall v. Reliance Insurance Co., 107 P.3d 1219, 1231 (Kan. 2005) ("The burden of establishing standing to bring suit as a third party rests with the party asserting it."). A contract relied upon to establish third-party beneficiary liability "must be strictly construed in favor of the person against whom liability is asserted." Dawson v. Eldredge, 372 P.2d 414, 418 (Idaho 1962). "Contracting parties are presumed to act for

6
Case 1:03-cv-00009   Document 213   Filed 09/07/2005   Page 6 of 13

themselves and therefore an intent to benefit a third person musty be clearly expressed in the contract." Stovall, supra, 107 P.3d at 1231. "In order for a third party beneficiary to recover on a breach of contract claim, the third party must show that the contract was made for his or her direct benefit and that he or she is more than a mere incidental beneficiary." Nelson v. Anderson Lumber Co., 99 P.3d 1092 (Idaho 2004) (citing Dawson, supra, 372 P.2d at 418). The Port Authority cannot meet its burden of establishing that it was a third party beneficiary of the contract between Winzler & Kelly and Black, because the contract documents exhibit no express intent whatsoever to benefit the Port Authority, and all benefit the Port Authority derives from them is purely incidental.

## B. Receiving the Benefit of Performance Does Not Make One a Third-Party Beneficiary.

It is not sufficient simply to show that the contract is intended to be performed at the Port Authority's facility, or that performance of the contract -- to design pile repairs for Foxtrot Pier -- would ultimately redound to the benefit of the Port Authority, the owner of the pier. On the contrary, it is the case in every construction subcontract that performance ultimately, but incidentally, benefits the project owner. See, e.g., Pierce Associates, Inc. v. Nemours Foundation, 865 F.2d 530, 538 (3rd Cir. 1989) ("In every construction subcontract the owner is the one which ultimately benefits from its performance. However, this does not create a third-party beneficiary relationship."); G & P Electric Co. v. Dumont Construction Co., 15 Cal. Rptr. 757, 763 (1961) ("While the [owners] would receive the benefit of having the electrical work performed by virtue of [the subcontractor] performing its subcontract with [the general contractor], this factor

7

alone would not make the . . . subcontract a contract for the express benefit of the [owners]."); Stovall, supra, 107 P.3d at 1232 ("Knowledge that a contract will benefit a third party is not intent to benefit the third party.") (quoting Noller v. General Motors Corp., 772 P.2d 271 (Kan. 1989)). Instead, the owner must show that the contract was made for his express benefit, and that he does not benefit from it merely incidentally. See G & P Electric, supra, 15 Cal. Rptr. at 762 ("Not every person who secures a benefit from a contract is entitled to maintain an action. An incidental beneficiary cannot maintain an action."). The Syndicate cannot make such a showing on the facts of this case.

### C. Recent Case Law Demonstrates That the Port Authority Was Not a Third-Party Beneficiary.

Several recent cases arising out of similar facts demonstrate that, on the facts of this case, the Port Authority was not a third-party beneficiary of the contract between Winzler & Kelly and Black. See, e.g., Nelson v. Anderson Lumber Co., 99 P.3d 1092 (Idaho 2004); Weseloh Family Limited Partnership v. K. L. Wessel Construction Co., 22 Cal.Rptr.3d 660 (App. 2004); and State ex rel. Stovall v. Reliance Ins. Co., 107 P.3d 1219 (Kan. 2005).

In Nelson, the owners of a defectively constructed cabin sued a design subcontractor (IBP) who had been retained by the general contractor (Steinbruegge) to provide panel designs. However, the court granted summary judgment in favor of IBP, on the ground that the owners were not third-party beneficiaries of IBP's subcontract with Steinbruegge. The court reasoned that, since the general contractor's duty to provide the

owner with a finished structure remains the same regardless of whether the subcontractor performs or not, "the benefit that [the owner] receives from [the subcontractor's] performance must be regarded as merely incidental," and thus does not give rise to third-party beneficiary status. Id. at 1099 (quoting 9 Corbin on Contracts § 779D). The court quoted the Restatement in support of its holding:

> By way of illustration: A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building.

Id. (quoting Restatement (Second) of Contracts § 302, illus. 19). See generally id. at 1099 ("Subsequent contracts entered into by Steinbruegge added nothing to the Nelsons' entitlement, and the Nelsons were still entitled to the plans and materials regardless of the means by which Steinbruegge obtained them.").

In Weseloh, the owners of a defectively constructed retaining wall sued an engineering subcontractor (Owen) and its engineer (Randle), who had been retained by the contractor (Sierra) to do design work on the wall.[3] Again, the court upheld summary judgment in favor of the subcontractors on the ground that, *inter alia*, the project owner was not an intended third-party beneficiary of the subcontract.[4] Owen and Randle's role, the court wrote, was "to primarily benefit Sierra," 22 Cal.Rptr.3d at 668, and not to benefit the owner, since they had not contracted with the owner, and "[t]here was no

---

[3] In fact, Sierra itself was a subcontractor on the project, and Owen and Randle thus sub-subcontractors, who were being sued by both the owners (Weseloh) and the general contractor (Wessel). The terms "subcontractor" and "contractor" are used above in an effort to avoid confusion in the analysis.

