ORIGINAL

BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 499-4366

**FILED**
DISTRICT COURT OF GUAM
SEP - 7 2005
MARY L.M. MORAN
CLERK OF COURT

Attorneys for Defendant Winzler & Kelly Consulting Engineers

## IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| S.J. GARGRAVE SYNDICATE<br>AT LLOYD'S, | ) )<br>) | Civ. No. CIV 03-~~0009~~ 00009 T. A |
| Plaintiff, | ) )<br>) | |
| vs. | ) )<br>) | DECLARATION OF<br>ROBERT J. O'CONNOR |
| BLACK CONSTRUCTION CORP.,<br>WINZLER & KELLY CONSULTING<br>ENGINEERS and ENGINEERING<br>MANAGEMENT & PLANNING<br>SERVICES CORP., | ) )<br>) )<br>) )<br>) )<br>) | |
| Defendants. | ) )<br>) | |

I, Robert J. O'Connor, declare as follows:

1. I am an attorney licensed to practice in the Commonwealth of the Northern Mariana Islands and the Territory of Guam. I represent Defendant Winzler & Kelly in the above captioned matter. I make this declaration based upon personal knowledge.

2. Attached hereto as Exhibit A is a true and correct copy of Plaintiff Leslie Wilton's Supplemental Answer to Defendant Winzler & Kelly's First Set of Interrogatories, which were served on November 10, 2003.

3. Attached hereto as Exhibit B is a true and correct copy of Plaintiff's Third Supplemental Response to Defendant Winzler & Kelly's First Set of Interrogatories, which were served on May 20, 2005.

4. Attached hereto as Exhibit C is a true and correct copy of the April 8, 1996, Construction Contract between the Port Authority of Guam and Black Construction Corporation for repairs and upgrading of Foxtrot Pier F-1, which was produced by Black as part of its discovery disclosures in this matter.

I declare upon penalty of perjury under the laws of the United States of America and the Commonwealth of the Northern Mariana Islands that the foregoing is true and correct to the best of my knowledge and belief, and that if called upon to testify, I could and would testify competently and in accordance herewith.

Executed at Saipan, CNMI, this fifth day of September, 2005.

_____
ROBERT J. O'CONNOR

# ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

Attorneys for Plaintiff
Leslie Wilton

## IN THE DISTRICT COURT OF GUAM

LESLIE WILTON,

        Plaintiff,

vs.

BLACK CONSTRUCTION CORPORATION
and WINZLER & KELLY CONSULTING
ENGINEERS,

        Defendants.

CIVIL CASE NO. CV03-00009

**PLAINTIFF LESLIE WILTON'S
SUPPLEMENTAL ANSWERS TO
DEFENDANT WINZLER & KELLY'S
FIRST SET OF INTERROGATORIES;
DECLARATION OF SERVICE**

        Plaintiff Leslie Wilton submits its Supplemental Answers to Defendant Winzler &
Kelly's First Set of Interrogatories.

        <u>**INTERROGATORY NO. 1:**</u>  Please state each and every fact that supports your
contention as stated in paragraph 6 of your Complaint that the Port Authority retained Winzler &
Kelly Consulting Engineers ("Winzler & Kelly") to advise it concerning repairing the damage
which an August, 1993 earthquake caused to F Pier and the dolphins thereof.

        <u>**ANSWER:**</u>  Plaintiff was previously advised that the Port Authority had retained
Winzler & Kelly directly.  Discovery conducted to date has indicated that the Port Authority did

4817-6249-1392.1.055639-00001

**EXHIBIT "A"**

not contract directly with Winzler & Kelly. Instead, discovery has shown that Black Construction contracted with Winzler to provide design and related services for the project. Eventually, Winzler prepared drawing "VE-1" dated April 4, 1996. In conjunction with this, Winzler likely provided other services such as design and engineering calculations, currently a subject of discovery. In any event Plaintiff is advised and believes that the Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black, including design and engineering calculations and preparation of drawing VE-1 and other documents prepared by Winzler. However, not all facts pertaining to this contention have yet been discovered, and thus, this Answer may be further supplemented under Federal Rule of Civil Procedure 26.

**INTERROGATORY NO. 2:** With reference to paragraph 6 of your Complaint, state what advice Winzler & Kelly gave the Port Authority concerning (a) repairing the damage caused by the earthquake; and (b) repairing the damage to F Pier and the dolphins thereof caused by the earthquake.

**ANSWER:** Discovery to date has not revealed that Winzler provided such advice directly to the Port Authority. Instead, discovery has shown that Black Construction contracted with Winzler to provide design and related services for the project, for example design and engineering calculations and preparation of drawing "VE-1" dated April 4, 1996. In any event Plaintiff is advised and believes that the Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black, including design and engineering calculations and preparation of drawing VE-1 and other documents prepared by Winzler. However, not all facts pertaining to this contention have yet been discovered, and thus, this Answer may be further supplemented under Federal Rule of Civil

Procedure 26.

**INTERROGATORY NO. 3:** Please state each and every fact that supports your contention as stated in paragraph 6 of your Complaint that Winzler & Kelly was retained by the Port Authority to study and assess the damage, prepare initial drawings for repair, perform structural and other engineering calculations, and prepare plans and specifications to put the work out to bid.

