ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



FILED
DISTRICT COURT OF GUAM

SEP 23 2005

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>　　　　　Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT WINZLER & KELLY CONSULTING ENGINEER'S MOTION TO MODIFY SCHEDULING ORDER; DECLARATION OF SERVICE** |

## PLAINTIFF'S OPPOSITION TO DEFENDANT WINZLER & KELLY CONSULTING ENGINEER'S MOTION TO MODIFY SCHEDULING ORDER

### I. INTRODUCTION

Just four short months ago, Defendant WINZLER & KELLY CONSULTING ENGINEER ("W&K") advised this Court that granting Plaintiff S.J. Gargrave Syndicate at Lloyd's ("Gargrave") Motion to Modify the Scheduling Order, would cause W&K "great prejudice." W&K pontificated that Gargrave "could have added claims ... months, or indeed years ago, but did not ..." W&K's Opp.'s to Pl's Mo. to Modify Scheduling Order, filed May 5, 2005, at 5. W&K ridiculed Plaintiff's request to modify the scheduling order due to new caselaw as some type of *faux judicial deus ex machina*. W&K emphasized there was no reason to modify the scheduling order so close to trial.

Apparently, W&K and its counsel never have heard of the old axiom: "What's good for the goose is good for the gander.

The Court should apply W&K's own words and legal arguments against it, and review whether W&K has been diligent in seeking to modify the scheduling order. The record is clear: W&K's "belated inspiration" to file a summary judgment motion demonstrates a complete lack of diligence by W&K about important theories of this case. Since the inception of this litigation in March 2003, the contractual relationship between W&K and the Port Authority of Guam has been at issue. W&K has had years to bring the motion they now seek to raise six weeks before the rescheduled trial date, but did not. W&K's motion, simply put, is untimely and should be denied.

### II. FACTUAL BACKGROUND

Gargrave originally brought this action on March 18, 2003, alleging, among other actions, breach of contract against W&K. Gargrave amended its complaint on December 23,

2003, to specifically allege: "The Port Authority is an assignee and/or a third-party beneficiary of the contract between Black and Winzler. These breaches of contract by Winzler directly caused damage and losses to Plaintiff." *See* First Am. Compl., filed Dec. 23, 2003, at ¶ 28.

W&K's answers likewise asserted the following affirmative defense: "There was no contract between Winzler & Kelly and the Guam Port Authority so plaintiff has no derivative or subrogation rights that it can assert herein." Answer of Winzler & Kelly, filed May 7, 2003, at 4, ¶ 11; Answer of Winzler & Kelly, filed Jan. 20, 2004, at 5, ¶ 11. From the inception of this case, W&K knew that it intended to assert the lack of a contractual relationship between itself and the Port as a defense. Some months ago, W&K moved for summary judgment on breach of contract. The Court denied that motion. *See* Apr. 8, 2005 Order.

The Court also previously rejected attempts to modify the scheduling order. In fact, on May 9, 2005, the Court denied Gargraves' motion to modify the scheduling order and said:

> **This case has been pending now for more than two years. The time for trial of this matter is upon us. Further unwarranted delays will not be condoned.**

May 9, 2005 Order at 4 (emphasis added).

Trial of this case begins on November 7, 2005. This trial date has been set and reset several times during the course of these proceedings. Because of the absence of a U.S. District Judge on Guam, it has taken considerable effort to set this trial date. Now W&K wants to upset this apple cart and have the parties brief and argue a summary judgment motion on the eve of the impending trial.[1]

---

[1] To make matters worse, W&K's counsel will not be available for any oral arguments on any motions until just before trial. That is reason enough to deny this motion.

## III. DISCUSSION

This Court has already examined the standards for reviewing motions to modify scheduling orders:

> The scheduling order "controls the subsequent course of the action unless modified by subsequent order. Fed. R. Civ. P. 16(e). Additionally, Rule 16(b) provides that the "scheduling order shall not be modified except upon a showing of good cause" and by leave of Court. Fed. R. Civ. P. 16(b). Thus, to obtain the modification it seeks, the Plaintiff must show "good cause" under Rule Civ. P. 16(b). Thus, to obtain the modification it seeks, the Plaintiff must show "good cause" under Rule 16(b). See Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1087 9th Cir. 2002); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). This "good cause" standard "primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, it was unable to meet the timetable set forth in the order. See Zivkovic, 302 F.3d at 1087: Johnson, 975 F.2d at 609. "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." Zivkovic, 302 F.3d at 1087 (citation omitted); see also Johnson, 975 F.2d at 609 ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification").

