LAW OFFICES
**TARPLEY & MORONI, LLP**
A Law Firm including a Professional Corporation
Bank of Hawaii Building
134 West Soledad Avenue, Ste 402
Hagåtña, Guam 96910
Telephone: (671) 472-1539
Fax: (671) 472-4526

7ZP6
Attorney *for* Defendant Engineering, Management
& Planning Services Corporation

FILED
DISTRICT COURT OF GUAM
OCT 11 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS, <br><br> Plaintiff, <br><br> v. <br><br> BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT, & PLANNING SERVICES CORPORATION, <br><br> Defendants. | CIVIL CASE NO. CV03-00009 <br><br><br><br><br> **EMPSCO'S TRIAL BRIEF** |

Pursuant to Local Rule 16.7(b), Defendant Engineering, Management & Planning Services Corporation ("EMPSCO") hereby submits its trial brief.

**FACTUAL CONTENTIONS**

1. The Foxtrot F-1 docking facility at Apra Harbor was operational at the time of the 8.1 magnitude earthquake in August of 1993 and the resulting damage from this event was significant. Preparation of contract documents for repair of the damage sustained by the facility pier was awarded to EMPSCO Engineering Consultants by PAG in late 1994. PAG approved contract documents

prepared by EMPSCO for bid and local contractors were required to submit their proposals on January 26, 1996. The lowest bidder was Black Construction Company, however, Black's bid for the work as described in the plans and specifications exceeded PAG's budget. In order to proceed with the project, Black submitted an alternate design that would reduce their bid, a design by Winzler & Kelly Consulting Engineers. This alternate design for repair was identified as Drawing Sheet VE-1. The alternate design was prepared by Bruce Swanney of Winzler & Kelly, who is a registered structural engineer in Guam, and his professional engineering seal appears on that drawing dated April 4, 1996.

2. EMPSCO's contract with PAG includes several points of importance.

    a. EMPSCO's work consisted of several objectives. The first was to design a repair to the structural earthquake damages to the berthing and mooring piers at the wharf. EMPSCO's design was to replace deteriorated sections of the steel piles and to re-fortify the piers with an encapsulation of the piers with reinforcing concrete. The second objective was to replace the existing fendering system to accommodate the berthing of 150,000 deadweight ton vessels, and to design a full replacement for dolphin H. Dolphin H and these fendering systems are not the subject of this lawsuit. The third objective was to design a cathodic protection system for the wharf, but this

work was eventually deleted by PAG, and is not the subject of this lawsuit either.

b.  EMPSCO's original proposal to the Port was valued at $424,600, which included a detailed structural analysis for the project. However PAG decided that a structural analysis was unnecessary, and EMPSCO's scope of work was reduced to a value of $160,000.

c.  Article 17 of EMPSCO's contract contemplated EMPSCO performing construction management services to supervise Black's construction; however this too was deleted from EMPSCO's scope of work. The inclusion of this clause in the contract was the mutual mistake of the parties. The construction manager who actually supervised Black's construction was N.C. Macario under a separate contract with PAG.

d.  Article 2 of the contract called upon EMPSCO to perform and complete its services on or before March 8, 1996; time being "of the essence concerning all provisions of this Agreement" (Article 16.c).

e.  Article 18 provides that ownership of all the work, drawings, specifications and designs by EMPSCO belongs to PAG, who could "use them in any way whatsoever and make modifications thereto." This clause goes on to say "[i]f the Port has another Consultant to modify or change the plans, etc.,

then Consultants' name on such plans, designs, specifications and work shall be deleted on the plans, designs, specifications, etc."

    f.    EMPSCO's professional responsibility was warranted only for the professional and technical accuracy of its own work, not that of other design consultants.

3. The alternate repair design of Winzler & Kelly involved removing approximately fifteen feet of the upper portion of each of the existing steel pipe piles under the deck of the mooring and breasting dolphins. A 22-inch diameter replacement was then spliced to the remaining pile section, which is connected to the underside of the dolphin deck with a 1-inch thick flange plate, welded to the new section of pipe pile. The flange was, in turn, connected to the underside of the dolphin using 8-3/4 inch diameter grade 304 stainless steel bolts, imbedded epoxy. This is an entirely different design than EMPSCO's method of repair, deleting the concrete encapsulation altogether. Nevertheless the methodology of this type of repair is a recognized alternative method of repairing damaged piers. If this method is designed and constructed professionally, it would meet the same construction repair standards as EMPSCO's method.

