CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

**FILED**
DISTRICT COURT OF GUAM

OCT 25 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS, | CIVIL CASE NO. CV03-00009 |
| Plaintiff, | |
| vs. | **PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING ENGINEERING CALCULATIONS ON ACCOUNT OF DEFENDANT'S SPOLIATION; DECLARATION OF SERVICE** |
| BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION, | |
| Defendants. | |

Plaintiff S.J. GARGRAVES SYNDICATE AT LLOYDS (hereinafter "Plaintiff")

hereby moves this Court for an order *in limine* excluding any and all evidence, references to

evidence, testimony (expert or otherwise), or argument relating to, based upon, or derived from,

any engineering calculations pertaining to the repairs and upgrading to the F-1 Pier at Guam, using bolts set in epoxy, which work was done in 1995 and 1996. All three Defendants herein have produced copies of their files and records, pursuant to document requests properly served by Plaintiff. Copies of transmittal letters and memoranda have been produced, purporting to transmit copies of certain engineering calculations. However, in each case the engineering calculation attachment either had been removed from the transmittal, or else the attachment pertained to a **different** repair proposal which was never implemented. Furthermore, Defendant WINZLER & KELLY CONSULTING ENGINEERS (hereinafter "Winzler & Kelly") has admitted in answers to interrogatories that no calculations pertaining to the epoxied bolt design (which **was** used) were ever done by Winzler & Kelly.[1] Accordingly, it would be unfair and prejudicial to Plaintiff for any of the Defendants to come forward at the time of trial, for the first time, and produce or introduce such engineering calculations. This would amount to "playing fast and loose with the Court".[2] To protect the integrity of the judicial process[3], this sort of manipulation and games-playing should be prohibited.[4]

## I.    INTRODUCTION

Plaintiff alleges that the design of the epoxied bolt connection between the steel piles and concrete pile caps at the F-1 Pier was inadequate and insufficiently strong. This design apparently originated with Defendant BLACK CONSTRUCTION CORP. (hereinafter "Black"). Engineering drawing VE-1 depicting the design was prepared by Black's subcontractor,

---

[1] *See* Exhibit F hereto, p. 3, answer to Interrogatory No. 2 (Winzler & Kelly's Drawing VE-1 constitutes the epoxied bolt design prepared for Black Construction Corp. by Winzler & Kelly).
[2] Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council, 851 F.2d 1208, 1210 (9th Cir. 1988).
[3] Helfand v. Gerson, 105 F.3d 530, 535 (9th Cir. 1997).
[4] So long as it is made clear that the Winzler & Kelly calculations which **were** produced to Plaintiff refer to a **prior** design which was never used, Plaintiff has no objection to those calculations being introduced and referred to at trial, to show how the Defendants deceived the pier owner, the Port Authority.

Defendant Winzler & Kelly. The design, using bolts set in epoxy, was approved by Defendant EMPSCO, and was utilized by Black in constructing the repairs to the Pier.

Attached as Exhibits A through E are copies of letters and transmittal memoranda produced by the Defendants in this litigation. Exhibits C and E purport to transmit copies of engineering calculations allegedly demonstrating that the Black/Winzler & Kelly (epoxied bolt) design was appropriate and met the overall design specifications for repairs to the Pier. The transmittal from Black, Exhibit C, and the letter to Black, Exhibit E, had no attachments to them when they were produced to counsel for Plaintiff. The attachments had been removed. This spoliation of evidence by Black has damaged Plaintiff's ability to prosecute its case. Therefore, if any evidence or testimony related to or derived from this spoliated evidence is allowed to be introduced, Plaintiff will be unfairly prejudiced at trial.

This motion is necessary because most jurisdictions no longer recognize direct tort liability for negligent or intentional spoliation of evidence. This absence of tort liability, however, does not negate other remedies that are clearly within the equitable and legal powers of this Court. Because the courts[5] and many state legislatures[6] agree that spoliation of evidence is a most grievous harm which undermines the search for truth, this Court should impose appropriate penalties when it occurs.

Additionally, any evidence garnered or resulting from this spoliated evidence would be unfairly prejudicial. Having removed the attachments from Exhibit C, Black may seek

---

[5] *See* Cedars-Sinai Medical Center v. Superior Court, 18 Cal.4th 1, 10 (1998): "No one doubts that the intentional destruction of evidence should be condemned. Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action."

