BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 477-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers

**FILED**
DISTRICT COURT OF GUAM

OCT 26 2005

MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S,<br><br>    Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP.,<br><br>    Defendants. | Civ. No. CIV 03-0009<br><br>**WINZLER & KELLY'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE REFERENCE TO DAMAGE BY SHIPS** [1]<br><br>Trial: November 8, 2005 |

The Syndicate's motion in limine is based on at least three falsehoods:

**Falsehood No. 1:** That Defendants have recently changed their position regarding the cause of damages to the dolphins.

**Falsehood No. 2:** That Judge Tashima's order finding no admiralty jurisdiction resulted from his being misled by Defendants.

**Falsehood No. 3:** That the dismissal of Plaintiff's admiralty claims resulted from Judge Tashima's finding of no admiralty jurisdiction.

---

[1] Co-Defendants Black and EMPSCO also join in this Opposition.

S.J. Gargrave Syndicate at Lloyds v. Winzler & Kelly Consulting Engineers
Civil Case No. CIV03-00009
Winzler & Kelly's Opposition to Plaintiff's Motion in Limine to Preclude Reference to
Damage by Ships; Certificate of Service

Each of these falsehoods is easily refuted. Defendants have taken the position that the dolphins were damaged by ships since the inception of this lawsuit in March 2003, and this was made abundantly clear to Plaintiffs at least as early as the Joselito Gutierrez deposition of October 2003, not to mention the expert disclosures of July 2004. Judge Tashima was likewise fully aware of Defendants' position on the cause of damages, as well as Plaintiff's arguments about the jurisdictional implications of that position, when he decided in March 2005 that there is no admiralty jurisdiction in this case. Moreover, the former admiralty claims in this case were dismissed on independent grounds, without reference to Judge Tashima's ruling on jurisdiction. There is therefore no basis whatsoever for the exclusion of evidence about damage caused by ships.

### **Defendants Have Consistently Maintained That Ships Caused the Damage.**

The Syndicate claims that Defendants' theory -- that the damage to the dolphins at F-1 Pier was caused by berthing and mooring forces of ships, and not by the 2001 earthquake -- is something altogether new and different in this litigation. See, e.g., Plaintiff's Motion at 6 ("Defendants have telegraphed the *new argument* they are *now* planning to make, that damage to the F-1 Pier was caused by ship strikes.") (emphasis added). The Syndicate even cites a particular date since which Defendants supposedly began to assert this "new argument:"

> Defendants should be estopped from completely reversing course and *changing the position they have espoused* (to Plaintiff's detriment) *throughout this litigation, at least up until March of 2005.*

Plaintiff's Motion at 8 (emphasis added).

It is clear from the record, however -- even from Plaintiff's own motion -- that Defendants have taken that position since long before March 2005, indeed for as long as they have taken any position at all. Exhibits A, B and C to Plaintiff's Motion, the expert disclosures in which three

2

S.J. Gargrave Syndicate at Lloyds v. Winzler & Kelly Consulting Engineers
Civil Case No. CIV03-00009
Winzler & Kelly's Opposition to Plaintiff's Motion in Limine to Preclude Reference to
Damage by Ships; Certificate of Service

different experts agree that the damage to the piles was caused by ships' forces,[2] were all filed on July 15 or 16, 2004. Exhibit E, the Frank Dennis Deposition, was taken less than a week later, on July 21, 2004. And Exhibit D, the Joselito Gutierrez Deposition, where Defendants are said to have "telegraphed" the "new argument" that they are "now" planning to raise, was earlier still -- October 17, 2003.

It was, therefore, no later than July 2004, as clear to the Syndicate as it is now that Defendants plan to argue that the damage to the dolphins was caused by ships. Indeed, the position that Plaintiff now claims was created after March 2005 is the same position of which the Syndicate stated, one month earlier in *February* 2005, "Defendants' attorneys have certainly asserted the position, long and loud." Plaintiff's Reply Brief In Response to Order To Show Cause Re: Subject Matter Jurisdiction (February 11, 2005) at 10, fn 35 (citing as an example the deposition of Joselito Gutierrez) (Exhibit 2 hereto).

