KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
AGANA, GUAM 96910
TELEPHONE 477-7857

By THOMAS C. STERLING

Attorneys for *Defendant Black Construction Corporation*


DISTRICT COURT OF GUAM

OCT 27 2005 9P

MARY L.M. MORAN
CLERK OF COURT

**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION and WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**DEFENDANT BLACK CONSTRUCTION CORPORATION'S MOTIONS IN LIMINE TO EXCLUDE EVIDENCE OF AMOUNTS PAID TO SETTLE PROPERTY INSURANCE CLAIM, TO LIMIT CLAIM TO 22% OF TOTAL DAMAGE AND TO LIMIT CLAIM TO DAMAGES PLED** |

**I. INSURANCE PAYMENT - SUBROGATION**

Defendant **BLACK CONSTRUCTION CORPORATION** (hereinafter "Black") moves In Limine to exclude any evidence whatsoever of what Plaintiff **S.J. GARGRAVE SYNDICATE AT LLOYDS** (hereinafter "Gargrave") through Lloyds of London paid to the Port Authority of Guam in payment of the Port's 2001 earthquake claim inasmuch as the amounts paid by Lloyds to settle a property damage insurance claim have no bearing whatsoever on Gargrave's subrogation rights in connection with its design and construction deficiency

ORIGINAL

claims arising out of the purported breach of design and construction contracts. As indicated in Black's Trial Brief filed herein on October 11, 2005, which is incorporated herein by reference, the proper measure of damages in a construction defect case is the cost of repair. Moreover, as indicated in that Trial Brief, where there has been an upgrade in the construction after a construction or design deficiency has been discovered, the Plaintiff is obligated to allocate its damages between the cost of rectifying and correcting the original breach of contract and the cost of upgrades and other damages unrelated to the breach of contract. Such an allocation requires expert testimony. Gargrave has produced no expert report and has designated no expert to testify in connection with <u>any</u> damage issue.

For the foregoing reasons, Gargrave's likely effort to simply introduce evidence of everything Lloyd's paid to the Port under Lloyd's policy for whatever reason in settlement of the Port's property damage claim <u>allegedly</u> arising out of the 2001 earthquake will provide no legal basis for a damage award and will simply confuse and prejudice the jury. Thus, no evidence of Gargrave's damages should be admitted absent an adequate foundation, including appropriate offers of proof, that damages paid relate to a construction or design deficiency and can be appropriately allocated.

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

## II. GARGRAVE ONLY OWNS 22% OF THIS CLAIM

Although Gargrave's Complaint alleges that it is entitled to pursue this claim, the evidence at trial will be undisputed that Gargrave is simply one of a number of Lloyds syndicates which assumed the risks associated with the Port's property damage coverage. The policy, relevant portions of which are attached hereto as Exhibit "A" and incorporated herein by this reference[1], clearly indicates that Gargrave only owns 22% of this claim. The front page of the policy with the heading "Lloyd's Policy" (the 6th page of Exhibit "A") indicates in the first full paragraph as follows:

> The Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his Executors and Administrators) shall be liable only for his own share of his Syndicate's proportion of any such Loss and of any such Expenses." (Emphasis added)

At best, Gargrave will be able to establish at trial that its Syndicate number as indicated on the last two pages of the policy is 2724 and that it assumed 22% of the risk payable under the policy. No document has ever been produced during the course of this litigation to indicate that Gargrave owns any

//

---

[1] Gargrave has indicated in its Rule 26(a)(3)(c) disclosures filed October 11, 2005 that it intends to introduce the policy at trial and Black would have preferred to simply refer to Gargrave's trial exhibit. However, in violation of Guam District Court Local Rule 16.7(d)(3), Gargrave has not yet exchanged or filed any of its exhibits fourteen (14) days before trial as was required by the Local Rule.

KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910

more than 22% of this claim. In fact, the "Closing Off Slip Incepting" forms at the front of the policy (pages 3, 4, and 5 of Exhibit "A") strongly suggest that Gargrave only owns 13.6% of this claim. Who knows?

