BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 477-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers



**FILED**
DISTRICT COURT OF GUAM

OCT 27 2005

MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP.,<br><br>Defendants. | Civ. No. CIV 03-00009<br><br>WINZLER & KELLY'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE RE CONTRIBUTORY NEGLIGENCE; CERTIFICATE OF SERVICE<br><br>Trial: November 8, 2005 |

The Syndicate has filed a motion styled "Motion in Limine Precluding Defendants From Presenting Any Evidence Tending To Show, Or From Arguing That, the Port Was Contributorily Negligent" (October 25, 2005).

The short response to this motion is that Winzler & Kelly has no intention of introducing any evidence of contributory negligence, or of arguing that the Port was contributorily negligent. On the contrary, Winzler & Kelly agrees with the Syndicate that "tort principles are inapplicable in this case," and that the court should "preserve the bifurcation [sic] between contract and tort remedies." See Plaintiff's Motion at 4-5.

Indeed, Winzler & Kelly has already made the same point itself in its Trial Brief, pointing out that "this action sounds in contract, not in tort," and that contract damage principles, not tort ones, should therefore be applied. See Winzler & Kelly's Trial Brief (October 11, 2005) at 16-17.

On the surface of it, therefore, the parties have no dispute on this account. Winzler & Kelly is concerned, however, that the Syndicate, when it says it seeks to preclude any evidence or argument of "contributory negligence," really means that it seeks to preclude any evidence or argument that the Port did anything wrong in connection with the dolphin repairs or maintenance, or that the Port's numerous mistakes and misdeeds in this area should have any effect on the amount of damages recoverable by the Syndicate at trial. In other words, the Syndicate states its motion in such sweeping terms that it appears poised to slap the label of "contributory negligence," thus "inadmissible," on *any* evidence of actions or omissions by the Port that contributed to causing the damage to the dolphins, regardless of the relevance of such evidence to the calculation of damages under *contract* law. See, e.g., the erroneous statement in Plaintiff's Motion at 5, that "[e]vidence of lack of due care by the Port falls *solely* within the realm of tort law, which the Court has ruled is inadmissible" (emphasis added).

To be perfectly clear, therefore, Winzler & Kelly intends to introduce evidence of at least the following acts and omissions on the part of the Port that contributed to the damage to the dolphins.

- The Port allowed F-1 to become dilapidated.

- The Port refused to install cathodic protection.

- The Port did not replace broken fenders.

- The Port had no fenders in stock.

- The Port did not pay EMPSCO enough money to do the job right.

- The Port cut back on EMPSCO's engineering hours so drastically that proper analysis, design and supervision could not be done.

- The Port excluded seismic and structural analysis from its contract with EMPSCO.

- The Port did not relay the docking instructions contained in EMPSCO's engineering documentation to ships' pilots or to the harbor master.

- The Port did nothing to see if VE-1 calculations were done or if the calculations made sense.

- The Port did not inquire what the difference was between Redi-Chem and Anchor-It before agreeing to the substitution of Anchor-It for Redi-Chem.

- The Port's construction manager Macario approved VE-1 and Anchor-It, approved the construction, and failed to adequately inspect for soft epoxy.

- The Port did not have a dock inspection regime.

- The Port failed to conduct a final inspection as required under its contract with Black.

- The Port lied to Plaintiff, its insurer, by claiming that all the damage to the dolphins and piles had been caused by the 2001 earthquake.

Nearly all of this conduct, of course, can fairly be described as "negligent," and, if this were a negligence action, it would be evidence of contributory negligence. That fact, however, does not make it irrelevant to contract damages, or inadmissible in a contract action. On the contrary, such evidence is strongly relevant to the issue of the parties'

3

proportionate contribution to causing the damages incurred, which determines the relative apportionment of damages in a contract case. As Winzler & Kelly pointed out in its trial brief:

> In contract law, total damages must be apportioned among the parties based on their respective percentage contribution to causing them.[1] W&K is responsible only for damage caused by its own acts, not those of EMPSCO, Black, or the Port itself, and it is the Syndicate's responsibility to delineate who caused what damages.[2] The apportionment need not be precise -- a rough approximation is sufficient[3] -- but if the Syndicate fails to make any apportionment at all, it does so at the risk of obtaining no recovery.[4]

Winzler & Kelly's Trial Brief at 16-17.

It is clear from the case law that "the parties" whose contribution to causing the damages must be apportioned include the plaintiff. Such apportionment occurs most often when performance of a contract is delayed, and both the plaintiff and the defendant contributed to the delay. See, e.g., Calumet Const. Corp. v. Metropolitan Sanitary Dist. Of Greater Chicago, 533 N.E.2d 453 (Ill. App. 1988); Alcan Elec. & Eng. Co. v. Samaritan Hosp., 2002 WL 26291 (Wash. App. 2002) (both apportioning contract damages between plaintiff and defendant). The same principles are equally applicable to

---

[1] See, e.g., Calumet Const. Corp. v. Metropolitan Sanitary Dist. Of Greater Chicago, 533 N.E.2d 453, 456 (Ill. App. 1988); Alcan Elec. & Eng. Co. v. Samaritan Hosp., 2002 WL 26291 (Wash. App. 2002); Groves & Sons Co. v. Warner Co., 576 F.2d 524 (3rd Cir. 1978); Gateway Western Ry. Co. v. Morrison Metalweld Process Corp., 46 F.3d 860 (8th Cir. 1995) (all apportioning damages for breach of contract).

