ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



FILED
DISTRICT COURT OF GUAM
OCT 28 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>  Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>  Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT BLACK CONSTRUCTION'S MOTIONS IN LIMINE TO EXCLUDE EVIDENCE OF AMOUNTS PAID TO SETTLE PROPERTY INSURANCE CLAIM, TO LIMIT CLAIM TO 22% OF TOTAL DAMAGE AND TO LIMIT CLAIM TO DAMAGES PLED** |

Plaintiff S.J. Gargrave Syndicate At Lloyds (hereinafter "Plaintiff") hereby opposes

Defendant Black Construction Corporation's (hereinafter "Black") Motions in Limine to Exclude

Evidence of Amounts Paid to Settle Property Insurance Claim, to Limit Claim to 22% of Total Damage and to Limit Claim to Damages Pled, as follows:

## I. THE PROPER MEASURE OF DAMAGES IS THE PORT'S COST OF REPAIRS

The cost of repair method, not diminution in value, best ensures that an injured party receives the benefit of the bargain, "even if repair would involve destroying work already completed. *When defects or omissions in construction are so major that the building does not substantially conform to the contract, then the decreased value of the building constructed justifies the high cost of repair.*" *Kenney v. Medlin Constr. & Realty Co.*, 315 S.E.2d 311, 315 (N.C. Ct.App. 1984) (emphasis added). "The proper measure of damages for breach of a contract to construct improvements on real property where the work is to be done on plaintiff's property is ordinarily the reasonable cost to the plaintiff of completing the work and not the difference between the value of the property and its value had the improvements been constructed." *Glendale Federal Savings and Loan Ass'n v. Marina View Heights Dev. Co., Inc.*, 135 Cal.Rptr. 802, 66 Cal.App.3d 101, 123 (1977).

Moreover, "it often costs more to repair a mistake than to do the job right in the first place." *Angles v. West*, 2003 WL 203593 (Ohio App. 2003) (in dicta). As long as the difference between the original cost and the repair cost is not grossly disproportionate and does not result in economic waste, the cost to repair method should be used. *Id.*

### A. Diminution in Value

Importantly, in construction cases, the diminution in value rule is not invoked. *Jones v. Kvistad*, 97 Cal.Rptr. 100, 19 Cal.App.3d 836, 844-45 (1971).

#### 1. Damages Based on Diminution in Value Are Not Proper When a Structure Has No "Market" Value or Has a Public Use.

2.

4824-2371-7120.1.055639-00001
Case 1:03-cv-00009   Document 311   Filed 10/28/2005   Page 2 of 10

Diminution in value is inapplicable as a measure of damages in instances in which, as here, a structure has no market value or has a special use. In *Mass. Port Auth. v. Sciaba Const. Corp.*, 766 N.E.2d 118 (Mass. App. 2002), the court examined the different types of damages available to compensate the Massachusetts Port Authority for a fire on one of its wooden piers used as a park. The court considered the pier to be a "special purpose" property, such as those properties owned by states, public agencies or public utilities, where the real value of a property cannot be ascertained. *Id.* at 124. In ascertaining damages to special purpose public property, the court considered "all relevant evidence bearing on the nature of the property, the extent of the injury or loss, and the amount of money that will fairly compensate its owner for its injury or loss." *Id.* at 123. The court found damages based on fair market value would be unfair and unreasonable because of its special, public nature. "Where diminution in market value is unavailable or unsatisfactory as a measure of damages, courts have routinely turned to replacement or restoration costs as the appropriate measure of damages." *Id.* at 125.

Another court has similarly found that in cases in which there is no market value for a special purpose public property, the plaintiff can then demonstrate what the actual reasonable costs of repair would be on the open market. *Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co.*, 223 S.W.2d 100 (Mo.App. 1949).

The F-1 pier is a special purpose property that has no market value. It is not property that has been or can be placed on the market for commercial purposes. Its purpose is specifically to service ocean-going vessels that arrive at the pier to deliver oil and gas. There are no privately-owned piers for sale in Guam which provide the same services, upon which to base any market value analysis.

3.

### B. A Plaintiff May Recover Cost Of Repair Beyond The Cost Of The Original Contract

Plaintiff may recover whatever amount of damages is required to place it in the position it would have enjoyed had the contract been fulfilled, even if that requires compensation above and beyond the contract price.

In *Commercial Contractors, Inc. v. U.S.*, *supra*, the court stated that the cost of repairing defects is not disproportionate if the defects

> significantly affect the integrity of a structure being built. In that setting, the injured party is entitled to recover the cost of remedying the defects despite the fact that the cost may be very high. Stated differently, **structural defects are deemed to cause such a great loss in value that the cost of remedying such defects is almost never considered to be out of proportion to that loss.**

154 F.3d at 1372 (emphasis added) (citing Restatement (Second) of Contracts § 348 illus. 3 (1981)). That case involved structural defects in the construction of a flood control channel. The court awarded the costs of repairs, noting that difference in market value could not be used as a means of damages because the government (as in this case) could not sell the property (the channel).

Courts routinely award damages greater than the contract price when deficiencies in performance cause losses beyond the contract price. In *R.I. Turnpike and Bridge Authority v. Bethlehem Steel Corp.*, 379 A.2d 344, 347 (R.I. 1977), the Rhode Island Turnpike and Bridge Authority contracted with Bethlehem Steel to construct and paint a suspension bridge. The Authority sued for breach of contract because the paint started peeling even before the completion of the bridge. *Id.* The lower court awarded the Authority more than $4.5 million, almost a quarter of the total contract price of $19 million. *Id.* at 356. The Supreme Court of Rhode Island affirmed the award of damages, rejecting arguments that it was excessive and

4.

rejecting a measure of damages that amounted to diminution in value. The Court stated that the award did not amount to economic waste, contrasting *Jacob & Youngs v. Kent*. Second, the Court stated that the ultimate test of reasonableness was met, based on the difficulty of the repair work. As will be seen, that was the case with the F-1 Pier as well. Cost of repair is the appropriate measure in this case of non-saleable property.

