ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



FILED
DISTRICT COURT OF GUAM

OCT 28 2005

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT WINZLER & KELLY CONSULTING ENGINEERS' MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY; DECLARATION OF SERVICE** |

Plaintiff S.J. GARGRAVES SYNDICATE AT LLOYDS (hereinafter "Plaintiff") hereby files its Opposition to Winzler & Kelly Consulting Engineers' Motion in Limine To Exclude Expert Testimony (hereinafter "Motion in Limine") as follows:

By focusing on irrelevant material and taking quotes out of context, Defendant Winzler & Kelly Consulting Engineers (hereinafter "Winzler & Kelly") would have the Court prevent Plaintiff's expert structural engineer Elliott Boone from testifying at trial. Winzler & Kelly's motion must be denied.

This is a case about structural engineering, not seismology. Winzler & Kelly were hired by Black as structural engineers, not seismologists. While it is true that an earthquake caused the damage to the F1 Pier at Guam, this is a case about defective design by Winzler & Kelly to withstand earthquakes, inappropriate approval of that design by EMPSCO, and defective construction by Black. The appropriate expertise which is required at trial in this matter is structural engineering, and Mr. Boone is a distinguished, licensed structural engineer.

The heart of this case is the admitted fact that Winzler & Kelly did no engineering calculations whatsoever to support its haphazard design, and that its design failed to meet the Uniform Building Code ("U.B.C."). The Port's repair project, of course, was required to meet the U.B.C. requirements. EMPSCO's Scope of Work, attached hereto as Exhibit "A", at ¶ 3.5 clearly lists the U.B.C. as a Design Parameter. The U.B.C. addresses many aspects of designing structures to withstand earthquakes. It requires, in § 1624.1, Minimum Seismic Design, that "Structures and portions thereof shall, as a minimum, be designed and constructed to resist the effects of seismic ground motions as provided in this section." *See* Exhibit "B" hereto, page 2-11. The Pier is, of course, a structure. *Id.*, page 2-12. The Code also provides, in § 1627.1, Basis for Design, that "The minimum design seismic forces shall be those determined in accordance with the static lateral force procedure of Section 1628 ..." *Id.*, page 2-14. Finally, "Structures shall be designed for seismic forces coming from any horizontal direction." *Id.*, page 2-16.

Bruce Swanney, Winzler & Kelly's structural engineer who prepared its design which is at issue herein, testified clearly that "We used the project design criteria, which – of which the uniform building code was part ..." *See* Exhibit "C" hereto, page 108, lines 22-23. "It was the uniform building code, which was the current code in Guam ..." *Id.*, page 109, lines 6-7.

It is irrelevant that Mr. Boone is not a seismologist; when asked "Do you consider yourself an expert?", he answered "Expert – yes, I consider myself an expert." *See* Boone Deposition, page 29, lines 7-8, attached to Winzler & Kelly's Motion in Limine. Furthermore, when asked "And how much of your life have you spent studying this area [earthquake design]?", he answered "I've dealt with it for most of my career." *Id.*, lines 14-16.

Mr. Boone relied, for computer analysis, on a subcontractor which his company regularly uses, Integrated Design Services. *See* discussion in Boone Deposition, pages 77-78, attached to Winzler & Kelly's Motion in Limine. Since they are specialist structural engineers, as well as experts in computer-assisted design and finite element analysis, it was perfectly reasonable for Mr. Boone to rely on Integrated Design's computer analysis and services in formulating his opinions and trial testimony. *See, Legier and Materne v. Great Plains Software*, 2005 U.S. Dist. LEXIS 17686 (E.D. La. 2005) (defendant's Daubert motion to preclude expert's testimony denied; expert can rely on work done by another, non-testifying expert; questions regarding the sources and bases of an expert's opinion are for the jury to consider).

After the computer runs were completed, Mr. Hilmy of Integrated Design Services and Mr. Boone discussed the results and conclusions, before Mr. Boone formed his opinions and wrote his report. Boone Deposition, *supra*, page 144.

Mr. Boone was deposed over three days in this matter on May 12 and 13, 2005, and again on October 17, 2005. By reading a bit more than the short snippets to which Winzler & Kelly

3.

points in its Motion in Limine, it is clear that Mr. Boone is functioning in this case as an expert structural engineer, dealing with seismic loads, as the U.B.C. requires design engineers to do, and that this is both within his area of expertise and the kind of work he normally does.

