ORIGINAL

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

FILED
DISTRICT COURT OF GUAM

OCT 2 8 2005

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT THAT THE PORT WAS A THIRD PARTY BENEFICIARY OF WINZLER'S SUBCONTRACT WITH BLACK; DECLARATION OF SERVICE** |

Plaintiff S.J. GARGRAVES SYNDICATE AT LLOYDS (hereinafter "Plaintiff") hereby

opposes Winzler's Motion in Limine to Preclude Evidence or Argument that The Port Was a

Third Party Beneficiary of Winzler & Kelly's Subcontract with Black ("Motion in Limine") as follows.

## I.    INTRODUCTION

Winzler & Kelly ("Winzler")'s Motion in Limine must fail. The **sole** reason for entering into the Winzler/Black contract was to benefit the Port (by reducing the contract price). Winzler's Motion in Limine is Winzler's third attempt to argue that Plaintiff was not third party beneficiary to the Winzler-Black contract. Winzler failed with this argument the first time, in its attempt have Plaintiff's Fifth Cause of Action against it dismissed. Winzler's first Motion for Summary Judgment on Plaintiff's Fifth Cause of Action was filed on November 5, 2004. It was denied by Judge Robert Clive Jones (sitting by designation) on April 7, 2005. Winzler failed the second time when it filed a second motion for summary judgment, which the Court denied on October 7, 2005.

Winzler's Motion in Limine 1) is based on the incorrect assertion that the Port Authority of Guam (hereinafter "the Port") was merely an incidental beneficiary of the contract entered into between Winzler and Black Construction; 2) is an issue that has already been denied on two previous occasions by the District Court of Guam (Judge Robert Clive Jones sitting by designation on April 7, 2005 and by Magistrate Judge Manibusan on October 7, 2005); and 3) must be denied again because, at the very least, a genuine issue of material fact exists sufficient to preclude this Court from granting the motion and allowing the issue to be presented to the jury. Winzler now makes a third attempt at a dispositive motion on Plaintiff's Fifth Cause of Action.

## II.    FACTS

In August of 1993, the island of Guam suffered a severe earthquake, estimated to be a magnitude of 8.0. The earthquake did significant damage to a number of the piers, docks,

dolphins and other facilities and property owned and operated by the Port. Defendant Black Construction entered into a contract with Defendant EMPSCO for design service and to advise it concerning repairing the damage which the earthquake had caused. This work included studying and assessing the damage, preparing initial drawings for repairing it, performing structural and other engineering calculations, and preparing plans and specifications to put the work out to public bid.

Black Construction submitted a bid to repair the earthquake damage, which was accepted by the Port. Black Construction was retained to perform the repairs, pursuant to a written contract with the Port. During the course of the project, to reduce costs for the Port, Black Construction entered into a contract with Winzler Winzler (hereinafter the "Black-Winzler Contract"), to design a different repair method. Winzler did so. Black then suggested that a number of changes be made to the proposed work. The Port agreed and the repair work was performed on the basis of a design prepared by Winzler, which was developed pursuant to the contract. The Port was an intended third party beneficiary of that contract, as is evidenced, *inter alia*, by Winzler's direct dealings with the Port on the project. Pursuant to the Black-Winzler Contract, Winzler was to provide design and engineering calculations and related services for the project. Eventually, Winzler prepared drawing "VE-1", which stood for "value engineering", dated April 4, 1996. The purpose of the "value engineering" was to lower the cost of the project for the Port's benefit, not for Black's benefit. As such, the Port (and Plaintiff) were the intended third party beneficiaries of the Black-Winzler Contract.

## III. ARGUMENT

### A. Plaintiff's Status As A Third Party Beneficiary Is A Question Of Fact For The Jury To Decide

"Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract." Prouty v. Gores Tech. Group, 121 Cal.App.4[th] 1225 (2004) citing Bancomer, S.A. v. Sup. Ct., 44 Cal.App.4[th] 1450 (1996).

## B. The Cases Cited By Winzler Actually Support Plaintiff's Position That It Was A Third Party Beneficiary Of The Black-Winzler Contract

In its Motion in Limine, Winzler bases its assertion that Plaintiff was not an intended third party beneficiary on two main cases: Weseloh Family Ltd. P'ship v. K.L. Wessel Constr. Co., 125 Cal.App.4[th] 152 (2004); and Nelson v. Anderson Lumber Co., 140 Idaho 702, 711, 99 P.3d 1092 (2004). Those cases do not help Winzler's position, and in fact, are actually detrimental to Winzler's position that Plaintiff was not a third party beneficiary. Here, Winzler had direct written communications with the Port regarding its work on F-1 Pier and its dolphins. In Weseloh and Nelson, the promisor had no contact with the beneficiary, and the courts in those cases held that third party beneficiary status did not exist. However, in the case at bar, the promisor [Winzler] did have direct written communications, both with the Port's authorized representative, N.C. Macario, and with Port employees.

