ORIGINAL ● ●

CARLSMITH BALL LLP

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



**FILED**
DISTRICT COURT OF GUAM

NOV - 3 2005

**MARY L.M. MORAN**
**CLERK OF COURT**

# IN THE DISTRICT COURT OF GUAM

S.J. GARGRAVE SYNDICATE
AT LLOYDS,

          Plaintiff,

    vs.

BLACK CONSTRUCTION CORPORATION,
WINZLER & KELLY CONSULTING
ENGINEERS, and ENGINEERING
MANAGEMENT & PLANNING SERVICES
CORPORATION,

          Defendants.

CIVIL CASE NO. CV03-00009

**SUPPLEMENTAL BRIEF RE
DAMAGES; DECLARATION OF
SERVICE**

Plaintiff S.J. Gargrave Syndicate at Lloyds provides this brief on damages to assist the Court with considering legal issues and jury instructions relating to damages, and to show why the proper measure of damages in this case is the cost plaintiff paid to repair the pier after the second earthquake.[1]

## I. GENERAL LAW ON DAMAGES

In Guam, the measure of damages for breach of contract is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. 20 Guam Code Ann. § 2201.[2] As evident by the language of section 2201, the goal of compensation in a breach of contract case is not just to restore the plaintiff to the position he would have been in had the wrong not been committed, but to award a sum to place the plaintiff in the position he would be in if the contract had been fulfilled. *See also Emery v. Caledonia Sand and Gravel Co., Inc.*, 374 A.2d 929, 933 (N.H. 1977) (citing C. McCormick, *Law of Damages* § 137 at 560-61 (1935)). This can be the cost to repair the property (the proper measure to be used in this case), or else any diminution in the value of the property.

The main limitations to a damages award are the prevention of economic waste and the disproportionality that would result if the award amounts to more than the actual harm suffered. As stated in *Corbin on Contracts* § 1089, "damages should be measured in the same way whether the breach be large or small; it should be determined by the cost of completion (the cost of curing the defects) except in a case in which actual completion (the actual curing of the defects) would cause unreasonable economic waste." If waste would result, the proper measure then is the difference between the value of full performance as promised and the value of the

---

[1] Plaintiff is also entitled to its attorneys' fees under the two contracts, plus adjusting fees, the Port's policy deductible, and interest.

[2] Section 2201 is derived from California Civil Code § 3300.

2

defective performance actually rendered. Moreover, "any reasonable doubt as to whether curing defects would cause such economic waste should be resolved against the contractor guilty of the breach; and on him should be put the burden of proof if there is dispute on the issue." *Id.*

The purpose of the binary rule is simple: undue hardship should not be imposed on a contractor when a minor defect exists that does not substantially lower the value of the project. In other words, unjust enrichment in which the owner pockets recovery should be prevented. The landmark case for economic waste is *Jacob & Youngs, Inc. v. Kent*, 129 N.E. 889 (1921), in which a contractor overlooked a contract requirement to provide plumbing pipe manufactured by a named manufacturer and instead installed plumbing pipe of equal quality manufactured elsewhere. After most of the pipe had been installed, the owner discovered the substitution and demanded that the contractor tear out and replace the installed pipe with the pipe made by the specified manufacturer. The contractor proved that the installed pipe was equal in every respect to the specified pipe and did not diminish the value of the owner's project in any respect. Judge Benjamin Cardozo ruled that the proper measure of damages was diminution in value rather than cost of replacement, and that destroying completed construction to install pipe of equivalent value would amount to economic waste.

## II.    MEASURING DAMAGES: COST OF REPAIR VS. DIMINUTION IN VALUE

### A.    Cost of Repair

While awarding a sum for diminution in value avoids economic waste (when the cost of repair does not involve an imprudent expense), the cost of repair method best ensures that the injured party receives the benefit of the bargain, "even if repair would involve destroying work already completed. *When defects or omissions in construction are so major that the building does not substantially conform to the contract, then the decreased value of the building constructed justifies the high cost of repair.*" *Kenney v. Medlin Constr. & Realty Co.*, 315 S.E.2d

3

311, 315 (N.C. Ct.App. 1984) (emphasis added). "The proper measure of damages for breach of a contract to construct improvements on real property where the work is to be done on plaintiff's property is ordinarily the reasonable cost to the plaintiff of completing the work and not the difference between the value of the property and its value had the improvements been constructed." *Glendale Federal Savings and Loan Ass'n v. Marina View Heights Dev. Co., Inc.*, 135 Cal.Rptr. 802, 66 Cal.App.3d 101, 123 (1977).

