BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 477-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers

FILED
DISTRICT COURT OF GUAM
NOV - 4 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S, | ) ) ) ) | Civ. No. CIV 03-00009 |
| Plaintiff, | ) ) | WINZLER & KELLY'S RESPONSE TO PLAINTIFF'S |
| vs. | ) ) ) | SUPPLEMENTAL BRIEF RE DAMAGES |
| BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP., | ) ) ) ) ) ) | CERTIFICATE OF SERVICE Trial: November 7, 2005 |
| Defendants. | ) ) ) | |

Winzler & Kelly hereby responds to some of the more significant points raised in Plaintiff's recently filed Supplemental Brief Re Damages:

## MEASURE OF DAMAGES

Winzler & Kelly is basically in agreement with the Syndicate's discussion of the "General Law of Damages," insofar as it points out that the central purpose of contract damages is "to place the plaintiff in the position he would be in if the contract had been

**ORIGINAL**

fulfilled," Plaintiff's Brief at 2,[1] and that this can be done by calculating "the cost to repair the property," or "any diminution in the value to the property." Id.

Winzler & Kelly disagrees, however, with Plaintiff's assertion that cost of repair is "the proper measure to be used in this case," id. at 2, as well as with its underlying assumption that there is a strict analytical dichotomy between cost-of-repair and diminution-in-value, as if they were opposites of each other, the application of either one of which categorically precludes any application of the other. Winzler & Kelly disagrees, in other words, with the Syndicate's description of the principles of damage calculation as constituting a "binary rule." Plaintiff's Brief at 3.

In fact, diminution of value, standing alone, is the cardinal principle in measuring of damages for breach of contract. Cost of repair is merely a method of calculating that diminution of value. It is a useful method so far as it goes, but it is best understood not as a measure of damages in and of itself, but as a method of getting at the actual measure of damages, which is loss of value:

> [W]hen proximate cause exists for damage to real estate, the basic measure of damages for injury to real property is the resultant dimunition in its value. Such diminution in value may be determined, however, by the cost of repairing the damage so long as that cost does not exceed the former value of the property and the repairs do not enhance the value of

---

[1] The Syndicate's assertion that this is somehow to be distinguished from restoring "the plaintiff to the position he would have been in had the wrong not been committed," id., however, is too fine a point of philosophy for W&K to grasp. It seems to W&K that these are merely two ways of saying the same thing.
    The Syndicate also omits the necessary corollary to this principle, namely that a plaintiff should not be placed in a *better* position than he would be in if the contract had been fulfilled.

2

the property over what it was prior to the damage. The *cost of repairs is a proxy for diminution in value* caused by damage to the property.

Harrington v. Grillo, 2000 WL 1868239 (Conn. Super. 2000), at *13 (emphasis added, internal citations and punctuation omitted). See also, e.g., Willow Springs Condominium Assn., Inc. v. Seventh BRT Development Corp., 717 A.2d 77, 107 (Conn. 1998) (similar language).

"Value," of course, when used in this context, does not mean "market value." It means value *to the plaintiff*:

> If defective or partial performance is rendered, the loss in value caused by the breach is equal to the difference between the value that the performance would have had if there had been no breach and the value of such performance as was actually rendered. In principle, this requires a determination of the values of those performances *to the injured party himself* and *not* their values to some hypothetical reasonable person *or on some market*.

Restatement (Second) of Contracts, Section 347, comment b. Indeed, market value itself, like cost of repair, is merely another method of getting at the actual measure of damages, namely loss of value to the plaintiff.

Diminution of value to the plaintiff, therefore, is the true measure of damages for breach of contract. Both cost-of-repair and market value stand together on a level below that, as potential methods for ascertaining actual loss of value, along with other potential methods. Each method is useful in its own way, yet each is subject to inherent limitations that might render it inappropriate or impracticable in a given case. See generally, e.g., Fisher v. Qualico Contracting Corp., 779 N.E.2d 178, 182 (N.Y. 2002) ("[R]eplacement cost and diminution in market value are simply two sides of the same coin. Each is a

3

proper way to measure lost property value, the lower of the two figures affording full compensation to the owner.").

