ORIGINAL

CARLSMITH BALL LLP

STEPHEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



FILED
DISTRICT COURT OF GUAM
NOV 14 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>               Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY CONSULTING ENGINEERS, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>               Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S BENCH BRIEF RE RECOVERY UNDER THE THIRD PARTY BENEFICIARY THEORY WITH REGARD TO DEFENDANT WINZLER & KELLY CONSULTING ENGINEERS; DECLARATION OF SERVICE** |

       Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS submits this Bench Brief

re Recovery under the Third Party Beneficiary Theory with regard to Defendant Winzler & Kelly

Consulting Engineers ("Winzler") to address the Court's concerns on this issue, as articulated in the Court's November 1, 2005 Order (Doc. #331), and the Court's comments throughout the trial.

## I. INTRODUCTION

The sole reason for the contract between Black and Winzler (the "Black-Winzler Contract") was to benefit the Port Authority of Guam (the "Port"), by reducing the Port's costs under the Port's contract with Black (the "Port-Black Contract"). Under the Black-Winzler Contract, Winzler provided drawing VE-1, upon which Black and the Port relied in performing the Port-Black Contract. The Black-Port Contract was specifically amended to reference "the attached Drawing prepared by 'Winzler & Kelly.'" Pl.'s Ex. 16. "In such cases, if the beneficiary [the Port] would be reasonable in relying on the promise [by Winzler to Black under the Black-Winzler Contract as reflected by VE-1] as manifesting an intention to confer a right on [the Port concerning the means to reduce the Port's costs under the Port-Black Contract], [the Port] is an intended beneficiary." RESTATEMENT (SECOND) OF CONTRACTS § 302 cmt. d (bracketed information supplied). As Winzler and Black intended to benefit the Port, the Port is an intended beneficiary of the Black-Winzler Contract.

This Bench Brief further contends that in the event the Court finds as a matter of law that the Port is not a third party beneficiary under the Black-Winzler Contract, then Plaintiff's tort claims against Winzler should be revived. The Court may recall that it granted summary judgment on Plaintiff's tort claims against Winzler on the grounds of the Economic Loss Doctrine, which applies only to contract causes of action. If the Port did not have a contractual relationship with Winzler by virtue of being a third party beneficiary, then Winzler cannot be sheltered from the Port's tort claims under the Economic Loss Doctrine.

2.

## II. ARGUMENT

### A. Plaintiff's Status As A Third Party Beneficiary Is A Question Of Fact For The Jury.

Whether a particular third person is an intended beneficiary of a contract is a question of fact under governing state law and federal law. *Prouty v. Gores Tech. Group*, 121 Cal. App. 4th 1225 (2004); *United States v. Nationwide Mut. Ins. Co.*, 499 F.2d 1355, 1358 (9th Cir. 1974) (whether a contract was intended to benefit a third party is a question concerning the meaning of the contract, and is, under federal law, an issue of fact to be decided by the trier of fact). In addition, the Court has already stated that "the jury will determine whether Black and [Winzler] explicitly intended the Port as a third-party beneficiary." Nov. 1, 2005 Order (Doc. #331) at 3. Accordingly, whether the Port is a third party beneficiary of the agreement between Black and Winzler is a question to be delegated to the jury.

### B. The Port is a Third Party Beneficiary of the Black-Winzler Contract.

With regard to third party beneficiaries to contracts, Guam law states:

> **§ 85204. When contract for benefit of third parties enforced.** A contract, made *expressly* for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.

18 Guam Code Ann. § 85204 (emphasis added).[1]

It is not necessary to have an explicit third party beneficiary clause in order to demonstrate intent to benefit the third party. "Insofar as intent to benefit a third person is important in determining his right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent. **No specific manifestation by the promisor of an intent to benefit the third person is required.**" *Lucas v. Hamm*, 15 Cal. Rptr. 821, 825 (1961) (internal citations omitted) (emphasis added). "It is not required that the

---

[1] Section 85204 is derived from California Civil Code § 1559. California law interpreting section 1559 is therefore persuasive to this analysis.

3.

third party beneficiary be specifically named as a beneficiary. All that section 1559 requires is that the contract be 'made expressly for the benefit of a third person,' and 'expressly' simply means 'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.'" *Shell v. Schmidt*, 272 P.2d 82 (Cal. App. 1954) (internal citation omitted). *See also R.J. Cardinal Co. v. Ritchie*, 32 Cal. Rptr. 545, 552 (Cal. App. 1963) ("Expressly" means in an express manner; in direct or unmistakable terms; explicitly; definitely; directly). The identity of an intended third party beneficiary need not be explicit in the contract, *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir.1991); however, "the parties' intent to benefit a third party must be shown on the face of the agreement," *In re Gulf Oil / Cities Serv. Tender Offer Litig.*, 725 F.Supp. 712, 733 (S.D.N.Y.1989).

"Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Burnett v. Chimney Sweep*, 20 Cal.Rptr.3d 562, 572-73 (Cal. App. 2004) (citing *Johnson v. Superior Ct.*, 95 Cal.Rptr.2d 864 (2000)).

In addition, if "the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him, he is an **intended** beneficiary." Restatement (Second) of Contracts § 302, cmt. d., at 442 (emphasis added). That promise includes "a promise to perform a supposed or asserted duty of a promisee[.]" *Id.*

The facts revealed at trial have demonstrated that contracts existed between Black and Winzler, and Black and the Port. The Black-Winzler Contract allowed Black to perform the Black-Port Contract at a reduced price due to Winzler's creation of VE-1, a cheaper repair design. The sole purpose of VE-1 was to allow Black to perform its obligations under the Black-

Port contract, making the Port the intended beneficiary of the Black-Winzler contract. Winzler's letter to Black dated April 10, 1997, highlights the intended beneficiary and the intended beneficial objective of the Black-Winzler Contract:

> Our engineers in California are very experienced in maritime structures and PAG [Port Authority of Guam] has **benefited** *enormously* from their expertise.
>
> **Our solution for the rehabilitation of pile #3 has resulted in *substantial savings* for PAG** compared to concrete encasement or the original procedure proposed by the Engineer-of-Record.

Pl.'s Ex. 69 (emphases added.) Also, the (amended) Port-Black contract incorporated Winzler's work: "Contractor [Black] is to use a Total Upper Section Replacement Method, **in accordance with the attached Drawing prepared by "Winzler and Kelly."** Pl.'s Ex. 16 at 2 II (emphasis and bracketed information added). Both Winzler and Black knew that Winzler's VE-1 drawing was critical to the economic success of the project. In those circumstances, substantiated by evidence submitted at trial and outlined above, the record supports the conclusion that the Port directly may enforce (and seek damages for) the defective VE-1 drawing, as an intended third-party beneficiary of the Black-Winzler Contract.

In addition, the intent needed to create a third party beneficiary does not need to benefit a third party directly. 9 A. Corbin, CORBIN ON CONTRACTS § 776 (Interim ed. 2002) instructs.

> When a contract is made, the two or more contracting parties have separate purposes; each is stimulated by various motives, some of which he may not be acutely conscious.
>
> . . . .
>
> A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others . . . **if the promised performance will be of pecuniary benefit to [the third party] and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract.**

*Id.* at 14, 16 (ellipsis, emphasis, and bracketed material added). The Black-Winzler Contract was

5.

manifested almost entirely in the parties' actions (primarily in VE-1 and Winzler's direct communications with the Port), such as to give the Port reason to know that such benefit (*i.e.*, value engineering and reduction in amount to be paid under the Port-Black Contract) was contemplated by Winzler as one of the motivating causes of making the Black-Winzler Contract. Indeed, it was the salient motivating cause.

In other words, Winzler's motivation in agreeing to the Black-Winzler Contract was to benefit the Port directly by value-engineering the project so the Port would have to pay less money to Black. The direct communications between Winzler and the Port concerned that value-engineering of the project, and VE-1 referred specifically to the project and effected that value-engineering. Winzler's direct communication with the Port on that topic, along with Winzler's provision of VE-1, gave the Port reason to know that the purpose of Winzler's obtaining that information from the Port was to provide the Port with a benefit concerning the project under the Port-Black Contract. The Port reasonably relied on that manifestation by Winzler to provide the Port that benefit, and incorporated VE-1 into its contract with Black.

VE-1 (Pl.'s Ex. 1) itself indicates an intent to benefit the Port. The "Notes" to VE-1 state that "[t]his drawing is to be read in conjunction with drawings & specifications for project - repair & upgrading to Foxtrot 'F-1" Pier - prepared by EMPSCO Engineering Consultants . . . ." *See* Pl.'s Ex. 1. Also, VE-1 indicates that it is intended for repairs to the Port's property, dolphins A, B, C & D at Apra Harbor, Guam. Pl.'s Ex. 1.

The above-stated circumstances surrounding Winzler's participation and contribution to the repairs of F-1 pier demonstrate that the Port qualifies as an intended third-party beneficiary of the Black-Winzler Contract.

6.

Case 1:03-cv-00009   Document 382   Filed 11/14/2005   Page 6 of 12

### C. The "No Contractual Relationship" Clause in the Port-Black Contract Does Not Bar the Black-Winzler Contract From Creating a Third Party Beneficiary Right in the Port.

