BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 477-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers



FILED
DISTRICT COURT OF GUAM
NOV 15 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP.,<br><br>Defendants. | Civ. No. CIV 03-00009<br><br>WINZLER & KELLY'S RESPONSE TO PLAINTIFF'S BENCH BRIEF RE THIRD PARTY BENEFICIARY<br><br>CERTIFICATE OF SERVICE<br><br>Trial: November 7, 2005 |

Winzler & Kelly responds as follows to the new arguments made in Plaintiff's Bench Brief on the third-party beneficiary issue (the old ones having already been addressed in the briefing on the pre-trial motion in limine on that issue).

Plaintiff states that the "sole reason" for the Black-W&K contract was to save the Port money. See Bench Brief at 2. In fact, there is no evidence of W&K's reason for entering into the contract – other than, presumably, to be paid. See generally 9 Corbin on Contracts § 776 (p. 14) ("the right of [a third] party does not depend upon the purpose, motive, or intent of the promisor. The motivating cause of his making the promise is

**ORIGINAL**

usually his desire for the consideration given by the promisee."). Black's reason for entering into the contract, according to the evidence, was to enable itself to obtain its construction contract with the Port:

> Q: Okay, now when you, when Black, couldn't get the 2.1 million dollar contract because the Port didn't have enough money, Black then put together an alternative design so that it could get the contract; is that right?
>
> A: That is correct.

Transcript of Former Black General Manager Perfecto Jose's Testimony at 76. Any benefit to the Port was thus incidental to the parties' intent to benefit themselves.

Plaintiff comes closer to the truth the second time, when it states that "[t]he sole purpose of VE-1 [from Black's perspective] was to allow Black to perform its obligation under the Black-Port contract[.]" Bench Brief at 4-5. Its conclusion from that premise, however ("making the Port the intended beneficiary of the Black-Winzler contract"), is diametrically opposed to the actual statue of the law. Contracts that are "made to enable the principal contractor to perform" do *not* create rights in the third party. 9 Corbin on Contracts § 779D (page 40). For example:

> the Government is not a beneficiary of a subcontractor's promise to the contractor, even though the performance promised may *enable the contractor to perform* his contractual duty to the Government.

Id. at page 41 (emphasis added).

> The same is true in any case where A [Black] is under a contractual duty to C [the Port] the performance of which requires labor or materials, and B [W&K] promises A to supply him such labor or materials; C has no action against B on this promise. In such cases the performance promised by B does not in itself discharge A's duty to C of in any other way affect the legal relations of C. It may, indeed, tend toward C's getting what A owes him, since it supplies A with the money or material that will *enable A to perform*, but such a result requires *the intervening voluntary action of A.*

> B's performance may take place in full without C's ever getting any performance by A or receiving any benefit whatever. *In such situations, therefore, C is called an "incidental beneficiary" and is held to have no right.*

Id. at page 39-40 (emphasis added). This is the basis for the general rule, stated by Corbin and applied in, *inter alia*, Nelson v. Anderson Lumber Co., 99 P.3d 1092, 1099 (Idaho 2004), that a project owner is not a third-party beneficiary of a construction subcontract. The missing link is the contractor – here, Black. The intervening act of Black is required in order for the Port to benefit at all from W&K's performance. See also id. at page 42 ("The [third party] may or may not receive the expected gift, *at the will of the promisee*.") (emphasis added).[1]

Plaintiffs also cite a number of California cases, striving to create the impression that the law of California (and by implication that of Guam, though Guam does not necessarily follow California precedent)[2] supports their expansive view of who is

---

[1] Plaintiff's whole Corbin argument is tailored to fit a single generalization by Corbin about "pecuniary benefit" that constitutes what he calls "an attempt at a consistent statement of the generally prevailing law." 9 Corbin on Contracts § 776 (p. 16). At the same time, however, Plaintiff neglects Corbin's lengthy and specific discussion of subcontract situations, where he makes clear that performance of the subcontract is *not* of pecuniary benefit to the third party when it adds nothing to the performance to which he is entitled from the contractor. See, e.g., id. at 42 ("Performance of the contract may make more probable the consummation of the gift; but it does not itself confer pecuniary benefit.").

Plaintiffs similarly make much more of a passage in Restatement (Second) of Contracts §302, comment d, than its fair sense will bear, omitting or ignoring the preliminary phrase "in such cases," which refers to, e.g., "a promise to perform a supposed or asserted duty of the promisee, a promise to discharge a lien on the promisee's property, or a promise to satisfy the duty of a third person." A promise to design a repair method for a contractor, who himself remains bound to execute the repairs, is not remotely of this character.

[2] See, e.g., Custodio v. Boonprakong, 1999 Guam 5 ¶11.

intended beneficiary. Their quotations from those cases, however, touch on only broad and undisputed principles, and they make no mention of California law directly contrary to their position, such as Martinez v. Socoma Companies, Inc., 521 P.2d 841, 845 (Cal. 1974) (in bank) (noting the California, like Restatement (Second) of Contracts §302, defines intended beneficiaries as either creditors or donees), and G & P Electric Co. v. Dumont Construction Co., 15 Cal. Rptr. 757, 763 (App. 1961) (receipt of benefit by owner does not make him intended beneficiary of subcontract). Nor do they note that the statutory law of Idaho is also identical to that of both Guam and California on this point, see Idaho Code 29-102, and produced such decisions as Idaho Power Co. v. Hulet, 90 P.3d 335, 339 (Idaho 2004) (no intended beneficiary status where parties contracted to protect their own interests, although third party benefited financially as a result), or Jones v. Better Homes, Inc., 316 P.2d 256, 259-60 (Idaho 1957) (adopting creditor / donee classification of the Restatement), and, of course, Nelson v. Anderson Lumber, supra (owner held not to be intended beneficiary of subcontract),

