BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 477-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers



**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S, <br><br> Plaintiff, <br><br> vs. <br><br> BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP., <br><br> Defendants. | Civ. No. CIV 03-00009 <br><br> WINZLER & KELLY'S MOTION FOR JUDGMENT AS A MATTER OF LAW (THIRD PARTY BENEFICIARY) <br><br> CERTIFICATE OF SERVICE <br><br> Trial: November 7, 2005 |

## INTRODUCTION

Winzler & Kelly hereby moves the Court, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure,[1] for judgment as a matter of law, on the ground that there is no legally sufficient evidentiary basis upon which a reasonable jury could find that the Port

---

[1] Rule 50(a) provides as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a).

Authority was a third-party beneficiary of the contract upon which Plaintiff seeks to hold W&K liable—namely, the contract between W&K and Black.

## THIRD PARTY BENEFICIARY PRINCIPLES

"A person seeking to enforce a contract as a third-party beneficiary has the burden of demonstrating that he has enforceable rights thereunder." Flemington Nat. Bank & Trust Co. v. Domler Leasing Corp., 410 N.Y.S.2d 75, 78 (App. Div. 1978). See also, e.g., State ex rel. Stovall v. Reliance Insurance Co., 107 P.3d 1219, 1231 (Kan. 2005) ("The burden of establishing standing to bring suit as a third party rests with the party asserting it."). "Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person musty be clearly expressed in the contract." Stovall, supra, 107 P.3d at 1231. A contract relied upon to establish third-party beneficiary liability "must be strictly construed in favor of the person against whom liability is asserted." Dawson v. Eldredge, 372 P.2d 414, 418 (Idaho 1962).

A third-party beneficiary is one whom the parties intend to benefit by agreeing to pay a debt owed to him, make a gift to him, or the like. See Restatement (Second) of Contracts § 302. "In order for a third party beneficiary to recover on a breach of contract claim, the third party must show that the contract was made for his or her direct benefit and that he or she is more than a mere incidental beneficiary." Nelson v. Anderson Lumber Co., 99 P.3d 1092 (Idaho 2004) (citing Dawson, supra, 372 P.2d at 418).

## THE PORT IS NOT A THIRD PARTY BENEFICIARY

The Port was not a third-party beneficiary of Winzler & Kelly's design subcontract with Black, because that subcontract exhibits no intent to benefit the Port, and all benefit the Port derives from it is purely incidental.

It is not sufficient that the subcontract was intended to be performed at the Port's facility, or that performance would ultimately benefit the Port as owner of the pier. See, e.g., Pierce Assoc. v. Nemours Foundation, 865 F.2d 530, 538 (3rd Cir. 1989) ("In every construction subcontract the owner is the one which ultimately benefits from its performance. However, this does not create a third-party beneficiary relationship."); G & P Electric Co. v. Dumont Construction Co., 15 Cal. Rptr. 757, 763 (App. 1961) ("While the [owners] would receive the benefit of having the electrical work performed by virtue of [the subcontractor] performing its subcontract with [the general contractor], this factor alone would not make the . . . subcontract a contract for the express benefit of the [owners]."); Stovall, supra, 107 P.3d at 1232 ("Knowledge that a contract will benefit a third party is not intent to benefit the third party.") (quoting Noller v. General Motors Corp., 772 P.2d 271 (Kan. 1989)).

Nor is it sufficient that the incidental effect of the subcontract was to save the Port money. Saving money is not the type of "benefit" that makes one an intended third-party beneficiary of a contract. On the contrary, third-party beneficiary status is limited to those persons who are either creditors or donees of the promisee under the contract they seek to enforce against the promisor:

> American law generally classifies persons having enforceable rights under contracts to which they are not parties as either creditor beneficiaries or donee beneficiaries . . .
>
> A person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee. . . .
>
> A person is a donee beneficiary only if the promisee' contractual intent is either to make a gift to him or to confer on him a right against the promisor.

