BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 477-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORP., WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING MANAGEMENT & PLANNING SERVICES CORP.,<br><br>Defendants. | Civ. No. CIV 03-00009<br><br>WINZLER & KELLY'S MOTION FOR JUDGMENT AS A MATTER OF LAW (CAUSATION)<br><br>CERTIFICATE OF SERVICE<br><br>Trial: November 7, 2005 |

## INTRODUCTION

Winzler & Kelly hereby moves the Court, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure,[1] for judgment as a matter of law, on the ground that there is no legally sufficient evidentiary basis upon which a reasonable jury could find that Winzler & Kelly's performance of

---

[1] Rule 50(a) provides as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a).

its contract with Black Construction Corp. – i.e., its preparation of the drawing knows as "VE-1" – caused any damage to the Port Authority, because there is no evidence that Black followed VE-1 in carrying out repairs to the dolphins at F-1 pier.

## VE-1 WAS NOT FOLLOWED

Plaintiff's witnesses have been in accord that Winzler & Kelly's design required a particular mode of installation for the bolts and epoxy – specifically, the Red Head Redi-Chem capsule system "or approved equal."

> Q: We can agree the Winzler & Kelly design VE-1 called for a capsule epoxy system?
>
> A: Yes.

Frank Dennis Testimony.[2]

> Q: So, for instance, Note 2 in the upper righthand corner of VE-1 says, "Adhesive anchors to be stainless steel Red Head Redi-Chem by Phillips Drill Company, Catalogue Number CE3495 or approved equal. Install per manufacture's recommended procedures." Is that right?
>
> A: Yes.
>
> Q: So, these notes in the upper righthand corner are part of the design?
>
> A: Yes.
>
> Q: All right. And in order for someone to follow Winzler & Kelly's design, they need not only to follow Detail Number 3, but they also need to follow the English language notes in the upper righthand corner?
>
> A: Correct.

Perfecto Jose Deposition Transcript at 49.

---

[2] This is based on counsel's notes, and represents the substance of the questions and answers. The verbatim transcript (not yet prepared as to this witness) may differ slightly.

2

The secondary option of an "approved equal" was available in the event Redi-Chem could not be obtained, but the substitution was required to be approved by Winzler & Kelly.

> Q: By putting the words "or approved equal" in note No. 2, were you allowing the contractor some leeway in case he couldn't buy this particular product on Guam?
>
> A: Yes.

Bruce Swanney Deposition Transcript at 118-18

> Q: Okay. Did you consider that by putting the note 2 on the drawing, Exhibit 17 [VE-1], that you were giving the contractor the obligation to determine that if he had a product other than Reddy Cam [sic], that it had to be equal in terms of its shear and pull-out strength?
>
> A: No. My intent was that if any – any equals were to be considered for substitution, that they were to be submitted to me for approval before they – before they were used.

Bruce Swanney Deposition Transcript at 124

> Q: . . . What did you mean by the phrase "or approved equal"?
>
> A: That the contractor was at liberty to submit an alternative anchoring system to me for approval.

Bruce Swanney Deposition Transcript at 159.

> Q: So, Winzler & Kelly was required to approve the substitution of Anchor-It for Redi-Chem, correct?
>
> A: That would be a standard procedure.
>
> Q: Okay. And that's also what the ICBO report requires?
>
> A: Yes.

Perfecto Jose Deposition Transcript at 53.

This "approved equal" alternative was also an integral part of the design:

> Q: Okay. If the Redi-Chem capsule system was not used, then the design wouldn't have been followed; is that right?

3

A: Not unless there was some subsequent, what we call this – communications to Winzler & Kelly that there's another substitute for this product.

Q: Okay. So, if Winzler & Kelly has approved a substitution for Redi-Chem, then their design would have been followed?

A: Yes.

Q: And if Winzler & Kelly did not approve the substitute for Redi-Chem, then their design would not have been followed?

A: That would be – yeah, that's a fair statement.

Perfecto Jose Deposition Transcript at 49-50.

However, no proposed "equal" was ever submitted to Winzler & Kelly for substitution, and none was ever approved.

Q: Okay. Note No. 2 says: Adhesive anchors to be a particular Redhead product or approved equal. Did you have any discussion with Black about a substitution of a different product for the Redhead product that you specified in note 2?

