BERMAN O'CONNOR MANN & SHKLOV
DANIEL J. BERMAN
ROBERT J. O'CONNOR
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Phone: (671) 477-2778
Fax: (671) 477-4366

Attorneys for Defendant
Winzler & Kelly Consulting Engineers

**FILED**
DISTRICT COURT OF GUAM

NOV 1 7 2005

MARY L.M. MORAN
CLERK OF COURT



## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYD'S, ) ) ) Plaintiff, ) ) vs. ) ) BLACK CONSTRUCTION CORP., ) WINZLER & KELLY CONSULTING ) ENGINEERS and ENGINEERING ) MANAGEMENT & PLANNING ) SERVICES CORP., ) ) Defendants. ) ) | Civ. No. CIV 03-00009 POCKET BRIEF RE AMENDMENT "TO CONFORM TO THE EVIDENCE" Trial: November 7, 2005 |

## INTRODUCTION

Plaintiff has asserted, since the very outset of this matter, that any and all damage incurred by the F-1 dolphins was caused by the 2001 earthquake. Defendants, by contrast, have maintained that the damage was caused by berthing and mooring forces of ships docking at the dolphins.

Winzler & Kelly anticipates, however, that Plaintiff, once evidence has been introduced at trial convincingly demonstrating the actual cause of the damages, may attempt to reverse course, and will agree with Defendants that it actually was ships'

forces that caused the damage, then attempt to amend its Complaint to allege that Defendants breached their respective contracts by failing to carry out the dolphins repairs in such a way as to withstand ships' forces. Such an amendment, Plaintiff may argue, would be appropriate in order to conform the pleadings to the evidence, under Rule 15 of the Federal Rules of Civil Procedure.

Winzler & Kelly OBJECTS to any such amendment, and OBJECTS to the introduction of any evidence by Plaintiff to the effect that Defendants failed to make the dolphins and piles strong enough to withstand ships' forces, or that such supposed failure resulted from poor workmanship or lack of customary skill, or otherwise constituted a breach of contract or any other kind of actionable wrong on the part of any of the Defendants. This objection is made on the specific ground that such evidence is *outside the scope of the pleadings in this case.* Also, it exceeds Plaintiff's rights as a subrogee.

## SUBROGATION EXISTS ONLY AS TO EARTHQUAKE CLAIMS

Plaintiff has no independent cause of action against any of the Defendants. It brings this action solely in its capacity as *subrogee* of its insured, the Port Authority, based on its having paid out on the Port's insurance claim; and that claim was based solely on purported earthquake damage, *not* on any damage caused by the berthing or mooring forces of ships. That is clear from the Complaint itself, which provides as follows:

> *As a result of the damage caused by the second earthquake*, the Port Authority submitted a claim to Plaintiff. Plaintiff to date has paid part of the claim of the Port Authority, in an amount exceeding $3 million. . . . *To*

2

> *the extent Plaintiff has made such payments*, Plaintiff is subrogated to all
> of the rights and causes of action previously held by the Port Authority.

First Amended Complaint at paragraph 16 (emphasis added).

The Syndicate's right, as subrogee, to proceed against Defendants in this matter thus exists only to the extent it has paid the Port's claim for "damages caused by the second earthquake." In order to assert a subrogation claim for *berthing force* damage, the Syndicate would need to allege and prove: a) that the Port made a claim for such damage; and b) that the Syndicate paid it. Neither is the case. On the contrary, according to the Syndicate's own proffered evidence, Lloyd's paid the Port

> in full satisfaction compromise and discharge of all claims for loss and
> expense sustained to property insured under policy No: Port Authority of
> Guam *by reason of Earthquake* which occurred on October 13, 2001[.]

Loss and Subrogation Form (Plaintiff's Exhibit 18) (emphasis added). In consideration of this payment, the Port Authority assigned to Lloyd's "each and all claims and demands against any person, persons, corporation or property arising from or connected with *such loss or damage*[.]" Id.

The Syndicate, having not paid the Port for any damage caused by ships' forces, is thus not subrogated to any claims the Port may have against Defendants arising out of such damage, and cannot amend its complaint to assert such claims now. Indeed, the Syndicate would not have paid the Port for such damage in the first place, because it was not covered under the policy of insurance. Section II of the policy (Plaintiff's Exhibit 64) insures the Port against damage to, *inter alia*, "wharves," "berths," "mooring facilities," and "structures of any kind," but it specifically excludes "losses or damages caused by

3

wear and tear and gradual deterioration" – a category that would include berthing and mooring forces.

