CARLSMITH BALL LLP

DAVID LEDGER
STEVEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

FILED
DISTRICT COURT OF GUAM
DEC 2 0 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>                Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>                Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT BLACK CONSTRUCTION CORPORATION'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B) OF THE RULES OF CIVIL PROCEDURE; DECLARATION OF SERVICE**<br><br>**NO HEARING REQUESTED** |

       Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff" or "Gargrave") files herewith its Opposition to Defendant BLACK CONSTRUCTION

CORPORATION's Motion for Judgment As a Matter of Law Pursuant to Rule 50(b) of the Rules of Civil Procedure ("Motion"), as follows:

I.  PLAINTIFF HAS STANDING TO SUE HEREIN

Defendant in its present motion attempts, for the **fourth** time, to convince the Court that Plaintiff does not have standing to sue in a representative capacity for the damage to the F-1 Pier. Black is simply wrong. Having failed to gain any yardage on four downs, it is time for Black to turn the ball over and concede defeat.

For a Lloyd's syndicate, suing in diversity in a representative capacity is a well-known technique which has been used in dozens of cases, and which has been approved by numerous federal courts of appeal. *See, e.g.*, Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 855 (5th Cir. 2003) (Plaintiff Lloyd's underwriter filed a declaratory judgment action "… on his own behalf *and as the representative of Certain Underwriters at Lloyd's, London subscribing to the Policy* …") (italics in original). Accord, Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314 (7th Cir. 1998) (litigation allowed to go forward against one representative underwriter, on behalf of all underwriters); The Cox Syndicate at Lloyds v. Labarca, 260 F.3d 3 (1st Cir. 2001); Colip v. Clare, 26 F.3d 712 (7th Cir. 1994); Certain Underwriters of Lloyds v. General Accident Ins. Co., 909 F.2d 228 (7th Cir. 1990); The Watkins Syndicate at Lloyd's of London v. Tampa Airlines, S.A., 2004 U.S. Dist. LEXIS 20406 (S.D.N.Y. 2004); and Syndicate 420 at Lloyd's, London v. Glacier Gen. Assurance Co., 604 F.Supp. 1443 (E.D. La. 1985).

Black first made this unsuccessful argument in Defendants' Joint Brief Re Diversity and Admiralty Jurisdiction, filed herein on January 28, 2005, at pp. 6-7 and 11. Judge Tashima made short shrift of that argument. He ruled on March 24, 2005 that the Court had diversity jurisdiction, because Plaintiff was suing properly as a representative of the other

underwriters, but in fact Gargrave was the only party plaintiff. Memorandum Order Re Jurisdiction, pp. 2-5.

Black then renewed the same arguments in a motion *in limine*. This was denied by the Court on November 7, 2005, prior to trial.

Following the conclusion of Plaintiff's case, Defendant made the identical same motion that it now brings, in its Motion for Judgment Pursuant to Rule 50(a), filed herein on November 15, 2005. Black herein freely admits, in its Memorandum of Points and Authorities in Support of Motion for Judgment As a Matter of Law Pursuant to Rule 50(b) of the Rules of Civil Procedure (hereinafter the "Memorandum"), that "The identical grounds were raised by Black in its Motion for Judgment ..." Memorandum, at 1. That motion, too, was denied by the Court (on the day it was filed), as this Motion should be.

## II. PLAINTIFF PROVED ITS DAMAGES AT TRIAL

Plaintiff proved at trial that any repairs to the F-1 Pier had to meet the requirements of Guam's version of the 1994 Uniform Building Code (hereinafter the "U.B.C."). This was testified to by Plaintiff's expert Elliott Boone, and confirmed by Winzler & Kelly's expert Webb Hayes. Notably, both EMPSCO and Winzler & Kelly also used the U.B.C. as the standard to design to, in the work they did prior to the repairs which were conducted in 1996 and 1997. EMPSCO's Specifications, Engineering Documentation Report and Calculations (Trial Exhibits 4, 5 and 6), all mention or utilize the U.B.C., as do Winzler & Kelly's Structural Calculations, Trial Exhibit 62.

Plaintiff clearly proved at trial that the repairs designed by Winzler & Kelly and implemented by Black did **not** meet the requirements of the U.B.C. Against a maximum allowed demand-to-capacity ratio of not more than one, as dictated by the U.B.C., the demand-to-capacity ratios of the bolts in various dolphins at F-1 ranged from 2.3 to 3.6, as calculated by

Elliott Boone and set forth in Table 9 of his report (Trial Exhibit 44, p. 22). Thus the original Black/Winzler & Kelly design was clearly illegal, and could not have been reused in 2001.

