

CARLSMITH BALL LLP

DAVID LEDGER
STEVEN C. SMITH
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. (671) 472-6813

COZEN O'CONNOR

FORREST BOOTH
425 California Street, Suite 2400
San Francisco, CA 94104-2215
Tel No. (415) 617-6100

Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds



FILED
DISTRICT COURT OF GUAM
DEC 21 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT WINZLER & KELLY'S MOTION FOR ATTORNEYS' FEES; DECLARATION OF SERVICE**<br><br>**NO HEARING REQUESTED** |

Plaintiff S.J. GARGRAVE SYNDICATE AT LLOYDS (hereinafter "Plaintiff") hereby files its Opposition to Defendant WINZLER & KELLY'S motion for attorneys' fees (the

4845-1589-0432.1.055639-00001

Case 1:03-cv-00009    Document 459    Filed 12/21/2005    Page 1 of 18

"Motion"),[1], as follows:

## I. IN THE UNITED STATES, LITIGANTS BEAR THEIR OWN ATTORNEYS' FEES

Defendant WINZLER & KELLY (hereinafter "Winzler") apparently wishes it had litigated this case in the United Kingdom, where since 1278 the prevailing party has usually been awarded its attorneys' fees and costs.[2] Unfortunately for Winzler, the rule in the United States is that litigants bear their own attorneys' fees and costs. The U.S. Supreme Court, in the seminal case on attorneys' fees, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), stated that "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Id.*, at 247. Absent a statute or enforceable contract, litigants pay their own attorneys' fees. *Hall v. Cole*, 412 U.S. 1, 4 (1973); Cal.C.Civ.Pro. § 1021. Indeed, "Recognition of the availability of attorney's fees therefore requires a determination that 'Congress intended to set aside this longstanding American rule of law.'" *Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994). In that case, the Court discussed its "general practice of not awarding fees to a prevailing party absent explicit statutory authority ...". 511 U.S. at 819. *Accord, Buckhannon Board and Care Home, Inc. v. W.Va. Dept. of Health and Human Resources*, 532 U.S. 598, 608 (2001). The only exception to the American Rule is when the parties have a written contract **with each other** which provides that the prevailing party shall be awarded attorneys' fees. As will be seen, *infra*, that exception is not applicable here.

---

[1] The amount claimed by Winzler in attorneys' fees is grossly excessive, resulting from higher charges per hour than are traditional or appropriate in the Guam market ($230 per hour on average). Furthermore, most of the costs claimed would not be recoverable even by a true "prevailing party" under 28 U.S.C. §§ 1920 and 1923. However, since Winzler cannot recover any attorneys' fees **at all**, Plaintiff files this overall objection and will not dispute Winzler's claims for attorneys' fees and costs herein line-by-line. Plaintiff reserves the right to do so, however, in the event the Court should allow Winzler's claim for attorneys' fees to go forward.

[2] *See, Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967).

## II. THERE IS NO CONTRACT BETWEEN WINZLER AND PLAINTIFF'S INSURED

As the Court well knows, Winzler was hired by Defendant Black Construction Corporation (hereinafter "Black"), not by Plaintiff's insured the Port Authority of Guam (hereinafter the "Port Authority"). There was no contract between the Port Authority and Winzler. Accordingly, Winzler has no contract on which to base its claim for attorneys' fees. Winzler therefore attempts to "bootstrap" an argument that the contract between Black and the Port Authority, which does contain an attorneys' fees clause, gives Winzler, a non-signatory, rights equal to those of Black. Winzler is wrong. A non-signatory ordinarily has no rights under a contract. *See, e.g.*, Cal.Civ.C. § 1558 (it is essential that identity of parties to contract appear in document).

It is noteworthy that this argument constitutes a complete reversal of Winzler's position which it has steadfastly espoused throughout this litigation. Plaintiff alleged both before and at trial that the Port was a third-party beneficiary of the contract between Black and Winzler; *see* Plaintiff's First Amended Complaint, p. 7, ¶ 28. Winzler from inception vigorously opposed this assertion by Plaintiff. The Court nevertheless instructed the jury regarding the law of third-party beneficiary status.

What is sauce for the goose is sauce for the gander; if Plaintiff, as a non-signatory, cannot avail itself of the contract between Black and Winzler, as the jury found, then Winzler, as a non-signatory, cannot avail itself of the contract between Black and the Port Authority, especially since the Port did not even know that Black had hired Winzler until after Winzler had performed its contract with Black.

