THOMAS C. STERLING
BLAIR STERLING JOHNSON
MOODY MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE: (671) 477-7857

*Attorneys for Defendant Black Construction Corporation*



FILED
DISTRICT COURT OF GUAM

DEC 27 2005

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK CONSTRUCTION CORPORATION and WINZLER & KELLY CONSULTING ENGINEERS and ENGINEERING, MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>Defendants. | CIVIL CASE NO. CV03-00009<br><br>**DEFENDANT BLACK CONSTRUCTION CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT** |

With all due respect, while admittedly this argument has been advanced on prior occasions[1] by Defendant **BLACK CONSTRUCTION CORPORATION** (hereinafter "Black"), Plaintiff **S.J. GARGRAVE SYNDICATE AT LLOYDS** (hereinafter "Gargrave") simply fails to recognize the argument being made.

Black is not asserting that a Syndicate at Lloyds, such as Gargrave, cannot sue on its own behalf and on behalf of other Syndicates at Lloyds. That concept is well recognized in the case law. Rather, Black's position is that Gargrave has not established its entitlement, as a real party in interest, to

---

[1] Making and renewing such arguments is <u>required</u> by the Rules of Civil Procedure for lots of reasons.

ORIGINAL

recover anything in connection with the claims asserted in this action. Every action must be prosecuted by the real party in interest.

Black's position is perhaps best demonstrated by the lead case cited by Gargrave as representing the view of "numerous federal courts of appeal" that Gargrave is entitled to maintain this action. That case is <u>Corfield v. Dallas Glen Hills LP</u>, 355 F.3d 853 (5th Cir. 2003), and that case was brought by Liberty Syndicate 190 at Lloyds through its underwriter, Thomas Corfield, seeking declaratory relief on its own behalf and on behalf of certain underwriters who had subscribed to the policy at issue. A loss had been sustained, Lloyds had denied coverage, and Corfield on behalf of Liberty Syndicate 190 and other syndicates who were exposed on the policy were seeking a declaratory judgment of no coverage. After indicating in the early portion of the Opinion that "Liberty insured 32.79% of the risk", the Court included a footnote which read as follows:

> Liberty subscribed to a percentage of the risk greater than that assumed by any other Name subscribed to the Policy. Thus, Liberty controls all decisions with regard to claims made under the Policy and the prosecution or defense of lawsuits.

Thus, the 5th Circuit obviously felt it was necessary to indicate the basis on which the Liberty Syndicate was authorized to sue on behalf of other Syndicates who were exposed on the risk. Moreover, it must be obvious that the 5th Circuit did not simply take judicial notice of how Lloyds of London operates. There

clearly had to have been proof that Liberty Syndicate 190, through Mr. Corfield, was authorized to maintain claims arising under the policy on behalf of all of the other Syndicates who had lesser shares in the risk. No such proof was presented in this case and that is the problem with Gargrave's showing and that it the basis for this motion for judgment.

Gargrave objected to introduction of the policy which would have shown that it insured 22% of the risk which, as shown on the policy, (Defendant's Proposed Ex. D77) would have indicated that Gargrave had more of the risk than anyone else. Nevertheless, this Court cannot take judicial notice of how Lloyds of London operates since, under Rule 201 of the Federal Rules of Evidence, a court can only take judicial notice of facts which are generally known within the jurisdiction and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Black respectfully submits that the rights available to lead Syndicates at Lloyds of London in connection with a loss on a policy are hardly facts which are generally known within Guam or anywhere else for that matter. Moreover, under Rule 201, if Gargrave believed that how Lloyds of London operates was a judicially noticeable fact, it should have given notice in accordance with Rule 201 and had the issue determined in accordance with the Rule.

In any event, any discussion of a lead Syndicate's rights under a Lloyds of London policy is irrelevant since Gargrave

- 3 -

objected to the admission of the policy and, instead, chose to pursue a claim based upon an assignment which did not even name it. Nothing in the subrogation receipt admitted into evidence authorized the "S.J. Gargrave Syndicate at Lloyds" to pursue an action against responsible parties and to recover in subrogation for amounts paid by Lloyds of London. The S.J. Gargrave Syndicate has no more rights under the assignment introduced into evidence than does anyone else in the world except for those parties actually named therein.