9

Case 1:03-cv-00009    Document 213    Filed 09/07/2005    Page 9 of 13

intended beneficiary clause in any contract related to the design of the retaining walls, identifying [the owner] as the intended beneficiary of the work performed by Randle and Owen." Id. at 668. The court summarized: "To the extent Randle and Owen's participation would benefit Wessel and the Weseloh plaintiffs, it was only through Sierra." Id. at 668-69. The court so held even though "Randle was aware the property was owned by Weseloh." Id. at 668. The court left the owner to its remedy against the contractor, pointing out that the owner:

> could have taken steps that would have enabled them to proceed directly against Randle and Owen by, for example, negotiating for the inclusion of a provision in the subcontract identifying the Weseloh plaintiffs and Wessel as the intended beneficiaries.

Id. at 671.

Finally, and most recently, in Stovall, the state of Kansas sued various subcontractors in connection with the defective installation of an underground piping system at a state prison. The court dismissed the State's claims against the subcontractors, holding that the State was not a third party beneficiary of the subcontracts. It wrote:

> While the State's plans and specifications are referenced within the subcontracts in question, there is no language clearly expressing an intent for the subcontractors to assume a direct duty to the State. The provisions referenced by the State do not include a promise or the specific intention to benefit the State, nor were the provisions made directly and primarily for the State's benefit.

---

[4] Although Weseloh was a negligence case, rather than a breach-of-contract case, the court discussed third-party beneficiary principles as an element of its analysis of whether a duty of care existed.

10

Stovall, supra, 107 P.3d at 1232 (internal punctuation omitted). As in Nelson, the Stovall court found Restatement (Second) of Contracts § 302, illus. 19, particularly relevant to its determination.

Applying the reasoning of these cases to the facts presented in this case, it is clear that the Port Authority was not a third-party beneficiary of the subcontract between Winzler & Kelly and Black. There is no intended beneficiary clause or any other language in that subcontract clearly expressing an intent for Winzler & Kelly to assume a direct duty to the Port Authority. And since Black would have been liable on its general contract with the Port Authority for any defects in the pier repair, regardless of whether Winzler & Kelly performed its design subcontract, or indeed regardless of whether Black had contracted with Winzler & Kelly at all, the Port Authority is a mere incidental beneficiary of the subcontract, and as such lacks standing to assert a third-beneficiary claim.

## D. The Port Authority's Disclaimer of Contractual Relations With Any Subcontractor Also Negates Third-Party Beneficiary Status.

The lack of third-party beneficiary liability is made all the more clear by the fact that, not only was there no intended beneficiary clause in any contract related to the design of the pier repairs, there was the opposite, or negation, of such a clause. The prime contract between the Port Authority and Black expressly provided that:

> Any and all contracts between the Contractor [Black] and its subcontractors shall not be construed as creating any contractual relation between any subcontractor and the Port Authority.

Construction Contract at Paragraph I(b) (attached as Exhibit C to the Declaration of Robert J. O'Connor, filed herewith). Such language as this has been held to categorically preclude the owner from recovering as a third-party beneficiary of the subcontract. See, e.g., G & P Electric, supra, 15 Cal. Rptr. at 763 (holding that owner was not third-party beneficiary of subcontract where prime contract and subcontract provided that "nothing contained in the contract documents shall create any contractual relation between any subcontractor and the Owner"); Pierce Associates, supra, 865 F.2d at 537-38 (same holding based on the language, "Nothing contained in the Contract Documents shall create any contractual relationship between the Owner or the Architect and any Subcontractor or Sub-subcontractor"); Honey v. George Hyman Construction Co., 63 F.R.D. 443, 450 (D.D.C. 1974) (same holding based on the language, "Nothing contained in the specifications or drawings shall be construed as creating any contractual relationship between any subcontractor and the Owner."); Federal Mogul Corp. v. Universal Construction Co., 376 So.2d 716, 724 (Ala. Civ. App. 1979) (same holding based on the language, "Nothing contained in the contract documents shall create any contractual relation between any subcontractor and the owners.").

## V. CONCLUSION

Because no express intention to benefit the Port Authority appears in the contract between Winzler & Kelly and Black, and because the terms of the general contract between the Port Authority and Black preclude third party beneficiary status from arising, the Port Authority was not a third party beneficiary of the Winzler & Kelly - Black

contract, and Winzler & Kelly is therefore entitled to summary judgment in its favor as the Fifth Cause of Action.

Respectfully submitted this 6 day of September, 2005.

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Winzler & Kelly

By: _____
Robert J. O'Connor