**ANSWER:** Plaintiff was previously advised that the Port Authority had retained Winzler & Kelly directly. Discovery conducted to date has indicated that the Port Authority did not retain Winzler & Kelly. Instead, discovery has shown that Black Construction retained Winzler to provide design and engineering calculations and related services for the project including preparation of drawing "VE-1" dated April 4, 1996. Winzler may have provided other services such as design or engineering calculations for assessment of damage, initial drawings for repair, initial structural and other engineering calculations, and initial plans and specifications for putting the work out to bid. Though this has not yet been confirmed it is currently a subject of discovery. In any event Plaintiff is advised and believes that the Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black. However, not all facts pertaining to this contention have yet been discovered, and thus, this Answer may be further supplemented under Federal Rule of Civil Procedure 26.

**INTERROGATORY NO. 4:** Please state each and every fact that supports your contention as stated in paragraph 7 of your Complaint that the repair work on F Pier and the dolphins thereof was performed under the general supervision of Winzler & Kelly.

**ANSWER:** Discovery conducted to date has not shown that Winzler provided "general supervision" for work on the project. Plaintiff notes that Winzler & Kelly's name and

Case 1:03-cv-00009    Document 214    Filed 09/07/2005    Page 5 of 33

stamp appear on drawing VE-1 and, as is often the case, Winzler as the draftsman and design engineer may have provided supervision or some form of oversight of work constructed in accordance with its drawing VE-1. Discovery is continuing and Plaintiff will supplement this answer if additional information is developed.

**INTERROGATORY NO. 5:** With reference to Interrogatory No. 4 above, state with whom Winzler & Kelly had a contract to supervise the repair work on F Pier and the dolphins thereof.

**ANSWER :** Winzler's direct contract was with Black Construction. Discovery conducted to date has not shown that said contract required Winzler to provide "general supervision" for work on the project. Plaintiff notes that Winzler & Kelly's name and stamp appear on drawing VE-1 and, as is often the case, Winzler as the draftsman and design engineer may have provided supervision or some sort of oversight of work constructed in accordance with its drawing VE-1. In any case, Plaintiff is advised and believes that the Port Authority, and therefore Plaintiff, were intended third party beneficiaries of Winzler's contract with Black, whatever the scope of said contract may be. Discovery is continuing and Plaintiff will supplement this answer if additional information is developed.

**INTERROGATORY NO. 6:** Please state each and every fact that supports your contention as stated in paragraph 8 of your Complaint that Winzler & Kelly represented and warranted to the Port Authority that the repair work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam.

**ANSWER:** Discovery conducted to date has not revealed that Winzler made such representation directly to the Port Authority. However, Plaintiff and the Port Authority

were intended third party beneficiaries of Winzler's contract with Black. Plaintiff notes that Winzler & Kelly's name and stamp appear on drawing VE-1 and that VE-1 was used for construction by Black. Winzler knew the identity of the owner of the works at the time it prepared VE-1. Accordingly, Plaintiff contends that Winzler, as professional engineers, owed Black and Plaintiff a general duty of professional care to see to it that the work depicted in VE-1 was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam. Discovery is continuing and Plaintiff will supplement this answer if additional information is developed.

**INTERROGATORY NO. 7:** Please state each and every fact that supports your contention as stated in paragraph 11 of your Complaint that the repair of F-1 Pier and the dolphins there of had been done improperly.

**ANSWER:** Objection is being made on the grounds that the Interrogatory calls for a legal conclusion. Plaintiff asserts that the failure of the repairs to F-1 Pier and the dolphins thereof during the second earthquake adequately demonstrates that the repairs were not done properly. Subject to this objection, discovery has so far revealed: (1) no provision was made to ensure that the hole drilled in the concrete was completely filled with epoxy before the anchor bolt was inserted; (2) no provision was made to ensure that the hole drilled in the concrete was sufficiently clean before inserting the epoxy and then the bolt; (3) no provision was made to ensure that once injected the epoxy would not drain completely or partially out of the hole; (4) the structural connection between the pile cap and the underside of the working surface, as depicted in VE-1, was inadequate for the anticipated forces the structure would have to resist; (5) the anchor bolts were not fully encapsulated with epoxy; (6) the design and engineering calculations were wrong or otherwise inadequate for the conditions reasonably anticipated.

Case 1:03-cv-00009    Document 214    Filed 09/07/2005    Page 7 of 33

Discovery is continuing, and plaintiff will supplement this answer as additional information is developed.

**INTERROGATORY NO. 8:** Please state which repairs were done improperly and what was improper about each such repair.

**ANSWER:** Objection is being made on the grounds that the interrogatory calls for a narrative answer, is overbroad and burdensome. Without waiving any of the objections set forth herein, Plaintiff incorporates its answer to interrogatory no. 7. Furthermore, the design of repair using epoxy-set bolts may not have been appropriate in an earthquake- and typhoon-prone area such as Guam. Discovery is continuing, and Plaintiff will supplement this answer if additional information is developed.

**INTERROGATORY NO. 9:** Please state each and every fact that supports your contention as stated in paragraph 19 and 23 of your Complaint that Winzler & Kelly had a contract with the Port Authority for any aspect of the F-1 Pier (and the dolphins thereof) repair project. Please identify and describe such contract(s) with particularity.

**ANSWER :** Objection is being made on the grounds that the Interrogatory is repetitive and restates all, or part of, interrogatory Nos. 1 and 3. Without waiving any of the objections set forth herein, Plaintiff responds by incorporating the Responses to Interrogatory Nos. 1 and 3 herein.