May 9, 2005 Order at 3-4.

For obvious reasons, W&K asks the Court to ignore its previous order and instead to look outside the Ninth Circuit when examining what constitutes "good cause" to modify a scheduling order. Winzler & Kelly initially point the Court to *Johnson*, 975 F.2d 604, but then tell the Court to examine caselaw from other jurisdictions that offer a more lenient perspective of good cause. This Court need not go any further than *Johnson* and the established caselaw of this circuit to examine good cause:

> ... **Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment.** The district court

may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. **If that party was not diligent, the inquiry should end.**

*Id.* at 609 (emphases added) (internal citations omitted). Accordingly, W&K's representation that "'diligence' is not determinative of 'good cause'" is wholly inaccurate, particularly within the Ninth Circuit.[2] Diligence is of utmost importance. In fact, when Gargrave previously sought to modify the scheduling order in this case, W&K stated: **"Diligence . . . is key."** W&K's Opp. to Motion to Modify Scheduling Order, filed May 2, 2005 at 5 (emphasis added). At that time, W&K praised *Johnson*:

> Procedural matters set aside, the heart of any motion to modify a scheduling order must be "a showing of good cause." See Fed. R. Civ. P. 16(b)(6). The meaning of "good cause" in this context is discussed in <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604 (9th Cir. 1992)....

W&K's Opposition to Motion to Modify Scheduling Order, filed May 2, 2005, at 4. The Court should ignore W&K's transparent effort to have this Court disregard *Johnson* in favor of other, non-binding caselaw.

> Moreover, *Johnson* holds that a scheduling order:
>
> ... is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. . . . Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited . . . .

975 F.2d at 610 (internal citations omitted).

---

[2] *Gomez v. Trustees of Harvard Univ.*, 676 F. Supp. 13 (D.D.C. 1987), cited by W&K in support of the argument that the Court should disregard a diligence analysis in favor of seeking to narrow the issues at trial, was decided prior to *Johnson* and is outside the Ninth Circuit.

W&K admits that it was indolent in the matter of its proposed motion. It should not be awarded for this oversight by now being allowed to file a summary judgment motion.

Recently, the Ninth Circuit's diligence standard continuous to control. In *Doe v. State of Hawaii Dept. of Educ.*, 351 F. Supp. 2d 998 (D. Haw. 2004), the plaintiff failed to demonstrate the due diligence required to meet the "good cause" standard for modifying a Rule 16 order. Plaintiff wanted to file a summary judgment counter-motion after the dispositive motion deadline had passed. The Court found the plaintiffs were aware of the arguments of the counter motion well before they agreed to the deadlines in the scheduling order, and refused to modify the scheduling order.

Similarly, W&K has made no showing of diligence. W&K seeks to modify the scheduling order to allow it to move for summary judgment motion on whether W&K can be sued for breach of contract under a third-party-beneficiary theory. The only reason given for failure to move earlier was it "frankly had not occurred" to W&K's counsel. If it truly had "not occurred" to counsel, then he was not paying attention because Gargrave notified W&K that the third-party beneficiary status was at issue in the original complaint and in the amended complaint. This legal theory did not suddenly appear during discovery or motions practice. The third-party beneficiary issue has been at the forefront of this litigation since its inception. W&K has no excuse for not bringing a dispositive motion on this issue earlier.

"Belated inspiration" is the same as want of diligence. W&K have miserably failed to identify this legal issue. As *Johnson* demands, the inquiry ends here.