4. EMPSCO was not hired to perform a technical engineering review of Winzler & Kelly's alternative repair design, nor was EMPSCO asked or paid to run any structural or seismic calculations on the Winzler & Kelly design. A technical review of an alternative design is outside the scope of EMPSCO's contract with PAG.

S.J. Gargrave Syndicate At Lloyds v. Black Construction
Corporation, et. al., CV03-00009

**Page 4 of 10**

Case 1:03-cv-00009   Document 256   Filed 10/11/2005   Page 4 of 10

5. On October 13, 2001, a second earthquake again damaged the facility. A post-earthquake survey of the mooring and breasting dolphins revealed that the epoxy securing the stainless steel bolts embedded in the underside of the dolphin had failed. It was noted that in a high percentage of the total number of bolts, the epoxy had failed to harden or in some cases was absent. This bolt failure is the subject of this lawsuit.

6. Plaintiff insured PAG for typhoon damage and in this lawsuit has brought its claims-in-subrogation against the named Defendants, alleging that the damages to the pier following the second earthquake resulted from either a poor repair design, or poor construction by Black, or both. *See Plaintiff's First Amended Complaint.*

**LEGAL BRIEF**

I. **ISSUES OF LAW**

1. **Only Plaintiff's contract claim remains against EMPSCO.**

Plaintiff originally brought three claims against EMPSCO: Negligent Property Damage, Breach of Contract, and Breach of Warranty of Workmanlike Performance.

By virtue of this Court's ruling dated April 7, 2005 on various summary judgment motions, Plaintiff's claims for Negligent Property Damage and Breach of Warranty were dismissed against all Defendants.

Plaintiff argues in its trial brief that it still has claims in "contract and tort" against EMPSCO (Plaintiff's Trial Brief, p.6). This is not correct. As this Court has previously recognized, although Plaintiff's breach of contract action sounds

in tort, EMPSCO's obligations with the Port Authority of Guam arise in contract and are governed by contract law.

2. **EMPSCO had no contractual obligation to perform construction management services.**

Plaintiff's complaint did not specify what contractual terms EMPSCO allegedly breached. Discovery has revealed, however, that Plaintiff asserts that EMPSCO had construction management obligations by virtue of ¶ 17 of its subcontract. The evidence at trial will show that while PAG and EMPSCO initially contemplated EMPSCO being the Construction Manager on the project, this work was eventually deleted from EMPSCO's contract. PAG separately contracted construction management services with N.C. Macario, who is not a party to this lawsuit. EMPSCO was not paid for construction management services. Through mutual mistake and oversight PAG and EMPSCO forgot to remove the construction management provisions in its written contract form. Under Guam law this provision of its contract must be disregarded. 18 GCA §87106 provides:

> **WRITING, WHEN DISREGARDED.** When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded.

3. **EMPSCO had no contractual obligation to perform a technical engineering review of Winzler & Kelly's repair design, signed and sealed by Winzler & Kelly's structural engineer.**

EMPSCO's contract only warranted EMPSCO's design, not designs by other structural engineers. Nevertheless, Plaintiff's

Sixth Cause of Action, allegation 31, alleges: "EMPSCO breached its contract with the Port Authority of Guam...by approving improper and negligent changes to the project".

It is uncontested that EMPSCO was not the designer of the repair method used for the repair of the pier pilings, which is the subject matter of this lawsuit. Bruce Swanney, P.E. of Winzler & Kelly was the designer. EMPSCO was neither asked, paid, or obligated to perform a technical engineering review of VE-1. Nor was EMPSCO asked, paid, or obligated to perform a technical engineering review of Black's submittal to substitute "Anchor-It Epoxy Systems" for "Redi-Chem Anchors". Thus there could be no breach of contract by EMPSCO for not performing such technical reviews. All EMPSCO provided was a submittal compliance review as an accommodation to PAG for its record keeping purposes.