[6] For example, the California Legislature has recognized the seriousness of spoliation by making it a misdemeanor to willfully spoliate evidence that will be produced at trial. *See* California Penal Code section 135.

to argue at trial that in fact it did provide calculations supporting the Black/Winzler & Kelly design for the Pier repair, although it is clear from Winzler & Kelly's admissions that no such calculations were ever performed.[7] This sort of illegal manipulation of evidence, when it occurs, deserves a most severe condemnation by this Court. Any evidence based upon or derived from the transmittal of some calculations, albeit ones performed for another project and not relevant herein, should be excluded because it would be grossly prejudicial to Plaintiff.

## II.    ARGUMENT

Evidentiary exclusions are the appropriate remedies for the harm caused by spoliation of evidence. *See* Cedars-Sinai Medical Center v. Superior Court, 18 Cal.4[th] 1 (1998); Temple Community Hospital v. Superior Court, 20 Cal.4[th] 464 (1999); Coprich v. Superior Court, 80 Cal.App.4[th] 1081 (2000); Walsh v. Caidin, 232 Cal.App.3d 159, 165 (1991); *see also* Willard v. Caterpillar, Inc., 40 Cal.App.4[th] 892, 907 (1995); Puritan Insurance Co. v. Superior Court, 171 Cal.App.3d 877 (1985).    These evidentiary exclusions will apply whether the spoliation is the result of intentional, negligent, or inadvertent conduct. *See* Thor v. Boska, 38 Cal.App.3d 558 (1974); People v. Griffin, 46 Cal.3d 1011, 1022-1023 (1988); Coprich v. Superior Court, 80 Cal.App.4[th] 1081 (2000).

In the present case, Plaintiff served document requests on each of the three Defendants. Winzler & Kelly produced nothing relating in any way to calculations purporting to support its design (bolts set in epoxy) for the F-1 Pier repair. Black produced Exhibit C hereto,

---

[7] A copy of Exhibit C hereto was produced to Plaintiff by defendant EMPSCO, even though EMPSCO was neither the author nor the addressee of the document. Attached to it is a copy of irrelevant calculations performed by Winzler & Kelly to support a **prior** design proposal which was never used on Pier F-1. That (more expensive) prior design involved encapsulating the old (existing) steel piles in concrete jackets. The parties determined that this repair was cumbersome and excessively costly, and it was abandoned in favor of the epoxied bolt design.

but the attachments which said exhibit refers to were missing and have never been produced by Black.

The Pier repair design submitted by Black and prepared for it by Winzler & Kelly was only approved by the Engineer of Record, EMPSCO, on the condition that supporting engineering calculations be performed and provided to EMPSCO for review. *See* Exhibit B hereto ("5. Provide structural calculations ..."). **Something** was apparently provided by Black; *see* Exhibit C hereto, ¶ 1. However, we will never know what that was; we only know what it was **not**.[8] Without having the attachment to Exhibit C, Plaintiff cannot directly explain to the jury exactly what was sent by Black, and what it was that EMPSCO approved by Exhibit D hereto. Therefore it will be more difficult for counsel for Plaintiff to demonstrate to the jury the respective fault of Defendants Black, Winzler & Kelly, and EMPSCO. This destruction of important evidence by two of the Defendants is clearly prejudicial to Plaintiff's ability to prosecute this case. An order at trial excluding any and all evidence, references to evidence, testimony (expert or otherwise), or arguments relating to or derived from engineering calculations purporting to support the Black/Winzler & Kelly epoxied bolt design[9] is clearly warranted.

The Federal Rules of Evidence call for the exclusion of such evidence. F.R.E. 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

---

[8] Due to Winzler & Kelly's admission, we know that it was **not** a set of calculations supporting Winzler & Kelly's substitute epoxied bolt design, the one which was actually used for the Pier repair.

[9] As opposed to the concrete encapsulation design.

If the prejudicial effect of admitting evidence outweighs its probative value, the trial court should exclude the evidence. *See* People v. Cardenas, 31 Cal.3d 897, 904 (1982). A trial court may properly exclude evidence, or any reference to evidence, that was negligently or intentionally destroyed. For example, in People v. Griffin, 46 Cal.3d 1011, 1022-1023 (1988), the trial court properly suppressed important evidence relating to testing of vaginal fluid, where the evidence was non-maliciously destroyed by the prosecution after testing. Similarly, in Puritan Ins. Co. v. Superior Court, 171 Cal. App. 3d 877 (1985), the trial court properly excluded plaintiff's expert's testimony regarding his testing of evidence which was then inadvertently lost by the expert before defendant could test it.