### Defendants' Theory Long Predates Judge Tashima's Decision on Jurisdiction.

What is significant is not only the length of time that Defendants have maintained their position on the cause of damages, but also the fact that they have maintained it since *before* Judge Tashima issued his Memorandum Order Re Jurisdiction, in which he found no admiralty jurisdiction in this case. That Order was issued on March 24, 2005, the date since which the Syndicate asserts Defendants have changed course. In fact, it is evident from the above discussion that Defendants

---

[2] For example, Winzler & Kelly's expert witness states, "It is my opinion that the damage to the dolphin plies and connection was due to excessive berthing loads and not by any seismic forces." See Plaintiff's Exhibit A.

S.J. Gargrave Syndicate at Lloyds v. Winzler & Kelly Consulting Engineers
Civil Case No. CIV03-00009
Winzler & Kelly's Opposition to Plaintiff's Motion in Limine to Preclude Reference to
Damage by Ships; Certificate of Service

maintained this position for months before the issue of maritime jurisdiction was ever raised, let alone ruled on, by Judge Tashima.[3]

In other words, while Plaintiff repeatedly claims that Defendants have made "a 180° turn," the only thing that has made such a turn is the Syndicate's concept of time. The Syndicate's Motion in Limine is arranged so as to create the entirely false impression that the Defendants' ship theory, as quoted in Section III of the motion, was developed and asserted subsequent to Judge Tashima's Order, discussed in Section I, when in fact it long predates that order. Indeed, Plaintiff is not content with a mere misleading arrangement of its arguments, but actively misrepresents the sequence of events:

> The Defendants should be estopped from making such a fundamental change in their legal position, *after* the Court based its rulings (striking Plaintiff's maritime claims) on the contrary position the Defendants were then espousing.

Plaintiff's Motion at 2 (emphasis added).

> It . . . would be . . . grossly unfair to Plaintiff to *first* lose its maritime causes of action . . . and *then* have the Defendants be able to about-face and defend against Plaintiff's earthquake-damage claims on the basis that all the damage to the F-1 Pier was actually caused by ships!

Plaintiff's Motion at 9. These and all such statements and implications in the Motion in Limine are manifestly false, and the Syndicate is indeed a fine bunch to be accusing anyone else of "playing fast and loose with the court."

---

[3] The jurisdictional issue was raised *sua sponte* by Judge Tashima at a motion hearing on December 3, 2004, at which he issued an order to show cause why the matter should not be dismissed for lack of subject matter jurisdiction. Plaintiffs briefed the issue on December 30, 2004, Defendants responded on January 28, 2005, and Plaintiffs filed a reply on February 11, 2005. Judge Tashima issued his order on March 24, 2005.

4

S.J. Gargrave Syndicate at Lloyds v. Winzler & Kelly Consulting Engineers
Civil Case No. CIV03-00009
Winzler & Kelly's Opposition to Plaintiff's Motion in Limine to Preclude Reference to
Damage by Ships; Certificate of Service

### Plaintiff's Arguments Regarding Jurisdiction Were Before Judge Tashima.

Not only have Defendants maintained their position since before Judge Tashima ruled, he himself was made aware, before he ruled, of the dispute regarding the cause of the damages, and of Plaintiff's theory that admiralty jurisdiction exists if Defendants claim that damage was caused by ships, even though Plaintiff itself claimed the contrary. By finding no admiralty jurisdiction, he rejected this theory.

The Syndicate claims that Judge Tashima was somehow deceived, or kept in the dark, by Defendants, about their position that ships caused the damage:

> Had Defendants argued to Judge Tashima in 2004 (as they are arguing now) that any of the damage to F-1 Pier was caused by a ship banging into it, there would have been clear admiralty jurisdiction over such claims ("caused by a vessel ...") pursuant to 46 U.S.C.§ 740. Judge Tashima ruled that such jurisdiction was not present, relying on the Defendants' oral and written statements that no such ships were involved in any way.

Plaintiff's Motion at 3. The fact, however, is that the Syndicate's own brief on jurisdiction, in response to the Order to Show Cause, brought the matter directly to Judge Tashima's attention:

> To escape liability for their defective work, the Defendants have hired a series of so-called experts to give the opinion that it was not the second earthquake which caused the obvious damage to the dolphins, but rather a series of (unidentified) ships bumping forcefully against them.

Plaintiff's Brief In Response to Order to Show Cause Re: Subject Matter Jurisdiction (December 30, 2004) at 16 (Exhibit 1 hereto). Plaintiff also made the same argument as it makes now regarding the supposed effect of 46 U.S.C.§ 740:

> If the unsubstantiated assertion of Defendants' experts proves true, and the damage was actually caused by the docking of tankers, then Plaintiff still has the right to recover against the Defendants for the repairs which were inadequately strong. This Court clearly has jurisdiction of such claims, pursuant to 46 U.S.C.§ 740.