Inasmuch as Gargrave has never alleged nor produced any evidence that it is entitled to pursue the claims of any of the other Syndicates under the Lloyd's policy issued to the Port, Black respectfully submits that Gargrave's claim at trial is limited to, at most, 22% of the proven damages pursuant to its subrogation claim. So as to avoid constant disruption of the trial proceedings, Black requests an Order in Limine indicating that Black has a continuing objection to the introduction of any and all damage evidence except to the extent that a limitation Order is entered by this Court that Gargrave is entitled to recover only 22% of any amount awarded by the jury in connection with its subrogation claim.

**III. LIMITATION TO DAMAGES PLED**

Black also requests an Order preventing Gargrave from presenting any evidence whatsoever pertaining to a number of its "Damages" as set forth at page 8 of its Supplemental Trial Brief. As indicated in this Court's Order of April 8, 2005 which granted Black's Motion for Partial Summary Judgment as to damages recoverable in subrogation (relevant portions attached hereto as Exhibit "B"), Gargrave's damage claims at that time

KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

consisted of $1,947,443 for the cost of repair to the dolphins, $2,000,000 for loss of future pier rental, $1,500,000 for diminution in pier value, and $100,000 for sue and labor. (Order filed herein April 8, 2005 p. 4). The Court ruled in that Order that Gargrave's recovery at trial would be limited to the "extent of its payment to its insured" for damage to the dolphins or other damage resulting from damage to the dolphins. (Order filed herein April 8, 2005 at p. 9).

Undaunted by this Court's ruling which, as a practical matter, limited Gargrave's maximum recovery to $1,947,243, Gargrave has simply attempted through Supplemental interrogatory responses and a "Supplemental Trial Brief" after the close of discovery to change its damage theory to continue to assert that it is owed millions more. Gargrave's claim for adjusting expenses ($234,228), policy deductible ($500,000), and Young's Adjusting Company's fees ($370,000) as set forth in its Trial Brief have not been alleged in this action and simply are not at issue.[2] Moreover, they are not items recoverable in subrogation in accordance with this Court's prior ruling. Gargrave should be prohibited, pretrial, from attempting to present evidence of any such "damages".

---

2 These also are not damages resulting from the alleged breach of a construction contract.

KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

In fact, the deductible should properly be a credit to the Defendants in this case. To the extent Lloyds of London only paid the Port $7,500,000 of an $8,000,000 loss as a result of the $500,000 deductible, Gargrave is only entitled to recover 93% of 22% of Lloyd's payment for damage to the dolphins since the other 7% is still owned by the Port Authority pursuant to the deductible. Thus, this mathematical reality should be reflected pretrial so that Black is not required to enter objections and interrupt the trial when Gargrave attempts to present its evidence concerning amounts paid for damage to the dolphins or any other item.

**III. CONCLUSION**

In summary, Black requests Orders in Limine that Gargrave be precluded from introducing any evidence of the amounts paid to the Port Authority of Guam in connection with its 2001 earthquake claim absent an adequate foundation allocating said amounts to damages specifically resulting from a breach of Black's contract. Absent such a foundation, the introduction of total cost damage evidence will lead to confusion, jury speculation, and prejudice to Black. Black also requests a limitation Order that Gargrave is only entitled, at most, to recover 22% of the damages associated with the breach of this contract inasmuch as Gargrave only owns 22% of the claim. Finally, Black requests an Order that unpled new "damages"

KLEMM, BLAIR,
STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

cannot be presented at trial and that Gargrave can only recover its 22% of 93% of the loss related to the dolphins since 7% of the loss was never compensated due to the policy deductible.

**RESPECTFULLY SUBMITTED** this 27th day of October, 2005.

**KLEMM, BLAIR, STERLING & JOHNSON**
A PROFESSIONAL CORPORATION

BY: ______________________
**THOMAS C. STERLING**
*Attorneys for Defendant Black Construction Corporation*

**ATTACHMENTS: EXHIBITS "A" & "B"**

E62\27946-29
G:\WORD97\OFFICE\WORDDOC\PLD\TCS\261-DEF BCC'S MTN IN LIMINE TO EXCLUDE EVIDENCE OF AMOUNTS PAID TO SETTLE PROPERTY INS CLAIM RE GARGRAVE V BLACK ET AL.DOC

KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION
1008 PACIFIC NEWS BLDG
238 ARCHBISHOP
F.C. FLORES ST.
HAGÅTÑA, GUAM 96910
TELEPHONE 477-7857

FP 00HV0051F

ENDORSEMENT attaching to and forming part of Policy Number 00HV0051F in the name of: PORT AUTHORITY OF GUAM

Port Authority Package Insurance 36 months @ 1st October,1999-etc.