[2] The burden is on the plaintiff to show the proper apportionment by cause. See, e.g., City of Westminster v. Centric-Jones Constructors, 100 P.3d 472 (Colo. App. 2003).

[3] See, e.g., State of California ex rel Dept. of Transportation v. Guy V. Atkinson Co., 231 Cal Rptr. 382 (App. 1986); Centric-Jones, supra,; Arkansas Rice Growers Coop. Assn. v. Alchemy Industries, Inc., 797 F.2d 565, 571 (8th Cir. 1986) ("Once the existence, nature, and cause of damages has been established . . . a court will not deny recovery simply because the exact amount of damages is difficult to ascertain.")

[4] See, e.g., Centric-Jones, supra.

4

claims of breach of contract by defective performance. See, e.g., S.J. Groves & Sons Co. v. Warner Co., 576 F.2d 524 (3rd Cir. 1978), a construction contract dispute in which the court awarded plaintiff only 25% of the total loss incurred in connection with a defective concrete slab, because "both parties contributed in some degree to the loss." Id. at 527. The defendant's "poor performance was 'a substantial cause' of the defective slab to the extent of one-fourth of the damages sought by" the plaintiff, id., while the remainder was attributable to the plaintiff itself.

The point in such cases is not so much that any particular amount of damages is attributable to the plaintiff, but that such amount is *not* attributable to the defendant against whom it is sought, and therefore ought not be assessed against him as damages. See State of California ex rel Dept. of Transportation v. Guy F. Atkinson Co., 231 Cal Rptr. 382 (App. 1986); Arkansas Rice Growers Coop. Assn. v. Alchemy Industries, Inc., 797 F.2d 565, 571 (8th Cir. 1986) (both finding defendants in construction contract disputes not liable for that portion of damages not attributable to them). See also, e.g., City of Westminster v. Centric-Jones Constructors, 100 P.3d 472 (Colo. App. 2003) ("In complex situations that may involve multiple parties, the plaintiff must prove not only that he or she was not liable for the extra cost in this situation, but that the defendant was responsible.") (quoting Amelco Elec. v. City of Thousand Oaks, 38 P.2d 1120, 1131 (Cal. 2002)) (internal punctuation omitted).

The contract principle of apportioning damages in proportion to causation, as described above, and the tort principle of comparative negligence, while analytically

5

distinct, bear considerable resemblance to one another in practice (although both are distinct from *contributory* negligence, which would deny a plaintiff any recovery whatsoever). This resemblance is clearly illustrated by <u>Gateway Western Ry. Co. v. Morrison Metalweld Process Corp.</u>, 46 F.3d 860 (8th Cir. 1995), in which the trial court (upheld on appeal) approved the use of a tort-type comparative fault instruction on a contract claim, noting that "the 'consideration of collateral cause' that is relevant to determining contract damages is similar, from the jury's perspective, to the application of comparative fault principles to determine negligence damages." <u>Id</u>. at 863.

Accordingly, most evidence that in a negligence action would be relevant to contributory or comparative negligence is also relevant, in a contract action, to the apportionment of damages. That includes all of the evidence listed on pages 2-3 above. If the Syndicate's motion in limine is taken as a motion to exclude such evidence, it must be denied.

Respectfully submitted this 26th day of October, 2005.

                                      BERMAN O'CONNOR MANN & SHKLOV
                                      Attorneys for Winzler & Kelly

                                      By: _____
                                                  DANIEL J. BERMAN

# CERTIFICATE OF SERVICE

I, Thomas Anderson, hereby declare under penalty of perjury of the laws of the Unites States, that on the 27th day of October, 2005, I will cause to be served, via facsimile transmission a true and correct copy of **WINZLER & KELLY'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE RE CONTRIBUTORY NEGLIGENCE** upon The Hon. Judge Robert Clive Jones, Plaintiff and Defendants Counsel of record as follows:

    The Hon. Judge Robert Clive Jones
    United States District Judge
    United States District Court for the District of Nevada
    333 Las Vegas Bldv. South
    Las Vegas, NV 89101
    Telefax: (702) 464-5491

    David Ledger, Esq.
    Carlsmith Ball LLP
    134 West Soledad Avenue
    Bank of Hawaii Building, Suite 401
    P.O. Box BF
    Hagåtña, Guam 96932-5027
    Telefax: (671) 477-4375

    Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds

    Thomas C. Sterling, Esq.
    Klemm, Blair, Sterling & Johnson
    Suite 1008, Pacific News Building
    238 Archbishop F.C. Flores Street
    Hagåtña, Guam 96910
    Telefax: (671) 472-4290

    Attorneys for Defendant Black Construction Corporation

//

//

Thomas M. Tarpley, Esq.
Tarpley & Moroni, LLP
Suite 402, Bank of Hawaii Bldg.
134 W. Soledad Avenue
Hagåtña, Guam 96910
Telefax: (671) 472-4526

Attorneys for Defendant
    Engineering, Management & Planning Services Corporation

Dated this 27th day of October, 2005.

*/s/ Thomas Anderson*

2003-08-051026-PL-M in limine re contributory negligence-OPP.doc

8
Case 1:03-cv-00009   Document 299   Filed 10/27/2005   Page 8 of 8