## II. GARGRAVE, AS A REPRESENTATIVE OF THE LLOYD'S MARKET, CAN SUE FOR THE FULL CLAIM.

The Defendants have previously argued to this Court that Plaintiff Gargrave has less than 100% of the Port's claim and the insurers' subrogation claim to present at trial. The Defendants lost the last time they presented this argument, and must lose again. As the Defendants well know, Plaintiff is suing in a representative capacity, on his own behalf and on behalf of all of the insurers on the risk. "Plaintiff appears herein on its own behalf, and on behalf of all other Lloyd's Underwriters who subscribed …. to a certain policy of insurance, providing first-party property insurance to the Port Authority of Guam." Plaintiff's First Amended Complaint, ¶ 3.

In opposition to this Court's Order to Show Cause Re: Jurisdiction, the Defendants argued that each and every insurer had to be joined as a party, and all had to be diverse. The Court rejected that argument, citing *Corfield v. Dallas Glen Hills L.P.*, 355 F.3d 853, 864-65 (5th Cir. 2003), cert. denied, 124 S.Ct. 2421 (2004), which holds that diversity jurisdiction exists when a lead Underwriter sues on behalf of all of the following Underwriters (as is the case here). *See* Memorandum Order Re Jurisdiction, filed herein on March 24, 2005 (The Honorable A. Wallace Tashima, sitting by designation), pp. 3-5. That is the law of the case, and Black's Motion in Limine must fail.

///

///

### III. THE ISSUE OF TOTAL DAMAGES MUST BE LEFT FOR TRIAL

This Court's Order, filed herein April 8, 2005, specifically refused to set a figure limiting the amount of the claims Plaintiff could make at trial. *Id.*, page 9. That issue was left, quite appropriately, for trial.

Since those motions were ruled on, the Port has executed a written assignment to the Plaintiff of its policy deductible, adjusting fees and certain other claims. *See* Exhibit "A" hereto, previously provided to Defendants. Those claims will also be presented at trial. Finally, Plaintiff has its own, non-subrogation claims, for the out-of-pocket costs and expenses it incurred in the adjustment of this claim. Those matters were not before the Court, and are not addressed by the Court's Order of April 8, 2005. Those claims, too, will be presented at the time of trial.

### IV. CONCLUSION

For the reasons state above, Black's Motion in Limine must be denied.

DATED: Hagåtña, Guam, October 28, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on October 28, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S OPPOSITION TO DEFENDANT BLACK CONSTRUCTION'S MOTIONS IN LIMINE TO EXCLUDE EVIDENCE OF AMOUNTS PAID TO SETTLE PROPERTY INSURANCE CLAIM, TO LIMIT CLAIM TO 22% OF TOTAL DAMAGE AND TO LIMIT CLAIM TO DAMAGES PLED** upon Defendants' Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Klemm Blair Sterling & Johnson, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and
>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 28th day of October, 2005 at Hagåtña, Guam.

_____
DAVID LEDGER

SANFRAN1\34730\1 123206.000

7.
4824-2371-7120.1.055639-00001
Case 1:03-cv-00009  Document 311  Filed 10/28/2005  Page 7 of 10

# EXHIBIT A

## SUPPLEMENTAL ASSIGNMENT TO INSURERS

Date: 04/10/03

Re: Port Authority of Guam, F-1 Pier Earthquake Damage

For valuable consideration received, including but not limited to payment of $7.5 million in connection with damage caused by the earthquake which occurred in Guam on October 13, 2001, the insured Port Authority of Guam, by its duly authorized representative whose signature appears below, hereby assigns, transfers and conveys without limitation to the S.J. Gargraves Syndicate at Lloyds (hereinafter the "Assignee"), for and on behalf of itself and the other insurers of the property of the Port Authority of Guam under cover note no. 99HV0067F, all claims against third parties, wherever located, arising out of or connected in any way to the damage to property belonging to the Port Authority of Guam known as the F-1 pier and related structures and equipment (hereinafter the "F-1 Pier"). This Assignment to Insurers ("Assignment") encompasses and includes, without limitation, the right to recover the Port Authority of Guam's deductible under the policy of insurance issued by S.J. Gargrave Syndicate at Lloyds and others, evidenced by cover note no. 99HV0067F, in the amount of $500,000. Also included herein are claims by the Port Authority of Guam for damage to catwalks, manifolds, fire mains, water lines, electric lines, cargo pipe lines, vessel mooring equipment and other property and equipment located on or connected to the F-1 pier and dolphins, and for lost rent, business interruption, shortening of the service life of the F-1 Pier and weakening of the structure of the F-1 Pier.

This Assignment supplements, clarifies and amplifies that certain Loss and Subrogation Form (the "Form") executed herein by the Port Authority of Guam on January 16, 2003 and corrected on April 10, 2003, which Form is referenced herein but is neither withdrawn nor

superceded hereby. It is intended that the Assignee shall hold, own and be entitled to pursue the rights assigned herein as Assignee, and not merely as a Subrogee, and that the Assignee shall have the right to pursue uninsured claims formerly belonging to the Port Authority of Guam, and assigned hereby, separate and apart from claims and rights the Assignee holds and enjoys as a Subrogee on account of insurance payments made to the Port Authority of Guam.

WITNESS _____

INSURED _____
Port Authority of Guam

DATE 4/27/05

SANFRAH\03329\0 123206.000

- 2 -

19 - 2