> Q. Now, when you did your analysis of the Winzler & Kelly design, was it your purpose to compare the design with minimum code requirements, or compare their design with what you consider to be good engineering practice?
>
> A. I think both. But minimum code requirements would have been the minimum.

Boone Deposition, page 222, lines 12-18, attached to the Winzler & Kelly Motion.

## CONCLUSION

Winzler & Kelly sets up a straw man, only to knock it down. Plaintiff did not tender Mr. Boone as an expert seismologist, but rather as an expert structural engineer. The issues in this case involve structural engineering, the Uniform Building Code, and Winzler & Kelly's failure to do any calculations to support its design. The fact that he stated in his depositions that Winzler & Kelly's design failed to meet Uniform Building Code § 1624.1, Minimum Seismic Design, does not make Mr. Boone a seismologist, nor does this case require the testimony of a seismologist, or Plaintiff would have retained one. Mr. Boone does have the necessary credentials, a license and over thirty years of experience as a structural engineer.

Winzler & Kelly's Motion should be denied.

DATED: Hagåtña, Guam, October 28, 2005.

CARLSMITH BALL LLP

_____
DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on October 28, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S REPLY TO WINZLER & KELLY'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE REFERENCE TO DAMAGE BY SHIPS** upon Defendants' Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Klemm Blair Sterling & Johnson, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and
>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 28th day of October, 2005 at Hagåtña, Guam.

_____
DAVID LEDGER

SANFRAN1\34726\1 123206.000

# EXHIBIT A

## SCOPE OF WORK

## FOR

**FILE COPY**

## REPAIRS AND IMPROVEMENTS TO EXISTING F-1 FUEL PIER (SHELL PIER)

1. **INTENT AND DESCRIPTION**

   The Port Authority of Guam is intending to correct deficiencies, repair damages and construct improvements to existing Fuel Pier "F-1" (Shell Pier). The purpose of this contract is to obtain professional services for the design of such repairs and improvements. The project includes the inspection, identification of necessary repairs to existing dolphin, main wharf, walkway and improvements to existing Fuel Pier "F-1". The project also includes all the required soil investigation, shop drawing and catalog submittal review, and construction consultation.

2. **LOCATION**

   The project is located at Pier "F-1" (Shell Pier) Apra Harbor, Cabras Islands Guam, M.I.

3. **DESIGN PARAMETERS**

   1. Report on damaged structures F-1 Facility Guam for Shell Guam, Inc. prepared by Candac Limited dated August 1993.
   2. Structural Assessment of the Foxtrot (F-1) Pier, Apra Harbor prepared by N.C. Macario & Associates, Inc.
   3. Ultra Sonic gauging report, main pier support pillars pier (F-1) Guam, prepared by Guam Oceaneers/N.C. Macario & Associates, Inc.
   4. Subsurface Soil Investigation Foxtrot 1 Pier Facility Improvement/Repair Cabras Island and prepared by Geo-Engineering & Testing, Inc. dated July 13, 1993.
   5. Uniform Building code (UBC) - 1994 Edition.
   6. American Concrete Institute (ACI) Code - 1989 Edition.

# EXHIBIT B

## SECTION 1624 — GENERAL

**1624.1 Minimum Seismic Design.** Structures and portions thereof shall, as a minimum, be designed and constructed to resist the effects of seismic ground motions as provided in this section.

**1624.2 Seismic and Wind.** When the code-prescribed wind design produces greater effects, the wind design shall govern, but detailing requirements and limitations prescribed in this and referenced sections shall be followed.

## SECTION 1625 — DEFINITIONS

For the purposes of this section certain terms are defined as follows:

**BASE** is the level at which the earthquake motions are considered to be imparted to the structure or the level at which the structure as a dynamic vibrator is supported.

**BASE SHEAR**, $V$, is the total design lateral force or shear at the base of a structure.

**BEARING WALL SYSTEM** is a structural system without a complete vertical load-carrying space frame. See Section 1627.6.2.

**BOUNDARY ELEMENT** is an element at edges of openings or at perimeters of shear walls or diaphragms.

**BRACED FRAME** is an essentially vertical truss system of the concentric or eccentric type which is provided to resist lateral forces.