Those written communications between the Port and Winzler are evidenced as follows:

- Letter from the Port to Roland S. Miller, P.E. of Winzler dated December 12, 1996 (attached hereto as Exhibit "B").

- Letter from Roland S. Miller, P.E. of Winzler to the Port, dated December 16, 1996 (attached hereto as Exhibit "C"). Winzler copied this letter to the Port's representative, N.C. Macario.

- Facsimile from Bruce Swanney of Winzler to Port representative Macario dated December 16, 1996 (attached hereto as Exhibit "E"), which

accompanied the letter from Roland S. Miller, P.E. of Winzler to the Port dated December 16, 1996.

Weseloh and Nelson were decided based upon one common fact which is in contrast to the facts of the case at bar: the promisors there did not have direct contact, dealings or communications with the purported third party beneficiaries. Therefore, the courts ruled that the beneficiaries in each of those cases were merely incidental beneficiaries and were not entitled to maintain suits as intended third party beneficiaries. Winzler did in fact have direct communications with the Port regarding crucial elements of the project.

The Weseloh case addressed the issue of whether the defendant owed a duty of care to the plaintiff in a professional negligence case. There were no breach of contract issues before the court in Weseloh. Therefore, Weseloh provides Winzler no citable authority for the case at bar. The Weseloh court framed the issue as follows: "It is correct that the lack of privity of contract does not preclude imposition of a duty of care. Under these circumstances, does a duty in negligence exist?" *Id.* at p. 164. It appears, that by citing this case, Winzler is arguing that it should be held to a negligence standard.

Plaintiff Weseloh contracted with general contractor K.L. Wessel to construct buildings for Weseloh. Subcontractor Sierra Pacific built the retaining walls for the project. Sierra hired Randle (and his employer, Owen Engineering) as consultants on the retaining walls and to perform an inspection. "Randle was unaware that Weseloh owned the property. Neither Randle nor Owen ever (1) contracted with the Weseloh plaintiffs ..." *Id.* at pp. 159-160. Also, the Court noted that neither Randle nor Owen ever "had a role in the construction of the retaining walls." *Id.* at 663.

Plaintiff Weseloh sued various defendants including Randle and Owen for professional negligence, not breach of contract. In affirming the trial court's grant of summary judgment in favor of Randle and Owen, the Court held that defendants Owen and Randle did not owe a duty of care to plaintiff Weseloh. In determining whether a duty of care existed, the Court analyzed the "checklist" under Bily v. Arthur & Young Co., 3 Cal.4[th] 370 (1992) in determining whether a legal duty exists, in the absence of privity, between a plaintiff and defendants: 1) the extent to which the transaction was intended to affect the plaintiff; 2) the foreseeability of harm to him; 3) the degree of certainty that the plaintiff suffered injury; 4) the closeness of the connection between the defendant's conduct and the injury suffered; 5) the moral blame attached to the defendant's conduct; and 6) the policy in preventing future harm. *Id.* at p. 165.

As demonstrated by Winzler's direct communications with the Port, and the harm Winzler caused to the Port, Plaintiff meets all of the factors under the Bily test.

In Nelson, which Winzler also relies on, the court noted that there was no written contract in that case and stated "[t]hus, we must determine whether the Nelsons are intended or incidental beneficiaries of any oral contract that existed between Steinbruegge and Anderson or IBP." The Court found that "Nelsons did not engage in any negotiations with IBP or Anderson." *Id.* at p. 708-709.

The Court in Nelson held that the owner [Nelson] was not a third party beneficiary of the suppliers' [IBP and Anderson] contracts. In the case at bar, Winzler [the supplier of the services] did in fact have multiple direct communications with the Port [the owner]. The critical point is that all of Winzler's efforts were intended **solely** to benefit the Port. Nelson is wholly inapplicable to the case at bar and actually supports Plaintiff's/Port's position that it was an intended third party beneficiary.

Mr. Swanney's fax to Port representative Macario (Exhibit "E" hereto) shows that he did, in fact, have direct communication with the Port and its representative. *See also*, letter from Winzler's Roland Miller, P.E. sent directly to the Port, dated December 16, 1996, attached hereto as Exhibit "C". *See* other direct communications between Winzler and the Port attached hereto as Exhibits "B".