Moreover, "it often costs more to repair a mistake than to do the job right in the first place." *Angles v. West*, 2003 WL 203593 (Ohio App. 2003) (in dicta). As long as the difference between the original cost and the repair cost is not grossly disproportionate and does not result in economic waste, the cost to repair method should be used. *Id.*

**B.    Diminution in Value**

Importantly, in construction cases, the diminution in value rule is not invoked. *Jones v. Kvistad*, 97 Cal.Rptr. 100, 19 Cal.App.3d 836, 844-45 (1971).

**1.    Damages Based on Diminution in Value Are Not Proper When a Structure Has No "Market" Value or Has a Public Use.**

Diminution in value is inapplicable as a measure of damages in instances in which a structure has no market value or has a special use. In *Mass. Port Auth. v. Sciaba Const. Corp.*, 766 N.E.2d 118 (Mass. App. 2002), the court examined the different types of damages available to compensate the Massachusetts Port Authority for a fire on one of its wooden piers used as a park. The court considered the pier to be a "special purpose" property, such as those properties owned by states, public agencies or public utilities, where the real value of a property cannot be ascertained. *Id.* at 124. In ascertaining damages to special purpose public property, the court considered "all relevant evidence bearing on the nature of the property, the extent of the injury or loss, and the amount of money that will fairly compensate its owner for its injury or loss." *Id.* at

4

123. The court found damages based on fair market value would be unfair and unreasonable because of its special, public nature. "Where diminution in market value is unavailable or unsatisfactory as a measure of damages, courts have routinely turned to replacement or restoration costs as the appropriate measure of damages." *Id.* at 125. "Where this method is used, a test of reasonableness is imposed. Not only must the cost of replacement or reconstruction be reasonable, the replacement or reconstruction itself must be reasonably necessary in light of the damage inflicted by a particular defendant." *Id.* (internal citation omitted).

Another court has similarly found that in cases in which there is no market value for a special purpose public property, the plaintiff can then demonstrate what the actual reasonable costs of repair would be on the open market. *Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co.,* 223 S.W.2d 100 (Mo.App. 1949).

The F-1 pier is a special purpose property that has no market value. It is not property that has been or can be placed on the market for commercial purposes. Its purpose is specifically to service ocean-going vessels that arrive at the pier to deliver oil and gas. There are no privately-owned piers for sale in Guam which provide the same services, upon which to base any market value analysis.

### 2. Defendants Have the Burden of Proving Diminution in Value.

If the Court requires that diminution in value must be presented to the jury, the burden of proving diminution in value falls on Defendants. California law on damages, which Guam law follows, holds that the burden of proving that diminution in value is a more appropriate measure of damages than cost of repair falls upon the defendant. "[T]he burden is on the defendant to affirmatively and convincingly prove that economic waste would result from the replacement of the omissions and defects. In all fairness this would appear proper as it is the

5

defendant who is seeking to prove a situation whereby he will get equitable relief from a rule of law." *Shell v. Schmidt*, 330 P.2d 817, 827 (Cal.App. 1958) (cited in *Civic Center Drive Apartments Ltd. Partnership v. Southwestern Bell Video Servs.*, 295 F.Supp.2d 1091, 1107-08 (N.D. Cal. 2003) for proposition that in dispute over whether a party is to be compensated by cost of repair or diminution in value, "California courts generally hold that the appropriate measure of damages for construction contracts is cost of repair"); *see also Pfingsten v. Westenhaver*, 244 P.2d 395, 402 (Cal. 1952) (defendant has burden of showing that diminution in value is less than cost of repair).

Other jurisdictions similarly hold that the burden of demonstrating that damages must be measured according to a structure's diminution in value falls squarely on the defendants. In *Pennington v. Rhodes*, 929 S.W.2d 169, 175-76 (Ark. App. 1996), the court held that "once [plaintiffs] presented sufficient proof to go to the jury on the cost-of-repairs measure, the burden shifted to [defendant] to produce evidence showing . . . that repairing the defects will involve unreasonable destruction of quality construction or that the cost of repairs would be grossly disproportionate to the increase in value to be obtained from making them." The defendants must produce proof of the value of the structure as defectively constructed and its value if constructed without defect. *Id.* The defendants have disclosed no expert to so testify.