Cost of repair, under some circumstances, might give an inaccurate impression of actual damages. This most often occurs in situations where the cost of repairs would, if awarded, give the plaintiff more than the actual loss in value to him. They Syndicate refers to such circumstances as "economic waste," see Plaintiff's Brief at 2, but that expression is not altogether accurate:

> It is sometimes said that the award would involve 'economic waste,' but this is a misleading expression since an injured party will not, even if awarded an excessive amount of damages, usually pay to have the defects remedied if to do so will cost him more than the resulting increase in value to him.

Restatement (Second) of Contracts, Section 348, comment c. What the Syndicate calls "economic waste" is better described as disproportionality. Cost of repairs will not be used as a measure of loss of value, and thus as a measure of damages, where it is clearly disproportionate to the actual loss of value. See Restatement (Second) of Contracts, Section 348(2)(b) (noting that a plaintiff may recover damages based on "the reasonable cost of . . . remedying the defects if that cost is not *clearly disproportionate* to the probable loss in value to him.") (emphasis added).

Likewise, market value is also, under some circumstances, an inappropriate measure of damages. As the Syndicate notes, these include situations in which the property has no market value, because it is not the sort of property that is ordinarily bought and sold on the market. In its discussion of this point, however, the Syndicate

4

confuses market value with value itself, when in fact it is only a handy and often reasonably accurate method of determining actual value. See, e.g., Massachusetts Port Auth. v. Sciaba Const. Corp., 766 N.E.2d 118, 124 (Mass. App. 2002) (noting that a predicate for the application of the market-value measure of damages is that it be "a fair and reasonable measure of the loss suffered by the owner"). [2]

The fact that market value may not be ascertainable for a particular property, therefore, does not mean that the property has no value to the plaintiff that can form the basis of a damage award. It simply means that one method of calculating that value is not available, and that another method must therefore be sought. That was the conclusion of the court in Stephan v. Wolfenbarger & McCulley, PA, 690 P.2d 380 (Kan. 1984), which

---

[2] The Syndicate's cited cases do *not* stand for the proposition that value to the plaintiff is an inappropriate measure of damages for public, special-use property. They only recognize the difficulty of calculating damage based on *market value* in such situations. Gulf M & O R. Co. v. Smith-Brennan Pile Co., 223 S.W.2d 100 (Mo. App. 1949) specifically endorses "value to plaintiff" as a measure of damage:
> We ... appreciate the fact that there might be no 'market' for the sale of a railroad bridge in the same sense of a 'market' for the sale of land. However, if there be a showing that there is no 'market' value of the bridge, then the value to plaintiff of the bridge before and after the accident with the 'market' element omitted would be a proper showing of damages and more in accord with settled principles of the measure of damages than an ex part list of costs of repair such as that presented by plaintiff herein.

Id. at 104. Massachusetts Port Auth. likewise focuses on the "loss suffered by the owner" as the ultimate measure of damages. See 766 N.E.2d at 124.

Commercial Contractors, Inc. v. United States, 154 F.3d 1357 (Fed. Cir. 1998), recognized that "it is difficult to determine the loss in value," because "[t]here is no market in which the government can sell the channel," id. at 1372, but noted that the government "might have sought to adduce evidence to show how much less it values the channel as built than the channel contracted for." Id. at 1373. The court likewise recognized the disproportionality limitation on cost-of-repair damages. Id.

5

squarely faced, and squarely rejected, the argument that the Syndicate is now advancing, as follows:

> The State argues it should be relieved from introducing evidence of actual dollar loss since the case involves a public building. Public buildings are more difficult to value since the traditional buyer-seller standards of appraisal do not apply to them. In Kennedy v. Heat & Power Co., 175 P. 977 (1918), we held: "It is frequently said that the market value of the property described at the time and place of fire is a proper measure, and this is true if the property in fact has a market value. If there be no market value, then another criterion of value must be found, and the best evidence which can be obtained must be produced to show the elements which enter into the real value."