The Port-Black Contract contains this clause: "Any and all contracts between the contractor [Black] and it subcontractors shall not be construed as creating any contractual relation between any subcontractor and the Port Authority." Port-Black Contract ¶ I(b).[2] The Black-Winzler Contract has no such clause. The operative contract for the third party beneficiary determination is the Black-Winzler Contract, *not* the Port-Black Contract. *Cf. Pierce Associates, Inc., v. Nemours Found.*, 865 F.2d 530, 537 (3d Cir. 1988) (defendant argued that prime contract did not include sub-contract, and prime contract's "no third party beneficiary" clause did not prevent sub contract from creating a third party beneficiary relationship; court stated that argument might be persuasive if same "no third party beneficiary" clause also was in sub-contract ). The Black-Winzler Contract contains no clause prohibiting it from creating a third party beneficiary relationship with the Port.

The actions of the parties to the Black-Winzler Contract indicated their intent that the Port was a third party beneficiary, as substantiated above. Winzler also communicated directly with the Port, as substantiated above. Black had the Port incorporate Winzler's Drawing into the (amended) Port-Black Contract.

### D. The Cases Cited By Winzler Support Plaintiff's Position That It Was A Third Party Beneficiary Of The Black-Winzler Contract

Winzler asserts that Plaintiff was not an intended third party beneficiary, based on two main cases: *Weseloh Family Ltd. P'ship v. K.L. Wessel Constr. Co.*, 125 Cal.App.4th 152 (2004); and *Nelson v. Anderson Lumber Co.*, 140 Idaho 702, 711, 99 P.3d 1092 (2004). Those cases

---

[2] However, the Port-Black Contract "no contractual relationship" clause lacks the following language: "The parties hereto agree to require a similar provision in all contracts with contractors, subcontractors, subconsultants, vendors, and other entities involved in this Project to carry out the intent of this provision."

7.

actually contradict Winzler's legal position that Plaintiff was not a third party beneficiary. Here, Winzler had direct written communications with the Port regarding its work on F-1 Pier and its dolphins, specified above. In *Weseloh* and *Nelson*, conversely, the promisor had **no** contact with the beneficiary; the courts in those cases therefore held that third party beneficiary status did not exist.

*Weseloh* addressed the issue of whether the defendant owed a duty of care to the plaintiff in a professional negligence case. There was no breach of contract issue before the court in *Weseloh*. *Weseloh* therefore is not cogent authority for this case. The *Weseloh* court framed the issue: "It is correct that the lack of privity of contract does not preclude imposition of a duty of care. Under these circumstances, does a duty in negligence exist?" *Id.* at 164. By citing *Weseloh*, Winzler effectively argues the court should hold Winzler to a negligence standard.

Plaintiff Weseloh contracted with general contractor K.L. Wessel to construct buildings for Weseloh. Subcontractor Sierra Pacific built the retaining walls for the project. Sierra hired Randle (and his employer, Owen Engineering) as consultants on the retaining walls and to perform an inspection. "Randle was unaware that Weseloh owned the property. Neither Randle nor Owen ever (1) contracted with the Weseloh plaintiffs[.]" *Id.* at 159-160. Also, the Court noted that neither Randle nor Owen ever "had a role in the construction of the retaining walls." *Id.* at 663.

Plaintiff Weseloh sued various defendants including Randle and Owen for professional negligence, not breach of contract. In a highly fact-specific appeal, the appellate court affirmed the trial court's grant of summary judgment for Randle and Owen, and it held that defendants Owen and Randle did not owe a duty of care to plaintiff Weseloh. In determining whether a duty of care existed, the court analyzed the "checklist" under *Bily v. Arthur & Young Co.*, 3 Cal.4th

370 (1992) to determine whether a legal duty exists, absent privity, between a plaintiff and defendants: 1) the extent to which the transaction was intended to affect the plaintiff; 2) the foreseeability of harm to him; 3) the degree of certainty that the plaintiff suffered injury; 4) the closeness of the connection between the defendant's conduct and the injury suffered; 5) the moral blame attached to the defendant's conduct; and 6) the policy in preventing future harm. *Id.* at 165. As demonstrated by Winzler's direct communications with the Port, and the harm Winzler caused to the Port, Plaintiff meets all of the factors under the *Bily* test.