Finally, Plaintiff claims that either contractual privity or third-party beneficiary status is necessary for the economic loss doctrine to apply. In fact, the doctrine applies whenever the duty at issue arises from a contract, regardless of whether there is a contractual claim of any kind available against the allegedly negligent party.[3] See, e.g.,

---

[3] Significantly, the parties East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986) – the landmark Economic Loss Doctrine case – were not in contractual privity. Defendant Transamerica Delaval was a subcontractor on a ship construction project. Plaintiff East River was not even the owner of the completed ship, but only the charterer of the ship from the owner. The parties were thus even further from contractual privity in East River than in this case – yet those are the facts on which the Supreme Court chose to adopt and apply the Economic Loss Doctrine.

Carstens v. City of Phoenix, 75 P.3d 1081, 1085 (Ariz. App. 2004) (rejecting contention that "the economic loss rule should only apply in cases in which a plaintiff also has contractual remedies available against that particular tortfeasor"); BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 74-75 (Colo. 2004) (if the source of duty is in a contract, then the economic loss rule applies, even if the contract is not directly between the parties). Id. at 74-75. The BRW court explains why, by focusing on the underlying purposes of the economic loss doctrine:

> In the context of larger construction projects, multiple parties are often involved. These parties typically rely on a network of contracts to allocate their risks, duties, and remedies[.] . . . Even though a subcontractor may not have the opportunity to negotiate directly with the engineer or architect, it has the opportunity to allocate the risks of following specified design plans when it enters into a contract with a party involved in a network of contracts. In this situation, application of the economic loss rule encourages a subcontractor to protect itself from risks, holds the parties to the terms of their bargain, enforces their expectancy interest, and maintains the boundary between contract and tort law. . . . The present case involves contractual duties that arose out of a network of agreement of which all parties had notice. The Project involved commercially sophisticated parties able to negotiate and bargain for an allocation of risks, duties and remedies. Dufficy was aware that it would be bound by BRW's plans and specifications before it entered into a contract with Anko.[4] Dufficy has the opportunity to allocate the risks that might occur in following BRW's plans and relying on PSI's inspection of the Project, but failed to do so. Rather, when Dufficy contracted with Anko, it agreed to be bound by BRW's plans and specifications and did not obtain provisions protecting itself from economic loss.[5]

---

[4] Just as the Port was aware that Black would be doing the repairs "in accordance with the attached drawing prepared by Winzler & Kelly."

[5] On the contrary, the Port explicitly disclaimed any contractual relationship with subcontractors, and, in the same paragraph (and contrary to the Port's current contention), also provided: "The Contractor agrees to bind every subcontractor by the terms of this contract and the contract documents." Exhibit 16 at paragraph 1(b). Notwithstanding the dictum in the Pierce case, the Port-Black contract, all by itself, demonstrates that neither the promisee (Black) nor the third party (the Port) intended any contractual duty to arise toward the Port from subcontractors.

Id. at 72-73. See also, e.g., Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Board, 929 P.2d 1228, 1235 (Wyo. 1996) (similar analysis based on third party's ability to allocate the risk when negotiating contracts with other parties).[6] Thus, the economic loss doctrine bars a negligence claim by Plaintiff against W&K regardless of the lack of any kind of contract claim against them.

Winzler & Kelly will address the third-party beneficiary more thoroughly in its forthcoming motion for judgment as a matter of law.

Respectfully submitted this 15th day of November, 2005.

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Winzler & Kelly

By: _____
Joseph E. Horey

---

[6] This does not leave a plaintiff without a remedy. See Carsten, supra, at 1085 ("In this case, because the Carstens allege purely economic losses, their damages sound in contract, and, presumably, may be asserted against those defendants with whom the Carstens are in privity. Thus, the rule does not prevent the Carstens from recovering their economic losses, but merely restricts them, to suits against those defendants actually liable in contract."); Mose v. Tedco Equities – Potter Road Limited Partnership, 598 N.W.2d 594, 600 (Wis. App. 1999) ("Mose is not left without a remedy as a result of the dismissal of the tort claims. . . . Mose has sued the seller, Tedco, for breach of contract. If Mose can prove the breach of contract allegations, he will be afforded proper legal redress.")

## CERTIFICATE OF SERVICE

I, Joseph E. Horey, hereby declare upon penalty of perjury under the laws of the Unites States, that on the 15 day of November, 2005, I caused to be served a true and correct copy of **WINZLER & KELLY'S RESPONSE TO PLAINTIFF'S BENCH BRIEF RE THIRD PARTY EBENFICIARY** upon Plaintiff's and Defendants' counsel of record as follows:

>Forrest Booth, Esq. / Stephen Smith, Esq.
>Carlsmith Ball LLP
>134 West Soledad Avenue
>Bank of Hawaii Building, Suite 401
>Hagåtña, Guam
>
>Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds
>
>Thomas C. Sterling, Esq.
>Klemm, Blair, Sterling & Johnson
>Suite 1008, Pacific News Building
>238 Archbishop F.C. Flores Street
>Hagåtña, Guam
>
>Attorneys for Defendant Black Construction Corporation
>
>Thomas M. Tarpley, Esq.
>Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Bldg.
>134 W. Soledad Avenue
>Hagåtña, Guam
>
>Attorneys for Defendant
>   Engineering, Management & Planning Services Corporation

Dated this 15th day of November, 2005.

_____
JOSEPH E. HOREY