Martinez v. Socoma Companies, Inc., 521 P.2d 841, 845 (Cal. 1974) (in bank). See also, e.g., State ex rel. E.A. Martin Machinery Co. v. Line One, Inc., 111 S.W.3d 924, 931 (Mo. App. 2003) ("Only donee and creditor beneficiaries have enforceable rights under a contract."); Lord v. Parisi, 19 P.3d 358, 362 (Or. App. 2001) ("A plaintiff who is neither a donee beneficiary nor a creditor beneficiary is merely an incidental beneficiary[.]"). See generally Restatement (Second) of Contracts § 302.[2]

---

[2] Indeed, even creditors are not always intended third-party beneficiaries, as in situations where the payment of the debt is not the primary purpose of the contracting parties. See, e.g., Idaho Power Co. v. Hulet, 90 P.3d 335, 339 (Idaho 2004) ("Each party agreed to the provision to protect his own interests. While Idaho Power would benefit from payment [of a lessee's overdue power bills by the lessor, as provided in the lease], the primary purpose of the Lease Agreement was not to protect Idaho Power but to provide Hulet with rent and to allow Comstock a realistic chance to profitably run the dairy.")

In this case, W&K's purpose was to obtain payment for its work, while Black's purpose, as Perfecto Jose of Black has testified, was to obtain a lucrative contract with the Port:
> Q: Okay, now when you, when Black, couldn't get the 2.1 million dollar contract because the Port didn't have enough money, Black then put together an alternative design so that it could get the contract; is that right?
> A: That is correct.

Transcript of Jose's Testimony at 76.

The purpose of the contract, therefore, from Black's standpoint, was not to save the Port $700,000, but rather to make itself $1.4 million. Any savings to the Port were purely incidental to that purpose. By arguing that the Port was the intended beneficiary of the W&K – Black subcontract because its performance saved the Port money, the Syndicate (like Idaho Power) confuses intended benefit with *incidental* benefit.

The Port is neither the creditor nor the donee of Black, the promisee of performance under the subcontract with W&K. W&K's preparation of the drawing VE-1 did not discharge any legal debt or other legal duty owed to the Port by Black, nor did Black intend to make a gift to the Port, or to confer on it any right against W&K. Perfecto Jose of Black has so testified:

> Q: When Black contracted with Winzler & Kelly, was it their contractual intent in doing so to be giving a gift to the Port Authority?
>
> A: No.
>
> Q: Did Black owe any debt to the Port Authority that they were paying off by having Winzler and Kelly provide these services for Black?
>
> A: Not that I'm aware of.
>
> Q: Was it Black's intent in entering into the contract with Winzler and Kelly to create a contractual relationship between Winzler and Kelly and the Port?
>
> . . .
>
> A: No, I'm not aware of that.

Transcript of Jose's Testimony at 59-60. Plaintiff has introduced no evidence to the contrary. The Port thus was an incidental beneficiary, without right to enforce the contract against W&K. Indeed, this case fits precisely within a Restatement illustration of a prototypical "incidental beneficiary" situation:

> A [Black] contracts to erect a building [dock] for C [the Port]. B [W&K] then contracts with A [Black] to supply lumber [a design] needed for the building [dock]. *C [the Port] is an incidental beneficiary of B [W&K]'s promise*[.]

Restatement (Second) of Contracts § 302, illus. 19 (emphasis added).

## ILLUSTRATIVE CASES

This provision of the Restatement was invoked in two recent cases involving facts similar to this case, which illustrate clearly why the Port was not a third-party beneficiary in this case. In Nelson v. Anderson Lumber Co., 99 P.3d 1092 (Idaho 2004), the owners of a defectively constructed cabin sued a design subcontractor (IBP) who had been retained by the general contractor (Steinbruegge) to provide panel designs. However, the court granted summary judgment in favor of IBP, on the ground that the owners were not third-party beneficiaries of IBP's subcontract with Steinbruegge. The court reasoned that, since the general contractor's duty to provide the owner with a finished structure remains the same regardless of whether the subcontractor performs or not, "the benefit that [the owner] receives from [the subcontractor's] performance must be regarded as merely incidental," and thus does not give rise to third-party beneficiary status. Id. at 1099. The court quoted Restatement (Second) of Contracts § 302, illus. 19, in support of its holding, as well as Corbin on Contracts, which is of similar import, providing as follows:

> Such contracts [between a principal contractor and subcontractors] are made *to enable the principal contractor to perform*; and their performance by the subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items; and if after their installation the undelivered building is destroyed by fire, the principal contractor must replace them for the owner, even though he must pay the subcontractor in full and has no right that the latter shall replace them. It seems, therefore, that *the owner has no right against the subcontractor*, in the absence of clear words to the contrary. The owner is neither a creditor beneficiary nor a donee beneficiary; the benefit that he receives from performance *must be regarded as merely incidental*.