A: No, I didn't.

Q: Did you know that Black had substituted a different product for the product set forth in note 2?

A: Well, I know now.

Q: You know now, right. Did you know prior to leaving Guam?

A: No.

Bruce Swanney Deposition Transcript at 116-17

Q: Did Black ever come – or EMPSCO or anyone ever come to you and say: Would XYZ product be the equivalent of what you specified.

A: No, no one did.

Bruce Swanney Deposition Transcript at 119

4

Nevertheless, the Redi-Chem capsule system of epoxy bolt installation was not used. Anchor-It was used instead.

> Q: But the Anchor-It system was used instead?
>
> A: Yes.
>
> Q: And that's not a capsule system?
>
> A: No.

Frank Dennis Testimony.[3]

Redi-Chem was selected in the first instance because was more likely to result in a good connection for the bolts:

> Q: Okay. Why did you select that particular product?
>
> A: It was the most appropriate for the application. It takes a lot of the construction variables out of the installation. It's a lot – it requires a lot less skill to install it, and there's more – it's more – you're increasing your chances of having the connection installed correctly.

Bruce Swanney Deposition Transcript at 118.

Without it, the connections failed.

> Q: Mr. Casey, the sentence I'm looking at says, "In some instances it appeared that the epoxy did not bond properly in the hole." What did you mean by that?
>
> A: On the majority of the holes, I couldn't see any instance where the epoxy had actually bonded to the concrete. In the majority of situations, the epoxy was either – either not there or it had layered itself onto the flange, as previously discussed. But in – in most cases, where there was no bolt in the hole, there was definitely no adhesion of the epoxy to the – to the surface of the – of the concrete.

---

[3] This is based on counsel's notes, and represents the substance of the questions and answers. The verbatim transcript (not yet prepared as to this witness) may differ slightly.

Ben Casey Deposition Transcript at 94-95.

## AN ENGINEER IS NOT LIABLE WHEN HIS DESIGN IS NOT USED

There is no evidence that the Redi-Chem epoxy bolt installation system prescribed by Winzler & Kelly in VE-1 was used. On the contrary, all the evidence is that it was *not* used. Yet the damage for which Plaintiff sues in this case resulted from failure at precisely the point at which Redi-Chem ("or approved equal") should have been used – i.e., the bolt connections. The longstanding rule applicable to such situations is:

> When a case is based upon negligence of an architect or engineer in preparing plans, it is *essential* that the plaintiff prove that construction of the project designed was accomplished *in compliance with the plans and specifications provided by the defendant, at least with respect to that portion of the work claimed to be defective.*

Covil v. Robert & Co. Assoc., 144 S.E.2d 450, 455 (Ga. App. 1965) (emphasis added, citations omitted). The issue is one of causation -- i.e., if the plans were not followed, they could not have caused the injury. In Wheat Street Two, Inc. v. James C. Wise, Simpson, Aiken & Associates, Inc., 208 S.E.2d 359 (1974), the court approved the following jury instruction:

> In order for an architect to be held liable for alleged negligent design, it must first be shown that the work claimed to be defective was constructed in accordance with the plans and specifications provided by the architect[,]

noting that it "says no more than that the architect cannot be held liable for negligent design if the negligent design is not a part of the proximate cause of the damages." Id. at 362.

In Lake v. McElfatrick, 34 N.E. 922 (N.Y. 1893), an architect was hired to design an opera house. His design called for the proscenium arch to be supported by stone "skewbacks," but the contractor made the skewbacks out of brick instead, and the arch collapsed. The Court of Appeals held that the owner's complaint for breach of contract against the architect ought to have been dismissed:

6

> When it was conceded that the plaintiff's assignor had not followed the plans in this respect, and it appeared that the failure to put in the stone skewbacks may have caused the loss, which the plaintiff is seeking to impose upon the defendants, *they were entitled to a ruling, as a matter of law, that the plaintiff could not recover*, and the complaint should have been dismissed. He had failed to establish the performance of the condition precedent, which was *essential to the support of his cause of action*. . . . .
>
> [W]here the variance is not disputed, and involves the integrity of the mode of construction of the affected part, and is so far material that it may have been the direct cause of the injury for which the owner seeks to hold the architect responsible, it must be held, we think, that the plaintiff has *failed to establish the cause of action upon which he relies*.