## REQUIREMENTS OF RULE 15

Even if there were no subrogation issues – i.e., even if the Syndicate could, in the first instance, have sued Defendants for berthing and mooring force damage -- it cannot amend its complaint to do so now, because of the requirements of Rule 15. Rule 15(b) provides that the court may allow an amendment to conform to the evidence "when the presentation of the merits will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's . . . defense upon the merits." Fed. R. Civ. P. 15(b). The chief factors that the court should consider in deciding a Rule 15(b) motion to amend are undue *delay* and undue *prejudice* to the party or parties opposing the motion. See, e.g., Smith v. EMC Corp., 393 F.3d 590, 598 (5th Cir. 2004) ("Because of the motion's undue delay and undue prejudice to EMC, the district court did not abuse its discretion in denying Smith leave to amend."); Jenkins v. Union Pacific R. Co., 22 F.3d 206, 213 (9th Cir. 1994) (holding that, in denying a motion to amend, the district court had "properly considered both undue delay in making the motion to amend and prejudice to Union Pacific.").

## PREJUDICE TO THE DEFENDANTS

In this case, Defendants would be unduly and unjustly prejudiced by the amendment, because they have prepared the whole case around the original allegation that the damage was caused by the earthquake, and that Defendants had failed to

4

adequately guard against earthquake damage. Experts have been retained, and have prepared their reports, with respect to these matters. Discovery has been conducted and witnesses assembled for trial, all in preparation to meet the original allegations in the First Amended Complaint.

That Complaint, which has defined and delimited the issues in this case since the day it was filed almost two years ago (including through the entire period of discovery), says nothing whatsoever about berthing or mooring forces of ships. Instead, it repeatedly claims that it was an *earthquake* that the dolphins needed to be designed and constructed to withstand, and an *earthquake* that damaged them. For example:

> On or about October 13, 2001, the island of Guam suffered another earthquake. . . . *[T]his earthquake* . . . did damage to the property and facilities owned by the Port Authority. Specifically, serious damage was done to F pier and the dolphins thereof[.]

First Amended Complaint at paragraph 15 (emphasis added).

> *As a result of the damage caused by the second earthquake*, the Port Authority submitted a claim to Plaintiff.

First Amended Complaint at paragraph 16 (emphasis added).

> The repairs, or the Project, done in 1996-1997 were inadequate, improperly done, and *insufficiently strong to withstand future earthquakes and typhoons*. The inadequacy and incompetence of the design and incompetence of the design, plans, specifications, and repair work performed or approved by Defendants directly caused and led to further damage to the property of the Port Authority *during the year 2001 earthquake*[.]

First Amended Complaint at paragraph 17 (emphasis added).

> Winzler breached its contract with Black by failing to exercise adequate skill and competence to design and specify the Project that would be *sufficiently strong to withstand future earthquakes and typhoons.*

5

First Amended Complaint at paragraph 27 (emphasis added).[1]

If these paragraphs had alleged, back in 2003, that *berthing and mooring forces* had damaged the dolphins, because, through the inadequacy and/or incompetence of Defendants, the pile connections were insufficiently strong to withstand such forces, this would have been an entirely different case. Not only would discovery and expert investigation have been conducted differently among these four parties, Defendants would have sought to implead the vessels (or their owners) that actually caused the damage for which the Syndicate seeks to hold the Defendants liable. This would have added an entirely new dimension to the case that was not present in this case as it was actually pled, since one cannot, of course, sue an earthquake. See, e.g., Smith v. EMC Corp., 393 F.3d 590, 598 (5th Cir. 2004) (noting that undue prejudice exists where an amendment "would have required that the parties reopen discovery and alter their trial strategies") (quoting Little v. Liquid Air Corp., 952 F.2d 841, 846 (5th Cir. 1992)).

## UNDUE DELAY BY THE PLAINTIFF

In addition to the prejudice they would cause to Defendants, Plaintiffs have unduly delayed this motion. By their own admission, they have known for more than two years (at least since the October 2003 Lito Gutierrez deposition) that Defendants attribute

---

[1]Even Plaintiff's subsequently dismissed negligence claim against Winzler & Kelly related to the ability of the dolphins to withstand earthquakes:

> Winzler negligently recommended that changes be made to the proposed plans at the project, which changes were negligent and improper, and led to the Property of the Port Authority being substantially weaker and *unable to withstand further earthquakes and typhoons*[.]

First Amended Complaint at paragraph 21 (emphasis added).

the damage to ships' forces, but have always vigorously opposed that theory, and have never sought to adopt it. As recently as the pre-trial hearing on the motions in limine, Plaintiff scoffed at the very notion that ships had caused any damage to the dolphins. The situation is thus strikingly similar to that faced by the court in Moody v. FMC Corp., 995 F.2d 63 (5th Cir. 1993):

> Here, there is no question that the [Plaintiffs] unduly delayed their request to amend their pleadings. The parties had been litigating this case for over two years. The parties had conducted extensive discovery, hired expert witnesses, and the trial was already underway. The [Plaintiffs] did not move to amend their pleadings until the third day of trial.