Implicit in Black's Motion is the assumption that the Plaintiff insurers were only obligated to pay for, and should only have paid for, the costs of repairing the F-1 dolphins in 2001 exactly the same way they had been repaired by Black in 1996. Black makes the **assumption** that all the Port was entitled to was the cost of re-epoxying bolts into holes drilled in the underside of the dolphin caps. Nothing could be further from the truth. The Port was entitled to be compensated for all the damage caused by Black's breach of contract, Guam Code Ann. § 2201, and to a repair which was done in a workmanlike manner, which met the requirements of the 1999 U.B.C. *See, e.g., McAllen State Bank v. Linbeck Const. Corp.*, 695 S.W.2d 10, 18-19 (Tx. 1985) (repairs using a new design held to be reasonable and necessary after earlier design failed).

> The standard measure of damages is established by the Code, as the losses ensuing from non-compliance. It is shown in this case that the losses sustained is [sic] the payment for a useless heating system and its installation, the cost of removing that useless heating system, and the cost of restoring plaintiffs' home to its former condition. These are all losses under the contract. Defendant is liable for those losses.

*Ilgenfritz v. Radalec*, 74 So.2d 903, 906 (La. 1954).

Gargrave presented clear evidence of the cost of repairing the Pier in a workmanlike manner (the standard contained in Black's contract with the Port), which would meet the U.B.C. requirements. Gargrave paid Smithbridge $402,728 to repair the first 25 piles (Trial Exhibit 88 and testimony of Ben Casey and Peter MacLeod), and $1.42 million was paid to the Port Authority of Guam to repair the remaining 75 (Trial Exhibit 42 and testimony of Peter MacLeod). The evidence at trial was clear that 88% of the bolts failed (Unterberg Survey, Trial Exhibit 46 and testimony of Jurgen Unterberg, also referenced by Frank Dennis). No credible

witness suggested at trial that the repair method Black utilized in 1996 could simply have been reused in 2001: many of the piles were no longer in their original positions, the holes in the flanges no longer lined up with the holes in the concrete caps, some piles had been battered down and hung 6 inches or more below the concrete caps, and many of the holes had been damaged and the concrete cracked or split when the bolts were forcibly torn out by the 2001 earthquake. *See* photographs, Trial Exhibit 79. Plaintiff's damages, the cost of repairing the F-1 Pier in a manner which complied with the U.B.C. requirements, were clearly testified to by Peter MacLeod and Ben Casey.

This was not a case of "'some' soft epoxy" (Memorandum, p. 6), as Black asserts; it is a case of 88% of the bolts having failed in the 2001 earthquake. Many bolts were missing entirely, others were bent over or sheared off, and all of the bolts which fell out and were recovered had very little (almost no) epoxy in their threads. None of the bolts tore out cone-shaped pieces of concrete, as they would have if the epoxy had been properly installed and had properly hardened. As Peter MacLeod, Frank Dennis and Ben Casey all testified, no serious consideration was ever given in 2001 to merely re-epoxying new bolts into the old holes in the concrete. That was a design which had already failed, and as several of the expert structural engineers said, "engineers are very leery of a design which has failed." Plaintiff proved that the reasonable cost to repair the dolphins to the Code-compliant condition which the Port expected and contracted for was $1,822,728 ($1,420,000 plus $402,728).

## III.  CONCLUSION

Both aspects of Black's motion must be denied. This Court has already ruled, three prior times, that Plaintiff is entitled to sue in its representative capacity, on behalf of all of the property insurers of the Port Authority of Guam. Plaintiff intentionally did not put on evidence at trial concerning the cost of re-doing Black's defective work, in Black's defective

manner. Rather, Plaintiff put on complete and credible evidence of the cost of **properly** repairing the F-1 dolphins, in a workmanlike manner, in compliance with the then-applicable 1994 U.B.C. and Black's contract with the Port Authority.

DATED: Hagåtña, Guam, December 19, 2005.

_____
DAVID LEDGER

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on December 20, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S OPPOSITION TO DEFENDANT BLACK CONSTRUCTION CORPORATION'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B) OF THE RULES OF CIVIL PROCEDURE; DECLARATION OF SERVICE** upon Defendants Counsel of record as follows:

        Robert J. O'Connor, Esq.
        Daniel J. Berman, Esq.
        Berman O'Connor Mann & Shklov
        Suite 503, Bank of Guam Building
        111 Chalan Santo Papa
        Hagåtña, Guam 96910

        Thomas C. Sterling, Esq.
        Blair, Sterling, Johnson, Moody, Martinez & Leon Guerrero, P.C.
        Suite 1008, Pacific News Building
        238 Archbishop Flores Street
        Hagåtña, Guam 96910

and        Thomas M. Tarpley, Esq.
        Law Offices of Tarpley & Moroni, LLP
        Suite 402, Bank of Hawaii Building
        134 West Soledad Avenue
        Hagåtña, Guam 96910

Executed this 20th day of December, 2005 at Hagåtña, Guam.

        _____
        DAVID LEDGER

SANFRAN1\34982\1 123206.000