Winzler's claim to be the "successful or prevailing party" under the Black/Port Authority contract is bogus. Plaintiff brought a lawsuit to enforce the rights of its insured under the

Black/Port Authority contract; Plaintiff was the prevailing party in that litigation, since the jurors found that Black breached its contract (Question No. 1 on the Special Verdict Form), and they awarded Plaintiff damages of $335,000 against defendant Black (Question No. 4 on the Special Verdict Form). The jury did not award Winzler one penny. It makes no sense to assert that Winzler was a "successful or prevailing party" in litigation between Black and Plaintiff (on behalf of the Port Authority) under the Black/Port contract. Indeed, it is **Plaintiff** who is entitled to attorneys' fees under the Black/Port Authority contract, and Plaintiff's motion for attorneys' fees in that regard will be filed herein shortly.

The language of the Black/Port Authority contract (hereinafter the "Black Contract") specifically prohibits the kind of bootstrap claim which Winzler is making herein. The contract, in paragraph 1(b), provides that: "Any and all contracts between the Contractor [Black] and its subcontractors [Winzler] shall not be construed as creating any contractual relation between any subcontractor and the Port Authority." Black Contract, attached hereto as Exhibit A, p. 1. For Winzler, a subcontractor of Black, to have any rights against Plaintiff under the Black Contract, it must have or have had rights against Plaintiff's insured the Port Authority, and those rights are specifically disclaimed and nullified by subparagraph 1(b) cited above. Indeed, in Winzler's trial brief, filed herein on October 11, 2005, Winzler at p. 9 thereof, footnote 9, cites *G & P Elec. Co. v. Dumont Const. Co.*, 15 Cal.Rptr. 757, 763 (1961), for the specific proposition that the language cited above precludes Plaintiff from being a third-party beneficiary of the subcontract between Black and Winzler. Winzler specifically did not want to be bound by the Black Contract's warranty of workmanlike performance. Winzler's position at that time was that Winzler was entitled to neither the benefits nor the burdens of the Black Contract. If so, it has no claim now for attorneys' fees, based on a provision of that **same contract**.

Winzler tacitly admits that the written contract it had with Black contains no attorneys' fees provision; Winzler did not put that contract (actually, only a purchase order) before the Court in its current Motion, thereby admitting that it contains no such attorneys' fees provision. At the very least, this amounts to a failure of proof by Winzler that any such attorneys' fees provision exists.

Winzler argued strenuously throughout this case that Plaintiff's insured (the Port Authority) could not be a third-party beneficiary of the Black Contract because of the language cited above from subparagraph 1(b) of said Contract. *See* Winzler & Kelly's Motion *in limine* to Preclude Evidence or Argument That the Port Was a Third-Party Beneficiary of Winzler & Kelly's Subcontract with Black, dated October 26, 2005, at 4. Winzler argued then that "Such language as this has been held to categorically preclude the owner from recovering as a third-party beneficiary of the contract." *Id.* If, as Winzler asserts, that contract language precludes any contractual relationship being formed between Winzler and the Port, then there is no contractual attorneys' fees provision which Winzler can avail itself of now.

Winzler's complete about face on this issue is demonstrated most clearly by Defendant Winzler [sic] & Kelly Consulting Engineers' Reply in Support of Motion for Judgment on the Pleadings on Ninth Cause of Action (Breach of Warranty Against Winzler & Kelly) (hereinafter "Reply"), filed herein on November 26, 2004. Starting at p. 2 of the Reply, Winzler has an entire section entitled "Black's Contract With the Port Authority Does Not Bind Winzler & Kelly". At p. 3, referring to the Black Contract, Winzler admits that "Winzler & Kelly was not a party to that contract, and cannot be held to the terms thereof."

Winzler then goes on to state that "Winzler & Kelly is bound only by its own agreement with Black, which was simply 'to provide revised design and engineering specifications for the repair work.'" *Id.* If Black failed to bind its subcontractors to the terms of Black's Contract, it

was Winzler's position in November of 2004, that "... that may be an issue between the Port Authority and Black, but it does not of itself create liability in Winzler & Kelly to the Port Authority." *Id.* Winzler cannot now completely reverse its position and state that the Black Contract **does** bind Winzler, or, what is even worse, argue that said contract does not bind Winzler but that Winzler can selectively take advantage of the benefits of one provision (attorneys' fees) in that contract which Winzler never signed.