Gargrave's proof of its entitlement to pursue this action was legally non-existent. There is no <u>factual</u> basis upon which this Court can find that Gargrave owns this claim. Perhaps this claim is actually owned by Liberty Syndicate 190 or some other Syndicate at Lloyds. Simply establishing that it is a Syndicate at Lloyds of London established nothing in terms of Gargrave's right to recover under the Lloyds' policy issued to the Port Authority of Guam.

None of the other cases cited in Gargrave's brief support its contention that it is entitled to pursue claims for Lloyds' losses. The cited case of <u>Indiana Gas Co. v. Holme Ins. Co.</u>, 141 F.3d 314 (7th Cir. 1998) involved a question of the Court's diversity jurisdiction when a plaintiff had sued "London Syndicates". The court found that there was no diversity jurisdiction inasmuch as one of the names involved in one of the Syndicates sued had been domiciled in Indiana at the relevant

- 4 -

time period thus destroying diversity jurisdiction. There was absolutely no discussion of the purported right of one Syndicate to collect a loss on behalf of all of the Syndicates.[2]

The next case cited in the brief which is referred to as the "Cox Syndicate" case is not the Cox Syndicate case at all. The actual reported name of the case is <u>Underwriters at Lloyds' v. Labarca</u>, 260 F.2d 3 (1st Cir. 2001), and in that case, the actual named plaintiffs were both Lloyds <u>and</u> the Cox Syndicate. Lloyds had denied a claim under a marine policy and had then sued its insured for declaratory relief on the coverage issues. The case includes no discussion whatsoever of why the Cox Syndicate was included as a named plaintiff and what its interests were.

In <u>Colip v. Clare</u>, 26 F.3d 712 (7th Cir. 1994), also cited by Gargrave, attorneys sued the "Clare's Syndicate" which had issued it a malpractice policy and subsequently denied coverage. As far as can be discerned from the Opinion, the Clare Syndicate had issued the policy. There is no mention of Lloyds of London in general or any other Syndicate.

In <u>Certain Underwriters of Lloyds v. General Accident Ins. Co.</u>, 909 F.2d 228 (7th Cir. 1990), also cited by Gargrave, the named plaintiff was "Certain Underwriters of Lloyds' and Companies Subscribing to Excess Aviation Liability Insurance Policy No. FL-10959AB ('Underwriters')". In this case, all of

---

[2] In this case, there is no proof that Gargrave was even one of the Syndicates at risk on the policy.

the underwriters on the policy were apparently named as plaintiffs. These underwriters had provided excess coverage and were seeking recovery for amounts paid under the excess policy against a primary insurer which had allegedly failed to settle a claim in bad faith. There was no discussion whatsoever of the right of any one Syndicate to recover the losses paid by all of the Syndicates who underwrote the policy. If anything, this case supports the proposition that <u>all</u> of the Syndicates on the Port Authority's policy should have been named as plaintiffs in order to recover the entire loss.

Similarly, in <u>Syndicate 420 at Lloyds, London v. Glacier Gen. Assurance Co.</u>, 604 F.Supp. 1443 (E.D.La. 1985), the plaintiff, Syndicate 420 at Lloyds, filed a suit for a declaratory judgment seeking to void coverage <u>it authorized</u> on the basis of misrepresentations made by the insured in connection with the application for the policy. There is no indication in the Opinion that any other Syndicate at Lloyds, other than Syndicate 420, was exposed on the policy at issue.

In sum, none of the cases cited by Gargrave support the novel proposition that any purported Syndicate at Lloyds of London is entitled to show up in any court in the world and pursue a claim on behalf of Lloyds of London and other undesignated Syndicates who may or may not have been involved in the risk at issue. Gargrave presented no proof whatsoever that

it owned this claim and, as such, it was not a real party in interest.