**INTERROGATORY NO. 10:** Please state each and every fact that supports your contention as stated in paragraph 11 of your Complaint that the work on F-1 Pier and the dolphins thereof, which you claim Defendants had agreed should and would be done, in fact was never done.

(a) Specify what work you claim should have been done, but was not done.

Case 1:03-cv-00009    Document 214    Filed 09/07/2005    Page 8 of 33

(b)  Please state in what way Winzler & Kelly was responsible for any such failure to do work which should have been done.

**ANSWER:**  Objection is being made on the grounds that the interrogatory calls for a narrative answer, is overbroad and burdensome. Furthermore, this interrogatory is duplicative of all or part of interrogatories Nos. 7 and 8. Without waiving any of the objections set forth herein, Plaintiff responds by incorporating the answers to interrogatories Nos. 6, 7 and 8.

**INTERROGATORY NO. 11:**  With regard to your claim in paragraph 11 of your Complaint that Defendant Winzler & Kelly "had agreed" that certain work should and would be done, please identify and describe that agreement by disclosing if it was written or oral and what its contents were.

**ANSWER:**  Objection is being made on the grounds that the Interrogatory is compound, overbroad and burdensome. Without waiving any of the objections set forth herein, Plaintiff responds by incorporating its answers to interrogatories 6, 7 and 8.  Winzler's preparation of drawing VE-1 and other related documents constitute a sufficient "writing." Plaintiff is further advised that said agreement or agreements may have been given partly by verbal communication with Black, and thereby also to the Port and Plaintiff as third-party beneficiaries.  Discovery is continuing, and if Plaintiff discovers additional facts responsive to this interrogatory, it will supplement its answer hereto.

**INTERROGATORY NO. 12:**  Please describe what was inadequate about the designs, plans, specifications and repair work performed by Defendants.

**ANSWER:**  Objection is being made on the grounds that the Interrogatory calls for a narrative answer, is vague, overbroad and burdensome. Without waiving any of the

objections set forth herein, Plaintiff responds by incorporating its answers to interrogatories nos. 6, 7 and 8. Discovery is continuing, and if Plaintiff discovers additional facts responsive to this interrogatory, it will supplement its answer hereto.

**INTERROGATORY NO. 13:** Please describe the deficiencies you claim were in any plans and specifications prepared by Winzler & Kelly.

**ANSWER:** Objection is being made on the grounds that the Interrogatory calls for a narrative answer, is vague, overbroad and burdensome. Without waiving any of the objections set forth herein, Plaintiff responds by incorporating its answers to interrogatories 6, 7 and 8. Furthermore, in and of itself, subsequent total failure of the structural connection depicted in VE-1 under anticipated conditions and forces is proof that the design, calculations and specifications and/or construction were improper and defective. Discovery is continuing, and if Plaintiff discovers additional facts responsive to this interrogatory, it will supplement its answer hereto.

**INTERROGATORY NO. 14:** Do you contend Winzler & Kelly owed the Port Authority a duty of care in its design of any repair plans or specifications for F Pier and the dolphins thereof?

**ANSWER :** Yes.

**INTERROGATORY NO. 15:** If the answer to the Interrogatory No. 14 is in the affirmative, please state:

    (a) What duty of care was owed to the Port Authority by Winzler & Kelly?

    (b) How was it breached?

**ANSWER:**

    (a) Objection is being made on the grounds that the Interrogatory calls for a legal

Case 1:03-cv-00009    Document 214    Filed 09/07/2005    Page 10 of 33

conclusion, is overbroad and burdensome. Without waiving any of the objections set forth herein, Plaintiff is advised and believes that the Port Authority, and therefore Plaintiff, were intended third party beneficiaries of Winzler's contract with Black. Plaintiff notes that Winzler & Kelly's name and stamp appear on drawing VE-1 and that VE-1 was used for construction by Black. Winzler knew that Black would reply on VE-1 for construction and also knew the identity of the owner of the works when it prepared VE-1. Accordingly, Winzler, as professional engineers, owed Black and Plaintiff a general duty of professional care to see to it that the work depicted in VE-1 was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam. Furthermore, because Winzler & Kelly knew the identity of the owner of F-1 Pier when it performed the engineering work and developed the plans and specifications which are at issue herein, Winzler owed the owner, Port Authority, the duty of care owed by a licensed professional engineer experienced in marine construction projects in earthquake- and typhoon-prone locations such as Guam.

(b) In addition to incorporating its answers to interrogatories 6, 7 and 8, Plaintiff is informed and believes that Winzler & Kelly developed inadequate plans, designs, specifications, and repair proposals - namely drawing VE-1 - which directly resulted in repairs to F-1 Pier which were too weak to resist earthquake-generated forces reasonably expected to occur in Guam.

**INTERROGATORY NO. 16:** Please describe the payments you have made to the Port Authority as claimed in paragraph 10 of your Complaint. Please give the amount of each payment and describe the specific repair it is intended to pay for.

**ANSWER:** Plaintiff has produced documents showing the payments.

**INTERROGATORY NO. 17** :  Please state each and every fact upon which you base your contention in paragraph 15 of your Complaint that Winzler & Kelly "recommended" that changes be made to the proposed plans for repair of F-1 Pier.