However, *Johnson* allows Gargrave the opportunity to supply additional grounds of prejudice. Prejudice to Plaintiff is plain and simple: It is now six weeks before trial. November 7, 2005 is the date set by the Court after numerous reschedulings. The schedule

should not be further changed and/or disregarded. Gargrave is preparing for trial. It would be extremely prejudicial for Gargrave to have to stop that preparation to respond to a summary judgment motion. As the Court has already stated: "the time for trial of this matter is now upon us. Further unwarranted delays will not be condoned." May 9, 2005 Order at 4. Gargrave agrees, and asks that no further non-diligent motions be entertained by the Court.

## IV. BECAUSE W&K'S MOTION FOR SUMMARY JUDGMENT LACKS MERIT, A MODIFICATION OF THE SCHEDULING ORDER WOULD RESULT IN A WASTE OF TIME.

Even if the Court were to entertain W&K's summary judgment motion, the "Recent Case Law" cited by W&K actually supports Gargrave's position that the Port was a third party beneficiary to the Black-W&K contract.[3]

In its proposed Motion for Summary Judgment, W&K bases its assertion that the Port was not an intended third party beneficiary on three "recent" cases. Those three cases do not help W&K's position. In fact, the three "recent" cases are actually detrimental to W&K's position. W&K had direct written communications with the Port regarding its work on Pier 1 and the dolphins. In the three cases cited by W&K (which purportedly represent the state of the law with regard to determining whether third party beneficiary status exists), however, the promisor had no contact with the beneficiary. Thus, in those "recent" cases cited by W&K, the Court in each case ruled that third party beneficiary status did not exist. However, in the case at bar, the promisor [W&K] had *direct* written communications[4] with the Port's authorized representative, N.C. Macario, and with the Port itself.

---

[3] This is intended to be only a brief response to W&K's proposed motion. Should the Court modify the scheduling order, Gargrave will brief these issues further.

[4] Those written communications between the Port and W&K are evidenced by: (1) Letter from Roland S. Miller, P.E. of W&K & Kelly to Port Authority of Guam dated December 6, 1996; (2) Letter from Port Authority of Guam to Roland S. Miller, P.E. dated December 12, 1996; and (3) W&K Progress Report No. 3 addressed directly to the Port (January 1997).

The cases cited by W&K had one common premise: The promisors did not have direct contact, dealings or communications with the purported third party beneficiaries. Therefore, the courts ruled that the beneficiaries in each of those cases were merely incidental beneficiaries and were not entitled to maintain suit as intended third party beneficiaries.

In this case, the Port was an intended third party beneficiary of the contract as evidenced by W&K's direct dealings with the Port on the project, inter-alia. Pursuant to the "Black-W&K Contract", W&K was to provide design and engineering calculations and related services for the project. Eventually, W&K prepared drawing "VE-1", which stood for "value engineering," dated April 4, 1996. The purpose of "Value Engineering" was to lower the cost of the project for *the Port's benefit*, not for Black's benefit. As such, Plaintiff was the intended third party beneficiary of the Black-W&K Contract.

W&K's motion for summary judgment is also futile because at the very least, there will be a profound issue of material fact with regard to Plaintiff's third party beneficiary status and the purpose of VE-1. Therefore, W&K's motion summary judgment will be denied as a matter of law. The Court should not waste its time modifying the scheduling order.

V.  **CONCLUSION**

Lack of diligence and severe prejudice prevent the modification of the scheduling order at this late date. The Scheduling Order controls this case, and its deadlines cannot be disregarded. W&K's underlying motion for summary judgment is also without merit and a waste of this Court's resources. W&K's Motion to Modify the Scheduling Order should be denied.

DATED: Hagåtña, Guam, September 23, 2005.

CARLSMITH BALL LLP

/s/ DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff

## DECLARATION OF SERVICE

I, Joseph C. Razzano, hereby declare under penalty of perjury of the laws of the United States, that on September 23, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S OPPOSITION TO DEFENDANT WINZLER & KELLY CONSULTING ENGINEER'S MOTION TO MODIFY SCHEDULING ORDER** upon Defendants' Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Klemm Blair Sterling & Johnson, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and

>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 23rd day of September 2005 at Hagåtña, Guam.

_____
JOSEPH C. RAZZANO