For this reason, EMPSCO was not the "gatekeeper" for Black's construction. When EMPSCO made a recommendation to the Construction Manager for Winzler & Kelly to submit its design calculations for filing, it was not EMPSCO's obligation to halt construction if W&K did not do so, nor would EMPSCO necessarily know it had not been done. Indeed, the project specifications provide that when EMPSCO gave approvals "as noted" to submittals, the contractor is authorized to proceed as long as the contractor takes no exception to the notations. (Specification Section 01300). The Construction Manager may have had the obligation to oversee Black's work, but the Construction Manager has not been made a party to this lawsuit.

4. **EMPSCO was not the "Engineer of Record" for the Winzler & Kelly design**.

Plaintiff repeatedly insists that EMPSCO was the "Engineer of Record" for the repair of Foxtrot F-1 Pier. This is not correct. EMPSCO never agreed to be the "Engineer of Record" and nowhere in its contract is this term referenced. Under Guam law the engineer who stamps and signs a design is responsible for that design. Plaintiff's expert, Elliott H. Boone, P.E., has acknowledged this under oath. EMPSCO's design for the repair of the dolphins was not used. As discussed above, EMPSCO contractually took responsibility only for its own design, not that of a substitute designer.

5. **Plaintiff's contractual remedies for breach of contract are limited to the reasonable cost to repair the defects, or diminution of the dolphins' value, whichever is less**.

Regarding the measure and element of damages due to a design professional's lack of skill in the preparation of plans "there are two rules as to the measure of damages which have been applied, generally depending on the character of the defect: the damages are measured by the cost of remedying the defect, (citation omitted) or the measure of damages is the difference between the value of the building as designed and built and the value it would have had if it had been properly designed and constructed (citation omitted)." 5 Am.Jur.2d Architects §32, "Measure and Elements of Damages".

This is not a claim for indemnity brought by an insurance company to recover what it paid its insured on an insurance claim. Rather, this is a subrogation claim brought by an insurer standing

in the shoes of the Port Authority of Guam to recover what claims the Port may have against the Defendants. This Court has already acknowledged the distinction between indemnity and subrogation in this Court's Decision and Order dated April 11, 2005.

Plaintiff had an affirmative duty under FRCP 26(a)(1)(C) to provide Defendants in its initial discovery disclosures any document or other material used in computing any category of damages claimed by Plaintiff. To-date Plaintiff has provided Defendants with no disclosure concerning any "diminution of value" as a basis for its claim for damages. Neither has Plaintiff provided EMPSCO with any repair cost documentation incurred by the Port in repairing the damage to dolphins resulting from EMPSCO's alleged breach of contract, other than some temporary repair performed by Smithbridge. This is one of the evidentiary problems discussed below. EMPSCO incorporates herein all of the arguments of Black Construction Company on this issue as contained in BCC's Trial Brief, which will not be repeated here.

## II. EVIDENTIARY PROBLEMS

1. EMPSCO will object to the Plaintiff's introduction of any evidence as to its claimed amount of damages which was not timely produced in discovery.

2. On October 7, 2005, Magistrate Manibusan granted EMPSCO the right to depose Plaintiff's expert, Elliott H. Boone, by October 18, with Plaintiff to pay all expenses. EMPSCO noticed the deposition for October 17. It is unknown whether Plaintiff's counsel or Mr. Boone will cooperate by attending such deposition.

If not, EMPSCO may seek an order limiting Mr. Boone's testimony at trial.

### ATTORNEY'S FEES

EMPSCO has brought its counterclaim for attorney's fees against Plaintiff, based upon Article 12 of its Contract with the Port, which reads:

> **12. Attorney's Fees:**
>
> If any legal action, suit or other proceedings is brought for the enforcement of this Agreement or because of any alleged dispute, breach or default in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and court cost incurred in the action, suit or proceeding, in addition to another remedy or relief to which it may be entitled.

Since EMPSCO is seeking fees incurred in this litigation, not before, the issue of attorney's fees should be addressed post-trial, to be taxed with costs under FRCP Rule 54(d)(2), rather than be an issue for the jury to determine. See <u>Rissman v. Rissman</u>, 229 F.3 586 (7th Cir. 2000).

Respectfully submitted this 11th day of October, 2005.

TARPLEY & MORONI, LLP

By: _____
THOMAS M. TARPLEY, JR.,
Attorney for Defendant EMPSCO