Puritan Ins. Co., *supra*, involved a suit for indemnification by the plaintiff insurer against defendant mechanical company which had previously performed defective repairs to a dam drive shaft. The defendant requested discovery on the drive shaft but plaintiff's expert had lost this critical piece of evidence. *Id.*, at 881. The trial court excluded the Plaintiff's expert's testimony. The appellate court upheld that portion of the lower court's ruling, stating that "the party whose expert lost the evidence was properly precluded from introducing at trial expert testimony based on an examination of the lost object." *Id.*

The situation of the present case is very similar to the Puritan Ins. Co. case. Defendants Winzler & Kelly and Black either lost or destroyed crucial evidence. Because spoliation of evidence "can destroy fairness and justice" and is universally condemned by the courts and legislatures, it would be prejudicial and inequitable for the Defendants herein to benefit from their actions. This Court should properly exclude any such evidence. *See* Cedars-Sinai Medical Center, *supra*, n. 5, 18 Cal.4[th] at 20 (evidence sanction is one remedy which courts may apply).

## III. CONCLUSION

Because the probative value at this late date of any evidence of engineering calculations to support the Black/Winzler & Kelly design would be outweighed by its prejudicial effect on Plaintiff, it is respectfully requested that this Court exclude any and all testimony based thereon, derived therefrom or referring thereto.

Alternatively, the Court should issue an order that evidence of spoliation by Defendants Winzler & Kelly and Black has created an inference in favor of Plaintiff that the missing evidence would have supported Plaintiff's position that Defendants Winzler & Kelly and Black failed to perform, or to secure the performance of, engineering calculations to support the Black/Winzler & Kelly design. *See*, Cedars-Sinai Medical Center, *supra* n. 5, 18 Cal.4[th] at 20 (issue sanction is also an appropriate remedy). This Court should enter an order that Plaintiff is entitled to the benefit of a presumption that the missing calculations would support Plaintiff's case. The jury should be so instructed at the appropriate time. Evidence of spoliation has probative value to create an inference in favor of the plaintiff when the defendant has destroyed documents which it would normally retain as business records. *See, e.g.*, U.S. v. Roelof Constr. Co., 418 F.2d 1328, 1332 (9th Cir. 1969) (failure to produce records leads to presumption they would be detrimental to the interests of the non-producing party). This so-called "presumption against spoliators"[10] holds that if parties (Black and Winzler & Kelly) have been shown to have

///

///

///

---

[10]  9 Wigmore, Evidence, § 2524 (3d ed. 1940).

destroyed evidence, their opponent (Plaintiff) will get the benefit of a presumption that the evidence would have been damaging to the spoliator.

DATED: Hagåtña, Guam, October 25, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United

States, that on October 25, 2005, I caused to be served, via hand delivery, a true and correct copy

of **PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING**

**ENGINEERING CALCULATIONS ON ACCOUNT OF DEFENDANT'S SPOLIATION**

upon Defendants Counsel of record as follows:

> Robert J. O'Connor, Esq.
> Daniel J. Berman, Esq.
> Berman O'Connor Mann & Shklov
> Suite 503, Bank of Guam Building
> 111 Chalan Santo Papa
> Hagåtña, Guam 96910
>
> Thomas C. Sterling, Esq.
> Klemm Blair Sterling & Johnson, P.C.
> Suite 1008, Pacific News Building
> 238 Archbishop Flores Street
> Hagåtña, Guam 96910

and

> Thomas M. Tarpley, Esq.
> Law Offices of Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Building
> 134 West Soledad Avenue
> Hagåtña, Guam 96910

Executed this 25th day of October 2005 at Hagåtña, Guam.

DAVID LEDGER

SANFRAN1\33972\1 123206.000

**EXHIBIT A**



**EMPSCO**

ENGINEERING, MANAGEMENT & PLANNING SERVICES CORPORATION

20 MARCH 1996

TO:  **CAPT. EULOGIO C. BERMUDES**
     General Manager
     **PORT AUTHORITY OF GUAM**
     1026 Cabras Highway, Suite 201
     Piti, Guam 96925

ATTN:  **SIMEON DE LOS SANTOS**
       C.I.P. Coordinator

SUBJ:  **REPAIRS AND UPGRADING TO FOXTROT "F-1" PIER**
       Apra Harbor, Guam M.I.