S.J. Gargrave Syndicate at Lloyds v. Winzler & Kelly Consulting Engineers
Civil Case No. CIV03-00009
Winzler & Kelly's Opposition to Plaintiff's Motion in Limine to Preclude Reference to
Damage by Ships; Certificate of Service

Id. at 17. Thus Judge Tashima was aware of the issue before Defendant even submitted their joint brief on jurisdiction.

In that brief, moreover, Defendants did *not* assert, as a factual matter, that ships did not cause the damage. Defendants' plain meaning, in the context of the jurisdictional argument, is that *Plaintiffs has not alleged* that ships had caused the damage, and that Plaintiffs had therefore not stated a claim arising under admiralty jurisdiction. See Joint Brief, Plaintiff's Exhibit F, at 16 ("*Gargrave does not allege*, nor can it if it intends to continue pursuing these defendants, that the damage to F1 pier was caused by a vessel striking it[.]") (emphasis added). It is, after all, the complaint, not the answer, that determines whether a claim is stated, or whether jurisdiction exists. As for the Defendants' own position on the actual facts of the matter, they stated it forthrightly: "[D]efendants contend, as a defense, that the dock damage in this case occurred due to berthing incidents rather than faulty design or construction[.]" Id. at 16. Plaintiffs in turn discussed the issue further in its reply brief on pages 9-10. See Exhibit 2. Judge Tashima therefore had the issue directly before him, and despite the Syndicate's best efforts, he still found no admiralty jurisdiction.

### The Maritime Warranty Claims Were Dismissed On Independent Grounds.

The Syndicate claims that it has been prejudiced by its maritime claims being dismissed as a supposed consequence of Judge Tashima's finding of no maritime jurisdiction, which itself was a supposed consequence of Defendants' hiding the ball. See Plaintiff's Motion at 8 ("The entire complexion of the lawsuit changed, *based upon the Court's Memorandum Order. Following Judge Tashima's ruling*, Judge Jones, on April 8, 2005, struck Plaintiff's Seventh, Eighth and Ninth admiralty-based causes of action against the Defendants[.]")(emphasis added, footnote omitted); id. at 9 (claiming that Plaintiff "los[t] its maritime causes of action *based on* the Defendants' admission that no ship-caused damage is involved") (emphasis added).

S.J. Gargrave Syndicate at Lloyds v. Winzler & Kelly Consulting Engineers
Civil Case No. CIV03-00009
Winzler & Kelly's Opposition to Plaintiff's Motion in Limine to Preclude Reference to
Damage by Ships; Certificate of Service

The latter part of this contention has already been disposed of, but even the former part has no merit. Plaintiff's maritime claims for breach of the <u>Ryan</u> warranty were dismissed by Judge Jones on independent grounds, separate and distinct from Judge Tashima's previous finding of no admiralty jurisdiction. Indeed, the motions to dismiss the <u>Ryan</u> claims were made before Judge Tashima had ever even raised the jurisdictional issue, and the motions themselves did not raise it. Instead, Defendants argued, and the Court later agreed and held, that this case was an improper one for a <u>Ryan</u> indemnity claim because it did not involve "seamen, a shipowner, or a request for any type of indemnity," April 8 Order at 15, and therefore lacked the unique circumstances that prompted the <u>Ryan</u> court to create an unusual cause of action for indemnity.

It is, therefore, altogether misleading for Plaintiff now to assert that its <u>Ryan</u> claims were dismissed because of Defendants' claim that the case did not involve "a ship." The significance of the lack of ship is that, without one, the shipowner's duty of seaworthiness, and with it the rationale of <u>Ryan</u>, did not arise. This is an entirely different issue from whether ships did or did not run into the dolphins, or whether admiralty jurisdiction might exist as a general proposition. In other words, even if Judge Tashima had found admiralty jurisdiction to exist in the abstract, it would still not have saved Plaintiff's <u>Ryan</u> claim, any more than his finding that diversity jurisdiction exists was able to save Plaintiff's negligence claim.