Noted and agreed cover hereunder to continue from 1st October 2001 (for third of three annual periods) on all same terms, clauses and conditions other than:

Property Limit Amended to:

$25,000,000 CSL Property and Business Interruption

Full Value Equipment $17,416,116

Excluding Terrorism and Sabotage absolutely (exclusion 4 amended accordingly)

Premium:

Broker Policy No. 01HV0065F

U.S Classification Non-Regulated

All other terms, clauses and conditions remain unaltered.

61053*27-11-2001 07 (SECT 1)

61083*27-11-2001 08 (SECTS 2/3)

51045*27-11-2001 09 (SECT 4)

0753

EXHIBIT "A"

FP

99HV0067F

ENDORSEMENT attaching to and forming part of Policy Number 99HV0067F in the name of: PORT AUTHORITY OF GUAM

PORT AUTHORITY PACKAGE INSURANCE 36 months @ 1st October, 1999.

Noted and agreed cover hereunder to continue from 1st October 2000 (for second of three annual periods) on all same terms, clauses and conditions, other than :

Deductible with respect Earthquake, Flood and Windstorm exposures increased from USD250,000 to USD500,000

To allow a separate 5% NCB feature against Section IV hereunder (Liabilities), effective from anniversary dated 1st October 2000 – subject to the following wording :

"It is hereby noted and agreed that following payment of NCB under Liability section hereon, if at any time in the future any claim is made against the said policy year, the amount of any NCB paid will be treated as additional deductible hereon".

Premium : USD1,140,000 in full per annum (after application of LTA feature).

Broker Policy No. 00HV0051P

Insurers : Lloyd's Underwriters 100%(as per schedule attached respect Sections 1 – 4)

LESS4% (tax only) U.S.Classification non regulated

All other terms, clauses and conditions remain unaltered.

51193#29-11-2000 04 Section 4

61754#29-11-2000 05 Section I

61766#29-11-2000 06 Section 2|3

18/03/2004 ... 0014156176101 NO.919 002

Policy No 01HV0065F

CLOSING OFF SLIP INCEPTING: 1/10/01

SECTION 01 P.7.

SJL 10/11/01

| | | | |
|---|---|---|---|
| 92.0000% | (Underwriters at Lloyds) | | |
| 13.6000% | 2724 | SJG | NAE291115T73 |
| 20.0000% | 0033 | HIS | 24025STAAPBA |
| 16.0000% | 1225 | AES | 01N03730JAPD |
| 6.0000% | 1036 | COP | T7555Q01FY |
| 6.0000% | 0102 | GOS | H1109A00AABA |
| 6.4000% | 0079 | PJG | 115TBOF9983A |
| 4.0000% | 1243 | EUL | MO2314X01AHL |
| 2.1200% | 0588 | NKB | 03E30817V08Z |
| 1.8800% | 1209 | XLB | 03E30817V08Z |
| 1.4400% | 0861 | NJM | 03A84194L03Z |
| 2.5600% | 1209 | XLB | 03A84194L03Z |
| 12.0000% | 0535 | COT | 203BE405L01 |

SECTION 02 (3 0 P.D.

| | | | |
|---|---|---|---|
| 92.0000% | (Underwriters at Lloyds) | | |
| 13.6000% | 2724 | SJG | NAC491115T72 |
| 20.0000% | 0033 | HIS | 24025STBAP0A |
| 16.0000% | 1225 | AES | 01N03730JAPD |
| 6.0000% | 1036 | COP | T7555Q01FY |
| 6.0000% | 0102 | GOS | H1109A00AABA |
| 6.4000% | 0079 | PJG | 115TBOF9983A |
| 4.0000% | 1243 | EUL | M02314X01AHL |
| 2.1200% | 0588 | NKB | 03E30817V08Z |
| 1.8800% | 1209 | XLB | 03E30817V08Z |
| 1.4400% | 0861 | NJM | 03A84194L03Z |
| 2.5600% | 1209 | XLB | 03A84194L03Z |
| 12.0000% | 0535 | COT | 203BE405L01 |