**BUILDING FRAME SYSTEM** is an essentially complete space frame which provides support for gravity loads. See Section 1627.6.3.

**COLLECTOR** is a member or element provided to transfer lateral forces from a portion of a structure to vertical elements of the lateral-force-resisting system.

**CONCENTRICALLY BRACED FRAME** is a braced frame in which the members are subjected primarily to axial forces.

**DIAPHRAGM** is a horizontal or nearly horizontal system acting to transmit lateral forces to the vertical resisting elements. The term "diaphragm" includes horizontal bracing systems.

**DIAPHRAGM CHORD** is the boundary element of a diaphragm or shear wall which is assumed to take axial stresses analogous to the flanges of a beam.

**DIAPHRAGM STRUT** (drag strut, tie, collector) is the element of a diaphragm parallel to the applied load which collects and transfers diaphragm shear to the vertical resisting elements or distributes loads within the diaphragm. Such members may take axial tension or compression.

**DRIFT.** See "story drift."

**DUAL SYSTEM** is a combination of moment-resisting frames and shear walls or braced frames designed in accordance with the criteria of Section 1627.6.5.

**ECCENTRICALLY BRACED FRAME (EBF)** is a steel-braced frame designed in conformance with Section 2211.10.

**ESSENTIAL FACILITIES** are those structures which are necessary for emergency operations subsequent to a natural disaster.

**FLEXIBLE ELEMENT** or system is one whose deformation under lateral load is significantly larger than adjoining parts of the system. Limiting ratios for defining specific flexible elements are set forth in Section 1628.5 or 1630.2.

**HORIZONTAL BRACING SYSTEM** is a horizontal truss system that serves the same function as a diaphragm.

**LATERAL-FORCE-RESISTING SYSTEM** is that part of the structural system assigned to resist lateral forces.

**MOMENT-RESISTING FRAME** is a frame in which members and joints are capable of resisting forces primarily by flexure.

**MOMENT-RESISTING WALL FRAME (MRWF)** is a masonry wall frame especially detailed to provide ductile behavior and designed in conformance with Section 2108.2.5.

**ORDINARY BRACED FRAME (OBF)** is a steel-braced frame designed in accordance with the provisions of Section 2211.8 or 2212.6, or concrete-braced frame designed in accordance with Section 1921.

**ORDINARY MOMENT-RESISTING FRAME (OMRF)** is a moment-resisting frame not meeting special detailing requirements for ductile behavior.

**ORTHOGONAL EFFECTS** are the effects on structural elements common to the resisting systems along two orthogonal axes due to earthquake forces acting in a direction other than those axes.

**P$\Delta$ EFFECT** is the secondary effect on shears, axial forces and moments of frame members induced by the vertical loads acting on the laterally displaced building frame.

**SHEAR WALL** is a wall designed to resist lateral forces parallel to the plane of the wall (sometimes referred to as a vertical diaphragm).

**SOFT STORY** is one in which the lateral stiffness is less than 70 percent of the stiffness of the story above. See Table 16-L.

**SPACE FRAME** is a three-dimensional structural system, without bearing walls, composed of members interconnected so as to function as a complete self-contained unit with or without the aid of horizontal diaphragms or floor-bracing systems.

**SPECIAL CONCENTRICALLY BRACED FRAME (SCBF)** is a steel-braced frame designed in conformance with the provisions of Section 2211.9.

**SPECIAL MOMENT-RESISTING FRAME (SMRF)** is a moment-resisting frame specially detailed to provide ductile behavior and comply with the requirements given in Chapter 19 or 22.

**STORY** is the space between levels. Story $x$ is the story below Level $x$.

**STORY DRIFT** is the displacement of one level relative to the level above or below.

**STORY DRIFT RATIO** is the story drift divided by the story height.

**STORY SHEAR,** $V_x$, is the summation of design lateral forces above the story under consideration.

**STRENGTH** is the capacity of an element or a member to resist factored load as specified in Chapters 16, 19, 21 and 22.

**STRUCTURE** is an assemblage of framing members designed to support gravity loads and resist lateral forces. Structures may be categorized as building structures or nonbuilding structures.

**SUBDIAPHRAGM** is a portion of a larger wood diaphragm designed to anchor and transfer local forces to primary diaphragm struts and the main diaphragm.