**C.      Plaintiff Was A Direct Third Party Beneficiary Of The Black-Winzler Contract Because Winzler's Work Was Solely For The Port's Benefit**

Winzler & Kelly's letter to Black dated April 10, 1997, attached hereto as Exhibit "D", stated, in part, as follows:

> Our engineers in California are very experienced in maritime structures and PAG [Port Authority of Guam] has benefited enormously from their expertise.
>
> Our solution for the rehabilitation of pile #3 has resulted in substantial savings for PAG compared to concrete encasement or the original procedure proposed by the Engineer-of-Record.

Winzler's reduction in the cost of the project in fact benefited **only** the Port; Black actually was paid **less** for its work.

In State of Kan. v. Stovall, 278 Kan. 777, 107 P.3d 1219, 1231 (2005), cited by Winzler in its Motion in Limine, the court held, in part, that:

> To be a third party beneficiary to a contract, the contract must be made for the third party's benefit as its object, and he must be the party intended to be benefited in order to be entitled to sue on it. [Citations omitted].

In the case at bar, Winzler's work (the design VE-1) was performed exclusively for the Port's benefit because it was intended to bring down the cost of the project which the Port paid. *See* excerpts from deposition of EMPSCO's liability expert, Albert Tsutsui, attached hereto as Exhibit "A", pp. 21-22, wherein he testified, in part:

Q.  Do you know how it came to be that Winzler & Kelly was involved in these drawings in this project.

A.  When Black Construction submitted a – or, I guess, a proposal, which was agreed by PAG along with their value engineering to bring the cost down for construction, those drawings were attached by Winzler & Kelly.

In the case at bar, Winzler's work only benefited the Port. The sole reason for the Black-Winzler contract was to lower the cost of the project for the Port. Therefore, the Port/ Plaintiff was the intended third party beneficiary of that contract.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this court deny Winzler's Motion in Limine.

DATED: Hagåtña, Guam, October 28, 2005.

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on October 28, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S OPPOSITION TO WINZLER & KELLY'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT THAT THE PORT WAS A THIRD PARTY BENEFICIARY OF WINZLER'S SUBCONTRACT WITH BLACK**; upon Defendants' Counsel of record as follows:

Robert J. O'Connor, Esq.
Daniel J. Berman, Esq.
Berman O'Connor Mann & Shklov
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910

Thomas C. Sterling, Esq.
Klemm Blair Sterling & Johnson, P.C.
Suite 1008, Pacific News Building
238 Archbishop Flores Street
Hagåtña, Guam 96910

and

Thomas M. Tarpley, Esq.
Law Offices of Tarpley & Moroni, LLP
Suite 402, Bank of Hawaii Building
134 West Soledad Avenue
Hagåtña, Guam 96910

Executed this 28th day of October, 2005 at Hagåtña, Guam.

DAVID LEDGER

# EXHIBIT A

IN THE DISTRICT COURT OF GUAM

S.J. GARGRAVE SYNDICATE AT ) CIVIL CASE NO. CV03-00009
LLOYDS, )
)
Plaintiff, )
)
vs. )
)
BLACK CONSTRUCTION CORPORATION, )
WINZLER & KELLY, and ENGINEERING)
MANAGEMENT & PLANNING SERVICES )
CORPORATION, )
)
Defendants. )
_____)

TRANSCRIPT OF

DEPOSITION OF

## ALBERT H. TSUTSUI

April 25, 2005



PREPARED BY: GEORGE B. CASTRO
**DEPO RESOURCES**
#49 Anacoco Lane
Nimitz Hill Estates
Piti, Guam 96915
Tel:(671)688-DEPO * Fax:(671)472-3094

1  And you have been designated by Mr. Tarpley's
2  client, EMPSCO, as his expert witness for that
3  trial. So, I'm here to ask you some questions
4  today about the opinions you're going to offer
5  at trial.