In addition, in *Advanced, Inc. v. Wilks*, 711 P.2d 524, 526-27 (Alaska 1985), the court held that if the defendant contends that cost of repair is an unreasonable measure of damages, the defendant "has the burden to present evidence from which the jury could find the diminution in value." *See also Stom v. St. Clair Corp.*, 153 S.W.3d 360, 364 (Mo. App. 2005) (after an owner presents evidence of cost of repair, the burden shifts to the contractor to present

6

evidence that the cost of repairing the property is disproportionate to the diminution in value of the property).

## III. A PLAINTIFF MAY RECOVER COST OF REPAIR BEYOND THE COST OF THE ORIGINAL CONTRACT

Plaintiff may recover whatever amount of damages is required to place it in the position it would have enjoyed had the contract been fulfilled, even if that requires compensation above and beyond the contract price.

In *Commercial Contractors, Inc. v. U.S.*, 154 F.3d 1357 (Fed. Cir. 1998), the court stated that the cost of repairing defects is not disproportionate if the defects

> significantly affect the integrity of a structure being built. In that setting, the injured party is entitled to recover the cost of remedying the defects despite the fact that the cost may be very high. Stated differently, **structural defects are deemed to cause such a great loss in value that the cost of remedying such defects is almost never considered to be out of proportion to that loss.**

*Id.* at 1372 (emphasis added) (citing Restatement (Second) of Contracts § 348 illus. 3 (1981)).

Courts routinely award damages greater than the contract price when deficiencies in performance cause losses beyond the contract price. In *R.I. Turnpike and Bridge Authority v. Bethlehem Steel Corp.*, 379 A.2d 344, 347 (R.I. 1977), the Rhode Island Turnpike and Bridge Authority contracted with Bethlehem Steel to construct and paint a suspension bridge. The Authority sued for breach of contract because the paint started peeling even before the completion of the bridge. *Id.* The lower court awarded the Authority more than $4.5 million, almost a quarter of the total contract price of $19 million. *Id.* at 356. The Supreme Court of Rhode Island affirmed the award of damages, rejecting arguments that it was excessive and rejecting a measure of damages that amounted to diminution in value. The Court stated that the award did not amount to economic waste, contrasting *Jacob & Youngs v. Kent*. Second, the

7

Court stated that the ultimate test of reasonableness was met, based on the difficulty of the repair work.

In *Prier v. Refrigeration Eng'g Co.*, 442 P.2d 621 (Wash. 1968), the plaintiffs sued a refrigeration contractor for improper installation of an ice skating arena. The defendant had designed the base upon which the ice sheet rested, and, the Court found, defendant thereby impliedly warranted its design. The trial court awarded the full cost of tearing out the faulty ice sheet and installing a properly designed system. *Id.* at 623. The Supreme Court of Washington determined that even though the cost of reconstruction was great, a complete reinstallation was the only feasible remedy, and no unreasonable economic waste was involved.

In *Worthen Bank and Trust Co., Nat. Ass'n v. Silvercool Serv. Co.*, 687 P.2d 464 (Colo. App. 1984), the owner of a building brought an action against a roofing contractor seeking damages for faulty construction. The defendant argued that the amount of damages - the cost of replacing the entire roof - was excessive because the roof could have been repaired as opposed to being replaced. The appellate court, however, did not disturb the trial court's acceptance of testimony by the plaintiff's expert that it was impossible to repair the roof in an economical fashion. The Colorado Court of Appeals stated that although usually the difference in market value between the structure the plaintiff would have had and the structure he received serves as the usual measure of damages, "[p]ermitting the recovery of the cost or expense of putting the work in the condition called for by the contract is a workable rule and should be applied except in those cases where its application would involve 'unreasonable economic waste.'" *Id.* at 466 (citing *Campbell v. Koin*, 391 P.2d 365 (Colo. 1964) and *Corbin on Contracts* § 1090). Accordingly, the cost of replacement of the roof constituted the proper measure of damages. *Id.*

8

Also, in *Hebert v. McDaniel*, 479 So.2d 1029 (La. App. 1985), the purchaser of a metal building sued the contractor for a defective roof. The trial court found that the roof was irreparable, and awarded the plaintiff damages for replacing the entire roof. The Court of Appeal of Louisiana stated that the proper question was "what will it take to place [the plaintiff] in the position he deserved to be in when the building was completed." *Id.* at 1034. The Court stated that in instances where a contractor fails to perform in accordance with the terms of the contract, he violates the contract, as well as the implied obligation to perform in a workmanlike manner, and is thus liable for any damages, including full replacement of the roof. Because the defendant "had equal knowledge of the consequences if the leaks were not corrected and he had the opportunity to perform, plaintiff should not have to bear the expense of correcting the defects." *Id.* at 1035.