690 P.2d at 384-85. See also, e.g., Massachusetts Port Auth., supra, 766 N.E.2d at 125 (recognizing that some situations present the necessity of applying "alternative methods of calculating damages").

In this case, both circumstances exist. Market value is an inappropriate, or at least an unavailable, measure of damages in this case, in light of the public, non-marketable character of the property. Cost of repair, however, is *also* an inappropriate measure of damages in this case, if -- as Winzler & Kelly maintains is the case – such costs are disproportionate to the actual loss of value to the plaintiff. Yet loss of value still must be proved somehow if a plaintiff is to recover, and there are many ways in which such loss can be established, apart from either market value or cost-of-repair. Value can be determined, for example, in terms of the anticipated useful life of the structure. If it lasted only half its reasonably anticipated useful life, than half its value was lost. Functional use is also relevant. If the structure was rendered unable to serve its ordinary and intended function as a consequence of the Defendants' breaches of contract, that is loss of value.

6

It will appear at trial that no value was lost. Evidence will establish, for example, that the dolphin repairs, as performed by Defendants within the limitations imposed by the Port, were necessarily only of a temporary character, and, by the time new repairs were done, had already lasted as long as anyone could reasonably have expected them to.[3] It will establish as well that no function was lost, and that the dolphins continued to be used as well to dock ships and off-load oil after the earthquake as before. And it will show that, inherent in the value of a well-engineered and well-constructed structure, is the capacity to respond to an earthquake just as these dolphins did -- by sustaining damage short of collapse – and that the Port had the full benefit of this value. The evidence will show, in other words, there was no loss in value to the Port at all, and that the cost of repairs is therefore clearly disproportionate to the loss of value, regardless of whether the cost of repair is determined to be the $1.9 million that the Syndicate seeks, or the $125,000 that Defendants maintain was the actual reasonable cost of those same repairs. *Any* recovery of cost of repair by the Port is a windfall, and amounts to these Defendants being forced to subsidize a new and thoroughgoing repair project that should have been done in the first instance, but that they were not allowed the budget to do themselves, and that the Port would therefore have to have done anyway.

---

[3] Cf. Massachusetts Port Auth., supra, 766 N.E.2d at 125 ("Testimony was elicited describing the pier as 'in generally good condition,' and needing only modest repairs to adequately support a public park for approximately twenty-five years.").

7

## APPORTIONMENT OF DAMAGES

Winzler & Kelly agrees with the Syndicate that apportionment of damages is a question of fact for the jury, that the burden of providing a basis on which to apportion lies with the Plaintiff, and that such apportionment may be determined based upon a rough approximate when an exact measurement is impracticable. See Plaintiff's Brief at 12-13.

Respectfully submitted this 4th day of November, 2005.

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Winzler & Kelly

By: _____
Joseph E. Horey

# CERTIFICATE OF SERVICE

I, Joseph Perez, hereby declare upon penalty of perjury under the laws of the Unites States, that on the 4th day of November, 2005, I served a true and correct copy of **WINZLER & KELLY'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF RE DAMAGES** upon Plaintiff and Defendants Counsel of record as follows:

> David Ledger, Esq.
> Carlsmith Ball LLP
> 134 West Soledad Avenue
> Bank of Hawaii Building, Suite 401
> P.O. Box BF
> Hagåtña, Guam 96932-5027
>
> Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds
>
> Thomas C. Sterling, Esq.
> Klemm, Blair, Sterling & Johnson
> Suite 1008, Pacific News Building
> 238 Archbishop F.C. Flores Street
> Hagåtña, Guam 96910
>
> Attorneys for Defendant Black Construction Corporation
>
> Thomas M. Tarpley, Esq.
> Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Bldg.
> 134 W. Soledad Avenue
> Hagåtña, Guam 96910
>
> Attorneys for Defendant
>     Engineering, Management & Planning Services Corporation

Dated this 4th day of November, 2005.

_____
JOSEPH PEREZ
ANN CRUZ