In *Nelson*, which Winzler also relies on, the court noted that there was no written contract in that case and stated "[t]hus, we must determine whether the Nelsons are intended or incidental beneficiaries of any oral contract that existed between Steinbruegge and Anderson or IBP." The Court found that "Nelsons did not engage in any negotiations with IBP or Anderson." *Id.* at 708-09. The Court in *Nelson* held that the owner [Nelson] was not a third party beneficiary of the suppliers' [IBP and Anderson] contracts. Here, Winzler [the supplier of the services] did in fact have multiple direct communications with the Port [the owner]. The critical point is that all of Winzler's efforts were intended **solely** to benefit the Port, not Black. *Nelson* does not apply to this case; and it supports Plaintiff that the Port was an intended third party beneficiary.

E.  **The Court's Earlier Ruling Supports a Finding that the Port Was an Intended Third Party Beneficiary Of The Black-Winzler Contract.**

In its April 8, 2005 Order on summary judgment, the Court granted summary judgment in favor of Winzler on Plaintiff's negligence claims based on the Economic Loss Rule. The Court stated that the "Economic Loss Doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" Apr. 8, 2005 Order at 9. The Court also stated that the Economic Loss Doctrine "'marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and

9.

tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.' *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000)." Apr. 8, 2005 Order at 9. Citing the District Court of Appeal of Florida in *The Ocean Ritz of Daytona Condominium v. GGV Assocs., Ltd.*, 710 So.2d 702 (Fla. App. 1998), the Court stated that in the event of economic loss, a contract action is more appropriate than a negligence action.

The Court's language signifies that the Economic Loss Doctrine only applies in the event of a contractual relationship (i.e., either direct privity or as a third party beneficiary). If the Court rules that a contractual relationship does not exist between the Port and Winzler, then Winzler cannot be sheltered from Plaintiff's tort claims through the Economic Loss Doctrine, which was Winzler's sole basis for seeking summary judgment on Plaintiff's tort claims. If the Court rules that Plaintiff cannot avail itself of contractual remedies on the grounds that Plaintiff does not have a cause of action in contract against Winzler, then the Court should recognize that Plaintiff's tort cause of action against Winzler should be reinstated. The Florida Supreme Court recognized as much in *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla. 1973) (cited in *The Ocean Ritz of Daytona Condominium*). In *A.R. Moyer*, the plaintiff was not the beneficiary, either directly or as a third party beneficiary, of the underlying contract. Since there was no contract under which the general contractor could recover his loss, the court concluded that the plaintiff had a cause of action in tort.

Furthermore, the very policy behind the economic loss doctrine is that, in the commercial law setting, parties freely bargain in distributing and limiting liability to each other within the confines of a contract, and thus they should generally not be liable for damages that exceed the liability limits spelled out in the contract. Here, Black and Winzler, as contracting parties, chose not to exclude third party beneficiary claims arising from the Black-Winzler

Contract; and the Port and Black chose not to require any contracts between the Port and others or between Black and others to contain a "no third party beneficiary" clause.

This Court also expressly rejected Plaintiff's legal position that Plaintiff lacked contractual privity with Winzler, and the economic loss doctrine did not apply. This Court therefore assumed that Plaintiff had a contractual relationship with Winzler, and therefore a viable claim; otherwise, the economic loss doctrine could not have barred Plaintiff's negligence claim against Winzler. The Court's position on this issue constitutes the law of the case.

## III. CONCLUSION

Plaintiff believes that this Court has already found that Plaintiff can pursue a breach of contract action against Winzler. However, at the very least, whether the Port is a third party beneficiary of the contract between Black and Winzler is an issue of fact that should be delegated to the jury. The evidence in this case has demonstrated that the Black-Winzler contract was expressly intended to benefit the Port. Should the Court be inclined to find as a matter of law that the Port is not a third-party beneficiary of the Black-Winzler contract, which would counteract its prior rulings, the Court should also reconsider its decision granting summary judgment on Plaintiff's negligence claim against Winzler, and revive those tort claims. Winzler is not statutorily immune from liability, or immune on any other basis. Plaintiff is entitled to a recovery for Winzler's defective and non-code compliant repair design.

DATED: Hagåtña, Guam, November 14, 2005.

CARLSMITH BALL LLP

_____
STEPHEN C. SMITH
ELYZE McDONALD
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

# DECLARATION OF SERVICE

I, Elyze McDonald, hereby declare under penalty of perjury of the laws of the United States, that on November 14, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S BENCH BRIEF RE RECOVERY UNDER THE THIRD PARTY BENEFICIARY THEORY WITH REGARD TO DEFENDANT WINZLER & KELLY CONSULTING ENGINEERS** upon Defendants' Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Klemm Blair Sterling & Johnson, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and

>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 14th day of November, 2005 at Hagåtña, Guam.

_____
ELYZE MCDONALD