9 Corbin on Contracts § 779D, quoted in Nelson, supra, 99 P.3d at 1099 (emphasis added). See generally id. at 1099 ("Subsequent contracts entered into by Steinbruegge

6

added nothing to the Nelsons' entitlement, and the Nelsons were still entitled to the plans and materials regardless of the means by which Steinbruegge obtained them.").

Similarly, in State ex rel. Stovall v. Reliance Insurance Co., 107 P.3d 1219, 1231 (Kan. 2005), the State of Kansas sued various subcontractors in connection with the defective installation of an underground piping system at a state prison. The court dismissed the State's claims against the subcontractors, holding that the State was not a third party beneficiary of the subcontracts. It wrote:

> While the State's plans and specifications are referenced within the subcontracts in question, there is no language clearly expressing an intent for the subcontractors to assume a direct duty to the State. The provisions referenced by the State do not include a promise or the specific intention to benefit the State, nor were the provisions made directly and primarily for the State's benefit.

Stovall, supra, 107 P.3d at 1232 (internal punctuation omitted). As in Nelson, the Stovall court found Restatement (Second) of Contracts § 302, illus. 19, particularly relevant to its determination.

Another recent case relevant to this issue is Weseloh Family Limited Partnership v. K. L. Wessel Construction Co., 22 Cal.Rptr.3d 660, 668 (App. 2004). In Weseloh, the owners of a defectively constructed retaining wall sued an engineering subcontractor (Owen) and its engineer (Randle), who had been retained by the contractor (Sierra) to do design work on the wall.[3] Again, the court upheld summary judgment in favor of the

---

[3] In fact, Sierra itself was a subcontractor on the project, and Owen and Randle thus sub-subcontractors, who were being sued by both the owners (Weseloh) and the general contractor (Wessel). The terms "subcontractor" and "contractor" are used above in an effort to avoid confusion in the analysis.

7

subcontractors on the ground that, *inter alia*, the project owner was not an intended third-party beneficiary of the subcontract.[4] Owen and Randle's role, the court wrote, was "to primarily benefit Sierra," 22 Cal.Rptr.3d at 668, and not to benefit the owner, since they had not contracted with the owner, and "[t]here was no intended beneficiary clause in any contract related to the design of the retaining walls, identifying [the owner] as the intended beneficiary of the work performed by Randle and Owen." Id. at 668. The court summarized: "To the extent Randle and Owen's participation would benefit Wessel and the Weseloh plaintiffs, it was only through Sierra." Id. at 668-69. The court so held even though "Randle was aware the property was owned by Weseloh." Id. at 668. The court left the owner to its remedy against the contractor, pointing out that the owner:

> could have taken steps that would have enabled them to proceed directly against Randle and Owen by, for example, negotiating for the inclusion of a provision in the subcontract identifying the Weseloh plaintiffs and Wessel as the intended beneficiaries.

Id. at 671.

Applying the reasoning of these cases to the facts presented in this case, it is clear that the Port Authority was not a third-party beneficiary of the subcontract between W&K and Black. Plaintiff has produced no contractual language clearly expressing any intent for W&K to assume a direct duty to the Port Authority. And since Black would have been liable on its general contract with the Port Authority for any defects in the pier repair, regardless of whether W&K performed its design subcontract, or indeed

---

[4]Although Weseloh was a negligence case, rather than a breach-of-contract case, the court discussed third-party beneficiary principles as an element of its analysis of whether a duty of care existed.