Id. at 924-25 (emphasis added).

Courts have followed this rule in numerous other cases in which a situation of this type has arisen. For example, in Weston v. New Bethel Missionary Baptist Church, 598 P.2d 411 (Wash. App. 1979), the architect's design had called for a 16-foot-high rockery. The rockery was actually built 22 feet high, however, and then had collapsed. The court granted the architect's motion for summary judgment on the owner's claim against him, stating: "Since Jepson's plans were not followed or relied upon, Jepson could not be guilty of negligence that caused damages to plaintiff's property." Id. at 414.

Likewise, in Sanders v. Kalamazoo Tank & Silo Co., 171 N.W. 523 (Mich. 1917), the contractor admitted having deviated from the architect's plans in the construction of a derrick:

> "Larger bolts than I had would have enabled me to bolt them together at that point and carried out the directions. Instead of that, I took the shorter bolts and bolted it 18 inches up the braces. It would only have taken a bolt about an eighth of an inch longer."

Id. at 527. The trial court granted judgment n.o.v. in favor of the architect, and the state Supreme Court agreed:

> One cannot read this record without being of the opinion that had the instructions, especially the assembling diagram as shown in Exhibit D, been followed and

7

complied with, in all probability this deplorable accident would not have happened. We think *the duty and burden were placed upon the plaintiff to show a substantial compliance with the plans and instructions* accompanying the derrick when it was purchased, and that burden has not been sustained, and that, in this case, the plaintiff is in no position to recover a judgment for damages.

Id (emphasis added). See also, e.g., Weseloh Family Limited Partnership v. K. L. Wessel Construction Co., 22 Cal.Rptr.3d 660, 670 (App. 2004) (finding engineer not liable for failure of retaining walls where there was "no evidence in the record that [the subcontractor] actually used [the engineer's] design without alteration in constructing the retaining walls"); Balcom Industries v. Nelson, 454 P.2d 599, 601 (Col. 1969) (holding that "an architect is not liable if the employer has failed to follow the plans in an important particular and damages result which may have been due to such departure") (citing 5 Am.Jur.2d, Architects § 23); Bayne v. Everham, 163 N.W. 1002 (Mich. 1917) (architect was entitled to directed verdict in his favor, in case where his plans and specifications were not followed).

## CONCLUSION

Based on the applicable law, as applied to the evidence received in this case, Winzler & Kelly cannot have caused any damages that may have been incurred by the Port Authority of Guam, because there is no evidence that it design – VE-1 – was followed by Black in doing repairs to the dolphins and piles. Plaintiff's breach-of-contract claim against W&K, which depends on such causation, therefore cannot be maintained, and W&K is entitled to judgment in its favor as a matter of law.

Respectfully submitted this ____ day of November, 2005.

8

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Winzler & Kelly

By: _____
    Joseph E. Horey

9

## CERTIFICATE OF SERVICE

I, Joseph E. Horey, hereby declare upon penalty of perjury under the laws of the Unites States, that on the ___ day of November, 2005, I caused to be served a true and correct copy of **WINZLER & KELLY'S MOTION FOR JUDGMENT AS A MATTER OF LAW** *(causation)* upon Plaintiff's and Defendants' counsel of record as follows:

>Forrest Booth, Esq. / Stephen Smith, Esq.
>Carlsmith Ball LLP
>134 West Soledad Avenue
>Bank of Hawaii Building, Suite 401
>Hagåtña, Guam
>
>Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds
>
>Thomas C. Sterling, Esq.
>Klemm, Blair, Sterling & Johnson
>Suite 1008, Pacific News Building
>238 Archbishop F.C. Flores Street
>Hagåtña, Guam
>
>Attorneys for Defendant Black Construction Corporation
>
>Thomas M. Tarpley, Esq.
>Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Bldg.
>134 W. Soledad Avenue
>Hagåtña, Guam
>
>Attorneys for Defendant
>   Engineering, Management & Planning Services Corporation

Dated this _____ day of November, 2005.

_____
JOSEPH E. HOREY

11

Case 1:03-cv-00009   Document 387   Filed 11/15/2005   Page 10 of 10