Moody, supra, 995 F.2d at 66. See also, e.g., Jenkins v. Union Pacific R. Co., 22 F.3d 206, 213 (9th Cir. 1994) (upholding denial of motion to amend when party seeking to amend had been on notice of the issue for at least a year, since it was discussed during a deposition).[2]

## NO IMPLIED CONSENT

Rule 15 also provides that "[w]hen issues not raised by the pleadings are tried by express of implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings" Fed. R. Civ. P. 15(b). Plaintiff may argue that Defendants, by introducing evidence that damage to the dolphins was caused by ships' forces, have impliedly consented to the litigation of whether they breached their contracts by failing to make the repairs strong enough to withstand such forces.

---

[2] Even if there were no prejudice, undue delay alone is sufficient reason to deny a motion to amend. "A finding that the nonmoving party would not be prejudiced by an untimely amendment does not compel a determination that the amendment is appropriate." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 232 (1st Cir. 2003) (upholding denial of motion to amend where party seeking amendment "offered no explanation for its lengthy delay in raising its motion to amend").

Winzler & Kelly has *not* consented to any litigation of that issue. It has raised the issue of ships' forces solely as a defense to Plaintiff's allegations that W&K's design work was insufficient to protect against *earthquake* damage. *That* issue is already in the complaint, and a defendant may introduce evidence to counter it, without thereby consenting to the litigation of other issues. See, e.g., 3 Moore's Federal Practice § 15.18[1] ("A court may not find consent when evidence supporting an issue allegedly tried by implied consent is also relevant to other issues actually pleaded and tried."); In Re Acequia, Inc., 34 F.3d 800, 814 (9th Cir. 1994) ("Where evidence alleged to have shown implied consent was also relevant to the other issues at trial, it cannot be used to imply consent to try the unpleaded issue.") (internal punctuation and italics omitted); Kenda Corp., supra, 329 F.3d at 232 ("[T]he introduction if evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue was infiltrating the case.") (internal punctuation omitted) .

It is no answer for Plaintiff to assert that Defendants raised the issue of ships' forces in the first place, as the court noted in the above-cited Moody case:

> The [Plaintiffs] argue that [Defendant] impliedly consented to try the adequacy of the warnings when *[Defendant] introduced its own evidence* about the warnings and failed to object to plaintiffs' evidence relating to the warnings. We disagree. The evidence on the warnings was relevant to issues already in the case. . . . [A party does not] consent to try a new issue by introducing evidence or failing to object to evidence when the evidence is relevant to pleaded issues in the case. *The evidence on the warnings was relevant to [Defendant's] defenses.*

Moody, supra, 995 F.2d at 65-66.

8

Finally, prejudice to the defendants also forms a part of the analysis in determining whether "implied consent" exists. See 3 Moore's Federal Practice § 15.18[1] ("In determining implied consent . . . a court should also consider whether the opposing party had a fair opportunity to defend against the issue and would be prejudiced in presenting its case."); R.A. Pohl Construction Co. v. Marshall, 640 F.2d 266, 267 (10th Cir. 1981) ("The test whether pleadings should be deemed amended . . . is whether the opposing party had a fair opportunity to defend and whether it could offer additional evidence if the case were retried on a different theory."). There is prejudice to the Defendants for all the reasons stated above.

## CONCLUSION

For the foregoing reasons, Plaintiff should not be allowed to amend its complaint to allege breach of contract or any other claim premised on any breach of duty by Defendants to guard against damage caused by ships, and no evidence or argument pertaining to such a theory should be admitted in the trial of this matter.

Respectfully submitted this 9th day of November, 2005.

BERMAN O'CONNOR MANN & SHKLOV
Attorneys for Winzler & Kelly

By: _____
Joseph E. Horey

9

# CERTIFICATE OF SERVICE

I, Joseph E. Horey, hereby declare under penalty of perjury of the laws of the Unites States, that on the 9th day of November, 2005, I caused to be served a true and correct copy of **POCKET BRIEF RE AMENDMENT "TO CONFORM TO THE EVIDENCE"** upon Plaintiff's and Defendants' Counsel of record as follows:

> Forrest Booth, Esq. / Stephen Smith, Esq.
> Carlsmith Ball LLP
> 134 West Soledad Avenue
> Bank of Hawaii Building, Suite 401
> Hagåtña, Guam
>
> Attorneys for Plaintiff S.J. Gargrave Syndicate at Lloyds
>
> Thomas C. Sterling, Esq.
> Klemm, Blair, Sterling & Johnson
> Suite 1008, Pacific News Building
> 238 Archbishop F.C. Flores Street
> Hagåtña, Guam
>
> Attorneys for Defendant Black Construction Corporation
>
> Thomas M. Tarpley, Esq.
> Tarpley & Moroni, LLP
> Suite 402, Bank of Hawaii Bldg.
> 134 W. Soledad Avenue
> Hagåtña, Guam
>
> Attorneys for Defendant EMPSCO

Dated this 9th day of November, 2005.

JOSEPH E. HOREY