### III. CONCLUSION

Winzler, being unable to point to any written contract which it signed with Plaintiff or its insured, which entitles it to attorneys' fees, has no such entitlement. The American Rule applies here. Winzler's Motion for attorneys' fees should be denied.

DATED: Hagåtña, Guam, December 21, 2005.

CARLSMITH BALL LLP

_____
for DAVID LEDGER
Attorneys for Plaintiff
S.J. Gargrave Syndicate at Lloyds

# DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on December 21, 2005, I caused to be served, via hand delivery, a true and correct copy of **PLAINTIFF'S OPPOSITION TO DEFENDANT WINZLER & KELLY'S MOTION FOR ATTORNEYS' FEES; DECLARATION OF SERVICE** upon Defendants Counsel of record as follows:

>Robert J. O'Connor, Esq.
>Daniel J. Berman, Esq.
>Berman O'Connor Mann & Shklov
>Suite 503, Bank of Guam Building
>111 Chalan Santo Papa
>Hagåtña, Guam 96910
>
>Thomas C. Sterling, Esq.
>Blair, Sterling, Johnson, Moody, Martinez & Leon Guerrero, P.C.
>Suite 1008, Pacific News Building
>238 Archbishop Flores Street
>Hagåtña, Guam 96910

and

>Thomas M. Tarpley, Esq.
>Law Offices of Tarpley & Moroni, LLP
>Suite 402, Bank of Hawaii Building
>134 West Soledad Avenue
>Hagåtña, Guam 96910

Executed this 21st day of December, 2005 at Hagåtña, Guam.

_____
by  DAVID LEDGER

SANFRAN1\35035\1 123206.000

# CONSTRUCTION CONTRACT

THIS AGREEMENT AND CONTRACT, made and entered into this 8th day of April, 1996, by and between the Port Authority of Guam, a public corporation and autonomous instrumentality of the Government of Guam hereinafter referred to as "Port Authority", whose address is 1026 Cabras Highway, Suite 201, Piti, Guam 96925, and **BLACK CONSTRUCTION CORPORATION**, hereinafter referred to as the "Contractor", whose address is P.O. Box 24667, GMF, Guam 96921.

## WITNESSETH

WHEREAS, the Port Authority intends to construct <u>REPAIRS AND UPGRADING OF FOXTROT PIER "F-1"</u>, PAG Project No. PAG 96-0010 hereinafter called the "project", in accordance with the General Scope of Work prepared by the Port Authority.

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, the Port Authority issued Invitation to Bid No. PAG 96-0010 in order to solicit bids from building contractors desiring to perform the project construction;

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, after the bids in response to Invitation to Bid No. 96-0010 were opened, Contractor was determined to be the lowest responsible and responsive bidder and awarded the contract to perform the construction of the project to the Contractor.

NOW THEREFORE, the Port Authority and Contractor for the considerations hereinafter set forth, agree as follows:

I.  <u>THE CONTRACTOR AGREES</u> to furnish all the necessary labor, materials, equipment, tools and services necessary to perform and complete in a workmanlike manner all work required for the construction of the Project in strict compliance with the Contract Documents herein mentioned, which are hereby made part of the Contract.

   (a)   <u>Contract Time</u>.  The Contractor agrees to commence work under this contract upon written notice to proceed, and to complete the project ready for use and operational within 240 calendar days of the commencement of the Contract as defined in the General Provisions of the Contract.

   (b)   <u>Sub-Contractors</u>.  The Contractor agrees to bind every subcontractor by the terms of this Contract and the contract documents. Any and all contracts between the Contractor and its subcontractors shall not be construed as creating any contractual relation between any subcontractor and the Port Authority.

II.  <u>THE PORT AUTHORITY AGREES</u> to pay, and the Contractor agrees to accept in full payment for the performance of this Contract, the Contract amount of:

**EXHIBIT A**

15/08 02 THU 08:15 FAX 843 1097 Peter MacLeod ☒014

a. The Basic Bid Amount of Two Million One Hundred Forty Seven Thousand and Eight Hundred Dollars ($2,147,800.00)

b. Contractor shall be paid any and all sums including any added and/or deducted amounts resulting from any and all extra work and/or omitted work in connection therewith, in accordance with Section B-9 of the General Conditions of the Contract Documents described in Section III(i) and incorporated herein by reference.