Gargrave argues that the real party in interest issue should not be addressed by the Court at this time since it was already resolved by Judge Tashima who purportedly found that "Plaintiff was suing properly as a representative of the other underwriters". (Gargrave's Opposition at pp. 2-3). A review of Judge Tashima's Memorandum Order Re Jurisdiction filed herein on March 24, 2005 indicates that he made no such ruling.

Judge Tashima indicated that in determining diversity jurisdiction that the "pertinent issue is whether there is complete diversity of citizenship between the parties." He then reviewed the evidence submitted in connection with the Motion and determined that at both the time that the claim had been paid and at the time of the Decision, that the entities comprising Gargrave were United Kingdom corporations, with their principal and sole places of business in the United Kingdom, and that the lead underwriter was also a citizen and domiciliary of the United Kingdom. Thus, Judge Tashima determined only that there was complete diversity between Gargrave and the Defendants. He made no determination and his decision does not even discuss the issue of whether Gargrave is entitled to maintain a subrogation or assignment action on behalf of all Syndicates who paid on the claim. (The relevant pages of the Decision are attached hereto as Exhibit "A" for the Court's ready reference).

- 7 -

Gargrave never proved it owned one dime of this claim. Judgment as a matter of law should be entered on behalf of Black.

### GARGRAVE'S DAMAGE CASE WAS SPECULATIVE AS A MATTER OF LAW

The fact that Gargrave's damage case was based upon a plea for speculation rather than actual proof under any recognizable damage theory is best demonstrated by the first sentence of Gargrave's brief which reads as follows:

> Plaintiff proved at trial that any repairs to the F-1 Pier had to meet the requirements of Guam's version of the 1994 Uniform Building Code.

This statement is demonstrably false.

Gargrave, through the testimony of Eliott Boone[3], presented evidence that Winzler & Kelly's design had to comply with the 1994 UBC seismic requirements. This testimony was, of course, disputed by Mr. Dean Gillham who indicated that the 1994 UBC seismic requirements had no bearing whatsoever on the repair of dolphins. Moreover, and most importantly, Mr. Gillham admitted in his testimony[4] that the Winzler & Kelly design did not comply with the 1994 UBC seismic requirements since 10% of the bolts failed to meet the 1994 UBC seismic requirements.

The jury <u>exonerated</u> Winzler & Kelly of any design liability. Since it was undisputed that Winzler & Kelly's design did not

---

[3] According to the Gargrave brief, the testimony of Webb Hayes also indicated the UBC was applicable.

[4] As did Boone, although Boone found much greater alleged non-compliance.

- 8 -

meet the 1994 UBC seismic requirements, it is obvious that the jury concluded, as a matter of fact, that the 1994 UBC seismic requirements were not applicable. Thus, Gargrave's entire damage theory which was based upon the contention that they could upgrade the facilities substantially to comply with Code and that Black had to pay for it was, based on the jury verdict, factually unsupportable.

Moreover, the last sentence in Gargrave's Opposition is also demonstrably false. That sentence reads as follows:

> Plaintiff proved that the reasonable cost to repair the dolphins to the Code-compliant condition which the Port expected and contracted for was $1,822,728.

No evidence that a $1,822,728 repair was necessary to meet Code was presented.

The entire Opposition presumes that some testimony was presented that the Dennis repair design (which cost around $17,000 per piling and was clearly a massive upgrade in the strength of the facility) was required to comply with the seismic requirements of the 1994 Uniform Building Code. However, Mr. Dennis testified only that he was asked to design a repair and that he designed a repair in accordance with what he felt was sound engineering practice. He <u>never testified</u> that he was asked to design a repair that complied with the seismic requirements of the 1994 Uniform Building Code and, in fact, according to counsel for Black's recollection, he never even testified that his repair

//

complied with the seismic requirements of the 1994 Uniform Building Code.