> **ANSWER:**  Objection is being made on the grounds that the Interrogatory calls for a narrative answer, is vague, overbroad and burdensome. Without waiving any of the objections set forth herein, Plaintiff states that it is informed and believes that the initial plans for the repairs to F-1 Pier dated "01/10/96" and prepared after the damage caused by the earthquake in August of 1993 would have produced a final product stronger (especially at the structural connection that failed) than the repairs (as shown in drawing VE-1) which were ultimately designed by Winzler and performed by Black.  Plaintiff is further informed and believes that Winzler & Kelly assisted Black to come up with a less expensive structural connection, and by way of proposing such connection as depicted in drawing VE-1 recommended that said less-strong structural connection would be adequate.  This caused or contributed to cause the damage to Plaintiff which is the subject of this lawsuit.

> DATED: Hagåtña, Guam, November 10, 2003.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
Leslie Wilton

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on November 10, 2003 I will cause to be served, via hand delivery, a true and correct copy of PLAINTIFF LESLIE WILTON'S SUPPLEMENTAL ANSWERS TO DEFENDANT WINZLER & KELLY'S FIRST SET OF INTERROGATORIES; DECLARATION OF SERVICE upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910

and

> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

Executed this 10th day of November 2003 at Hagåtña, Guam.

_____
DAVID LEDGER

· ORIGINAL ‿     ‿     w + k

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813



Attorneys for Plaintiff
Leslie Wilton

### IN THE DISTRICT COURT OF GUAM

S.J. GARGRAVE SYNDICATE AT
LLOYDS,

Plaintiff,

vs.

BLACK CONSTRUCTION CORPORATION,
WINZLER & KELLY, and ENGINEERING
MANAGEMENT & PLANNING SERVICES
CORPORATION,

Defendants.

CIVIL CASE NO. CV03-00009

**PLAINTIFF'S THIRD
SUPPLEMENTAL RESPONSE TO
DEFENDANT WINZLER & KELLY'S
FIRST SET OF INTERROGATORIES;
DECLARATION OF SERVICE**

Plaintiff S.J. Gargrave Syndicate at Lloyds ("Plaintiff") submits its third

Supplemental Response to Defendant Winzler & Kelly's First Set of Interrogatories.

**INTERROGATORY NO. 1:** Please state each and every fact that supports your

contention as stated in paragraph 6 of your Complaint that the Port Authority retained Winzler &

Kelly Consulting Engineers ("Winzler & Kelly") to advise it concerning repairing the damage

which an August, 1993 earthquake caused to F Pier and the dolphins thereof.

4834-1022-3104.1.055639-00001

**RESPONSE:** Plaintiff was previously advised that the Port Authority had retained Winzler & Kelly directly. Discovery conducted to date has indicated that the Port Authority did not contract with Winzler & Kelly directly. Instead, discovery has shown that Black Construction contracted with Winzler to provide design and engineering calculations and related services for the project. Eventually, Winzler prepared drawing "VE-1" dated April 4, 1996 and consulted with Black and others concerning the repairs. The Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black.

Winzler failed to provide to Black, design and engineering calculations in support of drawing VE-1 and other documents prepared by Winzler. Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the "back of a napkin" drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-third to one-seventh as strong as it needed to be. Winzler also consulted with and advised the Port Authority and its contractor and representatives concerning interferences and other problems which arose during the construction process. Mr. Swanney visited the job site on numerous occasions in connection with that work and those services. The repair work was performed under Winzler's general supervision and was performed negligently.

**INTERROGATORY NO. 2:** With reference to paragraph 6 of your Complaint, state what advice Winzler & Kelly gave the Port Authority concerning (a) repairing the damage caused by the earthquake; and (b) repairing the damage to F Pier and the dolphins thereof caused by the earthquake.

**RESPONSE:** Plaintiff was previously advised that the Port Authority had retained Winzler & Kelly directly. Discovery has indicated that the Port Authority did not contract with Winzler & Kelly directly. Instead, discovery has shown that Black Construction contracted with Winzler to provide design and engineering calculations and related services for the project. Eventually, Winzler prepared drawing "VE-1" dated April 4, 1996 and consulted with Black and others concerning the repairs. The Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler provided to Black.

Winzler failed to provide to Black, design and engineering calculations in support of drawing VE-1 and other documents prepared by Winzler. Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-third to one-seventh as strong as it needed to be. Winzler also consulted with and advised the Port Authority and its contractor and representatives concerning interferences and other problems which arose during the construction process. Mr. Swanney visited the job site on numerous occasions in connection with that work and those services. The repair work was performed under Winzler's general supervision and was performed negligently.

**INTERROGATORY NO. 3:** Please state each and every fact that supports your contention as stated in paragraph 6 of your Complaint that Winzler & Kelly was retained by the Port Authority to study and assess the damage, prepare initial drawings for repair, perform structural and other engineering calculations, and prepare plans and specifications to put the work out to bid.

**RESPONSE:** Plaintiff was previously advised that the Port Authority had retained Winzler & Kelly directly. Discovery has revealed that the Port Authority did not

Case 1:03-cv-00009     Document 214     Filed 09/07/2005     Page 16 of 33

contract with Winzler & Kelly directly, and did not assist in the bid process. Instead, discovery has shown that Black Construction contracted with Winzler to provide design and engineering calculations and related services for the project. Eventually, Winzler prepared drawing "VE-1" dated April 4, 1996 and consulted with Black and others concerning the repairs. The Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black.

Winzler failed to provide to Black, design and engineering calculations in support of drawing VE-1 and other documents prepared by Winzler. Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-third to one-seventh as strong as it needed to be. Winzler also consulted with and advised the Port Authority and its contractor and representatives concerning interferences and other problems which arose during the construction process. Mr. Swanney visited the job site on numerous occasions in connection with that work and those services. The repair work was performed under Winzler's general supervision and was performed negligently.