REF:   (a)   PAG Fax Transmittal dated 20 March 1996

Dear Capt. Bermudes:

Upon review of reference (a) regarding BCC's proposal for the above subject project, the following comments are forwarded:

1.   BCC's recommendation to implement Proposal "B" is acceptable and meets the same standards of repair as the original design.

2.   EMPSCO recommends that PAG accept BCC revised basic contract proposal of $1,407,682 with the following conditions:

    a.   The proposed repair shall conform to the requirements of Shell Guam, Inc. as stipulated in the contract documents.

    b.   Repairs shall be done to all existing piles as indicated in the contract documents.

    c.   A unit cost per pile basis for repair should be established and agreed upon. The total number of piles in need of repairs may be adjusted and subject to an appropriate deductive change in the total contract amount.

Foxtrot "F-1" Pier
Page two (2)

3.  PAG shall designate a construction manager/representative to instruct and approve on site as to which piles are in need of replacement.

4.  All applicable submittal requirements as stipulated in the contract documents based on the original design shall be strictly adhered to and shall remain valid.

Should you need further assistance please inform our office.

Si Yuus' Maase

EMPSCO-Engineering Consultants

PETRONILO O. VILLALUZ, P.E.
Managing Engineer

**EXHIBIT B**

**EMPSCO**

**ENGINEERING, MANAGEMENT & PLANNING SERVICES CORPORATION**

ERING CONSULTANTS

22 May 1996

FILE COPY

TO:     **N.C. MACARIO ASSOCIATES**

ATTN:   **MANUELITO GOLEZ**

SUBJ:   **REPAIRS AND UPGRADING TO FOXTROT "F-1" PIER**
        Apra Harbor,                                Guam, MI.

REF:    Submittal No. 12 - Proposed Pile Repair Details; W&K Drawing Sheet VE-1
        Job No. 96424204 dated 04/04/96

Gentlemen:

Our review of Submittal No. 12 raises the following comments:

1.  The general concept outlining the proposed method of repair is hereby approved in concept.

2.  Specifications requirements for welds should clearly be indicated.

3.  Establish and Identify lengths of new pile sections.

4.  Provide statements by way of describing on orderly progression of the work involve.

5.  Provide structural calculations verifying that proposed repair meets design requirements.

6.  In reference to detail No. 3 of Sheet VE-1; there is concern regarding the condition of the base plate attachment to the existing concrete pile cap. It is assumed that the a portion of the existing corroded steel pile is embedded into the concrete pile cap. How does the contractor intend to treat this existing condition prior to installing the new base plate.

This submittal is hereby forwarded with our action recommending "<u>approval as noted</u>".

Yours truly,

**EMPSCO-Engineering Consultants**

**BUTCH ARCE**

Received by:
Date: _____
N.C. Macario & Assoc., Inc.

Suite 245 Julale Shopping Center, Agana Guam 96910 · P.O. Box 21794, GMF, Guam 96921
Tel (671) 477-5716/4716 · Telefax (671) 472-2136
Saipan Office: P.O. Box 144 Pearl River, Gualo Rai, Saipan, MP 96950
Tel. (670) 234-9213

**EXHIBIT C**



May 24, 1996                                                    NCM-04

NC Macario and Associates, Inc.
Suite 201 Boon Bldg., 1270 North Marine Drive
Tamuning, Guam, 96911
Tel 646-0901 Fax 464-0991


Attention    :    Nemencio C. Macario

Subject      :    Repairs and Upgrading to Foxtrot "F-1" Pier, Apra Harbor

Gentlemen:

This is in reference to Submittal no. 12 and 12c Existing Steel Pile Repairs. Attached herewith
six (6) sets of additional information for the materials required for pile repairs as follows;

1.   Structural calculation data for piles from Winzler and Kelly.

2.   Additional information regarding the gap of the splice ring and the piles to be joined
     should not exceed 1/8" and to provide 3/8" fillet weld all around top and bottom of
     the splice.

3.   Certificate of Compliance for the epoxy coating for the 15'-0" long piles from
     Cal-Steel Coating Company. Color of the epoxy coating as required by the contract
     specification as follows;

        a. Primer            -      Formula 150  -Green
        b. Intermediate Coat -      Formula 152  -White
        c. Top Coat          -      Formula 156  - Red

Respectfully Yours,
**Black Construction Corporation**


Rod F. Bismonte
QC Engineer

DEFENDANT'S DEPOSITION
EXHIBIT

Received by:
Date:
N.C. Macario & Assoc., Inc.