**Plaintiff Never Sought Till Now To Reintroduce Admiralty Issues Into The Case.**

If Plaintiff really believed it had been unjustly prejudiced in some way in the disposition of the maritime jurisdiction issue, it could have tried to rectify the matter long before now, but it has not. On April 22, 2005, for example, Plaintiff moved to amend the complaint to add new claims, but its proposed amended complaint added no new allegations that would have supported admiralty jurisdiction based on ships striking the docks. Plaintiff could have sought to sue shipowners for the

7

S.J. Gargrave Syndicate at Lloyds v. Winzler & Kelly Consulting Engineers
Civil Case No. CIV03-00009
Winzler & Kelly's Opposition to Plaintiff's Motion in Limine to Preclude Reference to
Damage by Ships; Certificate of Service

damage, but did not. It could have sought to assert claims against the existing Defendants for failing to make the dolphins strong enough to withstand ships' berthing forces, but it did not. Instead, Plaintiff stuck to its original theory -- the earthquake caused the damage -- and has never deviated from that position. And the Defendants have stuck to their original theory as well -- ships caused the damage. Let the jury determine who is correct, upon a full airing of all competent evidence. The Motion in Limine should be denied.

Respectfully submitted this 26th day of October, 2005.

Respectfully submitted,

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Defendant
Winzler & Kelly Consulting Engineers

By: _____
DANIEL J. BERMAN

S.J. Gargrave Syndicate at Lloyds v. Winzler & Kelly Consulting Engineers
Civil Case No. CIV03-00009
Winzler & Kelly's Opposition to Plaintiff's Motion in Limine to Preclude Reference to
Damage by Ships; Certificate of Service

# CERTIFICATE OF SERVICE

I, THOMAS ANDERSON, hereby declare under penalty of perjury of the laws of the Unites States, that on the 26th day of October, 2005, I will cause to be served, via hand delivery, a true and correct copy of **WINZLER & KELLY'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE REFERENCE TO DAMAGE BY SHIPS** upon Plaintiff and Defendants Counsel of record as follows:

    David Ledger, Esq.
    Carlsmith Ball LLP
    134 West Soledad Avenue
    Bank of Hawaii Building, Suite 401
    P.O. Box BF
    Hagåtña, Guam 96932-5027
    Telefax: (671) 477-4375

Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds

    Thomas C. Sterling, Esq.
    Klemm, Blair, Sterling & Johnson
    Suite 1008, Pacific News Building
    238 Archbishop F.C. Flores Street
    Hagåtña, Guam 96910
    Telefax: (671) 472-4290

Attorneys for Defendant Black Construction Company

    Thomas M. Tarpley, Esq.
    Tarpley & Moroni, LLP
    Suite 402, Bank of Hawaii Bldg.
    134 W. Soledad Avenue
    Hagåtña, Guam 96910
    Telefax: (671) 472-4526

Attorneys for Defendant
    Engineering, Management & Planning Services Corporation

Dated this 26th day of October, 2005.

                                                  */s/ Thomas Anderson*
                                                THOMAS ANDERSON

CC/Y

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

**FILED**
DISTRICT COURT OF GUAM

DEC 30 2004

MARY L.M. MORAN
CLERK OF COURT



## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>　　　　　Defendants. | CIVIL CASE NO. CV03-00009<br><br>PLAINTIFF'S BRIEF IN RESPONSE TO ORDER TO SHOW CAUSE RE: SUBJECT MATTER JURISDICTION; EXHIBIT A; DECLARATION OF SERVICE |

/ / /

/ / /

/ / /

4825-5752-9344.1.055639-00001

Ex. 1

in a washing machine on a private yacht did not bear a significant relationship to traditional maritime activity. *Id.*, at 360-361. The defective work of the Defendants herein easily meets the Sisson test requirements. The instant case also satisfies the modified locality test of <u>Executive Jet Aviation, Inc. v. City of Cleveland</u>, 409 U.S. 249 (1972), since the piles and dolphins are located in at least 35 feet of water in Apra Harbor, and are used for the navigation of large, ocean-going tankers. Booth Declaration, Exhibits D, E and F.