SECTION 04 4

| | | |
|---|---|---|
| 92.0000% | (Underwriters at Lloyds) | |
| 13.6000% | 2724 SJG | NAT291115T71 |
| 20.0000% | 0033 HIS | 24025STCAMSA |
| 16.0000% | 1225 AES | 01N03730JAGX |
| 6.0000% | 1036 COP | LI794Q01FY |
| 6.0000% | 0102 GOS | H1109B00AAHA |
| 6.4000% | 0079 PJG | 115TB1V5482A |
| 4.0000% | 1243 EUL | M02314X01ALB |
| 2.1200% | 0588 NKB | 07E30817V08Z |
| 1.8800% | 1209 XLB | 07E30817V08Z |
| 1.4400% | 0861 NJM | 07A84194L03Z |
| 2.5600% | 1209 XLB | 07A84194L03Z |
| 12.0000% | 0535 COT | 233BE405L01 |



# Lloyd's Policy

We, Underwriting Members of the Syndicates whose definitive numbers and proportions are shown in the Table attached hereto (hereinafter referred to as 'the Underwriters'), hereby agree, in consideration of the payment to Us by or on behalf of the Assured of the Premium specified in the Schedule, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Policy.

The Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his Executors and Administrators) shall be liable only for his own share of his Syndicate's proportion of any such Loss and of any such Expenses. The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's representative on application to Lloyd's Policy Signing Office, quoting the Lloyd's Policy Signing Office number and date or reference shown in the Table.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

In Witness whereof the General Manager of Lloyd's Policy Signing Office has signed this Policy on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE
General Manager

FOR EMBOSSMENT BY LLOYD'S POLICY SIGNING OFFICE EMBOSSMENT APPEARS HERE ON ORIGINAL DOCUMENT LLOYD'S POLICY SIGNING OFFICE

(A) NMA2421 (3/1/95) Printed by the Corporation of Lloyd's



| | | |
|---|---|---|
| **Policy No** | 99HV0067F | |
| **FORM** | J(A) | |
| **ASSURED** | Port Authority of Guam | |
| **PERIOD** | 36 months at 1st October, 1999 – Subject to Annual Review. | |
| **INTEREST** | SECTION I | Equipment of every description. |
| | SECTION II | Property of every description. |
| | SECTION III | Loss of Revenue/Business Interruption |
| | SECTION IV | Port Authority Legal and/or Public Liabilities. |
| **SUM INSURED** | SECTION I | USD24,829,106 being total of Equipment Schedule, as attached. |
| | SECTION II } | |
| | SECTION III} | USD50,000,000 Combined Single Limit and in the aggregate separately in respect of Flood and Earthquake Shock. |
| | SECTION IV | USD50,000,000 any on accident and/or occurrence. |

**CONDITIONS SECTION 1**

All risks of physical loss or damage to equipment, cranes, forklifts, trucks, conveyors, machinery etc., the property of the Insured, or leased or on hire for which the Insured is responsible whether in transit or otherwise, on land or afloat, in port area or in transit elsewhere.

Including War whilst afloat, Terrorism, Strikes, Riots, Civil Commotion and Malicious Damage but excluding wear and tear and gradual deterioration. It shall be understood and agreed that such exclusions shall be limited to that part of the equipment directly involved and shall not extend to other equipment and/or property, damaged by such wear and tear and gradual deterioration.

Noted and agreed that Assured has the ability to add additional items hereunder up to 10% of the total equipment schedule per annum without additional premium.

Subject to deductibles as detailed in the attached schedule each and every loss or losses arising out of any one accident or series arising out of any one event.

L.P.&Q. M.P.R.

**SECTION II**

All risks of physical loss or damage to all wharves, ramps, dock gates, jetties, pipelines, transformers, boilers, pumps and all other appliances, berths, office buildings and contents, other assets, property and/or contents of the Insured of every and any description whatsoever.