**VERTICAL-LOAD-CARRYING FRAME** is a space frame designed to carry all vertical gravity loads.

**WEAK STORY** is one in which the story strength is less than 80 percent of that of the story above. See Table 16-L.

Case 1:03-cv-00009    Document 312    Filed 10/28/2005    Page 10 of 16

**1627.1 Basis for Design.** The procedures and limitations for the design of structures shall be determined considering zoning, site characteristics, occupancy, configuration, structural system and height in accordance with this section. The minimum design seismic forces shall be those determined in accordance with the static lateral force procedure of Section 1628 except as modified by Section 1629.5.3. One- and two-family dwellings in Seismic Zone 1 need not conform to the provisions of this section.

**1627.2 Seismic Zones.** Each site shall be assigned to a seismic zone in accordance with Figure 16-2. Each structure shall be assigned a zone factor, $Z$, in accordance with Table 16-I.

**1627.3 Site Geology and Soil Characteristics.** Soil profile type and site coefficient, $S$, shall be established in accordance with Table 16-J.

**1627.4 Occupancy Categories.** For purposes of earthquake-resistant design, each structure shall be placed in one of the occupancy categories listed in Table 16-K. Table 16-K lists importance factors, $I$, and review requirements for each category.

**1627.5 Configuration Requirements.**

**1627.5.1 General.** Each structure shall be designated as being structurally regular or irregular.

**1627.5.2 Regular structures.** Regular structures have no significant physical discontinuities in plan or vertical configuration or in their lateral-force-resisting systems such as the irregular features described below.

**1627.5.3 Irregular structures.**

1. Irregular structures have significant physical discontinuities in configuration or in their lateral force-resisting systems. Irregular features include, but are not limited to, those described in Tables 16-L and 16-M. Structures in Seismic Zone 1 and in Occupancy Category 4 in Seismic Zone 2 need be evaluated only for vertical irregularities of Type 5 (Table 16-L) and horizontal irregularities of Type 1 (Table 16-M).

2. Structures having one or more of the features listed in Table 16-L shall be designated as if having a vertical irregularity.

> **EXCEPTION:** Where no story drift ratio under design lateral forces is greater than 1.3 times the story drift ratio of the story above the structure may be deemed to not have the structural irregularities of Type 1 or 2 in Table 16-L. The story drift ratio for the top two stories need not be considered. The story drifts for this determination may be calculated neglecting torsional effects.

3. Structures having one or more of the features listed in Table 16-M shall be designated as having a plan irregularity.

**1627.6 Structural Systems.**

**1627.6.1 General.** Structural systems shall be classified as one of the types listed in Table 16-N and defined in this subsection.

**1627.6.2 Bearing wall system.** A structural system without a complete vertical load-carrying space frame. Bearing walls or bracing systems provide support for all or most gravity loads. Resistance to lateral load is provided by shear walls or braced frames.

**1627.6.3 Building frame system.** A structural system with an essentially complete space frame providing support for gravity loads. Resistance to lateral load is provided by shear walls or braced frames.

**1627.6.4 Moment-resisting frame system.** A structural system with an essentially complete space frame providing support for gravity loads. Moment-resisting frames provide resistance to lateral load primarily by flexural action of members.

**1627.9.2 Undefined structural systems.** Undefined structural systems shall be shown by technical and test data which establish the dynamic characteristics and demonstrate the lateral-force resistance and energy absorption capacity to be equivalent to systems listed in Table 16-N for equivalent $R_w$ values.

**1627.9.3 Irregular features.** All structures having irregular features described in Table 16-L or 16-M shall be designed to meet the additional requirements of those sections referenced in the tables.

**1627.10 Alternative Procedures.**

**1627.10.1 General.** Alternative lateral-force procedures using rational analyses based on well-established principles of mechanics may be used in lieu of those prescribed in these provisions.

**1627.10.2 Seismic Isolation.** Seismic isolation, energy dissipation and damping systems may be used in the design of structures when approved by the building official and when special detailings are used to provide results equivalent to those obtained by the use of conventional structural systems. For alternate design procedures on seismic isolation systems, refer to Appendix Chapter 16, Division III, Earthquake Regulations for Seismic-isolated Structures.

## SECTION 1628 — MINIMUM DESIGN LATERAL FORCES AND RELATED EFFECTS

**1628.1 General.** Structures shall be designed for seismic forces coming from any horizontal direction.

The design seismic forces may be assumed to act noncurrently in the direction of each principal axis of the structure, except as required by Section 1631.1.