6  A  Yes.

7  MR. TARPLEY:  Just to correct the
8  record, the trial's in Guam, not Seattle.

9  MR. SMITH:  Did I say Seattle?  I'm
10  sorry.

11  MR. TARPLEY:  Yeah.

12  MR. SMITH:  In Guam, not Seattle.
13  Sorry.

14  BY MR. SMITH:

15  Q  Could you state your full name for the
16  record?

17  A  Albert H. Tsutsui.

18  Q  Could you describe your educational
19  background for me briefly, please?

20  A  Elementary and high school, I finished
21  on Guam; Father Duenas. And went to University
22  of Illinois and obtained my Bachelor of Arts in
23  Architecture. And obtained my professional
24  licenses in California, reciprocity for the ten
25  Western states as well as in Hawaii and Guam

1   engineer, Winzler & Kelly, for a particular
2   structural correction to be done.
3       Q   Okay.  Do you know whether or not Mr.
4   Arce did any of his own calculations related to
5   this drawing?
6       A   No, he did not.  His was not required.
7       Q   Okay.  Was somebody required to do
8   calculations?
9       A   Yes, the Engineer of Record, whoever
10  designed and stamped those drawings is suppose
11  to submit the structure drawings for that.
12      Q   Okay.  And it's your opinion that that
13  Engineer of Record was Winzler & Kelly;
14  correct?
15      A   Yes.
16      Q   Okay.  Have you ever seen any
17  calculations made by Winzler & Kelly?
18      A   I did not.
19      Q   Okay.  I'm going to ask a little
20  different question.  You've never seen any; are
21  you aware that there are any, but you're not
22  just sure?
23      A   I'm not sure.
24      Q   Okay.  Do you know how it came to be
25  that Winzler & Kelly was involved in these

1  drawings in this project?

2    A    When Black Construction submitted a --

3  or, I guess, a proposal, which was agreed by

4  PAG along with their value engineering to bring

5  the cost down for construction, those drawings

6  were attached by Winzler & Kelly.

7    Q    Okay.  Now, look at the last paragraph

8  of your report.  Do you see that there?

9    A    Uh-huh.

10   Q    Now we've already talked about whether

11 or  not  EMPSCO  had  any  responsibility  for

12 design, specifications, calculations and plans,

13 and I take it it's your opinion they did not.

14 Is that correct?

15   A    That's correct.

16   Q    Okay.    And  you  also  say  that  EMPSCO

17 should  not  have  had  its  name  on  the  drawings;

18 is that correct?

19   A    That's correct.

20   Q    Okay.  So, any activities undertaken by

21 EMPSCO after the termination letter, it's your

22 opinion then that that was simply *Gratis* work

23 being provided by EMPSCO to Port of Guam; is

24 that right?

25   A    That's correct.

**DEPO RESOURCES**
George B. Castro
Court Reporter
Tel.(671)688-DEPO * Fax(671)472-3094

# EXHIBIT B



# PORT AUTHORITY OF GUAM
## ATURIDAT I PUETTON GUAHAN
GOVERNMENT OF GUAM
1026 Cabras Highway
Suite 201
Piti, Guam 96925

Telephone: (671) 477-5931/35
(671) 477-2683/85
Telex: (721) 6689 PAGGUM
Facsimile: (671) 477-2689

DEC 12 1996



Mr. Roland S. Miller, P.E.
Asia Pacific Regional Manager
Winzler & Kelly Consulting Engineers
Suite 904, GCIC Bldg.
414 West Soledad Avenue
Agana, Guam 96932

Subject: F-1 Fuel Pier, Testing Requirements for Welding Work

Hafa Adai Mr. Miller:

I would like to request the testing requirements for all welding work done on F-1 Fuel Pier. Winzler & Kelly are the Engineering Consultants for Black Construction Corporation, for the replacements of all piles sections. Therefore, you must inform us on the necessary testing requirements in order for the Port Authority to accept Black Construction's Work.

Please provide to my office the Weld Testing Requirements, within three (3) working days from the date of this letter. On behalf of the Port Authority, I thank you in advance for your attention on this matter.

Si Yu'os Ma'ase,

E.C. BERMUDES
General Manager

cc:  CIP
     Mr. Lito Gutierrez/Black
        Construction Corp.
     N.C. Macario & Associates

00257



Commonwealth Now!

# EXHIBIT C

# WINZLER & KELLY

Suite 904, GCIC Building
414 West Soledad Avenue
Agana, Guam 96910 USA
Tel: (671) 472-6792, 472-6793
Fax: (671) 477-6229

December 16, 1996

Port Authority of Guam
1026 Cabras Highway, Suite 201
Piti, Guam 96925

attn : Captain E.C. Bermudes, General Manager

subj : Pier F (Foxtrot) 1, Weld Testing Requirements
      W&K #96424204

Dear Captain Bermudes:

Per your letter dated December 12, 1996, the testing requirements for the welds on this project are summarized in the American Welding Society publication AWS D3.6-93, Table 7 (attached). Test specimens are required to be tested in addition to the Visual Inspection requirements. The specific requirements are detailed in the sections of AWS D3.6-93 referenced in the table.

It is normal practice for this work to be performed by a certified independent testing agency under contract to the Owner or the Construction Manager.