Lastly, in *Emery*, 374 A.2d 929, the plaintiffs contracted with the defendant to remove earthfill then to restore the pit under certain specifications. The defendant restored the land, although not to those certain specifications. The defendant then argued that the regular measure of damages - to put the plaintiff in as good a position as if the contract had been performed - was inappropriately applied because there was no evidence that the plaintiffs would restore the property to those certain conditions, and thus, the award would amount to economic waste. The New Hampshire Supreme Court disagreed based on the evidence, but also stated that the damages award was necessary: "*A valuable income-producing asset has been rendered unproductive; the damages award constitutes a reasonable means of bringing that asset back to life.* If the plaintiffs choose to 'pocket' their recovery, they will have foregone the restoration of their land; they will not have been unjustly enriched." *Id.* at 933 (emphasis added). The underlying concern before the Court was that the measure of damages as proposed by the

9

defendant did not afford the plaintiffs a full recovery. Moreover, waste was not an issue because without the full restoration of the property, the plaintiffs would not be compensated.

See also Wash. County Dept. of Job and Family Servs. v. Binegar, 2003 WL 21276439 (Ohio App. 2003) (for breach of contract to paint building, court awarded plaintiff difference between cost of proper paint job and cost of improper paint job, plus amount paid to original contractor); Melton v. U. S., 488 F. Supp. 1066, 1068, 1075 n.3 (D.D.C. 1980) (although the original price of construction to rehabilitate a house amounted to $40,000, the court awarded over $90,000 to homeowner); Roman Catholic Church of the Archdiocese of New Orleans v. Louisiana Gas Serv. Co., 618 So.2d 874 (La. 1993) (acknowledging that "extensive damages are often awarded as cost of restoration").[3]

The above cases demonstrate that the plaintiff should be awarded whatever amount is required to place it in the same position as if the contract had been fully and properly performed. The repairs to the Port's property as a result of Defendants' conduct and breaches of contract, which Plaintiff has paid for, meet the Port's original expectations and are not unreasonably disproportionate to the original contract price. These repairs also do not amount to economic waste; the pier as repaired by Black was worthless and did not meet the Uniform Building Code, so any repair would be economically reasonable and efficient.

Cost of repair is the appropriate measure of damages, not diminution in value. This is not the case where an award based on diminution in value would place the Port in the same position as if the contract had been performed properly. An award based on diminution in value would fail to meet the Port's contract expectations for a functioning pier. The only way to

---

[3] This quotation in Roman Catholic Church is at the centerpiece of a discussion of awarding extensive damages where the aesthetic value of a building is affected.

4838-2821-9392.1

fully compensate the Port is to award it the reasonable cost of repair.[4] As in *Arch of Ill., Inc. v. S.K. George Painting Contractors, Inc.*, in which the Court awarded cost of repair over diminution in value, the repair here which Plaintiff paid for was needed to meet the owner's contract expectancy, and such repairs were reasonable in amount and scope of work.

## IV. THE DOCTRINE OF BETTERMENT DOES NOT APPLY IN THIS CASE.

Defendant Black Construction Corporation ("Black") claims that the doctrine of betterment limits Plaintiff's damages to only what Black was responsible for. The concept of betterment prevents a nonbreaching party to a construction contract from obtaining more than what it originally bargained for. The benchmark for the analysis of "betterment" is the owner's original project requirements and design intent, or in other words, his "expectation interest." Subsequent enhancements that give the owner a better project than that for which the owner originally expected to pay are excluded from damages. Such enhancements include changes in design standards which permit a better or different use than originally contemplated, provide a more durable project than originally contemplated, or otherwise enhance the value of the project beyond original design intent.[5]

The doctrine of betterment goes hand-in-hand with the doctrine of economic waste. As already discussed, with the latter doctrine, a court may seek to protect parties against inequitable rejection of contract work substantially performed but not strictly conforming. Concerning betterment, courts only want to give plaintiffs the amount required to place them in the position

---

[4] Cost of repair includes further expenses of engineers and financing. *See Centex-Rooney Const. Co., Inc. v. Martin County*, 706 S.2d 20, 27 (Fla. Dist. Ct. App. 1997) (Breach of contract damages in a construction contract case include "relocation and financing costs, and engineering and architecture fees reasonably necessary to accomplish the reconstruction." The defaulting party has the burden to show the unreasonableness of these expenditures).