8

regardless of whether Black had contracted with W&K at all, the Port Authority is a mere incidental beneficiary of the subcontract, and as such lacks standing to assert a third-beneficiary claim.[5]

### BLACK'S CONTRACT PRECLUDES THIRD-PARTY BENEFICIARY STATUS

Finally, the lack of third-party beneficiary liability is made all the more clear by the fact that the prime contract between the Port and Black provided:

> Any and all contracts between the Contractor [Black] and its subcontractors shall not be construed as creating any contractual relation between any subcontractor and the Port Authority.

Construction Contract (Plaintiff's Exhibit ___) at Paragraph I(b). Such language as this has been held to categorically preclude the owner from recovering as a third-party beneficiary of the subcontract. See, e.g., G & P Elec., supra, 15 Cal. Rptr. at 763 (holding that owner was not third-party beneficiary of subcontract where prime contract

---

[5] The Syndicate has attempted to distinguish these cases on the ground that "Winzler had direct written communications with the Port," whereas in those cases, "the promisor had no contact with the beneficiary." See, e.g., Plaintiff's Opposition to W&K's Motion in Limine on this issue, at 4. There is no basis whatsoever for this reading of the cases. The opinion in Weseloh does not so much as mention, one way or the other, whether there were any communications between the owner and the subcontractors. The issue was certainly not determinative of the case. Nor did the issue arise in Stovall, where the third-party beneficiary issue was decided, as it should be in this case, on a straight Restatement § 302 analysis. 107 P.3d at 1232. And in Nelson, not only did the court not discuss the presence or absence of contacts in its discussion of third-party of beneficiary status (also decided under Restatement § 302), it affirmatively stated, in a prior section of the opinion, that there *had* been contacts between the owner and one of the subcontractors:
> The record indicates that the Nelsons [the owners] did not have contact with [subcontractor] Anderson until after [general contractor] Steinbreugge had negotiated with the company and the materials were ready to be delivered. Robin Nelson briefly contacted Anderson, but only to designate where to deliver the materials, not to make any changes to the original negotiation.

99 P.3d at 1098.

and subcontract provided that "nothing contained in the contract documents shall create any contractual relation between any subcontractor and the Owner"); Pierce Assoc., supra, 865 F.2d at 537-38 (same holding based on the language, "Nothing contained in the Contract Documents shall create any contractual relationship between the Owner or the Architect and any Subcontractor or Sub-subcontractor").

## CONCLUSION

Based on the applicable law, as applied to the evidence received in this case, the Port Authority of Guam cannot have been a third-party beneficiary of the contract between Winzler & Kelly and Black Construction Corp. Plaintiff's breach-of-contract claim against W&K, which depends on the existence of such third-party beneficiary status, therefore cannot be maintained, and W&K is entitled to judgment in its favor as a matter of law.

Respectfully submitted this ____ day of November, 2005.

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Winzler & Kelly

By: _____
Joseph E. Horey

## CERTIFICATE OF SERVICE

I, Joseph E. Horey, hereby declare upon penalty of perjury under the laws of the Unites States, that on the ___ day of November, 2005, I caused to be served a true and correct copy of **WINZLER & KELLY'S MOTION FOR JUDGMENT AS A MATTER OF LAW** (THIRD PARTY BENEFICIARY) upon Plaintiff's and Defendants' counsel of record as follows:

    Forrest Booth, Esq. / Stephen Smith, Esq.
    Carlsmith Ball LLP
    134 West Soledad Avenue
    Bank of Hawaii Building, Suite 401
    Hagåtña, Guam

    Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds

    Thomas C. Sterling, Esq.
    Klemm, Blair, Sterling & Johnson
    Suite 1008, Pacific News Building
    238 Archbishop F.C. Flores Street
    Hagåtña, Guam

    Attorneys for Defendant Black Construction Corporation

    Thomas M. Tarpley, Esq.
    Tarpley & Moroni, LLP
    Suite 402, Bank of Hawaii Bldg.
    134 W. Soledad Avenue
    Hagåtña, Guam

    Attorneys for Defendant
        Engineering, Management & Planning Services Corporation

Dated this _____ day of November, 2005.

_____
JOSEPH E. HOREY

11