III. **CONTRACT DOCUMENTS**. It is hereby mutually agreed that the following list of instruments, plans, specifications and documents which are attached hereto, bound herewith and incorporated herein by reference shall constitute the Contract Documents, all of which are made a part hereof, and collectively evidence and constitute the Contract between the parties, hereto, and they are as fully a part of this Contract, as if they were set our verbatim and in full herein, and are designated as follows:

a. Invitation to Bid
b. Instruction to Bidders
c. Proposal
d. Form of Non-collusion Affidavit
e. Bid Bond
f. Certification of Bidders Regarding Equal Employment Authority
g. Performance and Payment Bond
h. Special Provisions
i. General Provisions
j. Labor Standards Provisions
k. Technical Specifications
l. Plans
m. Addendum(s)
n. Notice of Award
o. Notice to Proceed

IV. **LIQUIDATED DAMAGES**. Contractor agrees that if Contractor fails, neglects, or refuses to complete the work by the completion date as set forth above, then Contractor shall pay, or shall be assessed the sum of One Thousand No/100 Dollars ($1,000.00) per day for each calendar day of delay after the time stipulated for completing the work. The amount Contractor shall pay or be assessed for each calendar day in which the work is not completed after the specified completion date is not a penalty, but a reasonable estimated liquidated damages suffered by the Port Authority.

V. **COVENANT AGAINST CONTINGENT FEES**. The Contractor warrants that it has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Port Authority the right to terminate the contract, or at its discretion, to deduct from the contract price or consideration the amount of such commissions, percentage,

brokerage or contingent fee. This warranty shall not apply to commissions payable by Contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by Contractor for the purpose of securing business.

VI. **OTHER CONTRACTS**. The Port Authority may award other contracts for additional work, and the contractor shall fully cooperate with such other contractors and carefully fit his own work to that provided under other contracts as may be directed by the General Manager. The Contractor shall not commit or permit any act which will interfere with the performance of work by any other contractor.

VII. **DISPUTES**. Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the Contracting Officer subject to written appeal by the Contractor within 30 days to the Governor of Guam or his duly authorized representative, whose decision shall be the final and conclusive upon the parties thereto. In the meantime, the Contractor shall diligently proceed with the work as directed.

VIII. **CONTRACT BINDING**. It is agreed that this Contract and all of the Covenants hereof shall insure to the benefit of and be binding upon the Port Authority and the Contractor respectively and its partners, successors, assigns and legal representatives. Neither the Port Authority nor the Contractor shall have the right to assign, transfer or sublet its interest or obligations hereunder without written consent of the other party.

IX. **LIENS**. It is hereby mutually agreed by and between the parties hereto that neither the Contractor or any other persons or companies working on the project or supplying materials thereto, including but not limited to mechanics, contractors, subcontractors, material persons or other persons can or will contract for or in any other manner have or acquire any lien, claim or interest upon the building or works covered by this contract, or the land upon which the same is situated.

X. **REPRESENTATIONS**. The Contractor hereby makes the following representations and certifications:

 (a) That Contractor has not knowingly influenced and promises that Contractor will not knowingly influence a government employee to breach any of the ethical standards set forth in Chapter 11 of the Guam Procurement Regulations.

 (b) That Contractor has not violated, is not violating and promises that Contractor will not violate the prohibition against gratuities and kickbacks set forth in Section 11-206 of the Guam Procurement Regulations.

XI. **NON GRATUITY**. - The Contractor agrees that Contractor shall execute and file a

Non-Gratuity Affidavit as required by Section 11-206 of the Guam Procurement Regulations before final payment under this Contract is made by the Port Authority.

XII. ALTERATIONS. The following changes were made in this contract before it was signed by the parties hereto: None.

XIII. ATTORNEY'S FEES: If any legal action, suit or other proceeding is brought for the enforcement of this Agreement, or because of any alleged dispute, breach or default in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and court costs incurred in the action, suit or proceeding, in addition to any other remedy or relief to which it may be entitled.

XIV. INDEMNIFICATION. The Contractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatsoever (including death resulting therefrom) to all persons, whether employees of the contractor or otherwise, and to all property damage caused by, resulting from, arising out of or occurring in connection with employees or agents. Should any claims for such damage or injury (including death resulting therefrom) be made or asserted, the Contractor agrees to indemnify and save harmless the Government, the Port Authority Board of Directors, and all Port Authority officers, agents, servants and employees from and against any and all such claims and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that the Port Authority, its officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and the Contractor agrees to and does hereby assume, on behalf, of the Port Authority, its officers, agents, servants or employees upon or by reason of such claims which defense, shall be tendered by counsel, selected by Contractor with approval of the Port Authority, and to pay on behalf of the Port Authority, its officers, agents, servants and employees, upon demand the amount of any judgment that may be entered against the Port Authority, its officers, agents, servants or employees in any such action.