Additionally, Dean Gillham testified the seismic requirements contained in the 1994 UBC could have been achieved through the installation of expansion bolts at a cost of $175,000. Similarly, Mr. Boone, to counsel's recollection, also testified that he could have met the 1994 UBC seismic requirements by simply installing "larger bolts." If, as Gargrave contends (incorrectly), the repair had to comply with the 1994 seismic requirements of the UBC, Gargrave never presented any number indicating what the cost of meeting the 1994 seismic requirements was. Since the verdict of $335,000 is almost twice the Gillham number, it is obviously a speculative guesstimate based on who knows what.

Gargrave's damage case failed as a matter of law and that is yet another reason why judgment in favor of Black denying Gargrave any recovery should be entered at this time as a matter of law.

**RESPECTFULLY SUBMITTED** this 27H day of December, 2005.

> BLAIR STERLING JOHNSON
> MOODY MARTINEZ & LEON GUERRERO
> A PROFESSIONAL CORPORATION
>
> BY: /s/ THOMAS C. STERLING
> *Attorneys for Black Construction Corporation*

ATTACHMENT: EXHIBIT "A"



FILED
DISTRICT COURT OF GUAM
MAR 24 2005
MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| S.J. GARGRAVE SYNDICATE AT LLOYDS,<br><br>    Plaintiff,<br><br>v.<br><br>BLACK CONSTRUCTION CORPORATION, WINZLER & KELLY, and ENGINEERING MANAGEMENT & PLANNING SERVICES CORPORATION,<br><br>    Defendants. | NO. CV 03-00009<br><br>**MEMORANDUM ORDER<br>RE JURISDICTION** |

On December 3, 2004, this Court issued an Order to Show Cause ("OSC") why this case should not be remanded to the Territorial Superior Court for lack of subject matter jurisdiction.[1] All parties have now responded to the OSC. After considering those responses, the Court concludes that this case does not fall under admiralty jurisdiction pursuant to 28 U.S.C. § 1333, but that diversity jurisdiction exists pursuant to 28

---

[1] Prior to issuing the OSC, no Defendant had challenged the diversity jurisdiction of this Court. Rather, the matter was raised *sua sponte* by the Court during the December 3, 2004, hearing.

U.S.C. § 1332.

## DISCUSSION

**A. Diversity Jurisdiction**

Federal courts have diversity jurisdiction where (1) there is complete diversity between the parties, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. For diversity purposes, a corporation is a citizen of the state by which it has been incorporated and the state where it has its principal place of business. See 28 U.S.C. § 1332(c); <u>United Computer Sys., Inc. v. AT&T Corp.</u>, 298 F.3d 756, 763 (9th Cir. 2002). The party seeking to establish diversity jurisdiction bears the burden of proof on each element. <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994).

In this case, the pertinent issue is whether there is complete diversity of citizenship between the parties.[2] Plaintiff S.J. Gargrave Syndicate at Lloyds ("Plaintiff") is a syndicate of Lloyds of London. In 2001, when Plaintiff paid the claim which is the subject of this action, the syndicate was composed solely of a single United Kingdom corporation, QBE Corporate Limited, which has its only place of business (and, by necessary implication, principal place of business) in London, England. Decl. of Graeme Sprowson ("Sprowson Decl.") ¶¶ 3, 5, 7. The syndicate is now comprised of three United Kingdom corporations, all of which are incorporated and have their sole

---

[2] Given that Plaintiff's claims for damages exceed $6 million, the parties do not contest and the Court finds that the amount in controversy requirement is met.

2

place of business in the United Kingdom: QBE Corporate Limited; Limit (No. 2) Limited; and Limit (No. 3) Limited. Sprowson Decl. ¶¶ 6, 7. Likewise, the lead underwriter for the syndicate, and the originally-named plaintiff, Leslie Wilton, is a citizen and domiciliary of the United Kingdom. Decl. of Leslie Wilton ("Wilton Decl.") ¶ 1.

Defendants contend that when a Lloyd's of London syndicate, comprised of members called "Names,"[3] is being analyzed for purposes of diversity jurisdiction, the citizenship of each "Name" is relevant to that determination. This circuit has not addressed the precise issue of how a Lloyd's of London syndicate comprised of "Names" should be classified for purposes of determining diversity jurisdiction. See Certain Underwriters of Lloyd's London v. Raytheon Co., 2001 WL 1836268, at *1-3 (N.D. Cal. Dec. 4, 2001) (holding that for diversity jurisdiction to exist there must be complete diversity between the defendant(s) and every "Name"). Other circuits are split on this issue.[4] Id.