**INTERROGATORY NO. 4:** Please state each and every fact that supports your contention as stated in paragraph 7 of your Complaint that the repair work on F Pier and the dolphins thereof was performed under the general supervision of Winzler & Kelly.

**RESPONSE:** Plaintiff was previously advised that the Port Authority had retained Winzler & Kelly directly. Discovery has shown that the Port Authority did not contract with Winzler & Kelly directly, and did not assist in the bid process. Instead, discovery has shown that Black Construction contracted with Winzler to provide design and engineering calculations and related services for the project. Eventually, Winzler prepared drawing "VE-1"

dated April 4, 1996 and consulted with Black and others concerning the repairs. The Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black.

Winzler failed to provide to Black, design and engineering calculations in support of drawing VE-1 and other documents prepared by Winzler. Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. In fact, the drawing which Winzler prepared and Black utilized resulted in a connection between the piles and concrete dolphin caps which was only one-third to one-seventh as strong as it needed to be. Winzler also consulted with and advised the Port Authority and its contractor and representatives concerning interferences and other problems which arose during the construction process. Mr. Swanney visited the job site on numerous occasions in connection with that work and those services. The repair work was performed under Winzler's general supervision and was performed negligently.

**INTERROGATORY NO. 5:** With reference to Interrogatory No. 4 above, state with whom Winzler & Kelly had a contract to supervise the repair work on F Pier and the dolphins thereof.

**RESPONSE:** Discovery has shown that Black Construction contracted with Winzler to provide design and engineering calculations, certain construction and related services for the project. Eventually, Winzler prepared drawing "VE-1" dated April 4, 1996. The Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black. Discovery and documents produced in this case show that Winzler, both in Guam and San Francisco, had ongoing involvement with the construction process, and implementation of the VE-1 drawing.

**INTERROGATORY NO. 6:** Please state each and every fact that supports your contention as stated in paragraph 8 of your Complaint that Winzler & Kelly represented and warranted to the Port Authority that the repair work was adequate, had been properly performed, and was appropriate and strong enough for an earthquake-prone and typhoon-prone location such as Guam.

**RESPONSE:** Discovery has shown that the Port Authority did not contract with Winzler & Kelly directly. Instead, discovery has shown that Black Construction contracted with Winzler to provide design and engineering calculations, certain construction and related services for the project. Eventually, Winzler prepared drawing "VE-1" dated April 4, 1996, stamped and signed by a registered P.E. This constitutes a representation and warranty that the design meets the clients' needs, all code requirements and good engineering practice. The Port Authority, and therefore Plaintiff, were intended third party beneficiaries of the contract services Winzler did provide to Black.

Winzler failed to provide to Black, design and engineering calculations in support of drawing VE-1 and other documents prepared by Winzler. Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter. Winzler also consulted with and advised the Port Authority and its contractor and representatives concerning interferences and other problems which arose during the construction process. Mr. Swanney visited the job site on numerous occasions in connection with that work and those services. The repair work was performed under Winzler's general supervision and was performed negligently.

**INTERROGATORY NO. 7:** Please state each and every fact that supports your contention as stated in paragraph 11 of your Complaint that the repair of F-1 Pier and the dolphins thereof had been done improperly.

**RESPONSE:** Objection is being made on the grounds that the Interrogatory calls for a legal conclusion. Plaintiff asserts that the failure of the repairs to F-1 Pier and the dolphins thereof during the second earthquake adequately demonstrates that the repairs were not done properly. Subject to this objection, discovery has revealed: (1) no provision was made to ensure that each hole drilled in the concrete was completely filled with epoxy before the anchor bolt was inserted; (2) no provision was made to ensure that each hole drilled in the concrete was sufficiently clean before inserting the epoxy and then the bolt; (3) inadequate provision was made to ensure that once injected, the epoxy would not drain completely or partially out of the hole; (4) the structural connection between the pile cap and the underside of the working surface, as depicted in VE-1, was inadequate for the anticipated forces the structure would have to resist; (5) the anchor bolts were not fully encapsulated with epoxy; (6) the design and engineering calculations done were wrong or otherwise inadequate for the conditions reasonably anticipated; (7) the bolt size(s) and number per pile specified and used were inadequate to resist the forces which could be anticipated; (8) Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter; (9) Winzler failed to disclose that calculations were necessary and required for a proper design; (10) the bolts were not torque-tested; (11) there was no special inspection of the epoxy installation; (12) many bolts which fell out had little or no epoxy on them; (13) some of the epoxy had not hardened; (14) the epoxy manufacturer's recommendations were not followed; (15) the nuts were not properly tightened after installation.

**INTERROGATORY NO. 8:** Please state which repairs were done improperly and what was improper about each such repair.

**RESPONSE:** Objection is being made on the grounds that the interrogatory calls for a narrative answer, is overbroad and burdensome. Without waiving any of the objections set

forth herein, Plaintiff incorporates its answer to interrogatory no. 7. The design of the repair using Anchor-It epoxy-set bolts was not done and tested properly in an earthquake- and typhoon-prone area such as Guam. As to Winzler specifically, Winzler prepared a design for Black to use on Port Authority property, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter or to confirm that the design would work. The pile-to-cap connections were far less strong than they needed to be.

**INTERROGATORY NO. 12:** Please describe what was inadequate about the designs, plans, specifications and repair work performed by Defendants.