Contractors   PO Box 24667, GMF Guam 96921   Telephone (671) 646-4861–5   Fax (671) 646-9086   Telex 7216110

**EXHIBIT D**

**EMPSCO-ENGINEERING CONSULTANTS**
P.O. BOX 21794 GMF, GUAM 96921
TEL(671)477–4716/5716  FAX(671)472–2136

| TO: | N.C. MACARIO ASSOCIATES | |
|---|---|---|
| ATTN: | MANUELITO GOLEZ | |
| DATE: | 28 MAY 1996 | |
| FROM: | BUTCH ARCE | |
| SUBJECT: | FOXTROT "F-1" PIER | |
| NO. OF PAGE (S)    1 | FAX NO.: | (671) 646–0991 |

Ref:    Submittal # 12 and 12c  –  SUPPLEMENTAL INFO.
N.C. Macario transmittal letter dated 28 May 1996.

## MESSAGE:

Review of above submittal is forwarded herewith with our action
recommending approval as noted.

Contractor shall provide other related documents pertinent
to this submittal as required under the contract documents.



DEFENDANT'S DEPOSITION EXHIBIT

**EXHIBIT E**



# N.C. MACARIO & ASSOCIATES, INC.

Engineering • Planning • Construction Management
Suite 201 Boon Building • 1270 North Marine Drive • Tamuning, Guam 96911 • Tel. (671) 646-0901 • Fax (671) 646-0991

## LETTER OF TRANSMITTAL

| | | | |
|---|---|---|---|
| TO: | BLACK CONSTRUCTION | DATE: | 29-May-96 |
| | | JOB NO. | 94-63 |
| | | RE: | FOXTROT 'F-1' PIER |
| ATTN: | MR. ROD BISMONTE | | |

GENTLEMEN: WE ARE SENDING YOU

( ) HEREWITH      ( ) DELIVERED BY HAND      ( ) UNDER SEPARATE COVER
VIA:    PICK-UP    THE FOLLOWING ITEMS:

( ) PLANS    ( ) PRINTS    ( ) SHOP DRAWINGS    ( ) DISKETTES    ( ) SAMPLES
( ) SPECIFICATIONS    ( ) ESTIMATES    ( ) BASIS OF DESIGN    ( ) COPY OF LETTER    (X) OTHERS

| COPIES | DATE | DRAWING NO. | D E S C R I P T I O N |
|---|---|---|---|
| 3 | 29-May | | Supplemental Info for Sub #12 & 12c. |
| | | | - Structural Calculations from Winzler & Kelly |
| | | | - Addt'l info regarding splice ring |
| | | | - Certificate of compliance for epoxy coating |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | DEFENDANT'S DEPOSITION EXHIBIT |
| | | | |
| | | | |
| | | | |
| | | | |

## THESE ARE TRANSMITTED AS INDICATED BELOW

( ) FOR YOUR USE    ( ) FOR REVIEW & APPROVAL    (X) APPROVED AS NOTED
( ) AS REQUESTED    ( ) APPROVED FOR CONSTRUCTION    ( ) RETURNED FOR CORRECTIONS
( ) FOR YOUR FILES    ( ) RETURNED AFTER LOAN TO US    ( ) RECOMMEND APPROVAL FOR PAYMENT

REMARKS:

- Please note EMPSCO's comments regarding this submittal
Submit all items specified by EMPSCO.

Signed: _____

Copy To:   FILE

Received by: _____

Date _____

*IF ENCLOSURES ARE NOT AS NOTED KINDLY NOTIFY US AT ONCE.*

**EXHIBIT F**

1 | BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
2 | ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
3 | 111 Chalan Santo Papa
Hagåtña, Guam 96910
4 | Telephone: (671) 477-2778
Facsimile: (671) 499-4366
5 |
Attorneys for Defendant
6 | Winzler & Kelly Consulting Engineers

7

8

9

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF GUAM**

10 | S.J. GARGRAVE SYNDICATE AT LLOYDS, )  CIVIL CASE NO.: CIV03-00009

11 | Plaintiff, )