     **F.    If Any Damage To The Dolphins Was Caused By A Ship, There Is Clear Admiralty Jurisdiction**

To attempt to escape liability for their defective work, the Defendants have hired a series of so-called experts to give the opinion that it was not the second earthquake which caused the obvious damage to the dolphins, but rather a series of (unidentified) ships bumping forcefully against them. For example, Messrs. Hayes and Trenkwalder, experts retained by Winzler & Kelly, state at page 7 of their report that "It is my [sic] opinion that the damage to the dolphin piles and connection was due to excessive [ship] berthing loads and not by [sic] any seismic forces." <u>See</u> Booth Declaration, Exhibit G, p. 7. The opinions of these individuals from Oakland, California, who have apparently never even seen the pier in question, are highly suspect. They are directly contradicted by all of the contemporaneous documents and the eyewitness testimony to the earthquake damage. Booth Declaration, Exhibit M (report by JT Developments Pty, Ltd. of survey conducted October 31, 2001 of the Shell F-1 pier "damage which had resulted from the [October 13th] earthquake"); Exhibit H (deposition of independent marine surveyor, Captain Jurgen Unterberg, who viewed and videotaped the damage to the dolphins on October 24, 2001, only 11 days after the 2001 earthquake; he also dove and inspected the piles under water, retrieving bolts which had fallen out of the pile caps during the earthquake; his testimony is clear at pages 7 and 10 that the damage he observed was caused by

that earthquake); and Exhibit I, ¶ 4 (earthquake damage to F-1 pier was extensive; bolted and flanged connections were not strong enough to withstand a major earthquake.)

If the Defendants really wish to allege that all of the damage to the pier and dolphins was in fact caused by ships, they have shot themselves in the foot, jurisdictionally. 46 U.S.C. § 740, the Extension of Admiralty Jurisdiction Act, specifically provides that "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." Congress' intent, in amending 46 U.S.C. in this manner in 1948, was to direct admiralty courts to take cognizance of actions involving damage caused by ships to piers, docks and similar structures. United States v. Matson, supra, 201 F.2d at 616. Plaintiff, in its First Amended Complaint, has alleged that the pier repair was improperly and negligently designed and the repairs were improperly executed, leading to the pier being substantially weaker than it originally was, should have been and needed to be for its intended service (docking ocean-going tankers), despite the Defendants' warranty that their work was adequate. If the unsubstantiated assertion of Defendants' experts proves true, and the damage was actually caused by the docking of tankers (which seems impossible because none of the ships ever hit the dolphins hard enough to puncture its side and spill oil), then Plaintiff still has the right to recover against the Defendants for the repairs which were inadequately strong. This Court clearly has admiralty jurisdiction of such claims, pursuant to 46 U.S.C. § 740. Sulphur Terminals Co. v. Pelican Marine Carriers, Inc., 281 F.Supp. 570, 575 (E.D. La. 1968) (damage to pilings; "... the dock should have sufficient strength to withstand the pressure" of ships berthing against it. Id., at 573.)

III. CONCLUSION

Because the wrongs of the Defendants bear a significant relationship to traditional

maritime activity, and threatened to disrupt vital maritime commerce in oil and gas in Apra Harbor, this Court has, and should exercise, admiralty jurisdiction over both Plaintiff's breach of contract and tort claims, in order to further the overriding federal interest in the protection of maritime commerce which the U.S. Supreme Court has clearly delineated.

DATED: Hagåtña, Guam, December 30, 2004.

CARLSMITH BALL LLP

*/s/* *[signature]*
*for* DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

10/26/2005 13:25 FAX                                                         ☒ 006

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
ERIK M. KOWALEWSKY
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

**FILED**
DISTRICT COURT OF GUAM

FEB 11 2005

MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>               Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>               Defendants. | CIVIL CASE NO. CV03-00009<br><br>PLAINTIFF'S REPLY BRIEF IN RESPONSE TO ORDER TO SHOW CAUSE RE: SUBJECT MATTER JURISDICTION; DECLARATION OF SERVICE |

/ / /

/ / /

/ / /

4834-5871-6672.1.055639-00001



5:05 p.m.
FEB 11 2005
BOne
KLEMM BLAIR STERLING & JOHNSON

EX. 2

jurisdiction over an insurance declaratory judgment action. Thus it supports Plaintiff's, not Defendants', position. It is also telling that Defendants could not distinguish, and therefore were forced to ignore, four tort cases[32] relied upon by Plaintiff (two of them issued by the Ninth Circuit).

Plaintiff's having pointed out the existence of 46 U.S.C. § 740[33] appears to have thrown confusion into the Defendants' ranks. They cannot now decide whether tort damage to the pier in Guam was caused by the docking of ships, as they and their experts have alleged, or not. On the one hand, Defendants in their Brief state that "No vessel is even involved in this case."[34] So much for Defendants' experts' theory. However, Defendants' attorneys also argue the opposite. They would like to have it both ways, since they admit that "... the defendants contend, as a defense,[35] that the dock damage in this case occurred due to [ship] berthing incidents ...". Defendants' Brief at 16.