The Table of Syndicates referred to on the face of this Policy follows:

TABLE OF SYNDICATES APPLICABLE TO RISK CODE PD I

| LPSO USE ONLY | BROKER | REFERENCES |
|---|---|---|
| 71 | 0856 | 61512 26 11 99 |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REFERENCE | PAGE 1 |
|---|---|---|---|
| PERCENT | | | |
| 22.00 | 2724 | NAE290913S24 | |
| 20.00 | 33 | 24025SPAAPBA | |
| 20.00 | 535 | 203BE405L99 | |
| 3.99 | 861 | 03A84194L01 | |
| 3.01 | 1209 | 03A84194L01 | |
| 1.98 | 588 | 03E30817V06 | |
| 1.02 | 1209 | 03E30817V06 | |
| 6.00 | 1036 | T7555Q99FY | |
| 12.00 | 79 | 916SB6F9983A | |
| 4.00 | 62 | Z5836N99A | |
| 6.00 | 1308 | 06302488A02 | |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS IN RESPECT OF 1999 YEAR OF ACCOUNT

| TOTAL LINE | NO. OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 100.00 | 11 | USE1 9644 |

TABLE OF SYNDICATES APPLICABLE TO RISK CODE PD II + III

| LPSO USE ONLY | BROKER | REFERENCES |
|---|---|---|
| 73 | 0856 | 61513 26 11 99 |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REFERENCE | PAGE 1 |
|---|---|---|---|
| PERCENT | | | |
| 22.00 | 2724 | NAC490913S23 | |
| 20.00 | 33 | 24025SPBAPOA | |
| 20.00 | 535 | 203BE405L99 | |
| 3.99 | 861 | 03A84194L01 | |
| 3.01 | 1209 | 03A84194L01 | |
| 1.98 | 588 | 03E30817V06 | |
| 1.02 | 1209 | 03E30817V06 | |
| 6.00 | 1036 | T7555Q99FY | |
| 12.00 | 79 | 916SB6F9983A | |
| 4.00 | 62 | Z5836N99A | |
| 6.00 | 1308 | 06302488A02 | |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS IN RESPECT OF 1999 YEAR OF ACCOUNT

| TOTAL LINE | NO. OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 100.00 | 11 | USE1 9644 |

The List of Underwriting Members of Lloyd's mentioned in the above Table, shows their respective Syndicates and Shares therein and is deemed to be incorporated in and to form part of this Policy. It is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of it certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.



The Table of Syndicates referred to on the face of this Policy follows:

TABLE OF SYNDICATES APPLICABLE TO
RISK CODE G7

| LPSO USE ONLY | BROKER | REFERENCES |
|---|---|---|
| 82 | 0856 | 51165 26\|11\|99 |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REFERENCE | PAGE 1 |
|---|---|---|---|
| PERCENT | | | |
| 22.00 | 2724 | NAT290913S22 | |
| 20.00 | 33 | 24025SPCAMSA | |
| 20.00 | 535 | 233BE405L99 | |
| 3.99 | 861 | 07A84194L01 | |
| 3.01 | 1209 | 07A84194L01 | |
| 1.98 | 588 | 07E30817V06 | |
| 1.02 | 1209 | 07E30817V06 | |
| 6.00 | 1036 | L1794Q99FY | |
| 12.00 | 79 | 916SB7V5482A | |
| 4.00 | 62 | Z5836N99B | |
| 6.00 | 1308 | 04302488B02 | |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS IN RESPECT OF 1999 YEAR OF ACCOUNT

| TOTAL LINE | NO. OF SYND. | FOR LPSO USE ONLY |
|---|---|---|
| 100.00 | 11 | USE 1 9644 |

The List of Underwriting Members of Lloyd's mentioned in the above Table, shows their respective Syndicates and Shares therein and is deemed to be incorporated in and to form part of this Policy. It is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of it certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

FILED
DISTRICT COURT OF GUAM
APR - 8 2005
MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

S.J. GARGRAVE SYNDICATE AT LLOYDS,

Plaintiff,

vs.

BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,

Defendants.

Civil Case No. 03-00009

ORDER

This matter is before the Court on the following motions: 1) Defendant, Black Construction Corporation's Motion for Partial Summary Judgment, or Alternatively, to Dismiss; 2) Defendant, Winzler & Kelly's Motion for Judgment on the Pleadings, on Ninth Cause of Action; 3) Defendant, Winzler & Kelly's Motion for Judgment on the Pleadings, on Second Cause of Action; 4) Defendant, Winzler & Kelly's Motion for Judgment on the Pleadings, on Fifth Cause of Action; 5) Defendant, Engineering, Management, & Planning Services Corporation for Summary Judgment and for Judgment on the Pleadings. After hearing argument from counsel and reviewing the parties' submissions, as well as relevant caselaw and authority, the Court hereby memorializes the bases for its rulings herein.