Seismic dead load, $W$, is the total dead load and applicable portions of other loads listed below.

1. In storage and warehouse occupancies, a minimum of 25 percent of the floor live load shall be applicable.

2. Where a partition load is used in the floor design, a load of not less than 10 pounds per square foot (psf) (0.48 kN/m$^2$) shall be included.

3. Design snow loads of 30 pounds per square foot (psf) (1.44 kN/m$^2$) or less need not be included. Where design snow loads exceed 30 psf (1.44 kN/m$^2$) the design snow load shall be included, but may be reduced up to 75 percent where consideration of siting, configuration and load duration warrant when approved by the building official.

4. Total weight of permanent equipment shall be included.

**1628.2 Static Force Procedure.**

**1628.2.1 Design base shear.** The total design base shear in a given direction shall be determined from the following formula:

$$V = \frac{ZIC}{R_w} W \qquad (28\text{-}1)$$

$$C = \frac{1.25 S}{T^{2/3}} \qquad (28\text{-}2)$$

The value of $C$ need not exceed 2.75 and may be used for any structure without regard to soil type or structure period.

Case 1:03-cv-00009    Document 312    Filed 10/28/2005    Page 12 of 16

# EXHIBIT C

IN THE DISTRICT COURT OF GUAM

S.J. GARGRAVE SYNDICATE AT ) 
LLOYDS, )
      Plaintiff, )
)
      v. ) Civil Case No. CV03-00009
)
BLACK CONSTRUCTION CORPORATION, )
WINZLER & KELLY, and ENGINEERING )
MANAGEMENT & PLANNING SERVICES )
CORPORATION, )
)
      Defendants. )
)

## VIDEOTAPED DEPOSITION OF BRUCE SWANNEY

Tempe, Arizona
March 25, 2004
9:45 a.m.

Prepared for:
FORREST BOOTH, ESQ.
(Certified Copy)

Reported by:
AMY MERRIFIELD, RPR
AZ CCR #50097
IL CSR #84-4027

**BROWN & TOLEU ltd.**
Court Reporters

4500 S. Lakeshore Dr., Suite 280
Tempe, Arizona 85282

Telephone (602) 254-5479 or (480) 491-8500
FAX (602) 254-5013 or (480) 491-8506

1      Q.     Okay. Whereas a compression load would be
2 the cap pushing down on the pile?
3      A.     Right.
4      Q.     And I take it that the compression forces
5 were not terribly significant either because the pile
6 is -- the weight of the concrete is always pressing
7 down on the pile, right?
8      A.     The compression forces are very
9 significant design of the piles. They weren't very
10 significant in the design of the attachment --
11      Q.     Because of the connection?
12      A.     Right.
13      Q.     Sorry.
14      A.     Yeah.
15      Q.     That was my question. There were not of
16 great concern with regard to the connection between the
17 pile and the cap?
18      A.     Right. Right.
19      Q.     Okay. What forces did you anticipate that
20 the bolts would see in tension as you were putting
21 together the design which is Exhibit 17?
22      A.     We used the project design criteria,
23 which -- of which the uniform building code was part
24 of, and the soils report.
25      Q.     And were the project design criteria

1  something that were produced originally by EMPSCO?
2      A.    Yes. They're noted on EMPSCO's drawings.
3      Q.    All right. Did you examine those criteria
4  to see whether they seemed to be appropriate?
5      A.    Not specifically for that purpose. I --
6  they -- it was the uniform building code, which was the
7  current code in Guam, and it was the soils report
8  specific to the site. I had no reason to believe they
9  wouldn't be appropriate.
10     Q.    Okay. I guess my question was a little
11 different. My question is: Did you simply accept
12 them, or did you review them in the process of putting
13 together Exhibit 17 to see whether you agreed that they
14 were appropriate?
15     A.    We had -- we were a little bit of a
16 fortunate position in that we had done the work for
17 Shell previously, and the design parameters -- the
18 design capacity of the -- of the pile, the tension
19 force, as stated in the soils report, we were able --
20 we knew the original design of the pier was designed to
21 do that through that parameter. We had a very strong
22 indication that that was the case.
23     Q.    When you say "the original design," you
24 mean when it was originally built?
25     A.    Yes.