Please call or fax if you have any questions.

Respectfully yours

Roland S. Miller, P.E.
Asia-Pacific Regional Manager

cc(fax):     Lito Gutierrez, Black Construction - 646-9086
             N.C. Macario - 646-0991

**SAIPAN OFFICE:**
Saipan Office Supply Bldg. B
Beach Rd., Garapan
Caller Box PPP 596, Box 10000
Saipan, MP 96950
Tel: (670) 234-0483, 234-5392
Fax: (670) 234-5615

**PALAU OFFICE:**
JR Professional Center
P.O. Box 1704, W105
Mekeril, Koror, Palau 96940
Tel/Fax: (680) 488-3738

**W K** CONSULTING ENGINEERS

00245

# EXHIBIT D

# WINZLER & KELLY
## CONSULTING ENGINEERS

414 West Soledad Ave., Suite 904, GCIC Bldg, Agana, Guam 96910
e-mail:winzkel@kuentos.guam.net
tel:(671) 472-6792/3   fax:(671) 477-6229

## FAX MEMORANDUM

*TO*          : LITO GUTIERREZ/ROD BISMONTE          *DATE:* 10Apr97

*COMPANY* : BLACK CONSTRUCTION CORPORATION
*FAX NO*   : 646-9086

*FROM*      : Bruce Swanney          *JOB NO:* 96424204

*RE*           : PIER F-1 - Engineering Fees

*TOTAL PAGES, including this sheet: 2*

*If transmission is incomplete or unreadable, please call or fax .*

The breakdown of our fees for this part of the project, as requested, is as follows:

1. Re-analysis (nonlinear modelling) to replicate observed field condition

W&K:SFO
Larry L. Lewis 10.0 @ $120/hr     = 1200
Scott L. Lewis 3.0 @ $60/hr       =  180
W&K:GUAM
Bruce Swanney 4.0 @ $105/hr       =  420

    Total                         = $1,800

2. Alternate repair, design, detail, review

W&K:GUAM
Bruce Swanney 8.0 @ $105/hr       =  840
Roland Miller 1.0 @ $120/hr       =  120
Mark Pachkoski 3.0 @ $45/hr       =  135

Expenses (office consumables)     =   25

    Total                         = $1,120

        TOTAL                    = $2,920

This work was a result of a field condition that was not identified on the construction documents. The condition being that pile #4 was bent below the mudline and could not be rehabilitated in the same manner as the other piles. This lead to pile #9 being observed as going into tension as the load was removed from pile #3. Work was suspended to enable us to determine, utilizing advanced analysis techniques, the structural actions taking place to judge the safety of the construction procedure.

00050

# WINZLER & KELLY
## CONSULTING ENGINEERS

*414 West Soledad Ave., Suite 904, GCIC Bldg, Agana, Guam 96910*
*e-mail:winzkel@kuentos.guam.net*          *tel:(671) 472-6792/3   fax:(671) 477-6229*

### *FAX MEMORANDUM*

LITO GUTIERREZ/ROD BISMONTE
10Apr97
BLACK CONSTRUCTION CORPORATION
PIER F-1 - Engineering Fees
page 2 of 2

Because of the urgency of the situation, our engineers worked evenings and through the weekend to find a solution to this difficult problem. Our engineers in California are very experienced in marine structures and PAG has benefitted enormously from their expertise.

Our solution for the rehabilitation of pile #3 has resulted in substantial savings for PAG compared to concrete encasement or the original procedure proposed by the Engineer-of-Record.

This is in addition to the considerable savings resulting from our previous determination that pile #4 did not require to be replaced.

Please call if you have any questions.

00051

*SENT BY : BWS*
*DATE/TIME : 041097/1900*

*file: rb27.fax*

# EXHIBIT E

# WINZLER & KELLY
## CONSULTING ENGINEERS

414 West Soledad Ave., Suite 904, GCIC Bldg, Agana, Guam 96910
tel:(671) 472-6792/3   fax:(671) 477-6229

## FAX MEMORANDUM

e-mail:winzkel@kuentos.guam.net

TO         : NEME MACARIO                          DATE: 16dec96

COMPANY :
FAX NO    : 646-0991

FROM      : Bruce Swanney                          JOB NO: 96424204

RE         : PIER F-1 : WELDING SPECIFICATIONS

### TOTAL PAGES, including this sheet: 2

*If transmission is incomplete or unreadable, please call or fax.*

Copy of letter to PAG

Please call or fax if you have any questions.

SENT BY : BWS
DATE/TIME : 121696/1630                            file: nm01.fax

00248