[5] None of these apply in this case.

11

they would have been in if the defendant had fully performed, but no more (which would be wasteful).

The repairs conducted by Smithbridge after the second earthquake (and paid for by Plaintiff) do not fall within the category of "betterment." This case is not comparable to the *Kent* case in which, under the plaintiff's proposal, destruction of the building would be required only to replace the installed (equally suitable) pipes with pipes conforming to the plaintiff's specifications. Here, the Smithbridge repairs were required because the pier itself was weak and worthless. It required re-repairs because of the deficient work originally performed pursuant to the Black/W&K design. In other words, the only economic waste here was Black's efforts in the original repair of the pier.

In addition, the repairs were not legally "enhancements" in the sense that the Port received a windfall by being compensated for the Smithbridge repairs which made the pier sturdier. Of course in one sense it was an enhancement; the original EMPSCO/Winzler & Kelly design and Black repairs were faulty, so a non-defective design and competent repair work would necessarily constitute an improvement. However, the Smithbridge repairs are not "enhancements" in the sense that they gave the Port a windfall; rather, the repairs merely satisfied the Port's original intent and desire, namely, for a workable pier which met the Building Code requirements.

## V.     APPORTIONMENT OF DAMAGES

### A.     Apportionment Among Defendants

Plaintiff submits that apportioning damages among the three defendants is a question of fact for the jury. *Pathman Const. Co. v. Hi-Way Elec. Co.*, 382 N.E.2d 453, 460 (Ill. App. 1978) (apportioning damages in case of delay by several parties is a question of fact).

12

Plaintiff may have the burden of providing the jury with a basis upon which to apportion damages, when the jury finds that Plaintiff's damages have been caused by more than one Defendant. *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 479-80 (Colo. App. 2004). Plaintiff need not give the jury an absolute measurement of apportionment upon which to base its award.[6] Where the amount of damage is not susceptible of exact apportionment, to avoid injustice, the trier of fact has the discretion to make the apportionment based on a rough approximation of damages. *Id.*; *Long v. T-H Trucking Co.*, 486 P.2d 300 (Wash. App. 1971); *Alcan Elec. & Eng'g Co. v. Samaritan Hosp.*, 109 Wash. App. 1072, 2002 WL 26291 at *2-3 (Wash. App. 2002); *United States v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 169 (2d Cir. 1996).

## B.    Apportionment For Use of Pier Prior to Damage

Evidence at trial will demonstrate that the repairs done by Black did not conform with the Uniform Building Code. Under Guam law, structures must conform to the Uniform Building Code. 21 Guam Code Ann. § 67101. The purpose of the building code is to ensure that structures built on Guam are safe for use. Structures built in violation of the building code threaten the public's safety.

When a party's performance of a contract violates a statutory provision, the bargain becomes illegal. Rest. (Contracts) § 580(1). This is also known as the doctrine of malum prohibitum. Courts utilizing this doctrine in construction cases typically discuss it in the context of licensing. For example, courts prevent unlicensed contractors attempting to recover the

---

[6] Mathematical precision is not required in corresponding an award amount with each contractor's breach of contract. "Juries frequently are called upon to make reasonable approximations within the perimeters of parties' claims, and it has not been thought fatal to their verdicts that the amount awarded did not precisely correspond with the claims or expert testimony, but represented an acceptance of the claims in part." *State of California ex rel. Dept. of Transportation v. Guy F. Atkinson Co.*, 231 Cal. Rptr. 382, 386 (Cal. App. 1986).

benefit of their bargain because their unlicensed performance is prohibited by law. *Ranchwood Communities Ltd. Partnership v. Jim Beat Constr. Co.*, 57 Cal. Rptr. 2d 386, 392 (Cal App. 1996).