XV. INSURANCE. Contractor shall, at its sole expense and for the benefit of Contractor and the Port Authority, provide and keep in full force and effect during the term of this Contract, insurance against liability for bodily injury with limits of not less than Three Hundred Thousand Dollars ($300,000.00) per person, One Million Dollars ($1,000,000.00) per occurrence, and property loss liability insurance with a limit of not less than Three Thousand Dollars ($300,000.00) per loss, all in respect to bodily injury or property loss arising out of the duties and obligations of Contractor under the terms of this Contract. In addition, Contractor shall also provide and keep in full force and effect during the term of this Contract, workman's compensation insurance with limits of not less than One Hundred Thousand Dollars ($100,000.00) per employee. Contractor shall furnish to the Port Authority certificates of insurance evidencing the existence of such insurance. No policy of insurance may be cancelled without providing the Port Authority thirty (30) days advance written notice. All insurance required under this Paragraph shall be written with

- 4 -

responsible companies with originals of the policies and renewals available for the Port Authority's review during reasonable hours.

XVI. **GOVERNING LAW.** It is agreed that this Contract shall be governed by, construed, and enforced in accordance with the laws of the territory of Guam.

XVII. **TIME OF THE ESSENCE.** It is specifically declared and agreed that time is of the essence of this Contract.

XVIII. **MODIFICATION OF AGREEMENT.** Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party.

XIX. **NOTICES.** Any notice provided for or concerning this agreement shall be in writing and be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this agreement.

XX. **PARAGRAPH HEADINGS.** The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first written.

BLACK CONSTRUCTION CORPORATION

Date: __April 8, 1996__      By: _____

Name: __Perfecto O. Jose', Jr.__

Title: __Senior Vice President__

| APPROVED: | CERTIFIED FUNDS AVAILABLE: |
|---|---|
| _____ | *[signature]* _____ |
| PAUL J. SOUDER, Chairman | FRANKLIN E. BADAR, CONTROLLER<br>Certifying Officer |
| Dated: _____ | Dated: 8/14/96 |

APPROVED AS TO FORM:

CARBULLIDO, PIPES & BORDALLO
Legal Counsel, Port Authority of Guam

*[signature]*
_____
F. PHILIP CARBULLIDO, ESQ.

Dated: 8/12/96

SWJ:amn\PAG\Black.Sup

- 4 -

responsible companies with originals of the policies and renewals available for the Port Authority's review during reasonable hours.

XVI. **GOVERNING LAW**. It is agreed that this Contract shall be governed by, construed, and enforced in accordance with the laws of the territory of Guam.

XVII. **TIME OF THE ESSENCE**. It is specifically declared and agreed that time is of the essence of this Contract.

XVIII. **MODIFICATION OF AGREEMENT**. Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party.

XIX. **NOTICES**. Any notice provided for or concerning this agreement shall be in writing and be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this agreement.

XX. **PARAGRAPH HEADINGS**. The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first written.

BLACK CONSTRUCTION CORPORATION

Date: ᴾ April 8, 1996

By: _____

Name: Perfecto O. Jose', Jr.

Title: Senior Vice President

- 5 -

I. **CHANGE IN SCOPE OF WORK**

The Port Authority and Contractor hereby agree to omit certain concrete jacketing and pile encapsulation work as provided for in the Basic Bid Schedule and in lieu of such work Contractor is to use a Total Upper Section Replacement Method, in accordance with the attached Drawing prepared by "Winzler and Kelly".

II. **CONTRACT PRICE ADJUSTMENT**

As a result of the omitted work, the total amount of compensation the Port Authority agrees to pay to Contractor and Contractor agrees to accept as payment in full for the performance of the Contract shall be reduced from Two Million Forty Seven Thousand And Eight Hundred Dollars ($2,147,800.00) to One Million Four Hundred Seven Thousand And Six Hundred Eighty Two Dollars ($1,407,682.00).