---

[3] Under such a structure, each "Name" is severally liable for a share of the risk.

[4] Both the Second and Seventh Circuits, as well as several district courts, hold that the citizenship of every "Name" must be considered for diversity purposes. E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925 (2d Cir. 1998); Ind. Gas Co., Inc. v. Home Ins. Co., 141 F.3d 314 (7th Cir. 1998); see also Certain Underwriters of Lloyd's London, 2001 WL 1836268, at *1-2. In contrast, the Sixth Circuit only examines the names of the lead underwriters. Certain Interested Underwriters at Lloyd's, London v. Layne, 26 F.3d 39 (6th Cir. 1994). The Fifth Circuit reached a similar result in Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 864-65 (5th Cir. 2003), cert. denied, 124 S.Ct. 2421 (2004), holding that the citizenship of

3

It no longer is necessary, however, to resolve this issue here, given Plaintiff's clarification that "[t]here were no individuals (commonly called "Names") who were members of the syndicate for any year from 2001 onward." Sprowson Decl. ¶ 4.[5] The relevant citizenship is therefore either that of (1) Leslie Wilton, the lead underwriter for the syndicate, or (2) the three corporations comprising the syndicate. Given Plaintiff's undisputed showing that all of these entities are citizens of the United Kingdom, for purposes of diversity analysis, either suffices to support diversity jurisdiction.

Defendants likewise do not dispute Plaintiff's assertion that all Defendants are citizens of either a state or territory of the United States. Black Construction Corporation is incorporated in Guam, with its principal place of business in Guam. Winzler & Kelly is a California corporation.[6] Engineering, Management & Planning Services Corporation is incorporated in Guam, with its principal place of business in

---

the lead underwriter, rather than that of the individual "Names," was the relevant citizenship for purposes of diversity.

[5] Plaintiff asserts that, within the last decade, Lloyd's has begun moving away from the system of financial backing via individual "Names" and toward corporate capital backing.

[6] Although Plaintiff does not expressly state where Winzler & Kelly's principal place of business is, according to the California Secretary of State, it is in Eureka, California. See Decl. of Forrest Booth ("Booth Decl.") ¶ 3, Exh. A. Defendants do not challenge diversity jurisdiction on this ground.

4

Guam. Given that each Plaintiff is diverse from each Defendant, complete diversity exists; jurisdiction is therefore proper under 28 U.S.C. § 1332. See Morris v. Princess Cruises, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996))(complete diversity is satisfied when the every plaintiff is diverse from every defendant).

**B. Admiralty Jurisdiction**

Pursuant to 28 U.S.C. § 1333, federal courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." "A contract is within admiralty jurisdiction if its subject matter is maritime." La Reunion Francaise SA v. Barnes, 247 F.3d 1022, 1024 (9th Cir. 2001) (citing Royal Ins. Co. v. Pier 39 Ltd. P'ship, 738 F.2d 1035, 1036 (9th Cir. 1984)). To determine whether the subject matter of a contract is maritime, the court looks at case law and compares the contract at issue with other contracts that have been held to be inside or outside the jurisdiction. Id. at 1024 ("There is no clear test for whether the subject matter of a contract is maritime . . . [i]nstead we look to precedent and reason by analogy."). If there is no connection to a specific vessel, contracts relating to wharves and docks generally are not within admiralty jurisdiction. See Royal Ins. Co, 738 F.2d at 1037-38 ("A contract to lease a wharf, for example, is not within the jurisdiction if the lease is not tied to services to a specific vessel; . . . and a contract to build or sell a wharf probably is not within it either.") (internal citations omitted).

"In a few instances courts have held contracts relating to construction or maintenance of docks or wharves to be within the jurisdiction even though the contracts did not provide services

5