**RESPONSE:** Objection is being made on the grounds that the Interrogatory calls for a narrative answer, is vague, overbroad and burdensome. Without waiving any of the objections set forth herein, Plaintiff responds by incorporating its answers to interrogatories nos. 6, 7 and 8. As to Winzler specifically, Winzler prepared a design for Black, including stamped and signed drawings, without performing a single calculation to determine the forces which the structure would encounter or to confirm that the design would work. The design was far less strong than it needed to be.

DATED: Hagåtña, Guam, May 20, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on May 20, 2005 I will cause to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S THIRD SUPPLEMENTAL RESPONSE TO DEFENDANT WINZLER & KELLY'S FIRST SET OF INTERROGATORIES** upon Defendants' Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and
> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this 20th day of May, 2005 at Hagåtña, Guam.

DAVID LEDGER

SANFRAN1\33591\1 123206.000

# CONSTRUCTION CONTRACT

THIS AGREEMENT AND CONTRACT, made and entered into this 8th day of April , 1996, by and between the Port Authority of Guam, a public corporation and autonomous instrumentality of the Government of Guam hereinafter referred to as "Port Authority", whose address is 1026 Cabras Highway, Suite 201, Piti, Guam 96925, and **BLACK CONSTRUCTION CORPORATION**, hereinafter referred to as the "Contractor", whose address is P.O. Box 24667, GMF, Guam 96921.

## WITNESSETH

WHEREAS, the Port Authority intends to construct REPAIRS AND UPGRADING OF FOXTROT PIER "F-1", PAG Project No. PAG 96 -0010 hereinafter called the "project", in accordance with the General Scope of Work prepared by the Port Authority.

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, the Port Authority issued Invitation to Bid No. PAG 96-0010 in order to solicit bids from building contractors desiring to perform the project construction;

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, after the bids in response to Invitation to Bid No. 96-0010 were opened, Contractor was determined to be the lowest responsible and responsive bidder and awarded the contract to perform the construction of the project to the Contractor.

NOW THEREFORE, the Port Authority and Contractor for the considerations hereinafter set forth, agree as follows:

I.    THE CONTRACTOR AGREES to furnish all the necessary labor, materials, equipment, tools and services necessary to perform and complete in a workmanlike manner all work required for the construction of the Project in strict compliance with the Contract Documents herein mentioned, which are hereby made part of the Contract.

(a)    Contract Time.  The Contractor agrees to commence work under this contract upon written notice to proceed, and to complete the project ready for use and operational within 280 calendar days of the commencement of the Contract as defined in the General Provisions of the Contract.

(b)    Sub-Contractors.  The Contractor agrees to bind every subcontractor by the terms of this Contract and the contract documents.  Any and all contracts between the Contractor and its subcontractors shall not be construed as creating any contractual relation between any subcontractor and the Port Authority.

II.    THE PORT AUTHORITY AGREES to pay, and the Contractor agrees to accept in full payment for the performance of this Contract, the Contract amount of:

**EXHIBIT "C"**

0042

a. The Basic Bid Amount of Two Million One Hundred Forty Seven Thousand and Eight Hundred Dollars ($2,147,800.00)

b. Contractor shall be paid any and all sums including any added and/or deducted amounts resulting from any and all extra work and/or omitted work in connection therewith, in accordance with Section B-9 of the General Conditions of the Contract Documents described in Section III(i) and incorporated herein by reference.

III. CONTRACT DOCUMENTS. It is hereby mutually agreed that the following list of instruments, plans, specifications and documents which are attached hereto, bound herewith and incorporated herein by reference shall constitute the Contract Documents, all of which are made a part hereof, and collectively evidence and constitute the Contract between the parties, hereto, and they are as fully a part of this Contract, as if they were set our verbatim and in full herein, and are designated as follows:

a. Invitation to Bid
b. Instruction to Bidders
c. Proposal
d. Form of Non-collusion Affidavit
e. Bid Bond
f Certification of Bidders Regarding Equal Employment Authority
g. Performance and Payment Bond
h. Special Provisions
i. General Provisions
j. Labor Standards Provisions
k. Technical Specifications
l. Plans
m. Addendum(s)
n. Notice of Award
o. Notice to Proceed

IV. LIQUIDATED DAMAGES. Contractor agrees that if Contractor fails, neglects, or refuses to complete the work by the completion date as set forth above, then Contractor shall pay, or shall be assessed the sum of One Thousand No/100 Dollars ($1,000.00) per day for each calendar day of delay after the time stipulated for completing the work. The amount Contractor shall pay or be assessed for each calendar day in which the work is not completed after the specified completion date is not a penalty, but a reasonable estimated liquidated damages suffered by the Port Authority.

V. COVENANT AGAINST CONTINGENT FEES. The Contractor warrants that it has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Port Authority the right to terminate the contract, or at its discretion, to deduct from the contract price or consideration the amount of such commissions, percentage,

- 2 -

brokerage or contingent fee. This warranty shall not apply to commissions payable by Contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by Contractor for the purpose of securing business.

VI.    OTHER CONTRACTS. The Port Authority may award other contracts for additional work, and the contractor shall fully cooperate with such other contractors and carefully fit his own work to that provided under other contracts as may be directed by the General Manager. The Contractor shall not commit or permit any act which will interfere with the performance of work by any other contractor.