12 | v. )  ANSWER OF DEFENDANT
WINZLER & KELLY
13 | BLACK CONSTRUCTION CORPORATION, )  CONSULTING ENGINEERS TO
WINZLER & KELLY CONSULTING  PLAINTIFF S.J. GARGRAVE
14 | ENGINEERS and ENGINEERING, )  SYNDICATE AT LLOYDS' FIRST
MANAGEMENT & PLANNING SERVICES  SET OF INTERROGATORIES
15 | CORPORATION, )

16 | Defendants. )

17

18

19 | ANSWER OF DEFENDANT WINZLER & KELLY CONSULTING ENGINEERS

20

21 | COMES NOW the Defendant, WINZLER & KELLY CONSULTANT ENGINEERS,

22 | ("Defendant" or "W&K"), and its attorney of record Berman O'Connor Mann & Shklov to

23 | answer and object to the Plaintiff's First Set of Interrogatories.

24

25 | GENERAL OBJECTIONS

26

27 | 1. To the extent that any Interrogatory may be construed as calling for information that

28 | is subject to a claim of privilege including, but not limited to, the attorney-client privilege, the

work-product doctrine or any constitutional, statutory or regulatory proscription against

-1-

1  disclosure, Defendant hereby asserts that doctrine or privilege and objects to the Interrogatory
2  on that basis.

3

4      2. Defendant objects to the Definitions and Instructions to the extent that they seek to
5  impose obligations which exceed or differ from those imposed by the Federal Rules of Civil
6  Procedure and to the extent the Definitions and Instructions contain interrogatories. Defendant
7  also objects to the Definitions set forth in the interrogatories to the extent they seek to give
8  words meanings other than their ordinary meanings and on the grounds that they exceed or alter
9  the requirements of the Federal Rules of Civil Procedure and Local Rules.

10

11     3. Defendant's responses herein are not intended to waive or prejudice any objection
12  Defendant might assert as to the admissibility, relevancy or discoverability of any response or
13  document or category of responses or documents.

14

15     4. Defendant states that its investigation is ongoing in this matter and it does not hereby
16  waive its right to supplement these responses should additional information become available;
17  and further, that by making an objection to an interrogatory, Defendant does not infer that it has
18  information responsive to such interrogatory or more information than that provided.

19

20                                   **INTERROGATORIES**

21

22     **Interrogatory No. 1**: In addition to Bruce Swanney, provide the name, address, phone
23  number and current employer of each person who had involvement in, oversight of, or
24  responsibility for VE-1.

25

26     **Response to Interrogatory No. 1**: No one else was involved with the design depicted
27  by VE-1.

28

                                            -2-

1      **Interrogatory No. 2**: Did you perform any engineering calculations in conjunction with
2  preparing VE-1?

3

4      **Response to Interrogatory No. 2**: No.

5

6      **Interrogatory No. 3**: If you answered yes to interrogatory No. 2, describe in detail, or
7  attach hereto as an exhibit to your answer, any and all engineering calculations you performed
8  in conjunction with VE-1.

9

10      **Response to Interrogatory No. 3**: N/A.

11

12      **Interrogatory No. 4**: If you answered no to interrogatory No.2, state why no
13  calculations were performed in conjunction with VE-1.

14

15      **Response to Interrogatory No. 4**: VE-1 was prepared for Black Construction
16  Corporation ("Black") as a proposal to be submitted for review by Port Authority of Guam
17  ("PAG") and the engineer of record for the project, Engineering, Management & Planning
18  Services Corporation ("EMPSCO"). Winzler & Kelly Consulting Engineers ("W&K") did not
19  have knowledge of EMPSCO's design criteria or the results from EMPSCO's structural
20  analyses required to perform such calculations and thus relied on EMPSCO's knowledge of
21  their design to confirm that VE-1 met the structural requirements of the project. In preparing
22  VE-1, W&K assumed that the tension forces in the piles were 10,000 lbs or less, since this is
23  maximum allowable pile uplift force stated in the soil report. The design of a pile-to-deck
24  connection for this relatively small tension force is simple and straightforward for an
25  experienced structural engineer and does not require calculations. The connection designed by
26  W&K and depicted in VE-1 has considerably more tension capacity than the 10,000 lbs
27  assumed for its design. By submitting VE-1 as a proposed design, W&K expected review by
28  PAG and EMPSCO would identify if the connection required greater overcapacity or ductility.