If, as Defendants state, "... it is absolutely clear that the injury here did not occur on navigable waters[36] nor was it caused by a vessel on navigable water", Defendants' Brief, pp. 14-15, then Plaintiff's

---

[32] In Duncanson-Harrelson Co. v. Director, 644 F.2d 827 (9th Cir. 1981), the Court held that an individual injured while constructing a dolphin, which the Court held served an essential maritime purpose, was engaged in maritime employment. Id., at 830. If the work of constructing a dolphin is marine employment, the item constructed must itself be within maritime jurisdiction. Likewise, in United States v. Matson Navigation Co., 201 F.2d 610 (9th Cir. 1953), the Court held that damage to wooden pilings which constituted a dike was a claim within admiralty jurisdiction. Id., at 618. The Court reached a similar result in Pederson v. Powell-Duffryn Terminals, Inc., 34 F.Supp.2d 915 (D.N.J. 1999), wherein a diver was injured during underwater construction work on the piles for a pier. Id., at 919. The Court held that this work had a substantial relationship to traditional maritime activity and therefore there was maritime jurisdiction. Id. Finally, the Eleventh Circuit reiterated that no actual disruption of maritime commerce needs to occur for a claim to fall within admiralty jurisdiction; the potential for disruption is sufficient. Bunge Corp. v. Freeport Marine Repair, Inc., 240 F.3d 919, 924 (11th Cir. 2001).

[33] The Extension Of Admiralty Jurisdiction Act.

[34] Defendants' Brief at 16. Likewise, in their Conclusion, Defendants state that "... the injury occurred on land and was not caused by a vessel on navigable waters." Defendants' Brief at 18.

[35] Plaintiff is frankly puzzled by what this statement is supposed to mean; are Defendants conceding that this is not really their position, since it was only posited "as a defense"? Defendants' attorneys have certainly asserted the position, loud and long. See, the questions to and testimony of Black's Assistant General Superintendent, Joselito Gutierrez; Supplemental Declaration of Forrest Booth, filed herewith, Exhibit N. (Mr. Gutierrez did not recall any ship damage incidents because the contemporaneous evidence suggests that they never happened. But if they did, then the work the Defendants did and their design were not strong enough; this Court has jurisdiction over such property damage claims pursuant to 46 U.S.C. § 740.)

[36] There can be no doubt that the dolphins involved in this case are located in navigable waters. Those waters allow oil tankers displacing 100,000 tons and more to maneuver alongside and moor to the dolphins. The definition of navigable waters is, of course, well settled by U.S. Supreme Court authority, beginning with the seminal case of

task herein has been simplified considerably;[37] Defendants have no alternative causation theory left.

## III. CONCLUSION

Plaintiff has demonstrated that complete diversity exists; furthermore, its claims properly sound in admiralty. Defendants have failed to provide any reason or authority why either Plaintiff's breach of contract or tort claims fall outside of admiralty jurisdiction. This Court therefore has an obligation to protect maritime commerce by the appropriate exercise of its admiralty jurisdiction.[38]

DATED: Hagåtña, Guam, February 11, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

---

THE DANIEL BALL, 77 U.S. 557 (1871). The Supreme Court set forth the test for navigability (in that case, with regard to rivers):

> ... they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States ... when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries ....

Id., at 441-442. The Shell F-1 dolphins are not a wharf which is an extension of the land; they were installed offshore in deep water, to allow deep-draft ships to pull alongside them. See photographs attached as Exhibits B1, B2, B3 and B7 to the Declaration of Forrest Booth (hereinafter the "Booth Decl."), filed herewith. The 35-foot deep waters of Apra Harbor, into which the subject piles were driven, are unquestionably navigable waters. Defendants' statement that the injury here did not occur on navigable waters, Defendants' Brief at 14-15, is simply wrong.

[37] The trial in this matter will now be solely about the failure, during the 2001 earthquake, of the repairs done by Black, based upon Winzler & Kelly's defective design and EMPSCO's erroneous approval thereof.

[38] Foremost Ins. Co., supra, n.29, 457 U.S. at 674.

4834-5871-6672.1.055639-00001

10.