COPY

EXHIBIT "B"

61), Exs. F and H14-15, attached thereto. Smithbridge also provided a quote to repair the balance of the piling to pile cap connections for $1,420,000. See Sterling Aff. (Docket No. 61), Ex. E, attached thereto.

In or about December 2002, the plaintiff settled the Port's claim for a negotiated figure of $8,000,000 minus a $500,000 deductible. Of the total settlement amount, $1,943,135.12 was allocated by Mr. MacLeod to the repair of the dolphins which consisted of the Smithbridge temporary repair costs and the Smithbridge estimate to complete the repair. See Sterling Aff. (Docket No. 61), Ex. F. The Port executed a Loss and Subrogation Form in consideration for total payments by the plaintiff of $7,500,000. Id., Ex. G, attached thereto. The plaintiff made no payments for the loss of future pier rental, diminution in pier value, or anything other than the repair costs. Id., Ex. H5-6, 12-13, attached thereto.

A First Amended Complaint was filed on December 23, 2003.[2] Therein, the plaintiff sought the recovery of general damages in excess of $3 million. See First Amended Complaint. In the plaintiff's response to Black Construction's First Set of Interrogatories, the plaintiff indicated that the total damages it was seeking was in the amount of $6,157,443 consisting of $1,947,443 for the cost of the repairs to the dolphins, $2,000,000 for loss of future pier rental, $1,500,000 for diminution in pier value, $100,000 for sue and labor, $500,000 for attorneys' fees and expert fees, and $110,000 in interest. See Sterling Aff. (Docket No. 61), Ex. B, attached thereto.

**DISCUSSION**

Black Construction now moves for partial summary judgment or, alternatively, to dismiss

---

[2] The First Amended Complaint alleges the following causes of action:

I. Negligent Property Damage (Against Black Construction);
II. Negligent Property Damage (Against Winzler & Kelly);
III. Negligent Property Damage (Against EMPSCO);
IV. Breach of Contract (Against Black Construction);
V. Breach of Contract (Against Winzler & Kelly);
VI. Breach of Contract (Against EMPSCO);
VII. Breach of Warranty of Workmanlike Performance (Against Black);
VIII. Breach of Warranty of Workmanlike Performance (Against EMPSCO); and
IX. Breach of Warranty of Workmanlike Performance (Against Winzler & Kelly).

by the defendants. In other words, the plaintiff should not be able to recover up to $7.5 million in damages if the defendants allegedly only caused $3 million in damages.[4] "A subrogee is entitled to indemnity only to the extent of the money actually paid to discharge the obligation." Colonial Penn Insurance Co. v. Ford, 172 N.J.Super. 242, 411 A.2d 736, 737 (1979).

Accordingly, the Court grants in part the motion for partial summary judgment by Black Construction, joined by the other defendants, and holds that the plaintiff's right of recovery against the defendants is limited by the extent of its payment to its insured. However, the Court will not set a figure as to that amount. The plaintiff points out in its opposition that there was damage done beyond Pier F-1 and the dolphins as a result of the movement of the pilings. The plaintiff may be able to recover damages to the extent that it made payments for those additional repairs.

**1st Cause of Action - Negligent Property Damage (Against Black Construction) and 2nd Cause of Action - Negligent Property Damage (Against Winzler & Kelly)**

Defendants, Black Construction and Winzler & Kelly also seek to dismiss Lloyds first and second causes of action for negligent property damage. The defendants argue that under the Economic Loss Doctrine, these causes of action are barred because there was no damage beyond "economic loss," *i.e.* damage to the product itself. The Economic Loss Doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3rd Cir. 1995). In other words, a party who sustains solely economic loss for a defective product or as a result of the breach of contract, is free to sue for breach of the contract, but may not sue for the same economic harm under negligence or other tort theories. The doctrine "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000).

> When a defective product accidentally causes harm to persons or property, the resulting harm is treated as personal injury or property

---

[4] The Court also notes that both the plaintiff's original and amended complaint allege that its claims are being pursued in subrogation and not on the basis of an assignment.