Similarly, here, Defendants attempt to gain the benefit of their bargain with the Port by seeking a reduction in Plaintiff's damages based on the period during which the Port utilized the port repaired by Black. Such relief would effectively allow Defendants to retain the profits gained from their unlawful behavior which placed the public safety at risk. Defendants' conduct, however, is illegal and their recovery is barred under the doctrine of malum prohibitum. Defendants' violations of Guam law prohibit them from mitigating Plaintiff's recovery.

In the event the Court allows a prorationing of the damages based on the Port's use of the pier prior to its collapse, the burden of demonstrating how to proration the damages and the extent to which Plaintiff's damages should be reduced falls upon Defendants. *Millikan v. American Spectrum Real Estate Servs. Cal., Inc.,* 12 Cal.Rptr.3d 459, 466 (App. 2004); *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists*, 39 Cal. Rptr. 64, 82 (App. 1964) (if the damages proven by plaintiff could be reduced proportionately, that burden rests upon defendant). In addition, *Rhode Island Turnpike v. Bethlehem Steel*, 415 A.2d 1295, 1296-97 (R.I. 1980), cited by Black in its Trial Brief, focuses on methods of reduction proposed by the defendants. Defendants have not produced any evidence demonstrating the proper method of prorationing based on the use of pier prior to its collapse or any evidence demonstrating the number of years the pier was projected to have lasted.

There are also significant distinctions between this case and the cases cited by Black in its Trial Brief in support of its argument that the damages should be prorated to reflect the time that the pier was in use. Each of the cases cited by Black - *Rhode Island Turnpike*, 415 A.2d

14

1295, *Allied Chemical Corp. v. Van Buren School Dist. No. 42*, 575 S.W.2d 445 (1979), *525 Main Street Corp. v. Eagle Roofing Co.*, 34 N.J. 251, 168 A.2d 33 (1961) - relate to the situation in which a contractor guaranteed that the structure and/or repairs installed had a certain number of years of use, and the failure of the structure and/or repair to last for the guaranteed number of years. *Rhode Island Turnpike*, 415 A.2d 1295 (twelve-year guarantee); *Allied Chemical Corp.*, 575 S.W.2d at 449 (roof lasted only two out of twenty guaranteed years); *525 Main Street Corp.*, 168 A.2d 33 (roof lasted for two and a half years out of five guaranteed years). In contrast, Black's responsibility in this case was to repair structurally-sound pier. The Port did not ask that the pier last only a certain number of years, and thus, measuring the Port's benefit for those years the pier was in use would be arbitrary.

In addition, Black's cases allow recovery for "replacement" of roofs and paint. In contrast, because the Winzler design was non-compliant with the building code, the Port cannot simply "replace" Black's work. The entire structure required repair that complied with the building code. The Port never had a pier that met the requirements under the contract and the law. Prorationing for the Port's past use of a non-compliant pier simply does not apply here.

## VI. CONCLUSION

Cost of repair is the appropriate measure of damages, given the considerations herein of the special public use of the damaged pier, as well as the lack of any indication of economic waste. The cost of needed repairs may be awarded even if the cost extends beyond the cost of the original contract. The trier of fact has the duty to apportion damages among the defendants. Finally, Defendant cannot obtain apportionment for use of the pier prior to its damage.

15

DATED: Hagåtña, Guam, November 3, 2005.

CARLSMITH BALL LLP

_(signature)_

DAVID LEDGER
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

4838-2821-9392.1

## DECLARATION OF SERVICE

I, Elyze McDonald, hereby declare under penalty of perjury of the laws of the United States, that on November 3, 2005, I caused to be served, via hand delivery, a true and correct copy of SUPPLEMENTAL BRIEF RE DAMAGES upon Defendants' Counsel of record as follows:

Robert J. O'Connor, Esq.
Daniel J. Berman, Esq.
Berman O'Connor Mann & Shklov
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910

Thomas C. Sterling, Esq.
Klemm Blair Sterling & Johnson, P.C.
Suite 1008, Pacific News Building
238 Archbishop Flores Street
Hagåtña, Guam 96910

and

Thomas M. Tarpley, Esq.
Law Offices of Tarpley & Moroni, LLP
Suite 402, Bank of Hawaii Building
134 West Soledad Avenue
Hagåtña, Guam 96910

Executed this 3rd day of November, 2005 at Hagåtña, Guam.

ELYZE MCDONALD

SANFRAN1\34695\1 123206.000