III. **OTHER CONDITIONS**

The Port Authority and Contractor further agree that:

A. All repair and upgrade work shall conform to the requirements of Shell Guam, Inc. as specified in the Contract documents.

B. All repair and upgrade work shall be performed on all existing piles as indicated in the Contract documents.

C. A unit cost per pile for repair and upgrade should be established and agreed upon between the Port Authority and Contractor. The total number of piles in need of repairs may be adjusted and subject to an appropriate reduction in the total contract amount.

D. The Port Authority shall designate an on-site construction manager to determine and approve which piles require repair or replacement, and that final determination to be concluded within seven (7) days of contract.

E. All applicable submittal requirements as stipulated in the Contract Documents shall be complied with and shall remain in full force and effect.

IV. **OTHER TERMS OF CONTRACT REMAIN IN EFFECT**

All other terms and conditions of the Construction Contract and contract documents remain in effect.

- 2 -

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first written.

                                                                        **BLACK CONSTRUCTION CORPORATION**

Date: _April 8, 1996_        By: _[signature]_

                                                      Name: _Perfecto O. Jose', Jr._

                                                      Title: _Senior Vice President_

    I, _Mark J. Namczarz_____, certify that I am the assistant secretary of the corporation named as the Contractor herein; that _Perfecto O. Jose', Jr._ who signed this contract on behalf of the Contractor, that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

                                                       _[signature]_
                                                    (Corporate Seal)

                                                    **PORT AUTHORITY OF GUAM**

                                        By:   _[signature]_
                                              CAPTAIN EULOGIO C. BERMUDES
                                              General Manager

                                         Dated: _____

# SUPPLEMENTAL AGREEMENT TO CONSTRUCTION CONTRACT

THIS SUPPLEMENTAL AGREEMENT AND CONTRACT, made and entered into this _____ day of _____, 1996, by and between the Port Authority of Guam a public corporation and autonomous instrumentality of the Government of Guam, hereinafter referred to as "Port Authority", whose address is 1026 Cabras Highway, Suite 201, Piti, Guam 96925, and **BLACK CONSTRUCTION CORPORATION**, hereinafter referred to as the "Contractor", whose address is P.O. Box 24667, GMF, Guam 96921.

## WITNESSETH

WHEREAS, the Port Authority intends to construct REPAIRS AND UPGRADING OF FOXTROT PIER "F-1", PAG Project No. _____ hereinafter called the "project", in accordance with the General Scope of Work prepared by the Port Authority of Guam.

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, the Port Authority issued Invitation to Bid No. PAG 96-0010 in order to solicit bids from building contractors desiring to perform the project construction;

WHEREAS, pursuant to the competitive sealed bidding procedures of the Guam procurement statute and regulations, after the bids in response to Invitation to Bid No. 96-0010 were opened, Contractor was determined to be the lowest responsible and responsive bidder and awarded the contract to perform the construction of the project to the Contractor.

WHEREAS, the Port Authority and Contractor entered into a Construction Contract which sets forth the rights, duties and responsibilities of each party with respect to the construction of the project.

WHEREAS, subsequent to the award of the contract for the construction of the project it was determined that certain items within the scope of work listed in the Basic Bid Schedule should be omitted and an alternative design method implemented.

WHEREAS, the items to be omitted from the Basic Bid Schedule change the total cost of the project by more than twenty five percent (25%) so that the parties are required to enter into a Supplemental Agreement.

NOW THEREFORE, the Port Authority and Contractor for the considerations hereinafter set forth, agree as follows:

I, __Mark J. Namczarz__, certify that I am the assistant secretary of the corporation named as the Contractor herein; that __Perfecto O. Jose', Jr.__ who signed this contract on behalf of the Contractor, that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

_(signature)_

(Corporate Seal)

PORT AUTHORITY OF GUAM

By: _(signature)_ __CAPTAIN EULOGIO C. BERMUDES__
General Manager

Dated: _____

APPROVED:                                    CERTIFIED FUNDS AVAILABLE:

                                             _(signature)_
_____                   _____
PAUL J. SOUDER, Chairman                     FRANKLIN E. BADAR, CONTROLLER
                                             Certifying Officer

Dated: _____                        Dated: __8/14/96__

APPROVED AS TO FORM:

CARBULLIDO, PIPES & BORDALLO
Legal Counsel, Port Authority of Guam

_(signature)_
_____
F. PHILIP CARBULLIDO, ESQ.

Dated: __8/12/96__

- 6 -