VII.    DISPUTES. Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the Contracting Officer subject to written appeal by the Contractor within 30 days to the Governor of Guam or his duly authorized representative, whose decision shall be the final and conclusive upon the parties thereto. In the meantime, the Contractor shall diligently proceed with the work as directed.

VIII.    CONTRACT BINDING. It is agreed that this Contract and all of the Covenants hereof shall insure to the benefit of and be binding upon the Port Authority and the Contractor respectively and its partners, successors, assigns and legal representatives. Neither the Port Authority nor the Contractor shall have the right to assign, transfer or sublet its interest or obligations hereunder without written consent of the other party.

IX.    LIENS. It is hereby mutually agreed by and between the parties hereto that neither the Contractor or any other persons or companies working on the project or supplying materials thereto, including but not limited to mechanics, contractors, subcontractors, material persons or other persons can or will contract for or in any other manner have or acquire any lien, claim or interest upon the building or works covered by this contract, or the land upon which the same is situated.

X.    REPRESENTATIONS. The Contractor hereby makes the following representations and certifications:

    (a)    That Contractor has not knowingly influenced and promises that Contractor will not knowingly influence a government employee to breach any of the ethical standards set forth in Chapter 11 of the Guam Procurement Regulations.

    (b)    That Contractor has not violated, is not violating and promises that Contractor will not violate the prohibition against gratuities and kickbacks set forth in Section 11-206 of the Guam Procurement Regulations.

XI. NON GRATUITY. - The Contractor agrees that Contractor shall execute and file a

- 3 -

Non-Gratuity Affidavit as required by Section 11-206 of the Guam Procurement Regulations before final payment under this Contract is made by the Port Authority.

XII. ALTERATIONS. The following changes were made in this contract before it was signed by the parties hereto:     None.

XIII. ATTORNEY'S FEES: If any legal action, suit or other proceeding is brought for the enforcement of this Agreement, or because of any alleged dispute, breach or default in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and court costs incurred in the action, suit or proceeding, in addition to any other remedy or relief to which it may be entitled.

XIV. INDEMNIFICATION. The Contractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatsoever (including death resulting therefrom) to all persona, whether employees of the contractor or otherwise, and to all property damage caused by, resulting from, arising out of or occurring in connection with employees or agents. Should any claims for such damage or injury (including death resulting therefrom) be made or asserted, the Contractor agrees to indemnify and save harmless the Government, the Port Authority Board of Directors, and all Port Authority officers, agents, servants and employees from and against any and all such claims and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that the Port Authority, its officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and the Contractor agrees to and does hereby assume, on behalf, of the Port Authority, its officers, agents, servants or employees upon or by reason of such claims which defense, shall be tendered by counsel, selected by Contractor with approval of the Port Authority, and to pay on behalf of the Port Authority, its officers, agents, servants and employees, upon demand the amount of any judgment that may be entered against the Port Authority, its officers, agents, servants or employees in any such action.

XV. INSURANCE. Contractor shall, at its sole expense and for the benefit of Contractor and the Port Authority, provide and keep in full force and effect during the term of this Contract, insurance against liability for bodily injury with limits of not less than Three Hundred Thousand Dollars ($300,000.00) per person, One Million Dollars ($1,000,000.00) per occurrence, and property loss liability insurance with a limit of not less than Three Thousand Dollars ($300,000.00) per loss, all in respect to bodily injury or property loss arising out of the duties and obligations of Contractor under the terms of this Contract. In addition, Contractor shall also provide and keep in full force and effect during the term of this Contract, workman's compensation insurance with limits of not less than One Hundred Thousand Dollars ($100,000.00) per employee. Contractor shall furnish to the Port Authority certificates of insurance evidencing the existence of such insurance. No policy of insurance may be cancelled without providing the Port Authority thirty (30) days advance written notice. All insurance required under this Paragraph shall be written with

- 4 -

responsible companies with originals of the policies and renewals available for the Port Authority's review during reasonable hours.

XVI. <u>GOVERNING LAW</u>. It is agreed that this Contract shall be governed by, construed, and enforced in accordance with the laws of the territory of Guam.

XVII. <u>TIME OF THE ESSENCE</u>. It is specifically declared and agreed that time is of the essence of this Contract.

XVIII. <u>MODIFICATION OF AGREEMENT</u>. Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party.

XIX. <u>NOTICES</u>. Any notice provided for or concerning this agreement shall be in writing and be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this agreement.

XX. <u>PARAGRAPH HEADINGS</u>. The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first written.

BLACK CONSTRUCTION CORPORATION

Date: __April 8, 1996__

By: _____

Name: __Perfecto O. Jose', Jr.__

Title: __Senior Vice President__

- 5 -

0046

APPROVED:                                  CERTIFIED FUNDS AVAILABLE:

_____                  _____
PAUL J. SOUDER, Chairman                   **FRANKLIN E. BADAR, CONTROLLER**
                                           Certifying Officer

Dated: _____                   Dated: _____8/14/96_____


APPROVED AS TO FORM:

CARBULLIDO, PIPES & BORDALLO
Legal Counsel, Port Authority of Guam

_____
CARBULLIDO, ESQ.

Dated: _____


SWJ:amn\PAG\Black.Sup

- 4 -

responsible companies with originals of the policies and renewals available for the Port Authority's review during reasonable hours.

XVI. <u>GOVERNING LAW</u>. It is agreed that this Contract shall be governed by, construed, and enforced in accordance with the laws of the territory of Guam.