-3-

1  W&K never received any such information and VE-1 was approved for construction by PAG
2  and EMPSCO without anyone informing W&K it had been accepted or approved.

3

4      **Interrogatory No. 5**: Prior to preparing VE-1 on April 4, 1996, did you refer to
5  engineering calculations that related to the original pile-to-deck-attachment system, that being
6  re-bars embedded in the concrete deck above (detail 2A-2, Sheet-16 on EMPSCO drawing
7  dated January 10, 1996), that was eventually deleted from the contract and replaced by the
8  attachment system shown in VE-1?

9

10      **Response to Interrogatory No. 5**: None were given to W&K before VE-1 was drawn.

11

12      **Interrogatory No. 6(a)**: If you answered yes to interrogatory No. 5, state the reason(s)
13  why you referred to said calculations and describe the calculations.

14

15      **Response to Interrogatory No. 6(a)**: N/A.

16

17      **Interrogatory No. 6(b)**: If you answered no to interrogatory No. 5, state the reason(s)
18  why you did not refer to said calculations.

19

20      **Response to Interrogatory No. 6(b)**: See response to Interrogatory No. 4.

21

22      **Interrogatory No. 7**: Did you refer to any building codes and seismic standards in
23  conjunction with preparing VE-1?

24

25      **Response to Interrogatory No. 7**: No.

26

27      **Interrogatory No. 8**: If you answered yes to interrogatory No. 7, described in detail, or
28  attach hereto as an exhibit to your answer, any and all building codes and seismic requirements
    you referred to.

-4-

1      **Response to Interrogatory No. 8**: N/A

2

3        **Interrogatory No. 9**: If you answered no to interrogatory No.7, state why you did not

4 consider building codes or seismic standards in preparing VE-1?

5

6        **Response to Interrogatory No. 9**: See response to Interrogatory No. 4. The design

7 proposal prepared for Black did not require reference to building codes or seismic standards.

8 All that was designed was a pile splice and pile-to-deck connection. A proposal for the design

9 of these elements could be designed by simply referring to the information provided on the

10 drawings prepared by the design engineer-of-record, EMPSCO, and the soils report referenced

11 by said drawings. The proposed design was then submitted to PAG and EMPSCO for review

12 and approval that the proposed design met the codes and standards on which the original design

13 was based.

14

15        **Interrogatory No. 10**: With reference to "Notes, 2.," as shown on VE-1,

16 explain/describe how the recommended "Stainless Steel Red Head "Redi-Chem" by Phillips

17 Drill Co., Catalog No. CB3495," differed, if at all, from the epoxy bolt system Black used.

18

19        **Response to Interrogatory No. 10**: The Redi-Chem anchors consist of a glass capsule

20 filled with chemical adhesive and a special threaded stainless steel rod. The glass capsule is to

21 be inserted into a properly drilled and cleaned hole and the stainless steel rod is connected to an

22 impact drill and used to break the capsule and mix the chemical adhesive. The advantages of

23 this system are 1) the capsule displaces all the air in the hole, eliminating voids and ensuring

24 that the hole is completely filled with adhesive, 2) the proportions of the chemicals used in the

25 adhesive are measured in a controlled, factory environment, 3) the broken glass from the

26 capsule serves as an aggregate and strengthens the adhesive system, 4) the adhesive properties

27 are less sensitive to the cleanliness of the drilled hole, due to the mixing action of the stainless

28 steel rod and impact drill.

-5-

1      The epoxy system used by BCC is a bulk epoxy adhesive with off-the-shelf threaded
2  rod. The epoxy and hardener are field proportioned and mixed and then inserted into a drilled
3  hole using a caulk gun or similar device. The disadvantages of this system are 1) the
4  proportioning and mixing of the epoxy is done in the field with less control on temperature,
5  humidity and accuracy, 2) the time between proportioning, mixing and installation must be
6  closely monitored and epoxy that has exceeded the time limits discarded, 3) air can be
7  entrapped in the drilled hole during installation of the epoxy unless special precautions are
8  observed, 4) the adhesive properties are highly dependent on the cleanliness of the drilled hole.
9
10      The epoxy used by Black had a lower tension capacity than the product W&K specified.
11
12
13      Dated this 27th day of January, 2004.
14
15
16  Fred Smith
17  Winzler & Kelly Consulting Engineers
18
19
20  2003-08-040120-PL-Response-1stSetInterr.doc
21
22
23
24
25
26
27
28

-6-