XVII. <u>TIME OF THE ESSENCE</u>. It is specifically declared and agreed that time is of the essence of this Contract.

XVIII. <u>MODIFICATION OF AGREEMENT</u>. Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party.

XIX. <u>NOTICES</u>. Any notice provided for or concerning this agreement shall be in writing and be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this agreement.

XX. <u>PARAGRAPH HEADINGS</u>. The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first written.


                                        BLACK CONSTRUCTION CORPORATION


Date: April 8, 1996              By: _____

                                 Name: Perfecto O. Jose', Jr.

                                 Title: Senior Vice President


– 5 –

048

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first written.

BLACK CONSTRUCTION CORPORATION

Date: ___April 8, 1996___

By: _____

Name: ___Perfecto O. Jose', Jr.___

Title: ___Senior Vice President___

I, ___Mark J. Mamczarz___, certify that I am the assistant secretary of the corporation named as the Contractor herein; that ___Perfecto O. Jose', Jr.___ who signed this contract on behalf of the Contractor, that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

_____
(Corporate Seal)

PORT AUTHORITY OF GUAM

By: CAPTAIN EULOGIO C. BERMUDES
General Manager

Dated: _____

– 3 –

# SUPPLEMENTAL AGREEMENT TO
# CONSTRUCTION CONTRACT

THIS SUPPLEMENTAL AGREEMENT AND CONTRACT, made and entered into this _____ day of _____, 1996, by and between the Port Authority of Guam a public corporation and autonomous instrumentality of the Government of Guam, hereinafter referred to as "Port Authority", whose address is 1026 Cabras Highway, Suite 201, Piti, Guam 96925, and **BLACK CONSTRUCTION CORPORATION**, hereinafter referred to as the "Contractor", whose address is P.O. Box 24667, GMF, Guam 96921.

## WITNESSETH

WHEREAS, the Port Authority intends to construct REPAIRS AND UPGRADING OF FOXTROT PIER "F-1", PAG Project No. _____ hereinafter called the "project", in accordance with the General Scope of Work prepared by the Port Authority of Guam.

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, the Port Authority issued Invitation to Bid No. PAG 96-0010 in order to solicit bids from building contractors desiring to perform the project construction;

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, after the bids in response to Invitation to Bid No. 96-0010 were opened, Contractor was determined to be the lowest responsible and responsive bidder and awarded the contract to perform the construction of the project to the Contractor.

WHEREAS, the Port Authority and Contractor entered into a Construction Contract which sets forth the rights, duties and responsibilities of each party with respect to the construction of the project.

WHEREAS, subsequent to the award of the contract for the construction of the project it was determined that certain items within the scope of work listed in the Basic Bid Schedule should be omitted and an alternative design method implemented.

WHEREAS, the items to be omitted from the Basic Bid Schedule change the total cost of the project by more than twenty five percent (25%) so that the parties are required to enter into a Supplemental Agreement.

NOW THEREFORE, the Port Authority and Contractor for the considerations hereinafter set forth, agree as follows:

## I.  CHANGE IN SCOPE OF WORK

The Port Authority and Contractor hereby agree to omit certain concrete jacketing and pile encapsulation work as provided for in the Basic Bid Schedule and in lieu of such work Contractor is to use a Total Upper Section Replacement Method, in accordance with the attached Drawing prepared by "Winzler and Kelly".

## II.  CONTRACT PRICE ADJUSTMENT

As a result of the omitted work, the total amount of compensation the Port Authority agrees to pay to Contractor and Contractor agrees to accept as payment in full for the performance of the Contract shall be reduced from Two Million Forty Seven Thousand And Eight Hundred Dollars ($2,147,800.00) to One Million Four Hundred Seven Thousand And Six Hundred Eighty Two Dollars ($1,407,682.00).

## III.  OTHER CONDITIONS

The Port Authority and Contractor further agree that:

A.    All repair and upgrade work shall conform to the requirements of Shell Guam, Inc. as specified in the Contract documents.

B.    All repair and upgrade work shall be performed on all existing piles as indicated in the Contract documents.

C.    A unit cost per pile for repair and upgrade should be established and agreed upon between the Port Authority and Contractor. The total number of piles in need of repairs may be adjusted and subject to an appropriate reduction in the total contract amount.

D.    The Port Authority shall designate an on-site construction manager to determine and approve which piles require repair or replacement, and that final determination to be concluded within seven (7) days of contract.

E.    All applicable submittal requirements as stipulated in the Contract Documents shall be complied with and shall remain in full force and effect.

## IV.  OTHER TERMS OF CONTRACT REMAIN IN EFFECT

All other terms and conditions of the Construction Contract and contract documents remain in effect.

- 2 -

0051

I, ___Mark J. Mamczarz_____, certify that I am the assistant secretary of the corporation named as the Contractor herein; that ___Perfecto O. Jose', Jr._____ who signed this contract on behalf of the Contractor, that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

(Corporate Seal)

PORT AUTHORITY OF GUAM

By:     CAPTAIN EULOGIO C. BERMUDES
General Manager

Dated: _____

APPROVED:

_____
PAUL J. SOUDER, Chairman

Dated: _____

APPROVED AS TO FORM:

CARBULLIDO, PIPES & BORDALLO
Legal Counsel, Port Authority of Guam

_____
F. PHILIP CARBULLIDO, ESQ.

Dated: ___8|12|96___

CERTIFIED FUNDS AVAILABLE:

_____
FRANKLIN E. BADAR, CONTROLLER
Certifying Officer

Dated: ___8/14/96___

- 6 -